DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO # 114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Leanne.Hartmann@doj.oregon.gov
        Brian.S.Marshall@doj.oregon.gov
        Kirsten.M.Naito@doj.oregon.gov
        Sara.DelRubin@doj.oregon.gov
        Derek.Olson@doj.oregon.gov

*Counsel for the State of Oregon*

[Additional counsel to appear on signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| STATE OF NEW YORK; STATE OF OREGON; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAIʻI; STATE OF ILLINOIS; STATE OF MAINE; COMMONWEALTH OF MARYLAND; STATE OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NORTH CAROLINA; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WASHINGTON; and STATE OF WISCONSIN, | Case No. 6:25-cv-02186-MTK **PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION** **ORAL ARGUMENT REQUESTED** **EXPEDITED HEARING REQUESTED** |
| Plaintiffs, | |
| v. | |
| BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture; and U.S. DEPARTMENT OF AGRICULTURE, | |
| Defendants. | |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES..................................................................................................... iv

LR 7-1 CERTIFICATION.................................................................................................... 1

MOTION................................................................................................................................ 1

MEMORANDUM OF LAW ............................................................................................... 1

BACKGROUND .................................................................................................................. 2

   I.   Non-Citizen Eligibility for SNAP Under the FNA and PRWORA ................................... 2

   II.   The OBBB's Changes to SNAP Eligibility......................................................... 2

   III.   The OBBB's Imposition of New State Penalties ................................................. 4

   IV.   Exclusionary Period ............................................................................................ 5

   V.   USDA's October 31st Guidance .......................................................................... 5

      A.   The Guidance's Categorical Statements About Eligibility for SNAP Post-OBBB ........ 6

      B.   The Guidance's Explanation of PRWORA's Five-Year Waiting Period........................ 7

      C.   The Guidance's Stated Exclusionary Period.................................................... 7

   VI.   The Impact of the Guidance on the Plaintiff States ............................................ 8

      A.   State Agencies' Administration of SNAP ....................................................... 8

      B.   State Agencies' Implementation of the OBBB and the Guidance ................................. 9

      C.   The Guidance Harms Plaintiff States........................................................... 12

   VII.   States' Letter to USDA ...................................................................................... 14

ARGUMENT ...................................................................................................................... 15

   I.   The Court Has Jurisdiction Over This Action.................................................... 15

Page ii – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

II.   Plaintiffs Are Likely to Succeed on the Merits ................................................................ 16

    A.   The Guidance is Final Agency Action Subject to Review Under the APA................... 16

    B.   Plaintiffs Are Likely to Succeed on the Merits of their Claim that the Guidance is Contrary to Law Because It Contradicts the Statutory Eligibility Provisions (Count I) ................................................................................................................................. 18

    C.   Plaintiffs Are Likely to Succeed on the Merits of their Claim that the Guidance is Arbitrary and Capricious with Respect to Its Eligibility Provisions (Count II)........... 21

    D.   Plaintiffs Are Likely to Succeed on the Merits of their Claim that the Guidance's Exclusionary Period is Contrary to Law (Count II) ..................................................... 24

    E.   Plaintiffs Are Likely to Succeed on the Merits of their Claim that the Guidance's Exclusionary Period is Arbitrary and Capricious (Count IV) ...................................... 27

III.  Plaintiffs Face Irreparable Harm Absent Preliminary Relief............................................. 29

IV.   The Balance of the Equities and the Public Interest Favor a Preliminary Injunction....... 31

V.    Plaintiffs' Requested Preliminary Relief is Appropriate.................................................... 32

CONCLUSION............................................................................................................................. 33

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Appalachian Power Co. v. E.P.A.,*
208 F.3d 1015 (D.C. Cir. 2000) ...............................................................16, 17

*Ass'n of Am. Med. Colls. v. United States,*
217 F.3d 770 (9th Cir. 2000) ...........................................................................17

*Ass'n of Irritated Residents v. U.S. Env't Prot. Agency,*
10 F.4th 937 (9th Cir. 2021) ............................................................................15

*Bennett v. Spear*,
520 U.S. 154 (1997)....................................................................................16, 17

*Bowen v. Georgetown Univ. Hosp.*
488 U.S. 204 (1988)...........................................................................................27

*California v. Trump*
786 F. Supp. 3d 359  (D. Mass. 2025) ..............................................................30

*California v. U.S. Dep't of Transportation*,
788 F. Supp. 3d 316 (D.R.I. 2025)....................................................................30

*City & Cnty. of San Francisco v. Trump*,
783 F. Supp. 3d 1148 (N.D. Cal. 2025) ......................................................30, 31

*City & Cnty. of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) .....................................................................30, 31

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
591 U.S. 1 (2020)................................................................................22, 23, 28

*Doe 1 v. Mayorkas*,
530 F. Supp. 3d 893 (N.D. Cal. 2021) ..............................................................18

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ...........................................................................31

*E. Bay Sanctuary Covenant v. Trump*,
932 F.3d 742 (9th Cir. 2018) .............................................................................31

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016).............................................................................................23

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

*FCC v. Fox Television Stations, Inc.,*
      556 U.S. 502 (2009)..........................................................................................23, 28

*FCC v. Prometheus Radio Project,*
      592 U.S. 414 (2021)..................................................................................................21

*FDA v. Wages & White Lion Invs., L.L.C.,*
      604 U.S. 542 (2025)..................................................................................................28

*Immigrant Defs. L. Ctr. v. Noem,*
      145 F.4th 972 (9th Cir. 2025) ...................................................................................15

*Landgraf v. USI Film Prods.,*
      511 U.S. 244 (1994)..................................................................................................27

*League of Women Voters of United States v. Newby,*
      838 F.3d 1 (D.C. Cir. 2016)......................................................................................31

*Loffman v. Cal. Dep't of Educ.,*
      119 F.4th 1147 (9th Cir. 2024) .................................................................................16

*Maryland v. King,*
      567 U.S. 1301 (2012)................................................................................................31

*MedImmune, Inc. v. Genentech, Inc.,*
      549 U.S. 118 (2007)..................................................................................................18

*Michigan v. E.P.A.,*
      576 U.S. 743 (2015)............................................................................................21, 23

*Montana Wildlife Federation v. Haaland,*
      127 F.4th 1, 40 (9th Cir. 2025)..................................................................................28

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.,*
      463 U.S. 29 (1983)..............................................................................................21, 27

*New York  v. U.S. Dep't of Just.,*
      2025 WL 2618023 (D.R.I Sept. 10, 2025)................................................................30

*New York v. United States Dep't of Homeland Sec.,*
      969 F.3d 42 (2d Cir. 2020)..................................................................................30, 31

*Nken v. Holder,*
      556 U.S. 418 (2009)..................................................................................................15

*Nw. Env't. Def. Ctr. v. Bonneville Power Admin.,*
      477 F.3d 668 (9th Cir. 2007) ....................................................................................22

Page v – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

*Or. Nat. Desert Ass'n v. Bureau of Land Management,*
   625 F.3d 1092 (9th Cir. 2010) ...................................................................28

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.,*
   465 F.3d 977 (9th Cir. 2006) .....................................................................17

*Or. Nat. Res. Council v. Harrell,*
   52 F.3d 1499 (9th Cir. 1995) .....................................................................16

*Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce,*
   128 F.4th 1089 (9th Cir. 2025) .............................................................17, 18

*Saliba v. U.S. Sec. & Exch. Comm'n,*
   47 F.4th 961 (9th Cir. 2022) .....................................................................16

*Thakur v. Trump,*
   148 F.4th 1096 (9th Cir. 2025) .................................................................28

*Washington v. Trump,*
   145 F.4th 1013 (9th Cir. 2025) .................................................................29

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008).................................................................................15, 29

*Youth 71Five Ministries v. Williams,*
   153 F.4th 704 (9th Cir. 2025) ...................................................................31

## STATUTES, RULES, REGULATIONS

Administrative Procedures Act
   5 U.S.C. § 704.............................................................................................16

7 U.S.C.
   § 2011....................................................................................................2, 8
   § 2013(a)(2)(A)...........................................................................................4
   §§ 2013(a)(2)(B)(i)(I)-(II)...........................................................................4
   §§ 2013(a)(2)(B)(i)(III)-(IV).......................................................................4
   § 2013(a)(2)(B)(ii)(I)...................................................................................4
   § 2013(a)(2)(B)(ii)(II)..................................................................................4
   § 2013(a)(2)(B)(iii)......................................................................................5
   § 2015(f)...........................................................................................2, 3, 26
   § 2015(f)(2)(B)......................................................................................4, 18
   § 2020(a)(1)..................................................................................................8
   § 2025(c)(2)(B)(i).......................................................................................4
   § 2025(c)(3)......................................................................................5, 24, 26
   § 2025(c)(3)(A)............................................................................................5

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

§ 2025(c)(3)(B) ...............................................................................................................5

8 U.S.C.
§ 1101(a)(15) .................................................................................................................3
§ 1101(a)(20) .................................................................................................................3
§ 1159(a)(2) .................................................................................................................19
§ 1159(a)(2)(b) ...........................................................................................................19
§ 1255(a) .....................................................................................................................19
§ 1612(a) .......................................................................................................................2
§ 1612(a)(1) ................................................................................................................20
§ 1612(a)(2) ...........................................................................................................4, 20
§ 1612(a)(2)(A) ..........................................................................................................19
§§ 1612(a)(2)(A)(i)-(ii) ................................................................................................3
§§ 1612(a)(2)(A)(i)-(iii) .............................................................................................20
§ 1612(a)(2)(A)(iv) .....................................................................................................20
§ 1612(a)(2)(A)(v) ......................................................................................................20
§§ 1612(a)(2)(A)-(K) ..................................................................................................20
§ 1612(a)(2)(B) .............................................................................................................3
§ 1612(a)(2)(F) .............................................................................................................3
§ 1612(a)(2)(G) ...........................................................................................................19
§ 1612(a)(2)(K) ...........................................................................................................19
§ 1612(a)(2)(J) ..............................................................................................................3
§ 1612(a)(2)(L) ..............................................................................................3, 19, 20
§ 1612(a)(2)(N) ...........................................................................................................20
§1641(a) ......................................................................................................................19
§1641(b) ......................................................................................................................19

7 C.F.R.
§ 271.4 ..........................................................................................................................8
§ 273.4 ........................................................................................................................26
§ 273.4(a)(6)(i)-(ii) .....................................................................................................19
§ 273.4(a)(6)(ii) ..........................................................................................................21
§ 273.4(a)(6)(iii) .........................................................................................................21
§ 273.4(a)(6)(iv) .........................................................................................................18
§ 274.2 ..........................................................................................................................8
§ 275.12(d)(2)(vii) ...............................................................................................5, 7, 25
§ 275.12(d)(2)(vii)(A) .................................................................................................26
§ 275.12(d)(2)(vii)(C), ...............................................................................................26
§ 275.12(d)(2)(vii)(D) .................................................................................................26

Pub. L. 117-43 § 2502(b)(1), 135 Stat. 344, (Sept. 30, 2021) ...............................20, 26

## OTHER AUTHORITIES

USDA—FNS, *Supplemental Nutrition Assistance Program (SNAP)*
*Implementation of the One Big Beautiful Bill Act of 2025—Alien SNAP*
*Eligibility* (Oct. 31, 2025) .........................................................................................17

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

USDA – FNS, *Supplemental Nutrition Assistance Program (SNAP) - Elimination of the Eight-Month Time Limit for Iraqi and Afghan Special Immigrants* (Jan. 29, 2010) .................................................................................................................25

USDA—FNS, *Supplemental Nutrition Assistance Program Implementation of the One Big Beautiful Bill Act of 2025—Treatment of Energy Assistance Payments* (Aug. 29, 2025) ...............................................................................5, 24

USDA—FNS, *Supplemental Nutrition Assistance Program Provisions of the One Big Beautiful Bill Act of 2025—Information Memorandum* (Sep. 4, 2025) ......................5, 24

USDA—FNS, *Supplemental Nutrition Assistance Program (SNAP) - Question and Answer #1 for the Implementation of Regulatory Changes to Standard Utility Allowances (SUAs)* (Dec. 20, 2024) ............................................................25

USDA, *SNAP Eligibility for Non-Citizens* (accessed July 18, 2025) ...........................................22

USDA, *Supplemental Nutrition Assistance Program Guidance on Non-Citizen Eligibility* (June 2011)...........................................................................................22

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

## **LR 7-1 CERTIFICATION**

Plaintiffs' counsel certify that the parties offered to confer on this motion and its briefing schedule by voicemail and email to the Civil Chief of the U.S. Attorney's Office for the District of Oregon on November 26. Plaintiff States have not received a response to that request. Based on previous conversations with that office, Plaintiff States understand that the U.S. Attorney's Office declines to confer until formal service of the complaint and summons is completed and named defendants have received copies by certified mail.

## **MOTION**

Plaintiff States move under Rule 65(a) for entry of a preliminary injunction in their favor while their case is pending. This motion is supported by the following memorandum of law and the declarations filed simultaneously with this motion. Plaintiffs also request an expedited briefing schedule and hearing of this motion given the immediate effect of the challenged guidance, which the Defendants claim is already operative, and the risk of crippling financial penalties on the States resulting from the confusion that USDA is causing with its guidance. Plaintiffs request that the Court order the Federal Defendants to respond to this motion by December 8, Plaintiffs to reply by December 12, and that the Court set a hearing at its earliest availability thereafter.

## **MEMORANDUM OF LAW**

On July 4, 2025, Congress and President Trump passed the One Big Beautiful Bill Act ("OBBB") which drastically cut the categories of non-citizens who may be eligible for the Supplemental Nutrition Assistance Program (SNAP). Four months later, the United States Department of Agriculture (USDA) published long-awaited guidance to the Plaintiff States that erroneously indicated that many categories of lawful permanent residents (LPRs) who were admitted as refugees, granted asylum, or came in through other humanitarian protection programs, could never become eligible for SNAP. Additionally, the Guidance instructed that many of the same categories of immigrants were no longer exempt from a five-year waiting period imposed on some LPRs before they can access SNAP, contradicting clear statutory language and long-standing

Page 1 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

agency policy, and arbitrarily and capriciously applying the law differently to similarly situated groups of immigrants.

Plaintiff States' task of implementing the confusing and contradictory guidance was already near impossible. But USDA's guidance further instructed that it would become effective *the very next day*—in contravention of statutory and regulatory requirement of a 120-day exclusionary period for implementing agency guidance—after which States would face new severe penalties tied to any errors they make in the application of these complex changes to their agency systems. As a result, Plaintiff States are given the choice of either following guidance that deprives many thousands of lawful immigrants of necessary food assistance to which they are entitled, or else risk facing billions of dollars in penalties—a potentially existential threat to many States' ability to administer SNAP *at all*. On the eve of Thanksgiving, Plaintiff States seek a preliminary injunction to prevent these grave outcomes.

## BACKGROUND

### I.     Non-Citizen Eligibility for SNAP Under the FNA and PRWORA

Two separate statutes govern non-citizen eligibility for SNAP benefits: the Food and Nutrition Act of 2008 (FNA), 7 U.S.C. § 2011 *et seq.*, and the Personal Responsibility and Work Opportunity Act (PRWORA), 8 U.S.C. § 1601 *et seq*. The FNA limits SNAP eligibility to people who are U.S. citizens, U.S. nationals, and individuals who fall within only a few specified categories of non-citizens. 7 U.S.C. § 2015(f). Non-citizens who are eligible for SNAP under the FNA must also meet the eligibility requirements in PRWORA, which imposes a five-year waiting period applicable to some—but not all—immigrant groups before they can apply for SNAP benefits. 8 U.S.C. § 1612(a).

### II.    The OBBB's Changes to SNAP Eligibility

On July 4, 2025, Congress passed the One Big Beautiful Bill Act, Public Law 119-21 (OBBB). Section 10108 of the OBBB amended the FNA, 7 U.S.C. § 2015(f), narrowing the specified categories of non-citizens who are eligible for SNAP benefits, which had previously

Page 2 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

included groups such as refugees and individuals granted asylum. Now, the FNA, as amended by the OBBB, restricts eligibility for SNAP to U.S. citizens and nationals, and only three other groups: (1) lawful permanent residents, *see* 8 U.S.C. §§ 1101(a)(15), (20); (2) Cuban and Haitian Entrants; and (3) individuals lawfully residing in accordance with a Compact of Free Association. 7 U.S.C. § 2015(f). These changes were effective immediately as of July 4, 2025. *Id.*

The focus of this case is the first category: lawful permanent residents, or LPRs, who are also known as "green card" holders, and who remain statutorily eligible for SNAP even after the OBBB. These are individuals who are lawfully authorized to live permanently in the United States. They often hold another immigration status before becoming LPRs. For example, individuals who are refugees or who are granted asylum can apply to become LPRs after residing in the United States for one year in that status. 8 U.S.C. § 1159(a), (b). The process of becoming an LPR for those in the United States is referred to as "adjusting status."

The OBBB did *not* amend the SNAP eligibility provisions of PRWORA, which imposes a five-year waiting period on some groups, but exempts others. Specifically, PRWORA provides that any LPR can become eligible for SNAP after residing in the United States for five years. 8 U.S.C. § 1612(a)(2)(L). But some categories of LPRs do not need to wait five years and instead can become eligible immediately, including, for example individuals who are blind or disabled, children, LPRs who have worked 40 qualifying quarters of coverage, or individuals who are in the first seven years after being admitted as a refugee or granted asylum. *Id.* §§ 1612(a)(2)(A)(i)-(ii), 1612(a)(2)(B) 1612(a)(2)(F), 1612(a)(2)(J).

In sum: the current law allows *all* LPRs to be eligible for SNAP so long as they meet other statutory requirements, irrespective of whatever immigration status they held before becoming an LPR. *See* 7 U.S.C. § 2015(f)(2)(B). PRWORA additionally requires that some, but not all, of these LPRs wait until they have resided in the U.S. for five years to become eligible for SNAP. 8 U.S.C. § 1612(a)(2).

Page 3 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

### III.    The OBBB's Imposition of New State Penalties

Until passage of the OBBB, the federal government covered the full cost of SNAP benefits (though States shared administrative costs). Section 10105 of the OBBB amended the FNA to create a new "State Quality Control Incentive," under which a State is penalized with an increasing share of the cost of SNAP benefits if its payment error rate goes above a percentage threshold. 7 U.S.C. § 2013(a)(1)-(2). The OBBB adopted the existing definition of "payment error rate," which includes as an error when a State issues benefits to "households that fail to meet basic program eligibility requirements." 7 U.S.C. § 2025(c)(2)(B)(i); *see also* 7 U.S.C. § 2013(a)(2)(A). In Fiscal Year (FY) 2024, the average State payment error rate was 10.93% and only eight States had a payment error rate under 6%.[1]

Under the FNA as amended by the OBBB, if a State's payment error rate is between 6% and 8%, it must fund 5% of all SNAP benefits paid to its residents. 7 U.S.C. § 2013(a)(2)(B)(i)(I)-(II). The share states must pay increases to 10% if a State's error rate exceeds 8% and to 15% if the State's error rate exceeds 10%. *Id.* 7 U.S.C. § 2013(a)(2)(B)(i)(III)-(IV).  These penalties are potentially hundreds of millions of dollars or even more than a billion dollars, per state, per year. *See,* NY-DeMarco Decl. ¶ 29 (up to $1.2 billion); *infra* Background Section VI.C.

Errors made by States during the current fiscal year will bear on States' assessed penalties. Specifically, these payments start as early as FY 2028, when the error rate will be calculated either based on errors in FY 2025 (which recently ended) or FY 2026 (the current fiscal year). *Id.* § 2013(a)(2)(B)(ii)(I). Starting in FY 2029, the error rate will be calculated with errors from three years prior, meaning the FY 2029 error rate will be determined by errors in the current fiscal year, FY 2026. *Id.* § 2013(a)(2)(B)(ii)(II). These penalties may have a delayed implementation to FY 2029 or FY 2030 for States with especially high error rates in FY 2025 and FY 2026, respectively, but States will nonetheless be penalized for errors which take place in the current fiscal year (FY 2026) in FY 2029, or the next (FY 2027) in FY 2030. *Id.* § 2013(a)(2)(B)(iii).

---

[1] USDA, Payment Error Rates Fiscal Year 2024, https://perma.cc/728C-N3S4.

Page 4 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

## IV.     Exclusionary Period

The SNAP statute and regulations provide a framework that dictates when USDA may count a State's errors for purposes of calculating a State's error rate and provide that for a certain period (called the "exclusionary period"), errors "shall not be included in the payment error rate." 7 U.S.C. § 2025(c)(3). Specifically, SNAP regulations provide for a "120-day exclusionary period" following "application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law," so that errors during that period do not count towards a State's error rate. 7 C.F.R. § 275.12(d)(2)(vii); *see also* 7 U.S.C. § 2025(c)(3)(A). Separate from the exclusionary period, any errors (at any time) resulting "from actions based on policy information approved or disseminated, in writing, by" USDA "shall not be included in the payment error rate." 7 U.S.C. § 2025(c)(3)(B).

## V.     USDA's October 31st Guidance

After the OBBB was passed on July 4, 2025, States waited months to receive guidance from USDA on how to implement its changes to non-citizen SNAP eligibility. On August 29, 2025, and September 4, 2025, USDA promulgated guidance related to other changes made to the SNAP program separate from the non-citizen eligibility changes.[2] As to the non-citizen eligibility changes, the September 4 guidance stated that USDA would issue "detailed guidance on implementation of [OBBB's] provisions" by September 30. No guidance came by September 30, or even by October 30.

On October 31, 2025, in the midst of the longest government shutdown in American history and on the eve of USDA's suspension of SNAP benefits to all recipients purportedly due to the shutdown, USDA issued a guidance memorandum to SNAP State Agencies ("the Guidance"),

---

[2] USDA—FNS, "Supplemental Nutrition Assistance Program Implementation of the One Big Beautiful Bill Act of 2025—Treatment of Energy Assistance Payments" (Aug. 29, 2025), *https://perma.cc/2ESV-THTW*; USDA—FNS, "Supplemental Nutrition Assistance Program Provisions of the One Big Beautiful Bill Act of 2025—Information Memorandum" (Sep. 4, 2025), https://perma.cc/3J3S-QDJY [hereinafter "USDA Sept. 4 Guidance"].

Page 5 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

which was its first guidance purporting to implement changes to non-citizens' eligibility for SNAP benefits effectuated by Section 10108 of the OBBB. The Guidance is appended to the complaint as Exhibit A, ECF No. 1-1 [hereinafter "Guidance"].[3]

### A. The Guidance's Categorical Statements About Eligibility for SNAP Post-OBBB

The Guidance contains a chart that describes many groups of non-citizens' eligibility for SNAP "Post-OBBB." Guidance at 5-8. The chart categorizes many groups of non-citizens as "Not eligible unless an LPR," including: Certain American Indians Born Abroad, Hmong or Highland Laotian Tribal Members, Conditional Entrants, Battered Aliens, and Victims of Severe Trafficking and Certain Family Members. *Id.* at 7.[4] This indicates that individuals in each of these groups can become eligible for SNAP upon adjusting status to become an LPR.

It describes many other groups of non-citizens as categorically "Not eligible" for SNAP, including: Refugees, Individuals Granted Asylum, Parolees, Deportation Withheld, and Certain Afghan Nationals Granted Parole Between July 31, 2021, and September 30, 2023 ("Certain Afghan Parolees"), and Certain Ukrainian Nationals Granted Parole Between February 24, 2022 and September 30, 2024 ("Certain Ukrainian Parolees"). *Id.* at 7-8. Thus, according to the Guidance, individuals in each of these groups can never become eligible for SNAP, even if they adjust status to become an LPR.

---

[3] The Guidance is also available at https://fns-prod.azureedge.us/sites/default/files/resource-files/OBBB-Implementation-Memo-Alien-SNAP-Eligibility-Oct31.pdf (live as of November 25, 2025) and https://perma.cc/MQU6-NLTF (archived November 21, 2025).

[4] Plaintiffs' Complaint and this motion adopt the names and definitions for the categories of "Alien Groups" in Attachments 1 and 2 to the Guidance, unless otherwise noted.

Page 6 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

**B.  The Guidance's Explanation of PRWORA's Five-Year Waiting Period**

The Guidance's chart states that LPRs are "[e]ligible [for SNAP] after a 5-year waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements." *Id.* 5.  It further provides that "LPRs may still be eligible for SNAP without a waiting period if they meet one or more of the following conditions:

- Are under 18 years old
- Have 40 qualifying work quarters
- Are blind or disabled
- Were lawfully residing in the U.S. and 65 or older on August 22, 1996
- Have a U.S. military connection
- Are admitted to the United States as an Amerasian immigrant
- Are an American Indian born abroad
- Certain Hmong or Highland Laotian tribal members"

*Id.* at 5-6. The Guidance does not include in this list LPRs who previously had any of the following immigration statuses: Refugees, Individuals Granted Asylum, Deportation Withheld, Certain Afghan and Ukrainian Parolees, Iraqi and Afghan Special Immigrants (SIV), and Victims of Severe Trafficking (collectively, "Humanitarian Immigrant Groups"). Because these groups are not included on the Guidance's list of exceptions to the five-year waiting period, the Guidance designates these groups as subject to a "5-year waiting period." *Id.* at 5.

**C.  The Guidance's Stated Exclusionary Period**

The Guidance was issued on Friday, October 31, 2025, 119 days after the OBBB went into effect. As to the exclusionary period, the Guidance states that "FNS will . . . hold States harmless for Quality Control (QC) purposes for 120 days from the required implementation date in accordance with 7 CFR 275.12(d)(2)(vii)." Guidance at 3. The Guidance goes on to say, "[a] 120-day variance exclusion is permitted for the misapplication of changes in Section 10108 of the OBBB to new and ongoing SNAP households until the exclusionary period end date on November 1, 2025." *Id.* at 4. In other words, the Guidance started the 120-day exclusionary period on July 4, 2025, the date that OBBB went into effect, and ended it November 1, 2025, one day after issuing the Guidance.

Page 7 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

## VI.    The Impact of the Guidance on the Plaintiff States

SNAP was created by Congress to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. For Plaintiff States, SNAP benefits are a key part of the strategy to combat hunger, including in households where some or all members are not U.S. citizens. SNAP is crucial to Plaintiff States' work ensuring that their residents have access to nutritious food, that children do not go to bed hungry, and that the most vulnerable members of our society have sustenance.

### A.  State Agencies' Administration of SNAP

While SNAP benefits are federally funded, federal law requires that States pay half of the cost of administering the benefits, while the federal government pays the balance. 7 U.S.C. § 2025(a) (States' share of administrative costs will increase to 75% starting in FY 2027). Additionally, State agencies are tasked with administering SNAP benefits within their states. Given the complexity of eligibility rules for SNAP benefits and the logistical tasks associated with providing monthly benefits via Electronic Benefit Transaction (EBT) cards, this is a massive undertaking. States are responsible for the issuance, control, and accountability of SNAP benefits and EBT cards; ensuring program integrity; and supervising local transitional assistance offices' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2. Over the years as Congress has amended the eligibility provisions governing SNAP benefits for non-citizens, Plaintiff States have implemented these changes.

State agencies are responsible for checking SNAP applicants' and recipients' immigration and citizenship status. They typically do so via the Systematic Alien Verification for Entitlements (SAVE) system, a federal government system that is run by the United States Citizenship and Immigration Services. *See, e.g.*, OR-Hoffman Decl. ¶ 15. But the SAVE system merely states an individual's current immigration status; it does *not* tell states whether an applicant or recipient is eligible for SNAP. NJ-Adelman Decl. ¶ 25. Each state agency's staff must review the output from

Page 8 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

SAVE to determine each individual's SNAP eligibility based on their immigration status, which is a "a manual, often painstaking, process." *Id.*; *see also* DC-Campbell Decl. ¶¶ 8, 12.

Plaintiff States maintain their case files for SNAP participants in computer systems that hold participants' data. In many states, that data system is integrated across multiple public benefits programs, not just SNAP. *See, e.g.*, OR-Hoffman Decl. ¶ 16; RI-Merolla-Brito Decl. ¶ 17; MN-Perry Decl. ¶ 17. Any changes to SNAP eligibility requirements require re-programming those computer systems to make sure that data is accurately captured and reflected. *Id.* States must implement these changes to their systems not only for the OBBB's changes to non-citizen eligibility, but also for other changes to the SNAP program made by the OBBB. *See* NC-Hogan Decl. ¶ 17 (describing breadth of changes).

## B.  State Agencies' Implementation of the OBBB and the Guidance

Starting the week after the OBBB was passed, States repeatedly requested that USDA issue implementation guidance and asked USDA for instructions on how to implement the changes to the non-citizen eligibility provisions. *See, e.g.*, NY-DeMarco Decl. ¶ 20; RI-Merolla-Brito Decl. ¶ 18; MI-Frisch Decl. ¶ 18; IL-Reagan Decl. ¶¶ 16-17. USDA repeatedly acknowledged that States would need implementation guidance and told states it was forthcoming. *See, e.g.*, NY-DeMarco Decl. ¶ 20; RI-Merolla-Brito Decl. ¶ 14; MD-Lopez Decl. ¶¶ 22-25. For example, on July 9, 2025, Massachusetts emailed USDA to ask whether it should await guidance before implementing any OBBB changes; USDA told Massachusetts to wait and said that it "is working on guidance that will address implementation." MA-Cole Decl. ¶ 14; *see also id.* ¶¶ 16-17. And, as noted above, on September 4, USDA told all states that it would issue further guidance. During the government shutdown, many relevant USDA staff were furloughed, and USDA cancelled pre-scheduled calls with States and their associations that would have given States an opportunity to seek clarification on the OBBB implementation and the Guidance. NY-DeMarco Decl. ¶ 15; CT-Hadler Decl. ¶ 15.

Guidance regarding statutory changes "has always been the first line of communication from USDA" and is "necessary" for Plaintiff States to be able to properly understand and

Page 9 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

communicate the effects of statutory changes. NJ-Adelman Decl. ¶ 29. Accordingly, most Plaintiff States spent the months from July through October preparing their systems and staff to be able to implement the required changes to non-citizen eligibility as soon as USDA implemented guidance directing them how to implement those changes. *See*, *e.g.*, NY-DeMarco Decl. ¶ 23; OR-Hoffman Decl. ¶ 17; NJ-Adelman Decl. ¶ 18; CO-McClelland Decl. ¶ 17; DE-Hall Decl. ¶ 20; MI-Frisch Decl. ¶ 18; MN-Perry Decl. ¶ 18; NM-Armijo ¶ 24; NC-Hogan Decl. ¶ 18.

For example, New York spent those months preparing to issue local policy guidance, preparing updates to workers tools such as forms and desk guides, identifying training curricula that must be updated, and conducting an analysis of what systems changes would be needed to accurately categorize individuals' non-citizen status. NY-DeMarco Decl. ¶ 23; *see also*, *e.g.*, NM-Armijo ¶¶ 24-28 (similar steps taken by New Mexico). As another example, Rhode Island created an interagency Federal Compliance Advisory Group to undertake the review and analysis required to assess the impacts of OBBB on the state's public assistance programs, including the SNAP non-citizen eligibility changes. RI-Merolla-Brito Decl. ¶ 18; *see also* WA-Reyes Decl. ¶ 23 (similar group with weekly meetings). Plaintiff States were waiting for guidance from USDA that would address key practical questions regarding implementation, "such as whether they would be applied at recertification/application or some other cadence" and substantive issues relating to eligibility, such as "how to determine eligibility for cases where an individual's immigration status was adjusted (such as from refugee to legal permanent resident)." CT-Hadler Decl. ¶ 20; *see also* CO-McClelland Decl. ¶ 17 (Colorado "deferred implementation pending official guidance, as the new OBBB program changes presented minimal information and interpretive ambiguities that required clarification"); MI-Frisch Decl. ¶ 18.

But not all Plaintiff States took the same approach. To avoid the risk that USDA may hold States responsible for errors related to OBBB's changes notwithstanding USDA's failure to promulgate guidance, some Plaintiff States began to attempt to implement the OBBB changes to non-citizen eligibility even *before* guidance from USDA explaining how they should do so. *See*

Page 10 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

OR-Hoffman Decl. ¶ 20; MA-Cole ¶ 23; IL-Reagan Decl. ¶ 20. Massachusetts, for example, prepared its own guidance on how to verify non-citizen eligibility and input it into the state's computer systems, which it released on October 28. MA-Cole ¶¶ 23-25. As another example, Maine began to implement the OBBB's changes through performing a manual review of current case files. *See, e.g.*, ME-Yaffe Decl. ¶ 17.

Once the Guidance was promulgated on October 31, 2025, it caused significant confusion among Plaintiff States' benefit agencies, who are unsure how to resolve the apparent conflict between the language of the OBBB itself and the Guidance and how to provide accurate information to their staff on how to comply with the non-citizen eligibility rules for SNAP. *See, e.g.*, NY-DeMarco Decl. ¶¶ 24-26; NJ-Adelman Decl. ¶¶ 21-22; CT-Hadler Decl. ¶ 23; DE-Hall Decl. ¶ 22 (Delaware is "in a state of operational uncertainty"); MA-Cole ¶ 28 (Massachusetts "remains in limbo"); MN-Perry Decl. ¶¶ 19-20; IL-Reagan Decl. ¶ 22.

Some States like Connecticut "pause[d] the issuance of internal guidance and training, as well as system updates, pending additional necessary clarification from" USDA. CT-Hadler Decl. ¶ 21. States like Oregon that had begun to implement the OBBB changes to non-citizen eligibility have stopped that implementation due to the confusion caused by the Guidance. OR-Hoffman Decl. ¶¶ 21-23; MA-Cole Decl. ¶ 28; *see also* WA-Reyes Decl. ¶ 26 (Washington had to "halt system changes and adjust coding"); WI-Standridge Decl. ¶¶ 17, 20–21; IL-Reagan Decl. ¶¶ 20-22. Other States like Colorado are "blindly moving forward with implementation of [the Guidance] despite ongoing uncertainty." CO-McClelland Decl. ¶ 20; *see also* NM-Armijo ¶¶ 29-30. Maine, which had already spent over 1,000 hours reviewing individuals' files for compliance with the OBBB, is beginning to re-do that review. ME-Yaffe Decl. ¶¶ 18, 21. USDA has failed to provide any further clarifications to States who have faced this confusion from the Guidance. For example, Hawaiʻi contacted USDA on the very day the Guidance was issued to request clarification regarding the five-year waiting period's application to LPRs and has not received a response to date. HI-Morishige Decl. ¶¶ 14, 21.

Page 11 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

### C. The Guidance Harms Plaintiff States

The Guidance directs the exclusion of many thousands of non-citizens from SNAP who are in fact eligible under the statutory requirements, including individuals here in Oregon. OR-Hoffman Decl. ¶ 28; NY-DeMarco Decl. ¶ 30; NJ-Adelman Decl. ¶ 33; ME-Yaffe Decl. ¶ 23; RI-Merolla-Brito Decl. ¶ 24; MA-Cole Decl. ¶ 34; MI-Frisch Decl. ¶ 23; MN-Perry Decl. ¶ 23; WA-Reyes Decl. ¶ 34. These individuals will lose critical food resources and, furthermore, in some Plaintiff States, could lose access to other public benefits that are tied to SNAP eligibility, such as heating assistance and free school lunch. NJ-Adelman Decl. ¶¶ 37-39. States with their own food assistance programs similar to SNAP will face a greater demand for those programs, necessitating greater out of pocket expenses by states. ME-Yaffe Decl. ¶ 24; RI-Merolla-Brito Decl. ¶ 25; MI-Frisch Decl. ¶ 24; WA-Reyes Decl. ¶ 35; IL-Reagan Decl. ¶ 28. In Minnesota, for example, the state estimates that 3,500 people that were previously eligible for SNAP will now be eligible for state-funded food benefits, at a cost to the State of over $5 million. MN-Perry Decl. ¶ 23. In Oregon, there will be pressure on local food banks, who had 2.5 million visits last year. OR-Hoffman Decl. ¶ 29; *see also* DE-Hall Decl. ¶ 27; MA-Cole Decl. ¶¶ 35-36. There will also be cascading economic impacts to Plaintiff States. MA-Cole Decl. ¶¶ 37-38.

In addition to the harms to States from non-citizens rendered ineligible, States will face significant costs in complying with the Guidance. Implementing a large-scale change such as the changes to non-citizen eligibility at issue here requires "significant efforts that are both resource- and time-intensive." NJ-Adelman Decl. ¶ 28. States will need to revise their intake and certification procedures for new and renewing applicants for SNAP benefits. *See, e.g.*, NY-DeMarco Decl. ¶ 27; DC-Campbell Decl. ¶ 13. They will need to make new intake forms. *See, e.g.*, OR-Hoffman Decl. ¶ 25. They will need to contact all potentially affected households within the implementation period. *See, e.g.*, OR-Hoffman Decl. ¶¶ 18, 20-21. States will need to re-program their computer systems to ensure accuracy. *See, e.g.*, OR-Hoffman Decl. ¶ 25. This will take months (for example, up to five months in Minnesota) and cost thousands of dollars (for example, over $65,000 in

Page 12 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

Maine). MN-Perry Decl. ¶ 22; ME-Yaffe ¶ 21; *see also* NM-Armijo ¶ 28 (fourteen weeks in New Mexico). In the meantime, some states will need to use manual "workarounds" that raise the chances of other errors. *See* DE-Hall Decl. ¶ 25. States will need to re-train their staff accordingly, taking hundreds of hours of staff time. *See, e.g.*, NY-DeMarco Decl. ¶ 27; NJ-Adelman Decl. ¶ 28; ME-Yaffe ¶ 21 (more than 800 hours). They will need to do outreach to the public to ensure advocates and others are apprised of changes. *See, e.g.*, OR-Hoffman Decl. ¶ 25. States will face additional administrative hearings from non-citizens excluded from SNAP. *See, e.g.*, NY-DeMarco Decl. ¶ 27; OR-Hoffman Decl. ¶ 25; NJ-Adelman Decl. ¶ 36; CO-McClelland Decl. ¶ 21. Many States will also need to update their State regulations and guidance to conform with the federal changes. *See, e.g.*, ME-Yaffe Decl. ¶ 17; RI-Merolla-Brito Decl. ¶ 20; CO-McClelland Decl. ¶ 21. In some instances, these compliance costs will cause other problems, for example, pushing back Hawaii's transition to a new eligibility system by months. HI-Morishige Decl. ¶ 18. Altogether, States require significant time and resources to implement these changes. *See, e.g.*, NC-Hogan Decl. ¶ 23 (estimating total implementation cost in North Carolina as $1.5 million).

Second, Plaintiff States face an elevated risk of massive financial penalties due to increased error rates caused by the Guidance. *See, e.g.*, OR-Hoffman Decl. ¶ 26. Specifically, the Guidance risks increasing Plaintiff States' error rates both in its immediate application and because it conflicts with the statutory language. It is impossible for Plaintiff States to undertake any of these compliance steps, let alone all of them, in the twenty-four hours that was given to comply with the Guidance. Historically, States have many more errors as they figure out how to implement new guidance, so there is a significant chance that Plaintiff States' error rates will increase if they are counted starting the day after the Guidance went into effect. *See* NY-DeMarco Decl. ¶ 28; NJ-Adelman Decl. ¶ 35 (States face "significant and crippling financial penalties, without even having had the benefit of USDA-FNS's own interpretation of OBBB before being required to implement it."); MA-Cole Decl. ¶ 32; MI-Frisch Decl. ¶ 22 ("[L]eaving States with a single weekend day to iron out any issues . . . virtually guarantees an inflated error rate."). Moreover, the inherent conflict

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

between the Guidance and the statutory requirements means that Plaintiff States face an increased risk of errors because they are unsure how to comply with the two conflicting mandates. NY-DeMarco Decl. ¶ 28; RI-Merolla-Brito Decl. ¶ 20; MA-Cole Decl. ¶ 31. Errors regarding non-citizen eligibility are particularly harmful to states due to the way they are counted during the review process. MA-Cole Decl. ¶ 33.

The magnitude of the error rate penalties cannot be overstated. The penalties could be "financially ruinous" for Plaintiff States. OR-Hoffman Decl. ¶ 26. In larger states like New York, the potential penalties top $1 billion per year. *See* NY-DeMarco Decl. ¶ 29. Here in Oregon, the penalties could top $250 million per year, OR-Hoffman Decl. ¶ 27, and other Plaintiff States' potential penalties are similar. *See, e.g.*, NJ-Adelman Decl. ¶¶ 30, 32 ($300 million); MA-Cole Decl. ¶ 29 ($400 million); WA-Reyes Decl. ¶ 33 ($200 million). In fact, the magnitude of these penalties may force some states to stop participation in SNAP altogether. In North Carolina, for example, "[s]uch a penalty could effectively end the provision of SNAP," leaving over a million North Carolinians without benefits. NC-Hogan Decl. ¶ 25.

Finally, the uncertainty caused by the Guidance will contribute to eroding trust between immigrant communities and states benefits agencies. *See, e.g.*, NY-DeMarco Decl. ¶ 32; OR-Hoffman Decl. ¶ 30; NJ-Adelman Decl. ¶ 40. This is likely to lead to a chilling effect on immigrants' participation in SNAP, even where eligible. *See, e.g.*, NY-DeMarco Decl. ¶ 33; OR-Hoffman Decl. ¶ 31. This will cause a drain on Plaintiff States' social safety nets, and any chilling effect will put further pressure on Plaintiff States' overburdened food support networks. *See, e.g.*, OR-Hoffman Decl. ¶ 29.

## VII.    States' Letter to USDA

On November 19, 2025, Plaintiff States wrote to USDA, requesting that the agency withdraw the Guidance. *See* Compl. Ex. B, ECF No. 1-2.[5] The letter outlined the legal errors

---

[5] The Letter is also available at https://perma.cc/22VT-HMCZ (archived November 21, 2025).

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

contained in the Guidance and asked USDA to rescind the Guidance and reissue a corrected guidance memorandum. The States requested a response by Monday, November 24, 2025. The States did not receive any response from USDA. On November 26, 2025, Plaintiffs filed suit.

<strong>ARGUMENT</strong>

Plaintiffs now seek a preliminary injunction prohibiting Defendants from enforcing the Guidance in Plaintiff States because the Guidance is inconsistent with the statutory eligibility provisions of the FNA and PRWORA and is also arbitrary and capricious. Alternatively, the Court should stay the implementation date of the Guidance in Plaintiff States. The Court should also enjoin Defendants from counting errors stemming from the misapplication of changes in Section 10108 of the OBBB to new and ongoing SNAP households in Plaintiff States' error rates in the absence of legally correct Guidance or regulations.

Plaintiffs seeking a preliminary injunction must demonstrate that they are: (1) likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors merge when the federal government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). With regards to a stay under the Administrative Procedure Act, "the factors used to determine whether to issue a § 705 stay under the APA are the same equitable factors used to consider whether to issue a preliminary injunction." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 995 (9th Cir. 2025). Because Plaintiffs have met each of the factors, the Court should enter a preliminary injunction or, in the alternative, should stay the implementation date of the Guidance.

## I.     The Court Has Jurisdiction Over This Action

Plaintiff States have standing and their claims are ripe because the Guidance has "definite and concrete" effects on Plaintiff States, starting immediately. *Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 943–44 (9th Cir. 2021). The Guidance itself states the end of the "exclusionary period"—that is, the date the Plaintiff States will no longer be held "harmless" for

Page 15 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

failing to implement the Guidance—was November 1, 2025, meaning that the Guidance is already in effect. Guidance 3-4. As detailed above, *see supra* Background Section VI, and below, *see infra* Argument Section III, Plaintiff States face significant harm from the Guidance that will be redressed only by Court intervention. As the Guidance renders thousands of their residents ineligible for SNAP, Plaintiff States face significant out-of-pocket expenses in the form of an increase in state-funded food benefits.[6] Plaintiff States face significant compliance costs—that is, tremendous time and resources to implement the flawed Guidance. All Plaintiff States also face an increased possibility of a massive out-of-pocket expense in the form of a penalty caused by the Guidance increasing their error rates, and by the application of the error rates starting the very day after the Guidance was issued. And, the Guidance will harm States by creating distrust among immigrant communities and by further straining the States' social safety nets.

## II.     Plaintiffs Are Likely to Succeed on the Merits

Plaintiff States are likely to succeed on their claims that the Guidance is both contrary to law and arbitrary and capricious, in violation of the APA.

### A.  The Guidance is Final Agency Action Subject to Review Under the APA

The Guidance is a "final agency action" subject to review under the APA, 5 U.S.C. § 704, because it: (1) "mark[ed] the consummation" of agency decision-making, and (2) determined "rights or obligations . . . from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (cleaned up). Finality is "interpreted in a pragmatic and flexible manner," "focus[ing] on the practical and legal effects of the agency action." *Saliba v. U.S. Sec. & Exch. Comm'n*, 47 F.4th 961, 967 (9th Cir. 2022) (quoting *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1504 (9th Cir. 1995)). "The final agency action requirement is meant to prevent premature intrusion by courts into the agency's deliberations, not to insist that parties keep knocking at the

---

[6] This alone is enough for standing, since "the presence of one party with standing is sufficient." *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1164 (9th Cir. 2024) (quotation omitted).

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

agency's door when the agency has already made its position clear." *Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*, 128 F.4th 1089, 1109 (9th Cir. 2025) (cleaned up).

As to the first prong, the Guidance "mark[ed] the consummation" of USDA's decision-making because the Guidance by its own terms applied with immediate and devastating effect to all Plaintiff States as of November 1, 2025, the day after it was issued. *See Bennett*, 520 U.S. at 178; Guidance 3-4. There is nothing to suggest that the Guidance is "merely tentative or interlocutory." *Bennett*, 520 U.S. at 178. The Guidance states that States "must immediately apply" the new eligibility criteria. Guidance 3. The Guidance is referred to on USDA's website as a "Policy,"[7] and represents a "definitive statement of the agency's position," which is a hallmark of finality. *Prutehi Litekyan*, 128 F.4th at 1108. And if there was any doubt whether USDA has "completed its decisionmaking process," *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (cleaned up), USDA itself has put that to rest by providing that States would be held accountable for errors the very next day.

As to the second prong, the Guidance determines "rights or obligations . . . from which legal consequences will flow." *Bennett,* 520 U.S. at 178. The Guidance has "a direct and immediate effect on the day-to-day business" of Plaintiffs States, sufficient for finality. *See Or. Nat. Desert Ass'n*, 465 F.3d at 987 (cleaned up); *see also Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 780 (9th Cir. 2000). As to SNAP beneficiaries, the Guidance indicates that thousands of non-citizens who were eligible for SNAP one day were suddenly ineligible the next based only on the Guidance itself. That effect could not be more "direct and immediate." *Or. Nat. Desert Ass'n*, 465 F.3d at 987. As to Plaintiff States, there is no question that "immediate compliance . . . is expected." *Prutehi Litekyan*, 128 F.4th at 1108.  The Guidance was sent to "All SNAP State Agencies" and is clear that USDA fully intends to count any errors stemming from the Guidance against States starting November 1, 2025, with potentially catastrophic consequences. *See Appalachian Power*

---

[7] USDA—FNS, "Supplemental Nutrition Assistance Program (SNAP) Implementation of the One Big Beautiful Bill Act of 2025—Alien SNAP Eligibility" (Oct. 31, 2025), https://perma.cc/R5BR-8JFR.

Page 17 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

*Co. v. E.P.A.*, 208 F.3d 1015, 1023 (D.C. Cir. 2000) (finding action final where agency had "given the States their 'marching orders' and . . . expect[ed] the States to fall in line").

Plaintiffs cannot be required to disobey the Guidance and risk an increased error rate and the devastating penalties that follow in order to challenge the Guidance. *Cf. MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat[.]"). "Far from being purely advisory," the Policy Memo "lays the groundwork for" USDA's future determination of States' error rates, with billions of dollars at stake. *Prutehi Litekyan*, 128 F.4th at 1112 (cleaned up); *Doe 1 v. Mayorkas*, 530 F. Supp. 3d 893, 912 (N.D. Cal. 2021) (agency policies "that attach legal consequences to future proceedings satisfy the finality analysis").

### B. Plaintiffs Are Likely to Succeed on the Merits of their Claim that the Guidance is Contrary to Law Because It Contradicts the Statutory Eligibility Provisions (Count I)

#### 1. All Non-Citizens Who Adjust Status to LPR Status Are Eligible for SNAP Benefits

The Guidance's distinction between groups that are "Not eligible unless an LPR" and "Not eligible," Guidance at 5-8, *supra* Background Section V.A, has no basis in the law. By creating a false dichotomy between groups that are all ineligible unless they adjust to LPR status, it erroneously indicates that some groups can never become eligible for SNAP benefits. Under the FNA as amended by the OBBB, LPRs are eligible to participate in SNAP, regardless of what status they held prior to adjusting to LPRs. 7 U.S.C. § 2015(f)(2)(B). As USDA regulations provide, "Each category of eligible alien status stands alone for purposes of determining eligibility. Subsequent adjustment to a more limited status does not override eligibility based on an earlier less rigorous status." 7 CFR 273.4(a)(6)(iv); Guidance at 5.

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

The groups categorized by the Guidance as "Not eligible unless an LPR"[8] and those categorized as "Not eligible"[9] are equally situated. After the passage of the OBBB, members of both groups are ineligible for SNAP, unless they have adjusted to LPR status. All these groups satisfy PRWORA's requirements as well, which were unchanged by the OBBB. 8 U.S.C. §§ 1612(a)(2)(A),(G), (K), (L)); 8 U.S.C. §§ 1641(a), (b); 7 CFR § 273.4(a)(6)(i)-(ii).

By indicating that Refugees, Individuals Granted Asylum, Parolees, and Certain Afghan and Ukrainian Parolees can never become eligible for SNAP even after adjusting to LPR status, the Guidance contradicts the plain language of the law. In fact, Congress has already provided an explicit pathway for Refugees and Individuals Granted Asylum to adjust status and become LPRs after one year. *See* 8 U.S.C. §§ 1159(a)(2), (b). While there is no similarly explicit pathway Parolees, their status also does not prohibit them from gaining LPR status. *See id*; 8 U.S.C. § 1255(a). The Guidance erroneously indicates that a person's immigration status *prior* to adjusting to LPR status is material to their eligibility once becoming an LPR and is therefore contrary to law.

### 2. Humanitarian Immigrant Groups Are Not Subject to PRWORA's Five-Year Waiting Period

The Guidance's omission of Humanitarian Immigrant Groups (as defined *supra* Background Section V.B) from its list of groups that are exempt from PRWORA's five-year waiting period contradicts the statutory eligibility requirements. Prior to the OBBB going into effect, non-citizens who entered the United States as refugees, were granted asylum, or were granted humanitarian parole were eligible for SNAP under the FNA, based on their status at the time of their admission or parole. OBBB eliminated these categories of eligibility. However, the five-year waiting period imposed on some non-citizens before they can apply for SNAP benefits comes from PRWORA, not the FNA. PRWORA and its exceptions were unchanged by the OBBB.

---

[8] Certain American Indians Born Abroad, Hmong or Highland Laotian Tribal Members, Conditional Entrants, Battered Aliens, and Victims of Severe Trafficking and Certain Family Members. Guidance at 7.

[9] Refugees, Individuals Granted Asylum, Parolees, Certain Afghan Parolees, Certain Ukrainian Refugees, and Deportation Withheld. Guidance at 7–8.

Page 19 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

Even though Humanitarian Immigrant Groups are no longer eligible for SNAP *before* they adjust to LPR status, they still retain their exemption from PRWORA's five-year waiting period *after* they adjust to LPR status.

PRWORA provides that "qualified aliens" may only be eligible for SNAP if they satisfy an "exception" under the statute. 8 U.S.C. §§ 1612(a)(1), (a)(2). One exception provides that LPRs may become eligible for SNAP after having resided in the U.S. as a qualified alien for at least five years, *id.* § 1612(a)(2)(L), but other exceptions do not have a time limit attached. *Id.* §§ 1612(a)(2)(A)-(K), (N). Since Humanitarian Immigrant Groups are all exempted without a waiting period under PRWORA, they are eligible as soon as they adjust to LPR status. 8 U.S.C. § 1612(a)(2)(A)(i)-(iii).

The Guidance recognizes that several groups are still exempt from PRWORA's five-year waiting period. *See* Guidance at 5-7 (listing categories as "Eligible immediately" or "without a waiting period" after becoming LPRs)). There is no basis to omit Humanitarian Immigrant Groups from this category of exempted groups. PRWORA exempts Humanitarian Immigrant Groups from the prohibition on receiving SNAP benefits "until 7 years after the date" that they are admitted as a refugee, granted asylum, or their deportation is withheld, 8 U.S.C. §§ 1612(a)(2)(A)(i)–(iii), the very same exception applicable to Cuban and Haitian Entrants and Amerasians. *Id.* §§ 1612(a)(2)(A)(iv), (v). Inexplicably, the Guidance states Amerasians and Cuban and Haitian Entrants are not subject to the five-year waiting period but does not do the same for Humanitarian Immigrant Groups. *See* Guidance at 6-7. Certain Afghan and Ukrainian Parolees, Iraqi and Afghan SIV, and Victims of Severe Trafficking are granted the same eligibility for SNAP as Refugees by statute.[10] They therefore are equally exempt from PRWORA's five-year waiting period once adjusting to LPR status.

---

[10] See, e.g., The Extending Government Funding and Delivering Emergency Assistance Act, Pub. L. 117-43 § 2502(b)(1), 135 Stat. 344, 377 (Sept. 30, 2021); Additional Ukraine Supplemental

Page 20 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

USDA's regulations are likewise clear that Humanitarian Immigrant Groups are exempted from the five-year waiting period. Regulations divide "qualified aliens" into two groups: those who "must be in a qualified status for 5 years before being eligible to receive food stamps," 7 C.F.R. 273.4(a)(6)(iii), and those who are "not subject to the requirement to be in qualified status for 5 years," including Refugees, Individuals Granted Asylum, and Deportation Withheld, as well as other categories that the Guidance retains as exempt from the waiting period. 7 C.F.R. § 273.4(a)(6)(ii).

### C.  Plaintiffs Are Likely to Succeed on the Merits of their Claim that the Guidance is Arbitrary and Capricious with Respect to Its Eligibility Provisions (Count II)

The Guidance is arbitrary and capricious for two reasons. First, USDA failed to provide sufficient explanation of its underlying reasons for treating LPRs differently based on how they obtained that status. Second, USDA's Guidance departs from the statutory SNAP eligibility requirements, even as amended by the OBBB, without considering Plaintiff States' serious reliance interests and harms that would flow from their action.

To survive arbitrary-and-capricious review, agency actions must be "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). While a court may not "substitute its own policy judgment for that of the agency," *id.*, it must ensure that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up). The APA requires agencies to "pay[] attention to the advantages *and* the disadvantages" of their decisions. *Michigan v. E.P.A.*, 576 U.S. 743, 753 (2015) (emphasis in original). When an agency changes an existing policy, "its reasoned analysis must consider the alternatives that are within the ambit of

---

Appropriations Act, 2022, Pub. L. 117-128 § 401(b)(1), 136 Stat. 1211, 1218 (May 21, 2022); The Department of Defense Appropriations Act, 2010, Pub. L. 111-118, § 8120(a)-(b), 123 Stat. 3409, 3457 (Dec. 19, 2009); 22 U.S.C. § 7105(b)(1)(A).

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

the existing policy" and any "serious reliance interests" engendered by the status quo.  *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (cleaned up).

Here, the Guidance does not reasonably explain the decision to cancel financial food assistance for some lawful residents based on their status prior to becoming such residents. The lack of explanation is especially stark because, previously, these two groups were treated the same, and nothing in the OBBB has changed to justify the creation of two separate categories in the Guidance—"Not eligible" and "Not eligible unless an LPR." *See Nw. Env't. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 687 (9th Cir. 2007) (an agency changing position "must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored" (quotation omitted)).

Nor does the Guidance explain why USDA is departing from its long-standing instructions that PRWORA exempts non-citizens with Humanitarian Immigrant Groups from the five-year waiting period. OBBB did not amend PRWORA. And until the October 31 Guidance, USDA had never denied the Humanitarian Immigrant Groups' exemption from PRWORA's five-year waiting period, even after adjusting to LPR status. USDA's past "Guidance on Non-Citizen Eligibility," first published in 2011, was crystal clear: "[t]hose non-citizens are exempt from the five-year residency requirement and are eligible indefinitely," even "after adjustment of status to LPR. Their exemption from the five-year waiting period is not affected by their adjustment to LPR status."[11] Up until recently, the USDA's website also explained that Humanitarian Immigrant Groups were exempt from PRWORA's waiting period:[12]

---

[11] USDA, *Supplemental Nutrition Assistance Program Guidance on Non-Citizen Eligibility* 3, 12 (June 2011), https://perma.cc/6NXW-2G66.

[12] USDA, *SNAP Eligibility for Non-Citizens, accessed July 18, 2025*, https://web.archive.org/web/20250718231851/https://www.fns.usda.gov/snap/recipient/eligibility/non-citizen.

Page 22 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

| Eligible Non-citizen Groups | Eligibility Status |
|---|---|
| <ul><li>Refugees</li><li>Individuals granted asylum</li><li>Victims of severe trafficking</li><li>Deportation withheld</li><li>Amerasians</li><li>Cuban and Haitian entrants</li><li>Iraqi and Afghan special immigrants (SIV)</li><li>Certain American Indians born abroad</li><li>Hmong or Highland Laotian tribal members</li><li>Compacts of Free Association (COFA) citizens of the Federated States of Micronesia, the Republic of the Marshall Islands, and the Republic of Palau</li></ul> | Eligible immediately, with no waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements. |
| <ul><li>Lawful permanent residents (LPR) or Green Card holders</li><li>Those granted parole for a period of at least one year</li><li>Conditional entrants</li><li>Battered non-citizens</li></ul> | Eligible after a 5-year waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements.<br><br>Individuals in one of these groups may still be eligible for SNAP without a waiting period if they:<br><ul><li>Are a child under 18 years old</li><li>Are blind or disabled and receiving benefits for assistance for your condition</li><li>Were lawfully residing in the U.S. and 65 or older on Aug. 22, 1996</li><li>Have a U.S. Military connection</li><li>Are an Afghan granted parole</li><li>Are a Ukrainian granted parole</li></ul> |
| <ul><li>Children under age 18 in any of the above groups in this table</li></ul> | Eligible immediately, with no waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements. |

Nothing in the October 31 Guidance explains this significant departure from past agency interpretations of PRWORA and that omission is fatal under the APA, which requires simply that an agency changing position must "at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).

Plaintiffs are also likely to succeed on the merits because the Guidance fails to consider the "serious reliance interests" of Plaintiffs, *Regents*, 591 U.S. at 30, and fails to consider the "disadvantages" and natural consequences of its decision. *Michigan*, 576 U.S. at 753. In particular, Plaintiff States and their agencies, who depend on SNAP funding to feed their residents and who had repeatedly requested implementing guidance as to the non-citizen eligibility provisions of the OBBB, have had their plans upended and are now in a position of having to either completely redo their plans to implement the OBBB or face potentially billions of dollars in penalties. That failure independently renders the Guidance arbitrary and capricious.

Page 23 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

**D. Plaintiffs Are Likely to Succeed on the Merits of their Claim that the Guidance's Exclusionary Period is Contrary to Law (Count II)**

The Guidance's exclusionary period is contrary to law. The Guidance concedes that USDA is required to have a 120-day exclusionary period. But it asserts that the exclusionary period "for the misapplication of changes in Section 10108 of the OBBB to new and ongoing SNAP households" has an "end date on November 1, 2025"—the very next day after the Guidance was issued on October 31, 2025. Guidance 4. So, under the Guidance, the exclusionary period for the Guidance began on the day the OBBB was enacted, July 4, 2025—119 days *before* USDA issued the Guidance. And, for that 119-day period, USDA did not issue any guidance *at all* regarding implementation of the OBBB's changes in non-citizen eligibility; to the contrary, in early September it had instructed "[a]ll SNAP State Agencies" that, as to this provision, "[f]urther guidance is forthcoming." USDA Sept. 4 Guidance, *supra* note 2.

USDA's position that it can count errors toward a State's error rate the day after issuing the initial implementing guidance directing State agencies to comply with the law is at odds with the text of the statute and the text of the regulation. It also contravenes the purpose of the exclusionary period, common sense, and past agency practice, all of which dictate that the implementation date cannot come before USDA issues the implementation guidance that States require in order to implement changes in federal law. And, as detailed in the section below, it is profoundly arbitrary because it purports to have allowed a months-long period for States to implement Guidance that did not yet exist and fails to provide any rational explanation for this irrational position.

Beginning with the text of the exclusionary period statute and regulations: both provide for an exclusionary period in which certain errors do not count towards a State's payment error rate calculation. The exclusionary period starts on the "required implementation date" of a change in federal statute or regulation and ends 120 days later. Specifically, the Food and Nutrition Act excludes from the USDA's quality control review: (1) "[a]ny errors resulting in the application of new regulations . . . during the first 120 days from the required date for such regulations" (7 U.S.C. § 2025(c)(3)); USDA's regulations in turn provide that the agency must exclude any error

Page 24 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

"resulting from application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law that occurs during the first 120 days from the required implementation date." 7 C.F.R. § 275.12(d)(2)(vii).

Neither statute nor regulation define "implementation date," but the text makes plain that term "implementation date" must be no earlier in time than the agency action that requires implementation. In the text of the regulation, the term "required implementation date" refers back to the term "implementing memorandum of a mandatory or optional change in Federal law." No implementation date is "required" (or even possible) before there is an "implementing memorandum," that is related to, but not the same as, the relevant "change in Federal law." *Id.*

Not surprisingly, longstanding USDA practice is completely consistent with this reading. The agency implements changes in the law via guidance (the "implementing memorandum") that itself states a "required implementation date." Thus, in previous agency implementing memos, the "required implementation date" was a date set after the issuance of the implementing guidance, which itself came after the change in the law. For example, in December 2009, Congress passed a statute that (like the OBBB) changed certain non-citizen eligibility requirements for SNAP.[13] USDA issued implementing guidance a month later, in January 2010. *Id.* That guidance provided an exclusionary period that started 30 days later (in February 2010) and ended 120 days after that (in June 2010). *Id.* More recently, USDA followed a similar pattern implementing a November 2024 Final Rule.[14]

This reading is also consistent with the regulatory scheme. The regulations are exceedingly detailed, and at every turn support the same conclusion: the exclusionary period is designed to give States a 120-day window to get their changes up and running without being penalized, with no

---

[13] *See* USDA – FNS, "Supplemental Nutrition Assistance Program (SNAP) - Elimination of the Eight-Month Time Limit for Iraqi and Afghan Special Immigrants" (Jan. 29, 2010), https://perma.cc/FPD9-KEEK.

[14] USDA – FNS, "Supplemental Nutrition Assistance Program (SNAP) - Question and Answer #1 for the Implementation of Regulatory Changes to Standard Utility Allowances (SUAs)" 6-7 (Dec. 20, 2024), https://perma.cc/8264-HLUZ.

Page 25 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

windfall to states who are not using that period to implement. *See* 7 C.F.R. §§ 275.12(d)(2)(vii)(A) (States who choose to implement early start the 120-day clock early); 275.12(d)(2)(vii)(C), (revoking the exclusionary period for states that fail to implement during that period at all); 275.12(d)(2)(vii)(D) (exclusionary period ends at the close of 120 days, regardless of when in that period the state actually begins to implement).

This reading also makes intuitive sense. Statutes determining SNAP eligibility are complicated and some of them are not incorporated into the United States Code (*see, e.g.*, eligibility for Iraqi and Afghani SIV holders, *supra* note 10). Further, those statutes are codified in regulations that States are required to follow. When the law changes, USDA must direct States how to comply with the changes—and that direction from USDA is necessary for States to disregard regulations that remain on the books. This is true here, where the USDA's regulations still reflect the state of the law pre-OBBB. *Compare* 7 U.S.C. § 2015(f) *with* 7 C.F.R. § 273.4. States typically wait until they have "clear, unambiguous USDA-FNS Guidance explaining any changes in program administration or benefit eligibility" before they pull the trigger on their implementation plans so they have certainty about how USDA interprets the law and will require them to implement it. *See* NJ-Adelman Decl. ¶ 29. And they can do so because the exclusionary period serves its purpose: to not penalize States for errors at the start of their implementation efforts in order to allow them a period of time to conform their systems to changes in the law. It also serves an important purpose of uniformity. This sequence—implementation guidance followed by actual implementation—avoids the untenable situation in which some States implement an eligibility provision in a manner that allows certain groups of people to qualify for benefits, while other States reach a different interpretation.

For that same reason, any errors preceding the Guidance should be excluded, separately and independently, under the statutory provision that "[e]rrors resulting . . . from actions based on policy information approved or disseminated" by USDA "shall not be included in the payment error rate." 7 U.S.C. § 2025(c)(3). This provision has no 120-day time limit. That "policy

Page 26 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

information" must include, at a minimum, any binding regulations, including 7 C.F.R. § 273.4, for which the agency has taken no regulatory or sub-regulatory action to supersede. This confirms that the Agency cannot count States' error rates against them prior to issuing guidance to implement a change in the law or amending its regulations.

USDA's contrary position lacks any limiting principle. If USDA is correct, then the Agency could impose a retroactive exclusionary period and thus retroactive deadline for compliance with agency guidance—whether or not it accurately reflects a change in the law—and count noncompliance toward States' error rates. If USDA could start the exclusionary period on the date the statute was enacted regardless of whether any implementing guidance had been issued, there is nothing to stop it from doing so months or even years after that period expired. But "'[r]etroactivity is not favored in the law,'" and so Courts follow the "interpretive corollary that 'congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.'" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 264 (1994) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). Here, the statute and regulations should be read to mean what they always have meant: the implementation date that starts the exclusionary period comes no earlier than the agency action doing the implementing, which itself comes no earlier than the change in the law.

### E.  Plaintiffs Are Likely to Succeed on the Merits of their Claim that the Guidance's Exclusionary Period is Arbitrary and Capricious (Count IV)

The Guidance is arbitrary and capricious for two reasons. First, contrary to the APA, it fails to explain how an agency can back-date an implementation date of guidance to a date before that guidance was issued. And even if that made any sense, the Guidance fails to explain why the agency is departing from ordinary practice of permitting variances for 120 days based on the date of the relevant guidance.

An agency decision is unlawfully arbitrary and capricious if, *inter alia*, the agency failed to "articulate a satisfactory explanation for its action," or it is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43.

Page 27 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

Here, the guidance is arbitrary and capricious because it provides no reasoning—let alone a satisfactory explanation—for USDA's decision to require implementation of the Guidance within 24 hours, based on backdating the implementation day to 119 days before the Guidance was issued. *See Montana Wildlife Federation v. Haaland*, 127 F.4th 1, 40 (9th Cir. 2025). It is wholly irrational for USDA to have nearly the full implementation period run *before* the operative guidance that explains how States should implement these changes. *See, e.g.*, NJ-Adelman Decl. ¶ 35.

The Guidance is also arbitrary and capricious because USDA has provided no explanation of why it is departing from past practice. Where an agency changes its position, it must "provide a reasoned explanation for the change [and] display awareness that [it has a] changing position." *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 568 (2025) (cleaned up). In addition, when an agency rescinds a "longstanding" position, it must consider any "serious reliance interests" it may have engendered, "determine whether they [are] significant, and weigh [them] against competing policy concerns." *Regents*, 591 U.S. at 30, 33 (cleaned up); *see also FDA*, 604 U.S. at 569–70. An agency may not depart from its prior position *sub silentio. Fox Television Stations, Inc.*, 556 U.S. at 515.

Here, USDA offered no explanation for its decision to calculate the 120-day variance period starting on a date before the Guidance issued, which is a significant departure from past practice in which USDA (reasonably) required States to comply with guidance only after that guidance existed. This court cannot defer to that wholly unexplained and arbitrary decision. *See Oregon Nat. Desert Ass'n v. Bureau of Land Management*, 625 F.3d 1092 (9th Cir. 2010) (this court "cannot defer to a void" when an agency fails to explain itself). Moreover, USDA failed to consider other important factors, including that States are unable to change their systems to comply with newly-promulgated Guidance within 24 hours. *See Thakur v. Trump*, 148 F.4th 1096, 1106–07 (9th Cir. 2025). It is arbitrary for USDA to seek to hold States financially responsible—to the tune of hundreds of millions or even billions of dollars—for errors made mere hours after USDA directed the States how to implement certain changes. USDA fails to acknowledge *any* of the many

Page 28 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

ways in which States will have to change their systems, staff training, and procedures in order to comply with the Guidance, *see supra* Background Section VI.B, let alone provide any satisfactory explanation for how states could do so within twenty-four hours.

### III.    Plaintiffs Face Irreparable Harm Absent Preliminary Relief

The Court should enter a preliminary injunction because Plaintiffs are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A showing that "irreparable injury is *likely*" will suffice. *Id.* at 22.

First, some Plaintiff States, which provide state-funded food benefits to individuals who are not eligible for SNAP, will face significant out of pocket costs to provide State benefits to thousands of non-citizens whom the Guidance excludes from SNAP, at a cost of millions of dollars. *See supra* Background Section VI.C. The Ninth Circuit has "held that economic harm is irreparable when monetary damages are unavailable." *Washington v. Trump*, 145 F.4th 1013, 1036 (9th Cir. 2025). Here, there is no apparent way for these States to recoup their out-of-pocket expenses on state-funded benefits from the federal government upon a final judgment in this case. So, the harm is irreparable.

Second, Plaintiff States face significant costs in complying with the Guidance, which contradicts the non-citizen eligibility requirements in the FNA as amended by the OBBB and PRWORA. Plaintiff States have already invested significant time and resources into preparing to modify their SNAP benefits systems and procedures in accordance with the OBBB's eligibility changes. *See supra* Background Section VI.B. The Guidance will require States to re-do and revise some of that work and make additional changes, including, for example, re-programming their computer systems, revising their intake procedures, and re-training staff. *See supra* Background Section VI.C. This will result in increased administrative costs and place a burden on Plaintiff State's benefits agencies. As courts routinely recognize, the cost of compliance is an irreparable harm. *See, e.g.*, *Washington v. Trump*, 145 F.4th 1013, 1036–37 (9th Cir. 2025). Indeed, courts have found irreparable harm in precisely the circumstance presented here: the cost of a state agency

Page 29 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

in updating its state public benefits applications and systems to become compliant with a federal action excluding non-citizens from those benefits. *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020); *New York v. U.S. Dep't of Just.*, No. 1:25-CV-00345-MSM-PAS, 2025 WL 2618023, at *22 (D.R.I. Sept. 10, 2025); *cf. California v. Trump*, 786 F. Supp. 3d 359, 389 (D. Mass. 2025) (same for voting systems).

Third, Plaintiff States face a likely increase in errors as they struggle to reconcile their obligations under federal statutes with the Guidance. The Guidance is likely to cause an increase in the error rate not only because it conflicts with the statutory eligibility requirements, but also because the effective one-day period for compliance means that States will be penalized for errors made just days after the Guidance was issued. *See supra* Background Section VI.C. The consequences of an increased error rate could be financially ruinous for Plaintiff States due to the tremendous error rate penalties enacted by the OBBB. *Id.* (describing penalties of up to $1 billion or more). The threat of a loss of hundreds of millions of dollars in funding if States do not comply with the Guidance is certainly irreparable injury. And Plaintiffs begin to face that injury now: because of the magnitude of the potential penalties, each of Plaintiffs States' decisions regarding SNAP eligibility stands "in the shadow of" these error rate penalties. *See City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d 1148, 1202 (N.D. Cal. 2025). Plaintiff States have a "need for certainty" as to the eligibility requirements of their residents in order to take as many steps as possible to avoid these potentially "catastrophic" penalties. *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018).

Finally, in issuing the Guidance, USDA has required states to implement eligibility provisions that conflict with statutory requirements. Preliminary relief is necessary to prevent State agencies needing to double back and reverse themselves later, which will increase public distrust of the SNAP program and will chill public participation in SNAP. *See supra* Background Section VI.C. These are irreparable harms. *See California v. U.S. Dep't of Transportation*, 788 F. Supp. 3d 316, 323 (D.R.I. 2025) ("risk of losing the trust built between" the State "and immigrant

Page 30 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

communities"); *cf. Doe #1 v. Trump*, 957 F.3d 1050, 1068 (9th Cir. 2020) (crediting "significant harm" states will suffer based on immigrants being "vital to the economic, civic, and social fabric of [the] states"). SNAP serves the most vulnerable residents of Plaintiff States, who rely on it to meet their basic daily needs. Chilled participation in SNAP and erosion of trust between the States and SNAP participants will harm States by affecting participants' health and welfare, draining Plaintiff States' resources. *New York*, 969 F.3d at 86 (explaining relationship between chilling effect on public benefits participation and costs to State); *see supra* Background Section VI.C.

## IV.    The Balance of the Equities and the Public Interest Favor a Preliminary Injunction

The balance of the equities and public interest weigh in favor of a preliminary injunction and stay here. A preliminary injunction and stay would—of course—*not* prevent USDA from taking lawful steps to implement the changes to non-citizen SNAP eligibility made by the OBBB earlier this year. Rather, the injunction would preserve the status quo (that is, "the legally relevant relationship between the parties before the controversy arose," *Youth 71Five Ministries v. Williams*, 153 F.4th 704, 717 (9th Cir. 2025)), by allowing State agencies to continue to prepare to implement the OBBB as Congress wrote it, rather than requiring them to upend months of progress, while they wait for lawful guidance from USDA. "The confusion caused by" the Guidance "weigh[s] heavily against the government." *San Francisco*, 783 F. Supp. 3d at 1203. On the other hand, "an injunction that brings clarity to all parties and to citizens dependent on public services" about the scope of SNAP eligibility would serve the public interest. *San Francisco*, 897 F.3d at 1244.

Further, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). To the contrary, there is significant public interest in ensuring that laws "enacted by [elected] representatives are not imperiled by executive fiat." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Maryland v. King*, 567 U.S. 1301 (2012)). Accordingly, the public interest and the balance of the equities favor Plaintiffs.

Page 31 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

## V.    Plaintiffs' Requested Preliminary Relief is Appropriate.

Plaintiffs seek an injunction that would prohibit Defendants from enforcing the Guidance, which is contrary to law and arbitrary and capricious, as to Plaintiff States. Without such an order, Plaintiff States will be forced to implement eligibility requirements that will deprive many of their residents of benefits to which they are entitled and that enable them to feed nutritious food to their families. Alternatively, if implementation of the Guidance is not enjoined in Plaintiff States, Plaintiffs seek a stay in Plaintiff States of the end of the exclusionary period of the Guidance to March 1, 2026 (the first business day 120 days after its issuance) because the Guidance's implementation date is straightforwardly illegal.

Plaintiffs further seek an injunction prohibiting Defendants from counting errors stemming from misapplication of changes in Section 10108 of the OBBB to new and ongoing SNAP households in Plaintiff States in the absence of legally correct Guidance or regulations. This injunction is appropriate because USDA has not yet promulgated accurate guidance directing Plaintiff States how to implement OBBB Section 10108's changes to non-citizen eligibility and therefore it is unlawful to count any failure of Plaintiff States to implement these changes as part of Plaintiff States' error rates. To be clear, this would *not* prohibit Defendants from issuing new, accurate guidance regarding the implementation of OBBB Section 10108's changes to non-citizen eligibility with a future implementation date, to begin the exclusionary period on that date, and to count any errors against Plaintiff States' rates starting 120 days after that. But given the flaws in the Guidance, the unlawful application of the exclusionary period, and USDA's failure to promulgate accurate guidance on OBBB Section 10108's changes to non-citizen eligibility, Defendants should be enjoined from counting errors toward Plaintiff States' error rates.

Page 32 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

## CONCLUSION

For the foregoing reasons, Plaintiff States respectfully request that Defendants be preliminarily enjoined from implementing and enforcing the Guidance as to Plaintiff States, or in the alternative, that the Court stay the end of the exclusionary period for the Guidance. Additionally, Plaintiff States respectfully request that Defendants be enjoined from counting errors stemming from OBBB Section 10108's changes to non-citizen eligibility against Plaintiff States' error rates in the absence of legally accurate guidance or regulations.

Dated: November 26, 2025

Respectfully submitted,

| **LETITIA JAMES**<br>Attorney General for the State of New York | **DAN RAYFIELD**<br>Attorney General for the State of Oregon |
|---|---|
| By: *s/ Molly Thomas-Jensen*<br>Molly Thomas-Jensen<br>Jessica Ranucci<br>*Special Counsel*<br>Rabia Muqaddam<br>*Chief Counsel for Federal Initiatives*<br>Gina Bull<br>*Assistant Attorney General*<br>28 Liberty St.<br>New York, NY 10005<br>(212) 416-8679<br>molly.thomas-jensen@ag.ny.gov<br>jessica.ranucci@ag.ny.gov<br>rabia.muqaddam@ag.ny.gov<br>gina.bull@ag.ny.gov<br><br>*Counsel for the State of New York* | By: *s/ Leanne Hartmann*<br>Leanne Hartmann #257503<br>Brian Simmonds Marshall #196129<br>Kirsten Naito # 114684<br>*Senior Assistant Attorneys General*<br>Sara Del Rubin #232414<br>Derek Olson #225504<br>*Assistant Attorneys General*<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, OR 97201<br>Telephone: (971) 673-1880<br>Fax: (971) 673-5000<br>Leanne.Hartmann@doj.oregon.gov<br>Brian.S.Marshall@doj.oregon.gov<br>Kirsten.M.Naito@doj.oregon.gov<br>Sara.DelRubin@doj.oregon.gov<br>Derek.Olson@doj.oregon.gov<br><br>*Counsel for the State of Oregon* |

Page 33 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

| | |
|---|---|
| **ROB BONTA**<br>Attorney General for the State of California<br><br>By: *s/ Robin L. Goldfaden*<br>Robin L. Goldfaden<br>*Supervising Deputy Attorney General*<br>Michael L. Newman<br>Neli N. Palma<br>*Senior Assistant Attorneys General*<br>Marissa Malouff<br>Kathleen Boergers<br>*Supervising Deputy Attorneys General*<br>California Attorney General's Office<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102<br>(415) 510-3543<br>Robin.Goldfaden@doj.ca.gov<br><br>*Counsel for the State of California* | **PHILIP J. WEISER**<br>Attorney General of Colorado<br><br>By: *s/ Tanja E. Wheeler*<br>Tanja E. Wheeler<br>*Associate Chief Deputy Attorney General*<br>David Moskowitz<br>*Deputy Solicitor General*<br>Colorado Department of Law<br>1300 Broadway, 10th Floor<br>Denver, CO 80203<br>Phone: (720) 508-6000<br>Tanja.wheeler@coag.gov<br>David.moskowitz@coag.gov<br><br>*Counsel for Plaintiff State of Colorado* |
| **WILLIAM TONG**<br>Attorney General of Connecticut<br><br>By: *s/ Patricia E. McCooey*<br>Patricia E. McCooey<br>*Assistant Attorney General*<br>165 Capitol Ave<br>Hartford, CT 06106<br>(860) 808-5210<br>Patricia.McCooey@ct.gov<br><br>*Counsel for Plaintiff State of Connecticut* | **KATHLEEN JENNINGS**<br>Attorney General of the State of Delaware<br><br>By: *s/ Vanessa L. Kassab*<br>Ian R. Liston<br>*Director of Impact Litigation*<br>Vanessa L. Kassab<br>*Deputy Attorney General*<br>Rose E. Gibson<br>*Assistant Attorney General*<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 683-8899<br>vanessa.kassab@delaware.gov<br><br>*Counsel for Plaintiff State of Delaware* |

Page 34 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

| | |
|---|---|
| **BRIAN L. SCHWALB**<br>Attorney General for the District of Columbia<br><br>By: *s/ Mitchell P. Reich*<br>Mitchell P. Reich<br>*Senior Counsel to the Attorney General*<br>Office of the Attorney General for the District of Columbia<br>400 Sixth Street, NW<br>Washington, D.C. 20001<br>(202) 279-1261<br>mitchell.reich@dc.gov<br><br>*Counsel for the District of Columbia* | **ANNE E. LOPEZ**<br>Attorney General for the State of Hawaiʻi<br><br>By: *s/ Kalikoʻonālani D. Fernandes*<br>David D. Day<br>*Special Assistant to the Attorney General*<br>Kalikoʻonālani D. Fernandes<br>*Solicitor General*<br>425 Queen Street<br>Honolulu, HI 96813<br>(808) 586-1360<br>kaliko.d.fernandes@hawaii.gov<br><br>*Counsel for the State of Hawaiʻi* |
| **KWAME RAOUL**<br>Attorney General of Illinois<br><br>By: *s/ Katharine Roller*<br>Katharine Roller<br>*Complex Litigation Counsel*<br>Alice L. Riechers<br>*Assistant Attorney General*<br>115 S. LaSalle St.,<br>Chicago, Illinois 60603<br>(773) 519-1842<br>Katharine.Roller@ilag.gov<br><br>*Counsel for Plaintiff State of Illinois* | **AARON M. FREY**<br>Attorney General for the State of Maine<br><br>By: *s/ Brendan Kreckel*<br>Brendan Kreckel<br>By: *s/ Kristin Trabucchi*<br>Kristin Trabucchi<br>*Assistant Attorneys General*<br>Office of the Attorney General<br>6 State House Station<br>Augusta, ME 04333-0006<br>Tel.: 207-626-8800<br>Fax: 207-287-3145<br>Brendan.kreckel@maine.gov<br>kristin.k.trabucchi@maine.gov<br><br>*Counsel for the State of Maine* |

Page 35 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

| | |
|---|---|
| **ANTHONY G. BROWN**<br>Attorney General of Maryland<br><br>By: *s/ Yasmin Dagne*<br>Yasmin Dagne<br>*Assistant Attorney General*<br>Office of the Attorney General<br>200 Saint Paul Place, 20th Floor<br>Baltimore, Maryland 21202<br>410-223-1580<br>ydagne@oag.state.md.us<br><br>*Counsel for Plaintiff State of Maryland* | **ANDREA JOY CAMPBELL**<br>Attorney General of Massachusetts<br><br>By: *s/ Michelle Pascucci*<br>Katherine Dirks<br>*Chief State Trial Counsel*<br>Michelle Pascucci<br>*State Trial Counsel*<br>Jak Kundl<br>*Assistant Attorney General*<br>Office of the Massachusetts Attorney General<br>1 Ashburton Place Boston, MA 02108<br>(617) 963-2255<br>Michelle.Pascucci@mass.gov<br><br>*Counsel for the Commonwealth of Massachusetts* |
| **DANA NESSEL**<br>Attorney General of Michigan<br><br>By: *s/ Daniel Ping*<br>Daniel Ping<br>Neil Giovanatti<br>*Assistant Attorneys General*<br>Michigan Department of Attorney General<br>525 W. Ottawa<br>Lansing, MI 48909<br>(517) 335-7603<br>PingD@michigan.gov<br>GiovanattiN@michigan.gov<br><br>*Counsel for the State of Michigan* | **KEITH ELLISON**<br>Attorney General for the State of Minnesota<br><br>By: *s/ Joseph R. Richie*<br>Joseph R. Richie<br>*Special Counsel*<br>445 Minnesota Street, Suite 1400<br>St. Paul, Minnesota, 55101<br>(651) 300-0921<br>joseph.richie@ag.state.mn.us<br><br>*Counsel for the State of Minnesota* |

Page 36 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

| | |
|---|---|
| **AARON D. FORD**<br>Attorney General of Nevada<br><br>By: *s/ K. Brunetti Ireland*<br>K. Brunetti Ireland<br>*Chief of Special Litigation*<br>Office of the Nevada Attorney General<br>1 State of Nevada Way, Ste. 100<br>Las Vegas, NV 89119<br>kireland@ag.nv.gov<br><br>*Counsel for the State of Nevada* | **MATTHEW J. PLATKIN**<br>Attorney General of New Jersey<br><br>By: *s/ Kashif T. Chand*<br>Kashif T. Chand<br>*Assistant Attorney General*<br>New Jersey Office of the Attorney General,<br>Division of Law<br>124 Halsey Street, 5th Floor<br>Newark, NJ 07101<br>Tel: (973) 648-2052<br>Kashif.Chand@law.njoag.gov<br><br>*Counsel for Plaintiff State of New Jersey* |
| **RAÙL TORREZ**<br>Attorney General of the State of New Mexico<br><br>By: *s/ Lauren Perry*<br>Lauren Perry<br>*Assistant Attorney General*<br>New Mexico Department of Justice<br>408 Galisteo Street<br>Santa Fe, New Mexico 87501<br>505-270-4332<br>lperry@nmdoj.gov<br><br>*Counsel for the State of New Mexico* | **JEFF JACKSON**<br>Attorney General of North Carolina<br><br>By: *s/ Daniel P. Mosteller*<br>Daniel P. Mosteller<br>*Associate Deputy Attorney General*<br>Laura Howard<br>*Chief Deputy Attorney General*<br>North Carolina Department of Justice<br>PO Box 629<br>Raleigh, NC 27602<br>919-716-6026<br>dmosteller@ncdoj.gov<br><br>*Counsel for the State of North Carolina* |
| **PETER F. NERONHA**<br>Attorney General of Rhode Island<br><br>By: *s/ Marissa D. Pizaña*<br>Marissa D. Pizaña<br>*Special Assistant Attorney General*<br>150 South Main Street<br>Providence, RI 02903<br>(401) 274-4400<br>MPizana@riag.ri.gov<br><br>*Counsel for the State of Rhode Island* | **CHARITY R. CLARK**<br>Attorney General of Vermont<br><br>By: *s/ Ryan P. Kane*<br>Ryan P. Kane<br>*Deputy Solicitor General*<br>109 State Street<br>Montpelier, VT 05609<br>(802) 828-2153<br>Ryan.kane@vermont.gov<br><br>*Counsel for Plaintiff State of Vermont* |

Page 37 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

| **NICHOLAS W. BROWN**<br>Attorney General of Washington<br><br>By: *s/ William McGinty*<br>William McGinty<br>Niya Tawachi<br>*Assistant Attorneys General*<br>800 Fifth Avenue, Suite 2000<br>Seattle, WA 98104<br>206-464-7744<br>william.mcginty@atg.wa.gov<br>niya.tawachi@atg.wa.gov<br><br>*Counsel for Plaintiff State of Washington* | **JOSHUA L. KAUL**<br>Attorney General of Wisconsin<br><br>By: *s/ Karla Z. Keckhaver*<br>Karla Z. Keckhaver<br>*Assistant Attorney General*<br>Wisconsin Department of Justice<br>Post Office Box 7857<br>Madison, Wisconsin 53707-7857<br>608-264-6365<br>karla.keckhaver@wisdoj.gov<br><br>*Counsel for Plaintiff State of Wisconsin* |
| --- | --- |

Page 38 – PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

## CERTIFICATE OF SERVICE

I certify that on November 26, 2025, I served the foregoing upon the parties hereto by the method indicated below, and addressed to the following:

Susanne Luse
Assistant United States Attorney
U.S. Attorney's Office for the District of Oregon
1000 SW Third Ave. Suite 600
Portland, OR 97204

___ HAND DELIVERY
__ MAIL DELIVERY
___ OVERNIGHT MAIL
___ TELECOPY (FAX)
____ E-SERVE
_X_ E-MAIL

susanne.luse@usdoj.gov


 s/ Leanne Hartmann
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KRISTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
kirsten.m.naito@doj.oregon.gov
sara.delrubin@doj.oregon.gov
derek.olson@doj.oregon.gov

*Counsel for the State of Oregon*

Page 1 -   CERTIFICATE OF SERVICE
LH5/om1/1002822308