DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Leanne.Hartmann@doj.oregon.gov
        Brian.S.Marshall@doj.oregon.gov
        kirsten.m.naito@doj.oregon.gov
        sara.delrubin@doj.oregon.gov
        derek.olson@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al., <br><br> Defendants. | Case No. 6:25-cv-02186-MTK <br><br> DECLARATION OF WENDY DEMARCO |

# DECLARATION OF WENDY DEMARCO

I, WENDY DEMARCO, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a resident of the State of New York, and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

## Personal Background and Qualifications

2. I am the Director of the Food and Nutrition Policy Bureau in the Division of Employment and Income Support Programs (EISP) within the New York State Office of Temporary and Disability Assistance (OTDA). OTDA's mission is to help vulnerable New Yorkers meet their essential needs and advance economically by providing opportunities for stable employment, housing, and nutrition.

3. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

## Supplemental Nutrition Assistance Program (SNAP) in New York

4. SNAP, one of the programs administered by OTDA, involves the issuance of monthly electronic benefits that can be used to purchase food at authorized retail stores.

5. SNAP is a key part of New York's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. Thus far in 2025, an average of 2.96 million people received SNAP benefits in New York each month, including approximately 455,000 families and 920,000 children. Households in New York receive on average $370 per month in SNAP benefits to meet their basic subsistence and nutritional needs. During the federal fiscal year between October 1, 2024 and September 30, 2025, OTDA issued approximately $650 million per month in SNAP benefits in New York.

6. OTDA administers the SNAP program in New York pursuant to the Agriculture Improvement Act of 2018, formerly known as Food and Nutrition Act of 2008, the Food Stamp Act of 1964 and the Food Stamp Act of 1977.

7. Pursuant to federal law, OTDA administers SNAP on behalf of the United States Department of Agriculture (USDA) and is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transaction (EBT) cards; ensuring program integrity; and supervising local transitional assistance offices' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2. USDA funds the entirety of SNAP benefits in New York, though New York and the federal government split administrative costs. 7 U.S.C. § 2025(a).

8. For Federal Fiscal Year 2025, OTDA projects that the total State cost of SNAP administration will be roughly $400 million, and the majority of this cost is paid with local funds. This spending is expected to generate approximately $400 million in SNAP federal financial participation, to cover half of anticipated gross administration costs.

9. Consistent with federal law, OTDA administers SNAP benefits to non-citizens who are eligible for SNAP by statute.

## Public Law 119-21 (the One Big Beautiful Bill Act of 2025)

10. On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

11. Section 10108 of the OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

### USDA's October 31, 2025 SNAP Guidance

12.  On October 31, 2025, USDA issued guidance ("the Guidance"), which purports to explain the changes to non-citizens' eligibility for SNAP benefits required by Section 10108 of Public Law 119-21.

13.  I and others at OTDA have reviewed the Guidance and 7 U.S.C. 2015(f), as amended by the OBBB. OTDA's understanding is that the Guidance is inconsistent with other laws and regulations regarding SNAP eligibility that we understand to be unchanged by the OBBB.

14.  On October 31, 2025, USDA sent OTDA the Guidance via email.

15.  This all occurred during a federal government shutdown, where many USDA Food and Nutrition Service (FNS) staff were furloughed. USDA cancelled pre-scheduled calls with states and the American Public Human Services Association (APHSA), restricting New York's ability to seek clarification on the questionable guidance.

### Implementation of the OBBB and the Guidance by OTDA

16.  New York's system to determine non-citizen immigration status and eligibility for SNAP is rigorously based on statute, regulation, use of USDA approved systems and is routinely monitored and verified through the federally mandated SNAP Quality Control process.

17.  In New York, SNAP is a state supervised, county administered program, with 58 local departments of social services responsible for eligibility determination and associated immigration verification for all non-citizen SNAP applications.

18.  The SNAP application elicits information on the immigration/citizen status of every SNAP applicant. Non-citizen SNAP applicants must have immigration status verified before SNAP eligibility can be determined. The primary way districts do this is to utilize the federally prescribed Systematic Alien Verification for Entitlements (SAVE) program, an online

service run by U.S. Citizenship and Immigration Services (USCIS). Districts follow established procedures for entering and validating information that is then documented in the SNAP case record. The immigration status is captured in OTDA's system of records, the Welfare Management System (WMS), and is used by all districts. Eligibility workers are required to obtain copies of all required immigration documents from applicants. This information in combination with other eligibility factors is used to make an eligibility determination.

19. Changes to eligibility determination for non-citizens have downstream impacts, with the need for worker training, policy guidance development, and necessary system enhancements to properly document the immigration eligibility for a wide variety of non-citizen statuses. The policy guidance in question gave states less than 24 hours from the time it was issued to the time that states would be held accountable for any case processing errors as a result of these policy changes.

20. In July, following the passage of the OBBB, OTDA began to take steps to implement the OBBB's changes to non-citizen eligibility for SNAP. New York repeatedly requested that USDA issue implementation guidance starting a week after passage of OBBB, both on conference calls with the FNS Northeast Regional Office (NERO), and through the APHSA. OTDA reviewed the language of the OBBB, and asked USDA for instructions as to how the changes to the law would impact the requirements of the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA). FNS repeatedly acknowledged that states needed implementation guidance and told states that it was forthcoming.

21. On September 4, 2025, USDA issued a memo stating that the effective date for most of the provisions of OBBB was immediately upon signing (July 4, 2025); however, the

memo did not give an effective date of the non-citizen changes. Moreover, the memo indicated only that further guidance would be forthcoming.

22. In the past, USDA guidance explaining statutory changes has always been sent *before* the required implementation date that starts the 120-day exclusionary period. This 120-day period is necessary for OTDA to implement any changes in rules to eligibility such as revising procedures, local district policy guidance, updates to worker tools such as forms and desk guides, training curriculum, re-train staff, and other system changes as relevant.

23. In anticipation of guidance, New York prepared to issue local district policy guidance, prepared updates to worker tools such as forms and desk guides, identified training curriculums that must be updated, and conducted an analysis of what systems changes, if any, may be needed to accurately categorize non-citizen status. OTDA was waiting on the guidance that FNS repeatedly stated was forthcoming in order to implement these changes, in order to ensure that New York's processes and systems would be compliant with FNS's guidance.

24. The guidance exacerbated OTDA's confusion, and has left OTDA without clear direction as to how to implement the OBBB.

25. Given the unrealistic timeline for implementation presented in the October 31st guidance, and the lack of clarity on the essential conflicts posed by this policy change, New York is unable to provide accurate information to local districts to comply with these rule changes, potentially exposing the state to increased errors in payment accuracy.

**Impact of the Guidance on New York and OTDA**

26. The Guidance has caused significant confusion and administrative difficulties for OTDA, disrupting OTDA's efforts to implement the OBBB's changes to non-citizen SNAP eligibility. New York cannot resolve the inherent conflict the OBBB guidance has created in federal policy regarding eligibility for certain non-citizens. As it is written, the policy will

potentially harm individuals who are considered eligible non-citizens under PRWORA but are barred from accessing benefits under the Guidance. Delaying implementation of this policy exposes the state to increased payment errors from inaccurately determining eligibility for non-citizens.

27. The Guidance will increase the costs required to implement the changes required by OBBB. Such as, by:

    a) revising intake procedures,

    b) re-training staff,

    c) holding more administrative hearings, and

    d) receiving more customer service inquiries.

28. The Guidance elevates the risk that New York will face massive financial penalties due to inadvertent noncompliance with the OBBB and/or the Guidance. Section 10105 of the OBBB created a new set of penalties for states tied to their payment error rates. The Guidance stated that the "exclusionary period"—that is, the period of time during which errors do not count towards a state's error rate—ended on November 1, 2025, the day after the guidance was issued. Historically, there are more errors as agencies figure out how to implement new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the Guidance as part of New York's error rate, increasing the risk that New York may be subject to financially ruinous penalties. USDA claims the authority to count those errors starting November 1, 2025, leaving only a one-day period for compliance, further increasing the chance of these penalties.

29. In FY 2024, SNAP participants received approximately $7.35 billion in SNAP benefits. Under the OBBB's new penalties for payment errors, if benefit levels remain steady

through FY 2028 and New York's payment error rate were above 6%, New York State would suddenly be required to pay an additional $367.5 million in penalties. If New York's payment error rate strayed above 8%, New York would need to pay $735 million. A payment error rate above 10% would force the state to pay nearly $1.2 billion.

30. OTDA's understanding of the Guidance is that it appears to exclude certain categories of non-citizens from SNAP who are eligible under federal law that was unchanged by the OBBB. Under the Guidance, as many as 35,000 non-citizens within New York State would be excluded from SNAP who should be eligible. This will harm New York and OTDA.

31. The loss of SNAP benefits will result in greater need and requests for state-funded assistance programs, including, for example, state-funded programs similar to SNAP, such as cash assistance, the Special Supplemental Nutrition Program for Women, Infants and Children (WIC), and the use of emergency feeding programs operated by food banks and food pantries.

32. The lack of clarity regarding non-citizen eligibility caused by the Guidance is likely to significantly erode trust between the New York and its residents. To properly effectuate its safety net programs, OTDA has devoted years of work to overcome stigma, misinformation, and other barriers to access, particularly among immigrant communities. If households experience uncertainty in receiving crucial benefits, they are likely to feel that OTDA has failed or engaged in wrongdoing. SNAP benefits directly fund one of the most crucial basic human needs: access to food. Failure to deliver on that basic need as promised a deep violation of OTDA's and New York State's commitments to its neediest residents that is likely to significantly undermine trust in the program and government services more broadly.

33. Furthermore, loss of trust among New York residents will likely lead to a chilling effect among various immigrant communities, leading to decreased SNAP enrollments, which in

turn will cause irreparable long-term harm and costs to the State in the form of increased healthcare and safety net costs, and expending of resources to rebuild trust in the public agency.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed in New York State on November 24, 2025.

Wendy DeMarco
Digitally signed by Wendy DeMarco
Date: 2025.11.24 07:50:30 -05'00'

WENDY DEMARCO

CERTIFICATE OF SERVICE

      I certify that on November 26, 2025, I served the foregoing upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Susanne Luse<br>Assistant United States Attorneys<br>U.S. Attorney's Office for the District of Oregon<br>1000 SW Third Ave. Suite 600<br>Portland, OR 97204 | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>___ E-SERVE<br>_X_ E-MAIL<br>susanne.luse@usdoj.gov |

           *s/ Leanne Hartmann*
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KRISTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
kirsten.m.naito@doj.oregon.gov
sara.delrubin@doj.oregon.gov
derek.olson@doj.oregon.gov

*Counsel for the State of Oregon*

Page 1 -   CERTIFICATE OF SERVICE
      LH5/om1/1002822308

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000