DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Leanne.Hartmann@doj.oregon.gov
        Brian.S.Marshall@doj.oregon.gov
        kirsten.m.naito@doj.oregon.gov
        sara.delrubin@doj.oregon.gov
        derek.olson@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al.,<br><br>　　　　Defendants. | Case No.  6:25-cv-02186-MTK<br><br>DECLARATION OF JESSICA AMAYA HOFFMAN |

## DECLARATION OF JESSICA AMAYA HOFFMAN

I, Jessica Amaya Hoffman, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a resident of the State of Oregon and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

**Personal Background and Qualifications**

2. I am the Deputy Director of the Oregon Department of Human Services' (ODHS) Self-Sufficiency Programs, which provide resources like cash and food assistance, employment support, and targeted services to help Oregonians move out of poverty. I have served in this role since 2024, following my time as Interim Deputy Director and Senior Operations Manager. My career spans over 21 years in human services, including leading large teams and building strong community partnerships across Oregon. As Deputy Director of ODHS's Self-Sufficiency Programs, I oversee the administration of Oregon's SNAP program.

3. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

4. ODHS is Oregon's principal agency for helping Oregonians achieve well-being and independence. It administers a variety of human services programs for the state's residents.

5. The Supplemental Nutrition Assistance Program (SNAP), one of the programs administered by ODHS, involves the issuance of monthly electronic benefits that can be used to purchase food at authorized retail stores.

**SNAP in Oregon**

6. SNAP is a key part of Oregon's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. Thus far in 2025, an average of 736,000 people received SNAP benefits in Oregon each month, including

1

approximately 450,000 families and over 214,000 children. Households in Oregon receive on average $310 per month in SNAP benefits to meet their basic subsistence and nutritional needs. Thus far in 2025, ODHS issued approximately $140 million per month in SNAP benefits in Oregon.

7. ODHS administers the SNAP program in Oregon pursuant to Oregon Revised Statute (O.R.S.) 411.806 to 411.845. Pursuant to federal law, ODHS administers SNAP on behalf of the United States Department of Agriculture (USDA) and is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transaction (EBT) cards; ensuring program integrity; and supervising local transitional assistance offices' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2. USDA funds the entirety of SNAP benefits in Oregon, though Oregon and the federal government split administrative costs. 7 U.S.C. § 2025(a).

8. For Federal Fiscal Year 2025, ODHS budgeted approximately $129 million in state funds to pay for SNAP administration. This spending is expected to generate approximately $129 million in SNAP federal financial participation, to cover half of anticipated administration costs.

9. Consistent with federal law, ODHS administers SNAP benefits to non-citizens who are eligible for SNAP by statute.

### Public Law 119-21 (the One Big Beautiful Bill Act of 2025)

10. On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

11.     Section 10108 of the OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. § 2015(f).

### USDA's October 31, 2025 SNAP Guidance

12.     On October 31, 2025, USDA issued guidance ("the Guidance"), which purports to explain the changes to non-citizens' eligibility for SNAP benefits required by Section 10108 of Public Law 119-21.

13.     I and others at ODHS have reviewed the Guidance and 7 U.S.C. § 2015(f), as amended by the OBBB. ODHS's understanding is that the Guidance is inconsistent with other laws and regulations regarding SNAP eligibility that we understand to be unchanged by the OBBB.

14.     On October 31, 2025, USDA sent ODHS the Guidance via email. The Guidance instructs state agencies that they must immediately apply Section 10108 of the OBBB. Federal regulations provide for a 120-day exclusionary period following application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law so that errors during that period do not count towards the error rate pursuant to 7 CFR 275.12(d)(2)(vii). However, the Guidance informs agencies that the exclusionary period end date is November 1, 2025—just one day after the guidance document was released to ODHS.

### Implementation of the OBBB and the Guidance by ODHS

15.     ODHS utilizes a complex integrated eligibility data system, called the ONE Eligibility System, that analyzes applicant data collected by ODHS to determine whether each individual meets eligibility criteria for an array of public benefit programs, including SNAP. ODHS ascertains non-citizens' immigration status at application and benefit renewal for purpose of eligibility verification using the Systematic Alien Verification for Entitlement ("SAVE")

3

system, as well as by reviewing immigration paperwork when SAVE has not been updated to reflect a change in the non-citizen's immigration status.

16. Because the ONE Eligibility System is integrated across multiple benefit programs, and not just SNAP, ODHS cannot quickly reprogram the system to reflect the new OBBB changes related to noncitizens. This will require complex computer programming changes, new training for staff and contractors, and updates to the agency's SNAP intake forms, websites and system notices. Until the ONE Eligibility System can be reprogrammed, the process of reviewing applications and existing benefit files to comply with OBBB's eligibility changes will need to be performed manually, requiring more time and staff resources.

17. In July 2025, immediately following the passage of the OBBB, ODHS began to take steps to analyze the OBBB's changes to non-citizen eligibility for SNAP while it waited for further guidance from USDA. This process was complicated by the fact that OBBB included many other significant changes to the SNAP program that ODHS simultaneously needed to evaluate.

18. On August 29, 2025, USDA issued a memorandum unrelated to noncitizen SNAP eligibility, communicating that FNS would "hold states harmless for Quality Control (QC) purposes for 120 days from the implementation date." The memo provided that the 120-day variance exclusion period would end on November 1, 2025, despite the guidance not being issued until almost two months after the enactment of OBBB. This retroactive announcement of the exclusionary period was not consistent with USDA's previous practice and came as a surprise to ODHS. Lack of adequate time to enact changes presents additional risks to the accurate implementation of complex policies and the necessary time to legally notify impacted households.

19. On September 4, 2025, USDA issued an informational memorandum on the OBBB to all SNAP State Agencies with a summary overview of several sections of the OBBB that amended SNAP program provisions. This document had a heading referring to Section 10108 of the OBBB but provided no substantive information and instead informed States that further guidance would be forthcoming.

20. Given the rapidly approaching November 1 deadline for the exclusionary period, on October 1, 2025, ODHS began formal implementation of the OBBB's SNAP changes, including changes to non-citizen eligibility for SNAP. A statewide announcement was issued explaining ODHS's understanding of the OBBB's changes to the SNAP program, since more formal guidance still had not been provided by USDA. Notices were sent to affected families on October 15, informing them that their benefits would be changed or closed. Generating the notices required significant time and staff resources, as ODHS needed to review the ONE Eligibility System files manually to determine whether a particular noncitizen beneficiary would remain eligible following the OBBB's changes. ODHS initially estimated that approximately 3,000 noncitizens could be impacted. Due to the complexity of individual households SNAP benefit eligibility, these rapid changes have resulted in an increase in response workload for staff as recipients seek clarity on the effect of the policy change to their ongoing benefit.

21. ODHS received the Guidance after it sent those notices to affected families based on the agency's understanding of OBBB's impact. The Guidance was inconsistent with ODHS's understanding of the eligibility changes contained in OBBB, and accordingly ODHS was required to pause its implementation process due to the heightened risk of payment error caused by the conflicting information.

22. ODHS is currently waiting for further clarity before implementing the Guidance due to the inconsistency and the significantly increased risk of payment errors.

**Impact of the Guidance on Oregon and ODHS**

23. The Guidance has caused significant confusion and administrative difficulties for ODHS, disrupting ODHS's efforts to implement the OBBB's changes to non-citizen SNAP eligibility. The agency's previous implementation efforts needed to be halted due to the Guidance's conflicting eligibility determinations. Additionally, ODHS is now receiving many inquiries from both SNAP beneficiaries and community partners related to the confusion caused by the Guidance, increasing the administrative burdens on the agency. The added burdens come at a time when ODHS is also diligently working to implement the OBBB's other significant changes to the SNAP program, without meaningful guidance from USDA and under the threat of heavy penalties for any errors.

24. The Guidance also went into effect the same day that USDA cut off SNAP benefits amid the lapse in appropriations caused by the government shutdown. That lapse of funding created enormous additional administrative hurdles for ODHS as other USDA memoranda and court orders changed the agency's ability to process and provide benefits multiple times over the course of two weeks. I documented the challenges confronting ODHS related to the shutdown in two declarations in the lawsuit challenging the lapse of funding, *Massachusetts et al. v. U.S. Dep't of Agric.*, 1:25-cv-13165 (D. Mass.) (ECF #7; ECF#68).

25. As described above, ODHS has already invested significant time and resources into implementing the changes to non-citizen SNAP eligibility made by the OBBB. The Guidance will increase the costs required to implement the changes required by OBBB. Specifically:

    a) Re-programming the ONE Eligibility System to ensure accuracy for SNAP and to also maintain program integrity for other program services.

    b) Revising online and printed forms that are currently used for intake, renewal and periodic reporting requirements.

    c) Re-training staff members and agency contractors who work with SNAP application assistance for SNAP benefits.

    d) Sending staff members to community town halls and events to disseminate information to the public regarding the new Guidance.

    e) Re-reviewing previous applicants and current participants to determine their eligibility under the Guidance. This process will need to be completed manually until the ONE Eligibility System can be reprogrammed.

    f) Processing more requests for administrative hearings as beneficiaries seek to challenge the reduction or loss of benefits.

    g) Increasing demand for information from ODHS's public-facing eligibility offices and call centers.

26. The Guidance elevates the risk that Oregon will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The Guidance stated that the "exclusionary period"—that is, the period of time during which errors do not count towards a state's error rate—ended on November 1, 2025, the day after the guidance was issued. Historically, there are more errors as agencies figure out how to implement new guidance. Without the benefit of the exclusionary period extending 120 days past when the guidance was issued, ODHS understands that USDA will count any so-called "errors" stemming from the

Guidance as part of Oregon's error rate, increasing the risk that Oregon may have to pay financially ruinous penalties. And USDA claims the authority to be able to count those errors starting November 1, 2025, leaving only a one-day period for compliance, further increasing the chance of these penalties.

27.    Oregon already pays roughly $131,652,926 a year in administrative costs for the SNAP program. In Fiscal Year 2024, SNAP participants received approximately $1.6 billion in SNAP benefits. Under the new penalties created by Section 10105, states can be required to pay a portion of the benefit share depending on their error rate. That means that if benefits levels and program participation were to stay steady through Fiscal Year 2028 and Oregon's payment error rate was above 6%, it would suddenly be required to pay $83 million in new administrative dollars. If Oregon's payment error rate strayed above 8%, Oregon would need to pay $167 million in new administrative dollars. If Oregon's payment error rate reaches above 10%, Oregon would need to pay $250 million in new administrative dollars.

28.    ODHS's understanding of the Guidance is that it appears to exclude certain categories of non-citizens from SNAP who appear to be eligible under the OBBB and other eligibility requirements that were unchanged by the OBBB, specifically the Personal Responsibility and Work Opportunity Act (PRWORA), 8 U.S.C. § 1601 *et seq*. Under the Guidance, many non-citizens within Oregon will be excluded from SNAP. This will harm Oregon and ODHS.

29.    The loss of SNAP benefits will result in greater need and requests for state-funded assistance programs, including those administered through the Oregon Food Bank and the affiliated network. Oregon food banks already serve record numbers of individuals with limited food resources. Last year, Oregon saw 2.5 million visits to food assistance sites through the

statewide food bank network — a 31 percent increase from the previous year. Any chilling effect on SNAP participation will put unsustainable pressure on an already overburdened emergency food support network.

30.	The lack of clarity regarding non-citizen eligibility caused by the Guidance will significantly erode trust between Oregon and its residents. To properly effectuate its safety net programs, ODHS has devoted years of work to overcome stigma, misinformation, and other barriers to access, particularly among immigrant communities. If households experience uncertainty in receiving crucial benefits, they are likely to feel that ODHS has failed or engaged in wrongdoing. SNAP benefits directly fund one of the most crucial basic human needs: access to food. Failure to deliver on that basic need as promised is a deep violation of residents' trust.

31.	Furthermore, loss of trust among Oregon residents will likely lead to a chilling effect among various immigrant communities, leading to decreased SNAP enrollments, which in turn will cause irreparable long-term harm and costs to the State in the form of increased healthcare and safety net costs, and expending of resources to rebuild trust in the public agency.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed in Salem, Oregon on November 24, 2025.

Jessica Amaya Hoffman
Self-Sufficiency Programs Deputy Director
Oregon Department of Human Services

CERTIFICATE OF SERVICE

      I certify that on November 26, 2025, I served the foregoing upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Susanne Luse<br>Assistant United States Attorneys<br>U.S. Attorney's Office for the District of Oregon<br>1000 SW Third Ave. Suite 600<br>Portland, OR 97204 | \_\_\_ HAND DELIVERY<br>\_\_\_ MAIL DELIVERY<br>\_\_\_ OVERNIGHT MAIL<br>\_\_\_ TELECOPY (FAX)<br>\_\_\_ E-SERVE<br>_X_ E-MAIL<br>susanne.luse@usdoj.gov |

      _s/ Leanne Hartmann_
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KRISTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
kirsten.m.naito@doj.oregon.gov
sara.delrubin@doj.oregon.gov
derek.olson@doj.oregon.gov

_Counsel for the State of Oregon_

Page 1 -   CERTIFICATE OF SERVICE
LH5/om1/1002822308

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000