DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Leanne.Hartmann@doj.oregon.gov
            Brian.S.Marshall@doj.oregon.gov
            kirsten.m.naito@doj.oregon.gov
            sara.delrubin@doj.oregon.gov
            derek.olson@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al.,<br><br>　　　　Defendants. | Case No.   6:25-cv-02186-MTK<br><br>DECLARATION OF BRIAN CAMPBELL |

## DECLARATION OF BRIAN CAMPBELL

I, Brian Campbell, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a resident of the District of Columbia (the District) and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

2. I currently serve as the Administrator of the Economic Security Administration (ESA) at the District Department of Human Services (DHS). I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

3. Among the programs administered by DHS ESA is the District's Supplemental Nutrition Assistance Program (SNAP), which issues federally funded benefits, transferred electronically and accessible to customers on their Electronic Benefit Transfer (EBT) cards, which they can then use to purchase food at authorized retail stores.

4. SNAP is a key part of the District's efforts to address hunger by supplementing the food budget of low-income families. In fiscal year 2025 (FY25), an average of 141,000 people received SNAP benefits in the District each month, including 47,000 children and 24,000 elderly individuals. More than $320 million in SNAP benefits were issued by the District in FY25.

5. Pursuant to federal law, DHS is responsible for the issuance, control, and accountability of SNAP benefits and EBT cards; ensuring program integrity; and supervising administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

6. The District expends approximately $90 million in administrative costs to run its SNAP program each year, approximately half of which is reimbursed by the federal government.

7.   Consistent with federal law, DHS administers SNAP benefits to non-citizens who are eligible for SNAP by statute.

8.   DHS verifies non-citizen SNAP eligibility through the following comprehensive process:

- Initial Verification: Staff review immigration documents and enter the applicant's Alien Number into the DC Access System (DCAS), which electronically verifies status through the federal SAVE (Systematic Alien Verification for Entitlements) system's up-to-three-step process within 30 days of application.

- DCAS System Process: The system first attempts verification electronically through SAVE. If the external data matches or is reasonably compatible with the applicant's attestation, DCAS verifies that the non-citizen is eligible. If not, the applicant must submit immigration documents, which caseworkers review and attach to resolve the outstanding item.

- Documentation and Tracking: All verification attempts—successful or failed—are logged in transaction history in DCAS. The system records immigration status and eligibility determinations, with permanent residents verified once and other immigrants reverified at each recertification. All verification steps are documented in DCAS to ensure program integrity and compliance.

- Timing Requirements: Immigration verification must be completed before SNAP benefits can be authorized. In regular SNAP, unresolved verification leads to application disposal or case closure after deadlines. In expedited SNAP, only identity must be verified immediately; immigration verification is postponed but still required within the standard case processing timeframe (usually by day 29) or benefits close.

9. On October 31, 2025, USDA issued guidance ("the Guidance") to DHS purporting to explain changes to non-citizens' eligibility for SNAP benefits as required by Section 10108 of Public Law 119-21, also known as the One Big Beautiful Bill Act of 2025 (OBBB). The Guidance became effective on November 1, 2025.

10. No additional communications have been exchanged between DHS and USDA regarding the Guidance as of the date of this declaration.

11. The Guidance has caused significant confusion and administrative difficulties for DHS, disrupting DHS's efforts to implement the OBBBs changes to non-citizen SNAP eligibility and requiring DHS to make several time-consuming and costly administrative changes.

12. To comply with the Guidance, DHS must modify its verification process. DHS must update DCAS to track previous refugee/asylee status even after adjustment to Lawful Permanent Resident (LPR) status, since the guidance incorrectly suggests these individuals lose eligibility when the law maintains it. The system must also calculate the 5-year waiting period using entry date vs. status adjustment date, and exempt those who are not eligible under the interpretation contained in the Guidance. Making these changes will require time and effort by DHS staff, and will make individual verifications slower. This will entail additional steps with more screens in the system. DHS is already struggling with SNAP timeliness and this added burden will also contribute to that.

- The ambiguities and delays in issuing the guidance have also created administrative challenges for DHS. The ambiguous interpretation regarding refugee and asylee LPR status has created uncertainty for staff processing applications. The claimed one-day implementation timeline versus the regulatory 120-day period has strained DHS's ability to

properly update DCAS programming. And the lack of adequate time to train staff and establish procedures increases the risk of erroneous benefit terminations.

13. In July 2025, following the passage of the OBBB, DHS began to take steps to implement the OBBB's changes to non-citizen eligibility for SNAP. The ESA Policy team drafted a policy memo but was waiting on additional guidance from USDA to determine how and when to implement the changes. The October 31 guidance arrived a month late and still contained critical ambiguities. The Guidance will increase the costs required to implement the changes required by OBBB. Specifically, DHS will need to reprogram computer systems, revise intake procedures, re-train staff, and re-review applicants and current participants. DHS will also need to oversee more administrative hearings and process more customer service inquiries.

14. Complying with the Guidance, especially with an immediate effective date, will create a substantial burden for DHS As a result, DHS's system will need to apply different rules to households currently certified than those applying. This is a substantial change in policy that will require retraining workers, making updates to notices, and providing requirements to DCAS to support system changes.

15. As described above, DHS has already invested significant time and resources into planning and implementing the changes to non-citizen SNAP eligibility made by the OBBB. The Guidance will increase the costs required to implement the changes required by OBBB. Implementing these changes will be expensive, time consuming, and resource-staining and will lead to more errors.

16. The Guidance increases the risk that the District will face substantial financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. I have been advised that Section 10105 of the OBBB created a new set of penalties for States tied to their

payment error rates. The Guidance states that the "exclusionary period"—that is, the period of time during which errors do not count towards a state's error rate—ended on November 1, 2025, the day after the guidance was issued. Historically, there are more errors as agencies figure out how to implement a new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the Guidance as part of the District's error rate, increasing the risk that the District may have to pay financially ruinous penalties. And USDA claims the authority to be able to count those errors starting November 1, 2025, leaving only a one-day period for compliance, further increasing the chance of these penalties. Additionally, the administrative cost share will be based on the payment error rate and there is a risk that the rate will be elevated given the sheer volume and complexity of changes happening simultaneously.

17. DHS's understanding of the Guidance is that it appears to exclude certain categories of non-citizens from SNAP who appear to be eligible under the OBBB and other eligibility requirements that were unchanged by the OBBB. Generating the data or count of the impacted household members will be challenging and likely require DCAS assistance, imposing additional costs on the District and DHS.

18. The loss of SNAP benefits for non-citizens erroneously excluded because of the Guidance will result in greater need and requests for state-funded assistance programs, including by putting pressure on already strapped food banks.

19. The lack of clarity regarding non-citizen eligibility caused by the Guidance will significantly erode trust between the District and its residents. To properly effectuate its safety net programs, DHS and sister agencies have devoted years of work to overcome stigma, misinformation, and other barriers to access, particularly among immigrant communities. If households experience uncertainty in receiving crucial benefits, they are likely to feel that DHS

has failed or engaged in wrongdoing. SNAP benefits directly fund one of the most crucial basic human needs: access to food. Failure to deliver on that basic need as promised is a deep violation of residents' trust.

20. Furthermore, loss of trust among District residents will likely lead to a chilling effect among various immigrant communities, leading to decreased SNAP enrollments, which in turn will cause irreparable long-term harm and costs to the District in the form of increased healthcare and safety net costs, and expending of resources to rebuild trust in the public agency.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed in Washington, DC on November 24, 2025.

_____
Brian Campbell
Administrator, Economic Security Administration
District of Columbia Department of Human Services

## CERTIFICATE OF SERVICE

I certify that on November 26, 2025, I served the foregoing upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Susanne Luse<br>Assistant United States Attorneys<br>U.S. Attorney's Office for the District of Oregon<br>1000 SW Third Ave. Suite 600<br>Portland, OR 97204 | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>___ E-SERVE<br>_X_ E-MAIL<br>susanne.luse@usdoj.gov |

 *s/ Leanne Hartmann*
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KRISTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
kirsten.m.naito@doj.oregon.gov
sara.delrubin@doj.oregon.gov
derek.olson@doj.oregon.gov

*Counsel for the State of Oregon*

Page 1 -   CERTIFICATE OF SERVICE
          LH5/om1/1002822308

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000