DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Leanne.Hartmann@doj.oregon.gov
            Brian.S.Marshall@doj.oregon.gov
            kirsten.m.naito@doj.oregon.gov
            sara.delrubin@doj.oregon.gov
            derek.olson@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al.,<br><br>    Defendants. | Case No.   6:25-cv-02186-MTK<br><br>DECLARATION OF KASEY REAGAN |

## DECLARATION OF KASEY REAGAN

I, Kasey Reagan, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.     I am a resident of the State of Illinois and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

### Personal Background and Qualifications

2.     I am the Statewide Program Initiatives Administrator for the Division of Family and Community Services (FCS) for the Illinois Department of Human Services (IDHS or Agency).

3.     IDHS was created in 1997 to provide Illinois residents with streamlined access to integrated services and help them lead healthy, safe and enriched lives.

4.     IDHS is one of Illinois' largest state agencies, with more than 16,000 employees administering programs related to early childhood services and education, behavioral health and recovery, family and community services, rehabilitation services and developmental disabilities.

5.     IDHS is the state agency tasked by the Illinois Public Aid Code with the administration of the Supplemental Nutrition Assistance Program (SNAP).  SNAP involves the issuance of monthly electronic benefits that can be used to purchase food at authorized retail stores.

6.     I have held the position of Statewide Program Initiatives Administrator at IDHS since May 2019. Since 2001, I have served in several capacities within IDHS, including but not limited to Electronic Benefit Transfer (EBT) Program Director, EBT Reconciliation manager and Human Services Caseworker.

7.     As the Statewide Program Initiatives Administrator, I am responsible for the operations and management of Illinois' SNAP program administration, including both the SNAP

Fraud Unit and the EBT system, which is the means by which all food benefits are distributed. Additionally, I serve as subject matter expert for the Illinois eligibility system that determines the eligibility of applicants for medical, cash and food assistance programs.

8. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

## SNAP in Illinois

9. SNAP is a key part of Illinois' efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. It is nearly impossible to overstate the crucial role SNAP plays in the lives of Illinoisans who most need help accessing food. SNAP is a cornerstone public health program with long term success at fighting hunger and helping low-income people and families buy the food they need.

10. Thus far in State Fiscal Year 2026, an average of 1,033,970 households received SNAP benefits in Illinois each month, which included an average of 1,873,090 individuals. Households in Illinois receive on average $350 per month in SNAP benefits to meet their basic subsistence and nutritional needs. During the federal fiscal year between October 1, 2024 and September 30, 2025, IDHS issued an average of $378 million per month in SNAP benefits in Illinois. More than $4.9 billion in SNAP benefits were issued in Illinois during State Fiscal Year 2025.

11. IDHS administers the SNAP program in Illinois pursuant to the Illinois Public Aid Code. 305 ILCS 5/1-1 *et seq.* Pursuant to federal law, IDHS administers SNAP on behalf of the United States Department of Agriculture (USDA) and is responsible for the issuance, control, and accountability of SNAP benefits and EBT cards; ensuring program integrity; and supervising local transitional assistance offices' day-to-day administration of SNAP, including processing

applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2. USDA funds the entirety of SNAP benefits in Illinois, though Illinois and the federal government split administrative costs. 7 U.S.C. § 2025(a).

### Public Law 119-21 (the One Big Beautiful Bill Act of 2025)

12. On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

13. Section 10108 of the OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

### USDA's October 31, 2025 SNAP Guidance

14. On October 31, 2025, USDA issued guidance ("the Guidance"), which purports to explain the changes to non-citizens' eligibility for SNAP benefits required by Section 10108 of Public Law 119-21. IDHS received this Guidance via email.

15. I and others at IDHS have reviewed the Guidance and 7 U.S.C. 2015(f), as amended by the OBBB. IDHS's understanding is that the Guidance is inconsistent with other laws and regulations regarding SNAP eligibility that we understand to be unchanged by the OBBB.

16. On November 3, 2025, IDHS sent a request for technical assistance to USDA in response to the Guidance. Specifically, IDHS asked about two populations of non-citizens. The first question was regarding refugee and asylees, who later become Legal Permanent Residents (LPRs), and if they were subject to the 5-year bar. The second question was regarding Amerasians, who by the chart provided in the Guidance, appear to qualify for federal SNAP

benefits regardless of LPR status, but were not listed as qualifying in the narrative of the Guidance unless they were an LPR.

17. On November 4, 2025, USDA responded to IDHS's request for technical assistance. The response indicated that there was no answer available to the first question regarding refugees and asylees. As to the second question, USDA's response indicated that Amerasians would be eligible for SNAP benefits as they are an LPR and not subject to a 5-year bar. USDA's response and failure to clarify its Guidance in the ways IDHS requested demonstrates how the Guidance is confusing to agencies, and increases the risk of implementing changes to eligibility.

### Implementation of the OBBB and the Guidance by IDHS

18. When IDHS is processing an application or redetermination for SNAP assistance that includes a non-citizen household member, workers will follow Illinois' SNAP policy procedure,[1] which requires noncitizens applying for SNAP benefits to prove their immigration status according to the United States Citizenship and Immigration Services (USCIS) of the U.S. Department of Homeland Security (DHS). Noncitizens who claim proper status must provide USCIS documents that have the person's Alien Registration A-Number or Admission (I-94) Number, or other items that show proof of their current USCIS status. Workers will verify with USCIS all documents provided by the client, using the Systematic Alien Verification for Entitlements (SAVE) system, which is maintained and operated by DHS, and which will produce a confirmation of the recipient's current immigration status.

19. In order for Illinois to implement the changes related to passage of OBBB, the state must implement system changes to differentiate the now-conflicting non-citizen

---

[1] The Policy is PM 03-01-05: Verification of USCIS Status Through SAVE.

4

immigration status requirements between the federal programs of Medicaid, SNAP and cash assistance (TANF).  Prior to the OBBB, eligibility for these federal programs had the same non-citizen immigration status requirements.  But now, under the OBBB, agencies must implement different eligibility requirements for SNAP than for the other programs.  In order to implement and apply these requirements, it is imperative that USDA guidance regarding non-citizen eligibility be precise and clear related to individuals' status that is verified by the federal systems.

20. In September 2025, following the passage of the OBBB, IDHS began to take steps to implement the OBBB's changes to non-citizen eligibility for SNAP. At the time the OBBB passed, IDHS already had been working on an enhancement for non-citizen status verification for several months, since April 2025. While USDA had not provided guidance regarding the non-citizen SNAP eligibility portions of the newly-passed OBBB, IDHS began to meet internally to discuss what actions could be taken to implement the OBBB's changes that would mitigate harm to both customers and error rate. However, without any specific USDA guidance regarding specific non-citizen statuses, it was likely implementation would have some error. Because the large, laborious enhancement to the internal system that was begun in April 2025 could not be implemented until January 2026, a process had to be devised to implement the OBBB's SNAP-only eligibility changes through a very manual, labor-intensive, error-prone process in advance of the January implementation.  In early October 2025, IDHS decided on the manual process for removing certain non-citizens that were no longer eligible for SNAP benefits based on their best understanding of the OBBB, while ensuring the same persons remained eligible for Medicaid benefits.  The individuals that IDHS identified as needing to be removed from the SNAP program were those that did not have a status of the three types originally listed

in the OBBB.  Additionally, IDHS was assuming the eligibility ended for all members as of the same date.

21.     Once the Guidance was received on October 31, 2025, the manual process that had been decided by IDHS had to be suspended.  The Guidance indicated that the changes should only be implemented at the next application or redetermination, and therefore not all cases could be manually recalculated at the same time. The delay in providing guidance led to wasted work hours for eligibility workers and for system designs.  IDHS had written and circulated an internal policy to implement the changes of the OBBB according to IDHS's best understanding of the statute.  After the Guidance issued, that internal policy needed to be suspended, because it was not consistent with said Guidance.

22.     IDHS is thus currently unable to proceed with the implementation of the OBBB changes. Due to the confusing guidance from USDA regarding whether certain populations are eligible for SNAP benefits, IDHS is unable to publish a new internal policy and implement changes pursuant to that policy in time to avoid SNAP errors – which can cost the State hundreds of millions of dollars in cost-sharing.

### Impact of the Guidance on Illinois and IDHS

23.     The Guidance has caused significant confusion and administrative difficulties for IDHS, disrupting IDHS's efforts to implement the OBBB's changes to non-citizen SNAP eligibility. Changes to IDHS's internal policy implementing the procedure to determine SNAP eligibility, eligibility systems, and worker processes take time to develop, train and implement. The already short timeline to implement the OBBB changes before errors could be assessed was proven to be impossible due to the lack of timely guidance.  Hundreds of staff hours have been wasted, and confusion has been compounded due to the onerous task of IDHS attempting to reconcile the requirements of the OBBB and USDA's conflicting Guidance.

24. As described above, IDHS has already invested significant time and resources into the planning of the implementation of the changes to non-citizen SNAP eligibility made by the OBBB. The Guidance will increase the costs required to implement the changes required by the OBBB. Specifically:

- To date, 104.5 vendor work hours were logged regarding the research and implementation of the manual process for OBBB changes for SNAP based on IDHS's understanding of the OBBB prior to receiving the October 31 Guidance. It is reasonable to expect the same amount of work hours to be needed again to make changes consistent with the October 31 Guidance. A general estimate of this cost would be more than $28,000 total. This assumes a general $136.09 hourly rate based on the current Maintenance and Operations Task Order. In addition to the above hours and costs, for the long term system implementation of the OBBB changes for SNAP scheduled for January 2026, the October 31 Guidance required an estimated additional 50 vendor hours. The estimated cost for these additional changes would be over $6.800.00.
- Based on the documented vendor work hours spent, it is reasonable to assume the same, if not more, hours were spent by IDHS staff on the implementation of the changes required to write the policy updates, design system changes, develop the new business processes required, and incorporate into training.
- The lack of specific guidance and inadequacy of the delayed October 31 Guidance has contributed to a significant increase in risk of errors being incurred by IDHS regarding implementation.

- o   The rushed paced by which policy and training must be provided in order to impact SNAP determination by the deadline requires IDHS to proceed based on assumptions and reduce review timelines.
- o   Late changes to system design naturally increase the risk that code will be implemented with error and reduce the time available to test system changes before implementing into production.

25. Immediate implementation of the Guidance's non-citizen eligibility requirements requires a manual process to be put into place until system enhancements to the entire system can be completed. This process involves workers completing a manual SNAP calculation, which would include proration of income of expenses. This manual calculation increases the risk for payment error.

26. The Guidance elevates the risk that Illinois will face massive financial penalties due to inadvertent noncompliance with the OBBB and/or the Guidance. Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The Guidance stated that the "exclusionary period"—that is, the period of time during which errors do not count towards a state's error rate—ended on November 1, 2025, the day after the Guidance was issued. Historically, there are more errors as agencies figure out how to implement a new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the Guidance as part of Illinois' error rate, increasing the risk that Illinois may have to pay financially ruinous penalties. And USDA claims the authority to be able to count those errors starting November 1, 2025, leaving only a one-day period for compliance, further increasing the chance of these penalties. In the past two decades, major changes implemented to the SNAP program have been published as proposed rules with a public comment period, prior to the final

rules being published by FNS, giving states an opportunity to ask clarifying questions and receive technical assistance in advance of compliance. The increased complexity of the changes to non-citizen eligibility, evident by the outstanding guidance clarifications demonstrates the improbability of IDHS to implement these changes correctly by the November 1 deadline.

27. IDHS's understanding of the Guidance is that it appears to exclude certain categories of non-citizens from SNAP who appear to be eligible under the OBBB and other eligibility requirements that were unchanged by the OBBB. Under the Guidance, many non-citizens within Illinois will be excluded from SNAP. IDHS currently estimates that about 14,000 noncitizens will lose eligibility.

28. The loss of SNAP benefits not only harms the affected individuals, but also harms the State because it will result in greater need and requests for state-funded assistance programs, including state-funded nutrition access programs similar to SNAP. For example, Illinois provides a state-funded food benefit program for victims of trafficking, torture, and other serious crimes. This program provides the equivalent level of food benefits under state food program that an individual would eventually be eligible to receive under the federal SNAP program once they achieve an eligible federal status. Due to the changes under OBBB, asylees with a derivative family member and T Visa holders that are no longer qualifying for SNAP will now qualify for this state program.

29. The lack of clarity regarding non-citizen eligibility caused by the Guidance will significantly erode trust between Illinois and its residents. To properly effectuate its safety net programs, IDHS has devoted years of work to overcome stigma, misinformation, and other barriers to access, particularly among immigrant communities. If households experience uncertainty in receiving crucial benefits, they are likely to feel that IDHS has failed them or

engaged in wrongdoing. SNAP benefits directly fund one of the most crucial basic human needs: access to food. Failure to deliver on that basic need as promised is a deep violation of residents' trust.

30. Furthermore, loss of trust among Illinois residents will likely lead to a chilling effect among various immigrant communities, leading to decreased SNAP enrollments, which in turn will cause irreparable long-term harm and costs to the State in the form of increased healthcare and safety net costs, and expending of resources to rebuild trust in the public agency.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed in Springfield, Illinois on November 25, 2025.

*Kasey Reagan*
Digitally signed by Kasey Reagan
Date: 2025.11.25 16:04:46 -06'00'

_____
Kasey Reagan
Statewide Program Initiatives Administrator
Illinois Department of Human Services

# CERTIFICATE OF SERVICE

I certify that on November 26, 2025, I served the foregoing upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Susanne Luse<br>Assistant United States Attorneys<br>U.S. Attorney's Office for the District of Oregon<br>1000 SW Third Ave. Suite 600<br>Portland, OR 97204 | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>___ E-SERVE<br>_X_ E-MAIL<br>susanne.luse@usdoj.gov |

 *s/ Leanne Hartmann*
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KRISTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
kirsten.m.naito@doj.oregon.gov
sara.delrubin@doj.oregon.gov
derek.olson@doj.oregon.gov

*Counsel for the State of Oregon*

Page 1 -   CERTIFICATE OF SERVICE
         LH5/om1/1002822308

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000