DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Leanne.Hartmann@doj.oregon.gov
        Brian.S.Marshall@doj.oregon.gov
        kirsten.m.naito@doj.oregon.gov
        sara.delrubin@doj.oregon.gov
        derek.olson@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al., <br><br> Defendants. | Case No.   6:25-cv-02186-MTK <br><br> DECLARATION OF MICHAEL COLE |

# DECLARATION OF MICHAEL COLE

I, Michael Cole, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a resident of the Commonwealth of Massachusetts, and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

## Personal Background and Qualifications

2. I am currently the Acting Commissioner of the Massachusetts Department of Transitional Assistance (DTA), a position I have held since September 2025.

3. Immediately before assuming this role, I served as DTA's Chief Operating Officer. Between 2014 and 2024, I held several other titles within DTA, including Deputy Commissioner for Policy and Programs, and Assistant Commissioner for Organizational Effectiveness.

4. I make this declaration in my official capacity at DTA, based on personal knowledge and on my review of information and records gathered by agency staff.

5. DTA operates as the Commonwealth's primary agency for administering public assistance programs, with a statutory mission to assist and empower low-income individuals and families to meet their basic needs, improve their quality of life, and achieve long-term economic self-sufficiency. DTA administers a comprehensive portfolio of both state- and federally-funded programs, including but not limited to the Supplemental Nutrition Assistance Program (SNAP), which provides 100% federally-funded food assistance to, among others, families with children, older adults, and persons with disabilities; the Healthy Incentives Program (HIP), a state-funded initiative that incentivizes SNAP recipients to purchase local produce; Transitional Aid to

Families with Dependent Children (TAFDC), a state- and federally-funded program operating under the federal Temporary Assistance for Needy Families (TANF) block grant that provides financial assistance and employment programming with work requirements; Emergency Aid to the Elderly, Disabled, and Children (EAEDC), a state-funded program serving elderly and disabled adults and children; and state-funded State Supplemental Payments (SSP) to Supplemental Security Income (SSI). The agency operates employment services through its "Pathways to Work" programs, which connect TAFDC and SNAP clients to career pathways, education, and training opportunities designed to promote economic mobility and sustained employment. DTA maintains rigorous program integrity standards through advanced analytics and fraud detection practices.

6.  As of October 2025, DTA operates through a workforce of approximately 1,900 employees, with over 80% deployed across 21 local transitional assistance offices throughout the Commonwealth, supported by specialized units including but not limited to program integrity investigators, administrative hearing officers, and policy specialists.

**SNAP in Massachusetts**

7.  SNAP, one of the programs administered by DTA, involves the issuance of monthly electronic benefits that can be used to purchase food at authorized retail stores.

8.  SNAP is a key part of Massachusetts's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food – indeed, SNAP is, by far, the Commonwealth's largest anti-hunger program. Thus far in 2025, an average of 1.1 million people received SNAP benefits in Massachusetts each month, comprising approximately 665,000 households, and including 342,000 children and 261,500 elderly individuals. Households in Massachusetts receive on average $323 per month in SNAP benefits to meet their basic subsistence and nutritional needs. During the federal fiscal year between

October 1, 2024 and September 30, 2025, DTA issued approximately $218.5 million per month in SNAP benefits in Massachusetts.

9. DTA is responsible for issuing and overseeing SNAP benefits and Electronic Benefit Transfer (EBT) cards; ensuring program integrity; and supervising local transitional assistance offices' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2; *see* Mass. Gen. Laws ch. 18 §§ 1 *et seq.*  USDA Food and Nutrition Services (USDA-FNS) funds the entirety of SNAP benefits in Massachusetts, although Massachusetts and the federal government split administrative costs. 7 U.S.C. § 2025(a).

10. For Federal Fiscal Year 2025, DTA budgeted approximately $213 million in state funds to pay for SNAP administration. This spending was expected to generate approximately $106 million in SNAP federal financial participation, to cover half of anticipated administration costs.

11. Consistent with federal law, DTA administers SNAP benefits to non-citizens who are eligible for SNAP by statute.

### Public Law 119-21 (One Big Beautiful Bill Act of 2025)

12. On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

13. Section 10108 of the OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

### USDA-FNS's Guidance on the OBBB and Alien SNAP Eligibility

14. On July 9, 2025, DTA emailed two individuals at USDA-FNS's Northeast Regional Office (NERO) and asked if it should await guidance from USDA-FNS before

3

implementing any OBBB changes. On July 10, 2025, Matthew Henschel, Regional Director of NERO, replied that DTA should wait and told DTA that "FNS is working on guidance that will address implementation."

15. On September 4, 2025, NERO emailed DTA an informational memorandum with guidance on the various changes to SNAP required by the OBBB. It stated "additional, detailed guidance on implementation of these provisions is generally forthcoming by September 30, unless specified otherwise." For Section 10108 of the OBBB, regarding Alien SNAP Eligibility, the memorandum stated in its entirety: "This provision makes changes to non-citizen eligibility for SNAP. Further guidance is forthcoming."

16. On September 15, 2025, DTA attended its regularly scheduled quarterly meeting with NERO. Since DTA was awaiting guidance regarding the non-citizen provisions of the OBBB, DTA placed the topic on the agenda. At the meeting, USDA-FNS representatives repeated that guidance on the non-citizen provisions of OBBB was forthcoming.

17. On October 20, 2025, DTA again emailed Mr. Henschel at NERO to ask if guidance regarding the implementation of Section 10108 of the OBBB, regarding Alien SNAP Eligibility, was forthcoming, and whether DTA could expect to receive guidance before or after November 1, 2025. Mr. Henschel acknowledged receipt of DTA's email and said he would share any updates when available.

18. On October 31, 2025, USDA finally issued guidance ("the Guidance") purporting to explain the changes to non-citizens' eligibility for SNAP benefits required by Section 10108 of Public Law 119-21. On that same day, DTA received the Guidance and confirmed receipt to USDA.

19. I have reviewed the Guidance and 7 U.S.C. 2015(f), as amended by the OBBB, independently and with policy staff at DTA. DTA's understanding is that the Guidance is inconsistent with other laws and regulations regarding SNAP eligibility that we understand to be unchanged by the OBBB.

## Implementation of the OBBB and the Guidance by DTA

20. At present, DTA requires SNAP applicants to verify their eligible non-citizen status by providing DTA with their passport or any relevant documentation issued by US Citizenship and Immigration Services (USCIS). DTA simultaneously requests verification from the US Department of Homeland Security's Systematic Alien Verification for Entitlements (SAVE) for each non-citizen applying or recertifying for SNAP benefits. DTA is required by federal law to use SAVE to verify SNAP eligibility for all non-citizens. 7 CFR 272.11(a), (c).

21. Once DTA verifies a non-citizen applicant's SNAP eligibility through these means, DTA records the applicant's immigration status and related information in its eligibility system, BEACON.

22. In July 2025, immediately following the passage of OBBB, DTA began to evaluate how it would implement OBBB's changes to non-citizen eligibility for SNAP. In the past, when DTA was required to implement significant changes to SNAP, USDA-FNS would provide extensive guidance, update its regulations, and offer technical assistance to states, well in advance of the applicable implementation date. For instance, following the Fiscal Responsibility Act of 2023, Public Law 118-5, signed on June 3, 2023, USDA-FNS issued its first piece of guidance on the statute six days later on June 9, 2023, and additional guidance on August 25, 2023. In this instance, however, DTA asked USDA-FNS several times when it could expect guidance about implementing OBBB's Alien SNAP Eligibility provisions, and only received a

substantive response on October 31, 2025, the day before it was due to implement those provisions.

23.     Because USDA-FNS issued its Alien SNAP Eligibility Guidance so late, and did not even provide DTA a date certain when that guidance would arrive (if ever), DTA was compelled to prepare its own analysis and interpretation of the OBBB's non-citizen eligibility provisions. On August 29, 2025, DTA received guidance from USDA -DNS, stating that the 120-day exclusionary period for error rate calculations would end on November 1, 2025. For this reason, DTA sought to develop and issue guidance before November 1, 2025. This work was done primarily in September and October 2025, so that DTA would have time to train staff and make the necessary systems changes prior to November 1, 2025.

24.     DTA completed this work and issued non-citizen guidance to DTA staff on October 28, 2025. DTA's guidance also provided detailed instructions on how to verify eligibility and enter non-citizen client data into BEACON. DTA incorporated this guidance into its online guide (OLG), which is the electronic repository of all of DTA's policies and procedures and an easily accessible resource for staff. DTA's October 28 guidance regarding non-citizens created five new OLG pages, significantly edited eight OLG pages, and obsoleted sixteen.

25.     DTA trained all supervisors on its non-citizen guidance on October 29, 2025. DTA's training unit had prepared training for all DTA staff, as well; but DTA placed those trainings on hold due to the late issuance of USDA-FNS's Guidance of October 31, 2025.

26.     Thus, even before USDA-FNS released its guidance, DTA faced significant uncertainty in determining how OBBB impacted SNAP non-citizen eligibility determinations. The lack of clarifying regulations and clear guidance meant that DTA expended significant staff

time and resources to evaluate multiple administrative, legal, and technical possibilities before it was able to reach the good faith conclusions reflected in its October 28, 2025, guidance. This situation risked harm to both impacted SNAP recipients and potential administrative penalties to Massachusetts. This uncertainty and danger to both clients and the Commonwealth has only been compounded since USDA-FNS released the Guidance.

### Impact of the USDA-FNS Guidance on Massachusetts and DTA

27. When USDA-FNS issued its Guidance on October 31, 2025, DTA learned for the first time how the federal agency interpreted the non-citizen eligibility provisions of the OBBB, which conflict with the text of OBBB.

28. Because of these conflicting interpretations and the late arrival of the Guidance, USDA-FNS's Guidance has caused significant confusion and administrative difficulties for DTA, disrupting and delaying DTA's efforts to implement the OBBB's changes to non-citizen SNAP eligibility. DTA remains in limbo about how to proceed but anticipates it will need to take the following steps to account for the new USDA-FNS Guidance:

   a. DTA will need to implement systems enhancements to process SNAP eligibility accurately to account for discrepancies between the state's current interpretation of the OBBB and the Guidance.

   b. DTA will again need to revise policy and procedure documentation for eligibility staff. Likewise, DTA will need to update training materials and re-train all eligibility staff on proper application of policy.

   c. The lack of clarity in USDA-FNS's regulations and the Guidance will create more ambiguity and confusion for staff and SNAP recipients, most likely leading to an increase in administrative hearings.

        d. As non-citizens are impacted by the OBBB changes, DTA also anticipates an increase in customer service inquiries, by phone and walk ins to our local offices, increasing workload on eligibility and local office staff.

29. The Guidance also elevates the risk that Massachusetts will face unprecedented financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. Beginning in fiscal year 2028, USDA-FNS will reduce the federal share of a State's SNAP benefits if the State has a certain payment error rate, and the State's share will be up to 15% of the cost. Based on its payment error rate for the last fiscal year, Massachusetts's share of the allotment for its residents could be approximately $400 million annually.

30. Relatedly, the Guidance stated that the "exclusionary period"—that is, the period of time during which errors do not count towards a state's error rate—ended on November 1, 2025, the day after the Guidance was issued. The Guidance provided further that

> the 120-day variance exclusion period will not apply if the State agency does not implement the new provision in accordance with 7 CFR 275.12(d)(2)(vii)(D). State agencies that implement a provision later than the required implementation date, but before the end date of the exclusionary period, will only be allowed a variance exclusion for the time remaining. State agencies that implement after the exclusionary period end date do not get a variance exclusion.

31. By withholding implementation guidance until the day prior to the end of the exclusionary period (as announced by USDA-FNS), USDA-FNS forced states to develop their own staff guidance for the new Alien SNAP Eligibility provisions, with no directive from USDA-FNS that would afford the benefit of error rate protection and no time for DTA to ensure that agency staff were operating in compliance with USDA-FNS's interpretation of the changes made by OBBB. Equally problematic, the Guidance that USDA-FNS *did* issue is incomplete and contradictory to the language of the OBBB in many noncitizen categories, increasing the

8

likelihood that eligibility decisions may be calculated in error under USDA-FNS's interpretation of OBBB.

32.     Historically, more errors occur as agencies figure out how to implement new guidance from the federal government and ensure staff are sufficiently informed to be in compliance. This is why the 120-day variance exclusion period typically begins *after* USDA-FNS issues its guidance on a topic. But again, that did not occur here. Thus, USDA-FNS may attempt to count any variances with its Guidance as "errors" against Massachusetts's error rate for this fiscal year, increasing the risk that Massachusetts may have to pay financially ruinous penalties in the future. And USDA-FNS claims the authority to be able to count those errors starting November 1, 2025, leaving only a less than one-day period for compliance, further increasing the chance of these penalties.

33.     The USDA-FNS Quality Control Review Handbook (FNS Handbook 310) requires QC reviewers to compare payment variances to the instructions contained in a new regulation or the implementing memorandum. As noted, the implementing Guidance for Alien SNAP Eligibility existed for only a single day of the 120-day exclusion period, meaning reviewers will be evaluating State actions against instructions the State did not actually have during the period in which those actions occurred. Because the State had no implementing instructions for essentially the entire 120-day variance exclusion period, Massachusetts not only loses the protection of the variance exclusion but also faces the compounding impact of errors originating in that period and persisting throughout the rest of the annual review months. Those errors carry outsized financial costs under Section 10105 of the OBBB, given that noncitizen ineligibility findings render either the full allotment (for one-person households) or the noncitizen's pro rata share (for mixed households) entirely countable as payment in error.

34. DTA's understanding of the Guidance is that it appears to exclude certain categories of non-citizens from SNAP who appear to be eligible under the OBBB and other statutory provisions and eligibility requirements that were unchanged by the OBBB. Under the Guidance, approximately 9,500 non-citizens within Massachusetts will be excluded from SNAP. This will harm Massachusetts and DTA in the following ways.

35. Decreased SNAP enrollment in Massachusetts will lead to increased hunger in the Commonwealth and more reliance on its already overwhelmed emergency food assistance program.[1] SNAP is the largest anti-hunger program in the Commonwealth of Massachusetts. As a result, the withdrawal of individuals and families from SNAP will have harmful downstream effects on the safety net programs that currently fill needs that SNAP does not cover.

36. Food banks currently help many people facing hunger (e.g., because of unmet needs under SNAP). Massachusetts has four food bank distribution centers that source food to approximately 900 food pantries statewide. Data collected by one of these distribution centers show people often utilize food pantries to fill needs that are not fully addressed by income and nutrition assistance programs. A 2024 survey found that one in three households in Massachusetts reported having experienced food insecurity at some point in the preceding 12 months.[2] Even now, food banks and pantries are already stretched to capacity, struggling to meet demand. Individuals departing from SNAP would likely shift to the already overburdened food bank system. Indeed, food banks have expressed concern about their ability to respond to rising

---

[1] Craig LeMoult, *'A perfect storm' hits food assistance programs in November*, wgbh (October 28, 2025), https://www.wgbh.org/news/local/2025-10-28/a-perfect-storm-hits-food-assistance-programs-in-november; Mira Donaldson, *Greater Boston Food Bank faces federal funding cuts*, wbur (April 7, 2025), https://www.wbur.org/news/2025/04/07/greater-boston-food-bank-federal-funding-cuts-usda.

[2] The Greater Boston Food Bank, The Cost of Hunger in Massachusetts, The Greater Boston Food Bank's Fifth Statewide Food Access Report (2025), https://www.gbfb.org/wp-content/uploads/2025/06/GBFB_Food-Access-Report_2025_final.pdf.

food insecurity given threats to federal nutrition assistance programs *and* uncertainty created by USDA actions.[3]

37. Additionally, SNAP is an economic driver for Massachusetts local businesses. The program injects nearly $3 billion into more than 5,500 Massachusetts businesses. SNAP is an economic multiplier program for households and local food systems too--for every dollar in SNAP benefits received by a client in Massachusetts, $1.50 goes back into the local economy. If individuals and families are discouraged or prevented from enrolling in SNAP, then local farmers, grocery stores, and vendors will lose business. SNAP sales alone average 20% of grocery store, supercenter, and retail store sales within the Commonwealth.

38. Massachusetts also operates HIP, a state-funded program that offers additional funds for Massachusetts SNAP clients purchasing local produce from farm vendors. Without access to SNAP, SNAP recipients cannot use SNAP benefit funds at HIP retailers. As a result, the lack of SNAP-funded purchases from otherwise eligible individuals and families will have a particularly large impact on local farms in Massachusetts.

39. The lack of clarity regarding non-citizen eligibility caused by the Guidance will significantly erode trust between the Commonwealth of Massachusetts and its residents. To properly effectuate its safety net programs, DTA has devoted years of work to overcome stigma, misinformation, and other barriers to access, particularly among immigrant communities. DTA is the representative of the broader SNAP framework to Massachusetts residents: if households experience uncertainty in receiving crucial benefits, they are likely to feel that DTA has failed or engaged in wrongdoing. SNAP benefits directly fund one of the most crucial basic human needs:

---

[3] Amanda Beland, *Mass. food banks brace for double hit of federal food cuts, benefit changes,* wbur (July 22, 2025), https://www.wbur.org/news/2025/07/22/food-banks-snap-cuts-massachusetts.

access to food. Failure to deliver on that basic need as promised is a deep violation of residents' trust.

40. DTA's work in this regard has reached immigrant communities, and losing trust among those groups will likely lead to decreased SNAP enrollments, which in turn will cause irreparable long-term harm and costs to the State in the form of increased healthcare and safety net costs, and expending of resources to rebuild trust in the public agency. USDA-FNS has acted in disregard of those reliance interests of the Commonwealth.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of November, 2025, in Boston, Massachusetts.

_Michael A. Cole_

_____
Michael Cole
Acting Commissioner
Massachusetts Department of Transitional Assistance

CERTIFICATE OF SERVICE

      I certify that on November 26, 2025, I served the foregoing upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Susanne Luse<br>Assistant United States Attorneys<br>U.S. Attorney's Office for the District of Oregon<br>1000 SW Third Ave. Suite 600<br>Portland, OR 97204 | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>___ E-SERVE<br>_X_ E-MAIL<br>susanne.luse@usdoj.gov |

      *s/ Leanne Hartmann*
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KRISTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
kirsten.m.naito@doj.oregon.gov
sara.delrubin@doj.oregon.gov
derek.olson@doj.oregon.gov

*Counsel for the State of Oregon*

Page 1 -   CERTIFICATE OF SERVICE
           LH5/om1/1002822308

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000