DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Leanne.Hartmann@doj.oregon.gov
        Brian.S.Marshall@doj.oregon.gov
        kirsten.m.naito@doj.oregon.gov
        sara.delrubin@doj.oregon.gov
        derek.olson@doj.oregon.gov


Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| STATE OF NEW YORK, et al., | Case No.   6:25-cv-02186-MTK |
| Plaintiffs, | |
| v. | DECLARATION OF ERIN FRISCH |
| BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al., | |
| Defendants. | |

## DECLARATION OF ERIN FRISCH (MICHIGAN)

I, Erin Frisch, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.    I am a resident of the State of Michigan, and I am over the age of 18.  If called as a witness, I could and would testify competently to the matters set forth below.

### Personal Background and Qualifications

2.    I am currently employed by the Michigan Department of Health and Human Services ("MDHHS") as the Senior Deputy Director of the Economic Stability Administration (ESA).

3.    In my role, I oversee the implementation of MDHHS policy and manage operations of the ESA, including more than 5,000 staff across 100 locations throughout Michigan.  My responsibilities include program development and oversight with the Business Service Centers, Migrant Programs, Payment Accuracy Unit, Disability Determination Services, Public Assistance Operations, Supportive Adult Services Section, Technology and Cross Enrollment.  I also direct strategic programing, quality assurance activities, resource allocation, internal communication strategies, and audit remediation.

4.    Among the programs administered by MDHHS, and within the scope of ESA, is the Supplemental Nutrition Assistance Program (SNAP), which issues monthly electronic benefits that can be used to purchase food at authorized retail stores.

5.    I am familiar with the information in the statements set forth below either through personal knowledge, consultation with MDHHS staff, or from my review of relevant documents and information.

**SNAP in Michigan**

6.    SNAP, one of the programs administered by MDHHS, involves the issuance of monthly electronic benefits that can be used to purchase food at authorized retail stores.

7.    SNAP is a key part of Michigan's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food.  In federal fiscal year 2025 (October 1, 2024 through September 30, 2025), an average of 1,418,057 people received SNAP benefits in Michigan each month, including approximately 731,078 families and 548,038 children.  Households in Michigan receive on average $338.00 per month in SNAP benefits to meet their basic subsistence and nutritional needs.  MDHHS issued approximately $255,398,298 per month in SNAP benefits in Michigan.

8.    MDHHS administers the SNAP program in Michigan pursuant to Michigan Compiled Law § 400.10.  Pursuant to federal law, MDHHS is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and supervising counties and districts' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households.  7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.  USDA funds the entirety of SNAP benefits in Michigan, though Michigan and the federal government split administrative costs. 7 U.S.C. § 2025(a).

9.    Consistent with federal law, MDHHS administers SNAP benefits to non-citizens who are eligible for SNAP by statute.

**Public Law 119-21 (the One Big Beautiful Bill Act of 2025)**

10.    On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

11.     Section 10108 of the OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

## USDA's October 31, 2025 SNAP Guidance

12.     On October 31, 2025, USDA issued guidance ("the Guidance"), which purports to explain the changes to non-citizens' eligibility for SNAP benefits required by Section 10108 of Public Law 119-21.

13.     I and others at MDHHS have reviewed the Guidance and 7 U.S.C. 2015(f), as amended by the OBBB.  MDHHS's understanding is that the Guidance is inconsistent with other laws and regulations regarding SNAP eligibility that we understand to be unchanged by the OBBB.

14.     On October 31, 2025, USDA sent MDHHS the Guidance via email.

## Implementation of the OBBB and the Guidance by MDHHS

15.     When an individual submits an application for SNAP, they must state whether they are a U.S. citizen or have a non-citizen status.  Non-citizens are required to verify their non-citizen status during the eligibility process.  For SNAP, individuals must provide documentation of their non-citizen status.  Common verification sources include, but are not limited to, an I-551, Permanent Resident Card or an I-94, Arrival-Departure Record.

16.     Once the verification is provided by the individual, the information is entered into the integrated eligibility system.  An automatic system match is sent to the federally required Systematic Alien Verification for Entitlements (SAVE) system.  SAVE enables federal, state, and local government agencies and licensing bureaus to obtain immigration status information needed to determine a non-citizen applicant's eligibility for many public benefits.  This ensures that only eligible non-citizen applicants receive federal, state, or local public benefits.  The

3

SAVE process is utilized when an application is processed, when an individual is added to an active SNAP case, and if a change in immigration status occurs. Once verified by SAVE, individuals are evaluated for benefit eligibility based on federal non-citizen eligibility requirements. Only individuals who have a federally-approved eligible non-citizen status, whose non-citizen status have been validated by SAVE may be approved for SNAP benefits if they meet all other SNAP eligibility requirements.

17.     In order to comply with the changes in OBBB and the corresponding Guidance, changes will be required across several areas. Policy manuals, training guides, and local office communications will require review and updates. Updates will be required for the integrated eligibility system to deny SNAP benefits to non-citizens whose status is no longer considered eligible. Each system change involves administrative costs for technology staff, testing staff, and policy staff. MDHHS will also incur technology costs to make required updates to interfaces with other state departments and potentially federal agencies. Additionally, the application for assistance, notices to applicants and recipients, the public website, and other forms of public communication will require updates.

18.     In July 2025, following the passage of the OBBB, MDHHS began to plan for the implementation of the OBBB's changes to non-citizen eligibility for SNAP. Due to the complexity of the new requirements, the lack of clarity on which individuals were affected, and the technical and administrative lift to implement this type of change, MDHHS awaited guidance from FNS prior to taking action to update our eligibility system. In an attempt to obtain guidance to implement the change, MDHHS emailed requests for guidance to FNS on July 8, 2025, August13, 2025, August 28, 2025, September 11, 2025, and September 19, 2025. FNS

responded that guidance was not yet available for the requested items.  For the latter two requests, FNS did not respond at all.

19.     The Guidance has conflicting and confusing language which has made full implementation impossible at this time without undertaking significant administrative costs that may end up being wasted.  And if implementation is completed incorrectly due to the lack of federal guidance, the State risks significant payment error rate increases (through no fault of its own).

## Impact of the Guidance on Michigan and MDHHS

20.     The Guidance has caused significant confusion and administrative difficulties for MDHHS, disrupting efforts to implement the OBBB's changes to non-citizen SNAP eligibility. Conflicting language has led to an inability to implement policy, process, and technology changes without risking an increased risk to the payment error rate.  MDHHS wishes to avoid unnecessary harm to individuals who should continue to remain eligible by implementing unclear guidance.

21.     The Guidance elevates the risk that Michigan will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance.  Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates.  The Guidance stated that the "exclusionary period"—that is, the period of time during which errors do not count towards a state's error rate—ended on November 1, 2025, the day after the guidance was issued and a Saturday.  Historically, more errors occur as agencies figure out how to implement new guidance.  If USDA purports to include any so-called "errors" stemming from the Guidance in calculating Michigan's error rate, Michigan faces financially ruinous penalties that are unmoored from any negligence or wrongdoing on its part.

5

22.     Furthermore, USDA has said that the 120-day grace period for compliance began when OBBB was passed, not from the date of the Guidance, leaving States with a single weekend day to iron out any issues.  This virtually guarantees an inflated error rate.

23.     MDHHS understands the Guidance to exclude certain categories of non-citizens from SNAP who appear to maintain eligibility under the OBBB and other laws.  If the Guidance is followed in lieu of the statute, over 18,000 non-citizens in Michigan will be excluded from SNAP.  This will harm Michigan and MDHHS.  Non-citizen residents are the only group currently increasing Michigan's population, and they are a major economic driver for the State.

24.     The loss of SNAP benefits will result in greater need and requests for state-funded assistance programs, including, for example, state-funded nutrition access programs similar to SNAP.  In addition, lack of access to SNAP benefits will hinder non-citizens' ability to obtain self-sufficiency and further contribute to the State's economic success.  Food access contributes to all-around health, children's education success, and family stability.  For non-citizen families adjusting to life in a new country, achieving these benefits helps them integrate and contribute.

25.     The lack of clarity in the Guidance regarding non-citizen eligibility will significantly erode trust between Michigan and its residents.  To properly effectuate its programs, MDHHS has worked hard to earn residents' trust, including among non-citizen communities.  If households experience uncertainty in receiving crucial benefits or feel marginalized, they are likely to feel that MDHHS has failed or even engaged in wrongdoing—making it more difficult for MDHHS to maintain their trust in other matters of public health.

26.     Furthermore, loss of trust among Michigan residents will likely cause a chilling effect among various non-citizen communities, leading to decreased SNAP enrollments, which

in turn will cause irreparable long-term harm and costs to the State in the form of increased healthcare and safety net costs, and expending of resources to rebuild trust in the public agency.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed in Lansing, Michigan on November 24, 2025.

*Erin P Frisch*

Erin Frisch
Senior Deputy Director of the
Economic Stability Administration
Michigan Department of Health and Human
Services

## CERTIFICATE OF SERVICE

I certify that on November 26, 2025, I served the foregoing upon the parties hereto by the method indicated below, and addressed to the following:

Susanne Luse
Assistant United States Attorneys
U.S. Attorney's Office for the District
of Oregon
1000 SW Third Ave. Suite 600
Portland, OR 97204

___ HAND DELIVERY
___ MAIL DELIVERY
___ OVERNIGHT MAIL
___ TELECOPY (FAX)
____ E-SERVE
_X_ E-MAIL
susanne.luse@usdoj.gov


 *s/ Leanne Hartmann*
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KRISTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
kirsten.m.naito@doj.oregon.gov
sara.delrubin@doj.oregon.gov
derek.olson@doj.oregon.gov

*Counsel for the State of Oregon*

Page 1 -   CERTIFICATE OF SERVICE
LH5/om1/1002822308