DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Leanne.Hartmann@doj.oregon.gov
        Brian.S.Marshall@doj.oregon.gov
        kirsten.m.naito@doj.oregon.gov
        sara.delrubin@doj.oregon.gov
        derek.olson@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al., <br><br> Defendants. | Case No.  6:25-cv-02186-MTK <br><br><br> DECLARATION OF JOVON PERRY |

# DECLARATION OF JOVON PERRY

I, Jovon Perry, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a resident of the State of Minnesota and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

## Personal Background and Qualifications

2. I am currently employed by the Minnesota Department of Children, Youth, and Families (DCYF) as Director of the Economic Assistance and Employment Supports Division.

3. My educational background includes a Bachelor of Science Legal Studies Degree, and Master of Public Affairs Degree. I have been employed as Director of the Economic Assistance and Employment Supports Division since April 2014. As Director, I oversee economic assistance programs including the Temporary Assistance for Needy Families (TANF) referred to as the Minnesota Family Investment Program, Diversionary Work Program, Supplemental Nutrition Assistance Program (SNAP), SNAP Employment and Training, and Summer Electronic Benefits Transfer (EBT) referred to as the Minnesota Sun Bucks Program. My professional experience in this and similar capacities expands 20 years working for state government and the nonprofit sector.

4. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

## SNAP in Minnesota

5. SNAP, one of the programs administered by DCYF, involves the issuance of monthly electronic benefits that can be used to purchase food at authorized retail stores.

1

6. SNAP is a key part of Minnesota's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In Federal Fiscal Year 2024, an average of 440,000 people received SNAP benefits in Minnesota each month, including 181,980 children and 67,000 elderly individuals. Households in Minnesota receive on average $314 per month in SNAP benefits to meet their basic subsistence and nutritional needs. During the federal fiscal year between October 1, 2024 and September 30, 2025, DCYF issued approximately $73 million per month in SNAP benefits in Minnesota.

7. . Pursuant to federal law, DCYF administers SNAP on behalf of the United States Department of Agriculture (USDA) and is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transaction (EBT) cards; ensuring program integrity; and supervising local transitional assistance offices' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2. Minnesota's SNAP program is state-supervised and administered by counties and Tribal Nations pursuant to Minnesota Statutes, Chapter 142F. USDA funds the entirety of SNAP benefits in Minnesota, though Minnesota and the federal government split administrative costs. 7 U.S.C. § 2025(a).

8. Consistent with federal law, DCYF administers SNAP benefits to non-citizens who are eligible for SNAP by statute.

### Public Law 119-21 (the One Big Beautiful Bill Act of 2025)

9. On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

10. Section 10108 of the OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

## USDA's October 31, 2025 SNAP Guidance

11. On October 31, 2025, USDA issued guidance ("the Guidance"), which purports to explain the changes to non-citizens' eligibility for SNAP benefits required by Section 10108 of Public Law 119-21. DCYF received this guidance on October 31, 2025 via email during the federal government shutdown. The Guidance became effective the next day, Saturday, November 1, 2025.

12. I and others at DCYF have reviewed the Guidance and 7 U.S.C. 2015(f), as amended by the OBBB. DCYF's understanding is that the Guidance is inconsistent with other laws and regulations regarding SNAP eligibility that we understand to be unchanged by the OBBB.

13. The Guidance is substantively flawed and incorrect, which causes confusion on implementation and negatively impacts the ability of DCYF to communicate changes and adjust data systems. The Guidance erroneously categorizes certain groups as ineligible for SNAP even after they become lawful permanent residents (i.e., refugees, individuals granted asylum, deportation withheld, parolees, certain Afghan and Ukrainian nationals granted parole), and omits certain groups who are immediately eligible due to operation of law (including all those mentioned previously as well as Iraqi and Afghan special immigrants (SIVs), COFA citizens and Cuban and Haitian Entrants who become LPRs, and victims of severe trafficking and certain members of their family), and those lawful permanent residents who would be eligible based on a waiting period based on their date of entry or status as a qualified alien (i.e., parolees, conditional entrants, battered aliens and certain of their relatives).

14. On November 19, 2025, Minnesota's Attorney General's Office joined a letter submitted by New York's Attorney General's Office, representing several states, outlining objections to the recently received Guidance and seeking to clarify the eligibility of certain

3

lawful permanent residents who are humanitarian entrants, and the impact of the delayed publication of the Guidance on the 120-day exclusionary period.

### Implementation of the OBBB and the Guidance by DCYF

15.  In accordance with procedures and protocols for verification of eligibility, all noncitizens and naturalized citizens must submit U.S. government-issued paper documentation at application, evidencing immigration status and eligibility for public benefit programs. DCYF uses the USCIS Systematic Alien Verification for Entitlements (SAVE) to ascertain non-citizens' immigration status for purpose of determining program eligibility, and also, as needed, follows appropriate protocols regarding verification of eligibility of victims of severe forms of trafficking with the Office of Trafficking in Persons (OTIP) with the Department of Health and Human Services, and with the Department of Justice Executive Office of Immigration Review regarding Immigration Court documents.

16.  DCYF, counties, and Tribal Nations use MAXIS, a computer system used to determine eligibility for and administer public assistance cash and food programs. MAXIS is used to process cases and issue benefits for food assistance programs such as SNAP. Non-citizens' immigration status is stored within MAXIS in several panels, and codes connected to the data are used to calculate benefit amounts and issue both state and federal payments. Although SNAP regulations do not mandate it, Minnesota uses the U.S. Department of Health and Human Services' Public Assistance Reporting System (PARIS) to identify individuals who may be current SNAP participants in more than one state. Additionally, Minnesota is preparing to participate in the National Accuracy Clearinghouse. Other data-matching to confirm eligibility factors include interfacing with data systems at Social Security Administration (SSA), the Internal Revenue Service (IRS), the Minnesota Department of Employment and Economic Development (DEED), which maintains unemployment data and wage data, the electronic

Disqualified Recipient Subsystem (eDRS), Prisoner Verification System (PVS), Deceased Matching System, and the National Directory of New Hires (NDNH).

17. Minnesota combines cash assistance (Temporary Assistance to Needy Families (TANF), administered in Minnesota as the Minnesota Family Investment Program (MFIP), and SNAP benefits into a single benefit, allocated to eligible recipients via an Electronic Benefit Transfer (EBT) card. The EBT system issues benefits for MFIP, SNAP, and other state-funded cash assistance programs including General Assistance and Minnesota Supplemental Aid). Data from source systems is aggregated in Minnesota's data systems The level of technical effort required to disentangle all the SNAP funded cases with other program recipient cash benefit and the legal work to analyze the classification of the data that would be required will impact service delivery at the county and Tribal Nation level.

18. In July, following the passage of the OBBB, DCYF began to take steps to implement the OBBB's changes to non-citizen eligibility for SNAP. DCYF reached out to FNS for clarity at a State Agency meeting in July, and reviewed OBBB for issues and began internal discussions on the impact to guidance and data systems. FNS communicated that USDA attorneys were reviewing the new law and would issue guidance regarding how the law would be interpreted regarding noncitizen eligibility. In the months following the passage of the OBBB, as DCYF began to plan and strategize for the implementation of the OBBB's changes to non-citizen eligibility for SNAP, it was clear that clarification and guidance from USDA would be needed. An Information Memorandum from USDA which DCYF received on September 4, 2025 regarding OBBB indicated that "further guidance is forthcoming" regarding Section 10108 Alien SNAP Eligibility. DCYF did not receive any additional guidance from USDA until the Guidance issued on October 31, 2025.

19. The issuance of the Guidance by USDA on October 31, 2025 contained errors such that moving forward with implementation, specifically providing guidance and training to counties and Tribal Nations, notice to benefit recipients who will be impacted, and changes to data systems regarding how to correctly capture federal eligibility for payments, are not able to be properly designed at this time without clarification that conforms to current laws.

20. Currently, DCYF is working through potential scenarios for moving forward but is unable to conduct costly changes in technology or adjustments in policy guidance manuals and training and outreach until the errors in the Guidance are corrected and clarified. Providing inaccurate guidance will be confusing to workers and risk incurring liabilities due to OBBB's benefit-sharing requirements based on payment error rates. DCYF cannot move forward with changing data systems, new coding, and work-arounds in MAXIS until the federal Guidance comports with the law.

**Impact of the Guidance on Minnesota and DCYF**

21. The Guidance has caused significant confusion and administrative difficulties for DCYF, disrupting DCYF's efforts to implement the OBBB's changes to non-citizen SNAP eligibility. Negative impacts include the need to provide clear guidance and training, to correctly update policy manuals for eligibility workers, balance the state fiscal impacts on other benefit programs which will now face funding challenges due to operation of state laws, and the need to code MAXIS technology to correctly operate across SNAP, TANF and other cash and food programs.

22. As described above, DCYF has already invested significant time and resources into planning and implementing the changes to non-citizen SNAP eligibility made by the OBBB. Specifically, DCYF estimates that making system changes in MAXIS to update which categories of non-citizens are eligible for SNAP could take up to 5 months based on initial guidance

received from USDA. If there are additional updates to the guidance or changes, that could change the estimate. Updating MAXIS now while the guidance is unclear would lead to additional costs and delays in implementation if new guidance is received at a later date. DCYF would need the final details about how to implement the guidance in order to provide updates and workarounds to county workers to know how to process their cases based on the new guidance.

23.     DCYF has also invested time and resources into determining the impact on our state-funded food support systems as some non-citizens who were previously eligible for SNAP may lose their eligibility. Some of those individuals may be eligible for Minnesota's state-funded food support programs through MFIP and Minnesota Food Assistance Program (MFAP). Minn. Stat. 142G.04; Minn. Stat. 142F.13. DCYF estimates that approximately 3500 people that were previously eligible for SNAP will now be eligible for its state-funded MFIP food support program at a cost of $5.3 million dollars in FY 2026 for the state of Minnesota. While legal analysis continues, DCYF estimates that over 1000 people losing eligibility for SNAP may meet the criteria for MFAP at a potential cost of over $2.5 million per year. Minnesota Food Assistance Program is not a forecast appropriation meaning its appropriation will not automatically increase based on an increase in the number of people who are eligible. Minnesota does not yet know how demand for the program could change or how the state would manage an increase in it.

24.     DCYF does not yet have estimates for how other changes to implement the Guidance would impact costs, but it would require revising intake procedures and updating manuals, re-training staff on the impacts of recertification for current caseloads, changing eligibility codes for new applicants, and providing accurate details around lawful permanent

7

resident eligibility with and without a waiting period. Counties and Tribal Nations administering the program would incur additional costs through re-reviewing applicants and current participants to determine eligibility. At this time, it's unknown how many additional staff counties and Tribal Nations would need to implement these changes. DCYF anticipates that there would be additional customer service inquiries as workers would likely submit questions about program eligibility through the PolicyCenter.

25. The Guidance elevates the risk that Minnesota will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The Guidance stated that the "exclusionary period"—that is, the period of time during which errors do not count towards a state's error rate—ended on November 1, 2025, the day after the guidance was issued. Historically, there are more errors as agencies figure out how to implement a new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the Guidance as part of Minnesota's error rate, increasing the risk that Minnesota may have to pay financially ruinous penalties. And USDA claims the authority to be able to count those errors starting November 1, 2025, leaving only a one-day period for compliance, further increasing the chance of these penalties.

26. Minnesota will be irreparably harmed if the federal government withholds the SNAP administrative funds due to error rates incurred after the hold harmless period, which the Guidance indicated would expire on November 1, 2025. This exclusionary period end date conflicts with USDA regulations including 7 C.F.R. 275.12(d)(2)(vii) which plainly indicate the starting point for the exclusionary period can be either a new regulation or an "implementing memorandum." Given that the USDA took action with Guidance on October 31, 2025, that is the

8

earliest date from which any 120-day exclusionary period should run. If, contrary to law, the exclusionary period is interpreted to end November 1, 2025, DCYF would likely have to cut staff and programs that are critical to supporting the SNAP program or divert resources from other important services, which would impact service delivery at the county and Tribal Nation level.

27. DCYF's understanding of the Guidance is that it appears to exclude certain categories of non-citizens from SNAP who appear to be eligible under the OBBB and other eligibility requirements that were unchanged by the OBBB. Under the Guidance, approximately 7000 non-citizens within Minnesota will be excluded from SNAP. This will harm Minnesota and DCYF.

28. As described above, the loss of SNAP benefits will result in greater need and requests for state-funded assistance programs, including, for example, state-funded nutrition access programs similar to SNAP, such as the food portion of the statewide Minnesota Family Investment Program and the Minnesota Food Assistance Program. Others may not be eligible for either state program which would increase the demands on community food shelves.

29. The lack of clarity regarding non-citizen eligibility caused by the Guidance will significantly erode trust between Minnesota and its residents. To properly effectuate its safety net programs, DCYF has devoted years of work to overcome stigma, misinformation, and other barriers to access, particularly among immigrant communities. If households experience uncertainty in receiving crucial benefits, they are likely to feel that DCYF has failed or engaged in wrongdoing. SNAP benefits directly fund one of the most crucial basic human needs: access to food. Failure to deliver on that basic need as promised is a deep violation of residents' trust.

30. Furthermore, loss of trust among Minnesota residents will likely lead to a chilling effect among various immigrant communities, leading to decreased SNAP enrollments, which in

9

turn will cause irreparable long-term harm and costs to the State in the form of increased healthcare and safety net costs, and expending of resources to rebuild trust in the public agency.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed in Brooklyn Park, Minnesota on November 24, 2025.

Jovόn Perry
Director of Economic Assistance and Employment
Supports Division
Family Wellbeing Administration
MN Department of Children, Youth, and Families

## CERTIFICATE OF SERVICE

      I certify that on November 26, 2025, I served the foregoing upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Susanne Luse | ___ HAND DELIVERY |
| Assistant United States Attorneys | ___ MAIL DELIVERY |
| U.S. Attorney's Office for the District of Oregon | ___ OVERNIGHT MAIL |
| | ___ TELECOPY (FAX) |
| 1000 SW Third Ave. Suite 600 | ___ E-SERVE |
| Portland, OR 97204 | _X_ E-MAIL |
| | susanne.luse@usdoj.gov |

                                            *s/ Leanne Hartmann*
                                            LEANNE HARTMANN #257503
                                            BRIAN SIMMONDS MARSHALL #196129
                                            KRISTEN NAITO #114684
                                            Senior Assistant Attorneys General
                                            SARA DEL RUBIN #232414
                                            DEREK OLSON #225504
                                            Assistant Attorneys General
                                            100 SW Market Street
                                            Portland, OR 97201
                                            Tel (971) 673-1880
                                            Fax (971) 673-5000
                                            Leanne.Hartmann@doj.oregon.gov
                                            Brian.S.Marshall@doj.oregon.gov
                                            kirsten.m.naito@doj.oregon.gov
                                            sara.delrubin@doj.oregon.gov
                                            derek.olson@doj.oregon.gov

                                            *Counsel for the State of Oregon*

Page 1 -    CERTIFICATE OF SERVICE
            LH5/om1/1002822308

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000