DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Leanne.Hartmann@doj.oregon.gov
        Brian.S.Marshall@doj.oregon.gov
        kirsten.m.naito@doj.oregon.gov
        sara.delrubin@doj.oregon.gov
        derek.olson@doj.oregon.gov


Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al.,<br><br>             Defendants. | Case No.   6:25-cv-02186-MTK<br><br><br>DECLARATION OF SARAH ADELMAN |

## DECLARATION OF SARAH ADELMAN

I, Sarah Adelman, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am a resident of the State of New Jersey ("NJ") and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

## Personal Background and Qualifications

2.      I am currently the Commissioner of the New Jersey Department of Human Services ("NJDHS"). I have been employed as Commissioner since January 2021. Prior to becoming the NJDHS Commissioner, I served as the NJDHS's Deputy Commissioner overseeing the Developmental Disabilities, Aging Services, and Medicaid Divisions. Before that, I served in management roles at a statewide health care organization.

3.      I am familiar with the information in the statements set forth below either through personal knowledge, consultation with agency staff, or from my review of relevant documents and information.

4.      I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

## SNAP in New Jersey

5.       NJDHS is New Jersey's largest agency, serving approximately 2.1 million residents. Amongst these 2.1 million New Jersey residents includes, but is not limited to: (a) older residents, individuals, and families with low incomes; (b) people with developmental disabilities, or late-onset disabilities; (c) people who are blind, visually impaired, deaf, hard of hearing, or deaf-blind; (d) parents needing child care services, child support and/or healthcare for children; (e) people who are dealing with addiction and mental health issues; (f) certain individuals with immigrant status; and (g) families facing catastrophic medical expenses for their children. Through

1

NJDHS's eight (8) divisions, the agency provides numerous programs and services designed to give eligible individuals and families assistance with economic and health challenges.

6.     NJDHS's Division of Family Development ("NJDFD") supervises four (4) programs to support New Jersey families, including New Jersey's Supplemental Nutrition Assistance Program ("NJ SNAP"), which helps provide food assistance to families with low incomes through the issuance of monthly electronic benefits that can be used to purchase food at authorized stores.

7.     NJ SNAP functions as a key part of New Jersey's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. In the 2024 calendar year, approximately $2 billion in NJ SNAP benefits were issued. As of August 2025, there were approximately 812,966 persons receiving NJ SNAP, representing 436,452 households; 340,425 children; and 176,706 elderly individuals. NJ SNAP plays a critical role, through federal funding, to support New Jersey families in need of food assistance.

8.     Pursuant to federal law, NJDHS is responsible for the issuance, control and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and supervising New Jersey's 21 counties in their day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households.  7. U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

9.     Consistent with federal law, NJDHS administers SNAP benefits to non-citizens who are eligible for SNAP by statute.

2

**Current Processes for Verification of Citizenship Status for NJ SNAP**

10.    As part of its administration of NJ SNAP, NJDHS is responsible for verifying the eligibility status, including immigration status, of all New Jersey residents for SNAP benefits pursuant to 7 CFR 273.2(f)(1)(ii)(A).

11.    To help discharge this responsibility, NJDHS utilizes the Systematic Alien Verification for Entitlements system ("SAVE") administered by the United States Citizenship and Immigration Services' (USCIS)[1] to ascertain NJ SNAP applicants' immigration status to support NJDHS's verification of NJ SNAP eligibility through the following process.

12.    As noted above, New Jersey's 21 counties administer NJ SNAP on a day-to-day basis.  As part of their responsibilities, county staff receive SNAP applications via paper applications at their agencies. County staff input data from paper applications directly into the State eligibility system called FAMIS. FAMIS then sends the information to the State case management system called ONETrac. Once in ONETrac, staff must schedule a client interview, record the results of said interview, complete the necessary notices to the household for additional information and check system screens that interface with external systems, including SAVE. Staff continue to use FAMIS to make the necessary calculations regarding SNAP eligibility and benefit amounts by inputting income, expenses and work requirements.

13.    NJ SNAP applications are also submitted electronically through the MyNJHelps web application, which is utilized for online applications, certain walk-in applicants, and applicants who wish to apply over the phone. When these potential recipients apply for NJ SNAP, their information is input into MyNJHelps, which then feeds the data into FAMIS and follows the same process flow as described above.

---

[1] The U.S. Citizenship and Immigration Services is a part of the Department of Homeland Security.

14.     Utilizing the information obtained from SAVE, which is contingent on the applicant having provided an accurate USCIS-assigned numeric identifier (commonly known as the "A-Number"), NJDHS and the county intake workers begin their verification process for purposes of NJ SNAP. This is a manual look-up process based on the applicable code provisions and regulations; USDA-FNS guidance explaining which categories of non-citizens are eligible or not eligible for NJ SNAP; and policy, procedures and training, pushed out to the counties by NJDHS, which is responsible for overseeing this process.

15.     In the event that an applicant provides an incorrect or incomplete registration number, or the system itself does not contain accurate information as submitted by USCIS, county staff workers must then take additional steps to verify the applicant through SAVE, including, but not limited to, conducting additional manual searches of immigration databases, and direct outreach to the applicant and USCIS to obtain accurate information and supporting documents. Furthermore, SAVE does not offer a lookback query that allows NJDHS to inquire into an individual's prior immigration status; rather, it is a real-time web call that returns information specific to the applicant's current immigration status and does not provide details about their prior history.

**Public Law 119-21 (the One Big Beautiful Bill Act of 2025)**

16.     On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

17.     Section 10108 of the OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

18.     Since OBBB was passed, NJDHS has been diligently reviewing any changes to the administration of and eligibility for SNAP, and—consistent with past practice—has been

4

anticipating the receipt of guidance from USDA-FNS to confirm and explain the impact of these changes so NJDHS can discharge its responsibility to ensure that NJ SNAP is administered effectively, efficiently, and in compliance with federal law and regulations.

**USDA's October 31, 2025 SNAP Guidance and Impact on the Administration of NJ SNAP**

19.     On October 31, 2025, over four months after OBBB was passed, USDA issued Guidance ("the Guidance"), which purports to explain the changes to non-citizens' eligibility for SNAP benefits required by Section 10108 of Public Law 119-21.

20.     On October 31, 2025, USDA sent NJDHS the Guidance via email. There have been no further communications between NJDHS and USDA regarding the Guidance.

21.     NJDHS has reviewed the Guidance and 7 U.S.C. 2015(f), as amended by the OBBB. NJDHS's understanding is that the Guidance is inconsistent with other laws and regulations regarding SNAP eligibility that we understand to be unchanged by the OBBB.  For example, the Guidance recognizes that OBBB significantly altered the groups of non-citizens who are eligible for SNAP under the Food and Nutrition Act of 2008 by eliminating refugees, asylees, and other humanitarian parolees from the list of noncitizens eligible for SNAP. But the Guidance does not explain that those same individuals can later become eligible for SNAP if they become Lawful Permanent Residents (LPRs).  Indeed, the Guidance wrongly describes refugees, asylees, and other humanitarian parolees as categorically "Not Eligible" for SNAP while correctly noting that certain other non-citizens are "Not Eligible unless an LPR."

22.     The Guidance is also unclear in other respects. For example, the Guidance correctly acknowledges that certain categories of non-citizens—referred in the Guidance as the "SNAP-eligible Alien Group"—are eligible for SNAP without needing to meet the 5-Year Waiting Period, as defined by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA). However, it improperly omits LPRs who may have entered as Refugees, Individuals

Granted Asylum, Deportation Withheld, and other groups that have immediate eligibility under PRWORA.

23.     Furthermore, the Guidance purported to become effective the following day, meaning that NJDHS, along with other State SNAP administrators, are required to implement new substantive limitations on SNAP eligibility with a twenty-four turnaround.

24.     NJDHS faces significant hurdles attempting to comply with the Guidance's eligibility changes, particularly in light of the confusing and incorrect terminology and explanations provided by the Guidance.

25.     As noted above, while NJDHS relies on SAVE to the extent possible for verification of immigration status, SAVE's data output does not determine or reflect eligibility for SNAP. Rather, eligibility for SNAP is a manual, often painstaking, process that relies on clear guidance and direction from USDA-FNS to NJDHS, and then on NJDHS's ability to message, train, and teach the county workers responsible for first-line verification.

26.     As the State SNAP administrator, NJDHS can and has in the past implemented large-scale eligibility changes for SNAP. For example, when the Fiscal Responsibility Act of 2023 (FRA) was signed into law on June 3, 2023, it changed the SNAP work requirement policy, including the exceptions from the able-bodied adults without dependents (ABAWDs) time limit and reduced the number of discretionary exemptions state agencies earn and carry over annually. That implementation memo acknowledged that "Implementing these provisions will requires state agencies to make extensive changed in a short period of time . . . such as updating policy manuals, training workers, modifying systems, revising notices using plan language and locally and culturally appropriate messaging, collaborating with partners, and meeting directly with individuals and families who will be impacted by these changes to successfully implement the provision of the FRA . . . " That memo also specified "FNS reminds state agencies that quality

control active case reviews that identify an error resulting from the application of a mandatory change in Federal law that occurs during the first 120 days from the requirement implementation date are excluded from error analysis, per 7 CFR 275.12(d)(2)(vii)."

27.     With clear and timely implementation guidance provided by USDA on December 18, 2024 in response to the December 17, 2024 Supplemental Nutrition Assistance Program: Program Purpose and Work Requirement Provisions of the Fiscal Responsibility Act of 2023 final rule, and federal waivers that were previously approved through January 31, 2026, NJDHS was well situated to take the appropriate steps to implement the necessary changes and issue its own policy instruction statewide in early February 2025. In turn, the county social service agencies were also well-prepared to apply the new ABAWD work rules and time limits.

28.     However, implementing such large-scale changes as are mandated here requires NJDHS to undertake significant efforts that are both resource- and time-intensive. These efforts include rolling out and explaining these changes to county SNAP Directors through monthly meetings; meetings with front-line supervisors; meetings with trainers; new webinars; and even the implementation of new trainings on the Learning Management System that require curriculum development. This type of training requires the concentrated efforts of NJDHS staff, many of whom also have significant other pressing responsibilities, which will suffer heavily if they are required to immediately pivot to attempting to implement Guidance that is both confusing and potentially misleading, with little room for error.

29.     In fact, in the past, all of these efforts have relied heavily on the issuance of clear, unambiguous USDA-FNS Guidance explaining any changes in program administration or benefit eligibility. This type of Guidance has always been the first line of communication from USDA-FNS, and, although NJDHS has been diligently reviewing OBBB since its passage, this Guidance

from USDA-FNS was necessary before NJDHS could properly message the changes to the counties that oversee NJ SNAP.

30.    The stakes for NJDHS are high. Prior to OBBB's passage, the USDA-FNS fully funded SNAP benefits. However, under OBBB's new "cost-sharing" provision, States are required to pay a percentage of the cost of SNAP benefits if their payment error rate is above the national threshold average of 6 percent. If the error rate is between 6 and 8%, the State would be required to pay 5% of the cost of administering SNAP, which equates to approximately $100 million for the State of New Jersey.  If the error rate is between 8 and 10%, the State would be required to pay 10% of the cost of administering SNAP, which equate to approximately $200 million.  And if the error rate is 10% or higher, the State would be required to pay 15% of the cost of administering SNAP, which equate to approximately $300 million.

31.    Payment error rates are calculated as the result of the Quality Control (QC) Review process, which is required and dictated by federal statute, federal regulation and the FNS 310 Handbook.  In compliance with the statute, regulations, and policies above, the State reviews a monthly sample of approximately 100 cases totaling approximately 1200 cases by the end of the 12-month fiscal year and allotted review period. After the monthly sampling size is reviewed and completed with appropriate dispositions, they are submitted to USDA-FNS via the federal QC System. A federal QC reviewer then reviews a smaller sample of the State's submitted cases to ensure their validity with a federal disposition either agreeing or disagreeing with the State's disposition. 7 C.F.R. 275.3(d)(1). If the State QC team disputes the federal QC reviewer's disposition, the State may arbitrate the issue. 17 C.F.R. 275.3(c)(4). Once all the cases have had their final reviews completed, FNS compiles the final dispositions and runs a regression formula to produce States' payment error rates and calculate the year's national performance measure. 7

C.F.R. 275.23(b)(2). The process is repeated annually to keep accurate eligibility and benefits determinations across the country.

32.     New Jersey's error rate, although pending appeal, is currently over 10%. If that error rate stays steady or increases, New Jersey will suddenly be required to pay $300 million into SNAP benefits beginning in FY 2028. These funds are irretrievable.

33.     Currently, there are over 800,000 individuals receiving SNAP in New Jersey. Of those individuals, more than 50,000—or over 6 percent—are non-citizens and therefore potentially subject to exclusion under the Guidance. Any errors in applying the Guidance to this percentage of SNAP recipients carries significant risk of affecting New Jersey's error rate, which in turn will carry financial penalties and hardship as described above.

34.     That hardship is amplified by the Guidance's interpretation of the "120-day exclusionary period" for error rates. 7 C.F.R. § 275.12(d)(2)(vii). Historically, this exclusionary period has begun to run at the time new Guidance is issued, meaning that States have a four-month period in which to digest USDA-FNS guidance and implement it without fear of financial reprisal. That is consistent with USDA-FNS's own regulations, including 7 C.F.R. § 275.12(d)(2)(vii).

35.     The Guidance flatly contradicts that practice, and instead appears to assert that the exclusionary period ended on November 1, 2025—24 hours after the Guidance, which is rife with lack of clarity, was issued. This means that States, including New Jersey, become immediately liable for errors and can expect that these errors will result in significant and crippling financial penalties, without even having had the benefit of USDA-FNS's own interpretation of OBBB before being required to implement it.

36.     There are additional consequences. If NJDHS attempts to rely on the flawed Guidance and incorrectly excludes individuals who actually should be eligible under the OBBB, those individuals may have the right to demand fair hearings under 7 CFR 273.15 and 7 CFR

273.2(f)(10)(iv). That will cause a drain not only on NJDHS's resources, because NJDHS will be the ultimate adjudicator of those claims, but also on the resources of New Jersey's Office of Administrative Law, the New Jersey administrative agency responsible for fact-finding on such hearing requests.

37.    Even if those claims are resolved and individuals are ultimately provided with retroactive benefits, there will have already been significant damage done. Not only will those individuals have suffered for weeks or potentially even months without critical food resources, determinations of non-eligibility for SNAP interacts in New Jersey with automatic eligibility for other social services benefits.

38.    For example, in New Jersey, SNAP eligibility is tied to eligibility for the New Jersey Department of Community Affairs' (NJDCA) administration of the Low Income Home Energy Assistance Program (LIHEAP) through the federal Health and Human Services agency. Through a Memorandum of Agreement, the information of individuals who are eligible for NJ SNAP in New Jersey is transmitted to NJDCA on a monthly basis to be outreached for possible enrollment in LIHEAP, resulting in approximately 900 households receiving a LIHEAP benefit in November 2025 alone. If individuals are wrongfully deemed ineligible for NJ SNAP, they will also lose their enrollment in LIHEAP assistance. While those individuals may separately apply for LIHEAP assistance, a delay in heating or cooling assistance, particularly as New Jersey enters its coldest months, could wreak devastating consequences on families.

39.    NJ SNAP eligibility is also the basis by which direct certification, a process conducted by the State and local educational agencies (LEAs) to certify children for free meals without the need for a household application, takes place. In New Jersey, these programs are administered by New Jersey's Department of Agriculture, including the School Lunch Program and "Summer EBT," which are both authorized by the National School Lunch Act, 42 U.S.C. § 1751 *et seq*. The Child Nutrition and WIC Reauthorization Act of 2004 requires all LEAs to directly

certify SNAP children. In State Fiscal Year 2024-2025, nearly 96% of children in SNAP households, equaling 256,224 children, were directly certified for free school meals.

40.     Ultimately, the lack of clarity regarding non-citizen eligibility caused by the Guidance could not only result in the above cascade of harms to residents who actually are eligible for SNAP and who have been wrongfully denied such benefits, but will also significantly erode trust between New Jersey and its residents overall. To properly effectuate its safety net programs, including SNAP, New Jersey's state agencies, including NJDHS, have devoted years of work to overcome stigma, misinformation, and other barriers to access, particularly among immigrant communities. SNAP benefits directly fund one of the most crucial basic human needs: access to food. Failure to deliver on that basic need as promised is a deep violation of residents' trust.

## Conclusion

41.     Without clear Guidance, NJDHS cannot make the necessary updates to training, webinars, and learning management tools to ensure eligible SNAP recipients under OBBB obtain entitled to food.

42.     If NJDHS is unable to make these necessary updates, and properly train counties and its own staff on how to apply OBBB's changes to eligibility, NJDHS and New Jersey stand to face significant and irreparable pocketbook injuries as the result of unavoidable increases in error rates, along with significant chill on individual applicants who might still be eligible for NJ SNAP and other benefits, but who are too intimidated to apply.

43.     Furthermore, New Jersey residents who do apply and are wrongfully deemed ineligible for NJ SNAP as the result of USDA-FNS's lack of clear guidance will suffer a myriad of other irreparable harms, including but not limited to loss of critical food resources for weeks or even months and loss of eligibility for other support services that form the backbone of New Jersey's efforts to ensure its residents are safe and their needs are met.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed in Trenton, NJ on November 24, 2025.

_____
Sarah Adelman
Commissioner
New Jersey Department of Human Services

# CERTIFICATE OF SERVICE

I certify that on November 26, 2025, I served the foregoing upon the parties hereto by the method indicated below, and addressed to the following:

Susanne Luse
Assistant United States Attorneys
U.S. Attorney's Office for the District
of Oregon
1000 SW Third Ave. Suite 600
Portland, OR 97204

\_\_\_ HAND DELIVERY
\_\_ MAIL DELIVERY
\_\_\_ OVERNIGHT MAIL
\_\_\_ TELECOPY (FAX)
\_\_\_\_E-SERVE
 X  E-MAIL
susanne.luse@usdoj.gov

 *s/ Leanne Hartmann*
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KRISTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
kirsten.m.naito@doj.oregon.gov
sara.delrubin@doj.oregon.gov
derek.olson@doj.oregon.gov

*Counsel  for the State of Oregon*

Page 1 -   CERTIFICATE OF SERVICE
LH5/om1/1002822308