DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Leanne.Hartmann@doj.oregon.gov
        Brian.S.Marshall@doj.oregon.gov
        kirsten.m.naito@doj.oregon.gov
        sara.delrubin@doj.oregon.gov
        derek.olson@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al., <br><br> Defendants. | Case No.  6:25-cv-02186-MTK <br><br> DECLARATION OF KARI ARMIJO |

## DECLARATION OF SECRETARY KARI ARMIJO

I, Secretary Kari Armijo, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a resident of the State of New Mexico and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

### Personal Background and Qualifications

2. I am the Secretary of the Health Care Authority of New Mexico.

3. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

4. The Health Care Authority (HCA) is the state agency in New Mexico charged with ensuring New Mexicans attain their highest level of health by providing whole-person, cost-effective, accessible, and high-quality health care and safety net services including, but not limited to, Medicaid, behavioral health, child support, Supplemental Nutrition Assistance Program (SNAP), Low Income Home Energy Assistance Program, and the Temporary Assistance for Needy Families (TANF) program.

### SNAP in New Mexico

5. SNAP, one of the programs administered by the HCA, involves the issuance of monthly electronic benefits that can be used to purchase food at authorized retail stores

6. SNAP is a key part of New Mexico's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. Thus far in 2025, an average of 466,047 people received SNAP benefits in New Mexico each month, including approximately 253,274 families and 171,534 children. Households in New Mexico receive on average $327 per month in SNAP benefits to meet their basic subsistence and nutritional needs.

1

During the federal fiscal year between October 1, 2024 and September 30, 2025, the HCA issued approximately $83,018,183 per month in SNAP benefits in New Mexico.

7. The HCA administers the SNAP program in New Mexico pursuant to NMSA § 27-2-10. Pursuant to federal law, the HCA administers SNAP on behalf of the United States Department of Agriculture (USDA) and is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transaction (EBT) cards; ensuring program integrity; and supervising local transitional assistance offices' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2. USDA funds the entirety of SNAP benefits in New Mexico, though New Mexico and the federal government split administrative costs. 7 U.S.C. § 2025(a).

8. For Federal Fiscal Year 2025, the HCA budgeted approximately $40 million in state funds to pay for SNAP administration. This spending is expected to generate approximately $37.7 million in SNAP federal financial participation, to cover half of anticipated administration costs.

9. Consistent with federal law, the HCA administers SNAP benefits to non-citizens who are eligible for SNAP by statute.

**Public Law 119-21 (the One Big Beautiful Bill Act of 2025)**

10. On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

11. Section 10108 of the OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

2

## USDA's October 31, 2025 SNAP Guidance

12. On October 31, 2025, USDA issued guidance ("the Guidance"), which purports to explain the changes to non-citizens' eligibility for SNAP benefits required by Section 10108 of Public Law 119-21.

13. I and others at the HCA have reviewed the Guidance and 7 U.S.C. 2015(f), as amended by the OBBB. The HCA's understanding is that the Guidance is inconsistent with other laws and regulations regarding SNAP eligibility that we understand to be unchanged by the OBBB.

14. On October 31, 2025, USDA sent the HCA the Guidance via email.

## Implementation of the OBBB and the Guidance by the HCA

15. Typically, when an individual attests that they are a citizen or hold an eligible immigration status, HCA attempts to verify that information in real-time through data from the Social Security Administration (SSA) or through the Systemic Alien Verification for Entitlements (SAVE) database.

16. When real-time verification cannot be completed, HCA is required to undertake efforts to verify the individual's immigration status during a 90-day reasonable opportunity period. 42 C.F.R. § 435.956(b)(1).

17. If, after reviewing records, attempting SAVE or SSA verification, and requesting additional documentation from the individual, HCA determines that an individual is, in fact, no longer eligible based on a change in immigration or citizenship status, it must provide the individual advance, written notice and an opportunity for a hearing to challenge the state's determination. 42 C.F.R. § 435.917(a) and 42 C.F.R. § 431.211.

18. Hearings requested prior to termination are handled by the HCA Office of Fair Hearings (OFH) pursuant to 8.100.970.8 NMAC.

19.     Therefore, in order to accurately record a SNAP applicant's non-citizen immigration status and comply with existing statutory and regulatory requirements, HCA staff have to engage multiple steps including interviewing the applicant, checking against verification databases, sending out notices requesting verification documents, and, if benefits are denied, additional notice warning of the pending denial and informing them of their right to a hearing.

20.     Due to the implementation of OBBB, most of the steps described above require changes – both to HCA's eligibility system, ASPEN, and to the required notices.

21.     The implementation of OBBB also requires updates to the training provided to the eligibility workers who process SNAP applications and changes to external communications, updating New Mexico residents about the changes.

22.     The changes to ASPEN require a Change Request (CR) to our vendor which can take anywhere from seven (7) to twenty-eight (28) weeks for implementation. The required steps to implementation include securing funding for the change and determining whether other priorities have to be delayed to accommodate the additional change, potentially delaying compliance or improvements in other areas.

23.     Prior to the passage of OBBB, HCA had to warn our vendor who handles changes to our ASPEN system that change requests were likely going to be needed.

24.     In July, following the enactment of the OBBB, the HCA immediately began to prepare for the implementation of the OBBB's changes to non-citizen eligibility for SNAP.

25.     HCA submitted an eligibility system change request to our vendor right away so the enhancement could be built. However, the initial request had to be general because USDA had not yet provided full implementation guidance.

26. HCA also began drafting and planning the notice and comment period to amend the current state regulations to reflect the new OBBB changes.

27. While waiting for additional guidance from USDA, HCA also began internal operational planning, including changes to processes, staff training, and potential staffing needs. However, meaningful progress on implementation was on hold pending promised federal instructions.

28. The particular ASPEN changes needed to implement immigration status related changes would normally require approximately fourteen (14) weeks for our vendor to complete.

29. Even when the USDA issued its memo on October 31, 2025, key information was still missing, particularly around humanitarian entrants and their eligibility if their status changes to legal permanent resident. Without complete and accurate federal direction, the HCA had to make assumptions and fill in missing information to ensure eligibility system changes could move forward and be completed in time for the January 1, 2026, implementation date. As a result, HCA had to adjust its internal planning, expedite decision-making, and proceed with system development based on internal legal analysis rather than complete guidance from USDA.

30. Despite the incomplete guidance, any additional delay in implementation risked program integrity issues and avoidable errors. Therefore, with the information available, HCA made the decision to move forward to ensure implementation could be completed by January 1, 2026.

31. The incomplete and incorrect guidance provided by USDA on October 31, 2025, created significant disruptions to the State's planning and implementation. These disruptions not only delayed our system development, they also delayed completion of our drafting and

promulgation of state regulation, operational planning related to employee training, and external communications campaign.

32. Throughout this process, HCA's priority has been program integrity. Our goal is to implement the changes associated with OBBB accurately, avoid increases to the State's SNAP Payment Error Rate (PER), and prevent the substantial financial risks associated with a high PER. Our plan continues to be finalize system updates, train staff, and deploy the changes by January 1, 2026.

### Impact of the Guidance on New Mexico and the Health Care Authority

33. The Guidance has caused significant confusion and administrative difficulties for the HCA, disrupting the HCA's efforts to implement the OBBB's changes to non-citizen SNAP eligibility.

34. As described above, HCA has already invested significant time and resources into planning and implementing the changes to non-citizen SNAP eligibility made by the OBBB. The Guidance will increase the costs required to implement the changes required by OBBB. Specifically, HCA anticipates increased workload and expense across all areas of SNAP administration including:

   a) In order to ensure January 1, 2026 implementation, change requests for our ASPEN eligibility system have already been submitted. Any changes to USDA guidance will create significant additional costs for HCA.

   b) The OBBB changes already require extensive updates to policies and procedures, which, in turn, requires updates to training for frontline eligibility staff, supervisors, and call center staff. Any incorrect or inconsistent implementation

6

due to inaccurate USDA guidance will require duplication of training efforts after improved guidance is issued.

c) Additional staff capacity will be needed to manage higher volumes of customer inquiries in person at our field offices, by phone, and electronically as households seek clarification about the new immigrant eligibility rules.

d) The HCA already anticipates an increase in Fair Hearing requests as individuals lose eligibility under the new federal requirements. Any incorrect or inconsistent implementation due to inaccurate USDA guidance will exponentially multiple this burden.

35.  The Guidance also increases the risk that New Mexico will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The Guidance stated that the "exclusionary period"—that is, the period of time during which errors do not count towards a state's error rate—ended on November 1, 2025, the day after the new October 31, 2025 guidance memo was issued. Historically, there are more errors as agencies figure out how to implement a new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the Guidance as part of New Mexico's error rate, increasing the risk that New Mexico may have to pay financially ruinous penalties. And USDA claims the authority to be able to count those errors starting November 1, 2025, leaving only a one-day period for compliance, further increasing the chance of these penalties.

36.  The OBBB changes significantly narrow immigrant eligibility for SNAP, and the new categories and exclusions are complex. To protect program integrity and support households, HCA must implement the new law correctly and provide clear education and

7

communication to recipients. However, the incomplete federal direction has increased confusion for staff and raised the risk of inconsistent or incorrect application of the new law.

37. Immigration policy in general is highly technical and difficult to navigate, even for experienced SNAP eligibility workers. These layered complexities make the risk of misunderstanding or misapplying the new law much higher.

38. The combination of unclear guidance, the complexity of immigration eligibility rules, and the typical learning curve associated with implementing new federal requirements increases the likelihood of administrative errors during the transition period. These errors, if not addressed quickly, could contribute to a higher SNAP PER, placing the State at risk of significant financial penalties under Section 10105.

39. The Guidance appears to exclude certain categories of non-citizens from SNAP who appear to be eligible under other eligibility requirements that were unchanged by the OBBB. Under the Guidance, many non-citizens within New Mexico will be mistakenly and illegally excluded from SNAP.

40. The loss of SNAP benefits will result in greater need and requests for state-funded assistance programs, including, for example, state-funded nutrition access programs similar to SNAP.

41. The lack of clarity regarding non-citizen eligibility caused by the Guidance will significantly erode trust between the NM HCA and its residents. To properly effectuate its safety net programs, HCA has devoted years of work to overcome stigma, misinformation, and other barriers to access, particularly among immigrant communities. If households experience uncertainty in receiving crucial benefits, they are likely to feel that HCA has failed or engaged in

wrongdoing. SNAP benefits directly fund one of the most crucial basic human needs: access to food. Failure to deliver on that basic need as promised is a deep violation of residents' trust.

42. Furthermore, loss of trust among New Mexico residents will likely lead a chilling effect among various immigrant communities, leading to decreased SNAP enrollments, which in turn will cause irreparable long-term harm and costs to the State in the form of increased healthcare and safety net costs, and expending of resources to rebuild trust in the public agency.

43. The HCA has already invested substantial time and resources in planning for and implementing the non-citizen SNAP eligibility changes required by the OBBB. If there is new guidance issued by USDA it will further increase the costs and administrative effort needed to complete implementation.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed in 24th of November, 2025.

Kari Armijo
Secretary of the NM Health Care Authority

## CERTIFICATE OF SERVICE

I certify that on November 26, 2025, I served the foregoing upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Susanne Luse<br>Assistant United States Attorneys<br>U.S. Attorney's Office for the District of Oregon<br>1000 SW Third Ave. Suite 600<br>Portland, OR 97204 | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>___ E-SERVE<br>_X_ E-MAIL<br>susanne.luse@usdoj.gov |

 *s/ Leanne Hartmann*
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KRISTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
kirsten.m.naito@doj.oregon.gov
sara.delrubin@doj.oregon.gov
derek.olson@doj.oregon.gov

*Counsel for the State of Oregon*

Page 1 -   CERTIFICATE OF SERVICE
          LH5/om1/1002822308

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000