DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Leanne.Hartmann@doj.oregon.gov
        Brian.S.Marshall@doj.oregon.gov
        kirsten.m.naito@doj.oregon.gov
        sara.delrubin@doj.oregon.gov
        derek.olson@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>      Plaintiffs,<br><br>      v.<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al.,<br><br>      Defendants. | Case No.   6:25-cv-02186-MTK<br><br>DECLARATION OF BRIAN P. HOGAN |

## DECLARATION OF BRIAN P. HOGAN

I, Brian P. Hogan, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a resident of the State of North Carolina. I am over the age of 18 and understand the obligations of an oath.

### Professional and Agency Background

2. I am the Deputy Director of Nutrition of the North Carolina Department of Health and Human Services (NCDHHS), Division of Child and Family Well-Being (DCFW).

3. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

### SNAP in North Carolina

4. NCDHHS is one of the largest, most complex agencies in the State of North Carolina, and has approximately 17,000 employees. It is responsible for ensuring the health, safety, and well-being of all North Carolinians, providing human service needs for special populations including individuals who are deaf, blind, developmentally disabled, and mentally ill, and helping poor North Carolinians achieve economic independence.

5. The mission of DCFW is to ensure that North Carolina's children grow up safe, healthy and thriving in nurturing and resilient families and communities. DCFW was established as a new division at NCDHHS in January 2022 with the aim of integrating behavioral health, physical health, and social programs to provide coordinated and streamlined whole-family care. DCFW operates major nutrition programs for children, families, and seniors.

6. As the Deputy Director of Nutrition, I provide strategic oversight for a portfolio of North Carolina's federally-funded nutrition programs including the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC), the Child and Adult Care Food

1

Program (CACFP), the Food and Nutrition Services (FNS) program (also known as the Supplemental Nutrition Assistance Program, or SNAP), the SUN Bucks program (also known as the Summer Electronic Benefit Transfer (EBT) program), and the Disaster Supplemental Nutrition Assistance Program (D-SNAP) in accordance with federal and state statutes, regulations, and policies.

7. SNAP, one of the programs administered by NCDHHS, involves the issuance of monthly electronic benefits that can be used to purchase food at authorized retail stores.

8. SNAP is a key part of the State of North Carolina's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. Thus far in 2025, an average of 698,584 households received SNAP benefits in North Carolina each month. Those households included an average of 1,401,264 individuals each month, 596,757 of whom were children. Households in North Carolina receive on average $354 per month in SNAP benefits to meet their basic subsistence and nutritional needs. During the federal fiscal year between October 1, 2024 and September 30, 2025, NCDHHS issued approximately $253,708,275 per month in SNAP benefits in North Carolina.

9. NCDHHS administers the SNAP program in North Carolina pursuant to N.C. Gen. Stat. § 108A-51. Pursuant to federal law, NCDHHS administers SNAP on behalf of the United States Department of Agriculture (USDA) and is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transaction (EBT) cards; ensuring program integrity; and supervising local County Social Service offices' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2. USDA

funds the entirety of SNAP benefits in North Carolina, though the State of North Carolina and the federal government split administrative costs. 7 U.S.C. § 2025(a).

10. Consistent with federal law, NCDHHS administers SNAP benefits to non-citizens who are eligible for SNAP by statute.

### **Public Law 119-21 (the One Big Beautiful Bill Act of 2025)**

11. On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

12. Section 10108 of the OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. § 2015(f).

13. Section 10102(a) of the OBBB, titled "Modifications to SNAP Work Requirements for Able-Bodied Adults," made changes to the exceptions to the work requirements and time limits that apply to Able-Bodied Adults Without Dependents (ABAWDs), amending section 6(o)(3) of the Food and Nutrition Act of 2008, 7 U.S.C. § 2015(o)(3).

14. Section 10103 of the OBBB, titled "Availability of Standard Utility Allowances Based on Receipt of Energy Assistance," made changes to how State agencies treat receipt of payments under the Low-Income Home Energy Assistance Act of 1981 (LIHEAP) or similar energy assistance programs for purposes of the Heating and Cooling Standard Utility Allowance, amending section 5(e) and 5(k) of the Food and Nutrition Act of 2008, 7 U.S.C. § 2014(e) and (k).

**USDA's October 31, 2025 SNAP Guidance on Section 10108**

15. On October 31, 2025, USDA issued guidance ("the Guidance"), which purports to explain the changes to non-citizens' eligibility for SNAP benefits required by Section 10108 of Public Law 119-21.

16. I and others at NCDHHS have reviewed the Guidance and 7 U.S.C. § 2015(f), as amended by the OBBB. NCDHHS' understanding is that the Guidance is inconsistent with other laws and regulations regarding SNAP eligibility that we understand to be unchanged by the OBBB.

**Implementation of the OBBB and the Guidance by NCDHHS**

17. To comply with OBBB's eligibility changes, NCDHHS must substantially recode its integrated eligibility system while also training thousands of county eligibility workers to administer SNAP under the new rules. OBBB makes significant changes to non-citizen eligibility, work requirements and time-limit rules, and how utility deductions are assessed based on a household's receipt of LIHEAP or other energy assistance. To summarize the system changes that NCDHHS must do to implement these provisions of OBBB:

- NCDHHS must recode the logic in its eligibility system to ensure that participants are correctly identified as ABAWDs at the point of application, recertification, or certain changes of circumstance. The OBBB made two key changes to who is subject to the ABAWD time limit. First, it increased the upper age from 54 to 64, meaning individuals ages 55 to 64 are now subject to the time limit unless they meet another exception. Second, it narrowed the dependent-child exception to apply only to individuals responsible for a child under age 14; individuals whose youngest child is

4

between ages 14 and 17 no longer qualify for this exception and are now subject to the time limit unless they meet another exception.

- NCDHHS must recode its eligibility system to ensure that only allowable exemption codes are available for use by eligibility workers to exempt a person from ABAWD work requirements. The OBBB eligibility changes require that NCDHHS remove certain exemptions for homeless individuals and former foster youth, while adding them for American Indians.

- For those persons newly subject to ABAWD work requirements at the point of application, recertification, or change of circumstance, the system must correctly apply the logic for countable months, work compliance/non-compliance, and time-clock expiration.

- NCDHHS must recode its eligibility system to eliminate automatic Standard Utility Allowances for most recipients of energy assistance.

- NCDHHS must recode its eligibility system to prevent certain lawfully present non-citizens that were previously eligible for SNAP from ongoing eligibility at application or recertification.

- Based on the above changes, NCDHHS must make significant updates to policy documents, significant updates to forms and worker aids, and updates to system training materials for all 100 county offices that administer eligibility for SNAP in North Carolina. This includes approximately 3,000 county staff who need to be retrained in accordance with the new OBBB rules.

18. In July, following the passage of the OBBB, NCDHHS began taking steps to implement the OBBB's changes to non-citizen eligibility for SNAP, which included planning

5

revised programming logic for our eligibility system, communicating with County Departments of Social Services on statutory changes, and revising NCDHHS' policy manual, forms, job aids, and trainings.

19. Given the complexity of systems changes required to implement significant policy changes, NCDHHS depends on written implementation guidance from USDA before diverting resources to reprogram our eligibility systems.

20. USDA has stated that the OBBB's SNAP eligibility provisions were effective upon enactment on July 4, 2025, and directed State agencies to immediately apply the new eligibility criteria to new applicants at initial certification and current beneficiaries at recertification or during certain changes. However, USDA was delayed in issuing written implementation guidance for these new eligibility provision. Guidance on Section 10103, concerning the treatment of energy assistance payments, was issued on August 29, 2025, and guidance on Section 10102(a), concerning ABAWD exceptions, was issued on October 3, 2025 during the beginning of the federal government shutdown. Then, finally, the Guidance on Section 10108, concerning non-citizen eligibility, was sent to State agencies on October 31, 2025: 119 days after the alleged effective date, and in the midst of USDA's decision to suspend SNAP issuance for November.

21. NCDHHS is still actively working on completing the significant systems changes required to properly apply the new ABAWD eligibility and treatment of energy assistance payment rules, which has required significant revisions and manual system workarounds given the required urgency to implement these provisions after receiving delayed guidance from USDA on October 3. Concurrently, we are now also working on systems changes to implement the

Guidance on Section 10108, concerning non-citizen eligibility. However, the Guidance itself has caused confusion on how NCDHHS can implement the changes.

## Harms to the State of North Carolina from the Guidance

22.     The Guidance has caused significant confusion and administrative difficulties for NCDHHS, disrupting NCDHHS' efforts to implement the OBBB's changes to non-citizen SNAP eligibility. NCDHHS needs to assess system programming logic and manual changes to conform with the policy changes, but the Guidance's inconsistency with prior controlling law, complicates the programming logic and policy changes required for the treatment of certain non-citizen immigration categories under OBBB.

23.     As described above, NCDHHS has already invested significant time and resources into planning and implement the changes made by the OBBB. The Guidance will only increase the costs required to implement the changes required by OBBB. Already, NCDHHS estimates that implementing the OBBB SNAP eligibility provisions will require approximately $1.5 million. System changes and necessary reprogramming to apply any subsequent changes in policy guidance will only require more resources to be expended.

24.     The Guidance elevates the risk that the State of North Carolina will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The Guidance stated that the "exclusionary period"—that is, the period of time during which errors do not count towards a state's error rate—ended on November 1, 2025, the day after the Guidance was issued. Historically, there are more errors as state agencies figure out how to implement a new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the Guidance as part of North Carolina's error rate, increasing the risk that the State of

North Carolina may have to pay financially ruinous penalties. And USDA claims the authority to be able to count those errors starting November 1, 2025, leaving only a one-day period for compliance after issuance of the Guidance, further increasing the chance of these penalties.

25. If North Carolina's SNAP payment error rate is above 10% for federal fiscal year 2026, North Carolina will be responsible for a benefit cost share under OBBB of approximately $420 million in federal fiscal year 2028. Such a penalty could effectively end the provision of SNAP in North Carolina, if the State of North Carolina cannot pay for the state benefit cost share. This would mean over 1.4 million North Carolinians lose benefits; North Carolina would lose $2.8B in annual federal funds; rural grocery stores that depend on SNAP revenue would be at risk of closure; over 7,000 jobs in North Carolina across grocery, agriculture, manufacturing, transportation, and other industries created by SNAP would be at risk; and, over 500,000 children no longer automatically qualify for school meals because of SNAP eligibility.

26. NCDHHS' understanding of the Guidance is that it appears to exclude certain categories of non-citizens from SNAP who are eligible under the OBBB and other eligibility requirements that were unchanged by the OBBB. Under the current Guidance, many non-citizens within North Carolina will be excluded from SNAP contrary to federal law. This will harm the State of North Carolina and NCDHHS.

27. The lack of clarity regarding non-citizen eligibility caused by the Guidance will significantly erode trust between the State of North Carolina and its residents. To properly effectuate its safety net programs, NCDHHS has devoted years of work to overcome stigma, misinformation, and other barriers to access, particularly among immigrant communities. If households experience uncertainty in receiving crucial benefits, they are likely to feel that NCDHHS has failed or engaged in wrongdoing. SNAP benefits directly fund one of the most

crucial basic human needs: access to food. Failure to deliver on that basic need as promised is a deep violation of residents' trust.

28.     Furthermore, loss of trust among North Carolina residents will likely lead a chilling effect among various eligible immigrant communities, leading to decreased SNAP enrollments, which in turn will cause irreparable long-term harm and costs to the State in the form of increased healthcare and safety net costs, and expending of resources to rebuild trust in the public agency.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed in Greensboro, North Carolina on November 25, 2025.

/s/ Brian P. Hogan
Brian Patrick Hogan

Deputy Director of Nutrition
Division of Child and Family Well-Being
NC Department of Health and Human Services

## CERTIFICATE OF SERVICE

      I certify that on November 26, 2025, I served the foregoing upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Susanne Luse<br>Assistant United States Attorneys<br>U.S. Attorney's Office for the District of Oregon<br>1000 SW Third Ave. Suite 600<br>Portland, OR 97204 | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>___ E-SERVE<br>_X_ E-MAIL<br>susanne.luse@usdoj.gov |

           *s/ Leanne Hartmann*
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KRISTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
kirsten.m.naito@doj.oregon.gov
sara.delrubin@doj.oregon.gov
derek.olson@doj.oregon.gov

*Counsel for the State of Oregon*

Page 1 -   CERTIFICATE OF SERVICE
LH5/om1/1002822308

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000