DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Leanne.Hartmann@doj.oregon.gov
            Brian.S.Marshall@doj.oregon.gov
            kirsten.m.naito@doj.oregon.gov
            sara.delrubin@doj.oregon.gov
            derek.olson@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, et al., | Case No.   6:25-cv-02186-MTK |
| Plaintiffs, | |
| v. | DECLARATION OF KIMBERLY MEROLLA-BRITO |
| BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al., | |
| Defendants. | |

# DECLARATION OF KIMBERLY MEROLLA-BRITO, DIRECTOR OF RHODE ISLAND DEPARTMENT OF HUMAN SERVICES

I, Kimberly Merolla-Brito, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am employed within the State of Rhode Island as Director of the Rhode Island Department of Human Services. I am over the age of 18 and understand the obligations of an oath.

## Personal Background and Qualifications

2. I am currently employed by the Rhode Island Department of Human Services ("RIDHS" or the "Department") as Director and have held this position since June 2022.

3. My educational background includes a Master of Social Work and a Bachelor of Social Work, both from Rhode Island College. Prior to my current role, I served as the Deputy Director of Policy and Operations at RIDHS from 2017 to 2022, overseeing agency operations, policy initiatives, and staff development. From 2015 to 2017, I was the Associate Director of Policy and Operations, leading policy planning and quality control efforts. Between 2009 and 2015, I served as Administrator of Policy and Research, contributing to the development of the Unified Health Infrastructure Project. I began my state service in 1998 as a social caseworker at the R.I. Department of Children, Youth & Families, where I cultivated my clinical and public service expertise. In addition to my professional experience, I am a Licensed Independent Clinical Social Worker and continue to be engaged in community service through board memberships and leadership development initiatives.

4. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

## SNAP in Rhode Island

5. SNAP, one of the programs administered by RIDHS, involves the issuance of monthly electronic benefits that can be used to purchase food at authorized retail stores.

6. SNAP is a key part of Rhode Island's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. Thus far in 2025, an average of 141,747 people received SNAP benefits in Rhode Island each month, including approximately 22,723 families and 43,460 children. Households in Rhode Island receive on average $321.00 per month in SNAP benefits to meet their basic subsistence and nutritional needs. During the federal fiscal year between October 1, 2024 and September 30, 2025, RIDHS issued approximately $29,000,000 per month in SNAP benefits in Rhode Island.

7. RIDHS administers SNAP on behalf of the United States Department of Agriculture (USDA). RIDHS is the single State agency, within Rhode Island, that administers the SNAP program pursuant to R.I. General Laws § 40-6-1 *et seq*. RIDHS is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transfer ("EBT") cards; ensuring program integrity; and supervising local transitional assistance offices' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2. USDA funds the entirety of SNAP benefits in Rhode Island, though Rhode Island and the federal government split administrative costs. 7 U.S.C. § 2025(a).

8. Consistent with federal law, RIDH administers SNAP benefits to non-citizens who are eligible for SNAP by statute.

## Public Law 119-21 (the One Big Beautiful Bill Act of 2025)

9. On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

10. Section 10108 of the OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

### USDA's October 31, 2025 SNAP Guidance

11. On October 31, 2025, USDA issued guidance ("the Guidance"), which purports to explain the changes to non-citizens' eligibility for SNAP benefits required by Section 10108 of Public Law 119-21.

12. The Guidance was sent to RIDHS via email.

13. I and others at RIDHS have reviewed the Guidance and 7 U.S.C. 2015(f), as amended by the OBBB. RIDHS's understanding is that the Guidance is inconsistent with other laws and regulations regarding SNAP eligibility that we understand to be unchanged by the OBBB.

14. Subsequent to OBBB's passage, RIDHS reached out to FNS on multiple days to ascertain when additional guidance would be forthcoming. FNS did not provide a definitive date but indicated that additional guidance would be forthcoming.

### Implementation of the OBBB and the Guidance by RIDHS

15. RIDHS requires all SNAP applicants to provide acceptable verification of their citizenship or immigration status prior to eligibility determination. Immigration status is also verified through the Systematic Alien Verification for Entitlements (SAVE) system for all non-citizen applicants. If the initial SAVE response indicates that further verification is necessary, RIDHS submits a second verification request (LEVEL 2). If the secondary SAVE response indicates that the applicant's status is still not verified, RIDHS proceeds to a LEVEL 3 manual SAVE verification process by completing the G-845 form for the individual and submitting the form to the U.S. Citizenship and Immigration Services (USCIS) for verification of the

applicant's immigration status. The electronic request to USCIS also includes the submission of any relevant immigration/citizenship documents available to the agency. Once immigration status is verified, the qualified non-citizen's SNAP eligibility determination process continues.

16. RIDHS uses an integrated eligibility system (RIBridges) to record SNAP applicant and beneficiary data and process eligibility determinations. Whenever an applicant indicates they are a non-citizen, they are required to submit documentation verifying their immigration status. RIDHS staff record an individual's immigration status in RIBridges as well as the immigration document type submitted to verify the applicant's immigration status. Pertinent information provided in the immigration document, such as but not limited to, alien registration number, I-94 number, date of entry, document expiration date, etc., is recorded in RIBridges. A copy of any immigration documents submitted or obtained are stored in the household's electronic case file (ECF) within RIBridges.

17. Implementation of the new alien eligibility rules requires significant eligibility system updates as well as corresponding updates to State SNAP regulations, policy memoranda, guidance documents, and training materials. RIDHS staff will also need to undergo updated training to ensure comprehension of the new eligibility rules, the application of the rules and related RIBridges updates. RIDHS will also need to conduct community outreach to educate current participants, new applicants and community partners on the changes. It is anticipated that system updates to implement the new SNAP non-citizen eligibility rules will pose significant challenges as the RIDHS eligibility system is integrated with other public assistance programs, including RI Works (TANF), Child Care Assistance and Medicaid, programs to which these new rules will not apply. This will require the system to be programmed differently for each individual program to ensure compliance with all programs. Programming of the new rules will

also require restructuring eligibility rule hierarchies as eligibility for certain alien groups, once dependent on only one layer of alien group identification, will now first require evaluation for legal permanent resident (LPR) status and determination of the 5-year waiting period.

18. In August, following the passage of the OBBB, RIDHS began initial planning discussions for the implementation of the OBBB's changes to non-citizen eligibility for SNAP. Initial planning included an evaluation of the current system functionality related to non-citizen eligibility rule engine and impacted population. The State of Rhode Island formed the Federal Compliance Advisory Group to assist in the review and analysis of potential impacts of OBBB on the State's federal public assistance programs. The interagency advisory group's monthly meetings progressed from review of the new legislation and its impact, to drafting action plans for implementation of the changes. Regular meetings with the State's eligibility system vendor also take place to discuss the specific system changes needed, the scope of work, time commitment, cost, as well as deployment scheduling. Given that the OBBB also impacts Medicaid eligibility, a program also integrated in RIBridges, which may also be impacted by imminent eligibility changes, State staff are juggling not only competing program priorities related to OBBB changes, but also regular system enhancement deployments and defect fixes activities. Much of the initial planning specific to the OBBB's alien eligibility rule changes was based only on the State's interpretation of the changes as USDA did not issue any guidance on alien SNAP eligibility until October 31, 2025, a day before the regulatory 120-day QC variance exclusionary period end date. RIDHS reached out to its regional FNS office in the months following the OBBB passage, requesting implementation guidance on the new non-citizen eligibility rule changes, but were only advised that it was forthcoming.

19.     With the USDA implementation guidance on alien eligibility coming three months after OBBB's passage, RIDHS is working on implementing the changes outside of the QC 120-day exclusionary period, risking an increase in potential payment error rates, which may result in an additional financial impact due to OBBB's new matching funds requirement tied to payment error rates.

20.     RIDHS is working on system design documents to implement the OBBB changes in the coming months. However, without any further guidance documents and answers to specific questions, RIDHS is concerned further system changes will be required, as the risk of misinterpretation and misapplication is high due to the lack of specific guidance. Additionally, USDA has not updated the federal SNAP regulations, thereby impacting the State's ability to update the State's regulations to align with federal regulations.

### Impact of the Guidance on Rhode Island and RIDHS

21.     The Guidance has caused significant confusion and administrative difficulties for RIDHS, disrupting RIDHS's efforts to implement the OBBB's changes to non-citizen SNAP eligibility. The guidance itself does not appear to be complete and includes misleading and confusing language. Additionally, the timing of the guidance does not provide sufficient time for programming, testing, and training to ensure compliance with the changes.

22.     As described above, RIDHS has already invested significant time and resources into planning the changes to non-citizen SNAP eligibility made by the OBBB. The Guidance will increase the costs required to implement the changes required by OBBB. Specifically:

   a) RIDHS's integrated eligibility system requires significant reprogramming, including changes to its eligibility engine and reconfiguration of its screens.

   b) The changes required in Paragraphs 19 and 22 will require programming changes that come with additional programming costs.

c) Policy manuals, desk guides and training materials will need to be reviewed and revised.

d) State SNAP regulations will need to be updated, which will increase work for other State agencies such as the R.I. Office of Regulatory Reform.

e) RIDHS staff will need to be retrained on the new eligibility rules, including training to ensure efficiency when working with system updates.

f) More staff time will be required to correctly apply the new rules. Households already receiving SNAP must have the new eligibility rules applied at recertification, while new applicants will have these new policies applied at initial certification; distinctions that will require careful application of the new policy and detailed training of staff.

g) As more individuals may find themselves ineligible and households experience a decrease in SNAP benefits as a result, more fair hearing requests may be filed, increasing demand on appeals staff and hearing officers at RIDHS and the RI Executive Office of Health and Human Services, where RI SNAP appeals are heard. Customer and community partners have begun to pose questions relative to the new changes and the particular impacts on their eligibility, generating more foot traffic in field offices and increased calls to the agency's Call Center.

23. The Guidance elevates the risk that Rhode Island will face massive financial penalties due to inadvertent noncompliance with and/or misinterpretation of OBBB and/or the Guidance. Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The Guidance stated that the "exclusionary period"—that is, the period of time during which errors do not count towards a state's error rate—ended on Saturday,

7

November 1, 2025, a non-business day and the day after the guidance was issued. Historically, there are more errors as agencies take steps to apply and implement a new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the Guidance as part of Rhode Island's error rate, increasing the risk that Rhode Island may have to pay financially ruinous penalties. Moreover, USDA claims the authority to be able to count those errors starting November 1, 2025, leaving only a one-day period for implementation and compliance, further increasing the chance of these monetary penalties. In the past, RIDHS has experienced an increase in errors when guidance from FNS was unclear or in conflict with other statutes and regulations.

24. RIDHS's understanding of the Guidance is that it appears to exclude certain categories of non-citizens from SNAP who appear to be eligible under the OBBB and other eligibility requirements that were unchanged by the OBBB. Under the Guidance, approximately 1,100 non-citizens within Rhode Island will be excluded from SNAP. This will harm Rhode Island and RIDHS.

25. The loss of SNAP benefits will result in greater need and requests for state-funded assistance programs, including, for example, state-funded nutrition access programs similar to SNAP. Demand on community food pantries will increase.

26. The lack of clarity regarding non-citizen eligibility caused by the Guidance will significantly erode trust between Rhode Island and its residents. To properly effectuate its safety net programs, RIDHS has devoted years of work to overcome stigma, misinformation, and other barriers to access, particularly among immigrant communities. If households experience uncertainty in receiving crucial benefits, they are likely to feel that RIDHS has failed or engaged

in wrongdoing. SNAP benefits directly fund one of the most crucial basic human needs: access to food. Failure to deliver on that basic need as promised is a deep violation of residents' trust.

27. Furthermore, loss of trust among Rhode Island residents will likely lead to a chilling effect among various immigrant communities, leading to decreased SNAP enrollments, which in turn will cause irreparable long-term harm and costs to the State in the form of increased healthcare and safety net costs, and expending of resources to rebuild trust in the public agency.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed in Cranston, Rhode Island on November 24, 2025.

*Kimberly Merolla-Brito*
Kimberly Merolla-Brito
Director
R.I. Department of Human Services

## CERTIFICATE OF SERVICE

I certify that on November 26, 2025, I served the foregoing upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Susanne Luse<br>Assistant United States Attorneys<br>U.S. Attorney's Office for the District of Oregon<br>1000 SW Third Ave. Suite 600<br>Portland, OR 97204 | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>___ E-SERVE<br>_X_ E-MAIL<br>susanne.luse@usdoj.gov |

 *s/ Leanne Hartmann*
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KRISTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
kirsten.m.naito@doj.oregon.gov
sara.delrubin@doj.oregon.gov
derek.olson@doj.oregon.gov

*Counsel for the State of Oregon*

Page 1 -   CERTIFICATE OF SERVICE
           LH5/om1/1002822308

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000