DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Leanne.Hartmann@doj.oregon.gov
        Brian.S.Marshall@doj.oregon.gov
        kirsten.m.naito@doj.oregon.gov
        sara.delrubin@doj.oregon.gov
        derek.olson@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al.,<br><br>    Defendants. | Case No.  6:25-cv-02186-MTK<br><br>DECLARATION OF CARLA REYES |

# DECLARATION OF CARLA REYES

I, Carla Reyes, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a resident of the State of Washington and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

## Personal Background and Qualifications

2. I am the Assistant Secretary of the Economic Services Administration of the Washington State Department of Social and Health Services (DSHS).

3. DSHS is an agency of the State of Washington. It is composed of four administrations and one division, each with distinct roles within the agency. These are the Behavioral Health and Habilitation Administration, the Home and Community Living Administration, the Finance, Technology, and Analytics Administration, the Economic Services Administration, and the Division of Vocational Rehabilitation. DSHS's mission is: "We partner with people to access support, care, and resources." And its vision is: "People find human services to shape their own lives." This mission and vision are accomplished with a strategic plan, specific to each administration and division, which is available on our website at this URL: https://www.dshs.wa.gov/office-of-the-secretary/dshs-strategic-plan. DSHS has many duties that have been delegated to it by the Washington State Legislature, including cash and cash equivalent benefits programs, medical services, and other social service programs.

4. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

**SNAP in Washington**

5. Supplemental Nutrition Assistance Program (SNAP), one of the programs administered by DSHS, involves the issuance of monthly electronic benefits that can be used to purchase food at authorized retail stores.

6. SNAP is a key part of Washington's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. At any given time, about 11 percent of Washington State's population, or just over 900,000 people, including about 300,000 children, receive SNAP benefits. Households in Washington receive SNAP benefits to meet their basic subsistence and nutritional needs. During the federal fiscal year between October 1, 2024 and September 30, 2025, DSHS issued approximately $167 million per month in SNAP benefits in Washington.

7. DSHS administers the SNAP program in Washington pursuant to Wash. Rev. Code § 74.04.500. Pursuant to federal law, DSHS administers SNAP on behalf of the United States Department of Agriculture (USDA) and is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transaction (EBT) cards; ensuring program integrity; and supervising local transitional assistance offices' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2. USDA funds the entirety of SNAP benefits in Washington, though Washington and the federal government split administrative costs. 7 U.S.C. § 2025(a).

8. For Federal Fiscal Year 2025, DSHS budgeted approximately $130 million in state funds to pay for SNAP administration. This spending is expected to generate approximately $130

million in SNAP federal financial participation, to cover the federal share of half of total anticipated administration costs.

9.  Consistent with federal law, DSHS administers SNAP benefits to non-citizens who are eligible for SNAP by statute.

**Public Law 119-21 (the One Big Beautiful Bill Act of 2025)**

10. On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

11. Section 10108 of the OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

12. DSHS immediately had implementation questions concerning the OBBB. On July 31, 2025, DSHS sent an email to USDA's Western Region Office requesting a timeline for guidance concerning the OBBB's provisions that went into effect upon enactment. DSHS received a response the same day indicating all questions were being forwarded to the "National Office" and that the regional office was awaiting guidance. A true and correct copy of this email correspondence is attached to this declaration as **Attachment A**.

13. On September 22, 2025, DSHS sent an email to the USDA's Western Region Office with multiple questions related to implementing the OBBB including a request for clarification regarding changes to Cuban/Haitian entrants' immigration status. The Western Region Office responded the next day, indicating they were researching these questions with the National Office and tracking all questions. A true and correct copy of this email correspondence is attached to this declaration as **Attachment B**.

3

14. On September 26, 2025, DSHS received an email from the USDA Western Region Office. The email contained a chart documenting Washington's questions, USDA's responses, and indicating where responses were still pending. DSHS sent a follow up email on September 30 regarding when remaining guidance (including guidance regarding immigration status changes) should be expected. DSHS received a response on the same day from the USDA Western Region Office acknowledging receipt of DSHS's email. But USDA did not provide information concerning when further guidance would be issued. A true and correct copy of this email correspondence is attached to this declaration as **Attachment C**.

**USDA's October 31, 2025 SNAP Guidance**

15. On October 31, 2025, USDA issued guidance ("the Guidance"), which purports to explain the changes to non-citizens' eligibility for SNAP benefits required by Section 10108 of Public Law 119-21.

16. I and others at DSHS have reviewed the Guidance and 7 U.S.C. 2015(f), as amended by the OBBB. DSHS's understanding is that the Guidance is inconsistent with other laws and regulations regarding SNAP eligibility that we understand to be unchanged by the OBBB.

17. On September 4, 2025, USDA sent guidance via email indicating that the OBBB made changes to non-citizen eligibility for SNAP and that further guidance would be forthcoming. On October 31, 2025, USDA sent DSHS the Guidance via email.

18. The OBBB amplified preexisting confusion concerning non-citizen benefit eligibility. For example, on June 13, 2025, USDA's Food and Nutrition Service issued *Revised Guidance on Termination of Parole for Certain Aliens and Immediate Family Members*, https://www.fns.usda.gov/snap/admin/revised-guidance-termination-parole. This guidance created confusion concerning how to interpret immigration status.

**Implementation of the OBBB and the Guidance by DSHS**

19. In order to determine non-citizens' immigration status and benefit eligibility in Washington, DSHS requires households to complete an Application for Cash or Food Assistance. The application is used to apply for SNAP and other public assistance programs. The application requests information concerning the applicant's or other individuals in the household's citizenship status. As part of the application process, DSHS asks for proof of immigration status for any individual who is not listed as a U.S. citizen. Subsequently, DSHS staff review the immigration documentation provided to determine whether the non-citizen has an immigration status that would render them eligible for federal benefits. In reviewing immigration documents, DSHS staff may utilize various resources and materials provided by DSHS in order to understand an applicant's immigration status.

20. DSHS uses the Automated Client Eligibility System (ACES) to determine benefit eligibility, record an individual's citizen or non-citizen status, and issue benefits. ACES provides a list of possible immigration statuses that a non-citizen may have. After DSHS staff ascertain an individual's immigration status, staff code the appropriate status in ACES.

21. The applicant's immigration documentation is also run through the Systematic Alien Verification for Entitlements (SAVE) program to verify the validity of the immigration document and to ensure that the document confers the correct status that is coded in ACES.

22. In order to comply with the OBBB's eligibility changes, DSHS will have to modify eligibility processing rules to approve state-funded food assistance (FAP) for certain legally admitted immigrants who would no longer qualify for federally funded SNAP benefits. DSHS will also have to generate appropriate notifications informing clients they are no longer eligible for federally funded benefits.

23. In July 2025, following the passage of the OBBB, DSHS began to take steps to implement the OBBB's changes to non-citizen eligibility for SNAP. DSHS began meeting with policy, operations, quality assurance and information technology staff to analyze the bill's impact and to begin developing IT business requirements to make the necessary system changes. Through this process, policy and operational decision points were noted for action including noting state rule, policy and procedural changes, manual and desk-aid changes, and training needs. This cross-sectional group continued to meet weekly through September, without guidance or clarification from USDA, in order to ensure the speediest possible compliance. Key decision points were elevated to leadership who were also meeting on a weekly basis to address implementing the OBBB. Decisions regarding (1) the timing of changes to SNAP eligibility, (2) impacted communities, (3) the five-year waiting period, and (4) definitions of newly disqualified immigration statuses were assessed, and implementation plans were developed accordingly. In September, DSHS issued directions to eligibility staff concerning implementing these decisions.

24. USDA's subsequent guidance altered Washington state's initial plan for implementation of the OBBB. DSHS reasoned that interpretation of the OBBB should be consistent with the provisions in the Personal Responsibility and Work Opportunity Act of 1996 ("PRWORA"). As such, DSHS understood that lawful permanent residents who are exempt from the five-year waiting period under the PRWORA would continue to be exempt under the OBBB. Accordingly, DSHS began creating the requirements to change its computer systems such that it aligned with the OBBB and the PRWORA. However, the Guidance from USDA provided contradictory information on the treatment of the five-year waiting period for lawful permanent residents. This incongruity necessitated that DSHS change course to include non-citizens

traditionally exempt from the five-year waiting period among the population that are now subject to the waiting period, disrupting implementation of the OBBB in DSHS's systems.

25. Additionally, delayed guidance from USDA meant Washington had to make initial assumptions concerning sections of the OBBB that were "effective upon enactment." This meant that DSHS had to build business requirements that assume a need to implement mass modification across the entire population. This decision was made, in part, out of concern for an increase in the state's error rate for Federal Fiscal Year 2025 and 2026. These concerns were amplified because a previous year's error rate also influences the Federal Fiscal Year 2028 implementation of the benefit match requirement.

26. When the Guidance finally issued, it indicated that states were expected to implement the OBBB's changes immediately for new applicants and at recertification for existing populations. This required Washington to halt system changes and adjust coding away from mass modification.

27. Currently, DSHS is delayed in implementing planned system coding changes based on USDA's guidance and the need for additional clarification of that guidance.

**Impact of the Guidance on Washington and DSHS**

28. The Guidance has caused significant confusion and administrative difficulties for DSHS, disrupting DSHS's efforts to implement the OBBB's changes to non-citizen SNAP eligibility. DSHS has halted planned release of system coding changes based on the October 2025 guidance and is reviewing and revising business requirements to align with that guidance. Additionally, the lack of clarity provided in the Guidance has exacerbated fear and concerns in Washington's refugee and immigrant communities. Responding to this increased concern will

require DSHS to develop and provide clear and transparent communication. At this point in time, it is impossible to share any messaging with the community that can provide clear answers.

29.     As described above, DSHS has already invested significant time and resources into planning and implementing the changes to non-citizen SNAP eligibility made by the OBBB. The Guidance will increase the costs required to implement the OBBB. Specifically, the Guidance changes the originally identified system requirements, requiring modifications to the eligibility requirements as well as the requirements for implementation. This increases the complexity of the system changes, requiring increased development and test efforts. Costs associated with (a) revising intake procedures, (b) re-training staff, and (c) re-reviewing applicants and current participants will also increase significantly.

30.     The Guidance also elevates the risk that Washington will face massive financial penalties due to inadvertent noncompliance with the OBBB and/or the Guidance. Section 10105 of the OBBB created a new set of penalties for states tied to their payment error rates. The Guidance states that the "exclusionary period"—that is, the period of time during which errors do not count towards a state's error rate—ended on November 1, 2025, the day after the Guidance was issued. Generally, exclusionary periods are critically important. Agencies are more likely to experience "errors" as they figure out how to implement new guidance. This is especially true where the guidance is unclear. Without an exclusionary period, a state's error rate will reflect those initial implementation "errors." Because the Guidance was received 1 day before the end of the exclusionary period, it was unreasonable, if not impossible, for the State to have waited for the guidance to implement the OBBB's changes while also benefiting from the protection of the exclusionary period.

31. Without the benefit of the exclusionary period, Washington may be subject to financial penalties. Specifically, USDA may attempt to count any so-called "errors" stemming from the Guidance as part of Washington's error rate, increasing the risk that Washington may have to pay financially ruinous penalties. Given the short amount of implementation time between the Guidance issuing and the exclusionary period ending, the likelihood of these penalties increases.

32. Additionally, any changes to Washington's error rate directly impacts the State's matching contribution. Section 10105 of the OBBB establishes state matching requirements for SNAP benefit allotments. Under this provision, Washington's required financial share is tied to its SNAP payment error rate (PER) and ranges from 0 to 15 percent of total program allotments. When a state's PER is between 0% and 5.99%, no match is required. A PER of 6% to 7.99% results in a 5% state share. When the PER increases to 8% to 9.99%, the state share rises to 10%. Once the PER reaches 10% or higher, the required state match increases to 15%.

33. Implementation of the OBBB and the Guidance will increase the complexity of eligibility determination work, which is likely to result in more errors and a higher PER. A higher PER, in turn, increases Washington's matching fund requirement. Based on the current State-reported cumulative PER for SNAP of 7.82%, the matching fund requirement is 5%, or approximately $100 million in additional expenditures. We anticipate that Section 10108 will raise the PER by 0.41%, which would increase the matching fund requirement to 10%, or approximately $200 million, based on the current PER.

34. DSHS's understanding of the Guidance is that it appears to exclude certain categories of non-citizens from SNAP who appear to be eligible under the OBBB and other eligibility requirements that were unchanged by the OBBB. Washington estimates that

approximately 30,000 refugees, asylees and other humanitarian immigrant groups in Washington state are no longer eligible for federal SNAP benefits due to changes from the OBBB. Under the Guidance, refugees, asylees and other humanitarian immigrants would be required to wait five years before becoming eligible for federal SNAP programs. Up to an additional 5,900 lawful permanent residents currently receiving SNAP (as of September 2025) within Washington may be excluded from the program based on this guidance. This will harm Washington and DSHS.

35. The loss of SNAP benefits for certain non-citizens will result in greater need and requests for state-funded assistance programs, including, for example, state-funded nutrition access programs similar to SNAP. Specifically, legally residing residents of Washington who no longer meet the criteria as defined in the guidance will lose eligibility for federal SNAP and be transferred to the state funded Food Assistance Program (FAP), increasing the enrollment for this program.

36. The lack of clarity regarding non-citizen eligibility caused by the Guidance will significantly erode trust between Washington and its residents. To properly effectuate its safety net programs, Washington has devoted years of work to overcome stigma, misinformation, and other barriers to access, particularly among immigrant communities. If households experience uncertainty in receiving crucial benefits, they are likely to feel that Washington has failed or engaged in wrongdoing. SNAP benefits directly fund one of the most crucial basic human needs: access to food. Failure to deliver on that basic need as promised is a deep violation of residents' trust.

37. Furthermore, loss of trust among Washington residents will likely lead to a chilling effect among various immigrant communities, leading to decreased SNAP enrollments, which in

turn will cause irreparable long-term harm and costs to the State in the form of increased healthcare and safety net costs, and expending of resources to rebuild trust in the public agency.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this <u>24th</u> day of November 2025, in Olympia, Washington.

_____
Carla Reyes, Assistant Secretary
Economic Services Administration
Washington State Department of Social and Health Services

## CERTIFICATE OF SERVICE

I certify that on November 26, 2025, I served the foregoing upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Susanne Luse<br>Assistant United States Attorneys<br>U.S. Attorney's Office for the District of Oregon<br>1000 SW Third Ave. Suite 600<br>Portland, OR 97204 | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>___ E-SERVE<br>_X_ E-MAIL<br>susanne.luse@usdoj.gov |

 *s/ Leanne Hartmann*
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KRISTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
kirsten.m.naito@doj.oregon.gov
sara.delrubin@doj.oregon.gov
derek.olson@doj.oregon.gov

*Counsel for the State of Oregon*

Page 1 -   CERTIFICATE OF SERVICE
         LH5/om1/1002822308

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000