BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

MICHAEL VELCHIK
Senior Counsel to the Assistant Attorney General
TYLER J. BECKER (D.C. Bar No. 90007283)
Counsel to the Assistant Attorney General
U.S. Department of Justice, Civil Division
950 Pennsylvania Ave
Washington, DC 20530
Tel: (202) 514-4052
Email: tyler.becker@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BROOKE ROLLINS, in her official capacity, *et al*., <br><br> Defendants. | No. 6:25-cv-02186-MTK |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 3

I.    Statutory Background ................................................................................. 3

    A.    Food and Nutrition Act of 2008 (FNA) and the Personal Responsibility
        and Work Opportunity Reconciliation Act of 1996 (PRWORA) .......................... 3

    B.    One Big Beautiful Bill (OBBB) ................................................................. 4

    C.    PRWORA's Waiting Period ...................................................................... 5

    D.    OBBB's Cost-Sharing Provisions .............................................................. 8

II.   Factual Background ................................................................................... 9

    A.    USDA Guidance ..................................................................................... 9

    B.    Procedural History ................................................................................ 10

    C.    USDA's Q&As Guidance ....................................................................... 10

LEGAL STANDARD .......................................................................................... 13

ARGUMENT ...................................................................................................... 14

I.    Plaintiffs Cannot Establish Likelihood of Success on the Merits ....................... 14

    A.    Plaintiffs Are Not Likely to Prevail on Their APA Claims ............................. 14

        1.    USDA's Interpretive Guidance Is Not Final Agency Action ................. 14

        2.    USDA's Guidance Is Not Contrary to Law ...................................... 15

            a.    LPR Eligibility ............................................................... 15

            b.    Timing of LPR Eligibility .................................................. 17

            c.    120-Day Exclusionary Period ............................................. 18

        3.    The Guidance Document Is Not Arbitrary or Capricious ...................... 20

II.   Plaintiffs Have Not Demonstrated that They Will Suffer Irreparable Harm Absent
    Preliminary Relief ................................................................................... 22

III.    The Balance of the Equities and the Public Interest Disfavor a Preliminary
Injunction. ............................................................................................................ 24

IV.    To the Extent the Court Enters an Injunction, Plaintiffs Should be Ordered to Post
Security in Connection with Any Preliminary Injunctive Relief...................................... 24

CONCLUSION............................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*,
  738 F.3d 387 (D.C. Cir. 2013) ........................................................................ 15

*Bennett v. Spear*,
  520 U.S. 154 (1997) ....................................................................................... 14

*Borg-Warner Protective Servs. Corp. v. EEOC*,
  245 F.3d 831 (D.C. Cir. 2001) ........................................................................ 15

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ....................................................................................... 20

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
  452 F.3d 798 (D.C. Cir. 2006) ........................................................................ 15

*Ctr. for Food Safety v. Vilsack*,
  636 F.3d 1166 (9th Cir. 2011) ........................................................................ 23

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ....................................................................................... 20

*DHS v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020) ........................................................................................... 21

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ....................................................................................... 22

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ....................................................................................... 14

*Georator Corp. v. EEOC*,
  592 F.2d 765 (4th Cir. 1979) .......................................................................... 15

*Immigrant Defs. L. Ctr. v. Noem*,
  145 F.4th 972 (9th Cir. 2025) ........................................................................ 13

*Inst. for Fisheries Res. v. Hahn*,
  424 F. Supp. 3d 740 (N.D. Cal. 2019) ............................................................. 15

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) ....................................................................................... 21

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) .................................................................................... 20, 21

*Munaf v. Geren,*
  553 U.S. 674 (2008) ........................................................................... 13

*Nken v. Holder,*
  556 U.S. 418 (2009) ..................................................................... 13, 24

*Shalala v. Guernsey Mem'l Hosp.,*
  514 U.S. 87 (1995) ............................................................................ 15

*Starbucks Corp. v. McKinney,*
  602 U.S. 339 (2024) .......................................................................... 22

*Syncor Intern. Corp. v. Shalala,*
  127 F.3d 90 (D.C. Cir. 1997) ............................................................ 15

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) .......................................................................... 24

*United States v. Kirby,*
  74 U.S. 482 (1868) ............................................................................ 20

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) .............................................................................. 13

**STATUTES**

5 U.S.C. § 704 ...................................................................................... 14

5 U.S.C. § 705 ......................................................................... 10, 13, 15

5 U.S.C. § 706 ................................................................................ 14, 20

7 U.S.C. § 2013 ...................................................................................... 8

7 U.S.C. § 2015 (2024) ....................................................................... 1, 4

7 U.S.C. § 2015 (2025) ................................................................. 1, 4, 20

7 U.S.C. § 2023 ...................................................................................... 9

7 U.S.C. § 2025 ......................................................................... 8, 19, 23

8 U.S.C. § 1182 ...................................................................................... 4

8 U.S.C. §§ 1611–1613 .......................................................................... 1

8 U.S.C. § 1611 ...................................................................................... 5

8 U.S.C. § 1612 ............................................................................. *passim*

8 U.S.C. § 1613 .................................................................................................. 5, 7

8 U.S.C. § 1641 .............................................................................................. 1, 4, 5

22 U.S.C. § 7105 ..................................................................................................... 7

Personal Responsibility and Work Opportunity Reconciliation Act of 1996,
   Pub. L. No. 104-193, 110 Stat. 2105 (codified as amended at 8 U.S.C. §§ 1601–1646) ........... 3

Food and Nutrition Act of 2008,
   Pub. L. No. 110-234, 122 Stat. 923 (codified as amended at 7 U.S.C. §§ 2011 *et seq.*) ........... 3

Department of Defense Appropriations Act, 2010,
   Pub. L. No. 111-118, 123 Stat. 3409 (2009) .................................................... 7

Extending Government Funding and Delivering Emergency Assistance Act,
   Pub. L. No. 117-43, 135 Stat. 344 (2021 ........................................................ 7

Additional Ukraine Supplemental Appropriations Act, 2022,
   Pub. L. No. 117-128, 136 Stat. 1211 .............................................................. 7

One Big Beautiful Bill,
   Pub. L. No. 119-21, 139 Stat. 72 (2025) ...................................................... 3, 5

**RULES**

Fed. R. Civ. P. 65 .................................................................................................. 24

**REGULATIONS**

7 C.F.R. § 273.4 ..................................................................................................... 20

7 C.F.R. § 275.12 ......................................................................................... 8, 10, 19

7 C.F.R. § 275.23 .................................................................................................. 23

*Food Stamp Program: Noncitizen Eligibility, and Certification Provisions of Pub. L. 104-193,
   as Amended by Public Laws 104-208, 105-33 and 105-185*,
   65 Fed. Reg. 70,134 (Nov. 21, 2000) .......................................................... 22

**OTHER AUTHORITIES**

USDA, *Characteristics of Supplemental Nutrition Assistance Program Households: Fiscal Year
   2023* (Apr. 2025), https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-FY23-
   Characteristics-Report.pdf ...................................................................................... 24

USDA, *Supplemental Nutrition Assistance Program (SNAP) Provisions of the One Big Beautiful Bill Act of 2025 – Alien SNAP Eligibility – Question and Answer #1* (Dec. 2025), https://www.fns.usda.gov/snap/obbb-alien-eligibility-qas1 ................................... 10, 11, 12, 13

USDA, *Supplemental Nutrition Assistance Program Quality Control Review Handbook* (Oct. 2024), https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-qc-handbook310-fy25-102924.pdf........................................................................................................ 8, 9, 19, 23

## <u>INTRODUCTION</u>

This is a case about nothing. Plaintiffs pretend that the U.S. Department of Agriculture (USDA) is restricting the Supplemental Nutrition Assistance Program (SNAP) in ways that are contrary to law. But USDA is not doing that; Plaintiffs are misreading the agency's guidance in a disingenuous fashion. There is no real dispute between the parties. Plaintiffs' motion should thus be denied. This suit is a waste of the Court's time.

SNAP provides benefits to certain low-income families to support their grocery budget so they can afford nutritious food that is essential to health and well-being. On July 4, 2025, Congress passed and President Trump signed the One Big Beautiful Bill Act (OBBB). In relevant part, Section 10108 of the OBBB amended the list of individuals eligible for SNAP. Previously, this list included citizens, lawful permanent residents (LPRs), refugees, asylum entrants, aliens lawfully present by virtue of the Attorney General's discretion, and individuals whose deportations have been withheld. 7 U.S.C. § 2015(f) (2024); 8 U.S.C. §§ 1611–1613, 1641. Following the enactment of OBBB, this list was limited to citizens, LPRs, certain Cuban and Haitian entrants, and Compact of Free Association (COFA) citizens. 7 U.S.C. § 2015(f) (2025). This part of the OBBB was self-executing, so these requirements became effective upon passage of the OBBB. On October 31, 2025, USDA issued guidance summarizing the effects of OBBB on SNAP eligibility. *Supplemental Nutrition Assistance Program (SNAP) Implementation of the One Big Beautiful Bill Act of 2025 – Alien SNAP Eligibility*, ECF No. 1-1 (Guidance).

Plaintiffs New York and other States now sue arguing that USDA's Guidance diverges from the textual requirements of OBBB and other statutes regulating aliens' eligibility for SNAP. That is false. As explained more fully below, **<u>there is no disagreement between the parties as to which noncitizens are eligible for SNAP benefits and when such individuals are eligible.</u>** Plaintiffs' suit is premised on a mischaracterization of USDA's Guidance. The Court should reject Plaintiffs' challenges to the Guidance under the Administrative Procedure Act (APA) because, contrary to Plaintiffs' characterizations, Defendants share Plaintiffs' interpretation of the applicable statutes. Indeed, to the extent there is any doubt, USDA has issued FAQs that make

clear that Plaintiffs and Defendants hold—and have always held—the same view of the law.

Plaintiffs first argue that the Guidance is contrary to law because it incorrectly suggests that individuals who are later adjusted to LPR status may not qualify for SNAP if they were previously admitted into the country as refugees, asylum grantees, parolees, or certain Afghan and Ukrainian parolees. The plain text of applicable statutes does not distinguish between LPRs based on their prior status; the parties therefore agree that "[r]egardless of the status they once held, any non-citizen who adjusts to LPR status can become eligible for SNAP if they meet other statutory requirements." Compl. ¶ 59, ECF No. 1. The Guidance does not suggest otherwise.

Plaintiffs next argue that the Guidance is contrary to law because it incorrectly suggests that certain individuals are not eligible for SNAP benefits until a five-year waiting period has elapsed. But Defendants agree that, once adjusted to LPR status, refugees, asylum grantees, individuals whose deportation has been withheld, certain Afghan and Ukrainian parolees, Iraqi and Afghan Special Immigrants (SIVs), and victims of severe trafficking are exempt from the five-year waiting period. Nothing in the Guidance suggests otherwise.

Finally, Plaintiffs argue that the Guidance is also contrary to law because it applied the Department's 120-day exclusion period, which excuses errors made by participating agencies during that time, to run from the date of OBBB's enactment, rather than the date on which the Guidance allegedly imposed new eligibility requirements on participating States. But as explained above, the premise of this argument is wrong: the Guidance did not in fact depart from OBBB's eligibility requirements. Thus, the Guidance correctly stated that the 120-day exclusionary period ran from the date of the self-executing statute.

The Court should therefore deny Plaintiffs' motion for a preliminary injunction. At the outset, the Guidance is not final agency action within the meaning of the APA, because—among other things—it merely restates the uncontested law; it does not itself impose any legal restrictions. Nor was the Guidance contrary to law under the APA. After all, the parties agree on what the law says and means. Plaintiffs are also unlikely to succeed on their claims that the Guidance was arbitrary and capricious when it allegedly departed from the text of the OBBB because, at the risk

of repetition, the Guidance did not in fact change any eligibility requirements—as the parties agree. Finally, even if the Guidance did diverge from the OBBB (which it did not), and even if Defendants acted arbitrarily and capriciously in departing from the statutory requirements (which they did not), Plaintiffs also fail to demonstrate irreparable harm, because any alleged harm to the States can be addressed at a later time, or is too distant to justify preliminary relief.

## **BACKGROUND**

### I.   **Statutory Background**

This case concerns three federal statutes: the Food and Nutrition Act of 2008 (FNA), Pub. L. No. 110-234 , § 4001, 122 Stat. 923 (codified as amended at 7 U.S.C. §§ 2011 et seq.); the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), Pub. L. No. 104-193, 110 Stat. 2105 (1996) (codified as amended at 8 U.S.C. §§ 1601–1646); and the One Big Beautiful Bill (OBBB), Pub. L. 119-21, 139 Stat. 72 (2025).

### A.   **Food and Nutrition Act of 2008 (FNA) and the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA)**

Prior to the enactment of the OBBB, the FNA and PRWORA established the relevant eligibility criteria for SNAP based on citizenship or alien status. Section 6 of the FNA provided in relevant part:

> No individual who is a member of a household otherwise eligible to participate in the supplemental nutrition assistance program under this section shall be eligible to participate in the supplemental nutrition assistance program as a member of that or any other household unless he or she is (1) a resident of the United States and (2) either
>
> - (A) a citizen or
>
> - (B) an alien lawfully admitted for permanent residence as an immigrant as defined by sections 1101(a)(15) and 1101(a)(20) of Title 8, excluding, among others, alien visitors, tourists, diplomats, and students who enter the United States temporarily with no intention of abandoning their residence in a foreign country; or
>
> - (C) an alien who entered the United States prior to June 30, 1948, or such subsequent date as is enacted by law, has continuously maintained his or her residence in the United States since then, and is not ineligible for citizenship,

but who is deemed to be lawfully admitted for permanent residence as a result of an exercise of discretion by the Attorney General pursuant to section 1259 of Title 8; or

- (D) an alien who has qualified for conditional entry pursuant to sections 1157 and 1158 of Title 8; or

- (E) an alien who is lawfully present in the United States as a result of an exercise of discretion by the Attorney General for emergent reasons or reasons deemed strictly in the public interest pursuant to section 1182(d)(5) of Title 8; or

- (F) an alien within the United States as to whom the Attorney General has withheld deportation pursuant to section 1231(b)(3) of Title 8.

No aliens other than the ones specifically described in clauses (B) through (F) of this subsection shall be eligible to participate in the supplemental nutrition assistance program as a member of any household. The income (less, at State option, a pro rata share) and financial resources of the individual rendered ineligible to participate in the supplemental nutrition assistance program under this subsection shall be considered in determining the eligibility and the value of the allotment of the household of which such individual is a member.

7 U.S.C. § 2015(f) (2024).

PRWORA listed additional alien groups eligible for SNAP provided they met all other SNAP eligibility requirements and completed a 5-year waiting period, unless exempted by PRWORA. These groups included: those who are paroled into the United States under 8 U.S.C. § 1182(d)(5) for a period of at least 1 year, Cuban and Haitian entrants (as defined in section 501(e) of the Refugee Education Assistance Act of 1980), individuals who lawfully reside in the United States in accordance with a Compact of Free Association, certain Hmong and Laotian tribal members, and certain Indians born abroad. *See, e.g.*, 8 U.S.C. §§ 1641(b), 1612(d)(2).

**B.  One Big Beautiful Bill (OBBB)**

On July 4, 2025, the Congress passed and President Donald J. Trump signed the OBBB. In relevant part, Section 10108 amended 7 U.S.C. § 2015(f) as follows:

SEC. 10108. ALIEN SNAP ELIGIBILITY. Section 6(f) of the Food and Nutrition Act of 2008 (7 U.S.C. 2015(f)) is amended to read as follows: "(f) No individual who is a member of a household otherwise eligible to participate in the supplemental nutrition assistance program under this section shall be eligible to participate in the supplemental

nutrition assistance program as a member of that or any other household unless he or she is—"(1) a resident of the United States; and "(2) either—

- "(A) a citizen or national of the United States;

- "(B) an alien lawfully admitted for permanent residence as an immigrant as defined by sections 101(a)(15) and 101(a)(20) of the Immigration and Nationality Act, excluding, among others, alien visitors, tourists, diplomats, and students who enter the United States temporarily with no intention of abandoning their residence in a foreign country;

- "(C) an alien who has been granted the status of Cuban and Haitian entrant, as defined in section 501(e) of the Refugee Education Assistance Act of 1980 (Public Law 96–422); or

- "(D) an individual who lawfully resides in the United States in accordance with a Compact of Free Association referred to in section 402(b)(2)(G) of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996.

"The income (less, at State option, a pro rata share) and financial resources of the individual rendered ineligible to participate in the supplemental nutrition assistance program under this subsection shall be considered in determining the eligibility and the value of the allotment of the house hold of which such individual is a member."

110 Stat. 85. In other words, following the OBBB, the list of individuals eligible for SNAP is now limited to citizens, LPRs, certain Cuban and Haitian entrants, and COFA citizens.

### C. PRWORA's Waiting Period

The five-year waiting period requirement derives from PRWORA (and has not been amended by OBBB). That separate statute broadly restricts the availability of Federal public benefits. *See* 8 U.S.C. § 1611(a). In relevant part, PRWORA generally provides that "[n]otwithstanding any other provision of law … a qualified alien … is not eligible for [the food stamp program]." *Id.* § 1612(a)(1); *see also id.* §1613(a) (Federal means-tested programs); *id.* § 1641(b) (defining "qualified alien"). But PRWORA also provides that this prohibition "shall not apply to any qualified alien who has resided in the United States with a status within the meaning of the term 'qualified alien' for a period of 5 years or more beginning on the date of the alien's entry into the United States." *Id.* § 1612(a)(2)(L) ("Food stamp exception for certain qualified aliens"); *see* 8 U.S.C. § 1613(a) ("any Federal means-tested public benefit"). The practical effect

of these provisions is to create a default 5-year waiting period before qualified aliens are eligible for SNAP with certain exceptions for immediate eligibility.

At issue in this case are several exceptions to this default rule. Section 1612(1)(a) excepts the following groups from the default five-year waiting period:

- LPRs who have worked 40 qualifying quarters, 8 U.S.C. § 1612(a)(2)(B);
- Certain individuals with connections to the U.S. military (veterans, those on active duty, their spouses and unmarried dependent children), *id.* § 1612(a)(2)(C);
- Individuals 65 years or older as of August 22, 1996, *id.* § 1612(a)(2)(I);
- Individuals under 18 years of age, *id.* § 1612(a)(2)(J);
- Certain Hmong and Highland Laotians, *id.* § 1612(a)(2)(K)

Section 1612 also provides a time-limited exception permitting immediate eligibility for refugees and asylees. *Id.* § 1612(a)(2)(A). This subsection excepts the following individuals for a period of 7 years from the date:

> (i) an alien is admitted to the United States as a refugee under section 207 of the Immigration and Nationality Act;
>
> (ii) an alien is granted asylum under section 208 of such Act;
>
> (iii) an alien's deportation is withheld under section 243(h) of such Act (as in effect immediately before the effective date of section 307 of division C of Public Law 104-208) or section 241(b)(3) of such Act (as amended by section 305(a) of division C of Public Law 104-208);
>
> (iv) an alien is granted status as a Cuban and Haitian entrant (as defined in section 501(e) of the Refugee Education Assistance Act of 1980); or
>
> (v) an alien is admitted to the United States as an Amerasian immigrant pursuant to section 584 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1988 (as contained in section 101(e) of Public Law 100-202 and amended by the 9th proviso under Migration and Refugee Assistance in title II of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1989, Public Law 100-461, as amended).

8 U.S.C. § 1612(a)(2)(A). LPRs who are otherwise eligible for SNAP and fall into one or more of

the above categories are immediately eligible for SNAP benefits and are not subject to the 5-year waiting period.

Additionally, section 1613 reiterates several groups already excepted under previous sections and adds additional groups to the exception from the 5-year waiting period including refugees (8 U.S.C. § 1613(b)(1)(A)); individuals granted asylum (*id.* § 1613(b)(1)(B)); individuals with deportation withheld (*id.* § 1613(b)(1)(C)); Cuban and Haitian entrants (*id.* § 1613(b)(1)(D)); certain Amerasians (*id.* § 1613(b)(1)(E)); individuals with certain military connections (*id.* § 1613(b)(2)); Compacts of Free Association (COFA) citizens (*id.* § 1613(b)(3); individuals under 18 years of age (*id.* § 1613(c)(2)(L)); Certain American Indians born abroad (*id.* § 1613(d)(1)); and certain Hmong and Highland Laotians (*id.* § 1613(d)(2)).

Finally, Congress has elsewhere enacted legislation that has added specific groups of individuals to the category of "refugee[s]," *id.* § 1612(a)(2)(A)(i), exempt from the 5-year waiting period. These include certain Afghans, Iraqis, and Ukrainians as well as victims of a severe form of human trafficking. *See* The Extending Government Funding and Delivering Emergency Assistance Act, Pub. L. No. 117-43, § 2502(a)-(b), 135 Stat. 344, 377 (2021) ("Notwithstanding any other provision of law, [certain Afghans] shall be eligible for … [SNAP, among other benefits, as] available to refugees"); Additional Ukraine Supplemental Appropriations Act, 2022, Pub. L. No. 117-128, § 401(b)(1), 136 Stat. 1211, 1218 (2022) ("Notwithstanding any other provision of law, [certain Ukrainians] shall be eligible for … [SNAP, among other benefits, as] available to refugees"); The Department of Defense Appropriations Act, 2010, Pub. L. No. 111-118, § 8120(a)-(b), 123 Stat. 3409, 3457 (2009) (amending Section 1244(g) of the Refugee Crisis in Iraq Act of 2007 to make certain Iraqis eligible for SNAP, among other benefits, "to the same extent, and for the same periods of time, as such refugees"); 22 U.S.C. § 7105(b)(1)(A) ("Notwithstanding title IV of [PRWORA] an alien who is a victim of a severe form of trafficking in persons," among others, "shall be eligible for benefits and services" such as SNAP "to the same extent as an alien who is admitted to the United States as a refugee"). These groups are thus also effectively exempt from PRWORA's 5-year waiting period.

Defendants' Opposition to Motion for a Preliminary Injunction 7

To summarize: in the case of LPRs, PRWORA generally limits the availability of SNAP benefits to those who have been in the country for at least five years. But Congress has excepted a number of groups from the 5-year waiting requirement, as described above. OBBB did not amend the timing provisions of PRWORA or the other statutes cross-referencing these exceptions.

### D.  OBBB's Cost-Sharing Provisions

Section 10105 of the OBBB also created a new cost-sharing provision in the FNA which, starting in FY 2028, will require certain States to share in the cost of funding SNAP benefits if those States' historical payment error rates exceed certain thresholds. *See* 7 U.S.C. § 2013(a)(2). This provision allocates costs a portion of the cost of SNAP benefits to participating States based in part on the State's "payment error rate" as determined by the SNAP quality-control system, which uses a sampling of State data to calculate the error rate. 7 U.S.C. § 2013(a)(2); 7 U.S.C. § 2025(c).

In determining a State's payment error rate, the statute excludes "[a]ny errors resulting in the application of new regulations promulgated under this chapter during the first 120 days from the required implementation date for such regulations." 7 U.S.C. § 2025(c)(3)(A). A regulation excludes "any variance resulting from application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law that occurs during the first 120 days from the required implementation date." 7 C.F.R. § 275.12(d)(2)(vii). The Department's guidance clarifies how the 120-day exclusion period operates. The applicable Handbook provides:

> Application of New SNAP Regulations or Laws. When a 120-day variance exclusion period is granted for implementation of new SNAP regulations or laws, the reviewer will exclude variances resulting from mistakes made based on the implementation of that new SNAP Federal regulation or law during the 120-day exclusionary period. The 120-day variance exclusion period only applies when the State agency implements the change(s) resulting from the new regulation or law in a timely manner and in accordance with the provisions of the new regulation or law.

USDA, *Supplemental Nutrition Assistance Program Quality Control Review Handbook* at 7–43 (Oct. 2024), https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-qc-handbook310-fy25-102924.pdf (FNS Handbook).

Defendants' Opposition to Motion for a Preliminary Injunction 8

The Handbook also provides that the end of the annual SNAP quality-control review period is 115 days after September 30, which is typically January 23. *Id.* at 1–12. That means for FY 2026 error rates, States will have until January 23, 2027 to make corrections to their quality-control samples.

## II. Factual Background

### A. USDA Guidance

On October 31, 2025, USDA issued Guidance titled "Supplemental Nutrition Assistance Program (SNAP) Implementation of the One Big Beautiful Bill Act of 2025 – Alien SNAP Eligibility." ECF No. 1-1. The memorandum "provides State agencies with additional information on implementing Section 10108 of the OBBB, which makes changes to alien eligibility for SNAP." *Id.* at 1. The Guidance does not itself purport to make any changes to SNAP eligibility; it merely explains the statutory changes that Congress had effectuated in the OBBB.

In relevant part, the Guidance explains that "Eligible Alien Groups under the OBBB" are "Non-citizen U.S. nationals," "Cuban and Haitian entrants," "Compacts of Free Association (COFA) citizens," and "Lawful permanent residents (LPR) (also known as Green Card holders)." ECF 1-1 at 2. The Guidance further explains that LPRs are "[e]ligible after a 5-year waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements." *Id.* Furthermore, "LPRs may still be eligible for SNAP without a waiting period if they meet one or more of the following conditions: Are under 18 years old[,] Have 40 qualifying work quarters[,] Are blind or disabled[,] Were lawfully residing in the U.S. and 65 or older on August 22, 1996[,] have a U.S. military connection[,] Are admitted to the United States as an Amerasian immigrant[,] Are an American Indian born abroad[, or are] Certain Hmong or Highland Laotian tribal members." *Id.* These eight categories track PRWORA's 8 U.S.C. § 1612. *See supra* Part I.C. In other words, the Guidance clarifies that all LPRs—regardless of their previous status prior to adjustment as LPRs—are eligible for SNAP; they may also be eligible without a 5-year waiting period if they fall within one of PRWORA's categories.

The Guidance accurately stated that "Section 10108 of the OBBB was effective upon enactment, July 4, 2025." ECF 1-1 at 3. Because the statute was self-executing, "State agencies must immediately apply the new eligibility criteria to new applicants." *Id.* The Guidance further clarified that the Department would "hold States harmless for Quality Control (QC) purposes for 120 days from the required implementation date in accordance with 7 C.F.R. § 275.12(D)(2)(vii)." *Id*. The Guidance calculated that the "120-day variance exclusion is permitted for the misapplication of changes in Section 10108 of the OBBB to new and ongoing SNAP households until the exclusionary period end date on November 1, 2025," *i.e.*, 120 days after the President signed the OBBB into law. *Id*. at 4. The Guidance encouraged participating States to reach out to the Department with any questions and contemplated "additional guidance in future memos." *Id*.

## B. Procedural History

On November 26, 2025, Plaintiffs filed a Complaint for declaratory and injunctive relief. The Complaint alleges that the Guidance violates the Administrative Procedure Act ("APA") as contrary to law (Counts I and III) and arbitrary and capricious (Counts II & IV). Compl. ¶¶ 88–126. Plaintiffs' theory of the case is that "the guidance … goes beyond the Act, arbitrarily excluding from SNAP many lawful permanent residents who remain eligible under the statutory scheme established by Congress." *Id.* ¶ 3. On November 26, 2025, Plaintiffs also moved for a preliminary injunction or, in the alternative, a stay under 5 U.S.C. § 705 of the APA. ECF No. 4.

## C. USDA's Q&As Guidance

On December 9, 2025, the Department published additional guidance titled "Supplemental Nutrition Assistance Program (SNAP) Provisions of the One Big Beautiful Bill Act of 2025 – Alien SNAP Eligibility – Question and Answer #1." That additional guidance is available at https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-obbb-alien-eligibility-qas1-12092025.pdf (Q&As). These Q&As included:

## 1. Are the OBBB changes to alien eligibility effective immediately or upon rulemaking?

The changes were effective upon the enactment of OBBB—July 4, 2025. OBBB specifies which alien groups are eligible for SNAP under section 6(f) of the Food and Nutrition Act of 2008 (FNA) and is not contingent on regulations before the changes go into effect.

**2. Are individuals who have been granted asylum or who are refugees eligible for SNAP?**

No. Individuals who have been granted asylum or who are refugees, including individuals under 18 years of age, are not eligible for SNAP by virtue of that status.

With the passage of OBBB, the only aliens eligible for SNAP are those with the following statuses: lawful permanent resident (LPR), Cuban and Haitian entrant (CHE), or Compacts of Free Association (COFA) citizen. See chart below for additional information on asylees or refugees who have adjusted status to LPR.

**3. Does the 5-year waiting period still apply following the OBBB?**

Yes. OBBB did not make changes to the 5-year waiting period requirement and exceptions, which are established by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), 8 USC 1613.

**4. When does the 5-year waiting period begin?**

The 5-year waiting period begins on the date the alien obtains status as a qualified alien or enters the U.S. in a qualifying status under 8 USC 1613.[1]

**5. Post-OBBB, will individuals who adjust from a status not eligible for SNAP under Section 6(f) of the FNA to lawful permanent resident (LPR) status now need to wait 5 years after adjusting to LPR status to review SNAP?**

Not necessarily. Per current policy, aliens who adjust status to LPR from one of the groups exempt from the 5-year waiting period in section 403 of PRWORA (8 USC 1613), are not required to wait for 5 years after becoming an LPR.[2]

The chart below shows alien groups and whether they are subject to the 5-year waiting period after adjusting their status to LPR

---

[1] The Q&As further provide in footnote: "These groups include lawful permanent residents, asylees, refugees, parolees, individuals granted withholding of deportation or removal, conditional entrants, Cuban or Haitian entrants, battered aliens, and alien victims of a severe form of trafficking, Certain American Indians born abroad and Hmong or Highland Laotian tribal members."

[2] The Q&As further provide in a footnote: "Refugee, individuals granted asylum, deportation withheld, Cuban and Haitian entrant, Amerasian, individual in a SNAP-eligible alien group with a military connection, individual in a SNAP-eligible alien group who is under age 18, American Indian born abroad, and Hmong or Highland Laotian tribal member."

Defendants' Opposition to Motion for a Preliminary Injunction 11

| Alien Group Pre-LPR-Adjustment | Subject to 5-year Waiting Period After Adjusted Status to LPR[3] |
|---|---|
| Refugees | No |
| Individuals Granted Asylum | No |
| Deportation Withheld | No |
| Cuban and Haitian Entrants (CHE) | No |
| Amerasians | No |
| American Indians Born Abroad | No |
| Hmong or Highland Laotian Tribal Members | No |
| Iraqi and Afghan Special Immigrants (SIV) | No |
| Certain Afghan Nationals Granted Parole Between July 31, 2021, and Sept. 30, 2023 | No |
| Certain Ukrainian Nationals Granted Parole Between Feb. 24, 2022, and Sept. 30, 2024 | No |
| Victims of Severe Trafficking | No |

---

[3] The Q&As further provide in a footnote: "An individual has 'adjusted status to LPR' when they have received an approval notice and Permanent Resident Card (Green Card) from the United States Citizenship and Immigration Services (USCIS). An individual is not considered an LPR if they have applied to adjust status and have not yet received a decision."

| Alien Group Pre-LPR-Adjustment | Subject to 5-year Waiting Period After Adjusted Status to LPR[3] |
|---|---|
| **Conditional Entrants** | Yes |
| **Battered Aliens** | Yes |
| **Individuals Granted Parole for a Period of at Least One Year** | Yes |

Provided other SNAP eligibility requirements are met, someone in one of the above "Yes" groups is not subject to the 5-year waiting period if the person:

- Is under 18 years old;
- Has 40 qualifying work quarters;
- Is blind or disabled;
- Was lawfully residing in the U.S. and 65 or older on Aug. 22, 1996; or
- Has a U.S. military connection.

## **LEGAL STANDARD**

A "preliminary injunction is an extraordinary and drastic remedy[.]" *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted). A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must demonstrate (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer an irreparable harm in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest. *Id.* at 20. Finally, when "the Government is the opposing party[,]" the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[T]he factors used to determine whether to issue a § 705 stay under the APA are the same equitable factors used to consider whether to issue a preliminary injunction." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 995

(9th Cir. 2025).

## ARGUMENT

**I.    Plaintiffs Cannot Establish Likelihood of Success on the Merits.**

### A.    Plaintiffs Are Not Likely to Prevail on Their APA Claims.

Under the APA, only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The Court may set aside agency action only if the Court finds that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or "without observance of procedure required by law." *Id.* § 706(2)(A), (D). Plaintiffs' APA claims are not likely to succeed. The Guidance that Plaintiffs challenge is not final agency action. Regardless, all of Plaintiffs' objections to the Guidance are based on blatant misreadings of what it says—there is no actual dispute about who is eligible for SNAP benefits or when they are eligible, and thus the Guidance plainly does not violate the APA in any respect because (1) Plaintiffs have not identified final agency action, (2) Defendants have not violated any procedure required by law, (3) Defendants have not acted contrary to law, and (4) Defendants have not acted arbitrarily and capriciously.

### 1.    USDA's Interpretive Guidance Is Not Final Agency Action.

Plaintiffs challenge USDA's interpretive guidance, but this document does not constitute final agency action. *See* 5 U.S.C. § 704. Final agency action has two characteristics. "First, the action must mark the 'consummation' of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).

Agencies' "interpretative rules or statements of policy generally do not qualify" as final agency action "because they are not finally determinative of the issues or rights to which they are

addressed." *Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 395 (D.C. Cir. 2013) (cleaned up). Interpretive rules are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) (citation omitted). A non-binding interpretive rule is not a "final agency action" suitable for review because "standing alone, it is lifeless and can fix no obligation nor impose any liability on the plaintiff." *Borg-Warner Protective Servs. Corp. v. EEOC*, 245 F.3d 831, 836 (D.C. Cir. 2001) (quoting *Gerator Corp. v. EEOC*, 592 F.2d 765, 767 (4th Cir. 1979)). The critical feature of this interpretive rule is that it does not have independent legal force. *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805-06 (D.C. Cir. 2006). In other words, interpretative rules "generally do not qualify" as final agency actions "because they are not 'finally determinative of the issues or rights to which [they are] addressed.'" *Am. Tort Reform Ass'n*, 738 F.3d at 395 (citing *Ctr. for Auto Safety*, 452 F.3d at 800).

Here, USDA's guidance simply "reflects" Defendants' interpretation of the OBBB and does not "modif[y] or add[] to a legal norm based on the agency's own authority." *Syncor Intern. Corp. v. Shalala*, 127 F.3d 90, 94-95 (D.C. Cir. 1997) (emphasis omitted); *cf. Inst. for Fisheries Res. v. Hahn*, 424 F. Supp. 3d 740, 748 (N.D. Cal. 2019) (guidance did not constitute final agency action where document did not "amend any legislative rule" and was "consistent with the existing regulatory" structure). Indeed, as described below, the guidance also reflects *Plaintiffs'* interpretation of the OBBB. It therefore does not constitute final agency action because it adds nothing new to Plaintiffs' regulatory obligations.

### 2.  USDA's Guidance Is Not Contrary to Law.

In all events, the USDA Guidance is not contrary to law. Quite the opposite, there is no dispute between the parties over the core issues in this case—who is eligible for SNAP benefits and when. Therefore, neither a preliminary injunction nor a § 705 stay is appropriate here.

Plaintiffs allege three legal errors in the Guidance. We address them in order.

### a.  LPR Eligibility

Plaintiffs first argue that "[r]egardless of the status they once held, any non-citizen who adjusts to LPR status can become eligible for SNAP if they meet other statutory requirements." Compl. ¶ 59. USDA agrees. The text of FNA, as amended by OBBB, and PRWORA provide that LPRs are eligible for SNAP benefits; none of these statutes makes any distinction based on their prior status before their adjustment to LPR status.

Plaintiffs appear to interpret the Guidance as suggesting that "Refugees, Individuals Granted Asylums, Parolees, and Certain Afghan and Ukrainian Parolees can never become eligible for SNAP even after adjusting to LPR status." ECF No. 4 at 19. That is wrong, and it does not reflect what the Guidance says. To the contrary, the Guidance is clear that "Lawful permanent residents" are "Eligible Alien Groups under the OBBB." ECF No. 1-1 at 2. The Guidance makes no distinction based on an individual's status prior to adjustment to LPR.

Plaintiffs focus on the Guidance's attachment 1, which compares the eligibility of certain groups before and after passage of OBBB. ECF 1-1 at 5-8. In particular, the Guidance correctly states that individuals who belong to the following groups were "[e]ligible immediately" for SNAP prior to the passage of OBBB: (1) "Refugees," (2) "Individuals Granted Asylum," (3) "Parolees," (4) "Certain Afghan Nationals Granted Parole Between July 31, 2021 and September 30, 2023," and (5) "Certain Ukrainian Nationals Granted Parole Between February 24, 2022, and September 30, 2024." *Id.* at 7-8. The Guidance also correctly stated that following passage of OBBB, members of these groups were "[n]ot eligible" for SNAP benefits anymore. *Id.* at 7-8. Most significantly, the Guidance states at the very beginning of attachment 1 that LPRs are all eligible for SNAP benefits. *Id.* at 5. Plaintiffs appear to ignore the fact that just because an individual no longer qualifies for SNAP by virtue of being a refugee or parole, that same individual may become eligible for SNAP if they are later adjusted to LPR status. Nothing in the statutes or Guidance suggests that such individuals will never be eligible for SNAP, even if later adjusted to LPR status.

To be clear, it is the position of the United States (contrary to Plaintiffs' characterization) that "Refugees, Individuals Granted Asylum, and Certain Afghan and Ukrainian Parolees" can and do "become eligible for SNAP" if they are later adjusted to LPR status. *Cf.* ECF No. 4 at 19. There

Defendants' Opposition to Motion for a Preliminary Injunction 16

is no meaningful dispute between the parties on this. Because this shared interpretation comports with the plain text of FNA, as amended by OBBB, and PRWORA, the Guidance cannot be "contrary to law" for purposes of the APA. *Id.*

### b. Timing of LPR Eligibility

Plaintiffs allege that the Guidance errs in a second way by suggesting that refugees, individuals granted asylum, those with deportation withheld, certain Afghan and Ukrainian parolees, Iraqi and Afghan Special Immigrants, and victims of severe trafficking are not exempt from PRWORA's five-year waiting period. This is wrong too. Again, there is no dispute between the parties that those individuals, if later adjusted to LPR status, are exempt from the 5-year waiting requirements under the text of PRWORA.

As Plaintiffs explain, ECF No. 4 at 11, and as Defendants agree, prior to OBBB, these individuals were immediately eligible for SNAP under FNA and PRWORA. Following passage of the OBBB, these individuals were no longer eligible for SNAP by virtue of their status as a refugees, individual granted asylum, deportation withheld, certain Afghan and Ukrainian parolee, SIV, or victim of severe trafficking. Yet as explained above, such individuals may still become eligible for SNAP based on their later status as an LPR. If so, the timing of their eligibility for SNAP benefits would be governed by PRWORA.

Plaintiffs focus on 8 U.S.C. § 1612. That provision provides that the 5-year time limitation "shall not apply to an alien until 7 years after the date" for five specified events: (i) "an alien is admitted … as a refugee"; (ii) "an alien is granted asylum"; (iii) "an alien's deportation is withheld"; (iv) "an alien is granted status as a Cuban and Haitian entrant"; or (v) "an alien is admitted [as an Amerasian immigrant]." *Id.* § 1612(a)(2)(A)(i)-(v). Separate public laws have also extended subcategory (i) for refugees to include other discrete categories of individuals, as described above, including certain Afghans, Iraqis, Ukrainians, and victims of a severe form of human trafficking. *See supra* I.C (collecting statutes).

These statutes were lawfully enacted by the Congress, and nothing in agency Guidance displaces them. The parties therefore do not dispute that the above individuals, if adjusted to LPR

status, would be eligible for SNAP benefits based on their LPR status (as opposed to their previous, pre-LPR status); and further, that such individuals would be immediately eligible for SNAP benefits based on their original status within one or more of the preceding exempt groups under PRWORA, as amended. *Accord* ECF No. 4 at 20 ("Certain Afghan and Ukrainian Parolees, Iraqi and Afghan SIV, and Victims of Severe Trafficking are granted the same eligibility for SNAP as Refugees by statute."). Again, all parties agree.

Plaintiffs again appear to infer a difference in interpretation based on attachment 1 to the Guidance. As the attachment explains, "This chart compares SNAP eligibility for alien groups before and after the OBBB became law." ECF No. 1-1 at 5. The chart correctly states that LPRs typically are "[e]ligible [for SNAP] after a 5-year waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements." *Id.* But the Guidance also flags the most common exemptions from the 5-year waiting period. Specifically, it provides that "LPRs may still be eligible for SNAP without a waiting period if they meet one or more of the following conditions" followed by bullet points summarizing categories codified at 8 U.S.C. 1612(a)(2)(A). *Id.* This is just one of 24 row entries in the attachment, which seeks to provide a handy chart for ease of reference. The attachment does not purport to be exhaustive. Quiet the contrary, it merely flags the most common exceptions to the general rule ("LPRs may still be eligible…"). *Id.* As explained above, the entire statutory framework is quite complicated; including this entire legal analysis in a single cell of the chart would swallow the attachment and undermine its purpose of providing a quick reference guide. But on the underlying substance, there is no dispute.

Because the parties agree on the application of FNA, OBBB, and PRWORA as to the timing of eligibility of these individuals, Plaintiffs are unlikely to succeed on the merits of their claim that the Guidance is contrary to law.

### c. 120-Day Exclusionary Period

Finally, Plaintiffs argue that the Guidance's exclusionary period is contrary to law. ECF No. 4 at 24. As Plaintiffs correctly note, the FNA prohibits USDA from including in a State's "payment error rate … [a]ny errors resulting in the application of new regulations promulgated

Defendants' Opposition to Motion for a Preliminary Injunction 18

under this chapter during the first 120 days from the required implementation date for such regulations." 7 U.S.C. § 2025(c)(3)(A). USDA's regulations similarly immunize "any variance resulting from application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law that occurs during the first 120 days from the required implementation date." 7 C.F.R. § 275.12(d)(2)(vii). But Plaintiffs are wrong that this section has been violated.

Both the FNA and USDA's regulations establish 120-day exclusion periods from the "required implementation date." 7 U.S.C. § 2025(c)(3)(A); 7 C.F.R. § 275.12(d)(2)(vii). But the relevant question is what is the "required implementation date." Here, the changes in eligibility were made by the OBBB. That statute contained its own implementation date: its effective date. The requirements of Section 10108 were required to be implemented upon the date the law became effective—July 4, 2025. Under both FNA and USDA's regulations, which merely agree to a "required implementation date," 120 days from July 4, 2025 is November 1, 2025. The Guidance correctly indicated that States would not be penalized for any errors that occurred within 120 days of these new eligibility requirements. ECF No. 1-1 at 4.

At the outset, Section 2025(c)(3)(A), by its terms, only applies to "new regulations." But, as described above, it is not USDA regulations that impose the new requirements, it is the OBBB. To be sure, USDA's regulations and policies make clear that the 120-day exclusion period applies to statutory changes as well, *see* FNS Handbook (referring to the "[w]hen a 120-day variance exclusion period is granted for implementation of new SNAP regulations **_or_** laws") (emphasis added), it, too, distinguishes between changes caused by statute or regulations. Here, though, the change came from law, not regulation.

Plaintiffs' contrary theory turns on their flawed interpretation of USDA's Guidance. If, as Plaintiffs alleged, the Guidance itself changed eligibility requirements for SNAP beneficiaries, Plaintiffs would be in a stronger position to argue that the 120-day exclusion period should run from the date of Guidance. But as explained above at length, the Guidance did not change the requirements for eligibility at all; it simply summarized the statutory changes. As a result, Plaintiffs

Defendants' Opposition to Motion for a Preliminary Injunction 19

are wrong to peg the 120-day exclusion period as running from time the Guidance was issued, rather than when the eligibility criteria were changed by OBBB itself.

Plaintiffs' arguments to the contrary are without merit. Plaintiffs contend that "When the law changes, USDA must direct States how to comply with the changes—and that direction from USDA is necessary for States to disregard regulations that remain on the books. This is true here, where the USDA's regulations still reflect the state of the law pre-OBBB." ECF No. 4 at 26 (citing 7 U.S.C. § 2015(f); 7 C.F.R. § 273.4). That is wrong as a categorical matter. States have to follow changes in Federal law enacted by the Congress. It makes no sense for States to argue that they must not apply duly enacted statutes until there is guidance—if an agency even decides it is necessary to issue guidance at all. It is especially untenable for Plaintiffs to argue that they have actual knowledge of changes in Federal statute and share the Department's interpretation—and yet contend that they are not yet obligated to apply the law as written without consequence and as all parties interpret it.

Finally, Plaintiffs' arguments would produce absurd results. *Cf. United States v. Kirby*, 74 U.S. 482, 486-87 (1868). Under Plaintiffs' position, the Department could effectively veto any of Congress' statutory changes to SNAP eligibility (by not subjecting them to error calculation) by failing to issue guidance. What is more, on their view, the Department must reset the 120-day clock, even if USDA waits to issue guidance after many years. That cannot be the case.

### 3. The Guidance Document Is Not Arbitrary or Capricious.

The APA permits courts to set aside agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). Under the arbitrary or capricious standard, an agency's decision is presumed valid, and a court reviews only whether that decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). Review is "deferential," *Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019), and simply examines whether the agency's decision "was the product of reasoned decisionmaking." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 52 (1983). Moreover, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id*. at 43.

Plaintiffs argue that the Guidance's changes to SNAP eligibility are arbitrary and capricious for two reasons (Count II). First, they allege "USDA failed to provide sufficient explanation of its underlying reasons for treating LPRs differently based on how they obtained that status." ECF No. 4 at 21. But as explained above, the premise fails: USDA's Guidance does not "trea[t] LPRs differently based on how they obtained that status." Second, Plaintiffs allege that USDA's Guidance "departs from the statutory SNAP eligibility requirements, even as amended by the OBBB, without considering Plaintiff States' serious reliance interests and harms that would flow from their action." *Id.* Again, the premise fails: the Guidance does not "depar[t] from the statutory SNAP eligibility requirements." Defendants have no obligation to consider "harms that would flow from" actions they did not take.[4] As a result, the Guidance's treatment of eligibility requirements cannot be arbitrary and capricious.

Plaintiffs further argue that the Guidance's exclusionary period is arbitrary and capricious (Count IV), on two grounds. ECF No. 4 at 27. First, Plaintiffs argue that it "fails to explain how an agency can back-date an implementation date of guidance to a date before that guidance was issued." *Id.* As explained above, contrary to Plaintiffs' theory of the case, the Guidance did not alter or create new eligibility criteria. Those changes all stem from enactment of the OBBB on July 4.

Plaintiffs next argue that the Guidance "fails to explain why the agency is departing from the ordinary practice of permitting variances for 120 days based on the date of the relevant

---

[4] Furthermore, reliance interests are less relevant in matters of statutory interpretation. Under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), PRWORA means what it means; its best reading cannot have changed simply because the government previously interpreted it wrongly, assuming it did, even if people relied on its error. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 60 (2020) (Thomas, J., concurring in the judgment) (opinion joined by Alito and Gorsuch, JJ.) ("But reliance interests are irrelevant when assessing whether to rescind an action that the agency lacked statutory authority to take. No amount of reliance could ever justify continuing a program that allows DHS to wield power that neither Congress nor the Constitution gave it.").

guidance." ECF No. 4 at 27. For this "ordinary practice," Plaintiffs cite a mere two examples.  And Plaintiffs' reading of history is simply incorrect.  USDA has long timed the applicable variance exclusion period to the effective date of a new statute, when the changes in eligibility requirements were the result of a new statute, rather than a new regulation. Following the enactment of PWORA itself, USDA explained that the statute's eligibility requirements were effective upon enactment. *Food Stamp Program: Noncitizen Eligibility, and Certification Provisions of Pub. L. 104-193, as Amended by Public Laws 104-208, 105-33 and 105-185*, 65 Fed. Reg. 70,134, 70,139 (Nov. 21, 2000). Plaintiffs cite guidance implementing a 2024 Final Rule that used the 120-day variance, ECF No. 4 at 25, but that Rule was not even implementing a new statutory requirement, much less a "self-executing" one. Rather, it specified an implementation date for *regulatory* changes to calculations of housing costs—a very different situation from the changes directed by OBBB that simply removed certain alien groups from SNAP eligibility. Concededly, Plaintiffs do cite one 2010 example where USDA used a 120-day variance period starting from guidance implementing a statute that (like the OBBB) changed certain non-citizen eligibility requirements for SNAP. *Id.* But one example does not indicate an "ordinary practice." Nor can it forever constrain future agency actions. *See, e.g.*, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 538 (2009) (explaining flexibility afforded to agencies under APA).

Accordingly, Plaintiffs are unlikely to succeed on their arbitrary-and-capricious claims.

* * * * * * *

In sum, Plaintiffs cannot show a likelihood of success on their claims.

## II.    Plaintiffs Have Not Demonstrated that They Will Suffer Irreparable Harm Absent Preliminary Relief.

Plaintiffs' Motion should also be independently denied because Plaintiffs have not made a "clear showing" of irreparable harm absent a preliminary injunction. *See Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024). Plaintiffs' theory of harm is that they will interpret eligibility for SNAP benefits one way, while USDA will interpret eligibility differently, resulting in an error calculation that could ultimately make States liable for share of these erroneous payments and/or

result in the states having to use their own State-specific assistance programs to provide benefits to aliens that they claim USDA's guidance excludes from SNAP. But yet again, Plaintiffs' case rests on a false premise. The parties do not disagree on eligibility for benefits; they interpret FNA, OBBB, and PRWORA identically. There is no delta between their positions on eligibility. Thus, by construction, States will never suffer any harm—much less irreparable harm—based on any alleged difference in eligibility.

Furthermore, even if the parties disagreed on eligibility criteria, which they do not because the statutes are clear, and the USDA later penalized Plaintiff States for incorrectly applying their interpretation, such harm would not be clearly irreparable nor is the harm "imminent." *See Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) (reversing grant of preliminary injunction where injunctive relief was "not now needed to guard against any present or imminent risk of likely irreparable harm") (citation omitted). the QC annual review period for payment error rates does not close until 115 after the end of the fiscal year. FNS Handbook at 1–12 ("The end of the annual QC review period is 115 days after September 30, which is typically January 23."). In other words, for FY 2025 QC sample cases, corrections can be made until January 23, 2026.  For FY 2026 QC sample cases, corrections can be made until January 23, 2027.

To the extent that any errors in the implementation of the OBBB alien eligibility changes contribute to two consecutive years of State payment error rates that exceed the national payment error rate by at least 105%, Plaintiffs would be able to utilize USDA's administrative appeal process and get subsequent judicial review for any liability resulting from including aliens no longer eligible for SNAP in the program that impacts the States' payment error rate. 7 U.S.C. § 2025(c)(7)(A); 7 C.F.R. § 275.23(d)(3). And payment would not be owed until that appeal process ends. 7 U.S.C. § 2025(c)(5).

Plaintiffs also point to the allegedly "financially ruinous" penalties Section 10105 of the OBBB tied to states' payment error rates, but those penalties would not be imposed anytime soon—in fact, not until Fiscal Year *2028*. Hoffman Decl. ¶¶ 26-28, ECF No. 6. Nevermind that OBBB's alien eligibility changes are unlikely to have a significant impact on States' payment error

rates. Aliens accounted for only 4.4% (refugees 1.1% and other noncitizens 3.3%) of total SNAP participants in 2023. *See* USDA, *Characteristics of Supplemental Nutrition Assistance Program Households: Fiscal Year 2023*, at 30 tbl. 3.6 (Apr. 2025), https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-FY23-Characteristics-Report.pdf. Payment error rates are based on sampling of State's caseload, so any alien eligibility cases would need to be captured in a sample in order to impact the payment error rate.

Even assuming that Plaintiffs are likely to be harmed—they're not—that harm is far from imminent, making preliminary relief unnecessary.

## III.    The Balance of the Equities and the Public Interest Disfavor a Preliminary Injunction.

A preliminary injunction also is not appropriate because the balance of the equities and the public interest tip in Defendants' favor. *See Nken*, 556 U.S. at 435 (holding that "[t]hese factors merge when the Government is the opposing party"). In this setting, granting the preliminary injunction that Plaintiffs seek would disrupt the USDA's efforts to comply with the OBBB and to correctly interpret OBBBE plain text consistent with the statutory purpose. "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (citation omitted).

## IV.    To the Extent the Court Enters an Injunction, Plaintiffs Should be Ordered to Post Security in Connection with Any Preliminary Injunctive Relief

For the reasons stated above, Defendants submit that the Court can and should deny Plaintiffs' Motion in its entirety. However, should the Court be inclined to order any injunctive relief, the Court should also order Plaintiffs to post security. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues a preliminary injunction here, the Court should require Plaintiffs to post an appropriate bond commensurate with the scope of any such order.

## **CONCLUSION**

For the reasons explained above, Plaintiffs are not entitled to any preliminary relief. But, in the event the Court concludes otherwise, injunctive relief should be limited to Plaintiff States who have demonstrated irreparable harm.


Dated: December 11, 2025                    Respectfully submitted,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General
                                            Civil Division

                                            ERIC J. HAMILTON
                                            Deputy Assistant Attorney General
                                            JOSEPH E. BORSON
                                            Assistant Branch Director
                                            Federal Programs Branch

                                            MICHAEL VELCHIK
                                            Senior Counsel to the Assistant Attorney General

                                            /s/ *Tyler J. Becker*
                                            TYLER J. BECKER (D.C. Bar No. 90007283)
                                            Counsel to the Assistant Attorney General
                                            U.S. Department of Justice, Civil Division
                                            950 Pennsylvania Ave.
                                            Washington, DC 20530
                                            Tel: (202) 514-4052
                                            Email: tyler.becker@usdoj.gov

                                            *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2025, I electronically transmitted the foregoing to

the parties and the clerk of court for the United States District Court for the District of Oregon

using the CM/ECF filing system.

/s/ *Tyler J. Becker*
TYLER J. BECKER (D.C. Bar No. 90007283)
Counsel to the Assistant Attorney General
U.S. Department of Justice, Civil Division
950 Pennsylvania Ave.
Washington, DC 20530
Tel: (202) 514-4052
Email: tyler.becker@usdoj.gov

*Attorney for Defendants*

Defendants' Opposition to Motion for a Preliminary Injunction 26