DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO # 114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:　Leanne.Hartmann@doj.oregon.gov
　　　　Brian.S.Marshall@doj.oregon.gov
　　　　Kirsten.M.Naito@doj.oregon.gov
　　　　Sara.DelRubin@doj.oregon.gov
　　　　Derek.Olson@doj.oregon.gov

*Attorneys for the State of Oregon*

[Additional counsel to appear on signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| STATE OF NEW YORK; STATE OF OREGON; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAI‘I; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NORTH CAROLINA; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WASHINGTON; and STATE OF WISCONSIN,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture; and U.S. DEPARTMENT OF AGRICULTURE,<br><br>　　　　　　　　　Defendants. | Case No. 6:25-cv-02186-MTK<br><br>**PLAINTIFF STATES' REPLY IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION** |

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.     In Its December 10, 2025 Q&A Document, USDA Concedes the Non-Citizen
SNAP Eligibility Issues in Plaintiffs' Favor.............................................................. 1

     A.    USDA Concedes That All Non-Citizens Who Adjust Status to LPR Status
Can Be Eligible for SNAP Benefits. ......................................................... 2

     B.    USDA Concedes That Humanitarian Immigrant Groups Are Not Subject
to PRWORA's Five-Year Waiting Period................................................... 3

     C.    Because USDA Has Conceded These Issues, Plaintiffs No Longer Seek an
Injunction Preventing Implementation of the Guidance. ........................... 4

     D.    Regardless, the Guidance Was Itself Contrary to Law and Arbitrary and
Capricious. ................................................................................................. 4

II.    The Q&A Does Not Change (Or Even Mention) the Exclusionary Period, Over
Which the Parties Have a Crystalized Dispute Appropriate for Immediate
Resolution. .................................................................................................................. 5

III.   The Guidance is Final Agency Action. ...................................................................... 6

IV.   Plaintiffs Are Likely to Succeed on the Merits of Their Claim That the Guidance's
Exclusionary Period Is Contrary to Law (Count III). ................................................. 9

V.    Plaintiffs Are Likely to Succeed on the Merits of Their Claim That the Guidance's
Exclusionary Period Is Arbitrary and Capricious (Count IV).................................... 13

VI.   Plaintiffs Face Irreparable Harm Absent Preliminary Relief. ................................... 16

VII.  The Balance of the Equities and Public Interest Favor an Injunction........................ 20

VIII. Plaintiffs' Requested Preliminary Relief, Narrowed Due to Defendants'
Concessions, Is Appropriate...................................................................................... 20

CONCLUSION............................................................................................................. 21

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Barahona-Gomez v. Reno*,
   167 F.3d 1228 (9th Cir. 1999) ................................................................... 20

*Bennett v. Spears*,
   520 U.S. 154 (1997) ................................................................................... 6

*California v. Trump*,
   786 F. Supp. 3d 359 (D. Mass. 2025) ........................................................ 17

*Cal. Cmtys. Against Toxics v. E.P.A.*,
   934 F.3d 627 (D.C. Cir. 2019) ................................................................... 7

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
   333 U.S. 103 (1948) ................................................................................... 6

*Citizens to Pres. Overton Park v. Volpe*,
   401 U.S. 402 (1971) ................................................................................... 13

*City & Cnty. of San Francisco v. Trump*,
   897 F.3d 1225 (9th Cir. 2018) ................................................................... 18

*City & Cnty. of San Francisco v. Trump*,
   783 F. Supp. 3d 1148 (N.D. Cal. 2025) .......................................... 18, 19, 20

*Ctr. for Food Safety v. Vilsack*,
   636 F.3d 1166 (9th Cir. 2011) ................................................................... 17

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020) ....................................................................................... 13

*Frozen Food Express v. United States*,
   351 U.S. 40 (1956) ..................................................................................... 7

*F.T.C. v. Standard Oil Co. of Cal.*,
   449 U.S. 232 (1980) ................................................................................... 7, 8

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) ..................................................................... 20

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 369 (2024) ................................................................................... 12

Page iii – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

*Melendres v. Skinner*,
    113 F.4th 1126 (9th Cir. 2024) ...................................................................... 21

*Mont. Wildlife Fed'n v. Haaland*,
    127 F.4th 1 (9th Cir. 2025) .......................................................................... 13

*New York v. U.S. Dep't of Homeland Sec.*,
    969 F.3d 42 (2d Cir. 2020) .......................................................................... 17

*New York v. U.S. Dep't of Just.*,
    C.A. No. 1:25-cv-00345-MSMPAS, 2025 WL 2618023 (D.R.I. Sept. 10, 2025) ........... 17

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
    465 F.3d 977 (9th Cir. 2006) .................................................................. 7, 8, 9

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ......................................................................................... 7

*Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*,
    400 U.S. 62 (1970) ......................................................................................... 6

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) ...................................................................... 20

*Stone v. City & Cnty. of San Francisco*,
    968 F.2d 850 (9th Cir. 1992) ........................................................................ 21

*Ukiah Valley Med. Ctr. v. F.T.C.*,
    911 F.2d 261 (9th Cir. 1990) .................................................................. 7, 8, 9

*U.S. Army Corps. of Eng'rs v. Hawkes Co., Inc.*,
    578 U.S. 590 (2016) ....................................................................................... 7

*Washington v. Trump*,
    145 F.4th 1013 (9th Cir. 2025) ..................................................................... 17

## STATUTES, RULES, REGULATIONS

7 U.S.C. § 2015(f)(2)(B) ....................................................................................... 3

7 U.S.C. § 2025(c)(3) .................................................................................... 10, 11

8 U.S.C. § 1612(a)(2) .......................................................................................... 4

7 C.F.R. § 275.12(d)(2)(vii) .......................................................................... 10, 11

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

Food Stamp Program: Noncitizen Eligibility, and Certification Provisions of Pub. L. 104-
    193, as Amended by Public Laws 104-208, 105-33 and 105-185,
    65 Fed. Reg. 70,134 (Nov. 21, 2000)................................................................ 16

## OTHER AUTHORITIES

USDA Food & Nutrition Serv., *Supplemental Nutrition Assistance Program: Quality Control*
    *Review Handbook* (2024), https://fns-prod.azureedge.us/sites/default/files/resource-
    files/snap-qc-handbook310-fy25-102924.pdf.................................................... 19

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

## PRELIMINARY STATEMENT

This is a case about the chaos caused by ill-considered and illegal federal agency action that purported to unlawfully eliminate many thousands of immigrants from crucial subsistence benefits. Plaintiffs sued and Defendants backpedaled, conceding Plaintiffs' view of the law is correct and implausibly claiming that they "have always held" that view. Opp'n 2. Following USDA's promulgation of new guidance on December 10, everyone agrees that there is "no dispute between the parties over . . . who is eligible for SNAP benefits and when." *Id.* at 15.

But there remains a crystalized dispute between the Parties over when Defendants may penalize Plaintiff States for any payment errors stemming from the legal changes that were revised via new guidance only two days ago. Defendants maintain that Plaintiffs can be penalized starting November 1, 2025, the day after the erroneous Guidance was issued and five weeks before Defendants, facing this lawsuit, first articulated their new view. Plaintiffs maintain that the 120-day period that the law provides for States to implement changes can only start once that guidance was issued this week, meaning States should not be penalized before April 9, 2026.

Because Plaintiffs are likely to succeed on the merits of their claims and face irreparable harm, and because the balance of equities falls in their favor, the Court should stay the end of the exclusionary period in Plaintiff States through April 9, 2026, and enjoin Defendants from counting any relevant errors against Plaintiff States through that date.

## ARGUMENT

I.    **In Its December 10, 2025 Q&A Document, USDA Concedes the Non-Citizen SNAP Eligibility Issues in Plaintiffs' Favor.**

On December 9, 2025, USDA released a new document titled "Supplemental Nutrition Assistance Program (SNAP) Provisions of the One Big Beautiful Bill—Alien SNAP Eligibility—

Page 1 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

Question and Answer #1" (the "Original Q&A"), which "provides additional information on Section 10108 of the OBBB." Declaration of Leanne Hartmann ("Hartmann Decl.") Ex. A.

On December 10, 2025, USDA released a revised revision of the Q&A, which we refer to here as simply "the Q&A." Hartmann Decl. Ex. B. The December 10 revised version is also labeled as having been issued on December 9, 2025, but was issued on December 10. *See* Hartmann Decl. ¶¶ 2-3. The Q&A referred to throughout Defendants' brief and quoted at length on pages 10-13 of their brief, is the December 10 revised version, not the December 9 Original Q&A. *See* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. (Opp'n), ECF 57 at 10-13. According to USDA, the revision on December 10 was "due to a typo." Q&A 1.

But it was not a typo, it was a substantive revision. The Original Q&A maintained (incorrectly) that Victims of Severe Trafficking, one of the seven categories of "Humanitarian Immigrant Groups" at issue in this case, were subject to the five-year waiting period. In contrast, the now-operative Q&A (correctly) designates them as not subject to the five-year waiting period. *Compare* Original Q&A (Ex. A) at 4 (Victims of Severe Trafficking "Yes" subject to five-year waiting period) *with* Q&A (Ex. B) at 4 (Victims of Severe Trafficking "No" subject to five-year waiting period).

In any event, Defendants' view is that—following the promulgation of the operative December 10 Q&A—there is now "no dispute between the parties over . . . who is eligible for SNAP benefits and when." Opp'n 15. Plaintiffs agree. As detailed below, Defendants have conceded all of the SNAP eligibility issues in this case in Plaintiffs' favor.

### A. USDA Concedes That All Non-Citizens Who Adjust Status to LPR Status Can Be Eligible for SNAP Benefits.

First, Plaintiffs challenged the Guidance as contrary to law and arbitrary and capricious on the basis that it did not follow the statutory command in the FNA, as amended by the OBBB, that

Page 2 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

*all* non-citizens who adjust to lawful permanent resident status can become eligible for SNAP if they meet other statutory requirements. *See* Pls. Mot. in Supp. of Prelim. Inj. ("PI Mot."), ECF 4 at 18-19. Specifically, as Plaintiffs have explained, groups categorized by the Guidance as "Not eligible unless an LPR"[1] and those categorized as "Not eligible"[2] are equally situated. After the passage of the OBBB, members of both groups are ineligible for SNAP, unless they have adjusted to LPR status. *See* 7 U.S.C. § 2015(f)(2)(B). Defendants now concede this point. Q&A 3-4 (listing each of these categories as eligible after adjusting status to become LPRs); Opp'n 16 (USDA "agrees" with Plaintiffs' view that "[r]egardless of the status they once held, any non-citizen who adjusts to LPR status can become eligible for SNAP if they meet other statutory requirements").

### B. USDA Concedes That Humanitarian Immigrant Groups Are Not Subject to PRWORA's Five-Year Waiting Period.

Second, Plaintiffs challenged the Guidance as contrary to law and arbitrary and capricious on the basis that it omitted seven categories of non-citizens (referred to collectively as "Humanitarian Immigrant Groups"[3]) from its list of groups that are exempt from PRWORA's five-year waiting period. *See* PI Mot. 19-21. As Plaintiffs explained, PRWORA and its five-year waiting period were left unchanged by the OBBB. USDA has now conceded as much. Q&A 2 ("OBBB did not make changes to the 5-year waiting period requirement and exceptions, which are established by . . . PRWORA"). The Humanitarian Immigrant Groups—for whom PRWORA

---

[1] Certain American Indians Born Abroad, Hmong or Highland Laotian Tribal Members, Conditional Entrants, Battered Aliens, and Victims of Severe Trafficking and Certain Family Members. Guidance 7, ECF 1-1.

[2] Refugees, Individuals Granted Asylum, Parolees, Certain Afghan Parolees, Certain Ukrainian Refugees, and Deportation Withheld. Guidance 7-8.

[3] "Humanitarian Immigrant Groups" is defined as including the following groups: Refugees, Individuals Granted Asylum, Deportation Withheld, Certain Afghan Parolees, Certain Ukrainian Parolees, Iraqi and Afghan Special Immigrants (SIV), and Victims of Severe Trafficking. PI Mot. 7.

Page 3 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

provides an explicit exception, *see* 8 U.S.C. § 1612(a)(2)(A)-(K), (N)— can all become eligible for SNAP as soon as they adjust to LPR status, without any waiting period. Defendants concede this too. The Q&A concedes that each of these groups is *not* "Subject to 5-year Waiting Period After Adjusted Status to LPR." Q&A 3-4 (listing each category of Humanitarian Immigrant Groups as "No" waiting period column); Opp'n 17-18 ("all parties agree" that the Humanitarian Immigrant Groups, "if adjusted to LPR status, would be eligible for SNAP benefits based on their LPR status (as opposed to their previous, pre-LPR status); and further, that such individuals would be immediately eligible for SNAP benefits based on their original status within one or more of the preceding exempt groups under PRWORA").

### C. Because USDA Has Conceded These Issues, Plaintiffs No Longer Seek an Injunction Preventing Implementation of the Guidance.

Because USDA has conceded the eligibility issues and promulgated new, no-longer-erroneous, Q&As to correct the Guidance, Plaintiffs no longer seek a preliminary injunction that would prohibit Defendants from enforcing the Guidance as to Plaintiff states. *See* PI Mot. 32.

### D. Regardless, the Guidance Was Itself Contrary to Law and Arbitrary and Capricious.

Defendants all but concede the Guidance was contrary to law by having promulgated new guidance that revises the exact points on which the Guidance was erroneous. Though the Court does not need to reach this question to grant Plaintiffs' requested relief, Plaintiffs' view remains that the Guidance was contrary to law and arbitrary and capricious for the reasons explained in their opening brief. PI Mot. 18-23. Defendants, without evidence, accuse Plaintiffs of "misreading the agency's guidance in a disingenuous fashion." Opp'n 1. But Plaintiffs' reading of the Guidance reflects the view of the state agency officials responsible for administering the SNAP program who have devoted decades to public service in this field. The Deputy Director of the Oregon

Page 4 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

Department of Human Services' (ODHS) Self-Sufficiency Programs, for example, attested that "ODHS's understanding is that the Guidance is inconsistent with other laws and regulations regarding SNAP eligibility that we understand to be unchanged by the OBBB," which "has caused significant confusion and administrative difficulties for ODHS." OR-Hoffman Decl., ECF 6 ¶¶ 13, 23; *see also* NY-DeMarco Decl., ECF 5 ¶¶ 24-26; NJ-Adelman Decl., ECF 18 ¶¶ 21-22; CT-Hadler Decl., ECF 8 ¶ 23; DE-Hall Decl., ECF 9 ¶ 22; MA-Cole Decl., ECF 15 ¶ 28; MN-Perry Decl., ECF 17 ¶¶ 19-20; IL-Reagan Decl., ECF 12 ¶ 22; CA-Fernández Garcia Decl. ¶ 17. Indeed, Vermont terminated benefits for some LPR residents because of the Guidance's errors and then had to reverse course and provide benefits to those recipients after USDA sent the Q&A. VT-Tousignant Decl. ¶¶ 18, 21. Moreover, the original December 9 Q&A doubled down on one of the Guidance's original legal errors, only to be corrected the following day, further confirming that the Guidance was erroneous. To the extent the Court needs to reach this issue, Plaintiffs' evidence of the widespread chaos the Guidance caused should weigh in Plaintiffs' favor.

## II.    The Q&A Does Not Change (Or Even Mention) the Exclusionary Period, Over Which the Parties Have a Crystalized Dispute Appropriate for Immediate Resolution.

Although the Q&A concedes Plaintiffs' arguments regarding non-citizen eligibility, nothing in the Q&A modifies the Guidance's directive that the "exclusionary period end date [was] November 1, 2025." Guidance 4. The Q&A does not even mention the exclusionary period.

Plaintiffs maintain that the Guidance's exclusionary period, which ran from July 4 to November 1, 2025, is contrary to law and arbitrary and capricious because "the implementation date," which starts the 120-day clock, "cannot come before USDA issues the implementation guidance that States require in order to implement changes in federal law." PI Mot. 24. Defendants' view is precisely the opposite: "Plaintiffs are wrong to peg the 120-day exclusion period as running

Page 5 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

from time the Guidance was issued" because, in Defendants' view, that period should run from the time "when the eligibility criteria were changed by OBBB itself." Opp'n 19-20.

As detailed below, Plaintiffs are likely to succeed on the merits of their claims regarding the exclusionary period, face irreparable harm, and the equities are in their favor. Accordingly, the Court should order a preliminary injunction on these claims and grant the related relief: a stay in Plaintiff States of the end of the exclusionary period of the Guidance to April 9, 2026, and a corresponding injunction prohibiting Defendants from counting errors stemming from misapplication of changes in Section 10108 of the OBBB to new and ongoing SNAP households prior to April 9, 2026. PI Mot. 32. April 9, 2026, is 120 days after December 10, 2025, the date that USDA finally promulgated accurate guidance regarding the OBBB's changes to SNAP eligibility for non-citizens.

## III.    The Guidance is Final Agency Action.

Defendants argue that the Guidance is not final agency action, because it is an agency interpretation of the OBBB that "adds nothing new to Plaintiffs' regulatory obligations." Opp'n 15.[4] But their arguments rely upon inapposite authority and ignore the plain text of the Guidance, which (in addition to erroneously setting forth eligibility requirements) instructed that States would be held accountable for any case processing errors stemming from the new Guidance, effective the next day.

---

[4] Defendants do not argue that the Guidance was not "the 'consummation' of the agency's decision-making process," but instead focus their arguments on *Bennett v. Spears'* second factor, whether the agency action is "'one by which 'rights or obligations have been determined', or from which 'legal consequences will flow.'" 520 U.S. 154, 177-78 (1997). (citing *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948) and *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970).

Page 6 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

Defendants argue that, as a matter of law, the Guidance was an interpretive rule and that interpretative rules are not final agency action. But the Supreme Court has recently "affirm[ed] that interpretive rules can be final." *Cal. Cmtys. Against Toxics v. E.P.A.*, 934 F.3d 627, 635 (D.C. Cir. 2019) (citing *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015)). Thus, "the test for finality is independent of the analysis for whether an agency action is a legislative rule rather than an interpretive rule." *Id.* For example, in *Perez v. Mortgage Bankers Association*, the Court specifically stated that an "interpretive rule" is subject to "a variety of constraints on agency decisionmaking—the arbitrary and capricious standard being the most notable." 575 U.S. at 105-06. And the Court reaffirmed this principle again in *U.S. Army Corps. of Engineers v. Hawkes Co., Inc.*, explaining that, in a prior case, an order that gave "notice of how [an agency] interpreted the relevant statute, and would have effect only if and when a particular action was brought against a particular [regulated entity]" was final agency action because it warned entities that they violated the notice "at the risk of incurring criminal penalties." 578 U.S. 590, 599-600 (2016) (citation modified) (citing *Frozen Food Express v. United States*, 351 U.S. 40, 44-45 (1956)). Defendants suggest otherwise only by citing a line of D.C. Circuit cases that preceded *Perez*, *Hawkes*, and the D.C. Circuit's subsequent clarification of the law on this precise point.

Consistent with the Supreme Court's holdings, in the Ninth Circuit there are "several avenues for meeting" the requirement that the agency action "is one by which rights *or* obligations have been determined, *or* from which legal consequences will flow.'" *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 986 (9th Cir. 2006) (emphasis in original; citations omitted). An agency action need not "alter[] an agency's legal regime" to be reviewable; instead "an agency action may be final if it has a direct and immediate effect on the day-to-day business of the subject party." *Id.* at 987 (quoting *Ukiah Valley Med. Ctr. v. F.T.C.*, 911 F.2d 261, 264 (9th Cir. 1990) and *F.T.C. v.*

Page 7 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

*Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980)) (citation modified). Courts "consider whether the action has the status of law or comparable legal force, and whether immediate compliance with its terms is expected." *Id.*

As the record before the Court shows, the Guidance had "a direct and immediate effect" on the States' administration of their SNAP programs. *Oregon Nat. Desert Ass'n*, 465 F.3d at 986. The Guidance instructed States for the first time that OBBB's changes must be applied only during initial certification or recertification, and did not require a full review of all SNAP households immediately. Guidance 3. As a result, some States had to suspend processes they had already begun. IL-Reagan Decl. ¶¶ 20-21; WA-Reyes Decl., ECF 22 ¶ 26. In Oregon, the Guidance required the State to manually determine eligibility of applicants, while the computer system that determines eligibility was being reprogrammed. OR- Hoffman Decl. ¶ 25. Similarly, in Delaware, the State began instituting "workarounds" to manually force the state computer system to comply with the new and unexpected rules in the Guidance. DE-Hall Decl. ¶ 25. In many States, implementing the Guidance meant that the State had to begin updating their eligibility computer systems, which can take many months. *See, e.g.,* MN-Perry Decl. ¶ 22.

Moreover, Defendants' assertion that the Guidance's chart was not meant to be "exhaustive" but "merely flag[] the most common exceptions to the general rule," Opp'n 18, defies logic and a common sense reading of the document. The details matter for State agencies required to comply with the law for every type of non-citizen who applies for SNAP, so for the Guidance chart to omit key groups who are exempt from the five-year waiting requirement, for example, defeats the purpose of a "quick reference guide." *Id.* States interpreted the Guidance as establishing eligibility criteria based on an incorrect interpretation of the OBBB and PRWORA, but which they were nonetheless required to follow. *See infra,* Section V. Colorado decided to move forward

Page 8 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

implementing the Guidance but had "strong concerns" about significant financial costs that they would incur to implement "further technical fixes, training, and guidance for counties" once the Guidance was corrected. CO-McClelland Decl., ECF 7 ¶ 19. Vermont also implemented the Guidance and "terminated benefits for some Lawful Permanent Residents" who should have been eligible under the OBBB. VT-Tousignant Decl. ¶ 18. These are all instances of the "direct and immediate effect" that the Guidance had on States' day-to-day operations.

Nor can there be any doubt that the USDA "expected" "immediate compliance with" the Guidance. *Or. Nat. Desert Ass'n*, at 987 (quoting *Ukiah Valley Med. Ctr.* at 264). It says as much: "State agencies must immediately apply the new eligibility criteria to new applicants at initial certification." Guidance 4. The Guidance "gave states less than 24 hours from the time it was issued to the time that states would be held accountable for any case processing errors as a result of these policy changes," with potentially catastrophic results for States. NY-DeMarco Decl. ¶ 19.

## IV. Plaintiffs Are Likely to Succeed on the Merits of Their Claim That the Guidance's Exclusionary Period Is Contrary to Law (Count III).

To be clear: Plaintiff States do not dispute that the OBBB became effective on July 4, 2025 and that they needed to do their best to begin implementing OBBB's eligibility changes from that date. Rather, they object to the Defendants' decision to start counting payment errors stemming from the changes in federal law prior to 120 days after the issuance of legally correct implementing guidance, with no meaningful notice and, in fact, months of assurances from USDA that guidance was forthcoming. Defendants misread their own regulations and ignore a key provision of the SNAP statute, all to argue that the "effective date" of the OBBB and the "required implementation date" of the Guidance are one and the same. The result? Under Defendants' reading of the law, States would be penalized for any payment error stemming from implementation of a new statute after 120 days, even where (as here) USDA has repeatedly told States it would issue implementing

Page 9 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

guidance, directed them to wait to implement changes until that guidance clarified things, issued legally incorrect guidance that for the first time declared a months-earlier implementation date, and then twice-issued additional follow-ups to that guidance to render it legally compliant.

Defendants fail to grapple with the fundamental absurdity of their position. Here, they declared on October 31 that the exclusionary period had started 120 days earlier, notifying States for the first time that they had, unknowingly, already used 119 of their 120 days provided by the law to come into compliance.[5] But worse, as Plaintiffs explained and Defendants fail to contest, Defendants' interpretation of 7 USC § 2025(c)(3)(A) and 7 C.F.R. § 275.12(d)(2)(vii) renders the exclusionary period meaningless. Based on USDA's view, there is nothing to stop the agency from suddenly announcing that an exclusionary period had both started and ended months or even years earlier. *See* PI Mot. 27. The Guidance's interpretation of the 120-day exclusionary rule is contrary to both the FNA and USDA's own regulations.

Starting with the statute: Defendants omit any discussion of the second part of the FNA's exclusionary rule, focusing instead on 7 U.S.C. § 2025(c)(3)(A). But as Plaintiff States argued in their opening brief, PI Mot. 26, a separate statutory provision exempts "[e]rrors resulting . . . from actions based on policy information approved or disseminated, in writing, by the Secretary or the Secretary's designee," from being included in the payment error rate. 7 U.S.C. § 2025(c)(3)(B).

---

[5] On August 29, 2025, USDA released guidance relating to implementation of a *different* section of the OBBB, Section 10103 on energy assistance payments. This guidance stated USDA's position that the 120-day exclusionary period for that section of the OBBB began on July 4 and ended on November 1, 2025. Following the August 29 guidance, some States predicted that USDA would implement the same exclusionary period as to other changes from the OBBB, including Section 10108 at issue in this case. *See, e.g.*, MA-Cole Decl. ¶ 23. Other states waited, relying on USDA's statement that guidance would be "forthcoming" for Section 10108. *See, e.g.,* WI-Standridge Decl., ECF 23 ¶¶ 18-19. But the first time USDA specifically stated its view that the 120-day exclusionary period for Section 10108 ended on November 1, 2025 was in the Guidance (which was issued the day before, on October 31).

Page 10 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

Defendants' position, which would punish States for payment errors *resulting from* the Guidance during the period when that Guidance alone was operative—i.e., before the issuance of the Q&As— is contrary to this provision.

Defendants next argue that the "required implementation date" is the same as a statute's effective date. But the statute and the regulations do *not* automatically make the starting date of the exclusionary period the same as a statute's or regulations' effective date. Congress made the choice to distinguish "required implementation date" from effective date, and that choice should be given meaning. *See* 7 U.S.C. § 2025(c)(3)(A); 7 C.F.R. § 275.12(d)(2)(vii). And Congress's choice makes sense: an Agency may reasonably designate an implementation date used for the purposes of imposition of penalties that is different than the effective date. It is also, as Plaintiffs explained and Defendants fail to rebut, the only reading consistent with the text of the regulation, in which the "implementation date" refers back to an "implementing memorandum of a mandatory or optional change in Federal law." *See* PI Mot. 25. Defendants fail to offer *any* contrary textual argument of the regulation.

Defendants also argue that, because the Guidance "simply summarized the statutory changes" and did not have any legal effect, the only changes came from the OBBB, which is why the exclusionary period started on the OBBB's effective date. Opp'n 19. This argument is flawed for two reasons. First, it ignores the fact that Defendants did not designate the "required implementation date" as July 4, 2025, until October 31, 2025, 119 days later. If USDA wanted the implementation date to be on July 4, it needed to say so *then*. Second, Defendants concede that their argument rests on their flawed understanding of what the Guidance did. *Id.* at 19 ("If, as Plaintiffs alleged, the Guidance itself changed eligibility requirements for SNAP beneficiaries, Plaintiffs would be in a stronger position to argue that the 120-day exclusion period should run

Page 11 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

from the date of the Guidance."). But the Guidance was different from the OBBB and did provide new information, as detailed *supra*, Section III. Defendants further fail to contend with Plaintiffs' points that their reading is consistent with the regulatory scheme, PI Mot. 25-2; that it is necessary given that both statutory and regulatory changes in this field are complex, *id.* at 26; and that it provides critical nationwide uniformity, *id*.

Far from being "absurd," Opp'n 20, the 120-day exclusionary period ensures that the USDA gives States the tools they need to fully implement changes in federal law before the agency begins counting payment errors—a requirement of both the statute and the regulation. Defendants' argument would force state agencies into an untenable position. Guidance administered by USDA instructs state agencies how to act upon nuanced and complex statutory language. An alternative system, wherein state agencies would risk billions of dollars by not immediately fully implementing statutory language absent USDA guidance, would force state agencies to parse through hundreds of pages of legislation to guess at how USDA will interpret the practical ramifications of a statute. That is why Defendants "[c]oncede[]" that under similar circumstances, USDA used a 120-day variance period starting from guidance implementing a statute that (like the OBBB) changed certain non-citizen eligibility requirements for SNAP. *Id.* at 22. Defendants' argument that the "Defendant could effectively veto any of Congress' statutory changes to SNAP eligibility," *id.* at 20, rests upon an assumption that States would not try to follow federal law even in the absence of Guidance and ignores all other enforcement mechanisms at the agency's disposal.[6]

---

[6] Defendants' defense of their failure to consider reliance interest, relegated to a footnote, *see* Opp'n 21 n.4, is spurious. *Loper Bright Enterprise v. Raimondo*, 603 U.S. 369 (2024), had nothing

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

## V.    Plaintiffs Are Likely to Succeed on the Merits of Their Claim That the Guidance's Exclusionary Period Is Arbitrary and Capricious (Count IV).

Defendants argue that the Guidance's exclusionary period is not arbitrary and capricious[7] for two reasons: (1) that the Guidance did not back-date compliance because it did not alter or create new eligibility criteria, and (2) that Plaintiffs' explanation of USDA's historical practice is incorrect. Opp'n 21-22. On both counts, Defendants' arguments strain credibility in the face of the unrebutted evidentiary record.

First, the Guidance's exclusionary period is arbitrary and capricious because it provided no "reasoned explanation" for its decision to hold States responsible for payment errors within 24 hours of its issuance, when it knew that States were awaiting its guidance and it would be impossible for States to immediately come into compliance. _Mont. Wildlife Fed'n v. Haaland_, 127 F.4th 1, 36 (9th Cir. 2025). Contrary to Defendants' assertions that the Guidance "did not alter or create new eligibility criteria," Opp'n 21, all Plaintiff States understood the Guidance to contradict the text of PRWORA and the OBBB. _See_ CO-McLelland Decl. ¶ 23; CT-Hadler Decl. ¶¶ 23, 26; DC-Campbell Decl., ECF 10 ¶¶ 12, 17; DE-Hall Decl. ¶¶ 13, 26; IL-Reagan Decl. ¶ 15; HI-Morishige Decl., ECF 11, ¶ 12; MA-Cole Decl. ¶ 19; MD-Lopez Decl., ECF 14 ¶¶ 16, 33; ME-

---

to do with arbitrary and capricious review. And Defendants' suggestion that statutory meaning trumps the requirement to consider reliance is incompatible with what the Supreme Court actually held in _Regents_: that the agency's conclusion that DACA was "illegal" and "must cease immediately" did not excuse it from the obligation to consider "reliance interests" or weigh alternative means of accommodating those interests. _Dep't of Homeland Sec. v. Regents of the Univ. of Cal._, 591 U.S. 1, 33 (2020). The decision cited by Defendants concurring in the judgment did not carry the day. _See_ Opp'n 21 n.4 (citing _Regents_, 591 U.S. at 60 (Thomas, J., concurring in the judgment)).

[7] Defendants also misstate the standard for arbitrary and capricious review, contending that the agency's decision is "presumed valid," which is incorrect. This misreads _Citizens to Pres. Overton Park v. Volpe_, 401 U.S. 402, 415 (1971). Opp'n 20. In _Overton Park_, the Court described the "presumption" that the Government behaves with "regularity," a concept that is not an element of arbitrary and capricious review.

Page 13 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

Yaffe Decl., ECF 13 ¶¶ 18, 20; MI-Frisch Decl., ECF 16 ¶ 23; MN-Perry Decl. ¶¶ 12-13; NC-Hogan Decl., ECF 20 ¶¶ 16, 26; NJ-Adelman Decl. ¶¶ 21-22; NM-Armijo Decl., ECF 19 ¶ 39; NY-DeMarco Decl. ¶ 30; OR-Hoffman Decl. ¶ 28; RI-Merolla-Brito Decl., ECF 21 ¶ 24; WA-Reyes Decl. ¶¶ 16, 34; WI-Standridge Decl. ¶ 23; CA-Fernández Garcia Decl. ¶ 17; VT-Tousignant Decl. ¶ 17. Knowing that it is USDA's interpretation that ultimately governs calculations of their payment error rate, *see, e.g.*, MA-Cole Decl. ¶ 33, States could not proceed to comply with either the OBBB or the Guidance without violating one or the other.

Furthermore, as explained *supra*, Section III, the Guidance provided new mandates for States to follow that were not self-evident from the OBBB, including the exclusionary period itself. Although the OBBB changed SNAP eligibility requirements under law, it did not itself tell States at what stage in a case to apply its changes. In the absence of guidance, some States began to apply the OBBB's changes to every SNAP household until the Guidance instructed States to apply them at initial certification or recertification only. *See* IL-Reagan Decl. ¶¶ 20-21; WA-Reyes Decl. ¶ 26. To give States only 24 hours to effectuate these changes in line with the Guidance's instructions is arbitrary and capricious.

The evidentiary record established by Plaintiffs, and unrebutted by Defendants, describes a consistent pattern of reliance, confusion, and chaos engendered by USDA's instructions leading up to issuance of the Guidance and up until December 10, 2025. First, Plaintiff States began in good faith the complex process of implementing OBBB's changes to non-citizen eligibility for SNAP shortly after the OBBB was passed on July 4, 2025. *See, e.g.*, CO-McLelland Decl. ¶ 17; DC-Campbell Decl. ¶ 13; DE-Hall Decl. ¶ 20; IL-Reagan Decl. ¶ 20; MA-Cole Decl. ¶¶ 22-26; MD-Lopez Decl. ¶ 21; ME-Yaffe Decl. ¶¶ 17, 23; NM-Armijo Decl. ¶ 24; OR-Hoffman Decl. ¶¶ 17, 20; WA-Reyes Decl. ¶ 23. However, because (as Defendants acknowledge) "the entire

Page 14 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

statutory framework is quite complicated," Opp'n 18, State agencies repeatedly reached out to USDA for assistance and guidance but either received no response or were told that guidance was forthcoming. DE-Hall Decl. ¶ 20; HI-Morishige Decl. ¶ 21; MA-Cole Decl. ¶¶ 14-17; MD-Lopez Decl. ¶¶ 22-24; MI-Frisch Decl. ¶ 18; NY-DeMarco Decl. ¶ 20; RI-Merolla-Brito Decl. ¶ 18; WA-Reyes Decl. ¶¶ 12-14. Indeed, USDA affirmatively instructed Massachusetts' benefits agency to wait to implement the OBBB changes until USDA provided guidance. MA-Cole Decl. ¶ 14. That guidance did not come until October 31, 2025, and its many errors and ambiguities threw States into further confusion as they struggled to reconcile USDA's Guidance—which they understand may be used to measure compliance—and the statutory text. *See, e.g.* MA-Cole ¶¶ 31-33 (noting that the Guidance was "incomplete and contradictory to the language of the OBBB in many noncitizen categories, increasing the likelihood that eligibility decisions may be calculated in error under USDA-FNS's interpretation of OBBB," since it is the "implementing memorandum" that governs Quality Control review); NY-DeMarco Decl. ¶ 25. Plaintiffs each attested to requiring further clarification from USDA to implement the complex system changes implicated by the Guidance and the OBBB and avoid incurring additional costs. *See, e.g.*, CT-Hadler Decl. ¶ 22; DC-Campbell Decl. ¶¶ 11-12; DE-Hall Decl. ¶ 21; HI-Morishige Decl. ¶ 22; IL-Reagan Decl. ¶ 22; MA-Cole Decl. ¶ 28; MD-Lopez Decl. ¶ 31; ME-Yaffe Decl. ¶¶ 20-21; MN-Perry Decl. ¶¶ 20-22, 24; NC-Hogan Decl. ¶¶ 22-23; NJ-Adelman Decl. ¶¶ 36-37; NY-DeMarco Decl. ¶¶ 25-27; OR-Hoffman Decl. ¶¶ 21-23.

Following the issuance of the Guidance, Plaintiffs asked for clarification and received no adequate response. HI-Morishige Decl. ¶ 21; *see also* IL-Reagan Decl. ¶¶ 16-17. Plaintiffs sent USDA a letter on November 19, 2025, describing all the issues raised in the Complaint and requesting a response by November 24, 2025. ECF 1-2. Having received no response, Plaintiffs

Page 15 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

filed the Complaint on November 26, 2025. It was not until December 10, 2025—the day that Defendants' opposition brief was due—that USDA furnished the Q&A document correcting the errors in the Guidance and responding to the issues that Plaintiffs had raised. Hartmann Decl. ¶ 3. It was therefore 40 days *after* the expiration of the exclusionary period that Plaintiffs received a response to the questions raised and further explanation of the changes required.

Second, Defendants argue that Plaintiffs' "mere two examples" fail to establish that USDA's longstanding practice before the OBBB was to begin the exclusionary period after issuance of explanatory guidance. Opp'n 22. But Defendants only provide one counter-example from 25 years ago, *id.*, a final rule—not implementing guidance—whose requirements were in fact effective five years after the statute was enacted, not before. Food Stamp Program: Noncitizen Eligibility, and Certification Provisions of Pub. L. 104-193, as Amended by Public Laws 104-208, 105-33 and 105-185, 65 Fed. Reg. 70,134 (Nov. 21, 2000) (listing the "Effective Date" for the final rule as January 20, 2001). Plaintiff States' agency declarations further establish the history and practice relied upon by Plaintiff States and explained in their opening brief, PI Mot. 25. *See, e.g.*, NJ-Adelman Decl. ¶¶ 29, 34 ("Historically, this exclusionary period has begun to run at the time new Guidance is issued"); NY-DeMarco Decl. ¶ 22; OR-Hoffman Decl. ¶ 18. Defendants did not provide any evidence to support its view that State agency officials' many decades of experience was incorrect.

## VI.    Plaintiffs Face Irreparable Harm Absent Preliminary Relief.

Plaintiffs' extensive factual record details the harms to Plaintiff States caused by the Guidance. Defendants claim that Plaintiffs States could not face irreparable harm because "[t]he parties do not disagree on eligibility for benefits" and because any penalties would not be "imminent." Opp'n 23. But the Plaintiffs' evidentiary record is entirely unrebutted, and

Page 16 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

Defendants' arguments disregard the real and serious harm that their actions will continue to impose on Plaintiffs absent preliminary relief.

First, Defendants ignore the extensive evidence of the compliance costs Plaintiff States will have to take. *Compare* PI Mot. 29-30 (describing with specificity compliance costs as irreparable harm) *with* Opp'n 22-24 (failing to mention compliance costs). Defendants do not (and could not) dispute that Courts have found compliance costs like these to be irreparable harm, including on extremely similar facts regarding administrative costs associated with changes to non-citizen eligibility for federal public benefits. *See Washington v. Trump*, 145 F.4th 1013, 1036-37 (9th Cir. 2025); *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020); *New York v. U.S. Dep't of Just.*, C.A. No. 1:25-cv-00345-MSM-PAS, 2025 WL 2618023, at *22 (D.R.I. Sept. 10, 2025); *California v. Trump*, 786 F. Supp. 3d 359, 389 (D. Mass. 2025).

The crux of the issue is this: Plaintiff States face harm in the form of heightened compliance costs if they have to scramble *now* to implement the Q&A as soon as possible in the shadow of the potentially catastrophic payment error rate penalties. *See, e.g.*, CA-Fernández Garcia Decl. ¶¶ 18, 20. But Plaintiffs' requested injunction and stay would ameliorate those harms by allowing the States to implement the recently-clarified eligibility standards in an ordered manner over the 120-day period prescribed by statute and regulation. These compliance costs constitute a "*present . . . risk of likely irreparable harm.*" Opp'n 23 (emphasis added) (quoting *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011)).

Plaintiffs' evidence is clear about the many costly steps that Plaintiffs must take to implement any changes to SNAP eligibility, including: creating new intake procedures and forms, contacting potentially eligible households, re-programming their computer systems, creating manual workarounds, re-training their staff, reaching out to the public, defend additional

Page 17 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

administrative hearings, and updating their State regulations and guidance. *See* PI Mot. 12-13 (detailing these steps with citations to declarations). Each of these steps is costlier if taken without the considered period provided for States to roll-out the changes—scrambling to take them quickly is likely to result in mistakes, corrections, and a risk of legal challenges, all of which are costly. Further, any corrections or changes are likely to erode public trust and chill participation in SNAP, further harms to Plaintiff States. *See id.* at 30-31; VT-Tousignant Decl. ¶¶ 26-27.

Second, Defendants brush off the catastrophic penalties Plaintiff States face due to the OBBB's imposition of new payment error rate penalties as insufficiently "imminent." *See* Opp'n 23. But this misses the point. Because the stakes of those error rate calculations are so high, Plaintiff States must take every possible step to reduce payment errors *now*—in other words, each of Plaintiff States' actions today stands in the shadow of the possible future penalties. *See City & Cnty. of San Francisco v. Trump (SF I)*, 897 F.3d 1225, 1244 (9th Cir. 2018); *City & Cnty. of San Francisco v. Trump (SF II)*, 783 F. Supp. 3d 1148, 1202 (N.D. Cal. 2025).[8] Even a small increase in a State's payment error rate could cost it hundreds of millions of dollars under the OBBB's new cost-sharing penalties. For example, Washington estimated that their error rate will increase by 0.41% as a result of implementing the OBBB and the Guidance, which would be enough to raise their error rate beyond 10%, and double their expected cost-sharing penalty from $100 million to $200 million. WA-Reyes Decl. ¶ 33. And the "uncertainty" that States face with respect to future error rate penalties has significant consequences *now* in that it "makes budgeting and other

---

[8] Defendants' assertion that because non-citizens account for only 4.4% of total SNAP participants, their eligibility is unlikely to affect error rates, is erroneous. *See* Opp'n 23-24. Each State uses approximately 1,200 cases per year to calculate their error rates—totaling over 25,000 cases for all Plaintiff States, a sample that is likely to include over 1,000 noncitizens. *See* NJ-Adelman Decl. ¶ 31 (explaining mechanics of the sampling).

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

planning more difficult," another current harm. CA-Fernández Garcia Decl. ¶ 20; *see also* *SF II*, *783 F. Supp. 3d at 1202* (finding "present and future budgetary uncertainty, which is wreaking havoc on [local governments'] budgetary planning process" constitutes irreparable harm).

Third, in arguing that "States will never suffer any harm . . . based on any alleged difference in eligibility," Defendants sweep aside the mess they created in the period from November 1 to December 10, when the non-citizen eligibility standards were thrown into chaos by the erroneous guidance, leading to a heightened risk of payment errors. Yet, Defendants seek to impose penalties on states for that period. They suggest that Plaintiffs should now go make "corrections" to avoid potential harm. Opp'n 23.[9] But any effort by Plaintiff States to systematically correct the spiraling consequences of the erroneous Guidance would take resources away from Plaintiffs States, whose staff have "significant other pressing responsibilities" to effectuate the provision of SNAP benefits within their States. *See, e.g.*, NJ-Adelman Decl. ¶ 28; *cf.* ME-Yaffe Decl. ¶¶ 17-18, 21 (describing Maine spending over 1,250 hours in manual review). For the same reason, Plaintiffs would be harmed if, per Defendants' suggestion, they would need to expend significant resources administratively appealing inflated payment error rate determinations. *See* Opp'n 23.

To be sure, Defendants' concession to Plaintiffs' view of the law ameliorates, prospectively, certain of the harms Plaintiffs previously faced: most obviously, States will no longer face

---

[9] To the extent Defendants suggest that Plaintiff States may, after cases have been selected in the quality control process, correct errors in those cases until 115 days after the close of the fiscal year without those errors counting towards the States' payment error rate, *see* Opp'n 23, USDA appears to prohibit States from doing so. *See* USDA Food & Nutrition Serv., *Supplemental Nutrition Assistance Program: Quality Control Review Handbook* 1-16 (2024) ("unacceptable actions" in the quality control process include "[t]he State or local agency adding documentation to, removing documentation from, and/or altering documentation from the official record of a sampled case"), https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-qc-handbook310-fy25-102924.pdf.

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

significant out-of-pocket costs to provide State benefits to thousands of non-citizens whom the Guidance wrongly excluded from SNAP, *see* PI Mot. 29. But the other harms remain, and so a preliminary injunction is warranted.

**VII.    The Balance of the Equities and Public Interest Favor an Injunction.**

Plaintiff States have introduced evidence of serious harms that they will suffer if interim relief is not awarded. Here, where the "government provides . . . no evidence that it would be harmed . . . other than its assertion that the order enjoins 'presumptively lawful' government activity," the balance of equities favors entry of an injunction. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). And none of the relief Plaintiffs seek would "disrupt the USDA's efforts to comply with the OBBB and to correctly interpret OBBBE [sic] plain text," *see* Opp'n 24, since (as Defendants point out, repeatedly) all Parties now agree on the correct interpretation of the law.

Defendants ask this Court to require a bond but do not explain why a bond is needed or how it should be calculated. *Id*. "Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'" *Jorgensen v. Cassidy*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original) (quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). Here, where Defendants "offer[] no explanation" of how they are harmed by an injunction and where they have introduced no evidence of harm, the Court should not require Plaintiff States to post a bond. *SF II*, 783 F. Supp. 3d at 1203.

**VIII.    Plaintiffs' Requested Preliminary Relief, Narrowed Due to Defendants' Concessions, Is Appropriate.**

Plaintiffs' motion sought three forms of preliminary injunctive relief. But, as noted above, because USDA has now conceded all eligibility issues, Plaintiffs no longer seek an injunction that would prohibit Defendants from wholesale enforcing the Guidance as to Plaintiff States. Plaintiffs now seek the following: (1) a stay in Plaintiff States of the end of the exclusionary period of the

Page 20 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

Guidance to April 9, 2026; and (2) a corresponding injunction prohibiting Defendants from counting errors stemming from misapplication of changes in Section 10108 of the OBBB to new and ongoing SNAP households prior to April 9, 2026. PI Mot. 32. Both of these forms of relief are narrowly tailored to Plaintiffs' harms which stems from the prospect of being penalized for errors between November 1, 2025 and April 9, 2026, the period in dispute. This relief is a straightforwardly appropriate remedy for Counts III and IV, which challenge Defendants' application of the exclusionary period.

In the alternative, if the Court does not want to reach the likelihood of success on the merits on Counts III and IV, Plaintiffs submit that this relief is an equally appropriate remedy for Counts I and II, which challenge the substantive eligibility problems with the Guidance. Plaintiffs' evidence shows that, as a factual matter, the Guidance caused chaos for Plaintiff States' agencies, resulting in uncertainty regarding eligibility requirements and heightened compliance costs. Defendants' view of eligibility became clear only on December 10, with the issuance of the Q&As. The Court, exercising its "highly contextual and fact dependent" power "to fashion equitable remedies," should find that Plaintiffs' requested stay and injunction are necessary to remedy the harms caused to Plaintiff States from the Guidance's erroneous eligibility standard. *See Melendres v. Skinner*, 113 F.4th 1126, 1133 (9th Cir. 2024) (quoting *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992), *as amended on denial of reh'g* (Aug. 25, 1992)).

## CONCLUSION

For the foregoing reasons, Plaintiff States respectfully request that the Court stay in Plaintiff States the end of the exclusionary period for the Guidance through April 9, 2026 and that

Page 21 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

Defendants be enjoined from counting errors stemming from OBBB Section 10108's changes to non-citizen eligibility against Plaintiff States' error rates through April 9, 2026.

Dated: December 12, 2025

Respectfully submitted,

| | |
|---|---|
| **LETITIA JAMES**<br>Attorney General for the State of New York<br><br>By: _s/ Molly Thomas-Jensen_<br>Molly Thomas-Jensen<br>Jessica Ranucci<br>_Special Counsel_<br>Rabia Muqaddam<br>_Chief Counsel for Federal Initiatives_<br>Gina Bull<br>_Assistant Attorney General_<br>28 Liberty St.<br>New York, NY 10005<br>(212) 416-8679<br>molly.thomas-jensen@ag.ny.gov<br>jessica.ranucci@ag.ny.gov<br>rabia.muqaddam@ag.ny.gov<br>gina.bull@ag.ny.gov<br><br>_Counsel for the State of New York_ | **DAN RAYFIELD**<br>Attorney General for the State of Oregon<br><br>By: _s/ Leanne Hartmann_<br>Leanne Hartmann #257503<br>Brian Simmonds Marshall #196129<br>Kirsten Naito # 114684<br>_Senior Assistant Attorneys General_<br>Sara Del Rubin #232414<br>Derek Olson #225504<br>_Assistant Attorneys General_<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, OR 97201<br>Telephone: (971) 673-1880<br>Fax: (971) 673-5000<br>Leanne.Hartmann@doj.oregon.gov<br>Brian.S.Marshall@doj.oregon.gov<br>Kirsten.M.Naito@doj.oregon.gov<br>Sara.DelRubin@doj.oregon.gov<br>Derek.Olson@doj.oregon.gov<br><br>_Counsel for the State of Oregon_ |

Department of Justice<br>100 SW Market Street<br>Portland, OR 97201<br>9716731880 / Fax: 9716735000

| | |
|---|---|
| **ROB BONTA**<br>Attorney General for the State of California<br><br>By: *s/ Robin L. Goldfaden*<br>Robin L. Goldfaden<br>*Supervising Deputy Attorney General*<br>Michael L. Newman<br>Neli N. Palma<br>*Senior Assistant Attorneys General*<br>Marissa Malouff<br>Kathleen Boergers<br>*Supervising Deputy Attorneys General*<br>California Attorney General's Office<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102<br>(415) 510-3543<br>Robin.Goldfaden@doj.ca.gov<br><br>*Counsel for the State of California* | **PHILIP J. WEISER**<br>Attorney General of Colorado<br><br>By: *s/ Tanja E. Wheeler*<br>Tanja E. Wheeler<br>*Associate Chief Deputy Attorney General*<br>David Moskowitz<br>*Deputy Solicitor General*<br>Colorado Department of Law<br>1300 Broadway, 10th Floor<br>Denver, CO 80203<br>Phone: (720) 508-6000<br>Tanja.wheeler@coag.gov<br>David.moskowitz@coag.gov<br><br>*Counsel for Plaintiff State of Colorado* |
| **WILLIAM TONG**<br>Attorney General of Connecticut<br><br>By: *s/ Patricia E. McCooey*<br>Patricia E. McCooey<br>*Assistant Attorney General*<br>165 Capitol Ave<br>Hartford, CT 06106<br>(860) 808-5210<br>Patricia.McCooey@ct.gov<br><br>*Counsel for Plaintiff State of Connecticut* | **KATHLEEN JENNINGS**<br>Attorney General of the State of Delaware<br><br>By: *s/ Vanessa L. Kassab*<br>Ian R. Liston<br>*Director of Impact Litigation*<br>Vanessa L. Kassab<br>*Deputy Attorney General*<br>Rose E. Gibson<br>*Assistant Attorney General*<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 683-8899<br>vanessa.kassab@delaware.gov<br><br>*Counsel for Plaintiff State of Delaware* |

Page 23 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

| | |
|---|---|
| **BRIAN L. SCHWALB**<br>Attorney General for the District of Columbia<br><br>By: _s/ Mitchell P. Reich_<br>Mitchell P. Reich<br>_Senior Counsel to the Attorney General_<br>Office of the Attorney General for the District of Columbia<br>400 Sixth Street, NW<br>Washington, D.C. 20001<br>(202) 279-1261<br>mitchell.reich@dc.gov<br><br>_Counsel for the District of Columbia_ | **ANNE E. LOPEZ**<br>Attorney General for the State of Hawaiʻi<br><br>By: _s/ Kalikoʻonālani D. Fernandes_<br>David D. Day<br>_Special Assistant to the Attorney General_<br>Kalikoʻonālani D. Fernandes<br>_Solicitor General_<br>425 Queen Street<br>Honolulu, HI 96813<br>(808) 586-1360<br>kaliko.d.fernandes@hawaii.gov<br><br>_Counsel for the State of Hawaiʻi_ |
| **KWAME RAOUL**<br>Attorney General of Illinois<br><br>By: _s/ Katharine Roller_<br>Katharine Roller<br>_Complex Litigation Counsel_<br>Alice L. Riechers<br>_Assistant Attorney General_<br>115 S. LaSalle St.,<br>Chicago, Illinois 60603<br>(773) 519-1842<br>Katharine.Roller@ilag.gov<br><br>_Counsel for Plaintiff State of Illinois_ | **AARON M. FREY**<br>Attorney General for the State of Maine<br><br>By: _s/ Brendan Kreckel_<br>Brendan Kreckel<br>By: _s/ Kristin Trabucchi_<br>Kristin Trabucchi<br>_Assistant Attorneys General_<br>Office of the Attorney General<br>6 State House Station<br>Augusta, ME 04333-0006<br>Tel.: 207-626-8800<br>Fax: 207-287-3145<br>Brendan.kreckel@maine.gov<br>kristin.k.trabucchi@maine.gov<br><br>_Counsel for the State of Maine_ |

Page 24 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

**ANTHONY G. BROWN**
Attorney General of Maryland

By: *s/ Yasmin Dagne*
Yasmin Dagne
*Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-223-1580
ydagne@oag.state.md.us

*Counsel for Plaintiff State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: *s/ Michelle Pascucci*
Katherine Dirks
*Chief State Trial Counsel*
Michelle Pascucci
*State Trial Counsel*
Jak Kundl
*Assistant Attorney General*
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
(617) 963-2255
Michelle.Pascucci@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**DANA NESSEL**
Attorney General of Michigan

By: *s/ Daniel Ping*
Daniel Ping
Neil Giovanatti
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
PingD@michigan.gov
GiovanattiN@michigan.gov

*Counsel for the State of Michigan*

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: *s/ Joseph R. Richie*
Joseph R. Richie
*Special Counsel*
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-0921
joseph.richie@ag.state.mn.us

*Counsel for the State of Minnesota*

Page 25 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

| | |
|---|---|
| **AARON D. FORD**<br>Attorney General of Nevada<br><br>By: _s/ K. Brunetti Ireland_<br>K. Brunetti Ireland<br>_Chief of Special Litigation_<br>Office of the Nevada Attorney General<br>1 State of Nevada Way, Ste. 100<br>Las Vegas, NV 89119<br>kireland@ag.nv.gov<br><br>_Counsel for the State of Nevada_ | **MATTHEW J. PLATKIN**<br>Attorney General of New Jersey<br><br>By: _s/ Kashif T. Chand_<br>Kashif T. Chand<br>_Assistant Attorney General_<br>New Jersey Office of the Attorney General,<br>Division of Law<br>124 Halsey Street, 5th Floor<br>Newark, NJ 07101<br>Tel: (973) 648-2052<br>Kashif.Chand@law.njoag.gov<br><br>_Counsel for Plaintiff State of New Jersey_ |
| **RAÙL TORREZ**<br>Attorney General of the State of New Mexico<br><br>By: _s/ Lauren Perry_<br>Lauren Perry<br>_Assistant Attorney General_<br>New Mexico Department of Justice<br>408 Galisteo Street<br>Santa Fe, New Mexico 87501<br>505-270-4332<br>lperry@nmdoj.gov<br><br>_Counsel for the State of New Mexico_ | **JEFF JACKSON**<br>Attorney General of North Carolina<br><br>By: _s/ Daniel P. Mosteller_<br>Daniel P. Mosteller<br>_Associate Deputy Attorney General_<br>Laura Howard<br>_Chief Deputy Attorney General_<br>North Carolina Department of Justice<br>PO Box 629<br>Raleigh, NC 27602<br>919-716-6026<br>dmosteller@ncdoj.gov<br><br>_Counsel for the State of North Carolina_ |
| **PETER F. NERONHA**<br>Attorney General of Rhode Island<br><br>By: _s/ Marissa D. Pizaña_<br>Marissa D. Pizaña<br>_Special Assistant Attorney General_<br>150 South Main Street<br>Providence, RI 02903<br>(401) 274-4400<br>MPizana@riag.ri.gov<br><br>_Counsel for the State of Rhode Island_ | **CHARITY R. CLARK**<br>Attorney General of Vermont<br><br>By: _s/ Ryan P. Kane_<br>Ryan P. Kane<br>_Deputy Solicitor General_<br>109 State Street<br>Montpelier, VT 05609<br>(802) 828-2153<br>Ryan.kane@vermont.gov<br><br>_Counsel for Plaintiff State of Vermont_ |

Page 26 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

**NICHOLAS W. BROWN**
Attorney General of Washington

By: *s/ William McGinty*
William McGinty
Niya Tawachi
*Assistant Attorneys General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
william.mcginty@atg.wa.gov
niya.tawachi@atg.wa.gov

*Counsel for Plaintiff State of Washington*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

By: *s/ Karla Z. Keckhaver*
Karla Z. Keckhaver
*Assistant Attorney General*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-6365
karla.keckhaver@wisdoj.gov

*Counsel for Plaintiff State of Wisconsin*

Page 27 – PLAINTIFF STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION