DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
KIRSTEN NAITO #114684
Senior Assistant Attorneys General
SARA DEL RUBIN #232414
DEREK OLSON #225504
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Leanne.Hartmann@doj.oregon.gov
        Brian.S.Marshall@doj.oregon.gov
        kirsten.m.naito@doj.oregon.gov
        sara.delrubin@doj.oregon.gov
        derek.olson@doj.oregon.gov


Attorneys for the State of Oregon


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| STATE OF NEW YORK, et al., <br><br>      Plaintiffs, <br><br>     v. <br><br> BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al., <br><br>      Defendants. | Case No.  6:25-cv-02186-MTK <br><br><br> DECLARATION OF <br> ALEXIS FERNÁNDEZ GARCIA |

**DECLARATION OF ALEXIS FERNÁNDEZ GARCIA**

I, Alexis Fernández Garcia, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.    I am a resident of the State of California and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

2.    I am currently employed by the California Department of Social Services (CDSS) as Deputy Director of the Family Engagement and Empowerment Division (FEED) and have held this position since August 2023.

3.    Prior to my most recent employment with CDSS, I was the Senior Director of Safety Net at Code for America Labs, Inc. I was previously employed by CDSS from June 2016 to August 2021; first as Chief of the CalFresh Policy Section from June 2016 to September 2017, then as the Chief of the CalFresh Policy Bureau from October 2017 to July 2019, then as Acting Chief of the CalFresh & Nutrition Branch from July 2019 to January 2020, and then as the Chief of the CalFresh and Nutrition Branch from February 2020 to August 2021. Before joining state service, I was the Policy Director at First 5 Association of California and Director of Legislation at California Food Policy Advocates.

4.    I have a Master's degree in Social Welfare, with a specialization in Management and Planning, from University of California, Berkeley.

5.    As Deputy Director of FEED, I am responsible for the administration of several federal and state social service programs that provide critical financial, food, and education and training support to individuals and families with low income. FEED oversees the development of program policy and procedures and provides operational oversight. Among the social services programs administered or overseen by FEED is the CalFresh Program.

1

6. I make this declaration based on personal knowledge and experience and on my review of written information that the U.S. Department of Agriculture (USDA) has issued regarding eligibility for the Supplemental Nutrition Assistance Program and other materials gathered or prepared by agency staff.

7. CalFresh is California's version of the federal Supplemental Nutrition Assistance Program (SNAP). CalFresh is the second largest social services program in California after Medi-Cal, California's Medicaid program, and provides an essential hunger safety net. CalFresh benefits stretch food budgets, allowing individuals and families to afford nutritious food, including more fruits, vegetables, and other healthy foods.

8. CalFresh is overseen by CDSS and is administered by the state's 58 counties. Since the beginning of Federal Fiscal Year 2025, CDSS has issued approximately $1.07 billion in CalFresh benefits per month. These benefits help millions of California households per month meet their basic nutritional needs.

9. As an example, in July 2025, California had approximately 3.3 million participating CalFresh households, and 5.5 million individual recipients within those households. Approximately 1.9 million CalFresh recipients each month are under the age of 18.

10. California relies on federal administrative funding for essential support of its operation of CalFresh.

11. Administration of CalFresh requires adhering to federal eligibility criteria, including the immigration eligibility criteria established by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), as well as federal administrative requirements, including the accurate and timely processing of benefits, compliance with all federal and state anti-discrimination laws, and outreach efforts to increase participation amongst

2

all eligible Californians. Addressing these requirements simultaneously requires significant resources and staff attention to program administration and outreach.

12. Consistent with federal law, CDSS administers SNAP benefits to non-citizens who are eligible for SNAP by statute.

13. On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, known to many as the One Big Beautiful Bill Act of 2025 (OBBB). Among other changes, OBBB significantly impacted eligibility for SNAP, including for noncitizens.

14. Since OBBB's enactment, CDSS has had to undertake substantial work to understand, adjust to, and plan for implementation of changes made by the OBBB. As part of this process, CDSS has looked to USDA for policy, interpretive guidance, and, where needed and available, technical assistance.

15. The need for clarity is critical in this time. The OBBB imposes substantial, potentially devastating penalties on States that are found to have error rates that rise above thresholds set by the OBBB. We are having to operate and plan amidst significant uncertainty, adding to the challenge associated with implementing new law.

16. With respect to noncitizen eligibility for SNAP following the OBBB's enactment, USDA did not provide guidance until October 31, 2025, nearly four months after the OBBB was signed into law.

17. I and others at CDSS reviewed USDA's October 31, 2025 guidance ("the Guidance"), which purported to explain the changes to non-citizens' eligibility for SNAP benefits required by Section 10108 of the OBBB. The Guidance did not provide clarity. To the contrary, it added administrative difficulties for CDSS and necessitated that our agency devote staffing resources to navigating how to deliver the USDA Guidance to California's 58 counties

3

and at the same time provide what CDSS believed to be a correct interpretation of both the OBBB and PRWORA. This came at a time when CDSS had already had to invest significant time and resources into planning and endeavoring to implement the changes to noncitizen SNAP eligibility made by the OBBB. The Guidance added to the burden our agency has had to shoulder.

18.     The "Question and Answer #1" regarding noncitizen eligibility that USDA transmitted to our agency on December 9, 2025, and a further correction that followed on December 10, 2025, provided much needed clarification to the extent that it can be relied upon as USDA's settled-upon interpretation of the law as it now stands, under both the OBBB and PRWORA. However, more than a full month has passed since USDA issued the October 31 Guidance, and we must now again undertake the work of updating personnel at both the State and county level. Also, USDA's December 9, 2025 information transmission does not indicate an effective date. USDA appears to be continuing its position that the "exclusionary period" ended weeks prior to CDSS's receipt of the December 9 corrections to the October 31 Guidance and December 10 correction of the December 9 corrections.

19.     The "exclusionary period" is a 120-day period when certain errors, including those resulting from a State agency's actions based on policy information approved or disseminated, in writing, by the USDA, are not included in the "payment error rate" (which, as explained above, can trigger massive penalties under the OBBB).

20.     The "exclusionary period" provides a critical safety valve for States. But in this period of massive change, USDA has delayed in issuing clear, accurate guidance, and now that it has provided corrected information, it is granting no grace period for agencies like ours to carry out implementation of that corrected information. At the same time, uncertainty for our State

4

persists. We will not know the extent of errors attributable to the lack of guidance, followed by the deficient guidance, followed by partially corrected guidance for some time. This only exacerbates the problem of uncertainty, makes budgeting and other planning more difficult, and heightens the concerns about the financial penalties that could lie ahead.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed in __Sacramento, CA_____ on December 11, 2025.

Alexis Fernández Garcia

5