# EXHIBIT B



**Office of the New York State
Attorney General**

**Letitia James
Attorney General**

November 19, 2025

Secretary Brooke L. Rollins
U.S. Department of Agriculture
1400 Independence Avenue, S.W.
Washington D.C. 20250

   Re: USDA's Oct. 31st Guidance on "Alien SNAP Eligibility"

Dear Secretary Rollins:

   We write on behalf of 21 States in response to guidance issued by the United States Department of Agriculture (USDA) to SNAP State Agencies on Oct. 31, 2025 ("the Guidance"), which purports to explain changes to non-citizens' eligibility for Supplemental Nutrition Assistance Program (SNAP) benefits effectuated by Section 10108 of Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB). As detailed below, the undersigned States ask that the USDA retract the Guidance to correct errors therein, and that USDA ensure that the States are not penalized for USDA's mistakes.

   To start, the Guidance misinterprets the law's effects on certain groups' eligibility for SNAP, including refugees, asylees, and other humanitarian entrants who become Lawful Permanent Residents (LPRs). While the Guidance acknowledges some non-citizen groups can still become eligible for SNAP by adjusting their status to become LPRs, it fails to do so for humanitarian entrants. The Guidance also incorrectly omits humanitarian entrants from a list of groups that are exempt from a five-year waiting period imposed on some LPRs by the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), even though the relevant PRWORA exemptions were unaffected by the OBBB.

   Furthermore, USDA waited *almost four months* after Section 10108 became effective on July 4, 2025, to issue the guidance, and yet the Guidance declared that it was effective the day after it was issued. As you surely know, in addition to creating new restrictions for non-citizens, Section 10105 of the OBBB created a new set of massive penalties for States tied to their payment error rates. USDA regulations provide for a 120-day exclusionary period for error

analysis following the issuance of new Guidance. The importance of timely, accurate, and consistent instruction from USDA cannot be overstated.

The errors in the Guidance's eligibility instructions for humanitarian entrants like refugees and asylees will create confusion and inconsistency among State agencies and potentially deprive thousands of LPRs of food assistance to which they are entitled under the law. The vast majority of refugees and asylees become LPRs, at which point they immediately become eligible for SNAP—of the 95,000 adults arriving as refugees between 2017 and 2022, 85% had gained LPR status by the end of 2024,[1] and of the nearly 109,000 adults granted affirmative asylum from 2014 to 2021, 88% had gained LPR status by 2023.[2] SNAP is particularly helpful for individuals and families facing short bouts of unemployment or are just entering the labor market, as are many refugees and asylees rebuilding their lives in our communities.

We request that the USDA correct the mistakes in the Guidance's interpretation of Section 10108, clarify that the 120-day exclusionary period begins on the issuance date of the updated guidance, and hold States harmless for any errors resulting from the delayed, misleading, and inaccurate Guidance.

1. **The Guidance Incorrectly Categorizes Certain Groups as Ineligible for SNAP, Even After They Become LPRs**

As explained by the Guidance, Section 10108 of the OBBB amended the Food and Nutrition of Act (FNA) of 2008, 7 U.S.C. § 2015(f), to restrict SNAP eligibility for people who are not U.S. citizens or nationals to three groups: (1) immigrants lawfully admitted for permanent residence (LPR),[3] (2) Cuban and Haitian entrants,[4] and (3) individuals lawfully residing in the United States in accordance with a Compact of Free Association (COFA).[5] Prior to the OBBB going into effect, non-citizens who entered the United States as refugees, were granted asylum, or were granted humanitarian parole were eligible for SNAP, based on their status at the time of their admission or parole. OBBB eliminated these categories of eligibility. However, nothing in OBBB prohibits individuals who once held the status of Refugees,[6] Individuals Granted Asylum, or Parolees from gaining eligibility for SNAP if and when they adjust their status to LPRs. Indeed, the Guidance acknowledges, "Per 7 CFR 273.4(a)(6)(iv), each category of eligible alien status stands alone for purposes of determining eligibility. If eligibility expires under one eligible

---

[1] Off. of Homeland Sec. Stat., *Refugees: 2024* (Aug. 12, 2025), https://ohss.dhs.gov/topics/immigration/refugees/annual-flow-report/fy-24-refugees-flow-report.
[2] Off. of Homeland Sec. Stat., *Asylees: 2023* 11 (Oct. 2024), https://ohss.dhs.gov/sites/default/files/2024-10/2024_1002_ohss_asylees_fy2023.pdf
[3] As defined in sections 1101(a)(15) and 1101(a)(20) of the Immigration and Nationality Act (INA).
[4] As defined in section 501(e) of the Refugee Education Assistance Act of 1980.
[5] *See* 8 U.S.C. § 1612(b)(2)(G).
[6] For ease of reference, we are using the "Alien Groups" as those names are defined in the Guidance.

alien status, the State agency must determine if eligibility exists under another status." Guidance at Attachment 1.

However, while the Guidance advises that several groups may be eligible if they are LPRs, it states categorically that Refugees, Individuals Granted Asylum, Parolees, and Deportation Withheld are "Not eligible." The chart in Attachment 1 describes "Post-OBBB Eligibility" for a list of immigrant groups as either "Eligible immediately," "Not eligible," or "Not eligible unless an LPR," with more specific rules for LPRs. For Certain American Indians Born Abroad, Hmong or Highland Laotian Tribal Members, Conditional Entrants, Battered Aliens, and Victims of Severe Trafficking and Certain Family Members, the Guidance advises that applicants may be eligible if they are an LPR. In contrast, other statuses of humanitarian entrants including Refugees, Individuals Granted Asylum, Parolees, Deportation Withheld, Certain Afghan Nationals Granted Parole Between July 31, 2021, and September 30, 2023 ("Afghan Parolees"), and Certain Ukrainian Nationals Granted Parole Between February 24, 2022 and September 30, 2024 ("Ukrainian Parolees"), are listed as simply, "Not eligible." These groups should instead be in the "Not eligible unless an LPR" category.

Even if these individuals must adjust to LPR status to become eligible, it is misleading to state that some groups are ineligible "unless an LPR," while not doing the same for Refugees, Individuals Granted Asylum, and Parolees, thereby implying that these groups can never become eligible for SNAP. In fact, Congress has already provided an explicit pathway for Refugees and Individuals Granted Asylum to adjust status and become LPRs after one year. *See* 8 U.S.C. § 1159(a), (b) (providing that refugees and individuals granted asylum may adjust to LPR status after one year of physical presence in the U.S. with that status); 8 C.F.R. 209.1(a), 209.2(a). While there is no similarly explicit pathway for individuals who are Parolees, including Afghan and Ukrainian Parolees, to adjust their status to LPR, their status also does not prohibit them from gaining LPR status if they are granted asylum or otherwise become eligible for an immigrant visa. *See id*; 8 U.S.C. § 1255(a) (permitting adjustment of status for "an alien who was inspected and admitted or *paroled* into the United States") (emphasis added).

The States recognize that this categorization may have been inadvertent, especially because there is no discernable logic distinguishing humanitarian entrants categorized by the Guidance as "Not eligible unless an LPR" from those simply deemed "Not eligible," including Refugees, Individuals Granted Asylum, Parolees, and Afghan and Ukrainian Parolees, all of whom may become eligible to adjust status to that of an LPR. The Guidance should therefore be corrected to clarify this misleading and confusing language and allow for the fact that humanitarian entrants can, post-OBBB, become eligible for SNAP by becoming LPRs.

2. **The Guidance Omits Certain Groups from Exemption to the Five-Year Waiting Period for LPRs**

The Guidance makes a similar error when listing which categories of LPRs must wait five years before becoming eligible for SNAP. While the Guidance acknowledges that some

groups of non-citizens who become LPRs are exempt from a five-year waiting period imposed by statute, it omits key categories of humanitarian entrants like Refugees and Individuals Granted Asylum who also are exempt from the five-year waiting period.

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA) provides that "Qualified Aliens"[7] can become eligible for federally funded SNAP only if they satisfy an "Exception" under the statute. 8 U.S.C. § 1612(a)(2). One Exception applies if the person has resided in the U.S. as a Qualified Alien for five years ("The 5-Year Rule"). § 1612(a)(2)(L). A different exception applies to individuals who enter the U.S. as Refugees and Individuals Granted Asylum, among other humanitarian entrants, for "7 years after the date" they are "admitted to the United States as a refugee," "granted asylum," or their "deportation is withheld," § 1612(a)(2)(A)(i)–(iii). That means that these individuals are not subject to the 5-Year Rule and, rather, are eligible for SNAP immediately if they adjust to LPR status. Other Exceptions (who are likewise not subject to the 5-Year Rule) include Qualified Aliens who are:

- admitted to the U.S. as Amerasian immigrants § 1612(a)(2)(A)(v);
- Cuban and Haitian entrants, § 1612(a)(2)(A)(iv);
- LPRs and have worked 40 qualifying quarters of coverage, § 1612(a)(2)(B),
- have a U.S. Military connection, § 1612(a)(2)(C),
- blind or disabled, § 1612(a)(2)(F),
- Certain American Indians Born Abroad, § 1612(a)(2)(G),
- were lawfully residing in the U.S. and 65 or older on August 22, 1996, § 1612(a)(2)(I),
- under 18 years old, § 1612(a)(2)(J),
- Hmong or Highland Laotian Tribal Members, § 1612(a)(2)(K),
- COFA Citizens, § 1612(a)(2)(N).

The Guidance correctly acknowledges that the categories of non-citizens who meet these other Exceptions become eligible for SNAP without needing to meet the 5-Year Rule. *See* Guidance at 2, 5 (listing LPRs who fall into the categories listed in bullets above as "eligible for SNAP without a waiting period"). However, the Guidance omits LPRs who entered as Refugees, Individuals Granted Asylum, Deportation Withheld, and other groups that have the same eligibility as Refugees under statute, including Afghan and Ukrainian Parolees,[8] Iraqi and

---

[7] Defined by statute to include LPRs, Refugees, Individuals Granted Asylum, Parolees, Deportation Withheld, Conditional Entrants, Cuban and Haitian Entrants, COFA Citizens, and Battered Aliens and their family members. 8 U.S.C. § 1641(b), (c).

[8] *See* The Extending Government Funding and Delivering Emergency Assistance Act, P.L. 117-43 § 2502(b), 135 Stat. 344, 377 (Sept. 30, 2021) (Certain Afghan Parolees "shall be eligible for . . . benefits available to refugees"); The Additional Ukraine Supplemental Appropriations Act, P.L. 117-128 § 401(b), 136 Stat. 1211, 1218 (May 21, 2022) (Certain Ukrainian Parolees "shall be eligible for . . . benefits available to refugees").

Afghan Special Immigrants (SIV),[9] and Victims of Severe Trafficking.[10] *See* Guidance at 2. The Guidance must therefore be revised to include these groups that are covered under an independent Exception in PRWORA and thus not subject to the 5-Year Rule.

In disregarding the Exceptions for these humanitarian groups, the Guidance departs from USDA's long-standing instructions that PRWORA exempts non-citizens with the status of Refugees, Individuals Granted Asylum, and Deportation Withheld from the 5-Year Rule. Regulations divide Qualified Aliens into two groups: those who "must be in a qualified status for 5 years before being eligible to receive food stamps," 7 C.F.R. 273.4(a)(6)(iii), and those are "eligible to receive food stamps and [are] not subject to the requirement to be in qualified status for 5 years," including Refugees, Individuals Granted Asylum, and Deportation Withheld, as well as other categories that the Guidance retains. 7 C.F.R. § 273.4(a)(6)(ii). Up until recently, the USDA's website explained that Refugees, Individuals Granted Asylum, as well as other groups that have access to the same benefits as Refugees under law, were exempt from the 5-Year Rule:[11]

| Eligible Non-citizen Groups | Eligibility Status |
|---|---|
| <ul><li>Refugees</li><li>Individuals granted asylum</li><li>Victims of severe trafficking</li><li>Deportation withheld</li><li>Amerasians</li><li>Cuban and Haitian entrants</li><li>Iraqi and Afghan special immigrants (SIV)</li><li>Certain American Indians born abroad</li><li>Hmong or Highland Laotian tribal members</li><li>Compacts of Free Association (COFA) citizens of the Federated States of Micronesia, the Republic of the Marshall Islands, and the Republic of Palau</li></ul> | Eligible immediately, with no waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements. |
| <ul><li>Lawful permanent residents (LPR) or Green Card holders</li><li>Those granted parole for a period of at least one year</li><li>Conditional entrants</li><li>Battered non-citizens</li></ul> | Eligible after a 5-year waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements.<br><br>Individuals in one of these groups may still be eligible for SNAP without a waiting period if they:<ul><li>Are a child under 18 years old</li><li>Are blind or disabled and receiving benefits for assistance for your condition</li><li>Were lawfully residing in the U.S. and 65 or older on Aug. 22, 1996</li><li>Have a U.S. Military connection</li><li>Are an Afghan granted parole</li><li>Are a Ukrainian granted parole</li></ul> |
| <ul><li>Children under age 18 in any of the above groups in this table</li></ul> | Eligible immediately, with no waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements. |

---

[9] *See* The Refugee Crisis in Iraq Act of 2007, P.L. 110-181 § 1244(g), 122 Stat. 398 (Jan. 28, 2008) (Iraqis granted special immigrant status "shall be eligible for . . . other benefits available to refugees"); Afghan Allies Protection Act of 2009, P.L. 111-8 § 602(b)(8), 123 Stat. 524, 807 (Mar. 11, 2009) (Afghans granted special immigrant status "shall be eligible for . . . benefits available to refugees"). The Department of Defense Appropriations Act, 2010, P.L.111-118 § 8120(a)-(b), 123 STAT. 3409, 3457 (Dec. 19, 2009), makes Iraqi and Afghan SIVs eligible to the same extent and for the same periods of time as refugees.

[10] *See* 22 U.S.C. § 7105(b)(1)(A) (Victims of Severe Trafficking "shall be eligible for benefits and services . . . to the same extent as an alien who is admitted to the United States as a refugee").

[11] U.S. Dep't of Agric. Food & Nutrition Serv., *SNAP Eligibility for Non-Citizens*, *accessed July 18, 2025*, https://web.archive.org/web/20250718231851/https://www.fns.usda.gov/snap/recipient/eligibility/non-citizen. As of November 12, 2025, the website currently states, "We are in the process of updating this page with the changes made by the One Big Beautiful Bill Act of 2025."

In 2011, the USDA published a "Guidance on Non-Citizen Eligibility," which also listed Refugees, Individuals Granted Asylum, Deportation Withheld, and Iraqi and Afghan SIV statuses as exempt from the 5-Year Rule.[12]

Furthermore, the Guidance misinterprets how the 5-Year Rule operates. Under PRWORA, Qualified Aliens can be eligible for SNAP benefits if they have "resided in the United States with a status within the meaning of the term 'qualified alien' for a period of 5 years or more beginning on the date of the alien's entry into the United States." *Id.* at § 1612(a)(2)(L). The Guidance refers to this "5-year waiting period," but fails to explain when the five-year period begins to run. *See* Guidance at 2, 5. Crucially, one may reside in the United States with a Qualified Alien status for five years *before adjusting to LPR status* to satisfy PRWORA's requirements. For example, someone who enters the United States as a Parolee or Battered Alien—statuses that make them Qualified Aliens but do not qualify for a separate Exception under PRWORA—could be eligible immediately upon becoming LPRs if they had resided in the U.S. with the Qualified Alien status for five years before adjusting to LPR status. The Guidance abandons this distinction in the statute, erroneously implying that humanitarian entrants must wait five years, as a categorical matter, after becoming LPRs to qualify for SNAP benefits.

To correct these errors, the Guidance must be amended to include LPRs who entered as Refugees; Individuals Granted Asylum; and Deportation Withheld (and other statuses granted the same access to benefits as Refugees) as exempt from the 5-Year Rule and to properly explain that the 5-Year Rule applies to those in a Qualified Alien status.

3. **The Delayed Publication of and Many Errors in the Guidance Burden States, Which Are Subject to Severe Consequences Based on Error Rates**

The Guidance was issued on Friday, October 31, 2025, 119 days after the OBBB went into effect, and the Guidance stated that it became effective the next day, a Saturday. As noted above, USDA took nearly four months to issue the Guidance, and it is substantively flawed. Unsurprisingly, the Guidance has caused significant confusion for the States, which were asked to implement new substantive limitations on SNAP eligibility, many of which could not have been anticipated as they diverge from the text of the OBBB, in 24 hours. The result will be an increase in errors as States struggle to reconcile their obligations under federal statutes with the Guidance.

These facts, on their own, would justify withdrawing the Guidance. However, since the passage of the OBBB, States are now confronted with draconian penalties should their error rates increase. Prior to the enactment of the OBBB, States shared with the federal government the cost of administering SNAP benefits. Section 10105 of the OBBB amended the FNA to create a new

---

[12] U.S. Dep't of Agric., *Supplemental Nutrition Assistance Program Guidance on Non-Citizen Eligibility* 3 (June 2011), *available at* https://www.nilc.org/wp-content/uploads/2019/05/Non-Citizen_Guidance_063011.pdf.

"cost sharing" provision, under which States are penalized with an increasing share of the cost of SNAP benefits, if their payment error rate goes above a threshold.

Federal regulations provide for a "120-day exclusionary period" following "application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law," so that errors during that period do not count towards the error rate. 7 C.F.R. § 275.12(d)(2)(vii). However, as currently drafted, the Guidance incorrectly states that the 120-day exclusionary period **ENDS** on November 1, 2025 (120 days after the enactment of the OBBB). *See* Guidance at 4 ("A 120-day variance exclusion is permitted for the misapplication of changes in Section 10108 of the OBBB to new and ongoing SNAP households until the exclusionary period end date on November 1, 2025."). But this position cannot be reconciled with USDA's own regulations, including 7 C.F.R. § 275.12(d)(2)(vii), which plainly contemplate that the starting point for the exclusionary period is the "required implementation date" of either a new regulation or an "implementing memorandum." Given that USDA took neither action until October 31, that is the earliest date from which the 120-day exclusionary period can run. USDA's position that the 120-day exclusionary period ended on November 1, 2025, is thus contrary to law.

In issuing the Guidance, USDA also failed to consider the harms that will accrue to the States without the regulatory 120-day exclusionary period. In implementing Guidance that is confused and confusing, the States will inevitably experience an increase in their error rate, the consequences of which could be financially ruinous. Nowhere does the Guidance indicate that USDA considered these consequences and other reliance interests before implementing what was functionally a one-day exclusionary period.

***

In sum, the States request that USDA amend the Guidance to clarify and explain that humanitarian entrants may be eligible for SNAP after becoming LPRs, to include a complete list of groups that are exempt from PRWORA's 5-Year Rule, and to correctly explain the operation of the 5-Year Rule. Additionally, we ask that USDA clarify that the 120-day exclusionary period begins on the issuance date of the updated guidance and hold States harmless for any errors resulting from the inaccuracies within the Guidance and its delayed publication. Please respond by Monday, November 24, 2025, to inform us whether you will make these changes.

Sincerely,

*Letitia James*

Letitia James
*Attorney General*
*State of New York*

Rob Bonta
*Attorney General*
*State of California*

Philip J. Weiser
*Attorney General*
*State of Colorado*

William Tong
*Attorney General*
*State of Connecticut*

Kathleen Jennings
*Attorney General*
*State of Delaware*

Brian L. Schwalb
*Attorney General*
*District of Columbia*

Anne E. Lopez
*Attorney General*
*State of Hawaiʻi*

Kwame Raoul
*Attorney General*
*State of Illinois*

Aaron M. Frey
*Attorney General*
*State of Maine*

Anthony G. Brown
*Attorney General*
*State of Maryland*

Andrea Joy Campbell
*Attorney General*
*Commonwealth of Massachusetts*

Dana Nessel
*Attorney General*
*State of Michigan*

Keith Ellison
*Attorney General*
*State of Minnesota*

Aaron D. Ford
*Attorney General*
*State of Nevada*

Matthew J. Platkin
*Attorney General*
*State of New Jersey*

Raúl Torres
*Attorney General*
*State of New Mexico*

Dan Rayfield
*Attorney General*
*State of Oregon*

Peter F. Neronha
*Attorney General*
*State of Rhode Island*

Charity R. Clark
*Attorney General*
*State of Vermont*

Nick Brown
*Attorney General*
*State of Washington*

Joshua L. Kaul
*Attorney General*
*State of Wisconsin*

8

Exhibit B
Page 8 of 8