**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**EUGENE DIVISION**

STATE OF NEW YORK, *et al.,*

              Plaintiffs,

     v.

BROOKE ROLLINS, *et al.*,

              Defendants.

6:25-cv-02186-MTK

**CERTIFICATION OF ADMINISTRATIVE RECORD**

I, Ronald Ward, Deputy Associate Administrator for the Supplemental Nutrition Assistance Program (SNAP), Food and Nutrition Service, United States Department of Agriculture ("USDA"), hereby certify that the attached Administrative Record is a true, correct, and complete copy of the non-privileged documents pertaining to USDA's implementation the One Big Beautiful Bill Act, P.L. 119-21, SNAP provisions relating to exceptions for able-bodied adults without dependents, treatment of energy assistance payments, and alien eligibility provisions.

SASHA GERSTEN-PAAL
Digitally signed by SASHA GERSTEN-PAAL
Date: 2026.03.06 11:47:48 -05'00'

for Ronald Ward
Acting Associate Administrator for SNAP
Food and Nutrition Service
United States Department of Agriculture
1320 Braddock Place
Alexandria, VA 22314

# OBBB SNAP DOCUMENTATION

GOV000001

# Food and Nutrition Service
## U.S. DEPARTMENT OF AGRICULTURE

DATE:         September 4, 2025

SUBJECT:      Supplemental Nutrition Assistance Program Provisions of the One Big Beautiful
              Bill Act of 2025 – Information Memorandum

TO:           All SNAP State Agencies
              All Regions

On July 4, 2025, President Donald J. Trump signed Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB). The law contains several provisions that affect the Supplemental Nutrition Assistance Program (SNAP). These include changes to SNAP eligibility, benefits, and program administration.

Attached is an information memorandum describing the SNAP provisions and effective dates for most provisions.  FNS will, as appropriate, hold States harmless for Quality Control (QC) purposes for 120 days from the implementation date.

Additional, detailed guidance on implementation of these provisions is generally forthcoming by September 30, unless specified otherwise. Please reach out to your FNS Regional Office with any questions.

Sincerely,

RONALD
WARD

Digitally signed by
RONALD WARD
Date: 2025.09.04
11:37:56 -04'00'

Ronald Ward
Acting Associate Administrator
Supplemental Nutrition Assistance Program
Food and Nutrition Service

Food and Nutrition Service, Braddock Metro Center, 1320 Braddock Place, Alexandria, VA 22314

USDA is an equal opportunity provider, employer, and lender.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000002

**SNAP Provisions of the One Big Beautiful Bill Act of 2025**

Sec. 10101. Re-Evaluation of Thrifty Food Plan.

Amends Sec. 3(u) of the Food and Nutrition Act (the Act), to revise how the Thrifty Food Plan is updated. It limits future re-evaluations from increasing the cost of the Thrifty Food Plan. It also requires annual adjustment of the cost of the Thrifty Food Plan each October to reflect changes in the Consumer Price Index for All Urban Consumers, published by the Bureau of Labor Statistics of the Department of Labor for the most recent 12-month period ending in June.

The OBBB also amends Sec. 3(u) to establish in statute the household adjustments for maximum allotments. This provision is effective October 1, 2025, and the market baskets of the Thrifty Food Plan may be reevaluated no earlier than October 1, 2027.

Sec. 10102. Modifications to SNAP Work Requirements for Able-Bodied Adults.

This provision modifies Sec. 6(o) of the Act changes which individuals are subject to the time-limited work requirements, the circumstances in which the Secretary may approve a waiver of the time limit in an area and creates new exemptions for Alaska and Hawaii. These requirements are sometimes referred to as the able-bodied adults without dependents (ABAWD) work requirement.

Changes to exceptions from the time limit are listed below.

1. Increases the upper age exception to 65 and older.

2. Limits the exception based on responsibility to care for a dependent child to those with a child under 14 years of age.

3. Removes exceptions for homeless individuals, veterans, and those 24 and younger who aged out of foster care.

4. Establishes new exceptions for "an Indian", "Urban Indian" and "California Indian" as defined in the Indian Health Care Improvement Act.

The OBBB also amends Sec. 6(o)(4) to adjust when the Secretary may approve a waiver of the time limit.  It removes the criterion that provides for waiver requests when an area does not have a sufficient number of jobs to provide employment for the individuals that reside there from the list of circumstances qualifying an area for a waiver of the time limit. This condition is replaced by an option for areas in Alaska and Hawaii to qualify for an ABAWD waiver if their unemployment rate reaches or exceeds 150% of the national average. States other than Alaska and Hawaii may now only request waivers when the unemployment rate meets or exceeds 10 percent in an area.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000003

These changes were effective upon enactment. State agencies must apply updated exceptions to new and ongoing participants after they are screened, in accordance with 7 CFR 273.24(k). FNS will follow up with State agencies currently operating waivers of the time limit that are no longer eligible under the revised program rules.

The OBBB also establishes new exemptions for individuals residing in Alaska and Hawaii if the State makes a request to the Secretary and is demonstrating a good faith effort to comply with time limit work requirements. Exemptions granted will expire no later than December 31, 2028. Additional guidance for how Alaska and Hawaii may request exemptions under this provision is forthcoming.

Sec. 10103 Availability of Standard Utility Allowances Based on Receipt of Energy Assistance.

Amends how State agencies treat receipt of a payment under the Low-Income Home Energy Assistance Act of 1981 (LIHEAA) or other similar energy assistance programs for the purposes of the Heating and Cooling Standard Utility Allowance (HCSUA). Only households with an elderly or disabled member which receive a payment of more than $20 under a LIHEAA program (or similar energy assistance programs), annually, in the month of application or immediately preceding 12 months are automatically eligible for the HCSUA to be applied to the household's case when determining eligibility and benefit amount.

Households without an elderly or disabled member are no longer eligible based on a payment of any amount from a LIHEAA program (or similar energy assistance programs). Households without an elderly or disabled member must incur heating or cooling expenses in accordance with section 5(e)(6)(C) to have the HCSUA used in determining their eligibility and benefit amount.

This provision also changes how SNAP treats third-party energy assistance payments provided under a State law depending on whether there is an elderly or disabled SNAP household member. The assistance will no longer count as income if the household includes an elderly or disabled member, and the household will continue to count expenses the assistance covers towards the excess shelter deduction. If the household does not include an elderly or disabled member, the assistance would continue counting as income, however, the household could no longer count the expense covered by the assistance towards the excess shelter deduction.

This provision is effective upon enactment. State agencies must apply this policy at initial certification for new applicants and, at a minimum, apply the changes to ongoing households at recertification.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000004

Sec. 10104. Restrictions on Internet Expenses.

Prohibits inclusion of internet costs in a household's allowable shelter costs for the purposes of the excess shelter deduction. This includes a restriction on including internet costs in calculating standard utility allowances (SUAs).

This provision is effective upon enactment. FNS provided State agencies with additional instructions for calculating their Fiscal Year 2026 SUA values on August 15, 2025.

Sec. 10105. Matching Funds Requirements.

This provision amends Section 4(a) of the Act to establish a SNAP quality control incentive that consists of State matching funds requirements for the cost of SNAP benefit allotments. The matching requirements are determined based on a State's SNAP payment error rate and range from a State share of 0 to 15 percent of program allotments. These requirements generally begin in fiscal year 2028.

Sec. 10106 Administrative Cost Sharing.

This provision amends Section 16(a) of the Act and reduces the amount that USDA may pay a State agency for administrative costs involved in its operation of SNAP to 25 percent, from the current 50 percent, beginning in fiscal year 2027.

Sec. 10107 National Education and Obesity Prevention Grant Program.

This provision amends Section 28(d)(1) of the Act by ending required funding of the SNAP Nutrition Education and Obesity Prevention Grant Program (SNAP-ED) with the fiscal year 2025 grant allocation. Unexpended fiscal year 2025 SNAP-Ed grant funds may be used in FY 2026 to operate SNAP-Ed. Further guidance was released on August 13.

Sec. 10108 Alien SNAP Eligibility.

This provision makes changes to non-citizen eligibility for SNAP. Further guidance is forthcoming.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000005

**USDA** Food and Nutrition Service
U.S. DEPARTMENT OF AGRICULTURE

**DATE:**       November 14, 2025

**SUBJECT:**   Supplemental Nutrition Assistance Program (SNAP) Questions and Answers on Quality Control (QC) Variance Exclusion

**TO:**        All SNAP State Agencies
               All Regions

The Food and Nutrition Service (FNS) has issued a number of guidance documents on the implementation of SNAP related provisions in H.R. 1, the One Big Beautiful Bill Act of 2025 (OBBB). This memo provides answers to follow-up questions submitted by State agencies on the variance exclusion period for implementation of Section 10102: Modifications to SNAP Work Requirements for Able-Bodied Adults and Section 10103: Availability of Standard Utility Allowances Based on Receipt of Energy Assistance.

A variance in SNAP QC represents a difference in an element of a basic program requirement or basis of issuance in which the information verified by the QC worker differs from the information used to certify the household. SNAP regulations at 7 CFR 275.12(d)(2)(vii) allow for a variance exclusion period during which States can exclude from the error rate any variances related to new SNAP regulations or changes in Federal law within the first 120 days of the required implementation date.

State agencies with questions about this memo or other aspects of implementation, including requests for technical assistance, should contact their respective FNS regional office.

Sincerely,

SASHA
GERSTEN-PAAL
Digitally signed by
SASHA GERSTEN-PAAL
Date: 2025.11.14
12:04:55 -05'00'

For Ronald Ward
Acting Associate Administrator
Supplemental Nutrition Assistance Program
Food and Nutrition Service

Food and Nutrition Service, Braddock Metro Center, 1320 Braddock Place, Alexandria, VA 22314

USDA is an equal opportunity provider, employer, and lender.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000006

Attachment

## Questions Regarding Sections 10102 and 10103

## of H.R. 1, the One Big Beautiful Bill Act of 2025 (OBBB)

1. **What is the required implementation date for OBBB provisions in Sections 10102 and 10103 regarding the able-bodied adults without dependents (ABAWDs) and the treatment of energy assistance payments? Is the required date the enactment of OBBB (July 4, 2025) or the date the State can implement the provisions and notify staff?**

   The required implementation date is the enactment of OBBB, July 4, 2025.

2. **When does the variance exclusion period apply?**

   The variance exclusion period ended November 1, 2025, which is 120 days from July 4, 2025.

3. **If a State implemented Sections 10102 and 10103, including informing staff of the policy change, after August 29, 2025, but before November 1, 2025, on what date would the hold harmless variance exclusion period begin?**

   Regardless of the implementation date chosen by the State, the variance exclusion period for implementing ABAWD exemption changes in Section 10102 and all provisions in Section 10103 of the OBBB ended November 1, 2025.

4. **Can FNS extend the 120-day variance exclusion period?**

   No, the law limits the variance exclusion period to 120 days. Per Section 16(c)(3)(A) of the Food and Nutrition Act of 2008, as amended, and 7 CFR 275.12(d)(2)(vii), certification errors resulting from the application of a new change in Federal law that occurs during the first 120 days from the required implementation date is excluded from the Quality Control (QC) error analysis. The OBBB did not address QC variance exclusions, therefore existing SNAP statutory and regulatory requirements apply.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000007

# Food and Nutrition Service
U.S. DEPARTMENT OF AGRICULTURE

DATE:          October 3, 2025

SUBJECT:       Supplemental Nutrition Assistance Program (SNAP) Provisions of the One Big
               Beautiful Bill Act of 2025 - ABAWD Exceptions - Implementation Memorandum

TO:            All SNAP State Agencies
               All Regions

On July 4, 2025, President Donald J. Trump signed into law the historic One Big Beautiful Bill Act of 2025 (OBBB). On September 5, 2025, the Food and Nutrition Service (FNS) published a memorandum describing the SNAP provisions of the OBBB, *Supplemental Nutrition Assistance Program Provisions of the One Big Beautiful Bill Act of 2025 – Information Memorandum*.

This memorandum provides State agencies additional information on implementing Section 10102(a) of the OBBB, which changes exceptions from the Able-Bodied Adults Without Dependents (ABAWD) time limit.

## Modification of ABAWD Time Limit Exceptions

The OBBB modifies the ABAWD time limit exceptions at Section 6(o)(3) of the Food and Nutrition Act of 2008 (the Act). Throughout this document, "modified exception criteria" refers to the ABAWD exception criteria, as amended by the OBBB.

### Increase of the Upper Age Limit

Prior to passage of OBBB, individuals aged 18 to 54 were subject to the ABAWD time limit.[1] The OBBB increases the age of those subject to the time limit to age 64. Therefore, individuals aged 18 to 64 are now subject to the time limit, unless they meet another exception.

The OBBB does not change the upper age limit for the general work requirements at Section 6(d)(3) of the Act. Individuals aged 60 or older remain exempt from the general work requirements, including mandatory participation in SNAP Employment and Training (E&T).

The OBBB also does not impact the definition of "elderly" in Section 3(j) of the Act. Individuals age 60 or older continue to be defined as "elderly" for SNAP purposes. Therefore, State agencies must continue to apply other policies for elderly individuals to those aged 60 or

---

[1] The Fiscal Responsibility Act of 2023 gradually increased the age of those subject to the ABAWD time limit from 49 to 54 through fiscal year 2030.

Food and Nutrition Service, Braddock Metro Center, 1320 Braddock Place, Alexandria, VA 22314
USDA is an equal opportunity provider, employer, and lender.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000008

older, such as the availability of excess medical deduction and the lack of a cap on excess shelter deduction.

### Changes to the Exception for Children in the Household

The OBBB limits the exception for a parent or other household member with responsibility for a dependent child to children under 14 years of age. Previously, this exception applied to a parent or other household member with responsibility for a dependent child under 18 years of age.

Therefore, adults in a SNAP household with children between ages 14 and 17 are now subject to the time limit, unless they meet another exception, including caring for a child in the household under age 14.

### End of Exceptions Implemented by the Fiscal Responsibility Act of 2023

The OBBB removes the temporary  exceptions for the following populations, which were added by the Fiscal Responsibility Act of 2023 (FRA):

1. Homeless individuals;

2. Veterans; and

3. Individuals aged 24 or younger and in foster care on their 18th birthday (or a higher age if the State offers extended foster care).

These individuals are once again subject to the time limit, as they were prior to the 2023 FRA, unless they meet another exception.

### New Exceptions

The OBBB adds new exceptions for Indians, also referred to as Native Americans, Alaska Natives, Indigenous Peoples, and Tribal Members. The new exceptions include:

1. "An Indian" as defined in paragraph (13) of section 4 of the Indian Health Care Improvement Act (IHCIA);

2. "An Urban Indian" as defined in paragraph (28) of Section 4 of the IHCIA; and

3. "A California Indian" as described in section 809(a) of the IHCIA.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000009

Therefore, individuals are not subject to the time limit if they meet one of the limited definitions detailed below, per 25 U.S.C. Chapter 18. State agencies must follow verification rules, including verifying questionable information with reviewable documentary evidence per 7 CFR 273.2(f) and 273.24(l).

An individual is an "Indian" per 25 U.S.C. 1603(13) if they:

1. Are a member of an Indian tribe.

2. Indian tribe is defined as any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or group or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act, which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians. *Please note, this definition of "Indian tribe" is different than the definition of "Indian tribe" at 7 CFR 271.2.*;

An individual is an "Urban Indian" per 25 U.S.C. 1603(18), if they:

1. Reside in an urban center and meet at least one of the following four criteria:

    a. Regardless of if they live on or near a reservation, is a member of a tribe, band, or other organized group of Indians, including those tribes, bands, or groups terminated since 1940 and those recognized now or in the future by the State in which they reside, or who is a descendant, in the first or second degree of any such member;

    b. Is an Eskimo or Aleut or other Alaska Native,

    c. Is determined to be an Indian for any purpose under regulations promulgated by the Secretary of Interior; or

    d. Is determined to be an Indian under regulations promulgated by the Secretary of Health and Human Services.

2. Urban center is defined as any community which has a sufficient urban Indian population with unmet health needs to warrant assistance under subchapter IV of the IHICA, as determined by the Secretary of Health and Human Services.

An individual is a "California Indian" per 25.U.S.C. 1679(a), if they:

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000010

1.  Are a member of a federally recognized Indian tribe;

2.  Are a descendant of an Indian who was residing in California on June 1, 1852, if such descendant—

    a.  Is a member of the Indian community served by a local program of the Indian Health Service; and

    b.  Is regarded as an Indian by the community in which such descendant lives;

3.  Are an Indian who holds trust interests in public domain, national forest, or reservation allotments in California; or

4.  Are an Indian of California who is listed on the plans for distribution of the assets of rancherias and reservations located within the State of California under the Act of August 18, 1958, and any descendant of such an Indian.

## Application of Modified Exception Criteria

These changes were effective upon enactment, July 4, 2025. State agencies must immediately screen for and apply the modified exception criteria to all initial applications and recertification applications.

## Screening for Exceptions

As a reminder, State agencies must screen each work registrant to determine if it is appropriate, based on the State agency's criteria, to refer the individual to an E&T program per 7 CFR 273.7(c)(2). Since individuals aged 60 to 64 remain exempt from the general work requirements, State agencies are prohibited from requiring individuals aged 60 through 64 to participate in E&T (mandatory E&T).

State agencies must also screen for exemptions in accordance with relevant law and regulation.

## Noticing Requirements

State agencies must provide households with a consolidated written notice and an oral explanation of all applicable work requirements, including the general work requirements, ABAWD requirements and mandatory SNAP Employment and Training (E&T), if assigned, per

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000011

7 CFR 273.7(c)(1)(ii). State agencies must update their notices to ensure individuals aged 55 to 64 are properly notified that they are now subject to the ABAWD time limit.

**Verification Requirements**

State agencies must continue to follow verification requirements at 7 CFR 273.2(f) and 273.24(l).

**Quality Control and Technical Assistance**

FNS will, as appropriate, hold States harmless for Quality Control (QC) purposes for 120 days from the required implementation date.

The 120-day variance exclusion period cannot apply if the State agency does not implement the new provision in accordance with 7 CFR 275.12(d)(2)(vii). State agencies that implement a provision later than the required implementation date, but before the end date of the exclusionary period, will only be allowed a variance exclusion for the time remaining. State agencies that implement after the exclusionary period end date do not get a variance exclusion.

A 120-day variance exclusion is permitted for the misapplication of the below OBBB changes, as discussed in this memo:

- The revision of the exception for a parent or other household member with responsibility for a dependent child from a child under 18 years old to a child under 14 years old;

- The removal of the three temporary exceptions added by the FRA, including homeless individuals, veterans, and individuals aging out of foster care;

- The addition of exceptions for Indians, Urban Indians, and California Indians; and

- The increase in the age-based exception to subject individuals to the time limit through age 64.

None of the above provisions are subject to early implementation rules at 7 CFR 275.12(d)(2)(vii)(A) since the enactment date of all provisions began on July 4, 2025. The exclusionary period end date for all the above provisions is November 1, 2025.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000012

FNS is committed to providing ongoing technical assistance to State agencies to ensure successful implementation of the OBBB provisions. FNS will continue to provide additional materials guidance and State-specific technical assistance.

State agencies with questions should contact their Regional Office representatives.

Sincerely,

RONALD WARD
Digitally signed by
RONALD WARD
Date: 2025.10.03
14:06:43 -04'00'

Ronald Ward
Acting Associate Administrator
Supplemental Nutrition Assistance Program
Food and Nutrition Service

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000013



# Food and Nutrition Service
## U.S. DEPARTMENT OF AGRICULTURE

DATE:  August 29, 2025

SUBJECT:  Supplemental Nutrition Assistance Program (SNAP) Implementation of the One Big Beautiful Bill Act of 2025 – Treatment of Energy Assistance Payments

TO:   All SNAP State Agencies
     All Regions

On July 4, 2025, President Donald J. Trump signed into law the One Big Beautiful Bill Act of 2025 (OBBB). The Food and Nutrition Service (FNS) is issuing this memorandum to provide Supplemental Nutrition Assistance Program (SNAP) State agencies with additional information on implementing Section 10103 of the OBBB, which changes the treatment of certain energy assistance payments for SNAP.

## **Treatment of LIHEAP or Other Similar Energy Assistance Program Payments**

Section 10103 of the OBBB amends how State agencies treat receipt of a payment under the Low-Income Home Energy Assistance Act of 1981 (LIHEAA) or other similar energy assistance program for the purposes of the Heating and Cooling Standard Utility Allowance (HCSUA), depending on whether the household contains an elderly[1] or disabled member.

Prior to the OBBB, State agencies were required to make the HCSUA available to any household that received a payment (or household on behalf of which a payment was made), in the current month or in the immediately preceding 12 months, that was greater than $20 annually under LIHEAA, or other similar energy assistance programs. SNAP considers a payment that meets these criteria as a "qualifying Low-Income Home Energy Assistance Program (LIHEAP) or other payment".

Section 10103 of the OBBB now requires that households receiving a qualifying LIHEAP or other payment contain an elderly or disabled member in order to have the HCSUA automatically applied to their case. Therefore, State agencies must no longer automatically confer HCSUA eligibility to households without an elderly or disabled member based on receipt of a qualifying LIHEAP or other payment.

This provision made no other changes related to what is considered a qualifying payment or how they are treated.

---

[1] For SNAP purposes, an elderly member means a member of a household who is 60 years of age or older.

Food and Nutrition Service, Braddock Metro Center, 1320 Braddock Place, Alexandria, VA 22314

USDA is an equal opportunity provider, employer, and lender.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000014

Households without an elderly or disabled member still qualify for the HCSUA, if the household incurs heating or cooling expenses in accordance with Section 5(e)(6)(C) of the Food and Nutrition Act of 2008 (FNA). If the household does not qualify for the HCSUA because they do not incur heating or cooling expenses, they may be entitled to the use of another standard utility allowance (SUA), based on the utility expenses they incur, or to the use of actual expenses, depending on the State agency's SUA policy.

## Treatment of Third-Party Energy Assistance Payments Provided under State Law

Section 10103 of the OBBB also changes how SNAP treats third-party energy assistance payments provided under a State law. Treatment of these payments also now depends on whether the household contains an elderly or disabled household member.

Prior to the OBBB, State agencies were required to count third-party energy assistance payments provided under State law as income for SNAP purposes for all households. In addition, State agencies were required to count any expenses covered by these energy assistance payments towards the household's shelter costs when determining their excess shelter deduction.

Following the OBBB, third-party energy assistance payments provided under State law do not count as income if the SNAP household contains an elderly or disabled member. If the household does not contain an elderly or disabled member, State agencies must continue to count third-party energy assistance payments provided under State law as income for SNAP purposes.

Section 10103 also differentiates how these payments are considered for the purposes of the excess shelter deduction, depending on if the household contains an elderly or disabled member. State agencies must continue counting any expense covered by these payments towards the household's shelter costs if the household contains an elderly or disabled member. However, State agencies shall no longer allow households that do not contain an elderly or disabled member to count expenses covered by these payments towards their shelter costs.

## Implementation of Section 10103

Section 10103 of the OBBB was effective upon enactment, July 4, 2025. State agencies must apply these policies to new applicants at initial certification immediately. For ongoing households, State agencies must review household circumstances and at a minimum, apply

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000015

these policies at the household's next recertification. However, FNS strongly encourages application of these policies as soon as possible for ongoing households.

*Applying Changes at Recertification*

The State agency must review household shelter costs at recertification to determine if households remain eligible for the HCSUA. Households no longer eligible for the HCSUA may be entitled to another SUA based on the utility expenses they incur. The State agency must review and determine how to appropriately capture household shelter costs, including the use of another SUA or actual expenses, depending on the State agency's SUA options.

*Changes During the Certification Period*

State agencies are expected to make every effort to apply these changes to households during the certification period if the State agency has sufficient information about household utility expenses. At a minimum, State agencies must apply changes to ongoing households at their next recertification. FNS recognizes that State agencies may share information across their SNAP and State-operated energy assistance programs. While State agencies may have information on whether a household receiving this assistance contains an elderly or disabled member, that is not enough information to determine the impact of the case appropriately.

State agencies shall not remove an ongoing household's eligibility for the HCSUA during the certification period solely based on information that the household does not contain an elderly or disabled member. If a household incurs heating or cooling costs, it must maintain eligibility for the HCSUA.  State agencies should make changes immediately for cases where they have information that a household incurs heating or cooling costs. FNS encourages State agencies to send voluntary notices to encourage households to provide information on updated utility costs during the certification period. However, State agencies shall not send a Request for Contact (RFC) for this purpose or terminate a household's case if the household does not provide this information during the certification period, per program rules at 7 CFR 273.12(c).

*Split Households*

If a household with an elderly or disabled member that received a qualifying LIHEAP or other payment subsequently splits into multiple SNAP households, State agencies must consider whether each of the separate households contain an elderly or disabled member. If each of the separate households contain an elderly or disabled member, the State agency must confer the HCSUA to each of the households based on the qualifying LIHEAP or other payment. If one of the separate households resulting from the split does not contains an

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000016

elderly or disabled member, that household is no longer entitled to receive the HCSUA unless they incur heating or cooling expenses, as described above.

*Quality Control and Technical Assistance*

FNS will, as appropriate, hold States harmless for Quality Control (QC) purposes for 120 days from the implementation date.

However, the 120-day variance exclusion period cannot apply if the State agency does not implement the new provision in accordance with 7 CFR 275.12(d)(2)(vii)(E). State agencies that implement a provision later than the required implementation date, but before the end date of the exclusionary period, will only be allowed a variance exclusion for the time remaining. State agencies that implement after the exclusionary period end date do not get a variance exclusion. Early implementation rules at 7 CFR 275.12(d)(2)(vii)(A) do not apply since the enactment date for Section 10103 of OBBB was July 4, 2025.

A 120-day variance exclusion is permitted for the misapplication of changes in Section 10103 of the OBBB to new and ongoing SNAP households until the exclusionary period end date on November 1, 2025.

FNS stands ready to work with State agencies and provide additional technical assistance as you work to implement the OBBB.  State agencies with questions on Section 10103 of the OBBB should contact their respective FNS Regional Office. These questions will help inform additional guidance in future memos.

Sincerely,

RONALD WARD

Digitally signed by RONALD WARD
Date: 2025.08.29
12:57:01 -04'00'

Ronald Ward
Acting Associate Administrator
Supplemental Nutrition Assistance Program
Food and Nutrition Service

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000017

USDA Food and Nutrition Service
U.S. DEPARTMENT OF AGRICULTURE

DATE:          October 31, 2025

SUBJECT:       Supplemental Nutrition Assistance Program (SNAP) Implementation of the One
               Big Beautiful Bill Act of 2025 – Alien SNAP Eligibility

TO:            All SNAP State Agencies
               All Regions

On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB). On September 4, 2025, the Food and Nutrition Service (FNS) published a memorandum describing the Supplemental Nutrition Assistance Program (SNAP) provisions of the OBBB, titled "Supplemental Nutrition Assistance Program Provisions of the One Big Beautiful Bill Act of 2025 – Information Memorandum."

This memorandum provides State agencies with additional information on implementing Section 10108 of the OBBB, which makes changes to alien eligibility for SNAP.

**SNAP Alien Eligibility**

Section 10108 of the OBBB amends section 6(f) of the Food and Nutrition Act of 2008 (FNA), limiting eligibility for SNAP to the following groups: U.S. citizens, U.S. nationals, lawful permanent residents (LPRs), Cuban and Haitian entrants[1], and Compact of Free Association (COFA) citizens.

Prior to the OBBB, certain lawfully present aliens, as defined by the Personal Responsibility and Work Opportunity Act (PRWORA)[2] were eligible to receive SNAP benefits, provided they met all other SNAP eligibility requirements and completed a 5-year waiting period, unless exempted by PRWORA.

---

[1] Cuban and Haitian entrants as defined in section 501(e) of the Refugee Education Assistance Act of 1980, 8 U.S.C. Sec 1522 note.
[2] Aliens who were qualified aliens as defined by section 431 of the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) (8 USC 1641) and aliens included in section 402(a) of PRWORA (8 USC 1612(a)) in addition to groups listed in section 6(f) of the FNA were eligible for SNAP.

Food and Nutrition Service, Braddock Metro Center, 1320 Braddock Place, Alexandria, VA 22314

USDA is an equal opportunity provider, employer, and lender.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000018

Following the OBBB, some alien groups previously eligible for SNAP are no longer eligible. Aliens continue to be subject to a 5-year waiting period, unless exempted by PRWORA.[3] The chart below summarizes eligibility for aliens pursuant to the OBBB amendments to section 6(f) of the FNA.

| Eligible Alien Groups Under the OBBB | Eligibility Timing |
|---|---|
| • Non-citizen U.S. nationals<br>• Cuban and Haitian entrants<br>• Compacts of Free Association (COFA) citizens | Eligible immediately, with no waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements. |
| • Lawful permanent residents (LPR) (also known as Green Card holders) | Eligible after a 5-year waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements.<br><br>LPRs may still be eligible for SNAP without a waiting period if they meet one or more of the following conditions:<br>• Are under 18 years old<br>• Have 40 qualifying work quarters<br>• Are blind or disabled<br>• Were lawfully residing in the U.S. and 65 or older on August 22, 1996<br>• Have a U.S. military connection<br>• Are admitted to the United States as an Amerasian immigrant<br>• Are an American Indian born abroad<br>• Certain Hmong or Highland Laotian tribal members |

The chart in Attachment 1 illustrates changes to SNAP alien eligibility.

---

[3] See 8 USC 1612.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000019

<u>Implementation</u>

Section 10108 of the OBBB was effective upon enactment, July 4, 2025. State agencies must immediately apply the new eligibility criteria to new applicants at initial certification. For households already receiving SNAP, State agencies must review household circumstances and apply these policies at recertification. If an alien does not fall into one of the groups listed in section 6(f) of the FNA, as amended by OBBB, the alien is no longer eligible for SNAP and must be removed from the household at that time.[4]

*Changes During the Certification Period*

The Food and Nutrition Act of 2008 requires State agencies to use the Systematic Alien Verification for Entitlements (SAVE) program to verify the immigration status of all aliens participating in SNAP prior to certification. FNS strongly encourages States to check SAVE whenever required changes or recertifications actions are made. Through these updates, State agencies may obtain information during a household's certification period that indicates an alien is no longer in a SNAP-eligible immigration status or designation. State agencies must review household circumstances to take appropriate action when this occurs and follow program rules for acting on changes and resolving unclear information at 7 CFR 273.12(c).

*Quality Control and Technical Assistance*

FNS will, as appropriate, hold States harmless for Quality Control (QC) purposes for 120 days from the required implementation date in accordance with 7 CFR 275.12(d)(2)(vii).

The 120-day variance exclusion period will not apply if the State agency does not implement the new provision in accordance with 7 CFR 275.12(d)(2)(vii)(D). State agencies that implement a provision later than the required implementation date, but before the end date

---

[4] Pursuant to USDA regulations at 7 CFR 273.12(a)(1), 7 CFR 273.12(d), and 7 CFR 273.18, households are not liable for a claim due to a change in circumstances the household is not required to report. Since households are not required to report a change in immigration status, aliens who lose SNAP eligibility at recertification due to the OBBB SNAP eligibility changes, are not subject to a claim for over issuance for the benefits received after the OBBB changes took effect.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000020

of the exclusionary period, will only be allowed a variance exclusion for the time remaining. State agencies that implement after the exclusionary period end date do not get a variance exclusion. Early implementation rules at 7 CFR 275.12(d)(2)(vii)(A) do not apply since the enactment date for Section 10108 of OBBB was July 4, 2025.

A 120-day variance exclusion is permitted for the misapplication of changes in Section 10108 of the OBBB to new and ongoing SNAP households until the exclusionary period end date on November 1, 2025.

FNS stands ready to work with State agencies and provide additional technical assistance as OBBB implementation continues. State agencies with questions on Section 10108 of the OBBB should contact their respective FNS Regional Office. These questions will help inform additional guidance in future memos.

Sincerely,

SASHA GERSTEN-PAAL

Digitally signed by SASHA GERSTEN-PAAL
Date: 2025.10.31 10:20:47 -04'00'

for Ronald Ward
Acting Associate Administrator
Supplemental Nutrition Assistance Program
Food and Nutrition Service

Attachments

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000021

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

## Attachment 1

<u>SNAP Alien Eligibility Pre- and Post- One Big Beautiful Bill Act (OBBB)</u>

This chart compares SNAP eligibility for alien groups before and after the OBBB became law. The chart in Attachment 2 provides a description of alien groups. Per 7 CFR 273.4(a)(6)(iv), each category of eligible alien status stands alone for purposes of determining eligibility. If eligibility expires under one eligible alien status, the State agency must determine if eligibility exists under another status.

| Alien Group | Pre-OBBB Eligibility | Post-OBBB Eligibility |
|---|---|---|
| **Non-Citizen U.S. Nationals** | Eligible immediately | Eligible immediately |
| **Lawful Permanent Residents (LPR)** | Eligible after a 5-year waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements.<br><br>LPRs may still be eligible for SNAP without a waiting period if they meet one or more of the following conditions:<br><br>• Are under 18 years old<br><br>• Have 40 qualifying work quarters<br><br>• Are blind or disabled<br><br>• Were lawfully residing in the U.S. and 65 or older on August 22, 1996<br><br>• Have a U.S. military connection | Eligible after a 5-year waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements.<br><br>LPRs may still be eligible for SNAP without a waiting period if they meet one or more of the following conditions:<br><br>• Are under 18 years old<br><br>• Have 40 qualifying work quarters<br><br>• Are blind or disabled<br><br>• Were lawfully residing in the U.S. and 65 or older on August 22, 1996<br><br>• Have a U.S. military connection |

Food and Nutrition Service, Braddock Metro Center, 1320 Braddock Place, Alexandria, VA 22314

USDA is an equal opportunity provider, employer, and lender.

GOV000022

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 24 of 222

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts. GOV000023

| Alien Group | Pre-OBBB Eligibility | Post-OBBB Eligibility |
| --- | --- | --- |
| | | • Are admitted to the United States as an Amerasian immigrant<br>• Are certain American Indians born abroad<br>• Are certain Hmong or Highland Laotian tribal members |
| **Cuban and Haitian Entrants (CHE)** | Eligible immediately | Eligible immediately |
| **Compacts of Free Association (COFA) Citizens** | Eligible immediately | Eligible immediately |
| **Children Under Age 18 <u>in any SNAP-eligible Alien Group</u>[5]** | Eligible immediately | Eligible immediately |
| **LPRs with 40 Qualifying Work Quarters** | Eligible immediately | Eligible immediately |
| **Individuals <u>in any SNAP-eligible Alien Group</u>[3] Who is Blind or Disabled** | Eligible immediately | Eligible immediately |
| **Individuals <u>in any SNAP-eligible Alien Group</u>[3] Lawfully Residing in** | Eligible immediately | Eligible immediately |

[5] Note that "SNAP-eligible alien groups" are different pre- and post-OBBB. Post-OBBB SNAP eligible alien groups are U.S. nationals, lawful permanent residents (LPRs), Cuban and Haitian entrants (CHEs), and Compacts of Free Association (COFA) citizens.

| Alien Group | Pre-OBBB Eligibility | Post-OBBB Eligibility |
|---|---|---|
| the U.S. and Was 65 or Older on August 22, 1996 | | |
| Individuals in any SNAP-eligible Alien Group[3] Who Has a Military Connection | Eligible immediately | Eligible immediately |
| Deportation Withheld | Eligible immediately | Not eligible |
| Amerasians | Eligible immediately | Eligible immediately |
| Certain American Indians Born Abroad | Eligible immediately | Not eligible unless an LPR, then eligible immediately |
| Hmong or Highland Laotian Tribal Members | Eligible immediately | Not eligible unless an LPR, then eligible immediately |
| Iraqi and Afghan Special Immigrants (SIV) | Eligible immediately | See "Post-OBBB Eligibility" for LPR. |
| Conditional Entrants | Eligible immediately | Not eligible unless an LPR. See "Post-OBBB Eligibility" for LPR |
| Battered Aliens | Eligible immediately | Not eligible unless an LPR. See "Post-OBBB Eligibility" for LPR |
| Victims of Severe Trafficking and Certain Family Members | Eligible immediately | Not eligible unless an LPR. See "Post-OBBB Eligibility" for LPR |
| Refugees | Eligible immediately | Not eligible |

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000024

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 26 of 222

| Alien Group | Pre-OBBB Eligibility | Post-OBBB Eligibility |
|---|---|---|
| **Individuals Granted Asylum** | Eligible immediately | Not eligible |
| **Parolees** | Eligible after a 5-year waiting period | Not eligible |
| **Certain Afghan Nationals Granted Parole Between July 31, 2021, and September 30, 2023** | Eligible immediately | Not eligible |
| **Certain Ukrainian Nationals Granted Parole Between February 24, 2022, and September 30, 2024** | Eligible immediately | Not eligible |
| **LPR Pursuant to Section 249 of the INA[6] (8 USC 1259)[7]** | Eligible after a 5-year waiting period | See "Post-OBBB Eligibility" for LPR |

Alien groups in the above chart who are eligible immediately are exempt from meeting the 5-year waiting period outlined in PRWORA. Individuals must meet all other SNAP eligibility requirements, such as income and resource limits.

---

[6] Immigration and Nationality Act.

[7] Status acquired after any type of entry into the U.S. prior to January 1, 1972, and maintained continuous residence in the U.S. since entry. See USCIS policy manual for more information.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000025

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 27 of 222

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

**Attachment 2**

**Alien Group Descriptions**

This table provides a detailed description of some of the alien groups who were either previously eligible for or are currently eligible for SNAP.

| Alien Group | Description |
| --- | --- |
| Battered aliens | Under certain circumstances, a battered alien spouse or child, an alien parent of a battered child, or an alien child of a battered parent with a petition pending. |
| Certain American Indians born abroad | American Indians born in Canada living in the United States (U.S.) under §289 of the Immigration and Nationality Act (INA) or alien members of a federally recognized Indian tribe under §4(e) of the Indian Self-Determination and Education Assistance Act. |
| Compacts of Free Association (COFA) citizens of the Federated States of Micronesia, the Republic of the Marshall Islands, and the Republic of Palau | Individuals who lawfully reside in the U.S. in accordance with section 141 of the Compacts of Free Association between the Government of the United States and the Governments of the Federated States of Micronesia, the Republic of the Marshall Islands, and the Republic of Palau. |
| Conditional entrants | Granted conditional entry under §203(a)(7) of the INA as in effect before 04/01/80. |
| Cuban or Haitian entrants | Cuban or Haitian entrant under §501(e) of the Refugee Education Assistance Act of 1980. |

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 28 of 222

| Alien Group | Description |
| --- | --- |
| Deportation (or removal) withheld | Deportation is being withheld under §243(h) of the INA as in effect before 04/01/97, or removal is withheld under §241(b)(3) of the INA. |
| Hmong or Highland Laotian tribal members | An individual lawfully residing in the U.S. who was a member of a Hmong or Highland Laotian tribe that rendered assistance to U.S. personnel by taking part in a military or rescue operation during the Vietnam era (Aug. 5, 1964 – May 7, 1975). This category includes the spouse (or un-remarried surviving spouse) or unmarried dependent children of these individuals. |
| Individuals granted asylum | Granted asylum under §208(b) of the INA. |
| Iraqi and Afghan special immigrants (SIV) | Special immigrant status under §101(a)(27) of the INA may be granted to Iraqi and Afghan nationals who have worked on behalf of the U.S. government in Iraq or Afghanistan. The Department of Defense Appropriations Act of 2010, PL 111-118, § 8120 enacted on Dec. 19, 2009, provides that SIVs are eligible for all benefits to the same extent and the same time period as refugees. |
| Lawful Permanent Resident (LPR) | LPRs, also known as "Green Card" holders, are aliens who are lawfully authorized to live permanently in the United States. This category also includes "Amerasian immigrants" as defined under §584 of the Foreign Operations, Export Financing and Related Programs Appropriations Act of 1988. |
| Military connection | An individual who is lawfully residing in a State and is on active duty in the military (excluding National Guard) or is an |

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000027

| Alien Group | Description |
| --- | --- |
|  | honorably discharged veteran whose discharge is not because of immigration status (includes spouse, surviving spouse if not married, and unmarried dependent children). A discharge "Under Honorable Conditions", which is not the same as an honorable discharge, does not meet this requirement. |
| Parolees | Paroled into the U.S. under §212(d)(5) of the INA for a period of at least 1 year. |
| Refugees | Refugees admitted to the U.S. under §207 of the INA. |
| Victims of a severe form of trafficking in persons and certain family members | Victims under the Trafficking Victims Protection Act of 2000 and family members granted derivative T nonimmigrant status. |

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.



**U.S. DEPARTMENT OF AGRICULTURE**

DATE:          December 9, 2025

SUBJECT:     Supplemental Nutrition Assistance Program (SNAP) Provisions of the One Big
             Beautiful Bill – Alien SNAP Eligibility – Question and Answer #1 REVISED

TO:            All SNAP State Agencies
               All Regions

On July 4, 2025, President Donald J. Trump signed into law the One Big Beautiful Bill
legislation (OBBB). The OBBB makes significant changes to the Supplemental Nutrition
Assistance Program (SNAP), including changes to alien eligibility for SNAP.

On October 31, 2025, the Food and Nutrition Service (FNS) published a memorandum with
information on Section 10108 of the OBBB, which makes changes to alien eligibility for SNAP.

This question-and-answer set provides additional information on Section 10108 of the OBBB.
FNS revised Question 5 due to a typo.

FNS stands ready to work with State agencies and provide additional technical assistance.
State agencies with questions on Section 10108 of the OBBB should contact their respective
FNS Regional Office. These questions will help inform additional guidance in future memos.

Sincerely,

Patrick A. Penn
Deputy Under Secretary
Food, Nutrition, and Consumer Services
U.S. Department of Agriculture

Attachments

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Guidance documents lack the force and effect of law, unless expressly authorized by statute or
incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available
through their guidance portal, except to establish historical facts.    GOV000029

**U.S. DEPARTMENT OF AGRICULTURE**

## Supplemental Nutrition Assistance Program (SNAP) Provisions of the One Big Beautiful Bill (OBBB)
## Alien Eligibility
## Question and Answer #1

### A. General

1. **Are the OBBB changes to alien eligibility effective immediately or upon rulemaking?**

   The changes were effective upon the enactment of OBBB—July 4, 2025. OBBB specifies which alien groups are eligible for SNAP under section 6(f) of the Food and Nutrition Act of 2008 (FNA) and is not contingent on regulations before the changes go into effect.

2. **Are individuals who have been granted asylum or who are refugees eligible for SNAP?**

   No. Individuals who have been granted asylum or who are refugees, including individuals under 18 years of age, are not eligible for SNAP by virtue of that status.

   With the passage of OBBB, the only aliens eligible for SNAP are those with the following statuses: lawful permanent resident (LPR), Cuban and Haitian entrant (CHE), or Compacts of Free Association (COFA) citizen. See chart below for additional information on asylees or refugees who have adjusted status to LPR.

### B. 5-year Waiting Period

3. **Does the 5-year waiting period still apply following the OBBB?**

   Yes. OBBB did not make changes to the 5-year waiting period requirement and exceptions, which are established by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), 8 USC 1613.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000030

4. **When does the 5-year waiting period begin?**

   The 5-year waiting period begins on the date the alien obtains status as a qualified alien or enters the U.S. in a qualifying status under 8 USC 1613.[1]

5. **Post-OBBB, will individuals who adjust from a status not eligible for SNAP under Section 6(f) of the FNA to lawful permanent resident (LPR) status now need to wait 5 years after adjusting to LPR status to receive SNAP?**

   Not necessarily. Per current policy, aliens who adjust status to LPR from one of the groups exempt from the 5-year waiting period in section 403 of PRWORA (8 USC 1613), are not required to wait for 5 years after becoming an LPR.[2]

   The chart below shows alien groups and whether they are subject to the 5-year waiting period after adjusting their status to LPR.

| Alien Group Pre-LPR-Adjustment | Subject to 5-year Waiting Period After Adjusted Status to LPR[3] |
|---|---|
| **Refugees** | No |
| **Individuals Granted Asylum** | No |
| **Deportation Withheld** | No |

[1] These groups include lawful permanent residents, asylees, refugees, parolees, individuals granted withholding of deportation or removal, conditional entrants, Cuban or Haitian entrants, battered aliens, and alien victims of a severe form of trafficking, Certain American Indians born abroad and Hmong or Highland Laotian tribal members.

[2] Refugee, individuals granted asylum, deportation withheld, Cuban and Haitian entrant, Amerasian, individual in a SNAP-eligible alien group with a military connection, individual in a SNAP-eligible alien group who is under age 18, American Indian born abroad, and Hmong or Highland Laotian tribal member.

[3] An individual has "adjusted status to LPR" when they have received an approval notice and Permanent Resident Card (Green Card) from the United States Citizenship and Immigration Services (USCIS). An individual is not considered an LPR if they have applied to adjust status and have not yet received a decision.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.    GOV000031

| Alien Group Pre-LPR-Adjustment | Subject to 5-year Waiting Period After Adjusted Status to LPR[3] |
|---|---|
| **Cuban and Haitian Entrants (CHE)** | No |
| **Amerasians** | No |
| **Compacts of Free Association (COFA) Citizens** | No |
| **American Indians Born Abroad** | No |
| **Hmong or Highland Laotian Tribal Members** | No |
| **Iraqi and Afghan Special Immigrants (SIV)** | No |
| **Certain Afghan Nationals Granted Parole Between July 31, 2021, and September 30, 2023** | No |
| **Certain Ukrainian Nationals Granted Parole Between February 24, 2022, and September 30, 2024** | No |
| **Victims of Severe Trafficking** | No |
| **Conditional Entrants** | Yes |
| **Battered Aliens** | Yes |
| **Individuals Granted Parole for a Period of at Least One Year** | Yes |

Provided other SNAP eligibility requirements are met, someone in one of the above

"Yes" groups is not subject to the 5-year waiting period if the person:

- Is under 18 years old;
- Has 40 qualifying work quarters;

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts. GOV000032

- Is blind or disabled;
- Was lawfully residing in the U.S. and 65 or older on August 22, 1996; or
- Has a U.S. military connection.

## C.   Verification

**6.   How can a State agency verify how long an alien has been in a qualified status?**

United States Citizenship and Immigration Services (USCIS) documents generally contain the date an alien entered the country or adjusted to the immigration status reflected on the document. If an alien does not have USCIS documentation, the State agency can verify the date of entry into the United States or date status was given by submitting a request for additional verification through the Systematic Alien Verification for Entitlements (SAVE) program. State agencies with questions about SAVE should contact SAVE.help@uscis.dhs.gov.

Guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract. USDA may not cite, use, or rely on any guidance that is not available through their guidance portal, except to establish historical facts.

GOV000033

# LEGAL AUTHORITIES

GOV000034

7 CFR 273.24 (up to date as of 3/02/2026)
Time limit for able-bodied adults.

Case 6:25-cv-02186-MTK     Document 77     Filed 03/16/26     Page 36 of 222

7 CFR 273.24 (Mar. 2, 2026)

This content is from the eCFR and is authoritative but unofficial.

## Title 7 —Agriculture
## Subtitle B —Regulations of the Department of Agriculture
## Chapter II —Food and Nutrition Service, Department of Agriculture
## Subchapter C —Supplemental Nutrition Assistance and Food Distribution Program
## Part 273 —Certification of Eligible Households
## Subpart G —Program Alternatives

**Authority:** 7 U.S.C. 2011-2036.

**Editorial Note:** Nomenclature changes to subchapter C appear by Amdt. 381, 65 FR 64586, Oct. 30, 2000.

**Editorial Notes:** 1. OMB control numbers relating to this part 273 are contained in § 271.8.

2. Nomenclature changes to part 273 appear at 84 FR 15093, Apr. 15, 2019.

## § 273.24 Time limit for able-bodied adults.

(a) *Definitions.* For purposes of the SNAP time limit, the terms below have the following meanings:

    (1) *Fulfilling the work requirement* means:

        (i) Working 20 hours per week, averaged monthly; for purposes of this provision, 20 hours a week averaged monthly means 80 hours a month;

        (ii) Participating in and complying with the requirements of a work program 20 hours per week, as determined by the State agency;

        (iii) Any combination of working and participating in a work program for a total of 20 hours per week, as determined by the State agency; or

        (iv) Participating in and complying with a workfare program;

    (2) *Working* means:

        (i) Work in exchange for money;

        (ii) Work in exchange for goods or services ("in kind" work); or

        (iii) Unpaid work, verified under standards established by the State agency.

        (iv) Any combination of paragraphs (a)(2)(i), (a)(2)(ii) and (a)(2)(iii) of this section.

    (3) *Work Program* means:

        (i) A program under title 1 of the Workforce Innovation and Opportunity Act (WIOA) (Pub. L.113-128);

        (ii) A program under section 236 of the Trade Act of 1974 (19 U.S.C. 2296);

GOV000035

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 37 of 222

(iii) An employment and training program operated or supervised by a State or political subdivision of a State agency that meets standards approved by the Chief Executive Office, including a SNAP E&T program under § 2 73.7(e) excluding any job search, supervised job search, or job search training program. However, a program under this clause may contain job search, supervised job search, or job search training as subsidiary activities as long as such activity is less than half the requirement. Participation in job search, supervised job search, or job search training as subsidiary activities that make up less than half the requirement counts for purposes of fulfilling the work requirement under paragraph (a)(1)(ii) of this section.

(iv) A program of employment and training for veterans operated by the Department of Labor or the Department of Veterans Affairs. For the purpose of this paragraph, any employment and training program of the Department of Labor or Veterans Affairs that serves veterans shall be an approved work program; or

(v) A workforce partnership under § 273.7(n)

(4) *Workfare program* means:

(i) A program under § 273.7(m); or

(ii) A comparable program established by a State or political subdivision of a State.

(b) *General Rule.* Individuals are not eligible to participate in SNAP as a member of any household if the individual received SNAP benefits for more than three countable months during any three-year period, except that individuals may be eligible for up to three additional countable months in accordance with paragraph (e) of this section.

(1) *Countable months.* Countable months are months during which an individual receives SNAP benefits for the full benefit month while not:

(i) Exempt under paragraph (c) of this section;

(ii) Covered by a waiver under paragraph (f) of this section;

(iii) Fulfilling the work requirement as defined in paragraph (a)(1) of this section;

(iv) Receiving benefits that are prorated in accordance with § 273.10; or

(v) In the month of notification from the State agency of a provider determination in accordance with § 273.7(c)(18)(i).

(2) *Good cause.* As determined by the State agency, if an individual would have fulfilled the work requirement as defined in paragraph (a)(1) of this section, but missed some hours for good cause, the individual shall be considered to have fulfilled the work requirement if the absence from work, the work program, or the workfare program is temporary. Good cause shall include circumstances beyond the individual's control, such as, but not limited to, illness, illness of another household member requiring the presence of the member, a household emergency, or the unavailability of transportation. In addition, if the State agency grants an individual good cause under § 273.7(i) for failure or refusal to meet the mandatory E&T requirement, that good cause determination confers good cause under this paragraph, except in the case of § 273.7(i)(4), without the need for a separate good cause determination under this paragraph. Good cause granted under § 273.7(i)(4) only provides good cause to ABAWDs for failure or refusal to participate in a mandatory SNAP E&T program, and does not confer good cause for failure to fulfill the work requirement in paragraph (a)(1) of this section.

GOV000036

7 CFR 273.24 (up to date as of 3/02/2026)
Time limit for able-bodied adults.

7 CFR 273.24(b)(3)

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 38 of 222

(3) *Measuring the three-year period.* The State agency may measure and track the three-year period as it deems appropriate. The State agency may use either a "fixed" or "rolling" clock. If the State agency chooses to switch tracking methods it must inform FNS in writing. With respect to a State, the three-year period:

(i) Shall be measured and tracked consistently so that individuals who are similarly situated are treated the same; and

(ii) Shall not include any period before the earlier of November 22, 1996, or the date the State notified SNAP recipients of the application of Section 824 of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Pub. L. 104-193).

(4) *Treatment of income and resources.* The income and resources of an individual made ineligible under this paragraph (b) shall be handled in accordance with § 273.11(c)(2).

(5) *Benefits received erroneously.* If an individual subject to this section receives SNAP benefits erroneously, the State agency shall consider the benefits to have been received for purposes of this provision unless or until the individual pays it back in full.

(6) *Verification.* Verification shall be in accordance with § 273.2(f)(1) and (f)(8).

(7) *Reporting.* A change in work hours below 20 hours per week, averaged monthly, is a reportable change in accordance with § 273.12(a)(1)(viii). Regardless of the type of reporting system the State agency assigns to potential ABAWDs, the State agency must adhere to the statutory requirements of time-limited benefits for individuals who are subject to the work requirement. The State agency may opt to consider work performed in a job that was not reported according to the requirements of § 273.12 "work."

(8) The State agency shall inform all ABAWDs of the ABAWD work requirement and time limit both in writing and orally in accordance with § 273.7(c)(1)(ii) and (iii).

(c) *Exceptions.* The time limit does not apply to an individual if he or she is:

(1) Under 18 or 55 years of age or older;

(2) Determined by the State agency to be medically certified as physically or mentally unfit for employment. An individual is medically certified as physically or mentally unfit for employment if he or she:

(i) Is receiving temporary or permanent disability benefits issued by governmental or private sources;

(ii) Is obviously mentally or physically unfit for employment as determined by the State agency; or

(iii) If the unfitness is not obvious, provides a statement from a physician, physician's assistant, nurse, nurse practitioner, designated representative of the physician's office, a licensed or certified psychologist, a social worker, or any other medical personnel the State agency determines appropriate, that he or she is physically or mentally unfit for employment.

(3) Is a parent (natural, adoptive, or step) of a household member under age 18, even if the household member who is under 18 is not himself eligible for SNAP benefits;

(4) Is residing in a household where a household member is under age 18, even if the household member who is under 18 is not himself eligible for SNAP benefits;

GOV000037

7 CFR 273.24 (up to date as of 3/02/2026)
Time limit for able-bodied adults.

7 CFR 273.24(c)(5)

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 39 of 222

(5)  Is otherwise exempt from work requirements under section 6(d)(2) of the Food and Nutrition Act of 2008, as implemented in regulations at § 273.7(b);

(6)  Is pregnant;

(7)  Homeless, as defined in § 271.2 of this chapter;

(8)  A veteran, defined as an individual who, regardless of the conditions of their discharge or release from, served in the United States Armed Forces (such as Army, Marine Corps, Navy, Air Force, Space Force, Coast Guard, and National Guard), including an individual who served in a reserve component of the Armed Forces, or served as a commissioned officer of the Public Health Service, Environmental Scientific Services Administration, or the National Oceanic and Atmospheric Administration; or

(9)  An individual who is 24 years of age or younger and who was in foster care under the responsibility of any State, District, U.S. Territories, Indian Tribal Organization, or Unaccompanied Refugee Minors Program on the date of attaining 18 years of age, including those who remain in extended foster care in States that have elected to extend foster care in accordance with section 475(8)(B)(iii) of the Social Security Act (42 U.S.C. 675(8)(B)(iii)) or those who leave extended foster care before the maximum age.

(10)  Unless otherwise changed by law, the exceptions provided at paragraphs (c)(7) through (9) of this section cease to have effect on October 1, 2030, and the age limit provided in paragraph (c)(1) of this section reverts from "55 years of age or older" to "50 years of age or older" on October 1, 2030.

(d)  *Regaining eligibility.*

(1)  An individual denied eligibility under paragraph (b) of this section, or who did not reapply for benefits because he was not meeting the work requirements under paragraph (b) of this section, shall regain eligibility to participate in SNAP if, as determined by the State agency, during any 30 consecutive days, he or she:

(i)  Worked 80 or more hours;

(ii)  Participated in and complied with the requirements of a work program for 80 or more hours;

(iii)  Any combination of work and participation in a work program for a total of 80 hours; or participated in and complied with a workfare program; or

(iv)  At State agency option, verifies that the he or she will meet one of the requirements in paragraphs (d)(1)(i), (d)(1)(ii), (d)(1)(iii), or (d)(1)(v) of this section, within the 30 days subsequent to application; or

(v)  Becomes exempt.

(2)  An individual regaining eligibility under paragraph (d)(1) of this section shall have benefits calculated as follows:

(i)  For individuals regaining eligibility by working, participating in a work program, or combining hours worked and hours participating in a work program, the State agency may either prorate benefits from the day the 80 hours are completed or from the date of application, or

(ii)  For individuals regaining eligibility by participating in a workfare program, and the workfare obligation is based on an estimated monthly allotment prorated back to the date of application, then the allotment issued must be prorated back to this date.

GOV000038

7 CFR 273.24 (up to date as of 3/02/2026)
Time limit for able-bodied adults.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 40 of 222

7 CFR 273.24(d)(3)

(3)  There is no limit on how many times an individual may regain eligibility and subsequently maintain eligibility by meeting the work requirement.

(e)  *Additional three-month eligibility.* An individual who regained eligibility under paragraph (d) of this section and who is no longer fulfilling the work requirement as defined in paragraph (a) of this section is eligible for a period of three consecutive countable months (as defined in paragraph (b) of this section), starting on the date the individual first notifies the State agency that he or she is no longer fulfilling the work requirement, unless the individual has been satisfying the work requirement by participating in a work or workfare program, in which case the period starts on the date the State agency notifies the individual that he or she is no longer meeting the work requirement. An individual shall not receive benefits under this paragraph (e) more than once in any three-year period.

(f)  *Waivers* —

(1)  *General.* On the request of a State agency, FNS may waive the time limit for a group of individuals in the State if we determine that the area in which the individuals reside:

(i)  Has an unemployment rate of over 10 percent; or

(ii)  Does not have a sufficient number of jobs to provide employment for the individuals.

(2)  *Required data.* The State agency may submit whatever data it deems appropriate to support its request. However, to support waiver requests based on unemployment rates or labor force data, States must submit data that relies on standard Bureau of Labor Statistics (BLS) data or methods. A non-exhaustive list of the kinds of data a State agency may submit follows:

(i)  To support a claim of unemployment over 10 percent, a State agency may submit evidence that an area has a recent 12 month average unemployment rate over 10 percent; a recent three month average unemployment rate over 10 percent; or an historical seasonal unemployment rate over 10 percent; or

(ii)  To support a claim of lack of sufficient jobs, a State may submit evidence that an area: Is designated as a Labor Surplus Area (LSA) by the Department of Labor's Employment and Training Administration (ETA); is determined by the Department of Labor's Unemployment Insurance Service as qualifying for extended unemployment benefits; has a low and declining employment-to-population ratio; has a lack of jobs in declining occupations or industries; is described in an academic study or other publications as an area where there are lack of jobs; has a 24-month average unemployment rate 20 percent above the national average for the same 24-month period. This 24-month period may not be any earlier than the same 24-month period the ETA uses to designate LSAs for the current fiscal year.

(3)  *Waivers that are readily approvable.* FNS will approve State agency waivers where FNS confirms:

(i)  Data from the BLS or the BLS cooperating agency that shows an area has a most recent 12 month average unemployment rate over 10 percent;

(ii)  Evidence that the area has been designated a Labor Surplus Area by the ETA for the current fiscal year; or

(iii)  Data from the BLS or the BLS cooperating agency that an area has a 24 month average unemployment rate that exceeds the national average by 20 percent for any 24-month period no earlier than the same period the ETA uses to designate LSAs for the current fiscal year.

GOV000039

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 41 of 222

(4) *Effective date of certain waivers.* In areas for which the State certifies that data from the BLS or the BLS cooperating agency show a most recent 12 month average unemployment rate over 10 percent; or the area has been designated as a Labor Surplus Area by the Department of Labor's Employment and Training Administration for the current fiscal year, the State may begin to operate the waiver at the time the waiver request is submitted. FNS will contact the State if the waiver must be modified.

(5) *Duration of waiver.* In general, waivers will be approved for one year. The duration of a waiver should bear some relationship to the documentation provided in support of the waiver request. FNS will consider approving waivers for up to one year based on documentation covering a shorter period, but the State agency must show that the basis for the waiver is not a seasonal or short term aberration. We reserve the right to approve waivers for a shorter period at the State agency's request or if the data is insufficient. We reserve the right to approve a waiver for a longer period if the reasons are compelling.

(6) *Areas covered by waivers.* States may define areas to be covered by waivers. We encourage State agencies to submit data and analyses that correspond to the defined area. If corresponding data does not exist, State agencies should submit data that corresponds as closely to the area as possible.

(g) *Discretionary exemptions.*

(1) For the purpose of establishing the discretionary exemptions for each State agency, the following terms are defined:

(i) *Caseload* means the average monthly number of individuals receiving SNAP benefits during the 12-month period ending the preceding June 30.

(ii) *Covered individual* means a SNAP recipient, or an applicant denied eligibility for benefits solely because he or she received SNAP benefits during the 3 months of eligibility provided under paragraph (b) of this section, who:

(A) Is not exempt from the time limit under paragraph (c) of this section;

(B) Does not reside in an area covered by a waiver granted under paragraph (f) of this section;

(C) Is not fulfilling the work requirements as defined in paragraph (a)(1) of this section; and

(D) Is not receiving SNAP benefits under paragraph (e) of this section.

(2) Subject to paragraphs (h) and (i) of this section, a State agency may provide an exemption from the 3-month time limit of paragraph (b) of this section for covered individuals. Exemptions do not count towards a State agency's allocation if they are provided to an individual who is otherwise exempt from the time limit during that month.

(3) For each fiscal year, a State agency may provide a number of exemptions such that the average monthly number of exemptions in effect during the fiscal year does not exceed 8 percent of the number of covered individuals in the State, as estimated by FNS, based on FY 1996 quality control data and other factors FNS deems appropriate, and adjusted by FNS to reflect changes in:

(i) The State agency's caseload; and

(ii) FNS's estimate of changes in the proportion of SNAP recipients covered by waivers granted under paragraph (f) of this section.

GOV000040

7 CFR 273.24 (up to date as of 3/02/2026)
Time limit for able-bodied adults.

7 CFR 273.24(g)(4)

(4) State agencies must not discriminate against any covered individual for reasons of age, race, color, sex, disability, religious creed, national origin, or political beliefs. Such discrimination is prohibited by this part, the Food and Nutrition Act of 2008, the Age Discrimination Act of 1975 (Public Law 94-135), the Rehabilitation Act of 1973 (Public Law 93-112, section 504), and title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d). Enforcement action may be brought under any applicable Federal law. Title VI complaints will be processed in accord with 7 CFR part 15.

(h) *Adjustments.* FNS will make adjustments as follows:

(1) *Caseload adjustments.* FNS will adjust the number of exemptions estimated for a State agency under paragraph (g)(2) of this section during a fiscal year if the number of SNAP recipients in the State varies from the State's caseload by more than 10 percent, as estimated by FNS.

(2) *Exemption adjustments.* During each fiscal year, FNS will adjust the number of exemptions allocated to a State agency based on the number of exemptions in effect in the State for the preceding fiscal year.

(i) If the State agency does not use all of its exemptions by the end of the fiscal year, FNS will increase the estimated number of exemptions allocated to the State agency for the subsequent fiscal year by the remaining balance. Starting in FY 2026, FNS will increase the estimated number of exemptions allocated to the State agency for the subsequent fiscal year by the remaining balance of unused exemptions earned for the previous fiscal year. FNS will consider the State agency to use exemptions in order of accrual (first-in, first-out) for the purposes of calculating carryover of unused exemptions.

(ii) If the State agency exceeds its exemptions by the end of the fiscal year, FNS will reduce the estimated number of exemptions allocated to the State agency for the subsequent fiscal year by the corresponding number.

(i) *Reporting requirement.* The State agency will track the number of exemptions used each month and report this number to the regional office on a quarterly basis as an addendum to the quarterly Employment and Training Report (Form FNS-583) required by § 273.7(c)(8).

(j) *Other Program rules.* Nothing in this section will make an individual eligible for SNAP benefits if the individual is not otherwise eligible for benefits under the other provisions of this part and the Food and Nutrition Act of 2008.

(k) *Screening.* The State agency must screen individuals for all exceptions from the time limit listed under paragraph (c) of this section at certification and recertification. The State agency must not assign countable months unless it has screened the individual and determined that no exception applies. When an individual qualifies for more than one exception, the State agency must apply the exception that will be in effect the longest.

(1) Changes in exception status during the certification period.

(i) *Loss of an exception.* If during the certification period an individual has a change in circumstances that results in the loss of an exception from the time limit, the State agency cannot begin assigning countable months until it screens the individual to determine whether any other exception applies.

(ii) *Newly meeting an exception.* If during the certification period an individual subject to the time limit has a change in circumstance that results in the individual now meeting an exception, the State agency must act promptly to apply the exception and cannot assign a countable month

GOV000041

**7 CFR 273.24 (up to date as of 3/02/2026)**
Time limit for able-bodied adults.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 43 of 222

**7 CFR 273.24(l)**

once the State receives information that is not questionable. If the State agency determines the information is questionable, the State agency must act promptly to verify the information in accordance with paragraph (l) of this section. Once verified, the State agency must apply the exception and cannot assign countable months.

(l) *Verification of exceptions.* If the State agency determines an individual's exception status under paragraph (c) of this section is questionable, the State agency must first attempt to verify exception status using information available to the State agency, such as information from other public assistance programs through data sharing, before requiring individuals provide documentary evidence or other sources of verification.

*[Amdt. 379, 64 FR 48257, Sept. 3, 1999, as amended at 66 FR 4469, Jan. 17, 2001; 67 FR 41618, June 19, 2002; 71 FR 33384, June 9, 2006; 84 FR 66811, Dec. 5, 2019; 84 FR 66811, Dec. 5, 2020; 86 FR 410, Jan. 5, 2021; 86 FR 34605, June 30, 2021; 89 FR 102362, Dec. 17, 2024; 89 FR 90569, Nov. 18, 2024]*

GOV000042

7 CFR 273.4 (up to date as of 3/02/2026)
Citizenship and alien status.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 44 of 222
7 CFR 273.4 (Mar. 2, 2026)

This content is from the eCFR and is authoritative but unofficial.

# Title 7 —Agriculture
## Subtitle B —Regulations of the Department of Agriculture
## Chapter II —Food and Nutrition Service, Department of Agriculture
## Subchapter C —Supplemental Nutrition Assistance and Food Distribution Program
## Part 273 —Certification of Eligible Households
## Subpart B —Residency and Citizenship

**Authority:** 7 U.S.C. 2011-2036.

**Editorial Note:** Nomenclature changes to subchapter C appear by Amdt. 381, 65 FR 64586, Oct. 30, 2000.

**Editorial Notes:** 1. OMB control numbers relating to this part 273 are contained in § 271.8.

2. Nomenclature changes to part 273 appear at 84 FR 15093, Apr. 15, 2019.

## § 273.4 Citizenship and alien status.

(a) *Household members meeting citizenship or alien status requirements.* No person is eligible to participate in the Program unless that person is:

(1) A U.S. citizen[1];

(2) A U.S. non-citizen national[1]

(3) An individual who is:

    (i) An American Indian born in Canada who possesses at least 50 per centum of blood of the American Indian race to whom the provisions of section 289 of the Immigration and Nationality Act (INA) (8 U.S.C. 1359) apply; or

    (ii) A member of an Indian tribe as defined in section 4(e) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450b(e)) which is recognized as eligible for the special programs and services provided by the U.S. to Indians because of their status as Indians;

(4) An individual who is:

    (i) Lawfully residing in the U.S. and was a member of a Hmong or Highland Laotian tribe at the time that the tribe rendered assistance to U.S. personnel by taking part in a military or rescue operation during the Vietnam era beginning August 5, 1964, and ending May 7, 1975;

    (ii) The spouse, or surviving spouse of such Hmong or Highland Laotian who is deceased, or

    (iii) An unmarried dependent child of such Hmong or Highland Laotian who is under the age of 18 or if a full-time student under the age of 22; an unmarried child under the age of 18 or if a full time student under the age of 22 of such a deceased Hmong or Highland Laotian provided the child was dependent upon him or her at the time of his or her death; or an unmarried disabled

[1] For guidance, see the DOJ Interim Guidance published November 17, 1997 (62 FR 61344).

GOV000043

7 CFR 273.4 (up to date as of 3/02/2026)
Citizenship and alien status.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 45 of 222

7 CFR 273.4(a)(5)

child age 18 or older if the child was disabled and dependent on the person prior to the child's 18th birthday. For purposes of this paragraph (a)(4)(iii), child means the legally adopted or biological child of the person described in paragraph (a)(4)(i) of this section, or

(5) An individual who is:

  (i) An alien who has been subjected to a severe form of trafficking in persons and who is certified by the Department of Health and Human Services, to the same extent as an alien who is admitted to the United States as a refugee under Section 207 of the INA; or

  (ii) An alien who has been subjected to a severe form of trafficking in persons and who is under the age of 18, to the same extent as an alien who is admitted to the United States as a refugee under Section 207 of the INA;

  (iii) The spouse, child, parent or unmarried minor sibling of a victim of a severe form of trafficking in persons under 21 years of age, and who has received a derivative T visa, to the same extent as an alien who is admitted to the United States as a refugee under Section 207 of the INA; or

  (iv) The spouse or child of a victim of a severe form of trafficking in persons 21 years of age or older, and who has received a derivative T visa, to the same extent as an alien who is admitted to the United States as a refugee under Section 207 of the INA; or

(6) An individual who is both a qualified alien as defined in paragraph (a)(6)(i) of this section and an eligible alien as defined in paragraph (a)(6)(ii) or (a)(6)(iii) of this section.

  (i) A qualified alien is:

    (A) An alien who is lawfully admitted for permanent residence under the INA;

    (B) An alien who is granted asylum under section 208 of the INA;

    (C) A refugee who is admitted to the United States under section 207 of the INA;

    (D) An alien who is paroled into the U.S. under section 212(d)(5) of the INA for a period of at least 1 year;

    (E) An alien whose deportation is being withheld under section 243(h) of the INA as in effect prior to April 1, 1997, or whose removal is withheld under section 241(b)(3) of the INA;

    (F) An alien who is granted conditional entry pursuant to section 203(a)(7) of the INA as in effect prior to April 1, 1980;

    (G) An alien who has been battered or subjected to extreme cruelty in the U.S. by a spouse or a parent or by a member of the spouse or parent's family residing in the same household as the alien at the time of the abuse, an alien whose child has been battered or subjected to battery or cruelty, or an alien child whose parent has been battered;[2] or

    (H) An alien who is a Cuban or Haitian entrant, as defined in section 501(e) of the Refugee Education Assistance Act of 1980.

---

[2] For guidance, see Exhibit B to Attachment 5 of the DOJ Interim Guidance published at 62 FR 61344 on November 17, 1997.

GOV000044

7 CFR 273.4 (up to date as of 3/02/2026)
Citizenship and alien status.

Case 6:25-cv-02186-MTK          Document 77          Filed 03/16/26          Page 46 of 222

7 CFR 273.4(a)(6)(ii)

(ii) A qualified alien, as defined in paragraph (a)(6)(i) of this section, is eligible to receive SNAP benefits and is not subject to the requirement to be in qualified status for 5 years as set forth in paragraph (a)(6)(iii) of this section, if such individual meets at least one of the criteria of this paragraph (a)(6)(ii):

(A) An alien age 18 or older lawfully admitted for permanent residence under the INA who has 40 qualifying quarters as determined under Title II of the SSA, including qualifying quarters of work not covered by Title II of the SSA, based on the sum of: quarters the alien worked; quarters credited from the work of a parent of the alien before the alien became 18 (including quarters worked before the alien was born or adopted); and quarters credited from the work of a spouse of the alien during their marriage if they are still married or the spouse is deceased.

(1) A spouse may not get credit for quarters of a spouse when the couple divorces prior to a determination of SNAP eligibility. However, if the State agency determines eligibility of an alien based on the quarters of coverage of the spouse, and then the couple divorces, the alien's eligibility continues until the next recertification. At that time, the State agency must determine the alien's eligibility without crediting the alien with the former spouse's quarters of coverage.

(2) After December 31, 1996, a quarter in which the alien actually received any Federal means-tested public benefit, as defined by the agency providing the benefit, or actually received SNAP benefits is not creditable toward the 40-quarter total. Likewise, a parent's or spouse's quarter is not creditable if the parent or spouse actually received any Federal means-tested public benefit or actually received SNAP benefits in that quarter. The State agency must evaluate quarters of coverage and receipt of Federal means-tested public benefits on a calendar year basis. The State agency must first determine the number of quarters creditable in a calendar year, then identify those quarters in which the alien (or the parent(s) or spouse of the alien) received Federal means-tested public benefits and then remove those quarters from the number of quarters of coverage earned or credited to the alien in that calendar year. However, if the alien earns the 40th quarter of coverage prior to applying for SNAP benefits or any other Federal means-tested public benefit in that same quarter, the State agency must allow that quarter toward the 40 qualifying quarters total;

(B) An alien admitted as a refugee under section 207 of the INA;

(C) An alien granted asylum under section 208 of the INA;

(D) An alien whose deportation is withheld under section 243(h) of the INA as in effect prior to April 1, 1997, or whose removal is withheld under section 241(b)(3) or the INA;

(E) An alien granted status as a Cuban or Haitian entrant (as defined in section 501(e) of the Refugee Education Assistance Act of 1980);

(F) An Amerasian admitted pursuant to section 584 of Public Law 100-202, as amended by Public Law 100-461;

(G) An alien with one of the following military connections:

GOV000045

7 CFR 273.4 (up to date as of 3/02/2026)
Citizenship and alien status.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 47 of 222

7 CFR 273.4(a)(6)(ii)(G)(1)

(1) A veteran who was honorably discharged for reasons other than alien status, who fulfills the minimum active-duty service requirements of 38 U.S.C. 5303A(d), including an individual who died in active military, naval or air service. The definition of veteran includes an individual who served before July 1, 1946, in the organized military forces of the Government of the Commonwealth of the Philippines while such forces were in the service of the Armed Forces of the U.S. or in the Philippine Scouts, as described in 38 U.S.C. 107;

(2) An individual on active duty in the Armed Forces of the U.S. (other than for training); or

(3) The spouse and unmarried dependent children of a person described in paragraphs (a)(6)(ii)(G)(1) or (a)(6)(ii)(G)(2) of this section, including the spouse of a deceased veteran, provided the marriage fulfilled the requirements of 38 U.S.C. 1304, and the spouse has not remarried. An unmarried dependent child for purposes of this paragraph (a)(6)(ii)(G)(3) is: a child who is under the age of 18 or, if a full-time student, under the age of 22; such unmarried dependent child of a deceased veteran provided such child was dependent upon the veteran at the time of the veteran's death; or an unmarried disabled child age 18 or older if the child was disabled and dependent on the veteran prior to the child's 18th birthday. For purposes of this paragraph (a)(6)(ii)(G)(3), child means the legally adopted or biological child of the person described in paragraph (a)(6)(ii)(G)(1) or (a)(6)(ii)(G)(2) of this section.

(H) An individual who is receiving benefits or assistance for blindness or disability (as specified in § 271.2 of this chapter).

(I) An individual who on August 22, 1996, was lawfully residing in the U.S., and was born on or before August 22, 1931; or

(J) An individual who is under 18 years of age.

(iii) The following qualified aliens, as defined in paragraph (a)(6)(i) of this section, must be in a qualified status for 5 years before being eligible to receive SNAP benefits. The 5 years in qualified status may be either consecutive or nonconsecutive. Temporary absences of less than 6 months from the United States with no intention of abandoning U.S. residency do not terminate or interrupt the individual's period of U.S. residency. If the resident is absent for more than 6 months, the agency shall presume that U.S. residency was interrupted unless the alien presents evidence of his or her intent to resume U.S. residency. In determining whether an alien with an interrupted period of U.S. residency has resided in the United States for 5 years, the agency shall consider all months of residency in the United States, including any months of residency before the interruption:

(A) An alien age 18 or older lawfully admitted for permanent residence under the INA.

(B) An alien who is paroled into the U.S. under section 212(d)(5) of the INA for a period of at least 1 year;

(C) An alien who has been battered or subjected to extreme cruelty in the U.S. by a spouse or a parent or by a member of the spouse or parent's family residing in the same household as the alien at the time of the abuse, an alien whose child has been battered or subjected to battery or cruelty, or an alien child whose parent has been battered;

GOV000046

7 CFR 273.4 (up to date as of 3/02/2026)
Citizenship and alien status.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 48 of 222

7 CFR 273.4(a)(6)(iii)(D)

(D) An alien who is granted conditional entry pursuant to section 203(a)(7) of the INA as in effect prior to April 1, 1980.

(iv) Each category of eligible alien status stands alone for purposes of determining eligibility. Subsequent adjustment to a more limited status does not override eligibility based on an earlier less rigorous status. Likewise, if eligibility expires under one eligible status, the State agency must determine if eligibility exists under another status.

(7) For purposes of determining eligible alien status in accordance with paragraphs (a)(4) and (a)(6)(ii)(I) of this section "lawfully residing in the U.S." means that the alien is lawfully present as defined at 8 CFR 103.12(a).

(b) *Reporting illegal aliens.*

(1) The State agency must inform the local USCIS office immediately whenever personnel responsible for the certification or recertification of households determine that any member of a household is ineligible to receive SNAP benefits because the member is present in the U.S. in violation of the INA. The State agency may meet this requirement by conforming with the Interagency Notice providing guidance for compliance with PRWORA section 404 published on September 28, 2000 (65 FR 58301).

(2) When a household indicates inability or unwillingness to provide documentation of alien status for any household member, the State agency must classify that member as an ineligible alien. When a person indicates inability or unwillingness to provide documentation of alien status, the State agency must classify that person as an ineligible alien. In such cases the State agency must not continue efforts to obtain that documentation.

(c) *Households containing sponsored alien members* —

(1) *Definition.* A sponsored alien is an alien for whom a person (the sponsor) has executed an affidavit of support (USCIS Form I-864 or I-864A) on behalf of the alien pursuant to section 213A of the INA.

(2) *Deeming of sponsor's income and resources.* For purposes of this paragraph (c)(2), only in the event a sponsored alien is an eligible alien in accordance with paragraph (a) of this section will the State agency consider available to the household the income and resources of the sponsor and spouse. For purposes of determining the eligibility and benefit level of a household of which an eligible sponsored alien is a member, the State agency must deem the income and resources of sponsor and the sponsor's spouse, if he or she has executed USCIS Form I-864 or I-864A, as the unearned income and resources of the sponsored alien. The State agency must deem the sponsor's income and resources until the alien gains U. S. citizenship, has worked or can receive credit for 40 qualifying quarters of work as described in paragraph (a)(6)(ii)(A) of this section, or the sponsor dies.

(i) The monthly income of the sponsor and sponsor's spouse (if he or she has executed USCIS Form I-864 or I-864A) deemed as that of the eligible sponsored alien must be the total monthly earned and unearned income, as defined in § 273.9(b) with the exclusions provided in § 273.9(c) of the sponsor and sponsor's spouse at the time the household containing the sponsored alien member applies or is recertified for participation, reduced by:

(A) A 20 percent earned income amount for that portion of the income determined as earned income of the sponsor and the sponsor's spouse; and

7 CFR 273.4 (up to date as of 3/02/2026)
Citizenship and alien status.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 49 of 222

7 CFR 273.4(c)(2)(i)(B)

(B) An amount equal to the Program's monthly gross income eligibility limit for a household equal in size to the sponsor, the sponsor's spouse, and any other person who is claimed or could be claimed by the sponsor or the sponsor's spouse as a dependent for Federal income tax purposes.

(ii) If the alien has already reported gross income information on his or her sponsor in compliance with the sponsored alien rules of another State agency administered assistance program, the State agency may use that income amount for SNAP deeming purposes. However, the State agency must limit allowable reductions to the total gross income of the sponsor and the sponsor's spouse prior to attributing an income amount to the alien to amounts specified in paragraphs (c)(2)(i)(A) and (c)(2)(i)(B) of this section.

(iii) The State agency must consider as income to the alien any money the sponsor or the sponsor's spouse pays to the eligible sponsored alien, but only to the extent that the money exceeds the amount deemed to the eligible sponsored alien in accordance with paragraph (c)(2)(i) of this section.

(iv) The State agency must deem as available to the eligible sponsored alien the total amount of the resources of the sponsor and sponsor's spouse as determined in accordance with § 273.8, reduced by $1,500.

(v) If a sponsored alien can demonstrate to the State agency's satisfaction that his or her sponsor is the sponsor of other aliens, the State agency must divide the income and resources deemed under the provisions of paragraphs (c)(2)(i) and (c)(2)(iii) of this section by the number of such sponsored aliens. The State agency must use the same procedure to determine the amount of deemed income and resources to exclude in the case of a sponsored alien or a citizen child of a sponsored alien who is exempt from deeming in accordance with paragraphs (c)(3)(vi) or (c)(3)(vii) of this section.

(3) *Exempt aliens.* The provisions of paragraph (c)(2) of this section do not apply to:

(i) An alien who is a member of his or her sponsor's SNAP household;

(ii) An alien who is sponsored by an organization or group as opposed to an individual;

(iii) An alien who is not required to have a sponsor under the Immigration and Nationality Act, such as a refugee, a parolee, an asylee, or a Cuban or Haitian entrant;

(iv) An indigent alien that the State agency has determined is unable to obtain food and shelter taking into account the alien's own income plus any cash, food, housing, or other assistance provided by other individuals, including the sponsor(s). Prior to determining whether an alien is indigent, the State agency must explain the purpose of the determination to the alien and/or household representative and provide the alien and/or household representative the opportunity to refuse the determination. If the household refuses the determination, the State agency will not complete the determination and will deem the sponsor's income and resources to the alien's household in accordance with paragraph (c)(2) of this section. The State agency must inform the sponsored alien of the consequences of refusing this determination. For purposes of this paragraph (c)(3)(iv), the phrase "is unable to obtain food and shelter" means that the sum of the eligible sponsored alien's household's own income, the cash contributions of the sponsor and others, and the value of any in-kind assistance the sponsor and others provide, does not exceed 130 percent of the poverty income guideline for the household's size. The State agency must determine the amount of income and other assistance provided in the

GOV000048

7 CFR 273.4 (up to date as of 3/02/2026)
Citizenship and alien status.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 50 of 222

7 CFR 273.4(c)(3)(v)

month of application. If the alien is indigent, the only amount that the State agency must deem to such an alien will be the amount actually provided for a period beginning on the date of such determination and ending 12 months after such date. Each indigence determination is renewable for additional 12-month periods. The State agency must notify the Attorney General of each such determination, including the names of the sponsor and the sponsored alien involved. State agencies may develop an administrative process under which information about the sponsored alien is not shared with the Attorney General or the sponsor without the sponsored alien's consent. The State agency must inform the sponsored alien of the consequences of failure to provide such consent. If the sponsored alien fails to provide consent, he or she shall be ineligible pursuant to paragraph (c)(5) of this section, and the State agency shall determine the eligibility and benefit level of the remaining household members in accordance with § 273.11(c).

(v) A battered alien spouse, alien parent of a battered child, or child of a battered alien, for 12 months after the State agency determines that the battering is substantially connected to the need for benefits, and the battered individual does not live with the batterer.[3] After 12 months, the State agency must not deem the batterer's income and resources if the battery is recognized by a court or the USCIS and has a substantial connection to the need for benefits, and the alien does not live with the batterer.

(vi) A sponsored alien child under 18 years of age of a sponsored alien.

(vii) A citizen child under age 18 of a sponsored alien.

(4) *Eligible sponsored alien's responsibilities.* During the period the alien is subject to deeming, the eligible sponsored alien is responsible for obtaining the cooperation of the sponsor and for providing the State agency at the time of application and at the time of recertification with the information and documentation necessary to calculate deemed income and resources in accordance with paragraphs (c)(2)(i) through (c)(2)(v) of this section. The eligible sponsored alien is responsible for providing the names and other identifying factors of other aliens for whom the alien's sponsor has signed an affidavit of support. The State agency must attribute the entire amount of income and resources to the applicant eligible sponsored alien until he or she provides the information specified under this paragraph (c)(4). The eligible sponsored alien is also responsible for reporting the required information about the sponsor and sponsor's spouse should the alien obtain a different sponsor during the certification period and for reporting a change in income should the sponsor or the sponsor's spouse change or lose employment or die during the certification period. The State agency must handle such changes in accordance with the timeliness standards described in § 273.12 or § 273.21, as appropriate.

(5) *Awaiting verification.* Until the alien provides information or verification necessary to carry out the provisions of paragraph (c)(2) of this section, the sponsored alien is ineligible. The State agency must determine the eligibility of any remaining household members. The State agency must consider available to the remaining household members the income and resources of the ineligible alien (excluding the deemed income and resources of the alien's sponsor and sponsor's spouse) in determining the eligibility and benefit level of the remaining household members in accordance with § 273.11(c). If the sponsored alien refuses to cooperate in providing information or verification, other

---

[3] For guidance, see Exhibit B to Attachment 5 of the DOJ Interim Guidance published November 17, 1997 (62 FR 61344).

GOV000049

adult members of the alien's household are responsible for providing the information or verification required in accordance with the provisions of § 273.2(d). If the State agency subsequently receives information or verification, it must act on the information as a reported change in household membership in accordance with the timeliness standards in § 273.12 or § 273.21, as appropriate. If the same sponsor is responsible for the entire household, the entire household is ineligible until such time as the household provides the needed sponsor information or verification. The State agency must assist aliens in obtaining verification in accordance with the provisions of § 273.2(f)(5).

(6) *Demands for restitution.* The State agency must exclude any sponsor who is participating in the Program from any demand made under 8 CFR 213a.4(a) for the value of SNAP benefits issued to an eligible sponsored alien he or she sponsors.

[Amdt. 388, 65 FR 70200, Nov. 21, 2000, as amended at 75 FR 4947, Jan. 29, 2010]

GOV000050

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

Case 6:25-cv-02186-MTK     Document 77     Filed 03/16/26     Page 52 of 222

7 CFR 273.9 (Mar. 2, 2026)

This content is from the eCFR and is authoritative but unofficial.

Title 7 —Agriculture

Subtitle B —Regulations of the Department of Agriculture

Chapter II —Food and Nutrition Service, Department of Agriculture

Subchapter C —Supplemental Nutrition Assistance and Food Distribution Program

Part 273 —Certification of Eligible Households

Subpart D —Eligibility and Benefit Levels

Authority:  7 U.S.C. 2011-2036.

Editorial Note:  Nomenclature changes to subchapter C appear by Amdt. 381, 65 FR 64586, Oct. 30, 2000.

Editorial Notes:  1. OMB control numbers relating to this part 273 are contained in § 271.8.

2. Nomenclature changes to part 273 appear at 84 FR 15093, Apr. 15, 2019.

## § 273.9 Income and deductions.

(a)  *Income eligibility standards.* Participation in the Program shall be limited to those households whose incomes are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet. Households which contain an elderly or disabled member shall meet the net income eligibility standards for SNAP. Households which do not contain an elderly or disabled member shall meet both the net income eligibility standards and the gross income eligibility standards for SNAP. Households which are categorically eligible as defined in § 273.2(j)(2) or 273.2(j)(4) do not have to meet either the gross or net income eligibility standards. The net and gross income eligibility standards shall be based on the Federal income poverty levels established as provided in section 673(2) of the Community Services Block Grant Act (42 U.S.C. 9902(2)).

(1)  The gross income eligibility standards for SNAP shall be as follows:

(i)  The income eligibility standards for the 48 contiguous States and the District of Columbia, Guam and the Virgin Islands shall be 130 percent of the Federal income poverty levels for the 48 contiguous States and the District of Columbia.

(ii)  The income eligibility standards for Alaska shall be 130 percent of the Federal income poverty levels for Alaska.

(iii)  The income eligibility standards for Hawaii shall be 130 percent of the Federal income poverty levels for Hawaii.

(2)  The net income eligibility standards for SNAP shall be as follows:

(i)  The income eligibility standards for the 48 contiguous States and the District of Columbia, Guam and the Virgin Islands shall be the Federal income poverty levels for the 48 contiguous States and the District of Columbia.

(ii)  The income eligibility standards for Alaska shall be the Federal income poverty levels for Alaska.

(iii)  The income eligibility standard for Hawaii shall be the Federal income poverty levels for Hawaii.

GOV000051

(3) The income eligibility limits, as described in this paragraph, are revised each October 1 to reflect the annual adjustment to the Federal income poverty guidelines for the 48 States and the District of Columbia, for Alaska, and for Hawaii.

    (i) 130 percent of the annual income poverty guidelines shall be divided by 12 to determine the monthly gross income standards, rounding the results upwards as necessary. For households greater than eight persons, the increment in the Federal income poverty guidelines is multiplied by 130 percent, divided by 12, and the results rounded upward if necessary.

    (ii) The annual income poverty guidelines shall be divided by 12 to determine the monthly net income eligibility standards, rounding the results upward as necessary. For households greater than eight persons, the increment in the Federal income poverty guidelines is divided by 12, and the results rounded upward if necessary.

(4) The monthly gross and net income eligibility standards for all areas will be prescribed in tables posted on the FNS web site, at *www.fns.usda.gov/snap*

(b) *Definition of income.* Household income shall mean all income from whatever source excluding only items specified in paragraph (c) of this section.

(1) Earned income shall include:

    (i) All wages and salaries of an employee.

    (ii) The gross income from a self-employment enterprise, including the total gain from the sale of any capital goods or equipment related to the business, excluding the costs of doing business as provided in paragraph (c) of this section. Ownership of rental property shall be considered a self-employment enterprise; however, income derived from the rental property shall be considered earned income only if a member of the household is actively engaged in the management of the property at least an average of 20 hours a week. Payments from a roomer or boarder, except foster care boarders, shall also be considered self-employment income.

    (iii) Training allowances from vocational and rehabilitative programs recognized by Federal, State, or local governments, such as the work incentive program, to the extent they are not a reimbursement. Training allowances under Workforce Investment Act of 1998, other than earnings as specified in paragraph (b)(1)(v) of this section, are excluded from consideration as income.

    (iv) Payments under Title I (VISTA, University Year for Action, etc.) of the Domestic Volunteer Service Act of 1973 (Pub. L. 93-113 Stat., as amended) shall be considered earned income and subject to the earned income deduction prescribed in § 273.10(e)(1)(i)(B), excluding payments made to those households specified in paragraph (c)(10)(iii) of this section.

    (v) Earnings to individuals who are participating in on-the-job training programs under Title 1 of the Workforce Investment Act of 1998. This provision does not apply to household members under 19 years of age who are under the parental control of another adult member, regardless of school attendance and/or enrollment as discussed in paragraph (c)(7) of this section. For the purpose of this provision, earnings include monies paid under the Workforce Investment Act and monies paid by the employer.

GOV000052

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

Case 6:25-cv-02186-MTK     Document 77     Filed 03/16/26     Page 54 of 222

7 CFR 273.9(b)(1)(vi)

(vi) Educational assistance which has a work requirement (such as work study, an assistantship or fellowship with a work requirement) in excess of the amount excluded under § 273.9(c)(3). Earned income from work study programs that are funded under section 20 U.S.C. 1087uu of the Higher Education Act is excluded.

(2) Unearned income shall include, but not be limited to:

(i) Assistance payments from Federal or federally aided public assistance programs, such as supplemental security income (SSI) or Temporary Assistance for Needy Families (TANF); general assistance (GA) programs (as defined in § 271.2); or other assistance programs based on need. Such assistance is considered to be unearned income even if provided in the form of a vendor payment (provided to a third party on behalf of the household), unless the vendor payment is specifically exempt from consideration as countable income under the provisions of paragraph (c)(1) of this section. Assistance payments from programs which require, as a condition of eligibility, the actual performance of work without compensation other than the assistance payments themselves, shall be considered unearned income.

(ii) Annuities; pensions; retirement, veteran's, or disability benefits; worker's or unemployment compensation including any amounts deducted to repay claims for intentional program violations as provided in § 272.12; old-age, survivors, or social security benefits; strike benefits; foster care payments for children or adults who are considered members of the household; gross income minus the cost of doing business derived from rental property in which a household member is not actively engaged in the management of the property at least 20 hours a week.

(iii) Support or alimony payments made directly to the household from nonhousehold members.

(iv) Scholarships, educational grants, deferred payment loans for education, veteran's educational benefits and the like, other than educational assistance with a work requirement, in excess of amounts excluded under § 273.9(c).

(v) Payments from Government-sponsored programs, dividends, interest, royalties, and all other direct money payments from any source which can be construed to be a gain or benefit.

(vi) Monies which are withdrawn or dividends which are or could be received by a household from trust funds considered to be excludable resources under § 273.8(e)(8). Such trust withdrawals shall be considered income in the month received, unless otherwise exempt under the provisions of paragraph (c) of this section. Dividends which the household has the option of either receiving as income or reinvesting in the trust are to be considered as income in the month they become available to the household unless otherwise exempt under the provisions of paragraph (c) of this section.

(3) The earned or unearned income of an individual disqualified from the household for intentional Program violation, in accordance with § 273.16, or as a result of a sanction imposed while he/she was participating in a household disqualified for failure to comply with workfare requirements, in accordance with § 273.22, shall continue to be attributed in their entirety to the remaining household members. However, the earned or unearned income of individuals disqualified from households for failing to comply with the requirement to provide an SSN, in accordance with § 273.6, or for being an ineligible alien, in accordance with § 273.4, shall continue to be counted as income, less a pro rata share for the individual. Procedures for calculating this pro rata share are described in § 273.11(c).

GOV000053

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

7 CFR 273.9(b)(4)

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 55 of 222

(4) For a household containing a sponsored alien, the income of the sponsor and the sponsor's spouse must be deemed in accordance with § 273.4(c)(2).

(5) Income shall not include the following:

(i) Moneys withheld from an assistance payment, earned income, or other income source, or moneys received from any income source which are voluntarily or involuntarily returned, to repay a prior overpayment received from that income source, provided that the overpayment was not excludable under paragraph (c) of this section. However, moneys withheld from assistance from another program, as specified in § 273.11(k), shall be included as income.

(ii) Child support payments received by TANF recipients which must be transferred to the agency administering title IV-D of the Social Security Act, as amended, to maintain TANF eligibility.

(c) *Income exclusions.* Only the following items shall be excluded from household income and no other income shall be excluded:

(1) Any gain or benefit which is not in the form of money payable directly to the household, including in-kind benefits and certain vendor payments. In-kind benefits are those for which no monetary payment is made on behalf of the household and include meals, clothing, housing, or produce from a garden. A vendor payment is a money payment made on behalf of a household by a person or organization outside of the household directly to either the household's creditors or to a person or organization providing a service to the household. Payments made to a third party on behalf of the household are included or excluded as income as follows:

(i) *Public assistance (PA) vendor payments.* PA vendor payments are counted as income unless they are made for:

(A) Medical assistance;

(B) Child care assistance;

(C) Energy assistance as defined in paragraph (c)(11) of this section;

(D) Emergency assistance (including, but not limited to housing and transportation payments) for migrant or seasonal farmworker households while they are in the job stream;

(E) Housing assistance payments made through a State or local housing authority;

(F) *Emergency and special assistance.* PA provided to a third party on behalf of a household which is not specifically excluded from consideration as income under the provisions of paragraphs (c)(1)(i)(A) through (c)(1)(i)(E) of this section shall be considered for exclusion under this provision. To be considered emergency or special assistance and excluded under this provision, the assistance must be provided over and above the normal PA grant or payment, or cannot normally be provided as part of such grant or payment. If the PA program is composed of various standards or components, the assistance would be considered over and above the normal grant or not part of the grant if the assistance is not included as a regular component of the PA grant or benefit or the amount of assistance exceeds the maximum rate of payment for the relevant component. If the PA program is not composed of various standards or components but is designed to provide a basic monthly grant or payment for all eligible households and provides a larger basic grant amount for all households in a particular category, e.g., all households with infants, the larger amount is still part of the normal grant or benefit for such households and not

GOV000054

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 56 of 222

7 CFR 273.9(c)(1)(ii)

an "extra" payment excluded under this provision. On the other hand, if a fire destroyed a household item and a PA program provides an emergency amount paid directly to a store to purchase a replacement, such a payment is excluded under this provision. If the PA program is not composed of various standards, allowances, or components but is simply designed to provide assistance on an as-needed basis rather than to provide routine, regular monthly benefits to a client, no exclusion would be granted under this provision because the assistance is not provided over and above the normal grant, it is the normal grant. If it is not clear whether a certain type of PA vendor payment is covered under this provision, the State agency shall apply to the appropriate FNS Regional Office for a determination of whether the PA vendor payments should be excluded. The application for this exclusion determination must explain the emergency or special nature of the vendor payment, the exact type of assistance it is intended to provide, who is eligible for the assistance, how the assistance is paid, and how the vendor payment fits into the overall PA benefit standard. A copy of the rules, ordinances, or statutes which create and authorize the program shall accompany the application request.

(ii) *General assistance (GA) vendor payments.* Vendor payments made under a State or local GA program or a comparable basic assistance program are excluded from income except for some vendor payments for housing. A housing vendor payment is counted as income unless the payment is for:

(A) Energy assistance (as defined in paragraph (c)(11) of this section);

(B) Housing assistance from a State or local housing authority;

(C) Emergency assistance for migrant or seasonal farmworker households while they are in the job stream;

(D) Emergency or special payments (as defined in paragraph (c)(1)(i)(F) of this section; or

(E) Assistance provided under a program in a State in which no GA payments may be made directly to the household in the form of cash.

(iii) *Department of Housing and Urban Development (HUD) vendor payments.* Rent or mortgage payments made to landlords or mortgagees by HUD are excluded.

(iv) *Educational assistance vendor payments.* Educational assistance provided to a third party on behalf of the household for living expenses shall be treated the same as educational assistance payable directly to the household.

(v) *Vendor payments that are reimbursements.* Reimbursements made in the form of vendor payments are excluded on the same basis as reimbursements paid directly to the household in accordance with paragraph (c)(5) of this section.

(vi) *Demonstration project vendor payments.* In-kind or vendor payments which would normally be excluded as income but are converted in whole or in part to a direct cash payment under a federally authorized demonstration project or waiver of provisions of Federal law shall be excluded from income.

(vii) *Other third-party payments.* Other third-party payments shall be handled as follows: moneys legally obligated and otherwise payable to the household which are diverted by the provider of the payment to a third party for a household expense shall be counted as income and not

GOV000055

**7 CFR 273.9 (up to date as of 3/02/2026)**
Income and deductions.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 57 of 222

**7 CFR 273.9(c)(1)(vii)(A)**

excluded. If a person or organization makes a payment to a third party on behalf of a household using funds that are not owed to the household, the payment shall be excluded from income. This distinction is illustrated by the following examples:

(A) A friend or relative uses his or her own money to pay the household's rent directly to the landlord. This vendor payment shall be excluded.

(B) A household member earns wages. However, the wages are garnished or diverted by the employer and paid to a third party for a household expense, such as rent. This vendor payment is counted as income. However, if the employer pays a household's rent directly to the landlord in addition to paying the household its regular wages, the rent payment shall be excluded from income. Similarly, if the employer provides housing to an employee in addition to wages, the value of the housing shall not be counted as income.

(C) A household receives court-ordered monthly support payments in the amount of $400. Later, $200 is diverted by the provider and paid directly to a creditor for a household expense. The payment is counted as income. Money deducted or diverted from a court-ordered support or alimony payment (or other binding written support or alimony agreement) to a third party for a household's expense shall be included as income because the payment is taken from money that is owed to the household. However, payments specified by a court order or other legally binding agreement to go directly to a third party rather than the household are excluded from income because they are not otherwise payable to the household. For example, a court awards support payments in the amount of $400 a month and in addition orders $200 to be paid directly to a bank for repayment of a loan. The $400 payment is counted as income and the $200 payment is excluded from income. Support payments not required by a court order or other legally binding agreement (including payments in excess of the amount specified in a court order or written agreement) which are paid to a third party on the household's behalf shall be excluded from income.

(2) Any income in the certification period which is received too infrequently or irregularly to be reasonably anticipated, but not in excess of $30 in a quarter.

(3)

(i) Educational assistance, including grants, scholarships, fellowships, work study, educational loans on which payment is deferred, veterans' educational benefits and the like.

(ii) To be excluded, educational assistance referred to in paragraph (c)(3)(i) must be:

(A) Received under 20 CFR 1087uu. This exemption includes student assistance received under part E of subchapter IV of Chapter 28 of title 20 and part C of subchapter I of chapter 34 of title 42, or under Bureau of Indian Affairs student assistance programs.

(B) Awarded to a household member enrolled at a:

(1) Recognized institution of post-secondary education (meaning any public or private educational institution which normally requires a high school diploma or equivalency certificate for enrollment or admits persons who are beyond the age of compulsory school attendance in the State in which the institution is located, provided that the institution is legally authorized or recognized by the State to provide an educational

GOV000056

program beyond secondary education in the State or provides a program of training to prepare students for gainful employment, including correspondence schools at that level),

    (2)  School for the handicapped,

    (3)  Vocational education program,

    (4)  Vocational or technical school,

    (5)  Program that provides for obtaining a secondary school diploma or the equivalent;

(C)  Used for or identified (earmarked) by the institution, school, program, or other grantor for the following allowable expenses:

    (1)  Tuition,

    (2)  Mandatory school fees, including the rental or purchase of any equipment, material, and supplies related to the pursuit of the course of study involved,

    (3)  Books,

    (4)  Supplies,

    (5)  Transportation,

    (6)  Miscellaneous personal expenses, other than normal living expenses, of the student incidental to attending a school, institution or program,

    (7)  Dependent care,

    (8)  Origination fees and insurance premiums on educational loans,

    (9)  Normal living expenses which are room and board are not excludable.

    (10)  Amounts excluded for dependent care costs shall not also be excluded under the general exclusion provisions of paragraph § 273.9(c)(5)(i)(C). Dependent care costs which exceed the amount excludable from income shall be deducted from income in accordance with paragraph § 273.9(d)(4) and be subject to a cap.

(iii)  Exclusions based on use pursuant to paragraph (c)(3)(ii)(C) must be incurred or anticipated for the period the educational income is intended to cover regardless of when the educational income is actually received. If a student uses other income sources to pay for allowable educational expenses in months before the educational income is received, the exclusions to cover the expenses shall be allowed when the educational income is received. When the amounts used for allowable expense are more than amounts earmarked by the institution, school, program or other grantor, an exclusion shall be allowed for amounts used over the earmarked amounts. Exclusions based on use shall be subtracted from unearned educational income to the extent possible. If the unearned educational income is not enough to cover the expense, the remainder of the allowable expense shall be excluded from earned educational income.

(iv)  An individual's total educational income exclusions granted under the provisions of paragraph (c)(3)(i) through (c)(3)(iii) of this section cannot exceed that individual's total educational income which was subject to the provisions of paragraph (c)(3)(i) through (c)(3)(iii) of this section.

GOV000057

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 59 of 222

7 CFR 273.9(c)(3)(v)

(v) At its option, the State agency may exclude any educational assistance that must be excluded under its State Medicaid rules that would not already be excluded under this section. A State agency that chooses to exclude educational assistance under this paragraph (c)(3)(v) must specify in its State plan of operation that it has selected this option and provide a description of the educational assistance that is being excluded. The provisions of paragraphs (c)(3)(ii), (c)(3)(iii) and (c)(3)(iv) of this section do not apply to income excluded under this paragraph (c)(3)(v).

(4) All loans, including loans from private individuals as well as commercial institutions, other than educational loans on which repayment is deferred. Educational loans on which repayment is deferred shall be excluded pursuant to the provisions of § 273.9(c)(3)(i). A loan on which repayment must begin within 60 days after receipt of the loan shall not be considered a deferred repayment loan.

(5) Reimbursements for past or future expenses, to the extent they do not exceed actual expenses, and do not represent a gain or benefit to the household. Reimbursements for normal household living expenses such as rent or mortgage, personal clothing, or food eaten at home are a gain or benefit and, therefore, are not excluded. To be excluded, these payments must be provided specifically for an identified expense, other than normal living expenses, and used for the purpose intended. When a reimbursement, including a flat allowance, covers multiple expenses, each expense does not have to be separately identified as long as none of the reimbursement covers normal living expenses. The amount by which a reimbursement exceeds the actual incurred expense shall be counted as income. However, reimbursements shall not be considered to exceed actual expenses, unless the provider or the household indicates the amount is excessive.

(i) Examples of excludable reimbursements which are not considered to be a gain or benefit to the household are:

(A) Reimbursements or flat allowances, including reimbursements made to the household under § 273.7(d)(3), for job- or training-related expenses such as travel, per diem, uniforms, and transportation to and from the job or training site. Reimbursements which are provided over and above the basic wages for these expenses are excluded; however, these expenses, if not reimbursed, are not otherwise deductible. Reimbursements for the travel expenses incurred by migrant workers are also excluded.

(B) Reimbursements for out-of-pocket expenses of volunteers incurred in the course of their work.

(C) Medical or dependent care reimbursements.

(D) Reimbursements received by households to pay for services provided by Title XX of the Social Security Act.

(E) Any allowance a State agency provides no more frequently than annually for children's clothes when the children enter or return to school or daycare, provided the State agency does not reduce the monthly TANF payment for the month in which the school clothes allowance is provided. State agencies are not required to verify attendance at school or daycare.

(F) Reimbursements made to the household under § 273.7(d)(3) for expenses necessary for participation in an education component under the E&T program.

GOV000058

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 60 of 222

7 CFR 273.9(c)(5)(ii)

(ii) The following shall not be considered a reimbursement excludable under this provision:

(A) No portion of benefits provided under title IV-A of the Social Security Act, to the extent such benefits are attributed to an adjustment for work-related or child care expenses (except for payments or reimbursements for such expenses made under an employment, education or training program initiated under such title after September 19, 1988), shall be considered excludable under this provision.

(B) No portion of any educational assistance that is provided for normal living expenses (room and board) shall be considered a reimbursement excludable under this provision.

(6) Moneys received and used for the care and maintenance of a third-party beneficiary who is not a household member. If the intended beneficiaries of a single payment are both household and nonhousehold members, any identifiable portion of the payment intended and used for the care and maintenance of the nonhousehold member shall be excluded. If the nonhousehold member's portion cannot be readily identified, the payment shall be evenly prorated among intended beneficiaries and the exclusion applied to the nonhousehold member's pro rata share or the amount actually used for the nonhousehold member's care and maintenance, whichever is less.

(7) The earned income (as defined in paragraph (b)(1) of this section) of any household member who is under age 18, who is an elementary or secondary school student, and who lives with a natural, adoptive, or stepparent or under the parental control of a household member other than a parent. For purposes of this provision, an elementary or secondary school student is someone who attends elementary or secondary school, or who attends classes to obtain a General Equivalency Diploma that are recognized, operated, or supervised by the student's state or local school district, or who attends elementary or secondary classes through a home-school program recognized or supervised by the student's state or local school district. The exclusion shall continue to apply during temporary interruptions in school attendance due to semester or vacation breaks, provided the child's enrollment will resume following the break. If the child's earnings or amount of work performed cannot be differentiated from that of other household members, the total earnings shall be prorated equally among the working members and the child's pro rata share excluded.

(8) Money received in the form of a nonrecurring lump-sum payment, including, but not limited to, income tax refunds, rebates, or credits; retroactive lump-sum social security, SSI, public assistance, railroad retirement benefits, or other payments; lump-sum insurance settlements; or refunds of security deposits on rental property or utilities. TANF payments made to divert a family from becoming dependent on welfare may be excluded as a nonrecurring lump-sum payment if the payment is not defined as assistance because of the exception for non-recurrent, short-term benefits in 45 CFR 261.31(b)(1). These payments shall be counted as resources in the month received, in accordance with § 273.8(c) unless specifically excluded from consideration as a resource by other Federal laws.

(9) The cost of producing self-employment income. The procedures for computing the cost of producing self-employment income are described in § 273.11.

(10) Any income that is specifically excluded by any other Federal statute from consideration as income for the purpose of determining eligibility for SNAP. The following laws provide such an exclusion:

(i) Reimbursements from the Uniform Relocation Assistance and Real Property Acquisition Policy Act of 1970 (Pub. L. 91-646, section 216).

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 61 of 222

7 CFR 273.9(c)(10)(ii)

(ii) Payments received under the Alaska Native Claims Settlement Act (Pub. L. 92-203, section 21(a));

(iii) Any payment to volunteers under Title II (RSVP, Foster Grandparents and others) of the Domestic Volunteer Services Act of 1973 (Pub. L. 93-113) as amended. Payments under title I of that Act (including payments from such title I programs as VISTA, University Year for Action, and Urban Crime Prevention Program) to volunteers shall be excluded for those individuals receiving SNAP benefits or public assistance at the time they joined the title I program, except that households which were receiving an income exclusion for a Vista or other title I Subsistence allowance at the time of conversion to the Food and Nutrition Act of 2008 shall continue to receive an income exclusion for VISTA for the length of their volunteer contract in effect at the time of conversion. Temporary interruptions in SNAP participation shall not alter the exclusion once an initial determination has been made. New applicants who were not receiving public assistance or SNAPs at the time they joined VISTA shall have these volunteer payments included as earned income. The FNS National Office shall keep FNS Regional Offices informed of any new programs created under title I and II or changes in programs mentioned above so that they may alert State agencies.

(iv) Income derived from certain submarginal land of the United States which is held in trust for certain Indian tribes (Pub. L. 94-114, section 6).

(v) Allowances, earnings, or payments (including reimbursements) to individuals participating in programs under the Workforce Investment Act of 1998, except as provided for under paragraph (b)(1)(v) of this section.

(vi) Income derived from the disposition of funds to the Grand River Band of Ottawa Indians (Pub. L. 94-540).

(vii) Earned income tax credits received as a result of Pub. L. 95-600, the Revenue Act of 1978 which are received before January 1, 1980.

(viii) Payments by the Indian Claims Commission to the Confederated Tribes and Bands of the Yakima Indian Nation or the Apache Tribe of the Mescalero Reservation (Pub. L. 95-433).

(ix) Payments to the Passamaquoddy Tribe and the Penobscot Nation or any of their members received pursuant to the Maine Indian Claims Settlement Act of 1980 (Pub. L. 96-420, section 5).

(x) Payments of relocation assistance to members of the Navajo and Hopi Tribes under Pub. L. 93-531.

(11) Energy assistance as follows:

(i) Any payments or allowances made for the purpose of providing energy assistance under any Federal law other than part A of Title IV of the Social Security Act (42 U.S.C. 601 et seq.), including utility reimbursements made by the Department of Housing and Urban Development and the Rural Housing Service, or

(ii) A one-time payment or allowance applied for on an as-needed basis and made under a Federal or State law for the costs of weatherization or emergency repair or replacement of an unsafe or inoperative furnace or other heating or cooling device. A down-payment followed by a final payment upon completion of the work will be considered a one-time payment for purposes of this provision.

GOV000060

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

7 CFR 273.9(c)(12)

(12) Cash donations based on need received on or after February 1, 1988 from one or more private nonprofit charitable organizations, but not to exceed $300 in a Federal fiscal year quarter.

(13) Earned income tax credit payments received either as a lump sum or payments under section 3507 of the Internal Revenue Code of 1986 (relating to advance payment of earned income tax credits received as part of the paycheck or as a reduction in taxes that otherwise would have been paid at the end of the year).

(14) Any payment made to an E&T participant under § 273.7(d)(3) for costs that are reasonably necessary and directly related to participation in the E&T program. These costs include, but are not limited to, dependent care costs, transportation, other expenses related to work, training or education, such as uniforms, personal safety items or other necessary equipment, and books or training manuals. These costs shall not include the cost of meals away from home. Also, the value of any dependent care services provided for or arranged under § 273.7(d)(3)(i) would be excluded.

(15) Governmental foster care payments received by households with foster care individuals who are considered to be boarders in accordance with § 273.1(c).

(16) Income of an SSI recipient necessary for the fulfillment of a plan for achieving self-support (PASS) which has been approved under section 1612(b)(4)(A)(iii) or 1612(b)(4)(B)(iv) of the Social Security Act. This income may be spent in accordance with an approved PASS or deposited into a PASS savings account for future use.

(17) Legally obligated child support payments paid by a household member to or for a nonhousehold member, including payments made to a third party on behalf of the nonhousehold member (vendor payments) and amounts paid toward child support arrearages. However, at its option, the State agency may allow households a deduction for such child support payments in accordance with paragraph (d)(5) of this section rather than an income exclusion.

(18) At the State agency's option, any State complementary assistance program payments excluded for the purpose of determining eligibility under section 1931 of the SSA for a program funded under Title XIX of the SSA. A State agency that chooses to exclude complementary assistance program payments under this paragraph (c)(18) must specify in its State plan of operation that it has selected this option and provide a description of the types of payments that are being excluded.

(19) At the State agency's option, any types of income that the State agency excludes when determining eligibility or benefits for TANF cash assistance as defined by 45 CFR 260.31(a)(1) and (a)(2), or medical assistance under Section 1931 of the SSA, (but not for programs that do not evaluate the financial circumstances of adults in the household and programs grandfathered under Section 404(a)(2) of the SSA). The State agency must exclude for SNAP purposes the same amount of income it excludes for TANF or Medicaid purposes. A State agency that chooses to exclude income under this paragraph (c)(19) must specify in its State plan of operation that it has selected this option and provide a description of the resources that are being excluded. The State agency shall not exclude:

   (i) Wages or salaries;

   (ii) Gross income from a self-employment enterprise, including the types of income referenced in paragraph (b)(1)(ii) of this section. Determining monthly income from self-employment must be calculated in accordance with § 273.11(a)(2);

GOV000061

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

7 CFR 273.9(c)(19)(iii)

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 63 of 222

(iii) Benefits under Title I, II, IV, X, XIV or XVI of the SSA, including supplemental security income (SSI) benefits, TANF benefits, and foster care and adoption payments from a government source;.

(iv) Regular payments from a government source. Payments or allowances a household receives from an intermediary that are funded from a government source are considered payments from a government source;

(v) Worker's compensation;

(vi) Child support payments, support or alimony payments made to the household from a nonhousehold member;

(vii) Annuities, pensions, retirement benefits;

(viii) Disability benefits or old age or survivor benefits; and

(ix) Monies withdrawn or dividends received by a household from trust funds considered to be excludable resources under § 273.8(e)(8).

(20) Income received by a member of the United States Armed Forces under Chapter 5 of Title 37 of the United States Code that is:

(i) Received in addition to the service member's basic pay;

(ii) Received as a result of the service member's deployment to or service in an area designated as a combat zone as determined pursuant to Executive Order or Public Law; and

(iii) Not received by the service member prior to the service member's deployment to or service in a Federally-designated combat zone.

(d) *Income deductions.* Deductions shall be allowed only for the following household expenses:

(1) *Standard deduction* —

(i) *48 States, District of Columbia, Alaska, Hawaii, and the Virgin Islands.* Effective October 1, 2002, in the 48 States and the District of Columbia, Alaska, Hawaii, and the Virgin Islands, the standard deduction for household sizes one through six shall be equal to 8.31 percent of the monthly net income eligibility standard for each household size established under paragraph (a)(2) of this section rounded up to the nearest whole dollar. For household sizes greater than six, the standard deduction shall be equal to the standard deduction for a six-person household.

(ii) *Guam.* Effective October 1, 2002, in Guam, the standard deduction for household sizes one through six shall be equal to 8.31 percent of double the monthly net income eligibility standard for each household size for the 48 States and the District of Columbia established under paragraph (a)(2) of this section rounded up to the nearest whole dollar. For household sizes greater than six, the standard deduction shall be equal to the standard deduction for a six-person household.

(iii) *Minimum deduction levels.* Notwithstanding paragraphs (d)(1)(i) and (d)(1)(ii) of this section, the standard deduction for FY 2009 for each household in the 48 States and the District of Columbia, Alaska, Hawaii, Guam and the U.S. Virgin Islands shall not be less than $144, $246, $203, $289, and $127, respectively. Beginning FY 2010 and each fiscal year thereafter, the amount of the minimum standard deduction is equal to the unrounded amount from the

GOV000062

previous fiscal year adjusted to the nearest lower dollar increment to reflect changes for the 12-month period ending on the preceding June 30 in the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics of the Department of Labor, for items other than food.

(2) *Earned income deduction.* Twenty percent of gross earned income as defined in paragraph (b)(1) of this section. Earnings excluded in paragraph (c) of this section shall not be included in gross earned income for purposes of computing the earned income deduction, except that the State agency must count any earnings used to pay child support that were excluded from the household's income in accordance with the child support exclusion in paragraph (c)(17) of this section.

(3) *Excess medical deduction.* That portion of medical expenses in excess of $35 per month, excluding special diets, incurred by any household member who is elderly or disabled as defined in § 271.2. Spouses or other persons receiving benefits as a dependent of the SSI or disability and blindness recipient are not eligible to receive this deduction but persons receiving emergency SSI benefits based on presumptive eligibility are eligible for this deduction. Allowable medical costs are:

(i) Medical and dental care including psychotherapy and rehabilitation services provided by a licensed practitioner authorized by State law or other qualified health professional.

(ii) Hospitalization or outpatient treatment, nursing care, and nursing home care including payments by the household for an individual who was a household member immediately prior to entering a hospital or nursing home provided by a facility recognized by the State.

(iii) Prescription drugs, when prescribed by a licensed practitioner authorized under State law, and other over-the-counter medication (including insulin), when approved by a licensed practitioner or other qualified health professional.

    (A) *Medical supplies and equipment.* Costs of medical supplies, sick-room equipment (including rental) or other prescribed equipment are deductible;

    (B) *Exclusions.* The cost of any Schedule I controlled substance under The Controlled Substances Act, 21 U.S.C. 801 *et seq.,* and any expenses associated with its use, are not deductible.

(iv) Health and hospitalization insurance policy premiums. The costs of health and accident policies such as those payable in lump sum settlements for death or dismemberment or income maintenance policies such as those that continue mortgage or loan payments while the beneficiary is disabled are not deductible;

(v) Medicare premiums related to coverage under Title XVIII of the Social Security Act; any cost-sharing or spend down expenses incurred by Medicaid recipients;

(vi) Dentures, hearing aids, and prosthetics;

(vii) Securing and maintaining a seeing eye or hearing dog including the cost of dog food and veterinarian bills;

(viii) Eye glasses prescribed by a physician skilled in eye disease or by an optometrist;

(ix) Reasonable cost of transportation and lodging to obtain medical treatment or services;

GOV000063

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 65 of 222

7 CFR 273.9(d)(3)(x)

(x)   Maintaining an attendant, homemaker, home health aide, or child care services, housekeeper, necessary due to age, infirmity, or illness. In addition, an amount equal to the one person benefit allotment shall be deducted if the household furnishes the majority of the attendant's meals. The allotment for this meal related deduction shall be that in effect at the time of initial certification. The State agency is only required to update the allotment amount at the next scheduled recertification; however, at their option, the State agency may do so earlier. If a household incurs attendant care costs that could qualify under both the medical deduction of § 273.9(d)(3)(x) and the dependent care deduction of § 273.9(d)(4), the costs may be deducted as a medical expense or a dependent care expense, but not both.

(4)   *Dependent care.* Payments for dependent care when necessary for a household member to search for, accept or continue employment, comply with the employment and training requirements as specified under § 273.7(e), or attend training or pursue education that is preparatory to employment, except as provided in § 273.10(d)(1)(i). Costs that may be deducted are limited to the care of an individual for whom the household provides dependent care, including care of a child under the age of 18 or an incapacitated person of any age in need of care. The costs of care provided by a relative may be deducted so long as the relative providing care is not part of the same SNAP household as the child or dependent adult receiving care. Dependent care expenses must be separately identified, necessary to participate in the care arrangement, and not already paid by another source on behalf of the household. If a household incurs attendant care costs that could qualify under both the medical deduction of § 273.9(d)(3)(x) and dependent care deduction of § 273.9(d)(4), the costs may be deducted as a medical expense or a dependent care expense, but not both. Allowable dependent care costs include:

   (i)   The costs of care given by an individual care provider or care facility;

   (ii)  Transportation costs to and from the care facility; and

   (iii) Activity or other fees associated with the care provided to the dependent that are necessary for the household to participate in the care.

(5)   *Optional child support deduction.* At its option, the State agency may provide a deduction, rather than the income exclusion provided under paragraph (c)(17) of this section, for legally obligated child support payments paid by a household member to or for a nonhousehold member, including payments made to a third party on behalf of the nonhousehold member (vendor payments) and amounts paid toward child support arrearages. Alimony payments made to or for a nonhousehold member shall not be included in the child support deduction. A State agency that chooses to provide a child support deduction rather than an exclusion in accordance with this paragraph (d)(5) must specify in its State plan of operation that it has chosen to provide the deduction rather than the exclusion.

(6)   *Shelter costs —*

   (i)   *Homeless shelter deduction.* A State agency may provide a standard homeless shelter deduction of $143 a month to households in which all members are homeless individuals but are not receiving free shelter throughout the month. The deduction must be subtracted from net income in determining eligibility and allotments for the households. The State agency may make a household with extremely low shelter costs ineligible for the deduction. A household receiving the homeless shelter deduction cannot have its shelter expenses considered under paragraphs (d)(6)(ii) or (d)(6)(iii) of this section. However, a homeless household may choose to claim actual costs under paragraph (d)(6)(ii) of this section instead of the homeless shelter

GOV000064

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 66 of 222

7 CFR 273.9(d)(6)(ii)

deduction if actual costs are higher and verified. A State agency that chooses to provide a homeless household shelter deduction must specify in its State plan of operation that it has selected this option.

(ii) *Excess shelter deduction.* Monthly shelter expenses in excess of 50 percent of the household's income after all other deductions in paragraphs (d)(1) through (d)(5) of this section have been allowed. If the household does not contain an elderly or disabled member, as defined in § 271.2 of this chapter, the shelter deduction cannot exceed the maximum shelter deduction limit established for the area. For fiscal year 2001, effective March 1, 2001, the maximum monthly excess shelter expense deduction limits are $340 for the 48 contiguous States and the District of Columbia, $543 for Alaska, $458 for Hawaii, $399 for Guam, and $268 for the Virgin Islands. FNS will set the maximum monthly excess shelter expense deduction limits for fiscal year 2002 and future years by adjusting the previous year's limits to reflect changes in the shelter component and the fuels and utilities component of the Consumer Price Index for All Urban Consumers for the 12 month period ending the previous November 30. FNS will notify State agencies of the amount of the limit. Only the following expenses are allowable shelter expenses:

(A) Continuing charges for the shelter occupied by the household, including rent, mortgage, condo and association fees, or other continuing charges leading to the ownership of the shelter such as loan repayments for the purchase of a mobile home, including interest on such payments.

(B) Property taxes, State and local assessments, and insurance on the structure itself, but not separate costs for insuring furniture or personal belongings.

(C) The cost of fuel for heating; cooling (*i.e.,* the operation of air conditioning systems or room air conditioners); electricity or fuel used for purposes other than heating or cooling; water; sewerage; well installation and maintenance; septic tank system installation and maintenance; garbage and trash collection; all service fees required to provide service for one telephone, including, but not limited to, basic service fees, wire maintenance fees, subscriber line charges, relay center surcharges, 911 fees, and taxes; service fees associated with basic internet connection, including, but not limited to, monthly subscriber fees (*i.e.,* the base rate paid by the household each month in order to receive service, which may include high-speed internet), taxes and fees charged to the household by the provider that recur on monthly bills, and the cost of one modem rental; and fees charged by the utility provider for initial installation of the utility. One-time deposits cannot be included.

(D) The shelter costs for the home if temporarily not occupied by the household because of employment or training away from home, illness, or abandonment caused by a natural disaster or casualty loss. For costs of a home vacated by the household to be included in the household's shelter costs, the household must intend to return to the home; the current occupants of the home, if any, must not be claiming the shelter costs for SNAP purposes; and the home must not be leased or rented during the absence of the household.

(E) Charges for the repair of the home which was substantially damaged or destroyed due to a natural disaster such as a fire or flood. Shelter costs shall not include charges for repair of the home that have been or will be reimbursed by private or public relief agencies, insurance companies, or from any other source.

GOV000065

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

Case 6:25-cv-02186-MTK     Document 77     Filed 03/16/26     Page 67 of 222

7 CFR 273.9(d)(6)(iii)

(iii) *Standard utility allowances.*

(A) A State agency may use standard utility allowances (standards) in place of actual costs in determining a household's excess shelter deduction. The State agency may use different types of standards but cannot allow households the use of two standards that include the same expense. The State agency may vary the standards by factors such as household size, geographical area, or season. Only utility costs identified in paragraph (d)(6)(ii)(C) of this section may be used in developing standards described in paragraphs (d)(6)(iii)(A)(*1*) through (*3*) of this section. The following standards are allowable:

(*1*) An individual standard for each type of utility expense;

(*2*) A standard utility allowance for all utilities that includes heating or cooling costs (HCSUA); and

(*3*) A limited utility allowance (LUA) that includes electricity and fuel for purposes other than heating or cooling, water, sewerage, well and septic tank installation and maintenance, and garbage or trash collection. The LUA may also include telephone and/or internet costs. The LUA must include expenses for at least two utilities.

(B) The State agency must review the standards annually and make adjustments to reflect changes in costs, rounded to the nearest whole dollar. State agencies must provide the amounts of standards to FNS annually and submit methodologies to FNS for approval when the methodologies are developed or changed.

(C) The State agency must submit for FNS approval their methodologies at least every five years. Methodology submissions must incorporate any revisions necessary to demonstrate that the baseline expenditure data and underlying methodology reflect recent trends and changes. State agencies' methodologies must:

(*1*) Reflect the entire State or geographic area the SUA covers;

(*2*) Use data sourced from utility providers or similarly reliable source;

(*3*) Reflect expenses incurred by low-income households;

(*4*) Distinguish if the utility is for heating or cooling, if applicable; and

(*5*) Reflect residential utility expenses.

(D) A standard with a heating or cooling component must be made available to the following households:

(*1*) Households that incur heating or cooling expenses separately from their rent or mortgage;

(*2*) Households in rental housing who are billed by their landlords on the basis of individual usage or who are charged a flat rate separately from their rent. However, households in public housing units which have central utility meters and which charge households only for excess heating or cooling costs are not entitled to a standard that includes heating or cooling costs based only on the charge for excess usage, unless the State agency mandates the use of standard utility allowances in accordance with paragraph (d)(6)(iii)(G) of this section; and

GOV000066

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 68 of 222

7 CFR 273.9(d)(6)(iii)(D)(3)

(3) Households that receive a payment or on behalf of which a payment was made under the Low Income Home Energy Assistance Act of 1981 (LIHEAA) or other similar energy assistance program, if in the current month or in the immediately preceding 12 months and such payment was greater than $20 annually.

(i) Other similar energy assistance programs are separate home energy assistance programs designed to provide heating or cooling assistance through a payment received by or made on behalf of low-income households. State agencies must establish clear and reasonable standards for evaluating whether a program constitutes a similar energy assistance program.

(ii) A payment received by a household or made on behalf of a household under LIHEAA or other similar energy assistance program must be quantifiable in order to confer eligibility for the heating and cooling standard utility allowance. A quantifiable payment is one that the State agency quantifies, in dollars. In-kind energy assistance, such as firewood or coal, may be considered an other similar energy assistance program payment if the State agency establishes reasonable procedures for quantifying the payment in a manner that is applied consistently across the caseload.

(iii) The State agency shall document the date and receipt of a payment made under LIHEAA or other similar energy assistance program to ensure the payment was received in the current month or the immediately preceding 12 months and exceeds $20 annually.

(iv) State agencies shall not consider anticipated receipt of a payment to be an actual payment received under the LIHEAA or other similar energy assistance program when determining a household's eligibility for the HCSUA. However, for purposes of this sub clause, a State agency may consider a payment under the LIHEAA or other similar energy assistance program to be received by the household, or on behalf of the household, if the household is scheduled to receive the payment in the current month.

(v) In a case where a payment is scheduled to be received in the current month and the payment is not actually made within that month, the State agency is responsible for determining whether an overissuance has occurred.

(vi) A State agency must grant the HCSUA to individuals who received a qualifying LIHEAP or other payment, regardless of changes in residence or address. Individuals who live in a household that received a qualifying LIHEAP or other payment who subsequently move into a separate household are entitled to receive the HCSUA in their new, separate households.

(vii) A household is eligible for the HCSUA if the household lives in a multi-unit dwelling or individual unit and receives a qualifying weatherization program payment. State agencies must develop workable, reasonable procedures to determine how multi-unit dwelling weatherization payments would be quantified for households and must apply those procedures consistently and fairly across the caseload.

(E) A household that has both an occupied home and an unoccupied home is only entitled to one standard.

GOV000067

7 CFR 273.9 (up to date as of 3/02/2026)
Income and deductions.

7 CFR 273.9(d)(6)(iii)(F)

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 69 of 222

(F) At initial certification, recertification, and when a household moves, the household may choose between a standard or verified actual utility costs for any allowable expense identified in paragraph (d)(6)(ii)(C) of this section, unless the State agency has opted, with FNS approval, to mandate use of a standard. Households certified for 24 months may also choose to switch between a standard and actual costs at the time of the mandatory interim contact required by § 273.10(f)(1) if the State agency has not mandated use of the standard.

(G)

(1) A State agency may mandate use of standard utility allowances for all households with qualifying expenses if the State uses one or more standards that include the costs of heating and cooling and one or more standards approved by FNS that do not include the costs of heating and cooling, and the standards will not result in increased program costs. The prohibition on increasing program costs does not apply to necessary increases to standards resulting from utility cost increases.

(2) If the State agency chooses to mandate use of standard utility allowances, it must use a standard utility allowance that includes heating or cooling costs for residents of public housing units which have central utility meters and which charge the households only for excess heating or cooling costs. The State agency also must not prorate a standard utility allowance that includes heating or cooling costs provided to a household that lives and shares heating or cooling expenses with others.

(3) In a State that chooses this option, households entitled to the standard may not claim actual expenses, even if the expenses are higher than the standard. Households not entitled to the standard may claim actual allowable expenses.

(H) If a household lives with and shares heating or cooling expenses with another individual, another household, or both, the State agency shall not prorate the standard for such households if the State agency mandates use of standard utility allowances in accordance with paragraph (d)(6)(iii)(G) of this section. The State agency may not prorate the SUA if all the individuals who share utility expenses but are not in the SNAP household are excluded from the household only because they are ineligible.

[Amdt. 132, 43 FR 47889, Oct. 17, 1978]

**Editorial Note:** For FEDERAL REGISTER citations affecting § 273.9, see the List of CFR Sections Affected, which appears in the Finding Aids section of the printed volume and at *www.govinfo.gov*.

GOV000068

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 70 of 222

This content is from the eCFR and is authoritative but unofficial.

# Title 7 —Agriculture
## Subtitle B —Regulations of the Department of Agriculture
## Chapter II —Food and Nutrition Service, Department of Agriculture
## Subchapter C —Supplemental Nutrition Assistance and Food Distribution Program
## Part 275 —Performance Reporting System

**Authority:** 7 U.S.C. 2011-2036.

**Subpart C**  Quality Control (QC) Reviews

**§ 275.10**  Scope and purpose.

**§ 275.11**  Sampling.

**§ 275.12**  Review of active cases.

**§ 275.13**  Review of negative cases.

**§ 275.14**  Review processing.

**Editorial Note:**  Nomenclature changes to subchapter C appear by Amdt. 381, 65 FR 64586, Oct. 30, 2000.

**Editorial Note:**  OMB control numbers relating to this part 275 are contained in § 271.8.

## Subpart C—Quality Control (QC) Reviews

## § 275.10 Scope and purpose.

(a)  As part of the Performance Reporting System, each State agency is responsible for conducting quality control reviews. For SNAP quality control reviews, a sample of households shall be selected from two different categories: Households which are participating in SNAP (called active cases) and households for which participation was denied, suspended or terminated (called negative cases). Reviews shall be conducted on active cases to determine if households are eligible and receiving the correct allotment of SNAP benefits. The determination of whether the household received the correct allotment will be made by comparing the eligibility data gathered during the review against the amount authorized on the master issuance file. Reviews of negative cases shall be conducted to determine whether the State agency's decision to deny, suspend or terminate the household, as of the review date, was correct. Quality control reviews measure the validity of SNAP cases at a given time (the review date) by reviewing against SNAP standards established in the Food and Nutrition Act of 2008 and the Regulations, taking into account any FNS authorized waivers to deviate from specific regulatory provisions. FNS and the State agency shall analyze findings of the reviews to determine the incidence and dollar amounts of errors, which will determine the State agency's liability for payment errors in accordance with the Food and Nutrition Act of 2008, as amended, and to plan corrective action to reduce excessive levels of errors for any State agency.

(b)  The objectives of quality control reviews are to provide:

(1)  A systematic method of measuring the validity of the SNAP caseload;

(2)  A basis for determining error rates;

GOV000069

(3) A timely continuous flow of information on which to base corrective action at all levels of administration; and

(4) A basis for establishing State agency liability for errors that exceed the National performance measure.

(c) The review process is the activity necessary to complete reviews and document findings of all cases selected in the sample for quality control reviews. The review process shall consist of:

(1) Case assignment and completion monitoring;

(2) Case reviews;

(3) Supervisory review of completed worksheets and schedules; and

(4) Transmission of completed worksheets and schedules to the State agency for centralized data compilation and analysis.

*[Amdt. 149, 44 FR 45893, Aug. 3, 1979, as amended by Amdt. 260, 49 FR 6304, Feb. 17, 1984; 54 FR 7016, Feb. 15, 1989; Amdt. 328, 56 FR 60051, Nov. 27, 1991; Amdt. 373, 64 FR 38294, July 16, 1999; 75 FR 33436, June 11, 2010]*

## § 275.11 Sampling.

(a) *Sampling plan.* Each State agency shall develop a quality control sampling plan which demonstrates the integrity of its sampling procedures.

(1) *Content.* The sampling plan shall include a complete description of the frame, the method of sample selection, and methods for estimating characteristics of the population and their sampling errors. The description of the sample frames shall include: source, availability, accuracy, completeness, components, location, form, frequency of updates, deletion of cases not subject to review, and structure. The description of the methods of sample selection shall include procedures for: estimating caseload size, overpull, computation of sampling intervals and random starts (if any), stratification or clustering (if any), identifying sample cases, correcting over-or undersampling, and monitoring sample selection and assignment. A time schedule for each step in the sampling procedures shall be included.

(2) *Criteria.* Sampling plans proposing non-proportional or other alternative designs shall document compliance with the approval criteria in paragraph (b)(4) of this section. All sampling plans shall:

(i) Conform to principles of probability sampling;

(ii) Specify and explain the basis for the sample sizes chosen by the State agency;

(iii) If the State agency has chosen an active sample size as specified in paragraph (b)(1)(iii) of this section, include a statement that, whether or not the sample size is increased to reflect an increase in participation as discussed in paragraph (b)(3) of this section, the State agency will not use the size of the sample chosen as a basis for challenging the resulting error rates.

(iv) If the State agency has chosen a negative sample size as specified in paragraph (b)(2)(ii) of this section, include a statement that, whether or not the sample size is increased to reflect an increase in negative actions as discussed in paragraph (b)(3) of this section, the State agency will not use the size of the sample chosen as a basis for challenging the resulting error rates.

GOV000070

(3)  *Design.* FNS generally recommends a systematic sample design for both active and negative samples because of its relative ease to administer, its validity, and because it yields a sample proportional to variations in the caseload over the course of the annual review period. (To obtain a systematic sample, a State agency would select every kth case after a random start between 1 and k. The value of k is dependent upon the estimated size of the universe and the sample size.) A State agency may, however, develop an alternative sampling design better suited for its particular situation. Whatever the design, it must conform to commonly acceptable statistical theory and application (see paragraph (b)(4) of this section).

(4)  *FNS review and approval.* The State agency shall submit its sampling plan to FNS for approval as a part of its State Plan of Operation in accordance with § 272.2(e)(4). In addition, all sampling procedures used by the State agency, including frame composition, construction, and content shall be fully documented and available for review by FNS.

(b)  *Sample size.* There are two samples for the SNAP quality control review process, an active case sample and a negative case sample. The size of both these samples is based on the State agency's average monthly caseload during the annual review period. Costs associated with a State agency's sample sizes are reimbursable as specified in § 277.4.

(1)  *Active cases.*

(i)  All active cases shall be selected in accordance with standard procedures, and the review findings shall be included in the calculation of the State agency's payment error rate.

(ii)  Unless a State agency chooses to select and review a number of active cases determined by the formulas provided in paragraph (b)(1)(iii) of this section and has included in its sampling plan the reliability certification required by paragraph (a)(2)(iii) of this section, the minimum number of active cases to be selected and reviewed by a State agency during each annual review period shall be determined as follows:

| Average monthly reviewable caseload (N) | Minimum annual sample size (n) |
| --- | --- |
| 60,000 and over | $n = 2400$ |
| 10,000 to 59,999 | $n = 300 + [0.042(N-10,000)]$ |
| Under 10,000 | $n = 300$ |

(iii)  A State agency which includes in its sampling plan the statement required by paragraph (a)(2)(iii) of this section may determine the minimum number of active cases to be selected and reviewed during each annual review period as follows:

| Average monthly reviewable caseload (N) | Minimum annual sample size (n) |
| --- | --- |
| 60,000 and over | $n = 1020$ |
| 12,942 to 59,999 | $n = 300 + [0.0153(N-12,941)]$ |

GOV000071

| Average monthly reviewable caseload (N) | Minimum annual sample size (n) |
|---|---|
| Under 12,942 | n = 300 |

(iv)  In the formulas in paragraphs (b)(1)(ii) and (iii) of this section n is the required active case sample size. This is the minimum number of active cases subject to review which must be selected each review period. Also in the formulas, N is the average monthly participating caseload subject to quality control review (i.e., households which are included in the active universe defined in paragraph (e)(1) of this section) during the annual review period.

(2)  *Negative cases.*

(i)  Unless a State agency chooses to select and review a number of negative cases determined by the formulas provided in paragraph (b)(2)(ii) of this section and has included in its sampling plan the reliability certification required by paragraph (a)(2)(iv) of this section, the minimum number of negative cases to be selected and reviewed by a State agency during each annual review period shall be determined as follows:

| Average monthly reviewable negative caseload (N) | Minimum annual sample size (n) |
|---|---|
| 5,000 and over | n = 800 |
| 500 to 4,999 | n = 150 + [0.144(N−500)] |
| Under 500 | n = 150 |

(ii)  A State agency which includes in its sampling plan the statement required by paragraph (a)(2)(iv) of this section may determine the minimum number of negative cases to be selected and reviewed during each annual review period as follows:

| Average monthly reviewable negative caseload (N) | Minimum annual sample size (n) |
|---|---|
| 5,000 and over | n = 680 |
| 684 to 4,999 | n = 150 + [ 0.1224(N−683)] |
| Under 684 | n = 150 |

(iii)  In the formulas in this paragraph (b)(2), n is the required negative sample size. This is the minimum number of negative cases subject to review which must be selected each review period.

(iv)  In the formulas in this paragraph (b)(2), N is the average monthly number of negative cases which are subject to quality control review (i.e., households which are part of the negative universe defined in paragraph (e)(2) of this section) during the annual review period.

GOV000072

(3) *Unanticipated changes.* Since the average monthly caseloads (both active and negative) must be estimated at the beginning of each annual review period, unanticipated changes can result in the need for adjustments to the sample size. FNS shall not penalize a State agency that does not adjust its sample size if the actual caseload during a review period is less than 20 percent larger than the estimated caseload initially used to determine sample size. If the actual caseload is more than 20 percent larger than the estimated caseload, the larger sample size appropriate for the actual caseload will be used in computing the sample completion rate.

(4) *Alternative designs.* The active and negative sample size determinations assume that State agencies will use a systematic or simple random sample design. State agencies able to obtain results of equivalent reliability with smaller samples and appropriate design may use an alternative design with FNS approval. To receive FNS approval, proposals for any type of alternative design must:

(i) Demonstrate that the alternative design provides payment error rate estimates with equal-or-better predicted precision than would be obtained had the State agency reviewed simple random samples of the sizes specified in paragraphs (b)(1) and (b)(2) of this section.

(ii) Describe all weighting, and estimation procedures if the sample design is non-self-weighted, or uses a sampling technique other than systematic sampling.

(iii) Demonstrate that self-weighting is actually achieved in sample designs claimed to be self-weighting.

(c) *Sample selection.* The selection of cases for quality control review shall be made separately for active and negative cases each month during the annual review period. Each month each State agency shall select for review approximately one-twelfth of its required sample, unless FNS has approved other numbers of cases specified in the sampling plan.

(1) *Substitutions.* Once a household has been identified for inclusion in the sample by a predesigned sampling procedure, substitutions are not acceptable. An active case must be reviewed each time it is selected for the sample. If a household is selected more than once for the negative sample as the result of separate and distinct instances of denial, suspension or termination, it shall be reviewed each time.

(2) *Corrections.* Excessive undersampling must be corrected during the annual review period. Excessive oversampling may be corrected at the State agency's option. Cases which are dropped to compensate for oversampling shall be reported as not subject to review. Because corrections must not bias the sample results, cases which are dropped to compensate for oversampling must comprise a random subsample of all cases selected (including those completed, not completed, and not subject to review). Cases which are added to the sample to compensate for undersampling must be randomly selected from the entire frame in accordance with the procedures specified in paragraphs (b), (c)(1), and (e) of this section. All sample adjustments must be fully documented and available for review by FNS.

(d) *Required sample size.* A State agency's required sample size is the larger of either the number of cases selected which are subject to review or the number of cases chosen for selection and review according to paragraph (b) of this section.

(e) *Sample frame.* The State agency shall select cases for quality control review from a sample frame. The choice of a sampling frame shall depend upon the criteria of timeliness, completeness, accuracy, and administrative burden. Complete coverage of the sample universes, as defined in paragraph (f) of this

GOV000073

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 75 of 222

section, must be assured so that every household subject to quality control review has an equal or known chance of being selected in the sample. Since the SNAP quality control review process requires an active and negative sample, two corresponding sample frames are also required.

(1) *Active cases.* The frame for active cases shall list all households which were:

(i) Certified prior to, or during, the sample month; and

(ii) issued benefits for the sample month, except for those households excluded from the universe in paragraph (f)(1) of this section. State agencies may elect to use either a list of certified eligible households or a list of households issued an allotment. If the State agency uses a list of certified eligible households, those households which are issued benefits for the sample month after the frame has been compiled shall be included in a supplemental list. If the State agency uses an issuance list, the State agency shall ensure that the list includes those households which do not actually receive an allotment because the entire amount is recovered for repayment of an overissuance in accordance with the allotment reduction procedures in § 273.18.

(2) *Negative cases.* The frame for negative cases shall list:

(i) All actions to deny an application in the sample month except those excluded from the universe in paragraph (f)(2) of this section. If a household is subject to more than one denial action in a single sample month, each action shall be listed separately in the sample frame; and

(ii) All actions to suspend or terminate a household in the sample month except those excluded from the universe in paragraph (f)(2) of this section. Each action to suspend or terminate a household in the sample month shall be listed separately in the sample frame.

(3) *Unwanted cases.* A frame may include cases for which information is not desired (e.g., households which have been certified but did not actually participate during the sample month). When such cases cannot be eliminated from the frame beforehand and are selected for the sample, they must be accounted for and reported as being not subject to review in accordance with the provisions in §§ 275.12(g) and 275.13(e).

(f) *Sample universe.* The State agency shall ensure that its active and negative case frames accurately reflect their sample universes. There are two sample universes for the SNAP quality control review process, an active case universe and a negative case universe. The exceptions noted below for both universes are households not usually amenable to quality control review.

(1) *Active cases.* The universe for active cases shall include all households certified prior to, or during, the sample month and receiving SNAP benefits for the sample month, except for the following:

(i) A household in which all the members had died or had moved out of the State before the review could be undertaken or completed;

(ii) A household receiving SNAP benefits under a disaster certification authorized by FNS;

(iii) A household which is under investigation for intentional Program violation, including a household with a pending administrative disqualification hearing;

(iv) A household appealing an adverse action when the review date falls within the time period covered by continued participation pending the hearing; or

GOV000074

(v)   A household receiving restored benefits in accordance with § 273.17 but not participating based upon an approved application. Other households excluded from the active case universe during the review process are identified in § 275.12(g).

(2)   *Negative cases.* The universe for negative cases shall include all actions taken to deny, suspend, or terminate a household in the sample month except the following:

(i)   A household which had its case closed due to expiration of the certification period;

(ii)   A household denied SNAP benefits under a disaster certification authorized by FNS;

(iii)   A household which withdrew an application prior to the agency's determination;

(iv)   A household which is under active investigation for Intentional Program Violation;

(v)   A household which has been sent a notice of pending status but which was not actually denied participation;

(vi)   A household which was terminated for failure to file a complete monthly report by the extended filing date, but reinstated when it subsequently filed the complete report before the end of the issuance month;

(vii)   Other households excluded from the negative case universe during the review process as identified in § 275.13(e).

(g)   *Demonstration projects.* Households correctly classified for participation under the rules of an FNS-authorized demonstration project which FNS determines to significantly modify the rules for determining households' eligibility or allotment level, shall be included in the selection and review process. They shall be included in the universe for calculating sample sizes and included in the sample frames for sample selection as specified in paragraphs (b) through (e) of this section. In addition, they shall be included in the quality control review reports as specified in § 275.21(d) and included in the calculation of a State agency's completion rate as specified in § 275.23(b)(1). The review of these cases shall be conducted in accordance with the provisions specified in §§ 275.12(h) and 275.13(f). FNS shall establish on an individual demonstration project basis whether the results of the reviews of active and negative demonstration project cases shall be included or excluded from the determination of State agencies' error rates as described in § 275.23(b).

*[Amdt. 260, 49 FR 6304, Feb. 17, 1984; 49 FR 14495, Apr. 12, 1984, as amended by Amdt. 262, 49 FR 50598, Dec. 31, 1984; Amdt. 266, 52 FR 3409, Feb. 4, 1987; Amdt. 328, 56 FR 60051, Nov. 27, 1991; Amdt. 366, 62 FR 29658, June 2, 1997; Amdt. 373, 64 FR 38295, July 16, 1999; 68 FR 59523, Oct. 16, 2003; 75 FR 33436, June 11, 2010; 86 FR 44586, Aug. 13, 2021]*

## § 275.12 Review of active cases.

(a)   *General.* A sample of households which were certified prior to, or during, the sample month and issued SNAP benefits for the sample month shall be selected for quality control review. These active cases shall be reviewed to determine if the household is eligible and, if eligible, whether the household is receiving the correct allotment. The determination of a household's eligibility shall be based on an examination and verification of all elements of eligibility (i.e., basic program requirements, resources, income, and deductions). The elements of eligibility are specified in §§ 273.1 and 273.3 through 273.9 of this chapter. The verified circumstances and the resulting benefit level determined by the quality control review shall be compared to the benefits authorized by the State agency as of the review date. When changes in household circumstances occur, the reviewer shall determine whether the changes were reported by the

GOV000075

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 77 of 222

participant and handled by the agency in accordance with the rules set forth in §§ 273.12, 273.13 and 273.21 of this chapter, as appropriate. For active cases, the review date shall always fall within the sample month, either the first day of a calendar or fiscal month or the day of certification, whichever is later. The review of active cases shall include: a household case record review; a field investigation, except as provided in paragraph (b) of this section; the identification of any variances; an error analysis; and the reporting of review findings.

(b) *Household case record review.* The reviewer shall examine the household case record to identify the specific facts relating to the household's eligibility and basis of issuance. If the reviewer is unable to locate the household case record, the reviewer shall identify as many of the pertinent facts as possible from the household issuance record. The case record review shall include all information applicable to the case as of the review month, including the application and worksheet in effect as of the review date. Documentation contained in the case record can be used as verification if it is not subject to change and applies to the sample month. If during the case record review the reviewer can determine and verify the household's ineligibility the review can be terminated at that point, provided that if the determination is based on information not obtained from the household then the correctness of that information must be confirmed as provided in paragraph (c)(2) of this section. The reviewer shall utilize information obtained through the case record review to complete column (2) of the Form FNS-380, and to tentatively plan the content of the field investigation.

(c) *Field investigation.* A full field investigation shall be conducted for all active cases selected in the sample month except as provided in paragraph (b) of this section. A full field investigation shall include a review of any information pertinent to a particular case which is available through the State Income and Eligibility Verification System (IEVS) as specified in § 272.8 of this chapter. If during the field investigation the reviewer determines and verifies the household's ineligibility, the review can be terminated at that point, provided that if the determination is based on information not obtained from the household then the correctness of that information must be confirmed as provided in paragraph (c)(2) of this section. In Alaska an exception to this requirement can be made in those isolated areas not reachable by regularly scheduled commercial air service, automobile, or other public transportation provided one fully documented attempt to contact the household has been made. Such cases may be completed through casefile review and collateral contact. The field investigation will include interviews with the head of household, spouse, or authorized representative; contact with collateral sources of information; and any other materials and activity pertinent to the review of the case. The scope of the review shall not extend beyond the examination of household circumstances which directly relate to the determination of household eligibility and basis of issuance status. The reviewer shall utilize information obtained through the field investigation to complete column (3) of the Form FNS-380.

(1) *Personal interviews.* Personal interviews shall be conducted in a manner that respects the rights, privacy, and dignity of the participants. Prior to conducting the personal interview, the reviewer shall notify the household that it has been selected, as part of an ongoing review process, for review by quality control, and that a personal face-to-face interview will be conducted in the future. The method of notifying the household and the specificity of the notification shall be determined by the State agency, in accordance with applicable State and Federal laws. The personal interview may take place at the participant's home, at an appropriate State agency certification office, or at a mutually agreed upon alternative location. The State agency shall determine the best location for the interview to take place, but would be subject to the same provisions as those regarding certification interviews at § 273.2(e)(2) of this chapter. Those regulations provide that an office interview must be waived under certain hardship conditions. Under such hardship conditions the quality control reviewer shall either conduct the personal interview with the participant's authorized representative,

GOV000076

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 78 of 222

if one has been appointed by the household, or with the participant in the participant's home. Except in Alaska, when an exception to the field investigation is made in accordance with this section, the interview with the participant may not be conducted by phone. During the personal interview with the participant, the reviewer shall:

(i) Explore with the head of the household, spouse, authorized representative, or any other responsible household member, household circumstances as they affect each factor of eligibility and basis of issuance;

(ii) Establish the composition of the household;

(iii) Review the documentary evidence in the household's possession and secure information about collateral sources of verification; and

(iv) Elicit from the participant names of collateral contacts. The reviewer shall use, but not be limited to, these designated collateral contacts. If required by the State, the reviewer shall obtain consent from the head of the household to secure collateral information. If the participant refuses to sign the release of information form, the reviewer shall explain fully the consequences of this refusal to cooperate (as contained in paragraph (g)(1)(ii) of this section), and continue the review to the fullest extent possible.

(2) *Collateral contacts.* The reviewer shall obtain verification from collateral contacts in all instances when adequate documentation was not available from the participant. This second party verification shall cover each element of eligibility as it affects the household's eligibility and allotment. The reviewer shall make every effort to use the most reliable second party verification available (for example, banks, payroll listings, etc.), in accordance with FNS guidelines, and shall thoroughly document all verification obtained. If any information obtained by the QC reviewer differs from that given by the participant, then the reviewer shall resolve the differences to determine which information is correct before an error determination is made. The manner in which the conflicting information is resolved shall include recontacting the participant unless the participant cannot be reached. When resolving conflicting information reviewers shall use their best judgement based on the most reliable data available and shall document how the differences were resolved.

(d) *Variance identification.* The reviewer shall identify any element of a basic program requirement or the basis of issuance which varies (i.e., information from review findings which indicates that policy was applied incorrectly and/or information verified as of the review date that differs from that used at the most recent certification action). For each element that varies, the reviewer shall determine whether the variance was State agency or participant caused. The results of these determinations shall be coded and recorded in column (4) of the Form FNS-380.

(1) *Variances included in error analysis.* Except for those variances in an element resulting from one of the situations described in paragraph (d)(2) of this section, any variance involving an element of eligibility or basis of issuance shall be included in the error analysis. Such variances shall include but not be limited to those resulting from a State agency's failure to take the disqualification action related to SSN's specified in § 273.6(c) of this chapter, and related to work requirements, specified in § 273.7(f) of this chapter.

(2) *Variances excluded from error analysis.* The following variances shall be excluded from the determination of a household's eligibility and basis of issuance for the sample month:

GOV000077

(i)   Any variance resulting from the nonverified portion of a household's gross nonexempt income where there is conclusive documentation (a listing of what attempts were made to verify and why they were unsuccessful) that such income could not be verified at the time of certification because the source of income would not cooperate in providing verification and no other sources of verification were available. If there is no conclusive documentation as explained above, then the reviewer shall not exclude any resulting variance from the error determination. This follows certification policy outlined in § 273.2(f)(1)(i) of this chapter.

(ii)   Any variance in cases certified under expedited certification procedures resulting from postponed verification of an element of eligibility as allowed under § 273.2(i)(4)(i) of this chapter. Verification of gross income, deductions, resources, household composition, alien status, or tax dependency may be postponed for cases eligible for expedited certification. However, if a case certified under expedited procedures contains a variance as a result of a residency deficiency, a mistake in the basis of issuance computation, a mistake in participant identification, or incorrect expedited income accounting, the variance shall be included in the error determination. This exclusion shall only apply to those cases which are selected for QC review in the first month of participation under expedited certification.

(iii)   Any variance subsequent to certification in an element of eligibility or basis of issuance which was not reported and was not required to have been reported as of the review date. The elements participants are required to report and the time requirements for reporting are specified in §§ 273.12(a) and 273.21(h) and (i) of this chapter, as appropriate. If, however, a change in any element is reported, and the State agency fails to act in accordance with §§ 273.12(c) and 273.21(j) of this chapter, as appropriate, any resulting variance shall be included in the error determination.

(iv)   Any variance in deductible expenses which was not provided for in determining a household's benefit level in accordance with § 273.2(f)(3)(i)(B) of this chapter. This provision allows households to have their benefit level determined without providing for a claimed expense when the expense is questionable and obtaining verification may delay certification. If such a household subsequently provides the needed verification for the claimed expense and the State agency does not redetermine the household's benefits in accordance with § 273.12(c) of this chapter, any resulting variance shall be included in the error determination.

(v)   Any variance resulting from use by the State agency of information concerning households or individuals from an appropriate Federal source, provided that such information is correctly processed by the State agency. An appropriate Federal source is one which verifies: Income that it provides directly to the household; deductible expenses for which it directly bills the household; or other household circumstances which it is responsible for defining or establishing. To meet the provisions for correct processing, the eligibility worker must have appropriately acted on timely information. In order to be timely, information must be the most current that was available to the State agency at the time of the eligibility worker's action.

(vi)   Two variances relating to the Immigration and Naturalization Service's (INS) Systematic Alien Verification for Entitlements (SAVE) Program.

(A)   A variance based on a verification of alien documentation by INS. The reviewer shall exclude such variance only if the State agency properly used SAVE and the State agency provides the reviewer with:

(1)   The alien's name;

GOV000078

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 80 of 222

    (2)  The alien's status; and

    (3)  Either the Alien Status Verification Index (ASVI) Query Verification Number or the INS Form G-845, as annotated by INS.

(B)  A variance based on the State agency's wait for the response of INS to the State agency's request for official verification of the alien's documentation. The reviewer shall exclude such variance only if the State agency properly used SAVE and the State agency provides the reviewer with either:

    (1)  The date of request, if the State agency was waiting for an automated response; or

    (2)  A copy of the completed Form G-845, if the State agency was waiting for secondary verification from INS.

(vii)  Subject to the limitations provided in paragraphs (d)(2)(vii)(A) through (d)(2)(vii)(F) of this section, any variance resulting from application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law that occurs during the first 120 days from the required implementation date. The variance exclusion shall apply to any action taken on a case directly related to implementation of a covered provision during the 120-day exclusionary period until the case is required to be recertified or acted upon for some other reason.

  (A)  When a regulation allows a State agency an option to implement prior to the required implementation date, the date on which the State agency chooses to implement may, at the option of the State, be considered to be the required implementation date for purposes of this provision. The exclusion period would be adjusted to begin with this date and end on the 120th day that follows. States choosing to implement prior to the required implementation date must notify the appropriate FNS Regional Office, in writing, prior to implementation that they wish the 120 day variance exclusion to commence with actual implementation. Absent such notification, the exclusionary period will commence with the required implementation date.

  (B)  A State agency shall not exclude variances which occur prior to the States implementation.

  (C)  A State agency which did not implement until after the exclusion period shall not exclude variances under this provision.

  (D)  Regardless of when the State agency actually implemented the regulation, the variance exclusion period shall end on the 120th day following the required implementation date, including the required implementation date defined in paragraph (d)(2)(vii)(A) of this section.

  (E)  For purposes of this provision, implementation occurs on the effective date of State agency's written statewide notification to its eligibility workers.

  (F)  This variance exclusion applies to changes occasioned by final regulations or interim regulations. In the case of a final regulation issued following an interim regulation, the exclusion applies only to significant changes made to the earlier interim regulation. A significant change is one which the final regulation requires the State agency to implement on or after publication of a final rule.

GOV000079

Case 6:25-cv-02186-MTK     Document 77     Filed 03/16/26     Page 81 of 222

(viii) Any variance resulting from incorrect written policy that a State agency acts on that is provided by a Departmental employee authorized to issue SNAP policy and that the State agency correctly applies. For purposes of this provision, written Federal policy is that which is issued in regulations, notices, handbooks, category three and four Policy Memoranda under the Policy Interpretation Response System, and regional policy memoranda issued pursuant to these. Written Federal policy is also a letter from the Food and Nutrition Service to a State agency which contains comments on the State agency's SNAP manual or instructions.

(ix) Any variance in a child support deduction which was the result of an unreported change subsequent to the most recent certification action shall be excluded from the error determination.

(3) *Other findings.* Findings other than variances made during the review which are pertinent to the SNAP household or the case record may be acted on at the discretion of the State agency. Examples of such findings are: an incorrect age of a household member which is unrelated to an element of eligibility; an overdue subsequent certification; no current application on file; insufficient documentation; incorrect application of the verification requirements specified in part 273 of this chapter; and deficiencies in work registration procedural requirements. Such deficiencies include: inadequate documentation of each household member's exempt status; work registration form for each nonexempt household member not completed at the time of application and every six months thereafter; and the household not advised of its responsibility to report any changes in the exempt status of any household member.

(e) *Error analysis.* The reviewer shall analyze all appropriate variances in completed cases, in accordance with paragraph (d) of this section, which are based upon verified information and determine whether such cases are either eligible, eligible with a basis of issuance error, or ineligible. The review of an active case determined ineligible shall be considered completed at the point of the ineligibility determination. For households determined eligible, the review shall be completed to the point where the correctness of the basis of issuance is determined, except in the situations outlined in paragraph (g) of this section. In the event that a review is conducted of a household which is receiving restored or retroactive benefits for the sample month, the portion of the allotment which is the restored or retroactive benefit shall be excluded from the determination of the household's eligibility and/or basis of issuance. A SNAP case in which a household member(s) receives public assistance shall be reviewed in the same manner as all other SNAP cases, using income as received. The determination of a household's eligibility and the correctness of the basis of issuance shall be determined based on data entered on the computation sheet as well as other information documented on other portions of the Form FNS-380, as appropriate.

(f) *Reporting of review findings.* All information verified to be incorrect during the review of an active case shall be reported to the State agency for appropriate action on an individual case basis. This includes information on all variances in elements of eligibility and basis of issuance in both error and nonerror cases. In addition, the reviewer shall report the review findings on the Form FNS-380-1, in accordance with the following procedures:

(1) *Eligibility errors.* If the reviewer determines that a case is ineligible, the occurrence and the total allotment issued in the sample month shall be coded and reported. Whenever a case contains a variance in an element which results in an ineligibility determination and there are also variances in elements which would cause a basis of issuance error, the case shall be treated as an eligibility error. The reviewer shall also code and report any variances that directly contributed to the error

GOV000080

determination. In addition, if the State agency has chosen to report information on all variances in elements of eligibility and basis of issuance, the reviewer shall code and report any other such variances which were discovered and verified during the course of the review.

(2) *Basis of issuance of errors.* If the reviewer determines that SNAP allotments were either overissued or underissued to eligible households in the sample month, the State agency shall code and report any variances that directly contributed to the error determination that were discovered and verified during the course of the review. For fiscal year 2014, only variances that exceed $37.00 (the threshold) shall be included in the calculation of the underissuance error rate, overissuance error rate, and payment error. For fiscal years 2015 and thereafter, this QC tolerance level shall be adjusted annually by the percentage by which the Thrifty Food Plan (TFP) for the 48 contiguous States and the District of Columbia is adjusted. If the State agency has chosen to report information on all variances in elements of eligibility and basis of issuance, the reviewer shall code and report any other such variances that were discovered and verified during the course of the review.

(g) *Disposition of case reviews.* Each case selected in the sample of active cases must be accounted for by classifying it as completed, not completed, or not subject to review. These case dispositions shall be coded and recorded on the Form FNS-380-1.

(1) *Cases reported as not complete.* Active cases shall be reported as not completed if the household case record cannot be located and the household itself is not subsequently located; if the household case record is located but the household cannot be located unless the reviewer attempts to locate the household as specified in this paragraph; or if the household refuses to cooperate, as discussed in this paragraph. All cases reported as not complete shall be reported to the State agency for appropriate action on an individual case basis. Without FNS approval, no active case shall be reported as not completed solely because the State agency was unable to process the case review in time for it to be reported in accordance with the timeframes specified in § 275.21(b)(2).

(i) If the reviewer is unable to locate the participant either at the address indicated in the case record or in the issuance record and the State agency is not otherwise aware of the participant's current address, the reviewer shall attempt to locate the household by contacting at least two sources which the State agency determines are most likely to be able to inform the reviewer of the household's current address. Such sources include but are not limited to:

(A) The local office of the U.S. Postal Service;

(B) The State Motor Vehicle Department;

(C) The owner or property manager of the residence at the address in the case record; and

(D) Any other appropriate sources based on information contained in the case record, such as public utility companies, telephone company, employers, or relatives. Once the reviewer has attempted to locate the household and has documented the response of each source contacted, if the household still cannot be located and the State agency has documented evidence that the household did actually exist, the State agency shall report the active case as not subject to review. In these situations documented evidence shall be considered adequate if it either documents two different elements of eligibility or basis of issuance, such as a copy of a birth certificate for age and pay status for income; or documents the statement of a collateral contact indicating that the household did exist. FNS Regional Offices will monitor the results of the contacts which State agencies make in attempting to locate households.

GOV000081

Case 6:25-cv-02186-MTK     Document 77     Filed 03/16/26     Page 83 of 222

(ii) If a household refuses to cooperate with the quality control reviewer and the State agency has taken other administrative steps to obtain that cooperation without obtaining it, the household shall be notified of the penalities for refusing to cooperate with respect to termination and reapplication, and of the possibility that its case will be referred for investigation for willful misrepresentation. If a household refuses to cooperate after such notice, the reviewer must-attempt to complete the case and shall report the household's refusal to the State agency for termination of its participation without regard for the outcome of that attempt. For a determination of refusal to be made, the household must be able to cooperate, but clearly demonstrate that it will not take actions that it can take and that are required to complete the quality control review process. In certain circumstances, the household may demonstrate that it is unwilling to cooperate by not taking actions after having been given every reasonable opportunity to do so, even though the household or its members do not state that the household refuses to cooperate. Instances where the household's unwillingness to cooperate in completing a quality control review has the effect of a refusal to cooperate shall include the following:

(A) The household does not respond to a letter from the reviewer sent Certified Mail-Return Receipt Requested within 30 days of the date of receipt;

(B) The household does not attend an agreed upon interview with the reviewer and then does not contact the reviewer within 10 days of the date of the scheduled interview to reschedule the interview; or

(C) The household does not return a signed release of information statement to the reviewer within 10 days of either agreeing to do so or receiving a request from the reviewer sent Certified Mail-Return Receipt Requested. However, in these and other situations, if there is any question as to whether the household has merely failed to cooperate, as opposed to refused to cooperate, the household shall not be reported to the State agency for termination.

(2) *Cases not subject to review.* Active cases which are not subject to review, if they have not been eliminated in the sampling process, shall be eliminated in the review process. In addition to cases listed in § 275.11(f)(1), these shall include:

(i) Death of all members of a household if they died before the review could be undertaken or completed;

(ii) The household moved out of State before the review could be undertaken or completed;

(iii) The household, at the time of the review, is under active investigation for intentional SNAP violation, including a household with a pending administrative disqualification hearing;

(iv) A household receiving restored benefits in accordance with § 273.17 of this chapter but not participating based upon an approved application for the sample month;

(v) A household dropped as a result of correction for oversampling;

(vi) A household participating under disaster certification authorized by FNS for a natural disaster;

(vii) A case incorrectly listed in the active frame;

(viii) A household appealing an adverse action when the review date falls within the time period covered by continued participation pending the hearing;

GOV000082

(ix)  A household that did not receive benefits for the sample month; or

(x)  A household that still cannot be located after the reviewer has attempted to locate it in accordance with paragraph (g)(1)(i) of this section.

(h)  *Demonstration projects.* Households correctly classified for participation under the rules of a demonstration project which establishes new FNS-authorized eligibility criteria or modifies the rules for determining households' eligibility or allotment level shall be reviewed following standard procedures provided that FNS does not modify these procedures to reflect modifications in the treatment of elements of eligibility or basis of issuance in the case of a demonstration project. If FNS determines that information obtained from these cases would not be useful, then they may be excluded from review.

[Amdt. 260, 49 FR 6306, Feb. 17, 1984; 49 FR 14495, Apr. 12, 1984]

**Editorial Note:**  For FEDERAL REGISTER citations affecting § 275.12, see the List of CFR Sections Affected, which appears in the Finding Aids section of the printed volume and at *www.govinfo.gov*.

## § 275.13 Review of negative cases.

(a)  *General.* A sample of actions to deny applications, or suspend or terminate a household in the sample month shall be selected for quality control review. These negative actions shall be reviewed to determine whether the State agency's decision to deny, suspend, or terminate the household, as of the review date, was correct. Depending on the characteristics of individual State systems, the review date for negative cases could be the date of the agency's decision to deny, suspend, or terminate program benefits, the date on which the decision is entered into the computer system, or the date of the notice to the client. State agencies must consistently apply the same definition for review date to all sample cases of the same classification. The review of negative cases shall include a household case record review; an error analysis; and the reporting of review findings, including procedural problems with the action regardless of the validity of the decision to deny, suspend or terminate. In certain instances, contact with the household or a collateral contact may be permitted.

(b)  *Household case record review.* The reviewer shall examine the household case record and verify through documentation in it whether the reason given for the denial, suspension, or termination is correct. Through the review of the household case record, the reviewer shall complete the household case record sections and document the reasons for denial, suspension or termination on the Negative Quality Control Review Schedule, Form FNS-245.

(c)  *Error analysis.*

(1)  A negative case shall be considered valid if the reviewer is able to verify through documentation in the household case record that a household was correctly denied, suspended, or terminated from the program in accordance with the reason for the action given by the State agency in the notice. Whenever the reviewer is unable to verify the correctness of the State agency's decision to deny, suspend, or terminate a household's participation through such documentation, the QC reviewer may contact the household or a collateral contact to verify the correctness of the specific negative action under review. If the reviewer is unable to verify the correctness of the State agency's decision to deny, suspend, or terminate the case for the specific reason given for the action, the negative case shall be considered invalid.

GOV000083

Case 6:25-cv-02186-MTK   Document 77   Filed 03/16/26   Page 85 of 222

(2)   The reviewer shall exclude a variance when the State agency erroneously denied, suspended or terminated a household's participation based on an erroneous verification of alien documentation by the Immigration and Nationalization Services (INS) Systematic Alien Verification for Entitlements (SAVE) Program. The reviewer shall exclude the variance only if the State agency properly used SAVE, and the State agency provides the reviewer with:

   (i)   The alien's name;

   (ii)   The alien's status; and

   (iii)   Either the Alien Status Verification Index (ASVI) Query Verification Number or the INS Form G-845, as annotated by INS.

(d)   *Reporting of review findings.* When a negative case is incorrect, this information shall be reported to the State agency for appropriate action on an individual case basis, such as recomputation of the allotment and restoration of lost benefits. In addition, the reviewer shall code and record the error determination on the Negative Quality Control Review Schedule, Form FNS-245.

(e)   *Disposition of case review.* Each case selected in the sample of negative cases must be accounted for by classifying it as completed, not completed, or not subject to review. These case dispositions shall be coded and recorded on the Negative Quality Control Review Schedule, Form FNS-245.

   (1)   *Cases reported as not complete.* Negative cases shall be reported as not completed if the reviewer, after all reasonable efforts, is unable to locate the case record. In no event, however, shall any negative case be reported as not completed solely because the State agency was unable to process the case review in time for it to be reported in accordance with the timeframes specified in § 275.21(b)(2), without prior FNS approval. This information shall be reported to the State agency for appropriate action on an individual case basis.

   (2)   *Cases not subject to review.* Negative cases which are not subject to review, if they have not been eliminated in the sampling process, shall be eliminated in the review process. In addition to cases listed in § 275.11(f)(2), these shall include:

      (i)   A household which was dropped as a result of a correction for oversampling;

      (ii)   A household which was listed incorrectly in the negative frame.

(f)   *Demonstration projects.* A household whose application has been denied or whose participation has been suspended or terminated under the rules of an FNS-authorized demonstration project shall be reviewed following standard procedures unless FNS provides modified procedures to reflect the rules of the demonstration project. If FNS determines that information obtained from these cases would not be useful, then these cases may be excluded from review.

*[Amdt. 260, 49 FR 6309, Feb. 17, 1984, as amended at 53 FR 39443, Oct. 7, 1988; Amdt. 373, 64 FR 38296, July 16, 1999; 75 FR 33437, June 11, 2010; 86 FR 44587, Aug. 13, 2021]*

## § 275.14 Review processing.

(a)   *General.* Each State agency shall use FNS handbooks, worksheets, and schedules in the quality control review process.

GOV000084

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 86 of 222

(b) *Handbooks.* The reviewer shall follow the procedures outlined in the Quality Control Review Handbook, FNS Handbook 310, to conduct quality control reviews. In addition, the sample of active and negative cases shall be selected in accordance with the sampling techniques described in the Quality Control Sampling Handbook, FNS Handbook 311.

(c) *Worksheets.* The Form FNS-380, shall be used by the reviewer to record required information from the case record, plan and conduct the field investigation, and record findings which contribute to the determination of eligibility and basis of issuance in the review of active cases. In some instances, reviewers may need to supplement Form FNS-380 with other forms. The State forms for appointments, interoffice communications, release of information, etc., should be used when appropriate.

(d) *Schedules.* Decisions reached by the reviewer in active case reviews shall be coded and recorded on the Integrated Review Worksheet, Form FNS-380-1. Such active case review findings must be substantiated by information recorded on the Integrated Review Worksheet, Form FNS-380. In negative case reviews, the review findings shall be coded and recorded on the Negative Quality Control Review Schedule, Form FNS-245, and supplemented as necessary with other documentation substantiating the findings.

*[Amdt. 260, 49 FR 6310, Feb. 17, 1984, as amended by Amdt. 262, 49 FR 50598, Dec. 31, 1984; 75 FR 33438, June 11, 2010]*

GOV000085

This content is from the eCFR and is authoritative but unofficial.

# Title 7 —Agriculture
## Subtitle B —Regulations of the Department of Agriculture
## Chapter II —Food and Nutrition Service, Department of Agriculture
## Subchapter C —Supplemental Nutrition Assistance and Food Distribution Program

Part 283  Appeals of Quality Control ("QC") Claims
  Subpart A  General
    § 283.1  Meaning of words.
    § 283.2  Scope and applicability.
    § 283.3  Definitions.
  Subpart B  Appeals of QC Claims of $50,000 or More
    § 283.4  Filing appeals for QC claims of $50,000 or more.
    § 283.5  Motion to dismiss.
    § 283.6  Answer.
    § 283.7  Procedures upon failure to file an answer.
    § 283.8  Rebuttal or amendment of appeal or answer.
    § 283.9  Withdrawal of appeal.
    § 283.10  Consent decision.
    § 283.11  Prehearing conference and procedure.
    § 283.12  Discovery.
    § 283.13  Subpoenas.
    § 283.14  Fees of witnesses.
    § 283.15  Procedure for hearing.
    § 283.16  Consolidation of issues.
    § 283.17  Post-hearing procedure.
    § 283.18  Motions and requests.
    § 283.19  ALJs.
    § 283.20  Review by the Judicial Officer.
    § 283.21  Ex parte communications.
    § 283.22  Form; filing; service; proof of service; computation of time; and extensions of time.
    § 283.23  Procedural matters.
  Subpart C  Summary Procedure for Appeals of QC Claims of Less Than $50,000
    § 283.24  Incorporation of procedures by reference.
    § 283.25  Filing appeals for QC claims of less than $50,000.
    § 283.26  Request that appeals be handled under procedures in subpart B for appeals of QC claims of $50,000 or more.
    § 283.27  Procedures upon failure to file an answer.

GOV000086

**§ 283.28**  Discovery.

**§ 283.29**  Scheduling conference.

**§ 283.30**  Cross motions for summary judgment.

**§ 283.31**  Review of the record.

**§ 283.32**  ALJ's initial decision.

**Editorial Note:**  Nomenclature changes to subchapter C appear by Amdt. 381, 65 FR 64586, Oct. 30, 2000.

# PART 283—APPEALS OF QUALITY CONTROL ("QC") CLAIMS

**Authority:**  7 U.S.C. 2011-2036.

**Source:**  Amdt. 348, 59 FR 34561, July 6, 1994, unless otherwise noted.

## Subpart A—General

## § 283.1 Meaning of words.

As used in this part, words in the singular form shall be deemed to import the plural, and vice versa, as the case may require.

## § 283.2 Scope and applicability.

The rules of practice in this part, shall be applicable to appeals by State agencies of Food and Nutrition Service quality control (QC) claims for Fiscal Year ("FY") 1986 and subsequent fiscal years pursuant to sections 14(a) and 16(c) of the Food and Nutrition Act of 2008, as amended, 7 U.S.C. 2023(a) and 2025(c).

## § 283.3 Definitions.

As used in this part, the terms as defined in the Food and Nutrition Act of 2008, as amended, 7 U.S.C. 2011-2032 ("Act"), and in the regulations, standards, instructions or orders issued thereunder, shall apply with equal force and effect. In addition, and except as may be provided otherwise in this section:

*Administrator* means the Administrator, Food and Nutrition Service, U.S. Department of Agriculture ("USDA").

*ALJ*  means any Administrative Law Judge in USDA appointed pursuant to 5 U.S.C. 3105 or detailed to the USDA pursuant to 5 U.S.C. 3344 and assigned to the appeal.

*Appeal* means the appeal to the ALJ.

*Ex parte communication* means an oral or written communication not on the public record with respect to which reasonable prior notice to all parties is not given, but it shall not include procedural matters.

*Filing.* A pleading or other document allowed or required to be filed in accordance with this part shall be considered filed when postmarked, if mailed, or when received, if hand delivered.

*FNS*  means the Food and Nutrition Service, USDA.

GOV000087

*Hearing* means that part of the appeal which involves the submission of evidence before the ALJ for the record in the appeal.

*Hearing Clerk* means the Hearing Clerk, USDA, Washington, DC 20250.

*Judicial Officer* means an official of the USDA delegated authority by the Secretary of Agriculture, pursuant to the Act of April 4, 1940 (7 U.S.C. 450c-459g) and Reorganization Plan No. 2 of 1953 (5 U.S.C. 1970 ed., Appendix, P. 550), as amended by Public Law 97-35, title I, sec. 125, 95 Stat. 357, 369 (1981) (7 U.S.C. 2201 note), to perform the adjudicating function involved (7 CFR 2.35(a)), or the Secretary of Agriculture if the authority so delegated is exercised by the Secretary.

*OC claim* means a claim made pursuant to 7 U.S.C. 2025(c).

*Secretary* means the Secretary of the USDA.

*State agency* means:

(1) The agency of State government, including the local offices thereof, which is responsible for the administration of the federally aided public assistance programs within the State, and in those States where such assistance programs are operated on a decentralized basis, it includes the counterpart local agencies which administer such assistance programs for the State agency; and

(2) The Indian tribal organization of any Indian tribe determined by the Secretary to be capable of effectively administering a SNAP in accordance with the Food and Nutrition Act of 2008, as amended, 7 U.S.C. 2011-2032.

## Subpart B—Appeals of QC Claims of $50,000 or More

## § 283.4 Filing appeals for QC claims of $50,000 or more.

(a) *Time.* A State agency may appeal the bill for collection from FNS for a QC claim of $50,000 or more for a SNAP QC error rate in excess of the tolerance level. A State agency shall file a written notice of appeal, in accordance with this subpart, within 10 days of receipt of the bill for collection from FNS for a QC claim of $50,000 or more. The State agency may request an extension to the 10-day filing requirement in accordance with § 283.22(f). FNS shall issue the bill for collection by certified mail or personal service.

(b) *Exhaustion of administrative remedies.* The State agency must appeal the bill for collection to the ALJ, pursuant to this subpart, and exhaust the available administrative remedies before filing suit in the Federal District Courts.

(c) *Filing.* The notice of appeal shall be filed with the Hearing Clerk in accordance with § 283.22(b).

(d) *Content of the notice.*

(1) A notice of appeal, in order to be considered acceptable, must contain the following information:

(i) A brief and clear statement that it is an appeal from a QC claim of $50,000 or more identifying the period the claim covers, the date and amount of the bill for collection, and the date of receipt of the bill for collection;

(ii) Identification of the State agency as the appellant and FNS as the appellee;

(iii) A statement that the notice of appeal is filed pursuant to section 14(a) of the Food and Nutrition Act of 2008;

GOV000088

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 90 of 222

(iv) A copy of the bill for collection which constitutes the basis for the filing of the notice of appeal shall be attached to the notice.

(2) Failure to file an acceptable notice of appeal may result in a challenge by FNS to the notice, dismissal of the notice by the ALJ and a waiver of the opportunity for further appeal or review by the Judicial Officer unless the State agency pursues the options as discussed in §§ 283.17(d) and 283.20.

(e) *Receipt of notice of appeal and assignment of docket number.* Upon receipt of a notice of appeal, the Hearing Clerk shall assign the appeal a docket number. The Hearing Clerk shall:

(1) Send the State agency a letter which shall include the following information:

(i) Advice that the notice of appeal has been received and the date of receipt;

(ii) The docket number assigned to the appeal and instructions that all future communications related to the appeal shall reference the docket number, and;

(iii) Advice that the State agency must file and serve its appeal petition, as set forth in § 283.22, not later than 60 days after receiving a notice of the claim. Failure to file a timely appeal petition may result in a waiver of further appeal rights.

(2) Send FNS a copy of the notice of appeal and a copy of the letter to the State agency.

(f) *Stay of collection.* The filing of a timely notice of appeal shall automatically stay the action of FNS to collect the QC claim asserted against the State agency until a decision is reached on the acceptability of the appeal, and in the case of an acceptable appeal, until a final administrative determination has been issued. However, interest will accrue on the outstanding claim amount during the stay as provided in section 13(a)(1) of the Food and Nutrition Act of 2008, as amended (7 U.S.C. 2022(a)(1)).

(g) *Content of the appeal petition.* The appeal petition shall include:

(1) A brief statement of the allegations of fact and provisions of law that constitute the basis for the appeal including a statement as to whether a factual basis for good cause relief exists;

(2) The nature of the relief sought, and;

(3) A request for an oral hearing, if desired by the State agency. Failure to request an oral hearing will result in a forfeiture of the opportunity for such a hearing, except as provided in § 283.15(a).

(h) *FNS answer.* Upon service of the State agency appeal petition, FNS shall:

(1) File an answer, in accordance with § 283.6, not later than 60 days after the State agency submits its appeal petition and;

(2) Advise the Hearing Clerk if FNS wishes to have an oral hearing.

(i) *Oral hearing not requested.* If no oral hearing has been requested, the appeal shall proceed in accordance with the procedures set forth under subpart C of this part.

## § 283.5 Motion to dismiss.

(a) *Filing of motion to dismiss.* Prior to or at the same time as filing the answer, FNS may file a motion to dismiss. The appeal may be challenged on the basis that the notice of appeal was not filed within 10 days or as that time may have been extended by the ALJ, the appeal petition was not filed in accordance with §

GOV000089

Case 6:25-cv-02186-MTK   Document 77   Filed 03/16/26   Page 91 of 222

283.4, or that the appeal petition is substantially incomplete and could not be quickly and easily cured by amendment. The motion must be accompanied by clear and convincing proof of any of these factors alleged as grounds for dismissal.

(b) *Service of motion to dismiss.* FNS shall serve the State agency with a copy of the motion to dismiss. The State agency will have 10 days from date of service to submit objections to the motion.

(c) *Ruling on a motion to dismiss.* The ALJ will rule on the motion to dismiss before any further action proceeds on the basis of the merits of the appeal. The basis of the ruling will be clearly documented and will become part of the official record. If the ALJ denies the motion, FNS shall file its answer in accordance with § 283.6 within 60 days of service of the ALJ's ruling, unless there is a motion for reconsideration filed pursuant to § 283.17(d) or review by the Judicial Officer is sought pursuant to § 283.20.

(d) *Dismissal of appeal.* If the ALJ finds the basis for the motion to have merit, the appeal may be dismissed. The initial decision of the ALJ shall become final and effective 30 days after service in accordance with § 283.17(c)(2) unless either party pursues the options as discussed in §§ 283.17(d) and 283.20.

(e) *Waiver.* Failure to file for dismissal of the appeal by the time the answer is required to be filed will result in waiver of the right to request dismissal.

## § 283.6 Answer.

(a) *Filing and service.* Not later than 60 days after the State agency submits its appeal petition, or within 60 days following service of a ruling in accordance with § 283.5, FNS shall file an answer signed by the FNS Administrator or authorized representative or the attorney of record in the appeal. The attorney may file an appearance of record prior to or simultaneously with the filing of the answer.

(b) *Contents.* The answer shall clearly admit, deny, or explain each of the allegations of the appeal petition and shall:

(1) Clearly set forth any defense asserted by FNS; or

(2) State that FNS admits all the facts alleged in the appeal petition; or

(3) State that FNS admits the jurisdictional allegations of the appeal petition and neither admits nor denies the remaining allegations and consents to the issuance of an order without further procedure.

(c) *Default.* Failure to file a timely answer shall be deemed, for purposes of the appeal, an admission of the allegations in the appeal petition and failure to deny or otherwise respond to an allegation of the appeal petition shall be deemed for purposes of the appeal, an admission of said allegation, unless FNS and the State agency have agreed to a consent decision pursuant to § 283.10.

## § 283.7 Procedures upon failure to file an answer.

The failure by FNS to file an answer shall constitute a waiver of hearing. Upon such failure to file, the State agency shall file a proposed decision, along with a motion for adoption thereof, both of which shall be served upon FNS by the State agency. Within 10 days after service of such motion and proposed decision, FNS may file objections thereto. If the ALJ finds that meritorious objections have been filed, the State agency's motion shall be denied with supporting reasons. If meritorious objections are not filed, the ALJ shall issue an initial decision without further procedures or hearing. Copies of the initial decision or denial of the State agency's motion shall be served on each of the parties and shall be included as part of the official record. Where the decision as proposed by the State

GOV000090

agency is adopted as the ALJ's initial decision, such decision of the ALJ shall become final and effective 30 days after service in accordance with § 283.17(c)(2) unless reconsideration or review by the Judicial Officer is sought as discussed in §§ 283.17(d) and 283.20.

## § 283.8 Rebuttal or amendment of appeal or answer.

    (a)  Not later than 30 days after FNS submits an answer in accordance with § 283.6, the State agency may submit rebuttal evidence.

    (b)  At any time prior to the filing of a motion for a hearing pursuant to § 283.15(b), the appeal petition or the answer may be amended without prior authorization by the ALJ. Thereafter, such an amendment may only be made as authorized by the ALJ upon a showing of cause.

## § 283.9 Withdrawal of appeal.

At any time before the ALJ files an initial decision, the State agency may withdraw its appeal and agree to pay the full amount of the claim. By withdrawing an appeal, the State agency waives all opportunity to appeal or seek further administrative or judicial review on the claim or related matters.

## § 283.10 Consent decision.

At any time before the ALJ files an initial decision, FNS and the State agency may agree to entry of a consent decision. Such decision shall be filed in the form of a decision signed by the parties with appropriate space for signature by the ALJ and shall contain an admission of at least the jurisdictional facts, consent to the issuance of the agreed decision without further procedure and such other admissions or statements as may be agreed between the parties. The ALJ shall enter such decision without further procedures, unless an error is apparent on the face of the document. Such decision shall be final and shall take effect 30 days after the date of the delivery or service of such decision and is not subject to further administrative or judicial.

## § 283.11 Prehearing conference and procedure.

    (a)  *Time and place.* The ALJ shall direct the parties or their counsel to participate in a prehearing conference at any reasonable time prior to the hearing. The prehearing conference shall be held at the U.S. Department of Agriculture, Washington, DC. Reasonable notice of the time, place of the prehearing conference and if personal attendance will be necessary shall be given. Prehearing conferences may be conducted telephonically. The ALJ shall order each of the parties to furnish at the prehearing conference or at another time prior to the hearing the following:

        (1)  An outline of the appeal or defense;

        (2)  The legal theories upon which the party will rely;

        (3)  Copies of or a list of documents that the party anticipates relying upon at the hearing; and

        (4)  A list of witnesses who will testify on behalf of the party. At the discretion of the party furnishing such list of witnesses, the names of the witnesses need not be furnished if they are otherwise identified in some meaningful way, such as a short statement of the type of evidence they will offer.

    (b)  *Procedures.* The ALJ shall not order any of the foregoing procedures that a party can show are inappropriate or unwarranted under the circumstances of the particular appeal.

    (c)  *Matters to be considered.* At the prehearing conference, the following matters shall be considered:

GOV000091

(1)  The simplification of issues;

(2)  The necessity of amendments to pleadings;

(3)  The possibility of obtaining stipulations of facts and of the authenticity, accuracy, and admissibility of documents, which will avoid unnecessary proof;

(4)  The limitation of the number of expert or other witnesses;

(5)  Negotiation, compromise, or settlement of issues;

(6)  The exchange of copies of proposed exhibits;

(7)  The nature of and the date by which discovery, as provided in § 283.12, must be completed;

(8)  The identification of documents or matters of which official notice may be requested;

(9)  A schedule to be followed by the parties for the completion of the actions decided at the conference; and

(10)  Such other matters as may expedite and aid in the disposition of the appeal.

(d)  *Reporting.*

(1)  A prehearing conference will not be stenographically reported unless so directed by the ALJ.

(2)  Any party to the appeal may, upon motion, request the ALJ to allow for a stenographic transcript of a prehearing conference. The party requesting the transcript shall bear the transcription cost of producing the transcript and the duplication cost for one transcript provided to the ALJ and to the other parties to the appeal.

(e)  *Order.* Actions taken as a result of a conference shall be reduced to an appropriate written order, unless the ALJ concludes that a stenographic report, if available, shall suffice, or, in the event the conference takes place within 7 days of the beginning of the hearing, the ALJ elects to make a statement on the record at the hearing summarizing the actions taken.

## § 283.12 Discovery.

(a)  *Dispositions —*

(1)  *Motion for taking deposition.* Only upon a finding by the ALJ that a deposition is necessary to preserve testimony as provided in this subparagraph, upon the motion of a party to the appeal, the ALJ may, at any time after the filing of the answer, order the taking of testimony by deposition. The motion shall set forth:

(i)  The name and address of the proposed deponent;

(ii)  The name and address of the person (referred to hereafter in this section as the "officer") qualified under the regulations in this part to take depositions, before whom the proposed examination is to be made;

(iii)  The proposed time and place of the examination, which shall be at least 15 days after the date of service of the motion; and

(iv)  The reasons why such deposition should be taken, which shall be solely for the purpose of eliciting testimony which otherwise might not be available at the time of the hearing, for use as provided in accordance with paragraph (a)(7) of this section.

GOV000092

(2) *ALJ's order for taking depositions.* If the ALJ finds that the testimony may not otherwise be available at the hearing, the taking of the deposition may be ordered. The order shall be served upon the parties, and shall state:

  (i) The time and place of the examination;

  (ii) The name of the officer before whom the examination is to be made; and

  (iii) The name of the deponent. The officer and the time and place need not be the same as those suggested in the motion.

(3) *Qualifications of officer.* The deposition shall be made before an officer authorized by the law of the United States or by the law of the place of the examination to administer oaths, or before an officer authorized by the Secretary to administer oaths.

(4) *Procedure on examination.*

  (i) The deponent shall be examined under oath or affirmation and shall be subject to cross-examination. Objections to questions or documents shall be in the short form, stating the grounds of objections relied upon. The questions propounded, together with all objections made (but not including argument or debate), shall be recorded verbatim. In lieu of oral examination, parties may transmit written questions to the officer prior to the examination and the officer shall propound such questions to the deponent.

  (ii) The party taking the deposition shall arrange for the examination of the witness either by oral examination, or by written questions upon agreement of the parties or as directed by the ALJ. If the examination is conducted by means of written questions, copies of the questions shall be served upon the other party to the appeal and filed with the officer at least 10 days prior to the date set for the examination unless otherwise agreed, and the other party may serve cross questions and file them with the officer at any time prior to the time of the examination.

  (iii) The parties may stipulate in writing or the ALJ may upon motion order that a deposition be taken by telephone. A deposition taken by telephone is to be taken at the place where the deponent is to answer questions propounded to the deponent.

  (iv) The parties may stipulate in writing or the ALJ may upon motion order that a deposition be recorded by other than stenographic means. The stipulation or the order shall designate the manner of recording, preserving and filing of the deposition, and may include other provisions to assure that the recorded testimony is accurate and trustworthy.

(5) *Certification by the officer.* The officer shall certify on the deposition that the deponent was duly sworn and that the deposition is a true record of the deponent's testimony. The officer shall then securely seal the deposition, together with one copy thereof (unless there are more than two parties in the appeal, in which case there should be another copy for each additional party), in an envelope and mail the same by registered or certified mail to the Hearing Clerk.

(6) *Corrections to the transcript.*

  (i) At any time prior to the hearing, any party may file a motion proposing corrections to the transcript of the deposition.

GOV000093

(ii) Unless a party files such a motion in the manner prescribed, the transcript shall be presumed to be a true, correct, and complete transcript of the testimony given in the deposition proceeding and to contain an accurate description or reference to all exhibits in connection therewith, and shall be deemed to be certified correct without further procedure.

(iii) At any time prior to the use of the deposition in accordance with paragraph (a)(7) of this section and after consideration of any objections filed thereto, the ALJ may issue an order making any corrections in the transcript which the ALJ finds are warranted, and these corrections shall be entered onto the original transcript by the Hearing Clerk (without obscuring the original text).

(7) *Use of depositions.* A deposition ordered and taken in accordance with the provisions of this section may be used in an appeal under these rules if the ALJ finds that the evidence is otherwise admissible and

(i) That the witness is deceased;

(ii) That the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment;

(iii) That the party offering the deposition has endeavored to procure the attendance of the witness by subpoena, but has been unable to do so; or

(iv) That such exceptional circumstances exist as to make it desirable, in the interests of justice, to allow the deposition to be used. If the party upon whose motion the deposition was taken refuses to offer it in evidence, any other party may offer the deposition or any part thereof in evidence. If only part of a deposition is offered in evidence by a party, any other party may require the introduction of any other part which is relevant be considered with the part introduced, and any party may introduce any other parts.

(b) *Interrogatories, requests for admissions and requests for production of documents* —

(1) *Interrogatories.* A party may submit written interrogatories to any other party to an appeal. The time for submitting and responding to written interrogatories shall be set by the ALJ at the pre-hearing conference, but in no event shall the time for response be less than 20 days from the date of service or within such time as determined upon motion to the ALJ. The number of interrogatories submitted by each party shall not exceed twenty-five questions including subparts, unless additional interrogatories are authorized by the ALJ. Each interrogatory should be answered separately and fully in writing, unless it is objected to, in which event the reasons for objection should be stated in lieu of an answer. The answers are to be signed under penalty of perjury by the person making them. Objections shall be signed by the attorney of record in the appeal or by the responding party's authorized representative.

(2) *Request for admissions.* A party may submit a written request for admission of the truth of any matters relevant to the appeal to any other party to the appeal. The time for submitting a written request for admission shall be set by the ALJ at the pre-hearing conference. The number of admissions contained in a request submitted by a party shall not exceed twenty-five unless additional admissions are authorized by the ALJ. The matter is admitted unless, within 20 days after service thereof, or within such time as determined upon motion to the ALJ, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter signed by the party, counsel or designated representative. If objection is made, the reasons therefor should be stated. The answer should specifically deny the matter or set forth in detail why the answering party cannot truthfully admit or deny the matter. An answering

GOV000094

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 96 of 222

party may not give lack of information or knowledge as a reason for the failure to admit or deny unless it is stated that reasonable inquiry has been made and that the information known or readily obtainable is insufficient to enable the party to admit or deny. A party who considers that a matter for which an admission has been requested presents a genuine issue for hearing may not, on that ground alone, object to the request; the party may deny the matter or set forth reasons why the matter cannot be admitted or denied.

(3) *Request for production of documents.*

    (i) Any party may serve upon any other party to the appeal a request for production of documents which are in the possession or control of the party upon whom the request is served. The time for service and response to such a request shall be set by the ALJ at the pre-hearing conference. Upon payment of fees for search and duplication of documents, any party to the appeal may obtain copies of such documents.

    (ii) Parties may request production of any documents regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. Grounds for objection will not exist if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

    (iii) If such documents include privileged information or information the disclosure of which is proscribed by the Food and Nutrition Act of 2008, as amended, such documents need not be produced.

(c) *Supplementation of response.* A party who knows or later learns that a response is incorrect is under a duty to correct such response as soon as possible. A party who has responded to a request for discovery with a response that was complete when made is under a duty to supplement the response to include information thereafter acquired. A party is under a duty to supplement responses with respect to any question directly addressed to:

    (1) The identity and location of persons having knowledge of discoverable matters, and

    (2) The identity of each person expected to be called as an expert witness at the hearing, the subject matter on which such expert(s) is expected to testify, and the substance of the testimony.

(d) *Frequency and use of discovery.* The ALJ shall limit, upon motion of a party, the frequency or extent of discovery if the ALJ determines that:

    (1) The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

    (2) The party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

    (3) The discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

(e) *Protective orders* —

    (1) *Request for protective order.* A party served with such a request may file a motion for a protective order before the date on which a response to the discovery request is due, stating why discovery should be limited or should not be required.

GOV000095

Case 6:25-cv-02186-MTK   Document 77   Filed 03/16/26   Page 97 of 222

(2) *Issuance of protective order.* In issuing a protective order, the ALJ may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following:

(i) That discovery not be had;

(ii) That the discovery may be had only through a method of discovery other than that requested;

(iii) That certain matters not be inquired into, or that the scope of discovery be limited to certain matters;

(iv) That discovery be conducted with no one present except persons designated by the ALJ; and

(v) That the contents of discovery or evidence be sealed.

(f) *Failure to respond to discovery —*

(1) *Motions to compel.* If a deponent fails to respond or gives an evasive or incomplete answer to a question propounded at a deposition pursuant to paragraph (a) of this section or a party fails to respond or gives evasive or incomplete answers to written interrogatories or admissions, or fails to respond, in full or in part, to a request for production of documents served pursuant to paragraph (b) of this section, the party seeking discovery may apply for an order compelling an answer by filing and serving a motion on all parties and deponents.

(2) *Filing motion to compel.*

(i) Such motion must be filed within 20 days following the service of the unresponsive answer upon deposition or within 20 days after expiration of the period allowed for answers to interrogatories or production of documents.

(ii) On matters related to an oral examination, the proponent of the question may complete or adjourn the examination before he applies for an order.

(3) *Responding to motion to compel.* A response to the motion may be filed in accordance with § 283.18(d).

(g) *Decision of the ALJ.*

(1) The ALJ may grant a motion to compel production or deny a motion for a protective order only if the ALJ finds that the discovery sought is necessary for the expeditious, fair, and reasonable consideration of the issues; it is not unduly costly or burdensome; it will not unduly delay the proceeding; and the information sought is not privileged.

(2) The initial decision of the ALJ regarding the motion to compel the production of privileged documents or the motion for a protective order shall become final and effective 10 days after service unless either party pursues the options as discussed in §§ 283.17(d) and 283.20.

(h) *Failure to comply with an order.*

(1) If a party or other witness refuses to be sworn or refuses to answer any question after being directed to do so by order of the ALJ, such refusal may subject the refusing party to proceedings to compel compliance with the ALJ's order in the appropriate United States district court.

GOV000096

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 98 of 222

(2) If any party or other person refuses to obey an order made under this section requiring an answer to designated questions or production of documents, the ALJ may order that the matters regarding which questions were asked or the contents of the document or documents or any other designated facts should be taken to be established for the purposes of the proceeding in accordance with the claim of the party obtaining the order.

(i) *Postponements or delays.* No hearing, proceeding or other matter under this part shall be postponed or otherwise delayed pending the response or resolution of issues pertaining to a request for information pursuant to the Freedom of Information Act, 5 U.S.C. 552.

## § 283.13 Subpoenas.

(a) *Issuance of subpoenas.* The attendance and testimony of witnesses and the production of documentary evidence from any place in the United States on behalf of any party to the appeal may be required by subpoena at the designated place of hearing. Except for cause shown, requests for subpoenas shall be filed at least 15 days prior to the date of the hearing. Subpoenas shall be issued by the ALJ, over the facsimile signature of the Secretary, upon a reasonable showing by the applicant of the grounds, necessity and reasonable scope thereof.

(b) *Service of subpoenas.*

(1) When the ALJ issues a subpoena under this section, the party who requested such subpoena shall serve all other parties with a copy of the subpoena, notice of the names and addresses of the individuals subpoenaed and specify any documents required to be produced.

(2) Subpoenas may be served:

(i) By a U.S. Marshal or deputy marshal,

(ii) By any other person who is not less than 18 years of age, or

(iii) By registering and mailing a copy of the subpoena addressed to the person to be served at the last known principal place of business or residence.

(3) Proof of service may be made:

(i) By the return of service on the subpoena by the U.S. Marshal or deputy marshal,

(ii) If served by an employee of the Department, by a certificate stating that he personally served the subpoena upon the person named therein,

(iii) If served by another person, by an affidavit of such person stating that he personally served the subpoena upon the person named therein, or

(iv) If service was by registered mail, by an affidavit made by the person mailing the subpoena that it was mailed as provided herein and by the signed return post-office receipt. Where the subpoena is issued on behalf of the Secretary and service is by mail, the return receipt without an affidavit or certificate of mailing shall be sufficient proof of service.

(4) In making personal service, the person making service shall leave a copy of the subpoena with the person subpoenaed, or, if such person is not immediately available, with any other responsible person authorized to accept service residing or employed at the place of residence or business of the person subpoenaed.

GOV000097

(5)  The original of the subpoena, bearing or accompanied by the required proof of service, shall be returned to the official who issued the same. The party at whose request the subpoena is issued shall be responsible for the service thereof.

## § 283.14 Fees of witnesses.

Witnesses summoned under these rules shall be paid the same fees and expenses that are paid witnesses in the courts of the United States. Fees shall be paid by the party at whose request the witness appears. Current Federal, State, or local government employees shall not be eligible to receive witness fees.

## § 283.15 Procedure for hearing.

(a)  *Request for hearing.* A party may request a hearing on the facts by including such request in its Appeal Petition or Answer, whichever is appropriate. Failure to request a hearing within the time specified shall constitute a waiver of the opportunity for such a hearing, except as provided for under § 283.4(i). In the event FNS denies any material facts and fails to request a hearing, the matter may be set down for hearing on motion of the State agency or upon the ALJ's own motion.

(b)  *Time and place.* If any material issue of fact is joined by the pleadings, the ALJ, upon motion of any party, stating that the matter is ready for hearing, shall set a time for the hearing, as soon as feasible thereafter, with due regard for the public interest and the convenience and necessity of the State agency and FNS. The hearing shall be held at the U.S. Department of Agriculture, Washington, DC. Upon a showing of unusual or extraordinary circumstances, the ALJ may order that the hearing be held at another location. The ALJ shall file a notice stating the time and place of the hearing. If any change in the time of the hearing is made, the ALJ shall file a notice of such change, which notice shall be served upon the parties, unless it is made during the course of an oral hearing and made a part of the transcript or actual notice given to the parties.

(c)  *Appearances.* The parties may appear in person or by attorney of record in the appeal or by any other designated representative. Any person who appears as attorney or as a party's designated representative must conform to the standards of ethical conduct required by practitioners before the courts of the United States.

(d)  *Exchange of witness and rebuttal witness lists, statements and exhibits.*

(1)  Witness and rebuttal witness lists, copies of prior statements of proposed witnesses, and copies of proposed hearing exhibits, including copies of any written statements or depositions that a party intends to offer in lieu of live testimony in accordance with § 283.12(a)(7), shall be exchanged at least 15 days in advance of the hearing or at such other time as may be set by the ALJ.

(2)  A witness whose name does not appear on the witness list shall not be permitted to testify and exhibits which were not provided to the opposing party as provided above shall not be admitted into evidence at the hearing absent a showing of cause and as authorized by the ALJ.

(e)  *Deparment of attorney or representative.*

(1)  Whenever an ALJ finds that a person acting as attorney or designated representative for any party to the appeal is guilty of unethical or contumacious conduct in, or in connection with an appeal, the ALJ may order that such person be precluded from further acting as attorney or representative in the appeal. Review by the Judicial Officer may be taken on any such order, but no appeal of the QC claim

GOV000098

shall be delayed or suspended pending disposition of the debarment review by the Judicial Officer. Provided, however, that the ALJ shall suspend the appeal of the QC claim for a reasonable time for the purpose of enabling the party to obtain another attorney or representative.

(2) Whenever it is found, after notice and opportunity for hearing, that a person who is acting or who has acted as attorney or representative for another person in any proceeding before the U.S. Department of Agriculture, is unfit to act as such counsel because of such unethical or contumacious conduct, such person will be precluded from acting as the attorney or representative in any or all proceedings before the Department as found to be appropriate.

(f) *Failure to appear.*

(1) If FNS or the State agency, after being duly notified, fails to appear at the hearing without cause, that party shall be deemed to have waived the opportunity for an oral hearing and to have admitted any facts which may be presented at the hearing. Such failure by either party shall also constitute an admission of all the material allegations of fact contained in any pleadings submitted by the other party. The party who appears shall have the option of whether to follow the procedure under § 283.7 or to present evidence, in whole or in part, in the form of declarations or by oral testimony before the ALJ.

(2) Failure to appear at a hearing shall not be deemed to be a waiver of the right to be served with a copy of the ALJ's initial decision, to file a motion for reconsideration pursuant to § 283.17(d) or to seek review by the Judicial Officer in accordance with § 283.20.

(g) *Order of proceeding.* Except as may be decided otherwise by the ALJ, FNS shall proceed first at the hearing. FNS has the burden of proving, by a preponderance of the evidence, the QC claim against the State agency for a QC error rate in excess of the tolerance level. The State agency will proceed second and must prove, by a preponderance of the evidence, the facts upon which it bases its appeal.

(h) *Evidence.*

(1) The testimony of witnesses at a hearing shall be on oath or affirmation and subject to cross-examination.

(2) Upon a finding of cause, the ALJ may order that any witness be examined separately and apart from all other witnesses except those who may be parties to the appeal or whose presence is shown by a party to be essential to the presentation of the party's cause.

(3) After a witness called by either party has testified on direct examination, any other party may request and obtain the production of any statement, or part thereof, of such witness in the possession of the opposing party which relates to the subject matter as to which the witness has testified. Such production shall be made according to the procedures and subject to the definitions and limitations prescribed in the Jencks Act (18 U.S.C. 3500).

(4) Evidence which is immaterial, irrelevant, or unduly repetitious, or which is not of the sort upon which responsible persons are accustomed to rely, shall be excluded by order of the ALJ insofar as practicable.

(i) *Inclusion in the record.* At the oral hearing or as ordered by the ALJ, depositions to the extent deemed admissible, written interrogatories, written requests for admission and respective responses may be offered in evidence by the party at whose instance they were taken. If not offered by such party, they may be offered in whole or in part by any other party. If only part of a deposition, written interrogatory, written request for admission or response thereto is offered in evidence by a party, any other party may require

that all of it, which is relevant to the part introduced, be offered, and any party may introduce any other parts. Such depositions, written interrogatories, written requests for admission and respective responses thereto shall be admissible in evidence subject to such objections as to relevancy, materiality or competency of the testimony as were noted at the time of their taking or are made at the time they are offered in evidence.

(j)   *Objections.*

   (1)   If a party objects to the admission of any evidence or to the limitation of the scope of any examination or cross examination or to any other ruling by the ALJ, the party shall state briefly the grounds of such objection, whereupon an automatic exception will follow if the objection is overruled by the ALJ.

   (2)   Only objections made before the ALJ may be subsequently relied upon on review by the Judicial Officer.

(k)   *Exhibits.* Four copies of each exhibit shall be filed with the ALJ. However, where there are more than two parties in the appeal, an additional copy shall be filed for each additional party. A true copy of an exhibit may be substituted for the original.

(l)   *Official records or documents.* An official government record or document or entry therein, if admissible for any purpose, shall be admissible in evidence without the production of the person who made or prepared the same, and shall be prima facie evidence of the relevant facts stated therein. Such record or document shall be evidenced by an official publication thereof or by a copy certified by a person having legal authority to make such certification.

(m)   *Official notice.* Official notice shall be taken of such matters as are judicially noticed by the courts of the United States and of any other matter of technical, scientific, or commercial fact of established character. Provided, that the parties shall be given adequate opportunity to show that such facts are erroneously noticed.

(n)   *Offer of proof.* Whenever evidence is excluded by the ALJ, the party offering such evidence may make an offer of proof, which shall be included in the transcript. The offer of proof shall consist of a brief statement describing the evidence excluded. If the evidence consists of a brief oral statement, it shall be included in the transcript in toto. If the evidence consists of a document or other exhibit, it shall be marked for identification and inserted in the hearing record. In either event, if the Judicial Officer, upon review, determines that the ALJ's ruling excluding the evidence was erroneous and prejudicial, the evidence shall be considered a part of the transcript and hearing record. If the Judicial Officer determines that the ALJ's ruling excluding the evidence was erroneous and prejudicial, and that it would inappropriate to have such evidence considered a part of the hearing record without reopening the hearing, the Judicial Officer may direct that the hearing be reopened to permit the taking of such evidence or for any other purpose in connection with the excluded evidence.

(o)   *Transcript.* Hearings shall be recorded and transcribed verbatim. The party requesting the hearing shall bear the transcription cost of producing the transcript and the duplication cost for one transcript provided to the ALJ and to the other parties to the appeal.

## § 283.16 Consolidation of issues.

Similar issues involved in appeals by two or more State agencies may be consolidated upon motion by the State agencies, FNS, or at the discretion of the ALJ if it is decided that consolidation would help to promote administrative efficiency.

GOV000100

(a) *Disposition of consolidated issues.* If the ALJ orders consolidation, the issues consolidated will be considered first. If a hearing has been requested by any of the parties that have had issues consolidated, arguments on the consolidated issues will be heard before arguments on dissimilar issues. The ALJ will take the information into consideration along with arguments on other issues in preparing initial decisions for QC appeals in which some issues have been consolidated.

(b) *Initial decision.*

   (1) If the ALJ decides the evidence and arguments by the State agencies on the consolidated issues cannot be overcome by the evidence presented by FNS and are sufficient to grant the relief requested by a State agency or all State agencies in which the issue is involved, the ALJ shall prepare an initial decision as provided in § 283.17(c).

   (2) FNS may file a motion for reconsideration pursuant to § 283.17(d) or seek review by the Judicial Officer in accordance with § 283.20.

## § 283.17 Post-hearing procedure.

(a) *Corrections to transcript.*

   (1) At any time, but not later than the time fixed for filing proposed findings of fact, conclusions of law, order and briefs, any party may file a motion proposing corrections to the transcript.

   (2) Unless a party files such a motion in the matter prescribed, the transcript shall be presumed to be a true, correct, and complete transcript of the testimony given at the hearing and to contain an accurate description or reference to all exhibits received in evidence and made part of the hearing record. The transcript shall be deemed to be certified without further action by the ALJ.

   (3) At any time prior to the filing of the ALJ's initial decision and after consideration of any objections filed as to the transcript, the ALJ may issue an order making any corrections in the transcript that the ALJ finds are warranted. Such corrections shall be entered into the original transcript by the Hearing Clerk (without obscuring the original text).

(b) *Proposed findings of fact, conclusions of law, order, and briefs.* The parties may file proposed findings of fact, conclusions of law and orders based solely upon the record and on officially noticed matters, and briefs in support thereof. briefs may be filed at the discretion of the ALJ. The ALJ shall announce at the hearing the time within which these documents may be filed.

(c) *ALJ's initial decision.*

   (1) The ALJ shall decide the appeal not later than 60 days after receipt of rebuttal evidence submitted by the State agency or, if the State agency does not submit rebuttal evidence, not later than 90 days after the State agency submits the notice of appeal and evidence in support of the appeal. In accordance with § 283.22(f), the ALJ may, upon motion or *sua sponte,* extend this deadline for cause shown.

   (2) The ALJ shall prepare, upon the basis of the record and officially noticed matters, and shall file, an initial decision which shall include a decision on a request for good cause relief, a copy of which shall be served upon each of the parties.

   (3) Such initial decision shall be considered final for purposes of judicial review without further proceedings, unless there is a motion for reconsideration filed pursuant to § 283.17(d) or review by the Judicial Officer is sought pursuant to § 283.20.

GOV000101

(4) If no motion for reconsideration or review by the Judicial Officer is filed, the initial decision shall constitute the final notice of determination for purposes of judicial review and shall become effective 30 day after service.

(d) *Motion for reconsideration.*

(1) Except as provided in paragraph (d)(4) of this section, any party may file a motion for reconsideration of the initial decision within 30 days of service of the initial decision. If served by mail, the time for filing a motion for reconsideration will be 5 days longer in accordance with § 283.22.

(2) Every such motion must set forth the mattes claimed to have been erroneously decided and the basis of the alleged errors. Such motion shall be accompanied by a supporting brief.

(3) Responses to such motions shall be filed in accordance with § 283.18(d).

(4) No party may file a motion for reconsideration of an initial decision that has been revised in response to a previous motion for reconsideration.

(5) The ALJ may dispose of a motion for reconsideration by denying it or by issuing a revised initial decision.

(6) If the ALJ denies a motion for reconsideration, the initial decision shall constitute the final notice of determination for purposes of judicial review and shall become effective 30 days after service unless review by the Judicial Officer is sought in accordance with § 283.20.

(7) If the ALJ issues a revised initial decision, that decision shall constitute the final notice of determination for purposes of judicial review and shall become effective 30 days after service unless review by the Judicial Officer is sought in accordance with § 283.20.

## § 283.18 Motions and requests.

(a) *Filing.* All motions and requests shall be filed with the Hearing Clerk, and served upon all the parties by the moving or requesting party, except motions and requests made on the record during the oral hearing. The ALJ assigned to the appeal or the Chief Judge shall rule upon all motions and requests filed or made prior to seeking review of the ALJ's initial decision pursuant to § 283.20, except motions directly relating to such review. Thereafter, the Judicial Officer shall rule on any motions and requests as well as the motions directly relating to the review of the ALJ's initial decision.

(b) *Time for filing.* Any motion or request may be filed at any time, except that:

(1) Motions to dismiss pursuant to § 283.5 must be filed within the time allowed for filing an answer; and

(2) Motions for reconsideration must be filed within 30 days of service of the ALJ's initial decision pursuant to § 283.17(d).

(c) *Contents.* All written motions and requests shall state the particular order, ruling, or action desired and the grounds therefor.

(d) *Response to motions and requests.* Within 10 days after service of any written motion or request or within such shorter or longer period as may be fixed by the ALJ or Judicial Officer, an opposing party may file a response to the motion or request. The moving party shall have no right to reply to the response; however, the ALJ or Judicial Officer may order that a reply be filed.

GOV000102

(e) *Certification to the Judicial Officer.* The submission or certification of any motion, request, objection, or other question to the Judicial Officer prior to the seeking of review pursuant to § 283.20 shall be made by and in the discretion of the ALJ. The ALJ may either rule upon or certify the motion, request, objection, or other question to the Judicial Officer, but not both.

## § 283.19 ALJs.

(a) *Assignment.* No ALJ shall be assigned to serve in any appeal who:

   (1)  Has any pecuniary interest in any matter or business involved in the appeal,

   (2)  Is related by blood or marriage to any party in the appeal, or

   (3)  Has any conflict of interest which might impair the ALJ's objectivity in the appeal.

(b) *Disqualification of ALJ.*

   (1)  Any party to the appeal may, by motion, request that the ALJ withdraw from the appeal on one or more of the grounds set out in paragraph (a) of this section. Such motion shall set forth with particularity the alleged grounds for disqualification. The ALJ may then either rule upon or certify the motion to the Judicial Officer, but not both.

   (2)  The ALJ may withdraw from any appeal for any reason deemed by the ALJ to be disqualifying.

(c) *Powers.*

   (1)  Subject to review as provided elsewhere in this part, the ALJ, in any assigned appeal, shall have the power to:

      (i)    Rule upon motions and requests;

      (ii)   Set the time and place of a pre-hearing conference and the time of the hearing, adjourn the hearing from time to time, and change the time of the hearing;

      (iii)  Administer oaths and affirmations;

      (iv)   Regulate the scope and timing of discovery;

      (v)    Issue and enforce subpoenas as authorized under 7 U.S.C. 2023(a) and these rules;

      (vi)   Summon and examine witnesses and receive evidence at the hearing;

      (vii)  Appoint expert witnesses in accordance with the provisions of Rule 706 of the Federal Rules of Evidence;

      (viii) Admit or exclude evidence;

      (ix)   Hear oral argument on facts or law;

      (x)    Upon motion of a party, decide cases, in whole or in part, by non-oral hearing procedures under subpart C of this part where there is no disputed material issue of fact;

      (xi)   Perform all acts and take all measures necessary for the maintenance of order, including the exclusion of contumacious counsel or other persons;

      (xii)  Take all other actions authorized under the Act and these rules, including the extension of time upon motion of a party or *sua sponte* for cause shown.

GOV000103

(2)   The ALJ may not rule upon the validity of Federal statutes or regulations.

(d)   ***Who may act in the absence of the ALJ.*** In case of the absence of the ALJ or the ALJ's inability to act, the powers and duties to be performed by the ALJ under these rules of practice in connection with any assigned appeal may, without abatement of the appeal, unless otherwise directed by the Chief Judge, be assigned to any other ALJ.

## § 283.20 Review by the Judicial Officer.

(a)   *Filing of review petition.*

(1)   Within 30 days after service of the ALJ's initial decision, or any part thereof, any party may seek Judicial Officer review of such decision by filing a review petition with the Hearing Clerk. However, if another party files a motion for reconsideration under § 283.17(d), consideration of the review petition shall be stayed automatically pending resolution of the motion for reconsideration. If a motion for reconsideration is timely filed, a review petition may be filed within 30 days after the ALJ denies the motion or issues a revised initial decision, whichever applies.

(2)   As provided in § 283.15(h), objections made before the ALJ regarding evidence or regarding a limitation on examination or cross-examination or other ruling may be relied upon in a Judicial Officer review.

(3)   Each issue set forth in the review petition, and the arguments thereon, shall be plainly and concisely stated; and shall contain detailed citations to the record, statutes, regulations or authorities being relied upon in support thereof. A brief in support may be filed simultaneously with the review petition.

(b)   ***Response to review petition.*** Within 30 days after service of a copy of a review petition and any brief in support thereof, any other party to the proceedings may file a response in support of or in opposition to the review petition and in such response any relevant issue, not presented in the review petition, may be raised.

(c)   *Transmittal of the record.*

(1)   Whenever a review petition of an ALJ's initial decision is filed and a response thereto has been filed or time for filing a response has expired, the Hearing Clerk shall transmit to the Judicial Officer the record of the appeal.

(2)   Such record shall include: The pleadings; motions and requests filed and rulings thereon; the transcript of the testimony taken at the hearing, together with the exhibits filed in connection therewith; any documents or papers filed in connection with a prehearing conference; such proposed findings of fact, conclusions of law, orders, and briefs in support thereof, as may have been filed in connection with the appeal; the ALJ's initial decision; the motion for reconsideration of the ALJ's initial decision; the ALJ's initial decision on the motion for reconsideration and the review petition, and such briefs in support thereof and responses thereto as may have been filed.

(d)   ***Oral argument.*** A party filing a review petition may request, within the prescribed time for filing such review petition, an opportunity for oral argument before the Judicial Officer. Within the time allowed for filing a response, the responding party may file a request for such oral argument. Failure to make such request to appear before the Judicial Officer, within the prescribed time period, shall be deemed a waiver of the opportunity for oral argument. There is no right to appear personally before the Judicial Officer. The

GOV000104

Judicial Officer may grant, refuse, or limit any request for oral argument. Oral argument shall not be transcribed unless so ordered in advance by the Judicial Officer for cause shown upon request of a party or upon the Judicial Officer's own motion.

(e) *Scope of argument.* Argument to be heard by the Judicial Officer on review, whether oral or on brief, shall be limited to the issues raised in the review petition to the Judicial Officer or in the response to such petition, except that if the Judicial Officer determines that additional issues should be argued, the parties shall be given reasonable notice of such determination, so as to permit adequate preparation on all issues to be argued.

(f) *Notice of argument; postponement.* The Hearing Clerk shall advise all parties of the time and place at which oral argument will be heard. A request for postponement of the argument must be made by motion filed within a reasonable time in advance of the date fixed for argument.

(g) *Order of argument.* The appellant is entitled to commence and conclude the argument.

(h) *Submission of briefs.* By agreement of the parties, a review may be submitted for decision on the briefs, but the Judicial Officer may direct that the review be argued orally.

(i) *Additional evidence.* If any party demonstrates to the satisfaction of the Judicial Officer that additional evidence not presented to the ALJ is material, not cumulative, and that there were reasonable grounds for the failure to present such evidence to the ALJ, the Judicial Officer shall remand the matter to the ALJ for consideration of such additional evidence.

(j) *Decision of the Judicial Officer on review.*

(1) As soon as practicable after the receipt of the record from the Hearing Clerk, or, in case oral argument was had, as soon as practicable thereafter, the Judicial Officer, upon the basis of the record and any matter of which official notice is taken, shall rule on the review.

(2) The Judicial Officer may adopt, reduce, reverse, compromise, remand or approve settlement of any claim initially decided by the ALJ under this part.

(3) The Judicial Officer shall promptly serve each party to the appeal with a copy of the ruling of the Judicial Officer which shall be considered the final determination and contain a statement describing the right to seek judicial review.

(4) Judicial review must be sought within 30 days of service of the final notice of determination by the Judicial Officer pursuant to 7 U.S.C. 2023(a).

## § 283.21 Ex parte communications.

(a) *ALJ; Judicial Officer.* At no time prior to the issuance of the final decision shall the ALJ or Judicial Officer discuss ex parte the merits of the appeal or review with any person who is connected with the appeal or review in an advocative or in an investigative capacity, or with any representative of such person. However, procedural matters shall not be included within this limitation; and furthermore, the ALJ or Judicial Officer may discuss the merits of the case with such a person if all parties to the appeal or review, or their attorneys have been given notice and an opportunity to participate. A memorandum of such discussion shall be included in the record.

(b) *Parties; interested persons.* No party or other interested person shall make or knowingly cause to be made to the ALJ or Judicial Officer an ex parte communication relevant to the merits of the appeal or review.

GOV000105

Case 6:25-cv-02186-MTK     Document 77     Filed 03/16/26     Page 107 of 222

(c) *Procedure.* If the ALJ or Judicial Officer receives an ex parte communication in violation of this section, the one who receives the communication shall place in the public record of the appeal or review:

   (1) All such written communications;

   (2) Memoranda stating the substance of all such oral communications; and

   (3) Copies of all written responses, and memoranda stating the substance of all oral responses thereto.

   (4) Upon receipt of a communication knowingly made or knowingly caused to be made by a party in violation of this section, the ALJ or Judicial Officer may, to the extent consistent with the interests of justice and the policy of the underlying statute, require the party to show cause why its claim or interest in the appeal or review should not be dismissed, denied, disregarded or otherwise adversely affected on account of such violation.

(d) *Decision.* To the extent consistent with the interests of justice and the policy of the underlying statute, a violation of this section shall be sufficient grounds for a decision adverse to the party who knowingly commits a violation of this section or who knowingly causes such a violation to occur.

## § 283.22 Form; filing; service; proof of service; computation of time; and extensions of time.

(a) *Form.*

   (1) The original and two copies of all papers in a proceeding conducted under this subpart shall be filed with the Hearing Clerk.

   (2) Every pleading and paper filed in the proceeding shall contain a caption setting forth the title of the action, the docket number assigned by the Hearing Clerk, and a descriptive title (e.g., Motion for Extension of Time).

   (3) Every pleading and paper shall be signed by and contain the address and telephone number of the representative for the party on whose behalf the paper was filed.

(b) *Filing.* Papers are considered filed when they are postmarked, or, received, if hand delivered. Date of mailing may be established by a certificate from the party or representative or by proof that the document was sent by certified or registered mail.

(c) *Service.* A party filing a document with the ALJ shall, at the time of filing, serve a copy of such document on every other party. Service upon any party of any document shall be made by delivering or mailing a copy to the party's last known address. When a party is represented by an attorney or designated representative, service shall be made upon such attorney or representative in lieu of the actual party.

(d) *Proof of service.* A certificate of the person serving the document by personal delivery or by mail, setting forth the date, time and manner of service, shall be proof of service.

(e) *Computation of time.*

   (1) In computing any period of time under this part or in an order issued thereunder, the time begins with the day following the act, event, or default, and includes the last day of the period, unless it is a Saturday, Sunday or legal holiday observed by the Federal Government, in which event it includes the next business day.

   (2) When a document has been served by mail, an additional five days will be added to the time permitted for any response.

GOV000106

(f) *Extensions of time.* Requests for extensions of time shall be submitted to the ALJ, Chief Judge or the Judicial Officer prior to the expiration of the original due date. The time for the filing of any document or paper required or authorized under the rules in this part may be extended by the ALJ, Chief Judge or the Judicial Officer, if, in the judgment of the ALJ, Chief Judge or the Judicial Officer, there is cause for the extension. In instances where the time permits notice of the request for extension, time shall be given to the other party to submit views concerning the request.

## § 283.23 Procedural matters.

(a) *Communications from Hearing Clerk.* In order to expedite the appeal process, the Hearing Clerk may develop form letters and transmittal forms to be used for notices, service of papers, requests for information, and all other communications between the Hearing Clerk's Office and the parties.

(b) *Representation.* All parties may be represented by attorneys or by designated representatives. Attorneys or designated representatives appearing for the parties shall file formal notices of appearances and withdrawals with the Hearing Clerk.

## Subpart C—Summary Procedure for Appeals of QC Claims of Less Than $50,000

## § 283.24 Incorporation of procedures by reference.

Except as otherwise provided, the following procedures detailed in subpart B of this part shall apply to appeals of QC claims of less than $50,000: §§ 283.5 *Motion to Dismiss*; 283.6 *Answer*; 283.8 *Rebuttal or Amendment of Appeal or Answer*; 283.9 *Withdrawal of Appeal*; 283.10 *Consent Decision*; 283.18 *Motions and Requests*; 283.19 *ALJ's*; 283.20 *Review by the Judicial Officer*; 283.21 *Ex Parte Communications*; 283.22 *Filings; Service; Extensions of Time; and Computations of Time*; and 283.23 *Procedural Matters.*

## § 283.25 Filing appeals for QC claims of less than $50,000.

(a) *Time.* A State agency may appeal the bill for collection from FNS for a QC claim of less than $50,000 for a SNAP QC error rate in excess of the tolerance level. A State agency must file a written notice of appeal, in accordance with this section, within 10 days of receipt of the bill for collection from FNS for a QC claim of less than $50,000. The State agency may request an extension to the 10-day filing requirement in accordance with § 283.22(f). FNS shall issue the bill for collection by certified mail or personal service.

(b) *Exhaustion of administrative remedies.* The State agency must appeal the bill for collection to the ALJ, pursuant to this subpart, and exhaust the available administrative remedies before filing suit in the Federal District Courts.

(c) *Filing.* The notice of appeal shall be filed with the Hearing Clerk.

(d) *Content of the notice of appeal.*

   (1) A notice of appeal, in order to be considered acceptable must contain the following information:

      (i) A brief and clear statement that it is an appeal from a QC claim of less than $50,000 identifying the period the claim covers, the date and amount of the bill for collection, and the date of receipt of the bill for collection;

      (ii) Identification of the State agency as the appellant and FNS as the appellee;

      (iii) A statement that the notice of appeal is filed pursuant to section 14(a) of the Food and Nutrition Act of 2008;

GOV000107

(iv) A true copy of the bill for collection which constitutes the basis for the filing of the notice of appeal shall be attached to the notice.

(2) Failure to file an acceptable notice of appeal may result in a challenge by FNS to the notice and dismissal of the notice by the ALJ and a waiver of the opportunity for further appeal or review by the Judicial Officer unless the State agency pursues the options as discussed in §§ 283.17(d) and 283.20.

(e) *Receipt of notice of appeal and assignment of docket number.* Upon receipt of a notice of appeal, the Hearing Clerk shall assign the appeal a docket number. The Hearing Clerk shall:

(1) Send the State agency a letter which shall include the following information:

(i) Advise that the notice of appeal has been received and the date of receipt;

(ii) The docket number assigned to the appeal and instructions that all future communications related to the appeal shall reference the docket number, and;

(iii) That the State agency must file and serve its appeal petition, as set forth in § 283.22 not later than 60 days after receiving a notice of the claim. Failure to file a timely appeal petition may result in a waiver of further appeal rights.

(2) Send FNS a copy of the notice of appeal and a copy of the letter to the State agency.

(f) *Stay of collection.* The filing of a timely notice of appeal shall automatically stay the action of FNS to collect the QC claim asserted against the State agency until a decision is reached on the acceptability of the appeal, and in the case of an acceptable appeal, until a final administrative determination has been issued. However, interest will accrue on the outstanding claim amount during the stay as provided in section 13(a)(1) of the Food and Nutrition Act of 2008, as amended (7 U.S.C. 2022(a)(1)).

(g) *Content of appeal petition.* The appeal petition shall include:

(1) A brief statement of the allegations of fact and provisions of law that constitute the basis for the appeal including a statement as to whether a factual basis for good cause relief exists, and

(2) The nature of the relief sought.

(h) *FNS answer.* Upon service of the State agency appeal petition, FNS shall file an answer, pursuant to § 283.6, not later than 60 days after the State agency submits its appeal petition.

## § 283.26 Request that appeals be handled under procedures in subpart B for appeals of QC claims of $50,000 or more.

(a) If, after the filing of its appeal petition, the State agency does not believe that the summary procedure provided in this subpart is adequate for handling the appeal and that an oral hearing is necessary, the State agency may file, no later than the date established for the conclusion of any discovery pursuant to § 283.29, a motion that its appeal be handled under the procedures in subpart B of this part.

(b) The motion shall specify why the State agency believes that the summary procedure is inadequate and what harm will result if an oral hearing is not held.

(c) FNS will have 10 days from service of the State agency's motion that the appeal be handled under subpart B of this part to submit arguments either in support of or against the State agency's position.

GOV000108

(d)    The ALJ will review the State agency's motion and the information submitted by FNS and decide which procedures shall be used in the appeal.

## § 283.27 Procedures upon failure to file an answer.

The failure by FNS to file an answer shall constitute a waiver of the opportunity to file a cross motion for summary judgment pursuant to § 283.30. Upon such failure to file, the State agency shall file a proposed decision, along with a motion for adoption thereof, both of which shall be served upon FNS by the State agency. Within 10 days after service of such motion and proposed decision, FNS may file with the Hearing Clerk objections thereto. If the ALJ finds that meritorious objections have been filed, the State agency's motion shall be denied with supporting reasons. If meritorious objections are not filed, the ALJ shall issue an initial decision without further procedures. Copies of the decision or denial of State agency's motion shall be served on each of the parties and shall be included as part of the official record. Where the decision as proposed by the State agency is adopted as the ALJ's initial decision, such decision of the ALJ shall become final and effective 30 days after service unless reconsideration or review by the Judicial Officer is sought as discussed in §§ 283.17(d) and 283.20.

## § 283.28 Discovery.

Upon motion and as ordered by the ALJ, written interrogatories, written requests for admissions and written requests for the production of documents, may be served by any party to the appeal upon any other party and used in accordance with § 283.12(b).

## § 283.29 Scheduling conference.

(a)    *Time and place.* The ALJ shall direct the parties or their counsel to attend a scheduling conference following the filing of a notice of appeal pursuant to § 283.25. The scheduling conference shall be held at the U.S. Department of Agriculture, Washington, DC. Reasonable notice of the time and place of the scheduling conference shall be given. The ALJ may order each of the parties to furnish at the scheduling conference the following:

(1)    An outline of the appeal or defense;

(2)    The legal theories upon which the party will rely;

(3)    Copies of or a list of documents that the party anticipates relying upon;

(b)    *Procedures.* The ALJ shall not order any of the foregoing procedures that a party can show are inappropriate or unwarranted under the circumstances of the particular appeal.

(c)    *Scheduling conference.* At the scheduling conference, the following matters shall be considered:

(1)    The simplification of issues;

(2)    The necessity of amendments to pleadings;

(3)    Stipulations of facts and of the authenticity, accuracy, and admissibility of documents;

(4)    Negotiation, compromise, or settlement of issues;

(5)    The exchange of copies of proposed exhibits;

(6)    The nature of and the date by which discovery, as provided in § 283.28, must be completed;

(7)    The identification of documents or matters of which official notice may be requested;

GOV000109

(8) A schedule to be followed by the parties for the filing of cross-motions for summary judgment and completion of other actions decided at the conference; and

(9) Such other matters as may expedite and aid in the disposition of the appeal.

(d) *Reporting.* A scheduling conference will not be stenographically reported unless so directed by the ALJ.

(e) *Attendance at scheduling conference.* In the event the ALJ concludes that personal attendance by the ALJ and the parties or counsel at a scheduling conference is unwarranted or impractical, but decides that a conference would expedite the appeal, the ALJ may conduct such conference by telephone.

(f) *Order.* Actions taken as a result of a conference shall be reduced to an appropriate written order, unless the ALJ concludes that a stenographic report shall suffice.

## § 283.30 Cross motions for summary judgment.

Appeals filed pursuant to this subpart shall be determined upon cross motions for summary judgment unless the matter is heard under subpart B of this part in accordance with § 283.26. Cross motions for summary judgment shall be filed by the parties along with the appeal petition and answer or in accordance with the schedule established by the ALJ pursuant to § 283.29. Motions for summary judgment shall address the issues raised by the pleadings and may be supported by declarations. Motions and accompanying briefs in support of summary judgment shall not exceed 35 pages excluding exhibits unless otherwise authorized by the ALJ. Reply briefs may be filed by the parties in accordance with the schedule established by the ALJ. Reply briefs may not exceed 15 pages in length, excluding exhibits.

## § 283.31 Review of the record.

(a) The ALJ shall review the cross motions for summary judgment, briefs, reply briefs and supporting materials submitted by both FNS and the State agency.

(b) If the ALJ decides that additional information or briefing is required from a party, a request for such information or briefing shall be submitted to such party with a copy to the other party. The request shall identify the additional information or specific issues to be addressed and shall specify the date(s) by which such information or briefing must be provided. Upon receipt of such additional information or briefing, the ALJ shall provide the other party an opportunity to submit responsive information or briefing.

(c) If the party to whom a request for additional information or briefing is made fails to submit the information or brief the issue(s) as requested, the ALJ may decide the appeal based on the existing record.

(d) If the ALJ decides that oral argument is necessary on legal issues, the ALJ shall set a time for the oral arguments as soon as feasible thereafter, with due regard for the public interest and the convenience and necessity of the State agency and FNS. The oral arguments shall be held at the U.S. Department of Agriculture, Washington, DC. Upon a showing of unusual or extraordinary circumstances, the ALJ may order that the argument be held at another location. The ALJ shall file a notice stating the time and place of the oral arguments. If any change in the time of the oral arguments is made, the ALJ shall file a notice of such change, which notice shall be served upon the parties, unless it is made during the course of the oral arguments and made a part of the transcript or actual notice given to the parties.

(e) Oral argument shall not be transcribed unless so ordered in advance by the ALJ for cause shown upon request of a party or upon the ALJ's own motion.

## § 283.32 ALJ's initial decision.

(a) The ALJ shall decide the appeal not later than 60 days after receipt of rebuttal evidence submitted by the State agency pursuant to § 283.8 or, if the State agency does not submit rebuttal evidence, not later than 90 days after the State agency submits the notice of appeal and evidence in support of the appeal. The ALJ may extend this deadline for cause shown.

(b) The ALJ shall prepare, upon the basis of the record, and shall file an initial decision which shall include a decision on a request for good cause relief, a copy of which shall be served upon each of the parties.

(c) Such initial decision shall constitute the final notice of determination for purposes of judicial review without further proceedings, unless there is a motion for reconsideration filed pursuant to § 283.17(d) or review by the Judicial Officer is sought pursuant to § 283.20.

GOV000111

🚩 KeyCite Yellow Flag

Unconstitutional or Preempted  Prior Version Held Unconstitutional by  Pena Martinez v. U.S. Department of Health and Human Services,  D.Puerto Rico, Aug. 03, 2020

🚩 KeyCite Yellow Flag

Proposed Legislation

United States Code Annotated
  Title 7. Agriculture (Refs & Annos)
    Chapter 51. Supplemental Nutrition Assistance Program (Refs & Annos)

7 U.S.C.A. § 2013

§ 2013. Establishment of supplemental nutrition assistance program

Effective: July 4, 2025
Currentness

**(a) Program**

**(1) Establishment**

Subject to the availability of funds appropriated under section 2027 of this title, the Secretary is authorized to formulate and administer a supplemental nutrition assistance program under which, at the request of the State agency, eligible households within the State shall be provided an opportunity to obtain a more nutritious diet through the issuance to them of an allotment, except that a State may not participate in the supplemental nutrition assistance program if the Secretary determines that State or local sales taxes are collected within that State on purchases of food made with benefits issued under this chapter. The benefits so received by such households shall be used only to purchase food from retail food stores which have been approved for participation in the supplemental nutrition assistance program. Benefits issued and used as provided in this chapter shall be redeemable at face value by the Secretary through the facilities of the Treasury of the United States.

**(2) State quality control incentive**

**(A) Definition of payment error rate**

In this paragraph, the term "payment error rate" has the meaning given the term in section 2025(c)(2) of this title.

**(B) State cost share**

**(i) In general**

Subject to clause (iii), beginning in fiscal year 2028, if the payment error rate of a State as determined under clause (ii) is--

GOV000112

**(I)** less than 6 percent, the Federal share of the cost of the allotment described in paragraph (1) for that State in a fiscal year shall be 100 percent, and the State share shall be 0 percent;

**(II)** equal to or greater than 6 percent but less than 8 percent, the Federal share of the cost of the allotment described in paragraph (1) for that State in a fiscal year shall be 95 percent, and the State share shall be 5 percent;

**(III)** equal to or greater than 8 percent but less than 10 percent, the Federal share of the cost of the allotment described in paragraph (1) for that State in a fiscal year shall be 90 percent, and the State share shall be 10 percent; and

**(IV)** equal to or greater than 10 percent, the Federal share of the cost of the allotment described in paragraph (1) for that State in a fiscal year shall be 85 percent, and the State share shall be 15 percent.

### (ii) Elections

#### (I) Fiscal year 2028

For fiscal year 2028, to calculate the applicable State share under clause (i), a State may elect to use the payment error rate of the State from fiscal year 2025 or 2026.

#### (II) Fiscal year 2029 and thereafter

For fiscal year 2029 and each fiscal year thereafter, to calculate the applicable State share under clause (i), the Secretary shall use the payment error rate of the State for the third fiscal year preceding the fiscal year for which the State share is being calculated.

### (iii) Delayed implementation

#### (I) Fiscal year 2025

If, for fiscal year 2025, the payment error rate of a State multiplied by 1.5 is equal to or above 20 percent, the implementation date under clause (i) for that State shall be fiscal year 2029.

#### (II) Fiscal year 2026

If, for fiscal year 2026, the payment error rate of a State multiplied by 1.5 is equal to or above 20 percent, the implementation date under clause (i) for that State shall be fiscal year 2030.

### (3) Maximum Federal payment

The Secretary may not pay towards the cost of an allotment described in paragraph (1) an amount that is greater than the applicable Federal share under paragraph (2).

GOV000113

**(b) Food distribution program on Indian reservations**

**(1) In general**

Distribution of commodities, with or without the supplemental nutrition assistance program, shall be made whenever a request for concurrent or separate food program operations, respectively, is made by a tribal organization.

**(2) Administration**

**(A) In general**

Subject to subparagraphs (B) and (C), in the event of distribution on all or part of an Indian reservation, the appropriate agency of the State government in the area involved shall be responsible for the distribution.

**(B) Administration by tribal organization**

If the Secretary determines that a tribal organization is capable of effectively and efficiently administering a distribution described in paragraph (1), then the tribal organization shall administer the distribution.

**(C) Prohibition**

The Secretary shall not approve any plan for a distribution described in paragraph (1) that permits any household on any Indian reservation to participate simultaneously in the supplemental nutrition assistance program and the program established under this subsection.

**(3) Disqualified participants**

An individual who is disqualified from participation in the food distribution program on Indian reservations under this subsection is not eligible to participate in the supplemental nutrition assistance program under this chapter for a period of time to be determined by the Secretary.

**(4) Administrative costs**

**(A) In general**

Subject to subparagraph (B), the Secretary shall pay not less than 80 percent of administrative costs and distribution costs on Indian reservations as the Secretary determines necessary for effective administration of such distribution by a State agency or tribal organization.

**(B) Waiver**

GOV000114

The Secretary shall waive up to 100 percent of the non-Federal share of the costs described in subparagraph (A) if the Secretary determines that--

**(i)** the tribal organization is financially unable to provide a greater non-Federal share of the costs; or

**(ii)** providing a greater non-Federal share of the costs would be a substantial burden for the tribal organization.

**(C) Limitation**

The Secretary may not reduce any benefits or services under the food distribution program on Indian reservations under this subsection to any tribal organization that is granted a waiver under subparagraph (B).

**(D) Tribal contribution**

The Secretary may allow a tribal organization to use funds provided to the tribal organization through a Federal agency or other Federal benefit to satisfy all or part of the non-Federal share of the costs described in subparagraph (A) if that use is otherwise consistent with the purpose of the funds.

**(5) Bison meat**

Subject to the availability of appropriations to carry out this paragraph, the Secretary may purchase bison meat for recipients of food distributed under this subsection, including bison meat from--

**(A)** Native American bison producers; and

**(B)** producer-owned cooperatives of bison ranchers.

**(6) Traditional and locally- and regionally-grown food fund**

**(A) In general**

Subject to the availability of appropriations, the Secretary shall establish a fund for use in purchasing traditional and locally- and regionally-grown foods for recipients of food distributed under this subsection.

**(B) Native American producers**

Where practicable, of the food provided under subparagraph (A), at least 50 percent shall be produced by Native American farmers, ranchers, and producers.

**(C) Definition of traditional and locally- and regionally-grown**

GOV000115

The Secretary shall determine the definition of the term "traditional and locally- and regionally-grown" with respect to food distributed under this paragraph.

**(D) Purchase of foods**

In carrying out this paragraph, the Secretary shall purchase or offer to purchase those traditional foods that may be procured cost-effectively.

**(E) Authorization of appropriations**

There is authorized to be appropriated to the Secretary to carry out this paragraph $5,000,000 for each of fiscal years 2008 through 2023.

**(7) Availability of funds**

**(A) In general**

Funds made available for a fiscal year to carry out this subsection shall remain available for obligation for a period of 2 fiscal years.

**(B) Administrative costs**

Funds made available for a fiscal year to carry out paragraph (4) shall remain available for obligation by the State agency or tribal organization for a period of 2 fiscal years.

**(c) Regulations; transmittal of copy of regulations to Congressional committees prior to issuance**

The Secretary shall issue such regulations consistent with this chapter as the Secretary deems necessary or appropriate for the effective and efficient administration of the supplemental nutrition assistance program and shall promulgate all such regulations in accordance with the procedures set forth in section 553 of Title 5. In addition, prior to issuing any regulation, the Secretary shall provide the Committee on Agriculture of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry of the Senate a copy of the regulation with a detailed statement justifying it.

**CREDIT(S)**

(Pub.L. 88-525, § 4, Aug. 31, 1964, 78 Stat. 704; Pub.L. 91-671, § 3, Jan. 11, 1971, 84 Stat. 2049; Pub.L. 95-113, Title XIII, § 1301, Sept. 29, 1977, 91 Stat. 961; Pub.L. 99-198, Title XV, §§ 1505(a), 1506, Dec. 23, 1985, 99 Stat. 1567; Pub.L. 110-234, Title IV, §§ 4001(b), 4002(a)(1), 4111(a), 4115(b)(2), 4211(a), May 22, 2008, 122 Stat. 1092, 1102, 1106, 1122; Pub.L. 110-246, § 4(a), Title IV, §§ 4001(b), 4002(a)(1), 4111(a), 4115(b)(2), 4211(a), June 18, 2008, 122 Stat. 1664, 1853, 1863, 1867, 1884; Pub.L. 111-296, Title II, § 241(b)(1), Dec. 13, 2010, 124 Stat. 3236; Pub.L. 113-79, Title IV, §§ 4004(a), 4030(b), Feb. 7, 2014, 128 Stat. 785, 814; Pub.L. 115-334, Title IV, § 4003(a), Dec. 20, 2018, 132 Stat. 4624; Pub.L. 119-21, Title I, § 10105(a), July 4, 2025, 139 Stat. 83.)

GOV000116

Notes of Decisions (14)

7 U.S.C.A. § 2013, 7 USCA § 2013
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

---

**End of Document**　　　　　　　　　　　　　　　　　　　© 2026 Thomson Reuters. No claim to original U.S. Government Works.

GOV000117

  KeyCite Yellow Flag
Proposed Legislation

United States Code Annotated
   Title 7. Agriculture (Refs & Annos)
      Chapter 51. Supplemental Nutrition Assistance Program (Refs & Annos)

7 U.S.C.A. § 2014

§ 2014. Eligible households

Effective: July 4, 2025
Currentness

**(a) Income and other financial resources as substantial limiting factors in obtaining more nutritious diet; recipients under Social Security Act**

Participation in the supplemental nutrition assistance program shall be limited to those households whose incomes and other financial resources, held singly or in joint ownership, are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet. Notwithstanding any other provisions of this chapter except subsections (b), (d)(2), (g), and (r) of section 2015 of this title and section 2012(m)(4) of this title, households in which each member receives benefits under a State program funded under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.), supplemental security income benefits under title XVI of the Social Security Act, or aid to the aged, blind, or disabled under title I, X, XIV, or XVI of the Social Security Act, shall be eligible to participate in the supplemental nutrition assistance program. Except for sections 2015, 2025(e)(1), and section 2012(m)(4) of this title, households in which each member receives benefits under a State or local general assistance program that complies with standards established by the Secretary for ensuring that the program is based on income criteria comparable to or more restrictive than those under subsection (c)(2), and not limited to one-time emergency payments that cannot be provided for more than one consecutive month, shall be eligible to participate in the supplemental nutrition assistance program. Assistance under this program shall be furnished to all eligible households who make application for such participation.

**(b) Eligibility standards**

Except as otherwise provided in this chapter, the Secretary shall establish uniform national standards of eligibility (other than the income standards for Alaska, Hawaii, Guam, and the Virgin Islands of the United States established in accordance with subsections (c) and (e) of this section) for participation by households in the supplemental nutrition assistance program in accordance with the provisions of this section. No plan of operation submitted by a State agency shall be approved unless the standards of eligibility meet those established by the Secretary, and no State agency shall impose any other standards of eligibility as a condition for participating in the program.

**(c) Gross income standard**

The income standards of eligibility shall be adjusted each October 1 and shall provide that a household shall be ineligible to participate in the supplemental nutrition assistance program if--

GOV000118

**(1)** the household's income (after the exclusions and deductions provided for in subsections (d) and (e)) exceeds the poverty line, as defined in section 673(2) of the Community Services Block Grant Act (42 U.S.C. 9902(2)), for the forty-eight contiguous States and the District of Columbia, Alaska, Hawaii, the Virgin Islands of the United States, and Guam, respectively; and

**(2)** in the case of a household that does not include an elderly or disabled member, the household's income (after the exclusions provided for in subsection (d) but before the deductions provided for in subsection (e)) exceeds such poverty line by more than 30 per centum.

In no event shall the standards of eligibility for the Virgin Islands of the United States or Guam exceed those in the forty-eight contiguous States.

**(d) Exclusions from income**

Household income for purposes of the supplemental nutrition assistance program shall include all income from whatever source excluding only--

**(1)** any gain or benefit which is not in the form of money payable directly to a household (notwithstanding its conversion in whole or in part to direct payments to households pursuant to any demonstration project carried out or authorized under Federal law including demonstration projects created by the waiver of provisions of Federal law);

**(2)** any income in the certification period which is received too infrequently or irregularly to be reasonably anticipated, but not in excess of $30 in a quarter, subject to modification by the Secretary in light of subsection (f);

**(3)** all educational loans on which payment is deferred, grants, scholarships, fellowships, veterans' educational benefits, and the like--

**(A)** awarded to a household member enrolled at a recognized institution of post-secondary education, at a school for the handicapped, in a vocational education program, or in a program that provides for completion of a secondary school diploma or obtaining the equivalent thereof;

**(B)** to the extent that they do not exceed the amount used for or made available as an allowance determined by such school, institution, program, or other grantor, for tuition and mandatory fees (including the rental or purchase of any equipment, materials, and supplies related to the pursuit of the course of study involved), books, supplies, transportation, and other miscellaneous personal expenses (other than living expenses), of the student incidental to attending such school, institution, or program; and

**(C)** to the extent loans include any origination fees and insurance premiums;

**(4)** all loans other than educational loans on which repayment is deferred;

GOV000119

**(5)** reimbursements which do not exceed expenses actually incurred and which do not represent a gain or benefit to the household and any allowance a State agency provides no more frequently than annually to families with children on the occasion of those children's entering or returning to school or child care for the purpose of obtaining school clothes (except that no such allowance shall be excluded if the State agency reduces monthly assistance under a State program funded under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.) in the month for which the allowance is provided): *Provided,* That no portion of benefits provided under title IV-A of the Social Security Act, to the extent it is attributable to an adjustment for work-related or child care expenses (except for payments or reimbursements for such expenses made under an employment, education, or training program initiated under such title after September 19, 1988), and no portion of any educational loan on which payment is deferred, grant, scholarship, fellowship, veterans' benefits, and the like that are provided for living expenses, shall be considered such reimbursement;

**(6)** moneys received and used for the care and maintenance of a third-party beneficiary who is not a household member, and child support payments made by a household member to or for an individual who is not a member of the household if the household member is legally obligated to make the payments;

**(7)** income earned by a child who is a member of the household, who is an elementary or secondary school student, and who is 17 years of age or younger;

**(8)** moneys received in the form of nonrecurring lump-sum payments, including, but not limited to, income tax refunds, rebates, or credits, cash donations based on need that are received from one or more private nonprofit charitable organizations, but not in excess of $300 in the aggregate in a quarter, retroactive lump-sum social security or railroad retirement pension payments and retroactive lump-sum insurance settlements: *Provided,* That such payments shall be counted as resources, unless specifically excluded by other laws;

**(9)** the cost of producing self-employed income, but household income that otherwise is included under this subsection shall be reduced by the extent that the cost of producing self-employment income exceeds the income derived from self-employment as a farmer;

**(10)** any income that any other Federal law specifically excludes from consideration as income for purposes of determining eligibility for the supplemental nutrition assistance program except as otherwise provided in subsection (k) of this section;

**(11)(A)** any payments or allowances made for the purpose of providing energy assistance under any Federal law (other than part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.)); or

**(B)** a 1-time payment or allowance made under a Federal or State law for the costs of weatherization or emergency repair or replacement of an unsafe or inoperative furnace or other heating or cooling device;

**(12)** through September 30 of any fiscal year, any increase in income attributable to a cost-of-living adjustment made on or after July 1 of such fiscal year under title II or XVI of the Social Security Act, section 3(a)(1) of the Railroad Retirement Act of 1974 (45 U.S.C. 231b(a)(1)), or section 5312 of Title 38, if the household was certified as eligible to participate in the supplemental nutrition assistance program or received an allotment in the month immediately preceding the first month in which the adjustment was effective;

GOV000120

**(13)** any payment made to the household under section 3507 [1] of Title 26 (relating to advance payment of earned income credit);

**(14)** any payment made to the household under section 2015(d)(4)(I) of this title or a pilot project under section 2025(h)(1)(F) of this title for work related expenses or for dependent care;

**(15)** any amounts necessary for the fulfillment of a plan for achieving self-support of a household member as provided under subparagraph (A)(iii) or (B)(iv) of section 1612(b)(4) of the Social Security Act (42 U.S.C. 1382a(b)(4));

**(16)** at the option of the State agency, any educational loans on which payment is deferred, grants, scholarships, fellowships, veterans' educational benefits, and the like (other than loans, grants, scholarships, fellowships, veterans' educational benefits, and the like excluded under paragraph (3)), to the extent that they are required to be excluded under title XIX of the Social Security Act (42 U.S.C. 1396 et seq.);

**(17)** at the option of the State agency, any State complementary assistance program payments that are excluded for the purpose of determining eligibility for medical assistance under section 1931 of the Social Security Act (42 U.S.C. 1396u-1);

**(18)** at the option of the State agency, any types of income that the State agency does not consider when determining eligibility for (A) cash assistance under a program funded under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.) or the amount of such assistance, or (B) medical assistance under section 1931 of the Social Security Act (42 U.S.C. 1396u-1), except that this paragraph does not authorize a State agency to exclude wages or salaries, benefits under title I, II, IV, X, XIV, or XVI of the Social Security Act (42 U.S.C. 301 et seq.), regular payments from a government source (such as unemployment benefits and general assistance), worker's compensation, child support payments made to a household member by an individual who is legally obligated to make the payments, or such other types of income the consideration of which the Secretary determines by regulation to be essential to equitable determinations of eligibility and benefit levels; and

**(19)** any additional payment under chapter 5 of Title 37, or otherwise designated by the Secretary to be appropriate for exclusion under this paragraph, that is received by or from a member of the United States Armed Forces deployed to a designated combat zone, if the additional pay--

**(A)** is the result of deployment to or service in a combat zone; and

**(B)** was not received immediately prior to serving in a combat zone.

**(e) Deductions from income**

**(1) Standard deduction**

**(A) In general**

GOV000121

**(i) Deduction**

The Secretary shall allow a standard deduction for each household in the 48 contiguous States and the District of Columbia, Alaska, Hawaii, and the Virgin Islands of the United States in an amount that is--

**(I)** equal to 8.31 percent of the income standard of eligibility established under subsection (c)(1); but

**(II)** not more than 8.31 percent of the income standard of eligibility established under subsection (c)(1) for a household of 6 members.

**(ii) Minimum amount**

Notwithstanding clause (i), the standard deduction for each household in the 48 contiguous States and the District of Columbia, Alaska, Hawaii, and the Virgin Islands of the United States shall be not less than--

**(I)** for fiscal year 2009, $144, $246, $203, and $127, respectively; and

**(II)** for fiscal year 2010 and each fiscal year thereafter, an amount that is equal to the amount from the previous fiscal year adjusted to the nearest lower dollar increment to reflect changes for the 12-month period ending on the preceding June 30 in the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics of the Department of Labor, for items other than food.

**(B) Guam**

**(i) In general**

The Secretary shall allow a standard deduction for each household in Guam in an amount that is--

**(I)** equal to 8.31 percent of twice the income standard of eligibility established under subsection (c)(1) for the 48 contiguous States and the District of Columbia; but

**(II)** not more than 8.31 percent of twice the income standard of eligibility established under subsection (c)(1) for the 48 contiguous States and the District of Columbia for a household of 6 members.

**(ii) Minimum amount**

Notwithstanding clause (i), the standard deduction for each household in Guam shall be not less than--

**(I)** for fiscal year 2009, $289; and

GOV000122

**(II)** for fiscal year 2010 and each fiscal year thereafter, an amount that is equal to the amount from the previous fiscal year adjusted to the nearest lower dollar increment to reflect changes for the 12-month period ending on the preceding June 30 in the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics of the Department of Labor, for items other than food.

### (C) Requirement

Each adjustment under subparagraphs (A)(ii)(II) and (B)(ii)(II) shall be based on the unrounded amount for the prior 12-month period.

## (2) Earned income deduction

### (A) "Earned income" defined

In this paragraph, the term "earned income" does not include--

**(i)** income excluded by subsection (d); or

**(ii)** any portion of income earned under a work supplementation or support program, as defined under section 2025(b) of this title, that is attributable to public assistance.

### (B) Deduction

Except as provided in subparagraph (C), a household with earned income shall be allowed a deduction of 20 percent of all earned income to compensate for taxes, other mandatory deductions from salary, and work expenses.

### (C) Exception

The deduction described in subparagraph (B) shall not be allowed with respect to determining an overissuance due to the failure of a household to report earned income in a timely manner.

## (3) Dependent care deduction

### (A) In general

A household shall be entitled, with respect to expenses (other than excluded expenses described in subparagraph (B)) for dependent care, to a dependent care deduction for the actual cost of payments necessary for the care of a dependent if the care enables a household member to accept or continue employment, or training or education that is preparatory for employment.

### (B) Excluded expenses

GOV000123

The excluded expenses referred to in subparagraph (A) are--

**(i)** expenses paid on behalf of the household by a third party;

**(ii)** amounts made available and excluded, for the expenses referred to in subparagraph (A), under subsection (d)(3); and

**(iii)** expenses that are paid under section 2015(d)(4) of this title or a pilot project under section 2025(h)(1)(F) of this title.

**(4) Deduction for child support payments**

**(A) In general**

In lieu of providing an exclusion for legally obligated child support payments made by a household member under subsection (d)(6), a State agency may elect to provide a deduction for the amount of the payments.

**(B) Order of determining deductions**

A deduction under this paragraph shall be determined before the computation of the excess shelter expense deduction under paragraph (6).

**(5) Excess medical expense deduction**

**(A) In general**

A household containing an elderly or disabled member shall be entitled, with respect to expenses other than expenses paid on behalf of the household by a third party, to an excess medical expense deduction for the portion of the actual costs of allowable medical expenses, incurred by the elderly or disabled member, exclusive of special diets, that exceeds $35 per month.

**(B) Method of claiming deduction**

**(i) In general**

A State agency shall offer an eligible household under subparagraph (A) a method of claiming a deduction for recurring medical expenses that are initially verified under the excess medical expense deduction in lieu of submitting information on, or verification of, actual expenses on a monthly basis.

**(ii) Method**

The method described in clause (i) shall--

GOV000124

Case 6:25-cv-02186-MTK    Document 77    Filed 03/16/26    Page 126 of 222

**(I)** be designed to minimize the burden for the eligible elderly or disabled household member choosing to deduct the recurrent medical expenses of the member pursuant to the method;

**(II)** rely on reasonable estimates of the expected medical expenses of the member for the certification period (including changes that can be reasonably anticipated based on available information about the medical condition of the member, public or private medical insurance coverage, and the current verified medical expenses incurred by the member); and

**(III)** not require further reporting or verification of a change in medical expenses if such a change has been anticipated for the certification period.

### (C) Exclusion of medical marijuana

The Secretary shall promulgate rules to ensure that medical marijuana is not treated as a medical expense for purposes of this paragraph.

## (6) Excess shelter expense deduction

### (A) In general

A household shall be entitled, with respect to expenses other than expenses paid on behalf of the household by a third party, to an excess shelter expense deduction to the extent that the monthly amount expended by a household for shelter exceeds an amount equal to 50 percent of monthly household income after all other applicable deductions have been allowed.

### (B) Maximum amount of deduction

In the case of a household that does not contain an elderly or disabled individual, in the 48 contiguous States and the District of Columbia, Alaska, Hawaii, Guam, and the Virgin Islands of the United States, the excess shelter expense deduction shall not exceed--

**(i)** for the period beginning on August 22, 1996, and ending on December 31, 1996, $247, $429, $353, $300, and $182 per month, respectively;

**(ii)** for the period beginning on January 1, 1997, and ending on September 30, 1998, $250, $434, $357, $304, and $184 per month, respectively;

**(iii)** for fiscal year 1999, $275, $478, $393, $334, and $203 per month, respectively;

**(iv)** for fiscal year 2000, $280, $483, $398, $339, and $208 per month, respectively;

**(v)** for fiscal year 2001, $340, $543, $458, $399, and $268 per month, respectively; and

GOV000125

**(vi)** for fiscal year 2002 and each subsequent fiscal year, the applicable amount during the preceding fiscal year, as adjusted to reflect changes for the 12-month period ending the preceding November 30 in the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics of the Department of Labor.

**(C) Standard utility allowance**

**(i) In general**

In computing the excess shelter expense deduction, a State agency may use a standard utility allowance in accordance with regulations promulgated by the Secretary, subject to clause (iv), except that a State agency may use an allowance that does not fluctuate within a year to reflect seasonal variations.

**(ii) Restrictions on heating and cooling expenses**

An allowance for a heating or cooling expense may not be used in the case of a household that--

**(I)** does not incur a heating or cooling expense, as the case may be;

**(II)** does incur a heating or cooling expense but is located in a public housing unit that has central utility meters and charges households, with regard to the expense, only for excess utility costs; or

**(III)** shares the expense with, and lives with, another individual not participating in the supplemental nutrition assistance program, another household participating in the supplemental nutrition assistance program, or both, unless the allowance is prorated between the household and the other individual, household, or both.

**(iii) Mandatory allowance**

**(I) In general**

A State agency may make the use of a standard utility allowance mandatory for all households with qualifying utility costs if--

**(aa)** the State agency has developed 1 or more standards that include the cost of heating and cooling and 1 or more standards that do not include the cost of heating and cooling; and

**(bb)** the Secretary finds (without regard to subclause (III)) that the standards will not result in an increased cost to the Secretary.

**(II) Household election**

GOV000126

A State agency that has not made the use of a standard utility allowance mandatory under subclause (I) shall allow a household to switch, at the end of a certification period, between the standard utility allowance and a deduction based on the actual utility costs of the household.

### (III) Inapplicability of certain restrictions

Clauses (ii)(II) and (ii)(III) shall not apply in the case of a State agency that has made the use of a standard utility allowance mandatory under subclause (I).

### (iv) Availability of allowance to recipients of energy assistance

### (I) In general

Subject to subclause (II), if a State agency elects to use a standard utility allowance that reflects heating and cooling costs, the standard utility allowance shall be made available to households with an elderly or disabled member that received a payment, or on behalf of which a payment was made, under the Low-Income Home Energy Assistance Act of 1981 (42 U.S.C. 8621 et seq.) or other similar energy assistance program, if in the current month or in the immediately preceding 12 months, the household either received such a payment, or such a payment was made on behalf of the household, that was greater than $20 annually, as determined by the Secretary.

### (II) Separate allowance

A State agency may use a separate standard utility allowance for households on behalf of which a payment described in subclause (I) is made, but may not be required to do so.

### (III) States not electing to use separate allowance

A State agency that does not elect to use a separate allowance but makes a single standard utility allowance available to households incurring heating or cooling expenses (other than a household described in subclause (I) or (II) of clause (ii)) may not be required to reduce the allowance due to the provision (directly or indirectly) of assistance under the Low-Income Home Energy Assistance Act of 1981 (42 U.S.C. 8621 et seq.).

### (IV) Proration of assistance

For the purpose of the supplemental nutrition assistance program, assistance provided under the Low-Income Home Energy Assistance Act of 1981 (42 U.S.C. 8621 et seq.) shall be considered to be prorated over the entire heating or cooling season for which the assistance was provided.

### (D) Homeless households

### (i) Alternative deduction

The State agency shall allow a deduction of $143 a month for households--

GOV000127

**(I)** in which all members are homeless individuals;

**(II)** that are not receiving free shelter throughout the month; and

**(III)** that do not opt to claim an excess shelter expense deduction under subparagraph (A).

### (ii) Adjustment

For fiscal year 2019 and each subsequent fiscal year the amount of the homeless shelter deduction specified in clause (i) shall be adjusted to reflect changes for the 12-month period ending the preceding November 30 in the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics of the Department of Labor.

### (iii) Ineligibility

The State agency may make a household with extremely low shelter costs ineligible for the alternative deduction under clause (i).

### (E) Restrictions on internet expenses

Any service fee associated with internet connection shall not be used in computing the excess shelter expense deduction under this paragraph.

## (f) Calculation of household income; prospective or retrospective accounting basis; consistency

**(1)(A)** Household income for those households that, by contract for other than an hourly or piecework basis or by self-employment, derive their annual income in a period of time shorter than one year shall be calculated by averaging such income over a twelve-month period. Notwithstanding the preceding sentence, household income resulting from the self-employment of a member in a farming operation, who derives income from such farming operation and who has irregular expenses to produce such income, may, at the option of the household, be calculated by averaging such income and expenses over a 12-month period. Notwithstanding the first sentence, if the averaged amount does not accurately reflect the household's actual monthly circumstances because the household has experienced a substantial increase or decrease in business earnings, the State agency shall calculate the self-employment income based on anticipated earnings.

**(B)** Household income for those households that receive nonexcluded income of the type described in subsection (d)(3) of this section shall be calculated by averaging such income over the period for which it is received.

### (C) Simplified determination of deductions

#### (i) In general

GOV000128

Except as provided in clause (ii), for the purposes of subsection (e), a State agency may elect to disregard until the next recertification of eligibility under section 2020(e)(4) of this title 1 or more types of changes in the circumstances of a household that affect the amount of deductions the household may claim under subsection (e).

**(ii) Changes that may not be disregarded**

Under clause (i), a State agency may not disregard--

**(I)** any reported change of residence; or

**(II)** under standards prescribed by the Secretary, any change in earned income.

**(2)(A)** Except as provided in subparagraphs (B), (C), and (D), households shall have their incomes calculated on a prospective basis, as provided in paragraph (3)(A), or, at the option of the State agency, on a retrospective basis, as provided in paragraph (3)(B).

**(B)** In the case of the first month, or at the option of the State, the first and second months, during a continuous period in which a household is certified, the State agency shall determine eligibility and the amount of benefits on the basis of the household's income and other relevant circumstances in such first or second month.

**(C)** Households specified in clauses (i), (ii), and (iii) of section 2015(c)(1)(A) of this title shall have their income calculated on a prospective basis, as provided in paragraph (3)(A).

**(D)** Except as provided in subparagraph (B), households required to submit monthly reports of their income and household circumstances under section 2015(c)(1) of this title shall have their income calculated on a retrospective basis, as provided in paragraph (3)(B).

**(3)(A)** Calculation of household income on a prospective basis is the calculation of income on the basis of the income reasonably anticipated to be received by the household during the period for which eligibility or benefits are being determined. Such calculation shall be made in accordance with regulations prescribed by the Secretary which shall provide for taking into account both the income reasonably anticipated to be received by the household during the period for which eligibility or benefits are being determined and the income received by the household during the preceding thirty days.

**(B)** Calculation of household income on a retrospective basis is the calculation of income for the period for which eligibility or benefits are being determined on the basis of income received in a previous period. Such calculation shall be made in accordance with regulations prescribed by the Secretary which may provide for the determination of eligibility on a prospective basis in some or all cases in which benefits are calculated under this paragraph. Such regulations shall provide for supplementing the initial allotments of newly applying households in those cases in which the determination of income under this paragraph causes serious hardship.

**(4)** In promulgating regulations under this subsection, the Secretary shall consult with the Secretary of Health and Human Services in order to assure that, to the extent feasible and consistent with the purposes of this chapter and the Social Security

GOV000129

Act, the income of households receiving benefits under this chapter and title IV-A of the Social Security Act is calculated on a comparable basis under this chapter and the Social Security Act. The Secretary is authorized, upon the request of a State agency, to waive any of the provisions of this subsection (except the provisions of paragraph (2)(A)) to the extent necessary to permit the State agency to calculate income for purposes of this chapter on the same basis that income is calculated under title IV-A of the Social Security Act in that State.

**(g) Allowable financial resources**

**(1) Total amount**

**(A) In general**

The Secretary shall prescribe the types and allowable amounts of financial resources (liquid and nonliquid assets) an eligible household may own, and shall, in so doing, assure that a household otherwise eligible to participate in the supplemental nutrition assistance program will not be eligible to participate if its resources exceed $2,000 (as adjusted in accordance with subparagraph (B)), or, in the case of a household which consists of or includes an elderly or disabled member, if its resources exceed $3,000 (as adjusted in accordance with subparagraph (B)).

**(B) Adjustment for inflation**

**(i) In general**

Beginning on October 1, 2008, and each October 1 thereafter, the amounts specified in subparagraph (A) shall be adjusted and rounded down to the nearest $250 increment to reflect changes for the 12-month period ending the preceding June in the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics of the Department of Labor.

**(ii) Requirement**

Each adjustment under clause (i) shall be based on the unrounded amount for the prior 12-month period.

**(2) Included assets**

**(A) In general**

Subject to the other provisions of this paragraph, the Secretary shall, in prescribing inclusions in, and exclusions from, financial resources, follow the regulations in force as of June 1, 1982 (other than those relating to licensed vehicles and inaccessible resources).

**(B) Additional included assets**

The Secretary shall include in financial resources--

GOV000130

    **(i)** any boat, snowmobile, or airplane used for recreational purposes;

    **(ii)** any vacation home;

    **(iii)** any mobile home used primarily for vacation purposes;

    **(iv)** subject to subparagraphs (C) and (D), any licensed vehicle that is used for household transportation or to obtain or continue employment to the extent that the fair market value of the vehicle exceeds $4,650; and

    **(v)** any savings account, regardless of whether there is a penalty for early withdrawal.

**(C) Excluded vehicles**

A vehicle (and any other property, real or personal, to the extent the property is directly related to the maintenance or use of the vehicle) shall not be included in financial resources under this paragraph if the vehicle is--

    **(i)** used to produce earned income;

    **(ii)** necessary for the transportation of a physically disabled household member; or

    **(iii)** depended on by a household to carry fuel for heating or water for home use and provides the primary source of fuel or water, respectively, for the household.

**(D) Alternative vehicle allowance**

If the vehicle allowance standards that a State agency uses to determine eligibility for assistance under the State program funded under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.) would result in a lower attribution of resources to certain households than under subparagraph (B)(iv), in lieu of applying subparagraph (B)(iv), the State agency may elect to apply the State vehicle allowance standards to all households that would incur a lower attribution of resources under the State vehicle allowance standards.

**(3)** The Secretary shall exclude from financial resources the value of a burial plot for each member of a household and nonliquid resources necessary to allow the household to carry out a plan for self-sufficiency approved by the State agency that constitutes adequate participation in an employment and training program under section 2015(d) of this title or a pilot project under section 2025(h)(1)(F) of this title. The Secretary shall also exclude from financial resources any earned income tax credits received by any member of the household for a period of 12 months from receipt if such member was participating in the supplemental nutrition assistance program at the time the credits were received and participated in such program continuously during the 12-month period.

GOV000131

**(4)** In the case of farm property (including land, equipment, and supplies) that is essential to the self-employment of a household member in a farming operation, the Secretary shall exclude from financial resources the value of such property until the expiration of the 1-year period beginning on the date such member ceases to be self-employed in farming.

**(5)** The Secretary shall promulgate rules by which State agencies shall develop standards for identifying kinds of resources that, as a practical matter, the household is unlikely to be able to sell for any significant return because the household's interest is relatively slight or because the cost of selling the household's interest would be relatively great. Resources so identified shall be excluded as inaccessible resources. A resource shall be so identified if its sale or other disposition is unlikely to produce any significant amount of funds for the support of the household. The Secretary shall not require the State agency to require verification of the value of a resource to be excluded under this paragraph unless the State agency determines that the information provided by the household is questionable.

**(6) Exclusion of types of financial resources not considered under certain other federal programs**

**(A) In general**

Subject to subparagraph (B), a State agency may, at the option of the State agency, exclude from financial resources under this subsection any types of financial resources that the State agency does not consider when determining eligibility for--

**(i)** cash assistance under a program funded under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.); or

**(ii)** medical assistance under section 1931 of the Social Security Act (42 U.S.C. 1396u-1).

**(B) Limitations**

Except to the extent that any of the types of resources specified in clauses (i) through (iv) are excluded under another paragraph of this subsection, subparagraph (A) does not authorize a State agency to exclude--

**(i)** cash;

**(ii)** licensed vehicles;

**(iii)** amounts in any account in a financial institution that are readily available to the household; or

**(iv)** any other similar type of resource the inclusion in financial resources of which the Secretary determines by regulation to be essential to equitable determinations of eligibility under the supplemental nutrition assistance program.

**(7) Exclusion of retirement accounts from allowable financial resources**

**(A) Mandatory exclusions**

GOV000132

The Secretary shall exclude from financial resources under this subsection the value of--

**(i)** any funds in a plan, contract, or account, described in sections 401(a), 403(a), 403(b), 408, 408A, 457(b), and 501(c)(18) of Title 26 and the value of funds in a Federal Thrift Savings Plan account as provided in section 8439 of Title 5; and

**(ii)** any retirement program or account included in any successor or similar provision that may be enacted and determined to be exempt from tax under Title 26.

**(B) Discretionary exclusions**

The Secretary may exclude from financial resources under this subsection the value of any other retirement plans, contracts, or accounts (as determined by the Secretary).

**(8) Exclusion of education accounts from allowable financial resources**

**(A) Mandatory exclusions**

The Secretary shall exclude from financial resources under this subsection the value of any funds in a qualified tuition program described in section 529 of Title 26 or in a Coverdell education savings account under section 530 of that title.

**(B) Discretionary exclusions**

The Secretary may exclude from financial resources under this subsection the value of any other education programs, contracts, or accounts (as determined by the Secretary).

**(h) Temporary emergency standards of eligibility; Disaster Task Force; direct assistance to State and local officials**

**(1)** The Secretary shall, after consultation with the official empowered to exercise the authority provided for by sections 5170a and 5192 of Title 42, establish temporary emergency standards of eligibility for the duration of the emergency for households who are victims of a disaster which disrupts commercial channels of food distribution, if such households are in need of temporary food assistance and if commercial channels of food distribution have again become available to meet the temporary food needs of such households. Such standards as are prescribed for individual emergencies may be promulgated without regard to section 2013(c) of this title or the procedures set forth in section 553 of Title 5.

**(2)** The Secretary shall--

**(A)** establish a Disaster Task Force to assist States in implementing and operating the disaster program and the regular supplemental nutrition assistance program in the disaster area; and

**WESTLAW**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

GOV000133

**(B)** if the Secretary, in the Secretary's discretion, determines that it is cost-effective to send members of the Task Force to the disaster area, the Secretary shall send them to such area as soon as possible after the disaster occurs to provide direct assistance to State and local officials.

**(3)(A)** The Secretary shall provide, by regulation, for emergency allotments to eligible households to replace food destroyed in a disaster. The regulations shall provide for replacement of the value of food actually lost up to a limit approved by the Secretary not greater than the applicable maximum monthly allotment for the household size.

**(B)** The Secretary shall adjust issuance methods and reporting and other application requirements to be consistent with what is practicable under actual conditions in the affected area. In making this adjustment, the Secretary shall consider the availability of the State agency's offices and personnel, any conditions that make reliance on electronic benefit transfer systems described in section 2016(h) of this title impracticable, and any damage to or disruption of transportation and communication facilities.

**(i) Attribution of income and resources to sponsored aliens; coverage, computations, etc.**

**(1)** For purposes of determining eligibility for and the amount of benefits under this chapter for an individual who is an alien as described in section 2015(f)(2)(B) of this title, the income and resources of any person who as a sponsor of such individual's entry into the United States executed an affidavit of support or similar agreement with respect to such individual, and the income and resources of the sponsor's spouse if such spouse is living with the sponsor, shall be deemed to be the income and resources of such individual for a period of three years after the individual's entry into the United States. Any such income deemed to be income of such individual shall be treated as unearned income of such individual.

**(2)(A)** The amount of income of a sponsor, and the sponsor's spouse if living with the sponsor, which shall be deemed to be the unearned income of an alien for any year shall be determined as follows:

**(i)** the total yearly rate of earned and unearned income of such sponsor, and such sponsor's spouse if such spouse is living with the sponsor, shall be determined for such year under rules prescribed by the Secretary;

**(ii)** the amount determined under clause (i) of this subparagraph shall be reduced by an amount equal to the income eligibility standard as determined under subsection (c) for a household equal in size to the sponsor, the sponsor's spouse if living with the sponsor, and any persons dependent upon or receiving support from the sponsor or the sponsor's spouse if the spouse is living with the sponsor; and

**(iii)** the monthly income attributed to such alien shall be one-twelfth of the amount calculated under clause (ii) of this subparagraph.

**(B)** The amount of resources of a sponsor, and the sponsor's spouse if living with the sponsor, which shall be deemed to be the resources of an alien for any year shall be determined as follows:

**(i)** the total amount of the resources of such sponsor and such sponsor's spouse if such spouse is living with the sponsor shall be determined under rules prescribed by the Secretary;

GOV000134

**(ii)** the amount determined under clause (i) of this subparagraph shall be reduced by $1,500; and

**(iii)** the resources determined under clause (ii) of this subparagraph shall be deemed to be resources of such alien in addition to any resources of such alien.

**(C)(i)** Any individual who is an alien shall, during the period of three years after entry into the United States, in order to be an eligible individual or eligible spouse for purposes of this chapter, be required to provide to the State agency such information and documentation with respect to the alien's sponsor and sponsor's spouse as may be necessary in order for the State agency to make any determination required under this section, and to obtain any cooperation from such sponsor necessary for any such determination. Such alien shall also be required to provide such information and documentation which such alien or the sponsor provided in support of such alien's immigration application as the State agency may request.

**(ii)** The Secretary shall enter into agreements with the Secretary of State and the Attorney General whereby any information available to such persons and required in order to make any determination under this section will be provided by such persons to the Secretary, and whereby such persons shall inform any sponsor of an alien, at the time such sponsor executes an affidavit of support or similar agreement, of the requirements imposed by this section.

**(D)** Any sponsor of an alien, and such alien, shall be jointly and severably liable for an amount equal to any overpayment made to such alien during the period of three years after such alien's entry into the United States, on account of such sponsor's failure to provide correct information under the provisions of this section, except where such sponsor was without fault, or where good cause for such failure existed. Any such overpayment which is not repaid shall be recovered in accordance with the provisions of section 2022(b) of this title.

**(E)** The provisions of this subsection shall not apply with respect to any alien who is a member of the sponsor's household or to any alien who is under 18 years of age.

**(j) Resource exemption for otherwise exempt households**

Notwithstanding subsections (a) through (i), a State agency shall consider a household member who receives supplemental security income benefits under title XVI of the Social Security Act, aid to the aged, blind, or disabled under title I, II, X, XIV, or XVI of such Act or who receives benefits under a State program funded under part A of title IV of the Act (42 U.S.C. 601 et seq.) to have satisfied the resource limitations prescribed under subsection (g).

**(k) Assistance to third parties included; educational benefits; exceptions**

**(1)** For purposes of subsection (d)(1), except as provided in paragraph (2), assistance provided to a third party on behalf of a household by a State or local government shall be considered money payable directly to the household if the assistance is provided in lieu of--

**(A)** a regular benefit payable to the household for living expenses under a State program funded under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.); or

GOV000135

**(B)** a benefit payable to the household for housing expenses under--

**(i)** a State or local general assistance program; or

**(ii)** another basic assistance program comparable to general assistance (as determined by the Secretary).

**(2)** Paragraph (1) shall not apply to--

**(A)** medical assistance;

**(B)** child care assistance;

**(C)** a payment or allowance described in subsection (d)(11);

**(D)** assistance provided by a State or local housing authority;

**(E)** emergency assistance for migrant or seasonal farmworker households during the period such households are in the job stream;

**(F)** emergency and special assistance, to the extent excluded in regulations prescribed by the Secretary; or

**(G)** assistance provided to a third party on behalf of a household under a State or local general assistance program, or another local basic assistance program comparable to general assistance (as determined by the Secretary), if, under State law, no assistance under the program may be provided directly to the household in the form of a cash payment.

**(3)** For purposes of subsection (d)(1), educational loans on which payment is deferred, grants, scholarships, fellowships, veterans' educational benefits, and the like that are provided to a third party on behalf of a household for living expenses shall be treated as money payable directly to the household.

**(4) Third party energy assistance payments**

**(A) Energy assistance payments**

For purposes of subsection (d)(1), a payment made under a State law (other than a law referred to in paragraph (2)(G)) to provide energy assistance to a household without an elderly or disabled member shall be considered money payable directly to the household.

GOV000136

**(B) Energy assistance expenses**

For purposes of subsection (e)(6), an expense paid on behalf of a household with an elderly or disabled member under a State law to provide energy assistance shall be considered an out-of-pocket expense incurred and paid by the household.

**(l) Earnings to participants of on-the-job training programs; exception**

Notwithstanding section 181(a)(2) of the Workforce Innovation and Opportunity Act, earnings to individuals participating in on-the-job training under title I of such Act shall be considered earned income for purposes of the supplemental nutrition assistance program, except for dependents less than 19 years of age.

**(m) Simplified calculation of income for the self-employed**

**(1) In general**

Not later than 1 year after August 22, 1996, the Secretary shall establish a procedure by which a State may submit a method, designed to not increase Federal costs, for the approval of the Secretary, that the Secretary determines will produce a reasonable estimate of income excluded under subsection (d)(9) in lieu of calculating the actual cost of producing self-employment income.

**(2) Inclusive of all types of income or limited types of income**

The method submitted by a State under paragraph (1) may allow a State to estimate income for all types of self-employment income or may be limited to 1 or more types of self-employment income.

**(3) Differences for different types of income**

The method submitted by a State under paragraph (1) may differ for different types of self-employment income.

**(n) State options to simplify determination of child support payments**

Regardless of whether a State agency elects to provide a deduction under subsection (e)(4), the Secretary shall establish simplified procedures to allow State agencies, at the option of the State agencies, to determine the amount of any legally obligated child support payments made, including procedures to allow the State agency to rely on information from the agency responsible for implementing the program under part D of title IV of the Social Security Act (42 U.S.C. 651 et seq.) concerning payments made in prior months in lieu of obtaining current information from the households.

**CREDIT(S)**

(Pub.L. 88-525, § 5, Aug. 31, 1964, 78 Stat. 704; Pub.L. 91-671, § 4, Jan. 11, 1971, 84 Stat. 2049; Pub.L. 93-86, § 3(d), (e), (g), (h), Aug. 10, 1973, 87 Stat. 246, 247; Pub.L. 95-113, Title XIII, § 1301, Sept. 29, 1977, 91 Stat. 962; Pub.L. 96-58, § 2, Aug. 14, 1979, 93 Stat. 390; Pub.L. 96-223, Title III, § 313(c)(2), Apr. 2, 1980, 94 Stat. 299; Pub.L. 96-249, Title I, §§ 102 to 108, 112, 136 to 138, May 26, 1980, 94 Stat. 357 to 359, 361, 369, 370; Pub.L. 97-35, Title I, §§ 104(a), 105 to 107, 115, 116(a)(1), Title XXVI, § 2611, Aug. 13, 1981, 95 Stat. 358 to 361, 364, 902; Pub.L. 97-98, Title XIII, §§ 1305 to 1309,

GOV000137

Dec. 22, 1981, 95 Stat. 1283, 1284; Pub.L. 97-253, Title I, §§ 143(b), 145(c), (d), 146 to 152(a), 153, 189(a), Sept. 8, 1982, 96 Stat. 773 to 776, 787; Pub.L. 98-204, § 4, Dec. 2, 1983, 97 Stat. 1385; Pub.L. 99-198, Title XV, §§ 1507(a)(1), 1508 to 1513(a), 1514, 1515, Dec. 23, 1985, 99 Stat. 1567 to 1572; Pub.L. 99-500, § 101(a) [Title VI, § 638(a)], Oct. 18, 1986, 100 Stat. 1783, 1783-34; Pub.L. 99-591, § 101(a) [Title VI, § 638(a)], Oct. 30, 1986, 100 Stat. 3341, 3341-34; Pub.L. 100-77, Title VIII, §§ 803(a), 804(a), 805(a), 806(a), 807(a), July 22, 1987, 101 Stat. 534, 535; Pub.L. 100-232, § 2(a)(1), Jan. 5, 1988, 101 Stat. 1566; Pub.L. 100-387, Title V, § 501(a), Aug. 11, 1988, 102 Stat. 960; Pub.L. 100-435, Title II, §§ 201, 202(a), Title III, §§ 340 to 343, 351, Title IV, §§ 402, 403, 404(f), Sept. 19, 1988, 102 Stat. 1655, 1656, 1663 to 1665, 1668; Pub.L. 100-707, Title I, § 109(d), Nov. 23, 1988, 102 Stat. 4708; Pub.L. 101-624, Title XVII, §§ 1714 to 1717, 1718(a), 1719 to 1722, 1726(b)(2), Nov. 28, 1990, 104 Stat. 3783 to 3787; Pub.L. 102-40, Title IV, § 402(d)(2), May 7, 1991, 105 Stat. 239; Pub.L. 102-237, Title IX, §§ 902 to 906, 941(2), Dec. 13, 1991, 105 Stat. 1884, 1885, 1892; Pub.L. 102-265, § 1(a), Mar. 26, 1992, 106 Stat. 90; Pub.L. 102-367, Title VII, § 702(b), Sept. 7, 1992, 106 Stat. 1113; Pub.L. 103-66, Title XIII, §§ 13911 to 13915, 13921, 13922(a), 13923, 13924, Aug. 10, 1993, 107 Stat. 673 to 675; Pub.L. 103-225, Title I, § 101(b)(2), Mar. 25, 1994, 108 Stat. 107; Pub.L. 104-193, Title I, § 109(a), Title VIII, §§ 806 to 809(a), 810 to 812, Aug. 22, 1996, 110 Stat. 2169, 2309, 2313, 2314; Pub.L. 105-277, Div. A, § 101(f) [Title VIII, § 405(d)(2)(A), (f)(2)(A)], Oct. 21, 1998, 112 Stat. 2681-337, 2681-418, 2681-429; Pub.L. 106-387, § 1(a) [Title VIII, §§ 846(a), 847(a)], Oct. 28, 2000, 114 Stat. 1549, 1549A-65, 1549A-66; Pub.L. 107-171, Title IV, §§ 4101 to 4108(a), 4112(b)(2), 4401(b)(2)(C), May 13, 2002, 116 Stat. 305 to 309, 313, 333; Pub.L. 110-234, Title IV, §§ 4001(b), 4002(a)(2), 4101 to 4104, 4115(b)(3), May 22, 2008, 122 Stat. 1092, 1098, 1106; Pub.L. 110-246, § 4(a), Title IV, §§ 4001(b), 4002(a)(2), 4101 to 4104, 4115(b)(3), June 18, 2008, 122 Stat. 1664, 1853, 1859, 1867; Pub.L. 113-79, Title IV, §§ 4005, 4006(a), 4008(b), 4022(b)(1), 4030(c), Feb. 7, 2014, 128 Stat. 786, 787, 788, 808, 814; Pub.L. 113-128, Title V, § 512(l)(1), July 22, 2014, 128 Stat. 1709; Pub.L. 115-334, Title IV, §§ 4004, 4022(2), Dec. 20, 2018, 132 Stat. 4627, 4653; Pub.L. 119-21, Title I, §§ 10103, 10104, July 4, 2025, 139 Stat. 83.)

Notes of Decisions (74)

---

**Footnotes**

1    Section 3507 of Title 26 was repealed by Pub.L. 111-226, Title II, § 219(a)(1), Aug. 10, 2010, 124 Stat. 2403.

7 U.S.C.A. § 2014, 7 USCA § 2014
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

 KeyCite Yellow Flag
Proposed Legislation

United States Code Annotated
  Title 7. Agriculture (Refs & Annos)
    Chapter 51. Supplemental Nutrition Assistance Program (Refs & Annos)

7 U.S.C.A. § 2015

§ 2015. Eligibility disqualifications

Effective: July 4, 2025
Currentness

**(a) Additional specific conditions rendering individuals ineligible**

In addition to meeting the standards of eligibility prescribed in section 2014 of this title, households and individuals who are members of eligible households must also meet and comply with the specific requirements of this section to be eligible for participation in the supplemental nutrition assistance program.

**(b) Fraud and misrepresentation; disqualification penalties; ineligibility period; applicable procedures**

**(1)** Any person who has been found by any State or Federal court or administrative agency to have intentionally (A) made a false or misleading statement, or misrepresented, concealed or withheld facts, or (B) committed any act that constitutes a violation of this chapter, the regulations issued thereunder, or any State statute, for the purpose of using, presenting, transferring, acquiring, receiving, or possessing program benefits shall, immediately upon the rendering of such determination, become ineligible for further participation in the program--

  **(i)** for a period of 1 year upon the first occasion of any such determination;

  **(ii)** for a period of 2 years upon--

    **(I)** the second occasion of any such determination; or

    **(II)** the first occasion of a finding by a Federal, State, or local court of the trading of a controlled substance (as defined in section 802 of Title 21) for benefits; and

  **(iii)** permanently upon--

    **(I)** the third occasion of any such determination;

GOV000139

**(II)** the second occasion of a finding by a Federal, State, or local court of the trading of a controlled substance (as defined in section 802 of Title 21) for benefits;

**(III)** the first occasion of a finding by a Federal, State, or local court of the trading of firearms, ammunition, or explosives for benefits; or

**(IV)** a conviction of an offense under subsection (b) or (c) of section 2024 of this title involving an item covered by subsection (b) or (c) of section 2024 of this title having a value of $500 or more.

During the period of such ineligibility, no household shall receive increased benefits under this chapter as the result of a member of such household having been disqualified under this subsection.

**(2)** Each State agency shall proceed against an individual alleged to have engaged in such activity either by way of administrative hearings, after notice and an opportunity for a hearing at the State level, or by referring such matters to appropriate authorities for civil or criminal action in a court of law.

**(3)** Such periods of ineligibility as are provided for in paragraph (1) of this subsection shall remain in effect, without possibility of administrative stay, unless and until the finding upon which the ineligibility is based is subsequently reversed by a court of appropriate jurisdiction, but in no event shall the period of ineligibility be subject to review.

**(4)** The Secretary shall prescribe such regulations as the Secretary may deem appropriate to ensure that information concerning any such determination with respect to a specific individual is forwarded to the Office of the Secretary by any appropriate State or Federal entity for the use of the Secretary in administering the provisions of this section. No State shall withhold such information from the Secretary or the Secretary's designee for any reason whatsoever.

**(c) Refusal to provide necessary information**

Except in a case in which a household is receiving transitional benefits during the transitional benefits period under section 2020(s) of this title, no household shall be eligible to participate in the supplemental nutrition assistance program if it refuses to cooperate in providing information to the State agency that is necessary for making a determination of its eligibility or for completing any subsequent review of its eligibility.

**(1)(A)** A State agency may require certain categories of households to file periodic reports of income and household circumstances in accordance with standards prescribed by the Secretary, except that a State agency may not require periodic reporting--

**(i)** for periods shorter than 4 months by migrant or seasonal farmworker households;

**(ii)** for periods shorter than 4 months by households in which all members are homeless individuals; or

GOV000140

**(iii)** for periods shorter than 1 year by households that have no earned income and in which all adult members are elderly or disabled.

**(B)** Each household that is not required to file such periodic reports shall be required to report or cause to be reported to the State agency changes in income or household circumstances that the Secretary considers necessary to assure accurate eligibility and benefit determinations.

**(C)** A State agency may require periodic reporting on a monthly basis by households residing on a reservation only if--

**(i)** the State agency reinstates benefits, without requiring a new application, for any household residing on a reservation that submits a report not later than 1 month after the end of the month in which benefits would otherwise be provided;

**(ii)** the State agency does not delay, reduce, suspend, or terminate the allotment of a household that submits a report not later than 1 month after the end of the month in which the report is due;

**(iii)** on March 25, 1994, the State agency requires households residing on a reservation to file periodic reports on a monthly basis; and

**(iv)** the certification period for households residing on a reservation that are required to file periodic reports on a monthly basis is 2 years, unless the State demonstrates just cause to the Secretary for a shorter certification period.

**(D) Frequency of reporting**

**(i) In general**

Except as provided in subparagraphs (A) and (C), a State agency may require households that report on a periodic basis to submit reports--

**(I)** not less often than once each 6 months; but

**(II)** not more often than once each month.

**(ii) Reporting by households with excess income**

A household required to report less often than once each 3 months shall, notwithstanding subparagraph (B), report in a manner prescribed by the Secretary if the income of the household for any month exceeds the income standard of eligibility established under section 2014(c)(2) of this title.

**(2)** Any household required to file a periodic report under paragraph (1) of this subsection shall, (A) if it is eligible to participate and has filed a timely and complete report, receive its allotment, based on the reported information for a given

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    3

GOV000141

month, within thirty days of the end of that month unless the Secretary determines that a longer period of time is necessary, (B) have available special procedures that permit the filing of the required information in the event all adult members of the household are mentally or physically handicapped or lacking in reading or writing skills to such a degree as to be unable to fill out the required forms, (C) have a reasonable period of time after the close of the month in which to file their reports on State agency designed forms, (D) be afforded prompt notice of failure to file any report timely or completely, and given a reasonable opportunity to cure that failure (with any applicable time requirements extended accordingly) and to exercise its rights under section 2020(e)(10) of this title, and (E) be provided each month (or other applicable period) with an appropriate, simple form for making the required reports of the household together with clear instructions explaining how to complete the form and the rights and responsibilities of the household under any periodic reporting system.

**(3)** Reports required to be filed under paragraph (1) of this subsection shall be considered complete if they contain the information relevant to eligibility and benefit determinations that is specified by the State agency. All report forms, including those related to periodic reports of circumstances, shall contain a description, in understandable terms in prominent and bold face lettering, of the appropriate civil and criminal provisions dealing with violations of this chapter including the prescribed penalties. Reports required to be filed monthly under paragraph (1) shall be the sole reporting requirement for subject matter included in such reports. In promulgating regulations implementing these reporting requirements, the Secretary shall consult with the Commissioner of Social Security and the Secretary of Health and Human Services, and, wherever feasible, households that receive assistance under title IV-A of the Social Security Act and that are required to file comparable reports under that Act shall be provided the opportunity to file reports at the same time for purposes of this chapter and the Social Security Act.

**(4)** Except as provided in paragraph (1)(C), any household that fails to submit periodic reports required by paragraph (1) shall not receive an allotment for the payment period to which the unsubmitted report applies until such report is submitted.

**(5)** The Secretary is authorized, upon the request of a State agency, to waive any provisions of this subsection (except the provisions of the first sentence of paragraph (1) which relate to households which are not required to file periodic reports) to the extent necessary to permit the State agency to establish periodic reporting requirements for purposes of this chapter which are similar to the periodic reporting requirements established under the State program funded under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.) in that State.

**(d) Conditions of participation**

**(1) Work requirements**

**(A) In general**

No physically and mentally fit individual over the age of 15 and under the age of 60 shall be eligible to participate in the supplemental nutrition assistance program if the individual--

**(i)** refuses, at the time of application and every 12 months thereafter, to register for employment in a manner prescribed by the Secretary;

GOV000142

**(ii)** refuses without good cause to participate in an employment and training program established under paragraph (4), to the extent required by the State agency;

**(iii)** refuses without good cause to accept an offer of employment, at a site or plant not subject to a strike or lockout at the time of the refusal, at a wage not less than the higher of--

**(I)** the applicable Federal or State minimum wage; or

**(II)** 80 percent of the wage that would have governed had the minimum hourly rate under section 6(a)(1) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(a)(1)) been applicable to the offer of employment;

**(iv)** refuses without good cause to provide a State agency with sufficient information to allow the State agency to determine the employment status or the job availability of the individual;

**(v)** voluntarily and without good cause--

**(I)** quits a job; or

**(II)** reduces work effort and, after the reduction, the individual is working less than 30 hours per week; or

**(vi)** fails to comply with section 2029 of this title.

### (B) Household ineligibility

If an individual who is the head of a household becomes ineligible to participate in the supplemental nutrition assistance program under subparagraph (A), the household shall, at the option of the State agency, become ineligible to participate in the supplemental nutrition assistance program for a period, determined by the State agency, that does not exceed the lesser of--

**(i)** the duration of the ineligibility of the individual determined under subparagraph (C); or

**(ii)** 180 days.

### (C) Duration of ineligibility

#### (i) First violation

The first time that an individual becomes ineligible to participate in the supplemental nutrition assistance program under subparagraph (A), the individual shall remain ineligible until the later of--

**(I)** the date the individual becomes eligible under subparagraph (A);

**(II)** the date that is 1 month after the date the individual became ineligible; or

**(III)** a date determined by the State agency that is not later than 3 months after the date the individual became ineligible.

### (ii) Second violation

The second time that an individual becomes ineligible to participate in the supplemental nutrition assistance program under subparagraph (A), the individual shall remain ineligible until the later of--

**(I)** the date the individual becomes eligible under subparagraph (A);

**(II)** the date that is 3 months after the date the individual became ineligible; or

**(III)** a date determined by the State agency that is not later than 6 months after the date the individual became ineligible.

### (iii) Third or subsequent violation

The third or subsequent time that an individual becomes ineligible to participate in the supplemental nutrition assistance program under subparagraph (A), the individual shall remain ineligible until the later of--

**(I)** the date the individual becomes eligible under subparagraph (A);

**(II)** the date that is 6 months after the date the individual became ineligible;

**(III)** a date determined by the State agency; or

**(IV)** at the option of the State agency, permanently.

## (D) Administration

### (i) Good cause

The Secretary shall determine the meaning of good cause for the purpose of this paragraph.

### (ii) Voluntary quit

GOV000144

The Secretary shall determine the meaning of voluntarily quitting and reducing work effort for the purpose of this paragraph.

### (iii) Determination by state agency

#### (I) In general

Subject to subclause (II) and clauses (i) and (ii), a State agency shall determine--

**(aa)** the meaning of any term used in subparagraph (A);

**(bb)** the procedures for determining whether an individual is in compliance with a requirement under subparagraph (A); and

**(cc)** whether an individual is in compliance with a requirement under subparagraph (A).

#### (II) Not less restrictive

A State agency may not use a meaning, procedure, or determination under subclause (I) that is less restrictive on individuals receiving benefits under this chapter than a comparable meaning, procedure, or determination under a State program funded under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.).

### (iv) Strike against the government

For the purpose of subparagraph (A)(v), an employee of the Federal Government, a State, or a political subdivision of a State, who is dismissed for participating in a strike against the Federal Government, the State, or the political subdivision of the State shall be considered to have voluntarily quit without good cause.

### (v) Selecting a head of household

#### (I) In general

For purposes of this paragraph, the State agency shall allow the household to select any adult parent of a child in the household as the head of the household if all adult household members making application under the supplemental nutrition assistance program agree to the selection.

#### (II) Time for making designation

A household may designate the head of the household under subclause (I) each time the household is certified for participation in the supplemental nutrition assistance program, but may not change the designation during a certification period unless there is a change in the composition of the household.

GOV000145

**(vi) Change in head of household**

If the head of a household leaves the household during a period in which the household is ineligible to participate in the supplemental nutrition assistance program under subparagraph (B)--

**(I)** the household shall, if otherwise eligible, become eligible to participate in the supplemental nutrition assistance program; and

**(II)** if the head of the household becomes the head of another household, the household that becomes headed by the individual shall become ineligible to participate in the supplemental nutrition assistance program for the remaining period of ineligibility.

**(2)** A person who otherwise would be required to comply with the requirements of paragraph (1) of this subsection shall be exempt from such requirements if he or she is (A) currently subject to and complying with a work registration requirement under title IV of the Social Security Act, as amended (42 U.S.C. 602), or the Federal-State unemployment compensation system, in which case, failure by such person to comply with any work requirement to which such person is subject shall be the same as failure to comply with that requirement of paragraph (1); (B) a parent or other member of a household with responsibility for the care of a dependent child under age six or of an incapacitated person; (C) a bona fide student enrolled at least half time in any recognized school, training program, or institution of higher education (except that any such person enrolled in an institution of higher education shall be ineligible to participate in the supplemental nutrition assistance program unless he or she meets the requirements of subsection (e) of this section); (D) a regular participant in a drug addiction or alcoholic treatment and rehabilitation program; (E) employed a minimum of thirty hours per week or receiving weekly earnings which equal the minimum hourly rate under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 206(a)(1)), multiplied by thirty hours; or (F) a person between the ages of sixteen and eighteen who is not a head of a household or who is attending school, or enrolled in an employment training program, on at least a half-time basis. A State that requested a waiver to lower the age specified in subparagraph (B) and had the waiver denied by the Secretary as of August 1, 1996, may, for a period of not more than 3 years, lower the age of a dependent child that qualifies a parent or other member of a household for an exemption under subparagraph (B) to between 1 and 6 years of age.

**(3)** Notwithstanding any other provision of law, a household shall not participate in the supplemental nutrition assistance program at any time that any member of such household, not exempt from the work registration requirements of paragraph (1) of this subsection, is on strike as defined in section 142(2) of Title 29, because of a labor dispute (other than a lockout) as defined in section 152(9) of Title 29: *Provided*, That a household shall not lose its eligibility to participate in the supplemental nutrition assistance program as a result of one of its members going on strike if the household was eligible immediately prior to such strike, however, such household shall not receive an increased allotment as the result of a decrease in the income of the striking member or members of the household: *Provided further*, That such ineligibility shall not apply to any household that does not contain a member on strike, if any of its members refuses to accept employment at a plant or site because of a strike or lockout.

**(4) Employment and training**

**(A) In general**

**(i) Implementation**

GOV000146

Each State agency shall implement an employment and training program designed by the State agency, in consultation with the State workforce development board, or, if the State demonstrates that consultation with private employers or employer organizations would be more effective or efficient, in consultation with private employers or employer organizations, and approved by the Secretary for the purpose of assisting members of households participating in the supplemental nutrition assistance program in gaining skills, training, work, or experience that will--

**(I)** increase the ability of the household members to obtain regular employment; and

**(II)** meet State or local workforce needs.

**(ii) Statewide workforce development system**

Each component of an employment and training program carried out under this paragraph and implemented to meet the purposes of clause (i) shall be delivered through a statewide workforce development system, unless the component is not available locally through such a system.

**(B) Definitions**

In this chapter:

**(i) Employment and training program**

The term "employment and training program" means a program that contains case management services such as comprehensive intake assessments, individualized service plans, progress monitoring, or coordination with service providers and one or more of the following components, except that the State agency shall retain the option to apply employment requirements prescribed under this clause to a program applicant at the time of application:

**(I)** Supervised job search programs that occur at State-approved locations at which the activities of participants shall be directly supervised and the timing and activities of participants tracked in accordance with guidelines issued by the State.

**(II)** Job search training programs that include, to the extent determined appropriate by the State agency, reasonable job search training and support activities that may consist of employability assessments, training in techniques to increase employability, job placement services, or other direct training or support activities, including educational programs, determined by the State agency to expand the job search abilities or employability of those subject to the program.

**(III)** Workfare programs operated under section 2029 of this title.

**(IV)** Programs designed to improve the employability of household members through actual work experience or training, or both, and to enable individuals employed or trained under such programs to move promptly into regular public or private employment, including subsidized employment and apprenticeships. An employment or training experience program established under this clause shall--

GOV000147

**(aa)** not provide any work that has the effect of replacing the employment of an individual not participating in the employment or training experience program; and

**(bb)** provide the same benefits and working conditions that are provided at the job site to employees performing comparable work for comparable hours.

**(V)** Educational programs or activities to improve basic skills and literacy, or otherwise improve employability, including educational programs determined by the State agency to expand the job search abilities or employability of those subject to the program under this paragraph.

**(VI)** Programs designed to increase the self-sufficiency of recipients through self-employment, including programs that provide instruction for self-employment ventures.

**(VII)** Programs intended to ensure job retention by providing job retention services, if the job retention services are provided for a period of not less than 30 days but not more than 90 days after an individual who received employment and training services under this paragraph gains employment.

**(VIII)** Programs and activities under clause (iv) of section 2025(h)(1)(F) of this title that the Secretary determines, based on results from the independent evaluations conducted under clause (vii)(I) of such section, have the most demonstrable impact on the ability of participants to find and retain employment that leads to increased household income and reduced reliance on public assistance.

**(IX)** As approved by the Secretary or the State under regulations issued by the Secretary, other employment, educational and training programs, projects, and experiments, such as a supported work program, aimed at accomplishing the purpose of the employment and training program.

**(ii) Workforce partnership**

**(I) In general**

The term "workforce partnership" means a program that--

**(aa)** is operated by--

**(AA)** a private employer, an organization representing private employers, or a nonprofit organization providing services relating to workforce development; or

**(BB)** an entity identified as an eligible provider of training services under section 122(d) of the Workforce Innovation and Opportunity Act (29 U.S.C. 3152(d));

GOV000148

**(bb)** the Secretary certifies, or the State agency certifies to the Secretary--

**(AA)** subject to subparagraph (N)(ii), would assist participants who are members of households participating in the supplemental nutrition assistance program in gaining high-quality, work-relevant skills, training, work, or experience that will increase the ability of the participants to obtain regular employment;

**(BB)** subject to subparagraph (N)(ii), would provide participants with not less than 20 hours per week of training, work, or experience under subitem (AA);

**(CC)** would not use any funds authorized to be appropriated by this chapter;

**(DD)** would provide sufficient information, on request by the State agency, for the State agency to determine that participants who are members of households participating in the supplemental nutrition assistance program are fulfilling any applicable work requirement under this subsection or subsection (o);

**(EE)** would be willing to serve as a reference for participants who are members of households participating in the supplemental nutrition assistance program for future employment or work-related programs; and

**(FF)** meets any other criteria established by the Secretary, on the condition that the Secretary shall not establish any additional criteria that would impose significant paperwork burdens on the workforce partnership; and

**(cc)** is in compliance with the Fair Labor Standards Act of 1938 (29 U.S.C. 201 et seq.), if applicable.

**(II) Inclusion**

The term "workforce partnership" includes a multistate program.

**(C)** The State agency may provide that participation in an employment and training program may supplement or supplant other employment-related requirements imposed on those subject to the program.

**(D)(i)** Each State agency may exempt from any requirement for participation in any program under this paragraph categories of household members.

**(ii)** Each State agency may exempt from any requirement for participation individual household members not included in any category designated as exempt under clause (i).

**(iii)** Any exemption of a category or individual under this subparagraph shall be periodically evaluated to determine whether the exemption continues to be valid.

GOV000149

**(E) Requirements for participation for certain individuals**

**(i) In general**

Each State agency shall establish requirements for participation by individuals not exempt under subparagraph (D) in one or more employment and training programs under this paragraph, including the extent to which any individual is required to participate.

**(ii) Variation**

The requirements under clause (i) may vary among participants.

**(iii) Application to workforce partnerships**

To the extent that a State agency requires an individual to participate in an employment and training program, the State agency shall consider an individual participating in a workforce partnership to be in compliance with the employment and training requirements.

**(F)(i)** The total hours of work in an employment and training program carried out under this paragraph required of members of a household, together with the hours of work of such members in any program carried out under section 2029 of this title, in any month collectively may not exceed a number of hours equal to the household's allotment for such month divided by the higher of the applicable State minimum wage or Federal minimum hourly rate under the Fair Labor Standards Act of 1938.

**(ii)** The total hours of participation in such program required of any member of a household, individually, in any month, together with any hours worked in another program carried out under section 2029 of this title and any hours worked for compensation (in cash or in kind) in any other capacity, shall not exceed one hundred and twenty hours per month.

**(iii)** Any individual voluntarily electing to participate in a program under this paragraph shall not be subject to the limitations described in clauses (i) and (ii).

**(G)** The State agency may operate any program component under this paragraph in which individuals elect to participate.

**(H)** Federal funds made available to a State agency for purposes of the component authorized under subparagraph (B)(i)(V) shall not be used to supplant non-Federal funds used for existing services and activities that promote the purposes of this component.

**(I)(i)** The State agency shall provide payments or reimbursements to participants in programs carried out under this paragraph, including individuals participating under subparagraph (G), for--

**(I)** the actual costs of transportation and other actual costs (other than dependent care costs), that are reasonably necessary and directly related to participation in the program; and

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

GOV000150

**(II)** the actual costs of such dependent care expenses that are determined by the State agency to be necessary for the participation of an individual in the program (other than an individual who is the caretaker relative of a dependent in a family receiving benefits under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.) in a local area where an employment, training, or education program under title IV of such Act is in operation), except that no such payment or reimbursement shall exceed the applicable local market rate. Individuals subject to the program under this paragraph may not be required to participate if dependent costs exceed the limit established by the State agency under this subclause or other actual costs exceed any limit established under subclause (I).

**(ii)** In lieu of providing reimbursements or payments for dependent care expenses under clause (i), a State agency may, at its option, arrange for dependent care through providers by the use of purchase of service contracts or vouchers or by providing vouchers to the household.

**(iii)** The value of any dependent care services provided for or arranged under clause (ii), or any amount received as a payment or reimbursement under clause (i), shall--

**(I)** not be treated as income for the purposes of any other Federal or federally assisted program that bases eligibility for, or the amount of benefits on, need; and

**(II)** not be claimed as an employment-related expense for the purposes of the credit provided under section 21 of Title 26.

**(J)** The Secretary shall promulgate guidelines that (i) enable State agencies, to the maximum extent practicable, to design and operate an employment and training program that is compatible and consistent with similar programs operated within the State, and (ii) ensure, to the maximum extent practicable, that employment and training programs are provided for Indians on reservations.

**(K) Limitation on funding**

Notwithstanding any other provision of this paragraph, the amount of funds a State agency uses to carry out this paragraph (including funds used to carry out subparagraph (I)) for participants who are receiving benefits under a State program funded under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.) shall not exceed the amount of funds the State agency used in fiscal year 1995 to carry out this paragraph for participants who were receiving benefits in fiscal year 1995 under a State program funded under part A of title IV of the Act (42 U.S.C. 601 et seq.).

**(L)** The Secretary shall ensure that State agencies comply with the requirements of this paragraph and section 2020(e)(19) of this title.

**(M)** The facilities of the State public employment offices and other State agencies and providers carrying out activities under title I of the Workforce Innovation and Opportunity Act may be used to find employment and training opportunities for household members under the programs under this paragraph.

**(N) Workforce partnerships**

GOV000151

**(i) Certification**

In certifying that a program meets the requirements of subitems (AA) and (BB) of subparagraph (B)(ii)(I)(bb) to be certified as a workforce partnership, the Secretary or the State agency shall require that the program submit to the Secretary or State agency sufficient information that describes--

**(I)** the services and activities of the program that would provide participants with not less than 20 hours per week of training, work, or experience under those subitems; and

**(II)** how the program would provide services and activities described in subclause (I) that would directly enhance the employability or job readiness of the participant.

**(ii) Supplement, not supplant**

A State agency may use a workforce partnership to supplement, not to supplant, the employment and training program of the State agency.

**(iii) Participation**

A State agency--

**(I)** shall--

**(aa)** maintain a list of workforce partnerships certified under subparagraph (B)(ii)(I)(bb); and

**(bb)** not less frequently than at certification and recertification, provide to a household member subject to work requirements under subsection (d)(1) or subsection (o), electronically or by other means, the list described in item (aa); but

**(II)** may not require any member of a household participating in the supplemental nutrition assistance program to participate in a workforce partnership.

**(iv) Effect**

**(I) In general**

A workforce partnership shall not replace the employment or training of an individual not participating in the workforce partnership.

**(II) Selection**

GOV000152

Nothing in this subsection or subsection (o) affects the criteria or screening process for selecting participants by a workforce partnership.

**(v) Limitation on reporting requirements**

In carrying out this subparagraph, the Secretary and each applicable State agency shall limit the reporting requirements of a workforce partnership to--

**(I)** on notification that an individual is receiving supplemental nutrition assistance program benefits, notifying the applicable State agency that the individual is participating in the workforce partnership;

**(II)** identifying participants who have completed or are no longer participating in the workforce partnership;

**(III)** identifying changes to the workforce partnership that result in the workforce partnership no longer meeting the certification requirements of the Secretary or the State agency under subparagraph (B)(ii)(I)(bb); and

**(IV)** providing sufficient information, on request by the State agency, for the State agency to verify that a participant is fulfilling any applicable work requirements under this subsection or subsection (o).

**(O) Referral of certain individuals**

**(i) In general**

In accordance with such regulations as may be issued by the Secretary, with respect to any individual who is not eligible for an exemption under paragraph (2) and who is determined by the operator of an employment and training program component to be ill-suited to participate in that employment and training program component, the State agency shall--

**(I)** refer the individual to an appropriate employment and training program component;

**(II)** refer the individual to an appropriate workforce partnership, if available;

**(III)** reassess the physical and mental fitness of the individual under paragraph (1)(A); or

**(IV)** to the maximum extent practicable, coordinate with other Federal, State, or local workforce or assistance programs to identify work opportunities or assistance for the individual.

**(ii) Process**

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

GOV000153

In carrying out clause (i), the State agency shall ensure that an individual undergoing and complying with the process established under that clause shall not be found to have refused without good cause to participate in an employment and training program.

**(e) Students**

No individual who is a member of a household otherwise eligible to participate in the supplemental nutrition assistance program under this section shall be eligible to participate in the supplemental nutrition assistance program as a member of that or any other household if the individual is enrolled at least half-time in an institution of higher education, unless the individual--

  **(1)** is under age 18 or is age 50 or older;

  **(2)** is not physically or mentally fit;

  **(3)** is assigned to or placed in an institution of higher education through or in compliance with the requirements of--

    **(A)** a program under title I of the Workforce Innovation and Opportunity Act;

    **(B)** an employment and training program under this section, subject to the condition that the course or program of study--

      **(i)** is part of a program of career and technical education (as defined in section 2302 of Title 20) that may be completed in not more than 4 years at an institution of higher education (as defined in section 1002 of Title 20); or

      **(ii)** is limited to remedial courses, basic adult education, literacy, or English as a second language;

    **(C)** a program under section 2296 of Title 19; or

    **(D)** another program for the purpose of employment and training operated by a State or local government, as determined to be appropriate by the Secretary;

  **(4)** is employed a minimum of 20 hours per week or participating in a State or federally financed work study program during the regular school year;

  **(5)** is--

    **(A)** a parent with responsibility for the care of a dependent child under age 6; or

    **(B)** a parent with responsibility for the care of a dependent child above the age of 5 and under the age of 12 for whom adequate child care is not available to enable the individual to attend class and satisfy the requirements of paragraph (4);

GOV000154

**(6)** is receiving benefits under a State program funded under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.);

**(7)** is so enrolled as a result of participation in the work incentive program under title IV of the Social Security Act or its successor programs; or

**(8)** is enrolled full-time in an institution of higher education, as determined by the institution, and is a single parent with responsibility for the care of a dependent child under age 12.

**(f) Aliens**

No individual who is a member of a household otherwise eligible to participate in the supplemental nutrition assistance program under this section shall be eligible to participate in the supplemental nutrition assistance program as a member of that or any other household unless he or she is--

**(1)** a resident of the United States; and

**(2)** either--

**(A)** a citizen or national of the United States;

**(B)** an alien lawfully admitted for permanent residence as an immigrant as defined by sections 1101(a)(15) and 1101(a)(20) of Title 8, excluding, among others, alien visitors, tourists, diplomats, and students who enter the United States temporarily with no intention of abandoning their residence in a foreign country;

**(C)** an alien who has been granted the status of Cuban and Haitian entrant, as defined in section 501(e) of the Refugee Education Assistance Act of 1980 (Public Law 96-422); or

**(D)** an individual who lawfully resides in the United States in accordance with a Compact of Free Association referred to in section 1612(b)(2)(G) of Title 8.

The income (less, at State option, a pro rata share) and financial resources of the individual rendered ineligible to participate in the supplemental nutrition assistance program under this subsection shall be considered in determining the eligibility and the value of the allotment of the household of which such individual is a member.

**(g) Residents of States which provide State supplementary payments**

No individual who receives supplemental security income benefits under title XVI of the Social Security Act, State supplementary payments described in section 1616 of such Act, or payments of the type referred to in section 212(a) of Public Law 93-66, as amended, shall be considered to be a member of a household for any month, if, for such month, such individual

GOV000155

resides in a State which provides State supplementary payments (1) of the type described in section 1616(a) of the Social Security Act and section 212(a) of Public Law 93-66, and (2) the level of which has been found by the Commissioner of Social Security to have been specifically increased so as to include the bonus value of food stamps.

**(h) Transfer of assets to qualify**

No household that knowingly transfers assets for the purpose of qualifying or attempting to qualify for the supplemental nutrition assistance program shall be eligible to participate in the program for a period of up to one year from the date of discovery of the transfer.

**(i) Comparable treatment for disqualification**

**(1) In general**

If a disqualification is imposed on a member of a household for a failure of the member to perform an action required under a Federal, State, or local law relating to a means-tested public assistance program, the State agency may impose the same disqualification on the member of the household under the supplemental nutrition assistance program.

**(2) Rules and procedures**

If a disqualification is imposed under paragraph (1) for a failure of an individual to perform an action required under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.), the State agency may use the rules and procedures that apply under part A of title IV of the Act to impose the same disqualification under the supplemental nutrition assistance program.

**(3) Application after disqualification period**

A member of a household disqualified under paragraph (1) may, after the disqualification period has expired, apply for benefits under this chapter and shall be treated as a new applicant, except that a prior disqualification under subsection (d) shall be considered in determining eligibility.

**(j) Disqualification for receipt of multiple benefits**

An individual shall be ineligible to participate in the supplemental nutrition assistance program as a member of any household for a 10-year period if the individual is found by a State agency to have made, or is convicted in a Federal or State court of having made, a fraudulent statement or representation with respect to the identity or place of residence of the individual in order to receive multiple benefits simultaneously under the supplemental nutrition assistance program.

**(k) Disqualification of fleeing felons**

**(1) In general**

GOV000156

No member of a household who is otherwise eligible to participate in the supplemental nutrition assistance program shall be eligible to participate in the program as a member of that or any other household during any period during which the individual is--

**(A)** fleeing to avoid prosecution, or custody or confinement after conviction, under the law of the place from which the individual is fleeing, for a crime, or attempt to commit a crime, that is a felony under the law of the place from which the individual is fleeing or that, in the case of New Jersey, is a high misdemeanor under the law of New Jersey; or

**(B)** violating a condition of probation or parole imposed under a Federal or State law.

**(2) Procedures**

The Secretary shall--

**(A)** define the terms "fleeing" and "actively seeking" for purposes of this subsection; and

**(B)** ensure that State agencies use consistent procedures established by the Secretary that disqualify individuals whom law enforcement authorities are actively seeking for the purpose of holding criminal proceedings against the individual.

**(l) Custodial parent's cooperation with child support agencies**

**(1) In general**

At the option of a State agency, subject to paragraphs (2) and (3), no natural or adoptive parent or other individual (collectively referred to in this subsection as "the individual") who is living with and exercising parental control over a child under the age of 18 who has an absent parent shall be eligible to participate in the supplemental nutrition assistance program unless the individual cooperates with the State agency administering the program established under part D of title IV of the Social Security Act (42 U.S.C. 651 et seq.)--

**(A)** in establishing the paternity of the child (if the child is born out of wedlock); and

**(B)** in obtaining support for--

**(i)** the child; or

**(ii)** the individual and the child.

**(2) Good cause for noncooperation**

Paragraph (1) shall not apply to the individual if good cause is found for refusing to cooperate, as determined by the State agency in accordance with standards prescribed by the Secretary in consultation with the Secretary of Health and Human

GOV000157

Services. The standards shall take into consideration circumstances under which cooperation may be against the best interests of the child.

**(3) Fees**

Paragraph (1) shall not require the payment of a fee or other cost for services provided under part D of title IV of the Social Security Act (42 U.S.C. 651 et seq.).

**(m) Noncustodial parent's cooperation with child support agencies**

**(1) In general**

At the option of a State agency, subject to paragraphs (2) and (3), a putative or identified noncustodial parent of a child under the age of 18 (referred to in this subsection as "the individual") shall not be eligible to participate in the supplemental nutrition assistance program if the individual refuses to cooperate with the State agency administering the program established under part D of title IV of the Social Security Act (42 U.S.C. 651 et seq.)--

**(A)** in establishing the paternity of the child (if the child is born out of wedlock); and

**(B)** in providing support for the child.

**(2) Refusal to cooperate**

**(A) Guidelines**

The Secretary, in consultation with the Secretary of Health and Human Services, shall develop guidelines on what constitutes a refusal to cooperate under paragraph (1).

**(B) Procedures**

The State agency shall develop procedures, using guidelines developed under subparagraph (A), for determining whether an individual is refusing to cooperate under paragraph (1).

**(3) Fees**

Paragraph (1) shall not require the payment of a fee or other cost for services provided under part D of title IV of the Social Security Act (42 U.S.C. 651 et seq.).

**(4) Privacy**

The State agency shall provide safeguards to restrict the use of information collected by a State agency administering the program established under part D of title IV of the Social Security Act (42 U.S.C. 651 et seq.) to purposes for which the information is collected.

**(n) Disqualification for child support arrears**

**(1) In general**

At the option of a State agency, no individual shall be eligible to participate in the supplemental nutrition assistance program as a member of any household during any month that the individual is delinquent in any payment due under a court order for the support of a child of the individual.

**(2) Exceptions**

Paragraph (1) shall not apply if--

**(A)** a court is allowing the individual to delay payment; or

**(B)** the individual is complying with a payment plan approved by a court or the State agency designated under part D of title IV of the Social Security Act (42 U.S.C. 651 et seq.) to provide support for the child of the individual.

**(o) Work requirement**

**(1) "Work program" defined**

In this subsection, the term "work program" means--

**(A)** a program under title I of the Workforce Innovation and Opportunity Act;

**(B)** a program under section 2296 of Title 19;

**(C)** a program of employment and training operated or supervised by a State or political subdivision of a State that meets standards approved by the Governor of the State, including a program under subsection (d)(4), other than a supervised job search program or job search training program;

**(D)** a program of employment and training for veterans operated by the Department of Labor or the Department of Veterans Affairs, and approved by the Secretary; and

**(E)** a workforce partnership under subsection (d)(4)(N).

GOV000159

**(2) Work requirement**

Subject to the other provisions of this subsection, no individual shall be eligible to participate in the supplemental nutrition assistance program as a member of any household if, during the preceding 36-month period, the individual received supplemental nutrition assistance program benefits for not less than 3 months (consecutive or otherwise) during which the individual did not--

**(A)** work 20 hours or more per week, averaged monthly;

**(B)** participate in and comply with the requirements of a work program for 20 hours or more per week, as determined by the State agency;

**(C)** participate in and comply with the requirements of a program under section 2029 of this title or a comparable program established by a State or political subdivision of a State; or

**(D)** receive benefits pursuant to paragraph (3), (4), (5), or (6).

**(3) Exceptions**

Paragraph (2) shall not apply to an individual if the individual is--

**(A)** under 18, or over 65, years of age;

**(B)** medically certified as physically or mentally unfit for employment;

**(C)** a parent or other member of a household with responsibility for a dependent child under 14 years of age;

**(D)** otherwise exempt under subsection (d)(2);

**(E)** a pregnant woman;

**(F)** an Indian or an Urban Indian (as such terms are defined in paragraphs (13) and (28) of section 1603 of Title 25); or

**(G)** a California Indian described in section 1679(a) of Title 25.

**(4) Waiver**

**(A) In general**

GOV000160

On the request of a State agency and with the support of the chief executive officer of the State, the Secretary may waive the applicability of paragraph (2) to any group of individuals in the State if the Secretary makes a determination that the area in which the individuals reside--

**(i)** has an unemployment rate of over 10 percent; or

**(ii)** is in a noncontiguous State and has an unemployment rate that is at or above 1.5 times the national unemployment rate.

**(B) Report**

The Secretary shall report the basis for a waiver under subparagraph (A) to the Committee on Agriculture of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry of the Senate.

**(C) Definition of noncontiguous State**

**(i) In general**

In this paragraph, the term "noncontiguous State" means a State that is not 1 of the contiguous 48 States or the District of Columbia.

**(ii) Exclusions**

The term "noncontiguous State" does not include Guam or the Virgin Islands of the United States.

**(5) Subsequent eligibility**

**(A) Regaining eligibility**

An individual denied eligibility under paragraph (2) shall regain eligibility to participate in the supplemental nutrition assistance program if, during a 30-day period, the individual--

**(i)** works 80 or more hours;

**(ii)** participates in and complies with the requirements of a work program for 80 or more hours, as determined by a State agency; or

**(iii)** participates in and complies with the requirements of a program under section 2029 of this title or a comparable program established by a State or political subdivision of a State.

GOV000161

**(B) Maintaining eligibility**

An individual who regains eligibility under subparagraph (A) shall remain eligible as long as the individual meets the requirements of subparagraph (A), (B), or (C) of paragraph (2).

**(C) Loss of employment**

**(i) In general**

An individual who regained eligibility under subparagraph (A) and who no longer meets the requirements of subparagraph (A), (B), or (C) of paragraph (2) shall remain eligible for a consecutive 3-month period, beginning on the date the individual first notifies the State agency that the individual no longer meets the requirements of subparagraph (A), (B), or (C) of paragraph (2).

**(ii) Limitation**

An individual shall not receive any benefits pursuant to clause (i) for more than a single 3-month period in any 36-month period.

**(6) Exemptions**

**(A) Definitions**

In this paragraph:

**(i) Caseload**

The term "caseload" means the average monthly number of individuals receiving supplemental nutrition assistance program benefits during the 12-month period ending the preceding June 30.

**(ii) Covered individual**

The term "covered individual" means a member of a household that receives supplemental nutrition assistance program benefits, or an individual denied eligibility for supplemental nutrition assistance program benefits solely due to paragraph (2), who--

**(I)** is not eligible for an exception under paragraph (3);

**(II)** does not reside in an area covered by a waiver granted under paragraph (4);

**(III)** is not complying with subparagraph (A), (B), or (C) of paragraph (2);

GOV000162

**(IV)** is not receiving supplemental nutrition assistance program benefits during the 3 months of eligibility provided under paragraph (2); and

**(V)** is not receiving supplemental nutrition assistance program benefits under paragraph (5).

**(B) General rule**

Subject to subparagraphs (C) through (I), a State agency may provide an exemption from the requirements of paragraph (2) for covered individuals.

**(C) Fiscal year 1998**

Subject to subparagraphs (G) and (I), for fiscal year 1998, a State agency may provide a number of exemptions such that the average monthly number of the exemptions in effect during the fiscal year does not exceed 15 percent of the number of covered individuals in the State in fiscal year 1998, as estimated by the Secretary, based on the survey conducted to carry out section 2025(c) of this title for fiscal year 1996 and such other factors as the Secretary considers appropriate due to the timing and limitations of the survey.

**(D) Fiscal years 1999 through 2019**

Subject to subparagraphs (G) through (I), for fiscal year 1999 and each subsequent fiscal year through fiscal year 2019, a State agency may provide a number of exemptions such that the average monthly number of the exemptions in effect during the fiscal year does not exceed 15 percent of the number of covered individuals in the State, as estimated by the Secretary under subparagraph (C), adjusted by the Secretary to reflect changes in the State's caseload and the Secretary's estimate of changes in the proportion of members of households that receive supplemental nutrition assistance program benefits covered by waivers granted under paragraph (4).

**(E) Fiscal years 2020 through 2023**

Subject to subparagraphs (G) through (I), for fiscal year 2020 and each subsequent fiscal year through fiscal year 2023, a State agency may provide a number of exemptions such that the average monthly number of exemptions in effect during the fiscal year does not exceed 12 percent of the number of covered individuals in the State, as estimated by the Secretary under subparagraph (C), adjusted by the Secretary to reflect changes in the State's caseload and the Secretary's estimate of changes in the proportion of members of households that receive supplemental nutrition assistance program benefits covered by waivers granted under paragraph (4).

**(F) Subsequent fiscal years**

Subject to subparagraphs (G) through (I), for fiscal years 2024 and each subsequent fiscal year, a State agency may provide a number of exemptions such that the average monthly number of exemptions in effect during the fiscal year does not exceed 8 percent of the number of covered individuals in the State, as estimated by the Secretary under subparagraph (C), adjusted by the Secretary to reflect changes in the State's caseload and the Secretary's estimate of changes in the proportion

GOV000163

of members of households that receive supplemental nutrition assistance program benefits covered by waivers granted under paragraph (4) [1]

**(G) Caseload adjustments**

The Secretary shall adjust the number of individuals estimated for a State under subparagraph (C), (D),, [2] (E) or (F) during a fiscal year if the number of members of households that receive supplemental nutrition assistance program benefits in the State varies from the State's caseload by more than 10 percent, as determined by the Secretary.

**(H) Exemption adjustments**

During fiscal year 1999 and each subsequent fiscal year, the Secretary shall increase or decrease the number of individuals who may be granted an exemption by a State agency under this paragraph to the extent that the average monthly number of exemptions in effect in the State for the preceding fiscal year under this paragraph is lesser or greater than the average monthly number of exemptions estimated for the State agency for such preceding fiscal year under this paragraph.

**(I) Reporting requirement**

A State agency shall submit such reports to the Secretary as the Secretary determines are necessary to ensure compliance with this paragraph.

**(J) Rule of construction for exemption adjustment**

During fiscal year 2024 and each subsequent fiscal year, nothing in this paragraph shall be interpreted to allow a State agency to accumulate unused exemptions to be provided beyond the subsequent fiscal year.

**(7) Exemption for noncontiguous States**

**(A) Definition of noncontiguous State**

**(i) In general**

In this paragraph, the term "noncontiguous State" means a State that is not 1 of the contiguous 48 States or the District of Columbia.

**(ii) Exclusions**

In this paragraph, the term "noncontiguous State" does not include Guam or the Virgin Islands of the United States.

**(B) Exemption**

GOV000164

Subject to subparagraph (D), the Secretary may exempt individuals in a noncontiguous State from compliance with the requirements of paragraph (2) if--

**(i)** the State agency submits to the Secretary a request for that exemption, made in such form and at such time as the Secretary may require, and including the information described in subparagraph (C); and

**(ii)** the Secretary determines that based on that request, the State agency is demonstrating a good faith effort to comply with the requirements of paragraph (2).

**(C) Good faith effort determination**

In determining whether a State agency is demonstrating a good faith effort for purposes of subparagraph (B)(ii), the Secretary shall consider--

**(i)** any actions taken by the State agency toward compliance with the requirements of paragraph (2);

**(ii)** any significant barriers to or challenges in meeting those requirements, including barriers or challenges relating to funding, design, development, procurement, or installation of necessary systems or resources;

**(iii)** the detailed plan and timeline of the State agency for achieving full compliance with those requirements, including any milestones (as defined by the Secretary); and

**(iv)** any other criteria determined appropriate by the Secretary.

**(D) Duration of exemption**

**(i) In general**

An exemption granted under subparagraph (B) shall expire not later than December 31, 2028, and may not be renewed beyond that date.

**(ii) Early termination**

The Secretary may terminate an exemption granted under subparagraph (B) prior to the expiration date of that exemption if the Secretary determines that the State agency--

**(I)** has failed to comply with the reporting requirements described in subparagraph (E); or

**(II)** based on the information provided pursuant to subparagraph (E), failed to make continued good faith efforts toward compliance with the requirements of this subsection.

GOV000165

**(E) Reporting requirements**

A State agency granted an exemption under subparagraph (B) shall submit to the Secretary--

**(i)** quarterly progress reports on the status of the State agency in achieving the milestones toward full compliance described in subparagraph (C)(iii); and

**(ii)** information on specific risks or newly identified barriers or challenges to full compliance, including the plan of the State agency to mitigate those risks, barriers, or challenges.

**(8) Other program rules**

Nothing in this subsection shall make an individual eligible for benefits under this chapter if the individual is not otherwise eligible for benefits under the other provisions of this chapter.

**(p) Disqualification for obtaining cash by destroying food and collecting deposits**

Subject to any requirements established by the Secretary, any person who has been found by a State or Federal court or administrative agency in a hearing under subsection (b) to have intentionally obtained cash by purchasing products with supplemental nutrition assistance program benefits that have containers that require return deposits, discarding the product, and returning the container for the deposit amount shall be ineligible for benefits under this chapter for such period of time as the Secretary shall prescribe by regulation.

**(q) Disqualification for sale of food purchased with supplemental nutrition assistance program benefits**

Subject to any requirements established by the Secretary, any person who has been found by a State or Federal court or administrative agency in a hearing under subsection (b) to have intentionally sold any food that was purchased using supplemental nutrition assistance program benefits shall be ineligible for benefits under this chapter for such period of time as the Secretary shall prescribe by regulation.

**(r) Disqualification for certain convicted felons**

**(1) In general**

An individual shall not be eligible for benefits under this chapter if--

**(A)** the individual is convicted of--

**(i)** aggravated sexual abuse under section 2241 of Title 18;

**(ii)** murder under section 1111 of Title 18;

GOV000166

**(iii)** an offense under chapter 110 of Title 18;

**(iv)** a Federal or State offense involving sexual assault, as defined in 13925(a) [3] of Title 42; or

**(v)** an offense under State law determined by the Attorney General to be substantially similar to an offense described in clause (i), (ii), or (iii); and

**(B)** the individual is not in compliance with the terms of the sentence of the individual or the restrictions under subsection (k).

**(2) Effects on assistance and benefits for others**

The amount of benefits otherwise required to be provided to an eligible household under this chapter shall be determined by considering the individual to whom paragraph (1) applies not to be a member of the household, except that the income and resources of the individual shall be considered to be income and resources of the household.

**(3) Enforcement**

Each State shall require each individual applying for benefits under this chapter to attest to whether the individual, or any member of the household of the individual, has been convicted of a crime described in paragraph (1).

**(s) Ineligibility for benefits due to receipt of substantial lottery or gambling winnings**

**(1) In general**

Any household in which a member receives substantial lottery or gambling winnings, as determined by the Secretary, shall lose eligibility for benefits immediately upon receipt of the winnings.

**(2) Duration of ineligibility**

A household described in paragraph (1) shall remain ineligible for participation until the household meets the allowable financial resources and income eligibility requirements under subsections (c), (d), (e), (f), (g), (i), (k), (l), (m), and (n) of section 2014 of this title.

**(3) Agreements**

As determined by the Secretary, each State agency, to the maximum extent practicable, shall establish agreements with entities responsible for the regulation or sponsorship of gaming in the State to determine whether individuals participating in the supplemental nutrition assistance program have received substantial lottery or gambling winnings.

GOV000167

**CREDIT(S)**

(Pub.L. 88-525, § 6, Aug. 31, 1964, 78 Stat. 704; Pub.L. 94-339, § 3, July 5, 1976, 90 Stat. 800; Pub.L. 95-113, Title XIII, § 1301, Sept. 29, 1977, 91 Stat. 964; Pub.L. 96-58, §§ 5, 9, Aug. 14, 1979, 93 Stat. 391, 392; Pub.L. 96-249, Title I, §§ 109, 110, 114, 115, 139, 140, May 26, 1980, 94 Stat. 359, 361, 370; Pub.L. 97-35, Title I, §§ 108(b), (c), 109, 112, Aug. 13, 1981, 95 Stat. 361, 362; Pub.L. 97-98, Title XIII, §§ 1310, 1311, Dec. 22, 1981, 95 Stat. 1284, 1285; Pub.L. 97-253, Title I, §§ 145(e), 154-161, 189(b)(1), 190(a), (b), Sept. 8, 1982, 96 Stat. 774, 777, 778, 787; Pub.L. 98-204, §§ 5, 6, Dec. 2, 1983, 97 Stat. 1385, 1386; Pub.L. 99-198, Title XV, §§ 1513(b), 1516, 1517(a), Dec. 23, 1985, 99 Stat. 1571 to 1573; Pub.L. 100-435, Title II, § 202(b), (c), Title IV, § 404(a) to (d), Sept. 19, 1988, 102 Stat. 1656, 1666, 1667; Pub.L. 101-624, Title XVII, §§ 1723 to 1726(b) (1), (c), (d), 1727, Nov. 28, 1990, 104 Stat. 3786 to 3788; Pub.L. 102-237, Title IX, §§ 907, 941(3), Dec. 13, 1991, 105 Stat. 1885, 1892; Pub.L. 103-66, Title XIII, §§ 13922(b), 13942, Aug. 10, 1993, 107 Stat. 675, 677; Pub.L. 103-225, Title I, §§ 101(a), 104(b), Mar. 25, 1994, 108 Stat. 106, 107; Pub.L. 103-296, Title I, § 108(f)(1), (2), Aug. 15, 1994, 108 Stat. 1487; Pub.L. 104-193, Title I, § 109(b), Title VIII, §§ 813 to 815(a), 816, 817(a), 818, 819(a), (c), 820 to 824(a), Aug. 22, 1996, 110 Stat. 2169, 2314, 2315, 2318, 2320 to 2323; Pub.L. 104-208, Div. C, Title III, § 308(g)(7)(D)(i), Sept. 30, 1996, 110 Stat. 3009-624; Pub.L. 105-33, Title I, § 1001, Aug. 5, 1997, 111 Stat. 251; Pub.L. 105-277, Div. A, § 101(f) [Title VIII, § 405(d)(2)(B), (f) (2)(B)], Oct. 21, 1998, 112 Stat. 2681-418, 2681-429; Pub.L. 107-171, Title IV, §§ 4109, 4115(b)(2), 4121(c), May 13, 2002, 116 Stat. 309, 315, 324; Pub.L. 110-234, Title IV, §§ 4001(b), 4002(a)(3), 4105, 4108, 4112, 4115(b)(4), 4131, May 22, 2008, 122 Stat. 1092, 1101, 1102, 1106, 1114; Pub.L. 110-246, § 4(a), Title IV, §§ 4001(b), 4002(a)(3), 4105, 4108, 4112, 4115(b) (4), 4131, June 18, 2008, 122 Stat. 1664, 1853, 1862, 1868, 1875; Pub.L. 113-79, Title IV, §§ 4007, 4008(a), 4009(a), 4030(d), Feb. 7, 2014, 128 Stat. 787, 789, 814; Pub.L. 113-128, Title V, § 512(l)(2), July 22, 2014, 128 Stat. 1709; Pub.L. 115-334, Title IV, § 4005(a), (b), Dec. 20, 2018, 132 Stat. 4627; Pub.L. 118-5, Div. C, Title II, §§ 311(a), 312, June 3, 2023, 137 Stat. 36, 37; Pub.L. 119-21, Title I, §§ 10102, 10108, July 4, 2025, 139 Stat. 81, 85.)

Notes of Decisions (40)

---

**Footnotes**

1    So in original. Probably should be followed by a period.

2    So in original.

3    So in original. Probably should be preceded by "section".

7 U.S.C.A. § 2015, 7 USCA § 2015
Current through P.L. 119-47. Some statute sections may be more current, see credits for details.

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 7. Agriculture (Refs & Annos)
    Chapter 51. Supplemental Nutrition Assistance Program (Refs & Annos)

7 U.S.C.A. § 2022

§ 2022. Disposition of claims

Effective: July 4, 2025
Currentness

**(a) General authority of the Secretary**

**(1) Determination of claims**

Except in the case of an at-risk amount required under section 2025(c)(1)(D)(i)(II) of this title or the payment or disposition of a State share under section 2013(a)(2) of this title, the Secretary shall have the power to determine the amount of and settle and adjust any claim and to compromise or deny all or part of any such claim or claims arising under the provisions of this chapter or the regulations issued pursuant to this chapter, including, but not limited to, claims arising from fraudulent and nonfraudulent overissuances to recipients, including the power to waive claims if the Secretary determines that to do so would serve the purposes of this chapter. Such powers with respect to claims against recipients may be delegated by the Secretary to State agencies. The Secretary shall have the power to reduce amounts otherwise due to a State agency under section 2025 of this title to collect unpaid claims assessed against the State agency if the State agency has declined or exhausted its appeal rights under section 2023 of this title.

**(2) Claims established under quality control system**

To the extent that a State agency does not pay a claim established under section 2025(c)(1) of this title, including an agreement to have all or part of the claim paid through a reduction in Federal administrative funding, within 30 days from the date on which the bill for collection is received by the State agency, the State agency shall be liable for interest on any unpaid portion of such claim accruing from the date on which the bill for collection was received by the State agency, unless the State agency appeals the claim under section 2025(c)(7) of this title. If the State agency appeals such claim (in whole or in part), the interest on any unpaid portion of the claim shall accrue from the date of the decision on the administrative appeal, or from a date that is 1 year after the date the bill is received, whichever is earlier, until the date the unpaid portion of the payment is received. If the State agency pays such claim (in whole or in part, including an agreement to have all or part of the claim paid through a reduction in Federal administrative funding) and the claim is subsequently overturned through administrative or judicial appeal, any amounts paid by the State agency shall be promptly returned with interest, accruing from the date the payment is received until the date the payment is returned.

**(3) Computation of interest**

Any interest assessed under this paragraph shall be computed at a rate determined by the Secretary based on the average of the bond equivalent of the weekly 90-day Treasury bill auction rates during the period such interest accrues.

GOV000169

**(4) Joint and several liability of household members**

Each adult member of a household shall be jointly and severally liable for the value of any overissuance of benefits.

**(b) Collection of overissuances**

**(1) In general**

Except as otherwise provided in this subsection, a State agency shall collect any overissuance of benefits issued to a household by--

**(A)** reducing the allotment of the household;

**(B)** withholding amounts from unemployment compensation from a member of the household under subsection (c);

**(C)** recovering from Federal pay or a Federal income tax refund under subsection (d); or

**(D)** any other means.

**(2) Cost effectiveness**

Paragraph (1) shall not apply if the State agency demonstrates to the satisfaction of the Secretary that all of the means referred to in paragraph (1) are not cost effective.

**(3) Maximum reduction absent fraud**

If a household received an overissuance of benefits without any member of the household being found ineligible to participate in the program under section 2015(b)(1) of this title and a State agency elects to reduce the allotment of the household under paragraph (1)(A), the State agency shall not reduce the monthly allotment of the household under paragraph (1)(A) by an amount in excess of the greater of--

**(A)** 10 percent of the monthly allotment of the household; or

**(B)** $10.

**(4) Procedures**

A State agency shall collect an overissuance of benefits issued to a household under paragraph (1) in accordance with the requirements established by the State agency for providing notice, electing a means of payment, and establishing a time schedule for payment.

GOV000170

**(5) Overissuances caused by systemic State errors**

**(A) In general**

If the Secretary determines that a State agency overissued benefits to a substantial number of households in a fiscal year as a result of a major systemic error by the State agency, as defined by the Secretary, the Secretary may prohibit the State agency from collecting these overissuances from some or all households.

**(B) Procedures**

**(i) Information reporting by States**

Every State agency shall provide to the Secretary all information requested by the Secretary concerning the issuance of benefits to households by the State agency in the applicable fiscal year.

**(ii) Final determination**

After reviewing relevant information provided by a State agency, the Secretary shall make a final determination--

**(I)** whether the State agency overissued benefits to a substantial number of households as a result of a systemic error in the applicable fiscal year; and

**(II)** as to the amount of the overissuance in the applicable fiscal year for which the State agency is liable.

**(iii) Establishing a claim**

Upon determining under clause (ii) that a State agency has overissued benefits to households due to a major systemic error determined under subparagraph (A), the Secretary shall establish a claim against the State agency equal to the value of the overissuance caused by the systemic error.

**(iv) Administrative and judicial review**

Administrative and judicial review, as provided in section 2023 of this title, shall apply to the final determinations by the Secretary under clause (ii).

**(v) Remission to the Secretary**

**(I) Determination not appealed**

If the determination of the Secretary under clause (ii) is not appealed, the State agency shall, as soon as practicable, remit to the Secretary the dollar amount specified in the claim under clause (iii).

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

GOV000171

### (II) Determination appealed

If the determination of the Secretary under clause (ii) is appealed, upon completion of administrative and judicial review under clause (iv), and a finding of liability on the part of the State, the appealing State agency shall, as soon as practicable, remit to the Secretary a dollar amount subject to the finding made in the administrative and judicial review.

### (vi) Alternative method of collection

#### (I) In general

If a State agency fails to make a payment under clause (v) within a reasonable period of time, as determined by the Secretary, the Secretary may reduce any amount due to the State agency under any other provision of this chapter by the amount due.

#### (II) Accrual of interest

During the period of time determined by the Secretary to be reasonable under subclause (I), interest in the amount owed shall not accrue.

### (vii) Limitation

Any liability amount established under section 2025(c)(1)(C) of this title shall be reduced by the amount of the claim established under this subparagraph.

## (c) Intercept of unemployment benefits

**(1)** As used in this subsection, the term "uncollected overissuance" means the amount of an overissuance of benefits, as determined under subsection (b)(1), that has not been recovered pursuant to subsection (b)(1).

**(2)** A State agency may determine on a periodic basis, from information supplied pursuant to section 49b(b) of Title 29, whether an individual receiving compensation under the State's unemployment compensation law (including amounts payable pursuant to an agreement under a Federal unemployment compensation law) owes an uncollected overissuance.

**(3)** A State agency may recover an uncollected overissuance--

  **(A)** by--

    **(i)** entering into an agreement with an individual described in paragraph (2) under which specified amounts will be withheld from unemployment compensation otherwise payable to the individual; and

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

GOV000172

**(ii)** furnishing a copy of the agreement to the State agency administering the unemployment compensation law; or

**(B)** in the absence of an agreement, by obtaining a writ, order, summons, or other similar process in the nature of garnishment from a court of competent jurisdiction to require the withholding of amounts from the unemployment compensation.

## (d) Recovery of overissuance of benefits

The amount of an overissuance of benefits, as determined under subsection (b)(1), that has not been recovered pursuant to such subsection may be recovered from Federal pay (including salaries and pensions) as authorized by section 5514 of Title 5 or a Federal income tax refund as authorized by section 3720A of Title 31.

### CREDIT(S)

(Pub.L. 88-525, § 13, Aug. 31, 1964, 78 Stat. 707; Pub.L. 95-113, Title XIII, § 1301, Sept. 29, 1977, 91 Stat. 974; Pub.L. 97-35, Title I, § 113, Aug. 13, 1981, 95 Stat. 363; Pub.L. 97-253, Title I, §§ 177, 178, Sept. 8, 1982, 96 Stat. 781, 782; Pub.L. 99-198, Title XV, §§ 1533 to 1535(a), Dec. 23, 1985, 99 Stat. 1583; Pub.L. 100-435, Title VI, §§ 601, 602, Sept. 19, 1988, 102 Stat. 1674; Pub.L. 101-624, Title XVII, § 1746, Nov. 28, 1990, 104 Stat. 3796; Pub.L. 102-237, Title IX, § 911, Dec. 13, 1991, 105 Stat. 1887; Pub.L. 103-66, Title XIII, §§ 13941(b), 13951(a), Aug. 10, 1993, 107 Stat. 676, 677; Pub.L. 104-193, Title VIII, § 844(a), Aug. 22, 1996, 110 Stat. 2332; Pub.L. 107-171, Title IV, § 4118(b), May 13, 2002, 116 Stat. 321; Pub.L. 110-234, Title IV, §§ 4115(b)(9), 4133, May 22, 2008, 122 Stat. 1107, 1116; Pub.L. 110-246, § 4(a), Title IV, §§ 4115(b)(9), 4133, June 18, 2008, 122 Stat. 1664, 1869, 1877; Pub.L. 113-79, Title IV, § 4020(b)(1), Feb. 7, 2014, 128 Stat. 798; Pub.L. 119-21, Title I, § 10105(b), July 4, 2025, 139 Stat. 84.)

Notes of Decisions (11)

7 U.S.C.A. § 2022, 7 USCA § 2022
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

   KeyCite Yellow Flag
Proposed Legislation

United States Code Annotated
   Title 7. Agriculture (Refs & Annos)
     Chapter 51. Supplemental Nutrition Assistance Program (Refs & Annos)

7 U.S.C.A. § 2025

§ 2025. Administrative cost-sharing and quality control

Effective: July 4, 2025
Currentness

### (a) Administrative costs

Subject to subsection (k), the Secretary is authorized to pay to each State agency, through fiscal year 2026, 50 percent, and for fiscal year 2027 and each fiscal year thereafter, 25 percent, of all administrative costs involved in each State agency's operation of the supplemental nutrition assistance program, which costs shall include, but not be limited to, the cost of (1) the certification of applicant households, (2) the acceptance, storage, protection, control, and accounting of benefits after their delivery to receiving points within the State, (3) the issuance of benefits to all eligible households, (4) informational activities relating to the supplemental nutrition assistance program, including those undertaken under section 2020(e)(1)(A) of this title, but not including recruitment activities designed to persuade an individual to apply for program benefits or that promote the program through television, radio, or billboard advertisements, (5) fair hearings, (6) automated data processing and information retrieval systems subject to the conditions set forth in subsection (g), (7) supplemental nutrition assistance program investigations and prosecutions, (8) implementing and operating the immigration status verification system established under section 1137(d) of the Social Security Act (42 U.S.C. 1320b-7(d)), and (9) establishing and operating a longitudinal database in accordance with section 2026(n) of this title: *Provided*, That the Secretary is authorized at the Secretary's discretion to pay any State agency administering the supplemental nutrition assistance program on all or part of an Indian reservation under section 2020(d) of this title or in a Native village within the State of Alaska identified in section 1610(b) of Title 43 such amounts for administrative costs as the Secretary determines to be necessary for effective operation of the supplemental nutrition assistance program, as well as to permit each State to retain 35 percent of the value of all funds or allotments recovered or collected pursuant to sections 2015(b) and 2022(c) of this title and 20 percent of the value of any other funds or allotments recovered or collected, except the value of funds or allotments recovered or collected that arise from an error of a State agency. The officials responsible for making determinations of ineligibility under this chapter shall not receive or benefit from revenues retained by the State under the provisions of this subsection.

### (b) Work supplementation or support program

#### (1) "Work supplementation or support program" defined

In this subsection, the term "work supplementation or support program" means a program under which, as determined by the Secretary, public assistance (including any benefits provided under a program established by the State and the supplemental nutrition assistance program) is provided to an employer to be used for hiring and employing a public assistance recipient who was not employed by the employer at the time the public assistance recipient entered the program.

GOV000174

**(2) Program**

A State agency may elect to use an amount equal to the allotment that would otherwise be issued to a household under the supplemental nutrition assistance program, but for the operation of this subsection, for the purpose of subsidizing or supporting a job under a work supplementation or support program established by the State.

**(3) Procedure**

If a State agency makes an election under paragraph (2) and identifies each household that participates in the supplemental nutrition assistance program that contains an individual who is participating in the work supplementation or support program--

**(A)** the Secretary shall pay to the State agency an amount equal to the value of the allotment that the household would be eligible to receive but for the operation of this subsection;

**(B)** the State agency shall expend the amount received under subparagraph (A) in accordance with the work supplementation or support program in lieu of providing the allotment that the household would receive but for the operation of this subsection;

**(C)** for purposes of--

**(i)** sections 2014 and 2017(a) of this title, the amount received under this subsection shall be excluded from household income and resources; and

**(ii)** section 2017(b) of this title, the amount received under this subsection shall be considered to be the value of an allotment provided to the household; and

**(D)** the household shall not receive an allotment from the State agency for the period during which the member continues to participate in the work supplementation or support program.

**(4) Other work requirements**

No individual shall be excused, by reason of the fact that a State has a work supplementation or support program, from any work requirement under section 2015(d) of this title, except during the periods in which the individual is employed under the work supplementation or support program.

**(5) Length of participation**

A State agency shall provide a description of how the public assistance recipients in the program shall, within a specific period of time, be moved from supplemented or supported employment to employment that is not supplemented or supported.

**(6) Displacement**

GOV000175

A work supplementation or support program shall not displace the employment of individuals who are not supplemented or supported.

## (c) Quality control system

### (1) In general

#### (A) System

##### (i) In general

In carrying out the supplemental nutrition assistance program, the Secretary shall carry out a system that enhances payment accuracy and improves administration by establishing fiscal incentives that require State agencies with high payment error rates to share in the cost of payment error.

##### (ii) Tolerance level for excluding small errors

The Secretary shall set the tolerance level for excluding small errors for the purposes of this subsection--

**(I)** for fiscal year 2014, at an amount not greater than $37; and

**(II)** for each fiscal year thereafter, the amount specified in subclause (I) adjusted by the percentage by which the thrifty food plan is adjusted under section 2012(u)(3) of this title between June 30, 2013, and June 30 of the immediately preceding fiscal year.

#### (B) Quality control system integrity

##### (i) In general

Not later than 180 days after December 20, 2018, the Secretary shall issue interim final regulations that--

**(I)** ensure that the quality control system established under this subsection produces valid statistical results;

**(II)** provide for oversight of contracts entered into by a State agency for the purpose of improving payment accuracy;

**(III)** ensure the accuracy of data collected under the quality control system established under this subsection; and

**(IV)** for each fiscal year, to the maximum extent practicable, provide for the evaluation of the integrity of the quality control process of not fewer than 2 State agencies, selected in accordance with criteria determined by the Secretary.

GOV000176

**(ii) Debarment**

In accordance with the nonprocurement debarment procedures under part 417 of title 2, Code of Federal Regulations, or successor regulations, the Secretary shall debar any person that, in carrying out the quality control system established under this subsection, knowingly submits, or causes to be submitted, false information to the Secretary.

**(C) Establishment of liability amount for fiscal year 2003 and thereafter**

With respect to fiscal year 2004 and any fiscal year thereafter for which the Secretary determines that, for the second or subsequent consecutive fiscal year, a 95 percent statistical probability exists that the payment error rate of a State agency exceeds 105 percent of the national performance measure for payment error rates announced under paragraph (6), the Secretary shall establish an amount for which the State agency may be liable (referred to in this paragraph as the "liability amount") that is equal to the product obtained by multiplying--

**(i)** the value of all allotments issued by the State agency in the fiscal year;

**(ii)** the difference between--

  **(I)** the payment error rate of the State agency; and

  **(II)** 6 percent; and

**(iii)** 10 percent.

**(D) Authority of Secretary with respect to liability amount**

With respect to the liability amount established for a State agency under subparagraph (C) for any fiscal year, the Secretary shall--

**(i)(I)** require that a portion, not to exceed 50 percent, of the liability amount established for the fiscal year be used by the State agency for new investment, approved by the Secretary, to improve administration by the State agency of the supplemental nutrition assistance program (referred to in this paragraph as the "new investment amount"), which new investment amount shall not be matched by Federal funds;

**(II)** designate a portion, not to exceed 50 percent, of the amount established for the fiscal year for payment to the Secretary in accordance with subparagraph (E) (referred to in this paragraph as the "at-risk amount"); or

**(III)** take any combination of the actions described in subclauses (I) and (II); or

GOV000177

**(ii)** make the determinations described in clause (i) and enter into a settlement with the State agency, only with respect to any new investment amount, before the end of the fiscal year in which the liability amount is determined under subparagraph (C).

### (E) Payment of at-risk amount for certain States

#### (i) In general

A State agency shall pay to the Secretary the at-risk amount designated under subparagraph (D)(i)(II) for any fiscal year in accordance with clause (ii), if, with respect to the immediately following fiscal year, a liability amount has been established for the State agency under subparagraph (C).

#### (ii) Method of payment of at-risk amount

##### (I) Remission to the Secretary

In the case of a State agency required to pay an at-risk amount under clause (i), as soon as practicable after completion of all administrative and judicial reviews with respect to that requirement to pay, the chief executive officer of the State shall remit to the Secretary the at-risk amount required to be paid.

##### (II) Alternative method of collection

###### (aa) In general

If the chief executive officer of the State fails to make the payment under subclause (I) within a reasonable period of time determined by the Secretary, the Secretary may reduce any amount due to the State agency under any other provision of this section by the amount required to be paid under clause (i).

###### (bb) Accrual of interest

During any period of time determined by the Secretary under item (aa), interest on the payment under subclause (I) shall not accrue under section 2022(a)(2) of this title.

### (F) Use of portion of liability amount for new investment

#### (i) Reduction of other amounts due to State agency

In the case of a State agency that fails to comply with a requirement for new investment under subparagraph (D)(i)(I) or clause (iii)(I), the Secretary may reduce any amount due to the State agency under any other provision of this section by the portion of the liability amount that has not been used in accordance with that requirement.

GOV000178

**(ii) Effect of State agency's wholly prevailing on appeal**

If a State agency begins required new investment under subparagraph (D)(i)(I), the State agency appeals the liability amount of the State agency, and the determination by the Secretary of the liability amount is reduced to $0 on administrative or judicial review, the Secretary shall pay to the State agency an amount equal to 50 percent of the new investment amount that was included in the liability amount subject to the appeal.

**(iii) Effect of Secretary's wholly prevailing on appeal**

If a State agency does not begin required new investment under subparagraph (D)(i)(I), the State agency appeals the liability amount of the State agency, and the determination by the Secretary of the liability amount is wholly upheld on administrative or judicial review, the Secretary shall--

**(I)** require all or any portion of the new investment amount to be used by the State agency for new investment, approved by the Secretary, to improve administration by the State agency of the supplemental nutrition assistance program, which amount shall not be matched by Federal funds; and

**(II)** require payment of any remaining portion of the new investment amount in accordance with subparagraph (E)(ii).

**(iv) Effect of neither party's wholly prevailing on appeal**

The Secretary shall promulgate regulations regarding obligations of the Secretary and the State agency in a case in which the State agency appeals the liability amount of the State agency and neither the Secretary nor the State agency wholly prevails.

**(G) Corrective action plans**

The Secretary shall foster management improvements by the States by requiring State agencies, other than State agencies with payment error rates of less than 6 percent, to develop and implement corrective action plans to reduce payment errors.

**(2) Error rate definitions**

As used in this section--

**(A)** the term "payment error rate" means the sum of the point estimates of an overpayment error rate and an underpayment error rate determined by the Secretary from data collected in a probability sample of participating households;

**(B)** the term "overpayment error rate" means the percentage of the value of all allotments issued in a fiscal year by a State agency that are either--

**(i)** issued to households that fail to meet basic program eligibility requirements; or

GOV000179

**(ii)** overissued to eligible households; and

**(C)** the term "underpayment error rate" means the ratio of the value of allotments underissued to recipient households to the total value of allotments issued in a fiscal year by a State agency.

**(3) Exclusions**

The following errors may be measured for management purposes but shall not be included in the payment error rate:

**(A)** Any errors resulting in the application of new regulations promulgated under this chapter during the first 120 days from the required implementation date for such regulations.

**(B)** Errors resulting from the use by a State agency of correctly processed information concerning households or individuals received from Federal agencies or from actions based on policy information approved or disseminated, in writing, by the Secretary or the Secretary's designee.

**(4) Reporting requirements**

The Secretary may require a State agency to report any factors that the Secretary considers necessary, including providing access to applicable State records and the entire information systems in which the records are contained, to determine a State agency's payment error rate, liability amount or new investment amount under paragraph (1), or performance under the performance measures under subsection (d). If a State agency fails to meet the reporting requirements established by the Secretary, the Secretary shall base the determination on all pertinent information available to the Secretary.

**(5) Procedures**

To facilitate the implementation of this subsection, each State agency shall expeditiously submit to the Secretary data concerning the operations of the State agency in each fiscal year sufficient for the Secretary to establish the State agency's payment error rate, liability amount or new investment amount under paragraph (1), or performance under the performance measures under subsection (d). The Secretary shall initiate efforts to collect the amount owed by the State agency as a claim established under paragraph (1) for a fiscal year, subject to the conclusion of any formal or informal appeal procedure and administrative or judicial review under section 2023 of this title (as provided for in paragraph (7)), before the end of the fiscal year following such fiscal year.

**(6) National performance measure for payment error rates**

**(A) Announcement**

At the time the Secretary makes the notification to State agencies of their error rates, the Secretary shall also announce a national performance measure that shall be the sum of the products of each State agency's error rate as developed for the notifications under paragraph (8) times that State agency's proportion of the total value of national allotments issued for the fiscal year using the most recent issuance data available at the time of the notifications issued pursuant to paragraph (8).

GOV000180

**(B) Use of alternative measure of State error**

Where a State fails to meet reporting requirements pursuant to paragraph (4), the Secretary may use another measure of a State's error developed pursuant to paragraph (5), to develop the national performance measure.

**(C) Use of national performance measure**

The announced national performance measure shall be used in determining the liability amount of a State under paragraph (1)(C) for the fiscal year whose error rates are being announced under paragraph (8).

**(D) No administrative or judicial review**

The national performance measure announced under this paragraph shall not be subject to administrative or judicial review.

**(7) Administrative and judicial review**

**(A) In general**

Except as provided in subparagraphs (B) and (C), if the Secretary asserts a financial claim against or establishes a liability amount with respect to a State agency under paragraph (1), the State may seek administrative and judicial review of the action pursuant to section 2023 of this title.

**(B) Determination of payment error rate**

With respect to any fiscal year, a determination of the payment error rate of a State agency or a determination whether the payment error rate exceeds 105 percent of the national performance measure for payment error rates shall be subject to administrative or judicial review only if the Secretary establishes a liability amount with respect to the fiscal year under paragraph (1)(C).

**(C) Authority of Secretary with respect to liability amount**

An action by the Secretary under subparagraph (D) or (F)(iii) of paragraph (1) shall not be subject to administrative or judicial review.

**(8) Criteria for payment by a State agency**

**(A)** This paragraph applies to the determination of whether a payment is due by a State agency for a fiscal year under paragraph (1).

**(B)** Not later than the first May 31 after the end of the fiscal year referred to in subparagraph (A), the case review and all arbitrations of State-Federal difference cases shall be completed.

GOV000181

**(C)** Not later than the first June 30 after the end of the fiscal year referred to in subparagraph (A), the Secretary shall--

**(i)** determine final error rates, the national average payment error rate, and the amounts of payment claimed against State agencies or liability amount established with respect to State agencies;

**(ii)** notify State agencies of the payment claims or liability amounts; and

**(iii)** provide a copy of the document providing notification under clause (ii) to the chief executive officer and the legislature of the State.

**(D)** A State agency desiring to appeal a payment claim or liability amount determined under subparagraph (C) shall submit to an administrative law judge--

**(i)** a notice of appeal, not later than 10 days after receiving a notice of the claim or liability amount; and

**(ii)** evidence in support of the appeal of the State agency, not later than 60 days after receiving a notice of the claim or liability amount.

**(E)** Not later than 60 days after a State agency submits evidence in support of the appeal, the Secretary shall submit responsive evidence to the administrative law judge to the extent such evidence exists.

**(F)** Not later than 30 days after the Secretary submits responsive evidence, the State agency shall submit rebuttal evidence to the administrative law judge to the extent such evidence exists.

**(G)** The administrative law judge, after an evidentiary hearing, shall decide the appeal--

**(i)** not later than 60 days after receipt of rebuttal evidence submitted by the State agency; or

**(ii)** if the State agency does not submit rebuttal evidence, not later than 90 days after the State agency submits the notice of appeal and evidence in support of the appeal.

**(H)** In considering a claim or liability amount under this paragraph, the administrative law judge shall consider all grounds for denying the claim or liability amount, in whole or in part, including the contention of a State agency that the claim or liability amount should be waived, in whole or in part, for good cause.

**(I)** The deadlines in subparagraphs (D), (E), (F), and (G) shall be extended by the administrative law judge for cause shown.

**(9) "Good cause" defined**

GOV000182

As used in this subsection, the term "good cause" includes--

(A) a natural disaster or civil disorder that adversely affects supplemental nutrition assistance program operations;

(B) a strike by employees of a State agency who are necessary for the determination of eligibility and processing of case changes under the supplemental nutrition assistance program;

(C) a significant growth in the caseload under the supplemental nutrition assistance program in a State prior to or during a fiscal year, such as a 15 percent growth in caseload;

(D) a change in the supplemental nutrition assistance program or other Federal or State program that has a substantial adverse impact on the management of the supplemental nutrition assistance program of a State; and

(E) a significant circumstance beyond the control of the State agency.

**(d) State performance indicators**

**(1) Fiscal years 2003 and 2004**

**(A) Guidance**

With respect to fiscal years 2003 and 2004, the Secretary shall establish, in guidance issued to State agencies not later than October 1, 2002--

(i) performance criteria relating to--

(I) actions taken to correct errors, reduce rates of error, and improve eligibility determinations; and

(II) other indicators of effective administration determined by the Secretary; and

(ii) standards for high and most improved performance to be used in awarding performance bonus payments under subparagraph (B)(ii).

**(B) Performance bonus payments**

With respect to each of fiscal years 2003 and 2004, the Secretary shall--

(i) measure the performance of each State agency with respect to the criteria established under subparagraph (A)(i); and

GOV000183

**(ii)** subject to paragraph (3), award performance bonus payments in the following fiscal year, in a total amount of $48,000,000 for each fiscal year, to State agencies that meet standards for high or most improved performance established by the Secretary under subparagraph (A)(ii).

### (2) Fiscal years 2005 through 2017

#### (A) Regulations

With respect to fiscal year 2005 through fiscal year 2017, the Secretary shall--

**(i)** establish, by regulation, performance criteria relating to--

**(I)** actions taken to correct errors, reduce rates of error, and improve eligibility determinations; and

**(II)** other indicators of effective administration determined by the Secretary;

**(ii)** establish, by regulation, standards for high and most improved performance to be used in awarding performance bonus payments under subparagraph (B)(ii); and

**(iii)** before issuing proposed regulations to carry out clauses (i) and (ii), solicit ideas for performance criteria and standards for high and most improved performance from State agencies and organizations that represent State interests.

#### (B) Performance bonus payments

With respect to fiscal year 2005 through fiscal year 2017, the Secretary shall--

**(i)** measure the performance of each State agency with respect to the criteria established under subparagraph (A)(i); and

**(ii)** subject to paragraph (3), award performance bonus payments in the following fiscal year, in a total amount of $48,000,000 for each fiscal year, to State agencies that meet standards for high or most improved performance established by the Secretary under subparagraph (A)(ii).

### (3) Prohibition on receipt of performance bonus payments

A State agency shall not be eligible for a performance bonus payment with respect to any fiscal year for which the State agency has a liability amount established under subsection (c)(1)(C).

### (4) Payments not subject to judicial review

WESTLAW     © 2026 Thomson Reuters. No claim to original U.S. Government Works.

GOV000184

A determination by the Secretary whether, and in what amount, to award a performance bonus payment under this subsection shall not be subject to administrative or judicial review.

**(5) Use of performance bonus payments**

A State agency may use a performance bonus payment received under this subsection only to carry out the program established under this chapter, including investments in--

  **(A)** technology;

  **(B)** improvements in administration and distribution; and

  **(C)** actions to prevent fraud, waste, and abuse.

**(6) Fiscal year 2018 and fiscal years thereafter**

  **(A)** With respect to fiscal year 2018 and each fiscal year thereafter, the Secretary shall establish, by regulation, performance criteria relating to--

    **(i)** actions taken to correct errors, reduce rates of error, and improve eligibility determinations; and

    **(ii)** other indicators of effective administration determined by the Secretary.

  **(B)** The Secretary shall not award performance bonus payments to State agencies in fiscal year 2019 for fiscal year 2018 performance.

**(e) Use of social security account numbers; access to information**

The Secretary and State agencies shall (1) require, as a condition of eligibility for participation in the supplemental nutrition assistance program, that each household member furnish to the State agency their social security account number (or numbers, if they have more than one number), and (2) use such account numbers in the administration of the supplemental nutrition assistance program. The Secretary and State agencies shall have access to the information regarding individual supplemental nutrition assistance program applicants and participants who receive benefits under title XVI of the Social Security Act that has been provided to the Commissioner of Social Security, but only to the extent that the Secretary and the Commissioner of Social Security determine necessary for purposes of determining or auditing a household's eligibility to receive assistance or the amount thereof under the supplemental nutrition assistance program, or verifying information related thereto.

**(f) Payment of certain legal fees**

Notwithstanding any other provision of law, counsel may be employed and counsel fees, court costs, bail, and other expenses incidental to the defense of officers and employees of the Department of Agriculture may be paid in judicial or administrative

GOV000185

proceedings to which such officers and employees have been made parties and that arise directly out of their performance of duties under this chapter.

**(g) Cost sharing for computerization**

**(1) In general**

Except as provided in paragraph (2), the Secretary is authorized to pay to each State agency the amount provided under subsection (a)(6) for the costs incurred by the State agency in the--

**(A)** planning, design, development, or installation of 1 or more automatic data processing and information retrieval systems that the Secretary determines--

**(i)** would assist in meeting the requirements of this chapter;

**(ii)** meet such conditions as the Secretary prescribes;

**(iii)** are likely to provide more efficient and effective administration of the supplemental nutrition assistance program;

**(iv)** would be compatible with other systems used in the administration of State programs, including the program funded under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.);

**(v)** would be tested adequately before and after implementation, including a requirement that--

**(I)** such testing shall be accomplished through pilot projects in limited areas for major systems changes (as determined under rules promulgated by the Secretary);

**(II)** each pilot project described in subclause (I) that is carried out before the implementation of a system shall be conducted in a live-production environment; and

**(III)** the data resulting from each pilot project carried out under this clause shall be thoroughly evaluated before the Secretary approves the system to be implemented more broadly;

**(vi)** would be operated in accordance with an adequate plan for--

**(I)** continuous updating to reflect changed policy and circumstances; and

**(II)** testing the effect of the system on access for eligible households and on payment accuracy; and

GOV000186

**(vii)** would be accessible by the Secretary for inspection and audit under section 2020(a)(3)(B) of this title; and

**(B)** operation of 1 or more automatic data processing and information retrieval systems that the Secretary determines may continue to be operated in accordance with clauses (i) through (vii) of subparagraph (A).

## (2) Limitation

The Secretary shall not make payments to a State agency under paragraph (1) to the extent that the State agency--

**(A)** is reimbursed for the costs under any other Federal program; or

**(B)** uses the systems for purposes not connected with the supplemental nutrition assistance program.

## (h) Funding of employment and training programs

### (1) In general

#### (A) Amounts

To carry out employment and training programs, the Secretary shall reserve for allocation to State agencies, to remain available for 24 months, from funds made available for each fiscal year under section 2027(a)(1) of this title, $103,900,000 for each fiscal year.

#### (B) Allocation

Funds made available under subparagraph (A) shall be made available to and reallocated among State agencies under a reasonable formula that--

**(i)** is determined and adjusted by the Secretary; and

**(ii)** takes into account the number of individuals who are not exempt from the work requirement under section 2015(o) of this title.

#### (C) Reallocation

##### (i) In general

If a State agency will not expend all of the funds allocated to the State agency for a fiscal year under subparagraph (B), the Secretary, subject to clauses (ii) through (v), shall reallocate the unexpended funds to other States (during the fiscal year or the subsequent fiscal year) as the Secretary considers appropriate and equitable.

GOV000187

**(ii) Timing**

The Secretary shall collect such information as the Secretary determines to be necessary about the expenditures and anticipated expenditures by the State agencies of the funds initially allocated to the State agencies under subparagraph (A) to make reallocations of unexpended funds under clause (i) within a timeframe that allows each State agency to which funds are reallocated at least 270 days to expend the reallocated funds.

**(iii) Opportunity**

The Secretary shall ensure that all State agencies have an opportunity to obtain reallocated funds.

**(iv) Priority**

The Secretary shall reallocate funds under this subparagraph as follows:

**(I)(aa)** Subject to items (bb) and (cc), not less than 50 percent shall be reallocated to State agencies requesting such funds to conduct employment and training programs and activities for which such State agencies had previously received funding under subparagraph (F)(viii) that the Secretary determines have the most demonstrable impact on the ability of participants to find and retain employment that leads to increased household income and reduced reliance on public assistance.

**(bb)** The Secretary shall base the determination under item (aa) on--

**(AA)** project results from the independent evaluations conducted under subparagraph (F)(vii)(I); or

**(BB)** if the project results from the independent evaluations conducted under subparagraph (F)(vii)(I) are not yet available, the reports under subparagraph (F)(vii)(II) or other information relating to performance of the programs and activities funded under subparagraph (F)(viii).

**(cc)** Employment and training activities funded under this subclause are not subject to subparagraph (F)(vii), but are subject to monitoring under paragraph (h)(5).

**(II)** Not less than 30 percent shall be reallocated to State agencies requesting such funds to implement or continue employment and training programs and activities under section 2015(d)(4)(B)(i) of this title that the Secretary determines have the most demonstrable impact on the ability of participants to find and retain employment that leads to increased household income and reduced reliance on public assistance, including programs and activities that are targeted to--

**(aa)** individuals 50 years of age or older;

GOV000188

**(bb)** formerly incarcerated individuals;

**(cc)** individuals participating in a substance abuse treatment program;

**(dd)** homeless individuals;

**(ee)** people with disabilities seeking to enter the workforce;

**(ff)** other individuals with substantial barriers to employment; or

**(gg)** households facing multi-generational poverty, to support employment and workforce participation through an integrated and family-focused approach in providing supportive services.

**(III)** The Secretary shall reallocate any remaining funds available under this subparagraph, to State agencies requesting such funds to use for employment and training programs and activities that the Secretary determines have the most demonstrable impact on the ability of participants to find and retain employment that leads to increased household income and reduced reliance on public assistance under section 2015(d)(4)(B)(i) of this title.

**(v) Consideration**

In reallocating funds under this subparagraph, a State agency that receives reallocated funds under clause (iv)(I) may also be considered for reallocated funding under clause (iv)(II).

**(D) Minimum allocation**

Notwithstanding subparagraph (B), the Secretary shall ensure that each State agency operating an employment and training program shall receive not less than $100,000 for each fiscal year.

**(E) Additional allocations for states that ensure availability of work opportunities**

**(i) In general**

In addition to the allocations under subparagraph (A), from funds made available under section 2027(a)(1) of this title, the Secretary shall allocate not more than $20,000,000 for each fiscal year to reimburse a State agency that is eligible under clause (ii) for the costs incurred in serving members of households receiving supplemental nutrition assistance program benefits who--

**(I)** are not eligible for an exception under section 2015(o)(3) of this title; and

**(II)** are placed in and comply with a program described in subparagraph (B) or (C) of section 2015(o)(2) of this title.

GOV000189

**(ii) Eligibility**

To be eligible for an additional allocation under clause (i), a State agency shall make and comply with a commitment to offer a position in a program described in subparagraph (B) or (C) of section 2015(o)(2) of this title to each applicant or recipient who--

    **(I)** is in the last month of the 3-month period described in section 2015(o)(2) of this title;

    **(II)** is not eligible for an exception under section 2015(o)(3) of this title;

    **(III)** is not eligible for a waiver under section 2015(o)(4) of this title; and

    **(IV)** is not exempt under section 2015(o)(6) of this title.

**(F) Pilot projects to reduce dependency and increase work requirements and work effort under supplemental nutrition assistance program**

    **(i) Pilot projects required**

        **(I) In general**

        The Secretary shall carry out pilot projects under which State agencies shall enter into cooperative agreements with the Secretary to develop and test methods, including operating work programs with certain features comparable to the program of block grants to States for temporary assistance for needy families established under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.), for employment and training programs and services to raise the number of work registrants under section 2015(d) of this title who obtain unsubsidized employment, increase the earned income of the registrants, and reduce the reliance of the registrants on public assistance, so as to reduce the need for supplemental nutrition assistance benefits.

        **(II) Requirements**

        Pilot projects shall--

            **(aa)** meet such terms and conditions as the Secretary considers to be appropriate; and

            **(bb)** except as otherwise provided in this subparagraph, be in accordance with the requirements of sections 2015(d) and 2029 of this title.

    **(ii) Selection criteria**

**(I) In general**

The Secretary shall select pilot projects under this subparagraph in accordance with the criteria established under this clause and additional criteria established by the Secretary.

**(II) Qualifying criteria**

To be eligible to participate in a pilot project, a State agency shall--

**(aa)** agree to participate in the evaluation described in clause (vii), including providing evidence that the State has a robust data collection system for program administration and cooperating to make available State data on the employment activities and post-participation employment, earnings, and public benefit receipt of participants to ensure proper and timely evaluation;

**(bb)** commit to collaborate with the State workforce board and other job training programs in the State and local area; and

**(cc)** commit to maintain at least the amount of State funding for employment and training programs and services under paragraphs (2) and (3) and under section 2029 of this title as the State expended for fiscal year 2013.

**(III) Selection criteria**

In selecting pilot projects, the Secretary shall--

**(aa)** consider the degree to which the pilot project would enhance existing employment and training programs in the State;

**(bb)** consider the degree to which the pilot project would enhance the employment and earnings of program participants;

**(cc)** consider whether there is evidence that the pilot project could be replicated easily by other States or political subdivisions;

**(dd)** consider whether the State agency has a demonstrated capacity to operate high quality employment and training programs; and

**(ee)** ensure the pilot projects, when considered as a group, test a range of strategies, including strategies that--

**(AA)** target individuals with low skills or limited work experience, individuals subject to the requirements under section 2015(o) of this title, and individuals who are working;

GOV000191

**(BB)** are located in a range of geographic areas and States, including rural and urban areas;

**(CC)** emphasize education and training, rehabilitative services for individuals with barriers to employment, rapid attachment to employment, and mixed strategies; and

**(DD)** test programs that assign work registrants to mandatory and voluntary participation in employment and training activities.

### (iii) Accountability

#### (I) In general

The Secretary shall establish and implement a process to terminate a pilot project for which the State has failed to meet the criteria described in clause (ii) or other criteria established by the Secretary.

#### (II) Timing

The process shall include a reasonable time period, not to exceed 180 days, for State agencies found noncompliant to correct the noncompliance.

### (iv) Employment and training activities

Allowable programs and services carried out under this subparagraph shall include those programs and services authorized under this chapter and employment and training activities authorized under the program of block grants to States for temporary assistance for needy families established under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq.), including:

**(I)** Employment in the public or private sector that is not subsidized by any public program.

**(II)** Employment in the private sector for which the employer receives a subsidy from public funds to offset all or a part of the wages and costs of employing an adult.

**(III)** Employment in the public sector for which the employer receives a subsidy from public funds to offset all or a part of the wages and costs of employing an adult.

**(IV)** A work activity that--

**(aa)** is performed in return for public benefits;

GOV000192

**(bb)** provides an adult with an opportunity to acquire the general skills, knowledge, and work habits necessary to obtain employment;

**(cc)** is designed to improve the employability of those who cannot find unsubsidized employment; and

**(dd)** is supervised by an employer, work site sponsor, or other responsible party on an ongoing basis.

**(V)** Training in the public or private sector that--

**(aa)** is given to a paid employee while the employee is engaged in productive work; and

**(bb)** provides knowledge and skills essential to the full and adequate performance of the job.

**(VI)** Job search, obtaining employment, or preparation to seek or obtain employment, including--

**(aa)** life skills training;

**(bb)** substance abuse treatment or mental health treatment, determined to be necessary and documented by a qualified medical, substance abuse, or mental health professional; and

**(cc)** rehabilitation activities, supervised by a public agency or other responsible party on an ongoing basis.

**(VII)** Structured programs and embedded activities--

**(aa)** in which adults perform work for the direct benefit of the community under the auspices of public or nonprofit organizations;

**(bb)** that are limited to projects that serve useful community purposes in fields such as health, social service, environmental protection, education, urban and rural redevelopment, welfare, recreation, public facilities, public safety, and child care;

**(cc)** that are designed to improve the employability of adults not otherwise able to obtain unsubsidized employment;

**(dd)** that are supervised on an ongoing basis; and

**(ee)** with respect to which a State agency takes into account, to the maximum extent practicable, the prior training, experience, and skills of a recipient in making appropriate community service assignments.

GOV000193

**(VIII)** Career and technical training programs that are--

    **(aa)** directly related to the preparation of adults for employment in current or emerging occupations; and

    **(bb)** supervised on an ongoing basis.

**(IX)** Training or education for job skills that are--

    **(aa)** required by an employer to provide an adult with the ability to obtain employment or to advance or adapt to the changing demands of the workplace; and

    **(bb)** supervised on an ongoing basis.

**(X)** Education that is--

    **(aa)** related to a specific occupation, job, or job offer; and

    **(bb)** supervised on an ongoing basis.

**(XI)** In the case of an adult who has not completed secondary school or received a certificate of general equivalence, regular attendance that is--

    **(aa)** in accordance with the requirements of the secondary school or course of study, at a secondary school or in a course of study leading to a certificate of general equivalence; and

    **(bb)** supervised on an ongoing basis.

**(XII)** Providing child care to enable another recipient of public benefits to participate in a community service program that--

    **(aa)** does not provide compensation for the community service;

    **(bb)** is a structured program designed to improve the employability of adults who participate in the program; and

    **(cc)** is supervised on an ongoing basis.

**(v) Sanctions**

GOV000194

Subject to clause (vi), no work registrant shall be eligible to participate in the supplemental nutrition assistance program if the individual refuses without good cause to participate in an employment and training program under this subparagraph, to the extent required by the State agency.

### (vi) Standards

#### (I) In general

Employment and training activities under this subparagraph shall be considered to be carried out under section 2015(d) of this title, including for the purpose of satisfying any conditions of participation and duration of ineligibility.

#### (II) Standards for certain employment activities

The Secretary shall establish standards for employment activities described in subclauses (I), (II), and (III) of clause (iv) that ensure that failure to work for reasons beyond the control of an individual, such as involuntary reduction in hours of employment, shall not result in ineligibility.

#### (III) Participation in other programs

Before assigning a work registrant to mandatory employment and training activities, a State agency shall--

**(aa)** assess whether the work registrant is participating in substantial employment and training activities outside of the pilot project that are expected to result in the work registrant gaining increased skills, training, work, or experience consistent with the objectives of the pilot project; and

**(bb)** if determined to be acceptable, count hours engaged in the activities toward any minimum participation requirement.

### (vii) Evaluation and reporting

#### (I) Independent evaluation

##### (aa) In general

The Secretary shall, under such terms and conditions as the Secretary determines to be appropriate, conduct for each State agency that enters into a cooperative agreement under clause (i) an independent longitudinal evaluation of each pilot project of the State agency under this subparagraph, with results reported not less frequently than in consecutive 12-month increments.

##### (bb) Purpose

GOV000195

The purpose of the independent evaluation shall be to measure the impact of employment and training programs and services provided by each State agency under the pilot projects on the ability of adults in each pilot project target population to find and retain employment that leads to increased household income and reduced reliance on public assistance, as well as other measures of household well-being, compared to what would have occurred in the absence of the pilot project.

**(cc) Methodology**

The independent evaluation shall use valid statistical methods that can determine, for each pilot project, the difference, if any, between supplemental nutrition assistance and other public benefit receipt expenditures, employment, earnings and other impacts as determined by the Secretary--

**(AA)** as a result of the employment and training programs and services provided by the State agency under the pilot project; as compared to

**(BB)** a control group that is not subject to the employment and training programs and services provided by the State agency under the pilot project.

**(II) Reporting**

Not later than December 31, 2015, and each December 31 thereafter until the completion of the last evaluation under subclause (I), the Secretary shall submit to the Committee on Agriculture of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry of the Senate and share broadly, including by posting on the Internet website of the Department of Agriculture, a report that includes a description of--

**(aa)** the status of each pilot project carried out under this subparagraph;

**(bb)** the results of the evaluation completed during the previous fiscal year;

**(cc)** to the maximum extent practicable, baseline information relevant to the stated goals and desired outcomes of the pilot project;

**(dd)** the employment and training programs and services each State tested under the pilot, including--

**(AA)** the system of the State for assessing the ability of work registrants to participate in and meet the requirements of employment and training activities and assigning work registrants to appropriate activities; and

**(BB)** the employment and training activities and services provided under the pilot;

GOV000196

**(ee)** the impact of the employment and training programs and services on appropriate employment, income, and public benefit receipt as well as other outcomes among households participating in the pilot project, relative to households not participating; and

**(ff)** the steps and funding necessary to incorporate into State employment and training programs and services the components of the pilot projects that demonstrate increased employment and earnings.

**(viii) Funding**

**(I) In general**

Subject to subclause (II), from amounts made available under section 2027(a)(1) of this title, the Secretary shall use to carry out this subparagraph--

**(aa)** for fiscal year 2014, $10,000,000; and

**(bb)** for fiscal year 2015, $190,000,000.

**(II) Limitations**

**(aa) In general**

The Secretary shall not fund more than 10 pilot projects under this subparagraph.

**(bb) Duration**

Each pilot project shall be in effect for not more than 3 years.

**(III) Availability of funds**

Funds made available under subclause (I) shall remain available through September 30, 2018.

**(ix) Use of funds**

**(I) In general**

Funds made available under this subparagraph for pilot projects shall be used only for--

**(aa)** pilot projects that comply with this chapter;

GOV000197

**(bb)** the program and administrative costs of carrying out the pilot projects;

**(cc)** the costs incurred in developing systems and providing information and data for the independent evaluations under clause (vii); and

**(dd)** the costs of the evaluations under clause (vii).

**(II) Maintenance of effort**

Funds made available under this subparagraph shall be used only to supplement, not to supplant, non-Federal funds used for existing employment and training activities or services.

**(III) Other funds**

In carrying out pilot projects, States may contribute additional funds obtained from other sources, including Federal, State, or private funds, on the condition that the use of the contributions is permissible under Federal law.

**(2)** If, in carrying out such program during such fiscal year, a State agency incurs costs that exceed the amount allocated to the State agency under paragraph (1), the Secretary shall pay such State agency an amount equal to 50 per centum of such additional costs, subject to the first limitation in paragraph (3), including the costs for case management and casework to facilitate the transition from economic dependency to self-sufficiency through work.

**(3)** The Secretary shall also reimburse each State agency in an amount equal to 50 per centum of the total amount of payments made or costs incurred by the State agency in connection with transportation costs and other expenses reasonably necessary and directly related to participation in an employment and training program under section 2015(d)(4) of this title or a pilot project under paragraph (1)(F), except that the amount of the reimbursement for dependent care expenses shall not exceed an amount equal to the payment made under section 2015(d)(4)(I)(i)(II) of this title but not more than the applicable local market rate, and such reimbursement shall not be made out of funds allocated under paragraph (1).

**(4)** Funds provided to a State agency under this subsection may be used only for operating an employment and training program under section 2015(d)(4) of this title or a pilot project under paragraph (1)(F), and may not be used for carrying out other provisions of this chapter.

**(5) Monitoring**

**(A) In general**

The Secretary shall monitor the employment and training programs carried out by State agencies under section 2015(d)(4) of this title and assess the effectiveness of the programs in--

GOV000198

**(i)** preparing members of households participating in the supplemental nutrition assistance program for employment, including the acquisition of basic skills necessary for employment; and

**(ii)** increasing the number of household members who obtain and retain employment subsequent to participation in the employment and training programs.

**(B) Reporting measures**

**(i) In general**

The Secretary, in consultation with the Secretary of Labor, shall develop State reporting measures that identify improvements in the skills, training, education, or work experience of members of households participating in the supplemental nutrition assistance program.

**(ii) Requirements**

Measures shall--

   **(I)** be based on common measures of performance for Federal workforce training programs; and

   **(II)** include additional indicators that reflect the challenges facing the types of members of households participating in the supplemental nutrition assistance program who participate in a specific employment and training component.

**(iii) State requirements**

The Secretary shall require that each State employment and training plan submitted under section 2020(e)(19) of this title identifies appropriate reporting measures for each proposed component that serves a threshold number of participants determined by the Secretary of at least 100 people a year.

**(iv) Inclusions**

Reporting measures described in clause (iii) may include--

   **(I)** the percentage and number of program participants who received employment and training services and are in unsubsidized employment subsequent to the receipt of those services;

   **(II)** the percentage and number of program participants who obtain a recognized credential, including a registered apprenticeship, or a regular secondary school diploma or its recognized equivalent, while participating in, or within 1 year after receiving, employment and training services;

GOV000199

**(III)** the percentage and number of program participants who are in an education or training program that is intended to lead to a recognized credential, including a registered apprenticeship or on-the-job training program, a regular secondary school diploma or its recognized equivalent, or unsubsidized employment;

**(IV)** subject to terms and conditions established by the Secretary, measures developed by each State agency to assess the skills acquisition of employment and training program participants that reflect the goals of the specific employment and training program components of the State agency, which may include, at a minimum--

**(aa)** the percentage and number of program participants who are meeting program requirements in each component of the education and training program of the State agency;

**(bb)** the percentage and number of program participants who are gaining skills likely to lead to employment as measured through testing, quantitative or qualitative assessment, or other method; and

**(cc)** the percentage and number of program participants who do not comply with employment and training requirements and who are ineligible under section 2015(b) of this title; and

**(V)** other indicators approved by the Secretary.

**(v) State option**

The State agency may report relevant data from a workforce partnership carried out under section 2015(d)(4)(N) of this title to demonstrate the number of program participants served by the workforce partnership.

**(C) Oversight of State employment and training activities**

The Secretary shall assess State employment and training programs on a periodic basis to ensure--

**(i)** compliance with Federal employment and training program rules and regulations;

**(ii)** that program activities are appropriate to meet the needs of the individuals referred by the State agency to an employment and training program component;

**(iii)** that reporting measures are appropriate to identify improvements in skills, training, work and experience for participants in an employment and training program component; and

**(iv)** for States receiving additional allocations under paragraph (1)(E), any information the Secretary may require to evaluate the compliance of the State agency with paragraph (1), which may include--

GOV000200

(I) a report for each fiscal year of the number of individuals in the State who meet the conditions of paragraph (1)(E)(ii), the number of individuals the State agency offers a position in a program described in subparagraph (B) or (C) of section 2015(o)(2) of this title, and the number who participate in such a program;

(II) a description of the types of employment and training programs the State agency uses to comply with paragraph (1)(E) and the availability of those programs throughout the State; and

(III) any additional information the Secretary determines to be appropriate.

**(D) State report**

Each State agency shall annually prepare and submit to the Secretary a report on the State employment and training program that includes, using measures identified under subparagraph (B), the numbers of supplemental nutrition assistance program participants who have gained skills, training, work, or experience that will increase the ability of the participants to obtain regular employment.

**(E) Modifications to the State employment and training plan**

Subject to terms and conditions established by the Secretary, if the Secretary determines that the performance of a State agency with respect to employment and training outcomes is inadequate, the Secretary may require the State agency to make modifications to the State employment and training plan to improve the outcomes.

**(F) Periodic evaluation**

Subject to terms and conditions established by the Secretary, not later than October 1, 2016, and not less frequently than once every 5 years thereafter, the Secretary shall conduct a study to review existing practice and research to identify employment and training program components and practices that--

(i) effectively assist members of households participating in the supplemental nutrition assistance program in gaining skills, training, work, or experience that will increase the ability of the participants to obtain regular employment; and

(ii) are best integrated with statewide workforce development systems.

**(i) Geographical error-prone profiles**

**(1)** The Department of Agriculture may use quality control information made available under this section to determine which project areas have payment error rates (as defined in subsection (d)(1)) that impair the integrity of the supplemental nutrition assistance program.

GOV000201

**(2)** The Secretary may require a State agency to carry out new or modified procedures for the certification of households in areas identified under paragraph (1) if the Secretary determines such procedures would improve the integrity of the supplemental nutrition assistance program and be cost effective.

**(j) Training materials regarding certification of farming households**

Not later than 180 days after September 19, 1988, and annually thereafter, the Secretary shall publish instructional materials specifically designed to be used by the State agency to provide intensive training to State agency personnel who undertake the certification of households that include a member who engages in farming.

**(k) Reductions in payments for administrative costs**

**(1) Definitions**

In this subsection:

**(A) AFDC program**

The term "AFDC program" means the program of aid to families with dependent children established under part A of title IV of the Social Security Act (42 U.S.C. 601 et seq. (as in effect, with respect to a State, during the base period for that State)).

**(B) Base period**

The term "base period" means the period used to determine the amount of the State family assistance grant for a State under section 403 of the Social Security Act (42 U.S.C. 603).

**(C) Medicaid program**

The term "medicaid program" means the program of medical assistance under a State plan or under a waiver of the plan under title XIX of the Social Security Act (42 U.S.C. 1396 et seq.).

**(2) Determinations of amounts attributable to benefiting programs**

Not later than 180 days after June 23, 1998, the Secretary of Health and Human Services, in consultation with the Secretary of Agriculture and the States, shall, with respect to the base period for each State, determine--

**(A)** the annualized amount the State received under section 403(a)(3) of the Social Security Act (42 U.S.C. 603(a)(3) (as in effect during the base period)) for administrative costs common to determining the eligibility of individuals, families, and households eligible or applying for the AFDC program and the supplemental nutrition assistance program, the AFDC program and the medicaid program, and the AFDC program, the supplemental nutrition assistance program, and the medicaid program that were allocated to the AFDC program; and

**(B)** the annualized amount the State would have received under section 403(a)(3) of the Social Security Act (42 U.S.C. 603(a)(3) (as so in effect)), section 1903(a)(7) of the Social Security Act (42 U.S.C. 1396b(a)(7) (as so in effect)), and subsection (a) of this section (as so in effect), for administrative costs common to determining the eligibility of individuals, families, and households eligible or applying for the AFDC program and the supplemental nutrition assistance program, the AFDC program and the medicaid program, and the AFDC program, the supplemental nutrition assistance program, and the medicaid program, if those costs had been allocated equally among such programs for which the individual, family, or household was eligible or applied for.

## (3) Reduction in payment

### (A) In general

Notwithstanding any other provision of this section, the Secretary shall reduce, for each fiscal year, the amount paid under subsection (a) to each State by an amount equal to the amount determined for the supplemental nutrition assistance program under paragraph (2)(B). The Secretary shall, to the extent practicable, make the reductions required by this paragraph on a quarterly basis.

### (B) Application

If the Secretary of Health and Human Services does not make the determinations required by paragraph (2) by September 30, 1999--

**(i)** during the fiscal year in which the determinations are made, the Secretary shall reduce the amount paid under subsection (a) to each State by an amount equal to the sum of the amounts determined for the supplemental nutrition assistance program under paragraph (2)(B) for fiscal year 1999 through the fiscal year during which the determinations are made; and

**(ii)** for each subsequent fiscal year, subparagraph (A) applies.

## (4) Appeal of determinations

### (A) In general

Not later than 5 days after the date on which the Secretary of Health and Human Services makes any determination required by paragraph (2) with respect to a State, the Secretary shall notify the chief executive officer of the State of the determination.

### (B) Review by administrative law judge

#### (i) In general

GOV000203

Not later than 60 days after the date on which a State receives notice under subparagraph (A) of a determination, the State may appeal the determination, in whole or in part, to an administrative law judge of the Department of Health and Human Services by filing an appeal with the administrative law judge.

**(ii) Documentation**

The administrative law judge shall consider an appeal filed by a State under clause (i) on the basis of such documentation as the State may submit and as the administrative law judge may require to support the final decision of the administrative law judge.

**(iii) Review**

In deciding whether to uphold a determination, in whole or in part, the administrative law judge shall conduct a thorough review of the issues and take into account all relevant evidence.

**(iv) Deadline**

Not later than 60 days after the date on which the record is closed, the administrative law judge shall--

**(I)** make a final decision with respect to an appeal filed under clause (i); and

**(II)** notify the chief executive officer of the State of the decision.

**(C) Review by Departmental Appeals Board**

**(i) In general**

Not later than 30 days after the date on which a State receives notice under subparagraph (B) of a final decision, the State may appeal the decision, in whole or in part, to the Departmental Appeals Board established in the Department of Health and Human Services (referred to in this paragraph as the "Board") by filing an appeal with the Board.

**(ii) Review**

The Board shall review the decision on the record.

**(iii) Deadline**

Not later than 60 days after the date on which the appeal is filed, the Board shall--

**(I)** make a final decision with respect to an appeal filed under clause (i); and

GOV000204

**(II)** notify the chief executive officer of the State of the decision.

**(D) Judicial review**

The determinations of the Secretary of Health and Human Services under paragraph (2), and a final decision of the administrative law judge or Board under subparagraphs (B) and (C), respectively, shall not be subject to judicial review.

**(E) Reduced payments pending appeal**

The pendency of an appeal under this paragraph shall not affect the requirement that the Secretary reduce payments in accordance with paragraph (3).

**(5) Allocation of administrative costs**

**(A) In general**

No funds or expenditures described in subparagraph (B) may be used to pay for costs--

**(i)** eligible for reimbursement under subsection (a) (or costs that would have been eligible for reimbursement but for this subsection); and

**(ii)** allocated for reimbursement to the supplemental nutrition assistance program under a plan submitted by a State to the Secretary of Health and Human Services to allocate administrative costs for public assistance programs.

**(B) Funds and expenditures**

Subparagraph (A) applies to--

**(i)** funds made available to carry out part A of title IV, or title XX, of the Social Security Act (42 U.S.C. 601 et seq., 1397 et seq.);

**(ii)** expenditures made as qualified State expenditures (as defined in section 409(a)(7)(B) of that Act (42 U.S.C. 609(a)(7)(B)));

**(iii)** any other Federal funds (except funds provided under subsection (a)); and

**(iv)** any other State funds that are--

**(I)** expended as a condition of receiving Federal funds; or

GOV000205

**(II)** used to match Federal funds under a Federal program other than the supplemental nutrition assistance program.

## CREDIT(S)

(Pub.L. 88-525, § 16, Aug. 31, 1964, 78 Stat. 709; Pub.L. 90-91 §§ 1, 2, Sept. 27, 1967, 81 Stat. 228; Pub.L. 90-552, Oct. 8, 1968, 82 Stat. 958; Pub.L. 91-116, Nov. 13, 1969, 83 Stat. 191; Pub.L. 91-671, § 9, Jan. 11, 1971, 84 Stat. 2052; Pub.L. 93-86, § 3(j), Aug. 10, 1973, 87 Stat. 248; Pub.L. 95-113, Title XIII, § 1301, Sept. 29, 1977, 91 Stat. 976; Pub.L. 96-58, §§ 4, 6, Aug. 14, 1979, 93 Stat. 391; Pub.L. 96-249, Title I, §§ 121, 125, 126, 128, 129, May 26, 1980, 94 Stat. 363, 364, 367; Pub.L. 97-35, Title I, §§ 111(b), 114, Aug. 13, 1981, 95 Stat. 362, 363; Pub.L. 97-98, Title XIII, §§ 1325 to 1327, Dec. 22, 1981, 95 Stat. 1289; Pub.L. 97-253, Title I, §§ 179, 180(a), 189(b)(3), (c), Sept. 8, 1982, 96 Stat. 782, 787; Pub.L. 99-198, Title XV, §§ 1517(c), 1524, 1535(c)(1), 1537(a), 1539, Dec. 23, 1985, 99 Stat. 1577, 1580, 1585, 1588; Pub.L. 99-603, Title I, § 121(b)(5), Nov. 6, 1986, 100 Stat. 3391; Pub.L. 100-77, Title VIII, § 808(b), July 22, 1987, 101 Stat. 536; Pub.L. 100-435, Title II, § 204(b), Title III, § 321(b), (c), Title IV, § 404(e), (g), Title VI, § 604, Sept. 19, 1988, 102 Stat. 1657, 1662, 1668, 1675; Pub.L. 101-624, Title XVII, §§ 1750, 1752(a), 1753, Nov. 28, 1990, 104 Stat. 3797, 3798; Pub.L. 102-237, Title IX, § 941(7), Dec. 13, 1991, 105 Stat. 1893; Pub.L. 103-66, Title XIII, §§ 13922(c), 13951(c), 13961, Aug. 10, 1993, 107 Stat. 675, 678, 679; Pub.L. 103-296, Title I, § 108(f)(2), Aug. 15, 1994, 108 Stat. 1487; Pub.L. 104-66, Title I, § 1011(j), Dec. 21, 1995, 109 Stat. 710; Pub.L. 104-127, Title IV, § 401(b), Apr. 4, 1996, 110 Stat. 1026; Pub.L. 104-193, Title I, § 109(c), Title VIII, §§ 817(b) to (d), 844(c), 847, 848(a), (b)(2), 849, Aug. 22, 1996, 110 Stat. 2169, 2319, 2320, 2333 to 2335; Pub.L. 105-33, Title I, § 1002(a), Aug. 5, 1997, 111 Stat. 251; Pub.L. 105-185, Title V, §§ 501, 502(a), June 23, 1998, 112 Stat. 575; Pub.L. 106-78, Title VII, § 758, Oct. 22, 1999, 113 Stat. 1172; Pub.L. 107-171, Title IV, §§ 4118(a), 4119(a), 4120(a), 4121(a), (d), 4122(a), May 13, 2002, 116 Stat. 316, 321, 323, 324; Pub.L. 110-234, Title IV, §§ 4001(b), 4002(a)(8), 4115(b)(11), 4121, 4122, 4406(a)(3), (4), May 22, 2008, 122 Stat. 1092, 1094, 1108, 1113, 1140; Pub.L. 110-246, § 4(a), Title IV, §§ 4001(b), 4002(a)(8), 4115(b)(11), 4121, 4122, 4406(a)(3), (4), June 18, 2008, 122 Stat. 1664, 1853, 1855, 1869, 1874, 1902; Pub.L. 112-240, Title VII, § 701(d)(1), Jan. 2, 2013, 126 Stat. 2363; Pub.L. 113-76, Div. A, Title VII, § 717, Jan. 17, 2014, 128 Stat. 36; Pub.L. 113-79, Title IV, §§ 4018(a), 4019, 4020(a), (b)(2) 4021, 4022(a), (b)(2), 4030(i), Feb. 7, 2014, 128 Stat. 797 to 799, 808, 814; Pub.L. 115-334, Title IV, §§ 4005(d), 4012, 4013(b) to (e), 4015(b), Dec. 20, 2018, 132 Stat. 4632, 4641 to 4643, 4648; Pub.L. 119-21, Title I, §§ 10101(b)(1), 10106, July 4, 2025, 139 Stat. 81, 85.)

Notes of Decisions (9)

7 U.S.C.A. § 2025, 7 USCA § 2025
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

GOV000206

PUBLIC LAW 119–21—JULY 4, 2025

GOV000207

139 STAT. 72          PUBLIC LAW 119–21—JULY 4, 2025

Public Law 119–21
119th Congress

# An Act

July 4, 2025
[H.R. 1]

To provide for reconciliation pursuant to title II of H. Con. Res. 14.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. TABLE OF CONTENTS.**

The table of contents of this Act is as follows:

Sec. 1.  Table of contents.

TITLE I—COMMITTEE ON AGRICULTURE, NUTRITION, AND FORESTRY

Subtitle A—Nutrition

Sec. 10101.  Re-evaluation of thrifty food plan.
Sec. 10102.  Modifications to SNAP work requirements for able-bodied adults.
Sec. 10103.  Availability of standard utility allowances based on receipt of energy assistance.
Sec. 10104.  Restrictions on internet expenses.
Sec. 10105.  Matching funds requirements.
Sec. 10106.  Administrative cost sharing.
Sec. 10107.  National education and obesity prevention grant program.
Sec. 10108.  Alien SNAP eligibility.

Subtitle B—Forestry

Sec. 10201.  Rescission of amounts for forestry.

Subtitle C—Commodities

Sec. 10301.  Effective reference price; reference price.
Sec. 10302.  Base acres.
Sec. 10303.  Producer election.
Sec. 10304.  Price loss coverage.
Sec. 10305.  Agriculture risk coverage.
Sec. 10306.  Equitable treatment of certain entities.
Sec. 10307.  Payment limitations.
Sec. 10308.  Adjusted gross income limitation.
Sec. 10309.  Marketing loans.
Sec. 10310.  Repayment of marketing loans.
Sec. 10311.  Economic adjustment assistance for textile mills.
Sec. 10312.  Sugar program updates.
Sec. 10313.  Dairy policy updates.
Sec. 10314.  Implementation.

Subtitle D—Disaster Assistance Programs

Sec. 10401.  Supplemental agricultural disaster assistance.

Subtitle E—Crop Insurance

Sec. 10501.  Beginning farmer and rancher benefit.
Sec. 10502.  Area-based crop insurance coverage and affordability.
Sec. 10503.  Administrative and operating expense adjustments.
Sec. 10504.  Premium support.
Sec. 10505.  Program compliance and integrity.
Sec. 10506.  Reviews, compliance, and integrity.
Sec. 10507.  Poultry insurance pilot program.

Subtitle F—Additional Investments in Rural America

Sec. 10601.  Conservation.

GOV000208

Sec. 10602. Supplemental agricultural trade promotion program.
Sec. 10603. Nutrition.
Sec. 10604. Research.
Sec. 10605. Energy.
Sec. 10606. Horticulture.
Sec. 10607. Miscellaneous.

TITLE II—COMMITTEE ON ARMED SERVICES

Sec. 20001. Enhancement of Department of Defense resources for improving the quality of life for military personnel.
Sec. 20002. Enhancement of Department of Defense resources for shipbuilding.
Sec. 20003. Enhancement of Department of Defense resources for integrated air and missile defense.
Sec. 20004. Enhancement of Department of Defense resources for munitions and defense supply chain resiliency.
Sec. 20005. Enhancement of Department of Defense resources for scaling low-cost weapons into production.
Sec. 20006. Enhancement of Department of Defense resources for improving the efficiency and cybersecurity of the Department of Defense.
Sec. 20007. Enhancement of Department of Defense resources for air superiority.
Sec. 20008. Enhancement of resources for nuclear forces.
Sec. 20009. Enhancement of Department of Defense resources to improve capabilities of United States Indo-Pacific Command.
Sec. 20010. Enhancement of Department of Defense resources for improving the readiness of the Department of Defense.
Sec. 20011. Improving Department of Defense border support and counter-drug missions.
Sec. 20012. Department of Defense oversight.
Sec. 20013. Military construction projects authorized.

TITLE III—COMMITTEE ON BANKING, HOUSING, AND URBAN AFFAIRS

Sec. 30001. Funding cap for the Bureau of Consumer Financial Protection.
Sec. 30002. Rescission of funds for Green and Resilient Retrofit Program for Multi-family Housing.
Sec. 30003. Securities and Exchange Commission Reserve Fund.
Sec. 30004. Appropriations for Defense Production Act.

TITLE IV—COMMITTEE ON COMMERCE, SCIENCE, AND TRANSPORTATION

Sec. 40001. Coast Guard mission readiness.
Sec. 40002. Spectrum auctions.
Sec. 40003. Air traffic control improvements.
Sec. 40004. Space launch and reentry licensing and permitting user fees.
Sec. 40005. Mars missions, Artemis missions, and Moon to Mars program.
Sec. 40006. Corporate average fuel economy civil penalties.
Sec. 40007. Payments for lease of Metropolitan Washington Airports.
Sec. 40008. Rescission of certain amounts for the National Oceanic and Atmospheric Administration.
Sec. 40009. Reduction in annual transfers to Travel Promotion Fund.
Sec. 40010. Treatment of unobligated funds for alternative fuel and low-emission aviation technology.
Sec. 40011. Rescission of amounts appropriated to Public Wireless Supply Chain Innovation Fund.

TITLE V—COMMITTEE ON ENERGY AND NATURAL RESOURCES

Subtitle A—Oil and Gas Leasing

Sec. 50101. Onshore oil and gas leasing.
Sec. 50102. Offshore oil and gas leasing.
Sec. 50103. Royalties on extracted methane.
Sec. 50104. Alaska oil and gas leasing.
Sec. 50105. National Petroleum Reserve–Alaska.

Subtitle B—Mining

Sec. 50201. Coal leasing.
Sec. 50202. Coal royalty.
Sec. 50203. Leases for known recoverable coal resources.
Sec. 50204. Authorization to mine Federal coal.

Subtitle C—Lands

Sec. 50301. Timber sales and long-term contracting for the Forest Service and the Bureau of Land Management.

GOV000209

139 STAT. 74          PUBLIC LAW 119–21—JULY 4, 2025

Sec. 50302. Renewable energy fees on Federal land.
Sec. 50303. Renewable energy revenue sharing.
Sec. 50304. Rescission of National Park Service and Bureau of Land Management funds.
Sec. 50305. Celebrating America's 250th anniversary.

Subtitle D—Energy

Sec. 50401. Strategic Petroleum Reserve.
Sec. 50402. Repeals; rescissions.
Sec. 50403. Energy dominance financing.
Sec. 50404. Transformational artificial intelligence models.

Subtitle E—Water

Sec. 50501. Water conveyance and surface water storage enhancement.

TITLE VI—COMMITTEE ON ENVIRONMENT AND PUBLIC WORKS

Sec. 60001. Rescission of funding for clean heavy-duty vehicles.
Sec. 60002. Repeal of Greenhouse Gas Reduction Fund.
Sec. 60003. Rescission of funding for diesel emissions reductions.
Sec. 60004. Rescission of funding to address air pollution.
Sec. 60005. Rescission of funding to address air pollution at schools.
Sec. 60006. Rescission of funding for the low emissions electricity program.
Sec. 60007. Rescission of funding for section 211(o) of the Clean Air Act.
Sec. 60008. Rescission of funding for implementation of the American Innovation and Manufacturing Act.
Sec. 60009. Rescission of funding for enforcement technology and public information.
Sec. 60010. Rescission of funding for greenhouse gas corporate reporting.
Sec. 60011. Rescission of funding for environmental product declaration assistance.
Sec. 60012. Rescission of funding for methane emissions and waste reduction incentive program for petroleum and natural gas systems.
Sec. 60013. Rescission of funding for greenhouse gas air pollution plans and implementation grants.
Sec. 60014. Rescission of funding for environmental protection agency efficient, accurate, and timely reviews.
Sec. 60015. Rescission of funding for low-embodied carbon labeling for construction materials.
Sec. 60016. Rescission of funding for environmental and climate justice block grants.
Sec. 60017. Rescission of funding for ESA recovery plans.
Sec. 60018. Rescission of funding for environmental and climate data collection.
Sec. 60019. Rescission of neighborhood access and equity grant program.
Sec. 60020. Rescission of funding for Federal building assistance.
Sec. 60021. Rescission of funding for low-carbon materials for Federal buildings.
Sec. 60022. Rescission of funding for GSA emerging and sustainable technologies.
Sec. 60023. Rescission of environmental review implementation funds.
Sec. 60024. Rescission of low-carbon transportation materials grants.
Sec. 60025. John F. Kennedy Center for the Performing Arts.
Sec. 60026. Project sponsor opt-in fees for environmental reviews.

TITLE VII—FINANCE

Subtitle A—Tax

Sec. 70001. References to the Internal Revenue Code of 1986, etc.

CHAPTER 1—PROVIDING PERMANENT TAX RELIEF FOR MIDDLE-CLASS FAMILIES AND WORKERS

Sec. 70101. Extension and enhancement of reduced rates.
Sec. 70102. Extension and enhancement of increased standard deduction.
Sec. 70103. Termination of deduction for personal exemptions other than temporary senior deduction.
Sec. 70104. Extension and enhancement of increased child tax credit.
Sec. 70105. Extension and enhancement of deduction for qualified business income.
Sec. 70106. Extension and enhancement of increased estate and gift tax exemption amounts.
Sec. 70107. Extension of increased alternative minimum tax exemption amounts and modification of phaseout thresholds.
Sec. 70108. Extension and modification of limitation on deduction for qualified residence interest.
Sec. 70109. Extension and modification of limitation on casualty loss deduction.

GOV000210

Sec. 70110. Termination of miscellaneous itemized deductions other than educator expenses.
Sec. 70111. Limitation on tax benefit of itemized deductions.
Sec. 70112. Extension and modification of qualified transportation fringe benefits.
Sec. 70113. Extension and modification of limitation on deduction and exclusion for moving expenses.
Sec. 70114. Extension and modification of limitation on wagering losses.
Sec. 70115. Extension and enhancement of increased limitation on contributions to ABLE accounts.
Sec. 70116. Extension and enhancement of savers credit allowed for ABLE contributions.
Sec. 70117. Extension of rollovers from qualified tuition programs to ABLE accounts permitted.
Sec. 70118. Extension of treatment of certain individuals performing services in the Sinai Peninsula and enhancement to include additional areas.
Sec. 70119. Extension and modification of exclusion from gross income of student loans discharged on account of death or disability.
Sec. 70120. Limitation on individual deductions for certain state and local taxes, etc.

CHAPTER 2—DELIVERING ON PRESIDENTIAL PRIORITIES TO PROVIDE NEW MIDDLE-CLASS TAX RELIEF

Sec. 70201. No tax on tips.
Sec. 70202. No tax on overtime.
Sec. 70203. No tax on car loan interest.
Sec. 70204. Trump accounts and contribution pilot program.

CHAPTER 3—ESTABLISHING CERTAINTY AND COMPETITIVENESS FOR AMERICAN JOB CREATORS

SUBCHAPTER A—PERMANENT U.S. BUSINESS TAX REFORM AND BOOSTING DOMESTIC INVESTMENT

Sec. 70301. Full expensing for certain business property.
Sec. 70302. Full expensing of domestic research and experimental expenditures.
Sec. 70303. Modification of limitation on business interest.
Sec. 70304. Extension and enhancement of paid family and medical leave credit.
Sec. 70305. Exceptions from limitations on deduction for business meals.
Sec. 70306. Increased dollar limitations for expensing of certain depreciable business assets.
Sec. 70307. Special depreciation allowance for qualified production property.
Sec. 70308. Enhancement of advanced manufacturing investment credit.
Sec. 70309. Spaceports are treated like airports under exempt facility bond rules.

SUBCHAPTER B—PERMANENT AMERICA-FIRST INTERNATIONAL TAX REFORMS

PART I—FOREIGN TAX CREDIT

Sec. 70311. Modifications related to foreign tax credit limitation.
Sec. 70312. Modifications to determination of deemed paid credit for taxes properly attributable to tested income.
Sec. 70313. Sourcing certain income from the sale of inventory produced in the United States.

PART II—FOREIGN-DERIVED DEDUCTION ELIGIBLE INCOME AND NET CFC TESTED INCOME

Sec. 70321. Modification of deduction for foreign-derived deduction eligible income and net CFC tested income.
Sec. 70322. Determination of deduction eligible income.
Sec. 70323. Rules related to deemed intangible income.

PART III—BASE EROSION MINIMUM TAX

Sec. 70331. Extension and modification of base erosion minimum tax amount.

PART IV—BUSINESS INTEREST LIMITATION

Sec. 70341. Coordination of business interest limitation with interest capitalization provisions.
Sec. 70342. Definition of adjusted taxable income for business interest limitation.

PART V—OTHER INTERNATIONAL TAX REFORMS

Sec. 70351. Permanent extension of look-thru rule for related controlled foreign corporations.

Sec. 70352. Repeal of election for 1-month deferral in determination of taxable year of specified foreign corporations.
Sec. 70353. Restoration of limitation on downward attribution of stock ownership in applying constructive ownership rules.
Sec. 70354. Modifications to pro rata share rules.

CHAPTER 4—INVESTING IN AMERICAN FAMILIES, COMMUNITIES, AND SMALL BUSINESSES

SUBCHAPTER A—PERMANENT INVESTMENTS IN FAMILIES AND CHILDREN

Sec. 70401. Enhancement of employer-provided child care credit.
Sec. 70402. Enhancement of adoption credit.
Sec. 70403. Recognizing Indian tribal governments for purposes of determining whether a child has special needs for purposes of the adoption credit.
Sec. 70404. Enhancement of the dependent care assistance program.
Sec. 70405. Enhancement of child and dependent care tax credit.

SUBCHAPTER B—PERMANENT INVESTMENTS IN STUDENTS AND REFORMS TO TAX-EXEMPT INSTITUTIONS

Sec. 70411. Tax credit for contributions of individuals to scholarship granting organizations.
Sec. 70412. Exclusion for employer payments of student loans.
Sec. 70413. Additional expenses treated as qualified higher education expenses for purposes of 529 accounts.
Sec. 70414. Certain postsecondary credentialing expenses treated as qualified higher education expenses for purposes of 529 accounts.
Sec. 70415. Modification of excise tax on investment income of certain private colleges and universities.
Sec. 70416. Expanding application of tax on excess compensation within tax-exempt organizations.

SUBCHAPTER C—PERMANENT INVESTMENTS IN COMMUNITY DEVELOPMENT

Sec. 70421. Permanent renewal and enhancement of opportunity zones.
Sec. 70422. Permanent enhancement of low-income housing tax credit.
Sec. 70423. Permanent extension of new markets tax credit.
Sec. 70424. Permanent and expanded reinstatement of partial deduction for charitable contributions of individuals who do not elect to itemize.
Sec. 70425. 0.5 percent floor on deduction of contributions made by individuals.
Sec. 70426. 1-percent floor on deduction of charitable contributions made by corporations.
Sec. 70427. Permanent increase in limitation on cover over of tax on distilled spirits.
Sec. 70428. Nonprofit community development activities in remote native villages.
Sec. 70429. Adjustment of charitable deduction for certain expenses incurred in support of Native Alaskan subsistence whaling.
Sec. 70430. Exception to percentage of completion method of accounting for certain residential construction contracts.

SUBCHAPTER D—PERMANENT INVESTMENTS IN SMALL BUSINESS AND RURAL AMERICA

Sec. 70431. Expansion of qualified small business stock gain exclusion.
Sec. 70432. Repeal of revision to de minimis rules for third party network transactions.
Sec. 70433. Increase in threshold for requiring information reporting with respect to certain payees.
Sec. 70434. Treatment of certain qualified sound recording productions.
Sec. 70435. Exclusion of interest on loans secured by rural or agricultural real property.
Sec. 70436. Reduction of transfer and manufacturing taxes for certain devices.
Sec. 70437. Treatment of capital gains from the sale of certain farmland property.
Sec. 70438. Extension of rules for treatment of certain disaster-related personal casualty losses.
Sec. 70439. Restoration of taxable REIT subsidiary asset test.

CHAPTER 5—ENDING GREEN NEW DEAL SPENDING, PROMOTING AMERICA-FIRST ENERGY, AND OTHER REFORMS

SUBCHAPTER A—TERMINATION OF GREEN NEW DEAL SUBSIDIES

Sec. 70501. Termination of previously-owned clean vehicle credit.
Sec. 70502. Termination of clean vehicle credit.
Sec. 70503. Termination of qualified commercial clean vehicles credit.

GOV000212

Sec. 70504. Termination of alternative fuel vehicle refueling property credit.
Sec. 70505. Termination of energy efficient home improvement credit.
Sec. 70506. Termination of residential clean energy credit.
Sec. 70507. Termination of energy efficient commercial buildings deduction.
Sec. 70508. Termination of new energy efficient home credit.
Sec. 70509. Termination of cost recovery for energy property.
Sec. 70510. Modifications of zero-emission nuclear power production credit.
Sec. 70511. Termination of clean hydrogen production credit.
Sec. 70512. Termination and restrictions on clean electricity production credit.
Sec. 70513. Termination and restrictions on clean electricity investment credit.
Sec. 70514. Phase-out and restrictions on advanced manufacturing production credit.
Sec. 70515. Restriction on the extension of advanced energy project credit program.

SUBCHAPTER B—ENHANCEMENT OF AMERICA-FIRST ENERGY POLICY

Sec. 70521. Extension and modification of clean fuel production credit.
Sec. 70522. Restrictions on carbon oxide sequestration credit.
Sec. 70523. Intangible drilling and development costs taken into account for purposes of computing adjusted financial statement income.
Sec. 70524. Income from hydrogen storage, carbon capture, advanced nuclear, hydropower, and geothermal energy added to qualifying income of certain publicly traded partnerships.
Sec. 70525. Allow for payments to certain individuals who dye fuel.

SUBCHAPTER C—OTHER REFORMS

Sec. 70531. Modifications to de minimis entry privilege for commercial shipments.

CHAPTER 6—ENHANCING DEDUCTION AND INCOME TAX CREDIT GUARDRAILS, AND OTHER REFORMS

Sec. 70601. Modification and extension of limitation on excess business losses of noncorporate taxpayers.
Sec. 70602. Treatment of payments from partnerships to partners for property or services.
Sec. 70603. Excessive employee remuneration from controlled group members and allocation of deduction.
Sec. 70604. Excise tax on certain remittance transfers.
Sec. 70605. Enforcement provisions with respect to COVID-related employee retention credits.
Sec. 70606. Social security number requirement for American Opportunity and Lifetime Learning credits.
Sec. 70607. Task force on the replacement of Direct File.

Subtitle B—Health

CHAPTER 1—MEDICAID

SUBCHAPTER A—REDUCING FRAUD AND IMPROVING ENROLLMENT PROCESSES

Sec. 71101. Moratorium on implementation of rule relating to eligibility and enrollment in Medicare Savings Programs.
Sec. 71102. Moratorium on implementation of rule relating to eligibility and enrollment for Medicaid, CHIP, and the Basic Health Program.
Sec. 71103. Reducing duplicate enrollment under the Medicaid and CHIP programs.
Sec. 71104. Ensuring deceased individuals do not remain enrolled.
Sec. 71105. Ensuring deceased providers do not remain enrolled.
Sec. 71106. Payment reduction related to certain erroneous excess payments under Medicaid.
Sec. 71107. Eligibility redeterminations.
Sec. 71108. Revising home equity limit for determining eligibility for long-term care services under the Medicaid program.
Sec. 71109. Alien Medicaid eligibility.
Sec. 71110. Expansion FMAP for emergency Medicaid.

SUBCHAPTER B—PREVENTING WASTEFUL SPENDING

Sec. 71111. Moratorium on implementation of rule relating to staffing standards for long-term care facilities under the Medicare and Medicaid programs.
Sec. 71112. Reducing State Medicaid costs.
Sec. 71113. Federal payments to prohibited entities.

SUBCHAPTER C—STOPPING ABUSIVE FINANCING PRACTICES

Sec. 71114. Sunsetting increased FMAP incentive.

GOV000213

139 STAT. 78 PUBLIC LAW 119–21—JULY 4, 2025

Sec. 71115. Provider taxes.
Sec. 71116. State directed payments.
Sec. 71117. Requirements regarding waiver of uniform tax requirement for Medicaid provider tax.
Sec. 71118. Requiring budget neutrality for Medicaid demonstration projects under section 1115.

SUBCHAPTER D—INCREASING PERSONAL ACCOUNTABILITY

Sec. 71119. Requirement for States to establish Medicaid community engagement requirements for certain individuals.
Sec. 71120. Modifying cost sharing requirements for certain expansion individuals under the Medicaid program.

SUBCHAPTER E—EXPANDING ACCESS TO CARE

Sec. 71121. Making certain adjustments to coverage of home or community-based services under Medicaid.

CHAPTER 2—MEDICARE

SUBCHAPTER A—STRENGTHENING ELIGIBILITY REQUIREMENTS

Sec. 71201. Limiting Medicare coverage of certain individuals.

SUBCHAPTER B—IMPROVING SERVICES FOR SENIORS

Sec. 71202. Temporary payment increase under the medicare physician fee schedule to account for exceptional circumstances.
Sec. 71203. Expanding and clarifying the exclusion for orphan drugs under the Drug Price Negotiation Program.

CHAPTER 3—HEALTH TAX

SUBCHAPTER A—IMPROVING ELIGIBILITY CRITERIA

Sec. 71301. Permitting premium tax credit only for certain individuals.
Sec. 71302. Disallowing premium tax credit during periods of medicaid ineligibility due to alien status.

SUBCHAPTER B—PREVENTING WASTE, FRAUD, AND ABUSE

Sec. 71303. Requiring verification of eligibility for premium tax credit.
Sec. 71304. Disallowing premium tax credit in case of certain coverage enrolled in during special enrollment period.
Sec. 71305. Eliminating limitation on recapture of advance payment of premium tax credit.

SUBCHAPTER C—ENHANCING CHOICE FOR PATIENTS

Sec. 71306. Permanent extension of safe harbor for absence of deductible for telehealth services.
Sec. 71307. Allowance of bronze and catastrophic plans in connection with health savings accounts.
Sec. 71308. Treatment of direct primary care service arrangements.

CHAPTER 4—PROTECTING RURAL HOSPITALS AND PROVIDERS

Sec. 71401. Rural Health Transformation Program.

Subtitle C—Increase in Debt Limit

Sec. 72001. Modification of limitation on the public debt.

Subtitle D—Unemployment

Sec. 73001. Ending unemployment payments to jobless millionaires.

TITLE VIII—COMMITTEE ON HEALTH, EDUCATION, LABOR, AND PENSIONS

Subtitle A—Exemption of Certain Assets

Sec. 80001. Exemption of certain assets.

Subtitle B—Loan Limits

Sec. 81001. Establishment of loan limits for graduate and professional students and parent borrowers; termination of graduate and professional PLUS loans.

Subtitle C—Loan Repayment

Sec. 82001. Loan repayment.

GOV000214

PUBLIC LAW 119–21—JULY 4, 2025          139 STAT. 79

Sec. 82002. Deferment; forbearance.
Sec. 82003. Loan rehabilitation.
Sec. 82004. Public service loan forgiveness.
Sec. 82005. Student loan servicing.

Subtitle D—Pell Grants

Sec. 83001. Eligibility.
Sec. 83002. Workforce Pell Grants.
Sec. 83003. Pell shortfall.
Sec. 83004. Federal Pell Grant exclusion relating to other grant aid.

Subtitle E—Accountability

Sec. 84001. Ineligibility based on low earning outcomes.

Subtitle F—Regulatory Relief

Sec. 85001. Delay of rule relating to borrower defense to repayment.
Sec. 85002. Delay of rule relating to closed school discharges.

Subtitle G—Garden of Heroes

Sec. 86001. Garden of Heroes.

Subtitle H—Office of Refugee Resettlement

Sec. 87001. Potential sponsor vetting for unaccompanied alien children appropria-
          tion.

TITLE IX—COMMITTEE ON HOMELAND SECURITY AND GOVERNMENTAL
                    AFFAIRS

Subtitle A—Homeland Security Provisions

Sec. 90001. Border infrastructure and wall system.
Sec. 90002. U.S. Customs and Border Protection personnel, fleet vehicles, and fa-
          cilities.
Sec. 90003. Detention capacity.
Sec. 90004. Border security, technology, and screening.
Sec. 90005. State and local assistance.
Sec. 90006. Presidential residence protection.
Sec. 90007. Department of Homeland Security appropriations for border support.

Subtitle B—Governmental Affairs Provisions

Sec. 90101. FEHB improvements.
Sec. 90102. Pandemic Response Accountability Committee.
Sec. 90103. Appropriation for the Office of Management and Budget.

TITLE X—COMMITTEE ON THE JUDICIARY

Subtitle A—Immigration and Law Enforcement Matters

PART I—IMMIGRATION FEES

Sec. 100001. Applicability of the immigration laws.
Sec. 100002. Asylum fee.
Sec. 100003. Employment authorization document fees.
Sec. 100004. Immigration parole fee.
Sec. 100005. Special immigrant juvenile fee.
Sec. 100006. Temporary protected status fee.
Sec. 100007. Visa integrity fee.
Sec. 100008. Form I–94 fee.
Sec. 100009. Annual asylum fee.
Sec. 100010. Fee relating to renewal and extension of employment authorization for
          parolees.
Sec. 100011. Fee relating to renewal or extension of employment authorization for
          asylum applicants.
Sec. 100012. Fee relating to renewal and extension of employment authorization for
          aliens granted temporary protected status.
Sec. 100013. Fees relating to applications for adjustment of status.
Sec. 100014. Electronic System for Travel Authorization fee.
Sec. 100015. Electronic Visa Update System fee.
Sec. 100016. Fee for aliens ordered removed in absentia.
Sec. 100017. Inadmissible alien apprehension fee.
Sec. 100018. Amendment to authority to apply for asylum.

PART II—IMMIGRATION AND LAW ENFORCEMENT FUNDING

Sec. 100051. Appropriation for the Department of Homeland Security.

GOV000215

**139 STAT. 80**             PUBLIC LAW 119–21—JULY 4, 2025

Sec. 100052. Appropriation for U.S. Immigration and Customs Enforcement.
Sec. 100053. Appropriation for Federal Law Enforcement Training Centers.
Sec. 100054. Appropriation for the Department of Justice.
Sec. 100055. Bridging Immigration-related Deficits Experienced Nationwide Reimbursement Fund.
Sec. 100056. Appropriation for the Bureau of Prisons.
Sec. 100057. Appropriation for the United States Secret Service.

Subtitle B—Judiciary Matters

Sec. 100101. Appropriation to the Administrative Office of the United States Courts.
Sec. 100102. Appropriation to the Federal Judicial Center.

Subtitle C—Radiation Exposure Compensation Matters

Sec. 100201. Extension of fund.
Sec. 100202. Claims relating to atmospheric testing.
Sec. 100203. Claims relating to uranium mining.
Sec. 100204. Claims relating to Manhattan Project waste.
Sec. 100205. Limitations on claims.

# TITLE I—COMMITTEE ON AGRICULTURE, NUTRITION, AND FORESTRY

## Subtitle A—Nutrition

### SEC. 10101. RE-EVALUATION OF THRIFTY FOOD PLAN.

(a) IN GENERAL.—Section 3 of the Food and Nutrition Act of 2008 (7 U.S.C. 2012) is amended by striking subsection (u) and inserting the following:

"(u) THRIFTY FOOD PLAN.—

*Definition.*

"(1) IN GENERAL.—The term 'thrifty food plan' means the diet required to feed a family of 4 persons consisting of a man and a woman ages 20 through 50, a child ages 6 through 8, and a child ages 9 through 11 using the items and quantities of food described in the report of the Department of Agriculture entitled 'Thrifty Food Plan, 2021', and each successor report updated pursuant to this subsection, subject to the conditions that—

"(A) the relevant market baskets of the thrifty food plan shall only be changed pursuant to paragraph (4);

"(B) the cost of the thrifty food plan shall be the basis for uniform allotments for all households, regardless of the actual composition of the household; and

"(C) the cost of the thrifty food plan may only be adjusted in accordance with this subsection.

"(2) HOUSEHOLD ADJUSTMENTS.—The Secretary shall make household adjustments using the following ratios of household size as a percentage of the maximum 4-person allotment:

"(A) For a 1-person household, 30 percent.

"(B) For a 2-person household, 55 percent.

"(C) For a 3-person household, 79 percent.

"(D) For a 4-person household, 100 percent.

"(E) For a 5-person household, 119 percent.

"(F) For a 6-person household, 143 percent.

"(G) For a 7-person household, 158 percent.

"(H) For an 8-person household, 180 percent.

GOV000216

PUBLIC LAW 119–21—JULY 4, 2025          139 STAT. 81

"(I) For a household of 9 persons or more, an additional 22 percent per person, which additional percentage shall not total more than 200 percent.

"(3) ALLOWABLE COST ADJUSTMENTS.—The Secretary shall—

"(A) make cost adjustments in the thrifty food plan for Hawaii and the urban and rural parts of Alaska to reflect the cost of food in Hawaii and urban and rural Alaska;

<div style="float:right">Hawaii.<br>Alaska.</div>

"(B) make cost adjustments in the separate thrifty food plans for Guam and the Virgin Islands of the United States to reflect the cost of food in those States, but not to exceed the cost of food in the 50 States and the District of Columbia; and

<div style="float:right">Guam.<br>Virgin Islands.</div>

"(C) on October 1, 2025, and on each October 1 thereafter, adjust the cost of the thrifty food plan to reflect changes in the Consumer Price Index for All Urban Consumers, published by the Bureau of Labor Statistics of the Department of Labor, for the most recent 12-month period ending in June.

<div style="float:right">Effective dates.<br>Time period.<br>Expiration date.</div>

"(4) RE-EVALUATION OF MARKET BASKETS.—

"(A) RE-EVALUATION.—Not earlier than October 1, 2027, the Secretary may re-evaluate the market baskets of the thrifty food plan based on current food prices, food composition data, consumption patterns, and dietary guidance.

<div style="float:right">Deadline.</div>

"(B) COST NEUTRALITY.—The Secretary shall not increase the cost of the thrifty food plan based on a re-evaluation under this paragraph.".

(b) CONFORMING AMENDMENTS.—

(1) Section 16(c)(1)(A)(ii)(II) of the Food and Nutrition Act of 2008 (7 U.S.C. 2025(c)(1)(A)(ii)(II)) is amended by striking "section 3(u)(4)" and inserting "section 3(u)(3)".

(2) Section 19(a)(2)(A)(ii) of the Food and Nutrition Act of 2008 (7 U.S.C. 2028(a)(2)(A)(ii)) is amended by striking "section 3(u)(4)" and inserting "section 3(u)(3)".

(3) Section 27(a)(2) of the Food and Nutrition Act of 2008 (7 U.S.C. 2036(a)(2))) is amended by striking "section 3(u)(4)" each place it appears and inserting "section 3(u)(3)".

### SEC. 10102. MODIFICATIONS TO SNAP WORK REQUIREMENTS FOR ABLE-BODIED ADULTS.

(a) EXCEPTIONS.—Section 6(o) of the Food and Nutrition Act of 2008 (7 U.S.C. 2015(o)) is amended by striking paragraph (3) and inserting the following:

"(3) EXCEPTIONS.—Paragraph (2) shall not apply to an individual if the individual is—

"(A) under 18, or over 65, years of age;

"(B) medically certified as physically or mentally unfit for employment;

"(C) a parent or other member of a household with responsibility for a dependent child under 14 years of age;

"(D) otherwise exempt under subsection (d)(2);

"(E) a pregnant woman;

"(F) an Indian or an Urban Indian (as such terms are defined in paragraphs (13) and (28) of section 4 of the Indian Health Care Improvement Act); or

GOV000217

"(G) a California Indian described in section 809(a) of the Indian Health Care Improvement Act.".

(b) STANDARDIZING ENFORCEMENT.—Section 6(o)(4) of the Food and Nutrition Act of 2008 (7 U.S.C. 2015(o)(4)) is amended—

(1) in subparagraph (A), by striking clause (ii) and inserting the following:

"(ii) is in a noncontiguous State and has an unemployment rate that is at or above 1.5 times the national unemployment rate."; and

(2) by adding at the end the following:

"(C) DEFINITION OF NONCONTIGUOUS STATE.—

"(i) IN GENERAL.—In this paragraph, the term 'noncontiguous State' means a State that is not 1 of the contiguous 48 States or the District of Columbia.

"(ii) EXCLUSIONS.—The term 'noncontiguous State' does not include Guam or the Virgin Islands of the United States.".

(c) WAIVER FOR NONCONTIGUOUS STATES.—Section 6(o) of the Food and Nutrition Act of 2008 (7 U.S.C. 2015(o)) is amended—

(1) by redesignating paragraph (7) as paragraph (8); and

(2) by inserting after paragraph (6) the following:

"(7) EXEMPTION FOR NONCONTIGUOUS STATES.—

"(A) DEFINITION OF NONCONTIGUOUS STATE.—

"(i) IN GENERAL.—In this paragraph, the term 'noncontiguous State' means a State that is not 1 of the contiguous 48 States or the District of Columbia.

"(ii) EXCLUSIONS.—In this paragraph, the term 'noncontiguous State' does not include Guam or the Virgin Islands of the United States.

"(B) EXEMPTION.—Subject to subparagraph (D), the Secretary may exempt individuals in a noncontiguous State from compliance with the requirements of paragraph (2) if—

"(i) the State agency submits to the Secretary a request for that exemption, made in such form and at such time as the Secretary may require, and including the information described in subparagraph (C); and

"(ii) the Secretary determines that based on that request, the State agency is demonstrating a good faith effort to comply with the requirements of paragraph (2).

"(C) GOOD FAITH EFFORT DETERMINATION.—In determining whether a State agency is demonstrating a good faith effort for purposes of subparagraph (B)(ii), the Secretary shall consider—

"(i) any actions taken by the State agency toward compliance with the requirements of paragraph (2);

"(ii) any significant barriers to or challenges in meeting those requirements, including barriers or challenges relating to funding, design, development, procurement, or installation of necessary systems or resources;

"(iii) the detailed plan and timeline of the State agency for achieving full compliance with those requirements, including any milestones (as defined by the Secretary); and

Determination.
Compliance.

GOV000218

"(iv) any other criteria determined appropriate by the Secretary.

"(D) DURATION OF EXEMPTION.—

"(i) IN GENERAL.—An exemption granted under subparagraph (B) shall expire not later than December 31, 2028, and may not be renewed beyond that date.     Deadline.

"(ii) EARLY TERMINATION.—The Secretary may terminate an exemption granted under subparagraph (B) prior to the expiration date of that exemption if the Secretary determines that the State agency—     Determination.

"(I) has failed to comply with the reporting requirements described in subparagraph (E); or     Compliance.

"(II) based on the information provided pursuant to subparagraph (E), failed to make continued good faith efforts toward compliance with the requirements of this subsection.

"(E) REPORTING REQUIREMENTS.—A State agency granted an exemption under subparagraph (B) shall submit to the Secretary—

"(i) quarterly progress reports on the status of the State agency in achieving the milestones toward full compliance described in subparagraph (C)(iii); and

"(ii) information on specific risks or newly identified barriers or challenges to full compliance, including the plan of the State agency to mitigate those risks, barriers, or challenges.".     Plan.

### SEC. 10103. AVAILABILITY OF STANDARD UTILITY ALLOWANCES BASED ON RECEIPT OF ENERGY ASSISTANCE.

(a) STANDARD UTILITY ALLOWANCE.—Section 5(e)(6)(C)(iv)(I) of the Food and Nutrition Act of 2008 (7 U.S.C. 2014(e)(6)(C)(iv)(I)) is amended by inserting "with an elderly or disabled member" after "households".

(b) THIRD-PARTY ENERGY ASSISTANCE PAYMENTS.—Section 5(k)(4) of the Food and Nutrition Act of 2008 (7 U.S.C. 2014(k)(4)) is amended—

(1) in subparagraph (A), by inserting "without an elderly or disabled member" before "shall be"; and

(2) in subparagraph (B), by inserting "with an elderly or disabled member" before "under a State law".

### SEC. 10104. RESTRICTIONS ON INTERNET EXPENSES.

Section 5(e)(6) of the Food and Nutrition Act of 2008 (7 U.S.C. 2014(e)(6)) is amended by adding at the end the following:

"(E) RESTRICTIONS ON INTERNET EXPENSES.—Any service fee associated with internet connection shall not be used in computing the excess shelter expense deduction under this paragraph.".

### SEC. 10105. MATCHING FUNDS REQUIREMENTS.

(a) IN GENERAL.—Section 4(a) of the Food and Nutrition Act of 2008 (7 U.S.C. 2013(a)) is amended—

(1) by striking "(a) Subject to" and inserting the following:

"(a) PROGRAM.—

"(1) ESTABLISHMENT.—Subject to"; and

(2) by adding at the end the following:

"(2) STATE QUALITY CONTROL INCENTIVE.—

GOV000219

139 STAT. 84          PUBLIC LAW 119–21—JULY 4, 2025

"(A) DEFINITION OF PAYMENT ERROR RATE.—In this paragraph, the term 'payment error rate' has the meaning given the term in section 16(c)(2).

Time periods.
Effective date.

"(B) STATE COST SHARE.—

"(i) IN GENERAL.—Subject to clause (iii), beginning in fiscal year 2028, if the payment error rate of a State as determined under clause (ii) is—

"(I) less than 6 percent, the Federal share of the cost of the allotment described in paragraph (1) for that State in a fiscal year shall be 100 percent, and the State share shall be 0 percent;

"(II) equal to or greater than 6 percent but less than 8 percent, the Federal share of the cost of the allotment described in paragraph (1) for that State in a fiscal year shall be 95 percent, and the State share shall be 5 percent;

"(III) equal to or greater than 8 percent but less than 10 percent, the Federal share of the cost of the allotment described in paragraph (1) for that State in a fiscal year shall be 90 percent, and the State share shall be 10 percent; and

"(IV) equal to or greater than 10 percent, the Federal share of the cost of the allotment described in paragraph (1) for that State in a fiscal year shall be 85 percent, and the State share shall be 15 percent.

"(ii) ELECTIONS.—

"(I) FISCAL YEAR 2028.—For fiscal year 2028, to calculate the applicable State share under clause (i), a State may elect to use the payment error rate of the State from fiscal year 2025 or 2026.

"(II) FISCAL YEAR 2029 AND THEREAFTER.—For fiscal year 2029 and each fiscal year thereafter, to calculate the applicable State share under clause (i), the Secretary shall use the payment error rate of the State for the third fiscal year preceding the fiscal year for which the State share is being calculated.

"(iii) DELAYED IMPLEMENTATION.—

"(I) FISCAL YEAR 2025.—If, for fiscal year 2025, the payment error rate of a State multiplied by 1.5 is equal to or above 20 percent, the implementation date under clause (i) for that State shall be fiscal year 2029.

"(II) FISCAL YEAR 2026.—If, for fiscal year 2026, the payment error rate of a State multiplied by 1.5 is equal to or above 20 percent, the implementation date under clause (i) for that State shall be fiscal year 2030.

"(3) MAXIMUM FEDERAL PAYMENT.—The Secretary may not pay towards the cost of an allotment described in paragraph (1) an amount that is greater than the applicable Federal share under paragraph (2).".

(b) LIMITATION ON AUTHORITY.—Section 13(a)(1) of the Food and Nutrition Act of 2008 (7 U.S.C. 2022(a)(1)) is amended in

GOV000220

the first sentence by inserting "or the payment or disposition of a State share under section 4(a)(2)" after "16(c)(1)(D)(i)(II)".

### SEC. 10106. ADMINISTRATIVE COST SHARING.

Section 16(a) of the Food and Nutrition Act of 2008 (7 U.S.C. 2025(a)) is amended in the matter preceding paragraph (1) by striking "agency an amount equal to 50 per centum" and inserting "agency, through fiscal year 2026, 50 percent, and for fiscal year 2027 and each fiscal year thereafter, 25 percent,".

### SEC. 10107. NATIONAL EDUCATION AND OBESITY PREVENTION GRANT PROGRAM.

Section 28(d)(1)(F) of the Food and Nutrition Act of 2008 (7 U.S.C. 2036a(d)(1)(F)) is amended by striking "for fiscal year 2016 and each subsequent fiscal year" and inserting "for each of fiscal years 2016 through 2025".

### SEC. 10108. ALIEN SNAP ELIGIBILITY.

Section 6(f) of the Food and Nutrition Act of 2008 (7 U.S.C. 2015(f)) is amended to read as follows:

"(f) No individual who is a member of a household otherwise eligible to participate in the supplemental nutrition assistance program under this section shall be eligible to participate in the supplemental nutrition assistance program as a member of that or any other household unless he or she is—

"(1) a resident of the United States; and

"(2) either—

"(A) a citizen or national of the United States;

"(B) an alien lawfully admitted for permanent residence as an immigrant as defined by sections 101(a)(15) and 101(a)(20) of the Immigration and Nationality Act, excluding, among others, alien visitors, tourists, diplomats, and students who enter the United States temporarily with no intention of abandoning their residence in a foreign country;

"(C) an alien who has been granted the status of Cuban and Haitian entrant, as defined in section 501(e) of the Refugee Education Assistance Act of 1980 (Public Law 96–422); or

"(D) an individual who lawfully resides in the United States in accordance with a Compact of Free Association referred to in section 402(b)(2)(G) of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996.

The income (less, at State option, a pro rata share) and financial resources of the individual rendered ineligible to participate in the supplemental nutrition assistance program under this subsection shall be considered in determining the eligibility and the value of the allotment of the household of which such individual is a member.".

# Subtitle B—Forestry

### SEC. 10201. RESCISSION OF AMOUNTS FOR FORESTRY.

The unobligated balances of amounts appropriated by the following provisions of Public Law 117–169 are rescinded:

(1) Paragraphs (3) and (4) of section 23001(a) (136 Stat. 2023).

GOV000221