LETITIA JAMES
Attorney General for the State of New York
Molly Thomas-Jensen
Jessica Ranucci
*Special Counsel*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Gina Bull
*Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8679
Email: molly.thomas-jensen@ag.ny.gov
　　　jessica.ranucci@ag.ny.gov
　　　rabia.muqaddam@ag.ny.gov
　　　gina.bull@ag.ny.gov

*Attorneys for the State of New York*

[Additional counsel to appear on signature page]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION**

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture; and U.S. DEPARTMENT OF AGRICULTURE, et al.,<br><br>　　　　Defendants. | Case No. 6:25-cv-02186-MTK<br><br>**PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................................iii

LR 7-1 CERTIFICATION................................................................................................1

MOTION................................................................................................1

MEMORANDUM OF LAW ................................................................................................2

BACKGROUND ................................................................................................3

    I.   The OBBB's Changes to SNAP................................................................................3

    II.  The Exclusionary Period................................................................................5

    III. USDA's October 31, 2025 Non-Citizen Guidance ................................................7

    IV. USDA's Other Guidance Memoranda................................................................9

        A.  USDA's August 29, 2025 SUA Guidance ................................................9

        B.  USDA's October 3, 2025 ABAWD Guidance................................................9

        C.  USDA's November 14, 2025 Exclusionary Period Memo................................10

    V.   The Administrative Record ................................................................................10

    VI.  The Impact of the Guidance Documents on the Plaintiff States ................................10

    VII.  Harm to Plaintiff States................................................................................13

    VIII. Procedural History ................................................................................16

ARGUMENT................................................................................................17

    I.   The Court Has Jurisdiction Over This Action................................................18

    II.  The Guidance Documents Are Contrary to Law and Arbitrary and Capricious..........20

        A.  The Guidance Documents Are Final Agency Action Subject to Review Under the APA................................................................................20

        B.  The Non-Citizen Guidance Regarding Non-Citizen Eligibility Violates the APA (Counts I and II)................................................................................22

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

1. The Non-Citizen Guidance Is Contrary to Law ...............................................22

2. The Non-Citizen Guidance Is Arbitrary and Capricious (Count II) ...............25

C. The Guidance Documents' Exclusionary Periods Violate the APA .......................27

1. The Exclusionary Period Is Contrary to Law (Count III) ...............................27

2. The Guidance Documents' Exclusionary Periods Are Arbitrary and Capricious (Count IV) ...............................................................................................30

III. Vacatur and Declaratory Relief Are Appropriate Remedies ........................................34

CONCLUSION.................................................................................................................35

Page ii – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Already LLC v. Nike*,
    568 U.S. 85 (2013)................................................................................................................19

*Appalachian Power Co. v. E.P.A.*,
    208 F.3d 1015 (D.C. Cir. 2000)..........................................................................................22

*Ass'n of Am. Med. Colls. v. United States*,
    217 F.3d 770 (9th Cir. 2000)...............................................................................................21

*Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*,
    10 F.4th 937 (9th Cir. 2021)................................................................................................18

*Bennett v. Spear*,
    520 U.S. 154 (1997).......................................................................................................20, 21

*Bilbrey by Bilbrey v. Brown*,
    738 F.2d 1462 (9th Cir. 1984).............................................................................................35

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204 (1988).............................................................................................................30

*Cal. Cmtys. Against Toxics v. E.P.A.*,
    934 F.3d 627 (D.C. Cir. 2019)............................................................................................22

*Casey v. Berryhill*,
    853 F.3d 322 (7th Cir. 2017)...............................................................................................33

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
    603 U.S. 799 (2024).............................................................................................................34

*Dep't of Air Force v. Prutehi Guahan,*
    No. 25-579, 2026 WL 642829 (U.S. Mar. 9, 2026) ............................................................21

*Dep't of Commerce v. New York*,
    588 U.S. 752 (2019).......................................................................................................18, 31

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020)......................................................................................................27, 33, 34

*Doe 1 v. Mayorkas*,

Page iii – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

530 F. Supp. 3d 893 (N.D. Cal. 2021) ...............................................................21

*Encino Motorcars, LLC v. Navarro*,
   579 U.S. 211 (2016)...............................................................................25, 26

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009)...............................................................................25, 33

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021)......................................................................................25

*FDA v. Wages & White Lion Invs., L.L.C.*,
   604 U.S. 542 (2025)......................................................................................33

*Forest Guardians v. Johans*,
   450 F.3d 455 (9th Cir. 2006).........................................................................19

*Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)......................................................................................20

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994)......................................................................................30

*Mass. v. Nat'l Institutes of Health*,
   770 F. Supp. 3d 277 (D. Mass. 2025) ...........................................................34

*Michigan v. E.P.A.*,
   576 U.S. 743 (2015)......................................................................................26

*Montana Wildlife Federation v. Haaland*,
   127 F.4th 1 (9th Cir. 2025)............................................................................31

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983).............................................................................25, 31, 32

*Nat'l Parks Conservation Ass'n v. E.P.A.*,
   788 F.3d 1134 (9th Cir. 2015) .......................................................................31

*New York v. McMahon*,
   No. 25-10601-MJJ, 2026 WL 622484 (D. Mass. Feb. 11, 2026) ...........................26

*New York v. Trump*,
   No. 25-1236, 2026 WL 734941 (1st Cir. Mar. 16, 2026)........................................26

*New York v. United States Dep't of Energy*,
   No. 6:25-CV-01458-MTK, 2025 WL 3140578 (D. Or. Nov. 10, 2025) ...........................34, 35

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

*Northwest Envtl. Defense Ctr. v. Bonneville Power Admin.*,
   117 F.3d 1520 (9ᵗʰ Cir. 1997) .................................................................................................18

*Nw. Env't. Def. Ctr. v. Bonneville Power Admin.,*
   477 F.3d 668 (9th Cir. 2007) ...................................................................................................25

*Oregon Nat. Desert Ass'n v. Bureau of Land Management,*
   625 F.3d 1092 (9th Cir. 2010) .................................................................................................31

*Or. Nat. Desert Ass'n v. Bushue,*
   644 F. Supp. 3d 813 (D. Or. 2022) ...................................................................................17–18

*Or. Nat. Desert Ass'n v. U.S. Forest Service,*
   465 F.3d 977 (9th Cir. 2006) ............................................................................................20, 21

*Occidental Eng'g Co. v. I.N.S.,*
   753 F.2d 766 (9th Cir. 1985) ...................................................................................................18

*Perez v. Mortg. Bankers Ass'n*
   575 U.S. 92 (2015) ...................................................................................................................22

*Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*,
   128 F.4th 1089 (9th Cir. 2025) .........................................................................................20, 21

*Rosebrock v. Mathis,*
   745 F.3d 963 (9th Cir. 2014) ...................................................................................................19

*Saliba v. U.S. Sec. & Exch. Comm'n*,
   47 F.4th 961 (9th Cir. 2022) ....................................................................................................20

*San Luis & Delta-Mendota Water Auth. v. Locke,*
   776 F.3d 971 (9th Cir. 2014) ...................................................................................................18

*Ukiah Valley Med. Ctr. v. F.T.C.,*
   911 F.2d 261 (9th Cir. 1990) ...................................................................................................21

*U.S. Army Corps. of Engineers v. Hawkes Co., Inc.,*
   578 U.S. 590 (2016).................................................................................................................22

**STATUTES**

5 U.S.C.
   § 706............................................................................................................................................18
   § 706(2).......................................................................................................................................34

Page v – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

§ 706(2)(A) ...............................................................................................................18, 20

7 U.S.C.
§ 2011 ...........................................................................................................................3
§ 2013(a)(1)-(2) ...........................................................................................................4
§ 2013(a)(2)(B)(i) ....................................................................................................5, 14
§ 2013(c) .....................................................................................................................29
§ 2014(b) ...............................................................................................................29, 32
§ 2015(f).....................................................................................................................3, 30
§ 2015(f)(2)(B)............................................................................................................23
§ 2020(a)(1) ................................................................................................................10
§ 2020(e)(5) ................................................................................................................29
§ 2025(c)(1)(C) ............................................................................................................4
§ 2025(c)(3) ........................................................................................................2, 5, 28

8 U.S.C.
§§ 1101(a)(15), (20) ...................................................................................................3
§ 1601............................................................................................................................3
§§ 1612(a)(1), (a)(2) ..................................................................................................23
§§ 1612(a)(2)(A)(iv), (v) ............................................................................................24
§ 1612(a)(2)(L) ...........................................................................................................23
§§ 1612(a)(2)(A)–(K), (N)..........................................................................................24
§ 1612(a)(2)(A)(i)–(iii) ...............................................................................................24
§§ 1641(a), (b) ............................................................................................................23

22 U.S.C. § 7105(b)(1)(A)...............................................................................................24

Additional Ukraine Supplemental Appropriations Act, 2022, Pub. L. 117-128 § 401(b)(1), 136
Stat. 1211, 1218 (May 21, 2022) ................................................................................24

Department of Defense Appropriations Act, 2010, Pub. L. 111-118, § 8120(a)-(b), 123 Stat. 3409,
3457 (Dec. 19, 2009) ...........................................................................................24, 29

Extending Government Funding and Delivering Emergency Assistance Act, Pub. L. 117-43
§ 2502(b)(1), 135 Stat. 344, 377 (Sept. 30, 2021) .....................................................24

One Big Beautiful Bill Act, Pub. L. 119-21, 139 Stat. 72 (2025) ........................................... *passim*

**RULES**

Fed. R. Civ. P. 56(a) ...........................................................................................................1

Fed. R. Civ. P. 65(a)(2) ......................................................................................................1

**REGULATIONS**

7 C.F.R.

§ 271.2.....................................................................................................................28, 29

§ 271.4..........................................................................................................................10

§ 273.4(a)(6)(i)–(ii).....................................................................................................23

§ 273.4(a)(6)(ii)...........................................................................................................24

§ 273.4(a)(6)(iii)..........................................................................................................24

§ 273.4(a)(6)(iv)..........................................................................................................23

§ 274.2..........................................................................................................................10

§ 275.12(d)...................................................................................................................29

§ 275.12(d)(2)(vii) ...............................................................................................2, 5, 28

§ 275.12(d)(2)(vii)(C).............................................................................................5, 29

§ 275.12(d)(2)(vii)(D).............................................................................................5, 29

§§ 275.12(d)(vii)(C), (E).................................................................................................5

§ 275.12(d)(2)(vii)(E)...................................................................................................15

## OTHER AUTHORITIES

Local Rule 7-1...................................................................................................................1

Local Rule 56....................................................................................................................1

USDA, *The Consolidated Appropriations Act, 2005, Public Law 108-447* (Jan. 14, 2005),
    https://perma.cc/XD33-5K5K................................................................................6

USDA, *SNAP – 120-Day Quality Control (QC) Variance Exclusion for Section 8 of the Worker, Homeownership, and Business Assistance Act of 2009* (Dec. 4, 2009), https://web.archive.org/web/20251117111025/https://fns-prod.azureedge.us/sites/default/files/snap/120-Day%20QC%20Variance%20Exclusion.pdf/. 6

USDA, *Supplemental Nutrition Assistance Program: Payment Error Rates Fiscal Year 2024*, https://perma.cc/728C-N3S4.........................................................................14

USDA, *Supplemental Nutrition Assistance Program Guidance on Non-Citizen Eligibility* (June 2011), https://perma.cc/6NXW-2G66 ........................................................26

USDA, *SNAP Eligibility for Non-Citizens*, accessed July 18, 2025, https://web.archive.org/web/20250718231851/https://www.fns.usda.gov/snap/recipient/eligibility/non-citizen ........................................................................................26

USDA – FNS, *Supplemental Nutrition Assistance Program (SNAP) - Elimination of the Eight-Month Time Limit for Iraqi and Afghan Special Immigrants* (Jan. 29, 2010), https://perma.cc/FPD9-KEEK. ...............................................................................7

USDA – FNS, *Supplemental Nutrition Assistance Program Section 4005 of the Agriculture Improvement Act of 2018 – Informational Memorandum* (Mar. 6, 2019), https://perma.cc/WD64-53AC ...............................................................................7

Page vii – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

USDA – FNS, *Supplemental Nutrition Assistance Program (SNAP) - Question and Answer #1 for the Implementation of Regulatory Changes to Standard Utility Allowances Final Rule* (Dec. 20, 2024), https://perma.cc/8264-HLUZ ...................................................................................7

USDA – FNS, *Supplemental Nutrition Assistance Program (SNAP) – SNAP Provisions of the Fiscal Responsibilities Act of 2023 – Questions and Answers* (July 7, 2023), https://perma.cc/8YMA-D3SK ...................................................................................7

Page viii – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

**LR 7-1 CERTIFICATION**

Plaintiffs' counsel certify that the parties conferred on this motion by videoconference on Tuesday, March 31, 2026, and Thursday, April 2, 2026. The parties discussed the arguments set forth in the instant motion, as well as the support offered therefore, but were unable to resolve them. Counsel for Defendants noted that they reserve their rights to object to evidence outside the administrative record or to move the court for an order allowing Defendants to take discovery. Defendants' counsel stated that they may also move for an extension of deadlines for their response to allow for that discovery. Plaintiffs reserve their rights to object to any such motions and to cross-move for discovery. The parties agreed to further meet and confer on any motion prior to filing.

**MOTION**

Plaintiff States move under Rule 56(a) and Local Rule 56 for entry of summary judgment in their favor. This motion is supported by the following memorandum of law and the declarations and exhibits filed simultaneously with this motion, as well as exhibits and declarations filed in support of their Motion for a Preliminary Injunction. *See* Fed. R. Civ. P. 65(a)(2) ("evidence that is received on" a preliminary injunction motion "need not be repeated at trial") [1]. Plaintiffs file this motion pursuant to the briefing schedule ordered by the Court. ECF No. 73.

---

[1] Declarations in Support of Plaintiff States' Motion for Preliminary Injunction, and exhibits filed therewith, include NY-DeMarco Decl., ECF No. 5; OR-Hoffman Decl., ECF No. 6; CO-McClelland Decl., ECF No. 7; CT-Hadler Decl., ECF No. 8; DE-Hall Decl., ECF No. 9; DC-Campbell Decl., ECF 10; HI-Morishige Decl., ECF 11; IL-Reagan Decl., ECF 12; ME-Yaffe Decl., ECF No. 13; MD-Lopez Decl., ECF No. 14; MA-Cole Decl., ECF No. 15; MI-Frisch Decl., ECF No. 16; MN-Perry Decl., ECF No. 17; NJ-Adelman Decl., ECF No. 18; NM-Armijo Decl., ECF No. 19; NC-Hogan Decl., ECF No. 20; RI-Merolla-Brito Decl., ECF No. 21; WA-Reyes Decl., ECF No. 22; and WI-Standridge Decl., ECF No. 23. Declarations in Support of Plaintiff States' Reply to its Motion for Preliminary Injunction, and exhibits filed therewith, include OR-Hartmann Decl., ECF No. 61; CA-Fernandez Garcia Decl., ECF No. 62; and VT-Tousignant Decl., ECF No. 63. Declarations in Support of Plaintiff States' Motion for Summary Judgment, filed herewith, include NY-Tomasky Decl.; OR-Hoffman Suppl. Decl.; CO-McClelland Suppl. Decl.; CT-Hadler Decl.; ME-Yaffe Suppl. Decl.; MD-Brown Burnett Decl.; MI-Frisch Suppl. Decl.; and NC-Hogan Suppl. Decl.

Page 1 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF LAW

The Supplemental Nutrition Assistance Program (SNAP) provides food benefits that are crucial to Plaintiff States' efforts to ensure that their residents have access to nutritious food, that children do not go to bed hungry, and that the most vulnerable members of our society have sustenance. Last July, Congress passed a statute (the One Big Beautiful Bill Act, Public Law No. 119-21, 139 Stat. 72, (2025) or "OBBB") that made changes to SNAP, including changing certain work requirements, how participants' utility costs may be calculated, and which non-citizens can be eligible for SNAP. Defendants, the United States Department of Agriculture (USDA) and its Secretary, waited months after the OBBB was passed before issuing guidance directing State SNAP agencies how to implement each of these changes. Four of those guidance documents are challenged here (issued on August 29, October 3, October 31, and November 14, 2025, and detailed below; together, the "Guidance Documents"). *See* Administrative Record (AR) at 15 (GOV000014), 9 (GOV000008), 19 (GOV000018), 7 (GOV000006), ECF No. 77.

By statute and regulation, States have a 120-day period, called an "exclusionary period" to implement changes to the SNAP program before any errors in issuing benefits are counted against them, starting from the "required implementation date" of the change. 7 U.S.C. § 2025(c)(3); 7 C.F.R. § 275.12(d)(2)(vii). But when the Guidance Documents were issued, USDA announced that the "required implementation date" had *already* passed, without any prior notice to States, dramatically shrinking the amount of time States had to implement the Guidance Documents without being penalized for errors resulting from new changes. While Plaintiff States are committed to lowering their error rates, the OBBB significantly raised the stakes for the States. Under the OBBB, States are newly subject to an increasing set of penalties—as high as $1 billion or more per State, per year—based on their payment error rates. Just one error could make or break a State's penalty by causing its payment error rate to exceed a threshold that would cause the penalty to double. Because the exclusionary periods in the Guidance Documents are both contrary to law and arbitrary and capricious, as the Court has already found in connection with Plaintiffs'

Page 2 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

motion for a preliminary injunction, the Court should grant Plaintiffs' motion for summary judgment; vacate the Guidance Documents' exclusionary periods; and declare them unlawful.

One of the Guidance Documents, the October 31, 2025 guidance on the OBBB's changes to non-citizen eligibility ("Non-Citizen Guidance"), is also substantively flawed, in that it incorrectly interprets certain non-citizen groups' eligibility. AR at 19–29 (GOV000018–28), ECF No. 77. After this lawsuit was filed, Defendants conceded it was wrong and issued a Q&A document to correct the errors. *Id*. at 30–34 (GOV000029–33). Although Defendants have voluntarily ceased their unlawful conduct on this front, Plaintiffs seek a declaratory judgment to ensure that the USDA does not revert to its incorrect interpretation of the law.

## BACKGROUND

### I.    The OBBB's Changes to SNAP

On July 4, 2025, Congress passed the OBBB, which made four changes to the SNAP program relevant to this lawsuit.

*First*, the OBBB changed the statutory provisions governing non-citizen eligibility for SNAP. To be eligible to receive SNAP benefits, non-citizens must meet the requirements of the Food and Nutrition Act of 2008 (FNA), 7 U.S.C. § 2011 *et seq.* Section 10108 of the OBBB amended the FNA, 7 U.S.C. § 2015(f), narrowing the specified categories of non-citizens who are eligible for SNAP benefits. Now, the FNA, as amended, restricts eligibility for SNAP to U.S. citizens and nationals, and only three other groups: (1) lawful permanent residents (or "LPRs," who are often colloquially referred to as "green card holders"), *see* 8 U.S.C. §§ 1101(a)(15), (20); (2) Cuban and Haitian Entrants; and (3) individuals lawfully residing in accordance with a Compact of Free Association. 7 U.S.C. § 2015(f). Separately, the Personal Responsibility and Work Opportunity Act (PRWORA), 8 U.S.C. § 1601 *et seq*., imposes a five-year waiting period applicable to some—but not all—immigrant groups before they can apply for SNAP benefits. 8 U.S.C. § 1612(a). The OBBB did *not* amend the SNAP eligibility provisions of PRWORA.

*Second*, Section 10103 of the OBBB limited which households would automatically qualify for a credit covering heating and cooling costs (called a "standard utility allowance," or

Page 3 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

"SUA") and how third-party energy assistance payments are considered as part of the calculation for SNAP benefit amounts. Previously, the so-called "heat and eat" provision of the FNA required USDA to automatically confer the full SUA on households who received more than $20 per year in energy assistance through the Low-Income Energy Assistance Program and similar state-funded programs. After passage of the OBBB, only households with an elderly or disabled member automatically qualify for the SUA based on their receipt of energy assistance, and all other households must instead provide proof of their utility expenses to establish they qualify for a SUA or risk losing SNAP benefits.

*Third*, Section 10102 of the OBBB changed the exceptions from work requirements for able-bodied adults without dependents ("ABAWDs"). ABAWDs may not receive SNAP benefits for more than three months in a three-year period without also meeting ABAWD work requirements, including working, volunteering, or participating in a job skills program a set number of hours per week. The OBBB narrowed the categories of people who are exempt from the ABAWD work requirements, including removing exemptions for homeless individuals, veterans, individuals aged 24 or younger who aged out of foster care, individuals aged 54 to 59, and households with children aged 14 to 17, while also creating new exceptions for certain Native Americans.

*Finally*, the OBBB imposed a new penalty for States based on their payment error rate. Until passage of the OBBB, the federal government covered the full cost of SNAP benefits (though States shared administrative costs with the federal government). Section 10105 of the OBBB amended the FNA to create a new "State Quality Control Incentive," under which a State is penalized with an increasing share of the cost of SNAP benefits if its payment error rate goes above certain percentage thresholds. 7 U.S.C. § 2013(a)(1)-(2).[2] Under the FNA as amended by the

---

[2] Before the enactment of the OBBB, the Quality Control system provided for financial liability where USDA could show "a 95 percent statistical probability exists that the payment error rate of a State agency exceeds 105 percent of the national performance measure for payment error rates." 7 U.S.C. § 2025(c)(1)(C). The OBBB did not remove this provision, meaning that there are now two different financial penalties States may face if their error rate is above a certain threshold.

Page 4 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

OBBB, a State need not pay any penalty if its payment error rate is below 6%, but if a State's payment error rate exceeds that threshold, it must pay a penalty. 7 U.S.C. § 2013(a)(2)(B)(i). At an 8% payment error rate, the penalty doubles. *Id.* Ultimately, the penalty can be as high as 15% of the total cost of benefits, totaling hundreds of millions of dollars or even more than a billion dollars per state, per year. *See* NY-DeMarco Decl. at ¶ 29, ECF No. 5 (up to $1.2 billion).

## II.    The Exclusionary Period

Any substantive change to eligibility or benefit calculations for the SNAP program—such as the non-citizen eligibility, SUA, and ABAWD changes described above—is subject to an "exclusionary period" during which errors "shall not be included in the payment error rate." 7 U.S.C. § 2025(c)(3). Specifically, SNAP regulations provide for a "120-day exclusionary period" following "application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law," so that errors during that period do not count towards a State's error rate. 7 C.F.R. § 275.12(d)(2)(vii). The exclusionary period begins on the "required implementation date" specified in USDA guidance memorandum and ends 120 days later. *Id.* § 275.12(d)(2)(vii)(D). Under USDA regulations, "implementation" begins on the "effective date of State agency's written statewide notification to its eligibility workers," and States may not take advantage of an exclusionary period if they fail to implement the guidance. 7 C.F.R. §§ 275.12(d)(2)(vii)(C), (E). The exclusionary period was *not* changed by the OBBB. However, the OBBB did significantly raise the stakes of Plaintiffs States' error rates, and thus the stakes of each exclusionary period, by imposing the new error rate penalties described above. *See, e.g.*, NC-Hogan Decl. ¶¶ 24-25, ECF No. 20.

In the past, USDA has always set the required implementation date *after* its guidance, thereby affording States time to prepare for implementation. *See, e.g.*, CT-Hadler Suppl. Decl. ¶¶ 16–20; MD-Burnett Decl. ¶¶ 15–17; MI-Frisch Suppl. Decl. ¶ 16–17; CO-McClelland Suppl. Decl. ¶ 16; OR-Hoffman Suppl. Decl. ¶¶ 17–19; NY-Tomasky Decl. ¶¶ 23–25. States have waited until they have "clear, unambiguous USDA-FNS Guidance explaining any changes in program administration or benefit eligibility" before they pull the trigger on their implementation plans so

Page 5 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

they have certainty about how USDA interprets the law and will require them to implement it. *See* NJ-Adelman Decl. ¶ 29, ECF No. 18. Further, when statutory changes have been made to SNAP, USDA has typically provided an additional, pre-implementation period by setting a required implementation date for the changes weeks or months after the guidance was issued—often coinciding with a future effective date of the statute, but not always. Accordingly, in past cases when statutes were effective upon enactment, USDA has defined the exclusionary period to begin *after* both the implementing guidance and the statute's effective date. For example, in 2004, when Congress excluded from SNAP eligibility determinations any additional pay received by military personnel as a result of deployment to a combat zone, USDA's guidance indicated that the exclusionary period would begin two months *after* its implementing memorandum and run for 120 days thereafter.[3] Moreover*,* separate from the 120-day exclusionary period, States were additionally held harmless for any errors beginning from "the effective date of the law" (which was retroactive) "until the State implements or reaches the required implementation date." *Id.* As another example, the Worker, Homeownership and Business Assistance Act of 2009 provided an increase to unemployment compensation and included a provision excluding the increased compensation from income considered by SNAP, effective immediately after enactment.[4] USDA issued guidance informing States that the exclusionary period began "30 days from the date of the guidance memorandum and continues for 120 days from that date" and errors beginning from the enactment of the statute were additionally excluded for quality control purposes. *Id.* In December 2009, Congress passed a statute that (like the OBBB) changed certain non-citizen eligibility

---

[3] USDA, *The Consolidated Appropriations Act, 2005, Public Law 108-447* 3 (Jan. 14, 2005) https://perma.cc/XD33-5K5K.

[4] USDA, *SNAP – 120-Day Quality Control (QC) Variance Exclusion for Section 8 of the Worker, Homeownership, and Business Assistance Act of 2009* (Dec. 4, 2009), https://web.archive.org/web/20251117111025/https://fns-prod.azureedge.us/sites/default/files/snap/120-Day%20QC%20Variance%20Exclusion.pdf/.

Page 6 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

requirements for SNAP.[5] USDA issued implementing guidance a month later, in January 2010. *Id.* That guidance provided an exclusionary period that started 30 days later (in February 2010) and ended 120 days after that (in June 2010). *Id.* More recently, USDA followed a similar pattern implementing a November 2024 Final Rule,[6] implementing the SNAP provisions of the 2023 Fiscal Responsibility Act,[7] and implementing the Agriculture Improvement Act of 2018.[8]

### III.    USDA's October 31, 2025 Non-Citizen Guidance

On October 31, 2025, USDA issued the "Non-Citizen Guidance," which was its first guidance purporting to implement Section 10108 of the OBBB's changes to non-citizens' eligibility for SNAP benefits.  AR at 19–29 (GOV000018–28), ECF No. 77.

The Non-Citizen Guidance contains two errors regarding non-citizen SNAP eligibility that are challenged in this lawsuit. First, the Guidance erroneously provides that many groups of non-citizens are categorically "Not eligible" for SNAP, including Refugees, Individuals Granted Asylum, Parolees, Deportation Withheld, and Certain Afghan Parolees, Certain Ukrainian Parolees. *Id.* at 25–26 (GOV000024–25).[9] By contrast, the Guidance correctly categorizes a second set of non-citizens (including Certain American Indians Born Abroad, Hmong or Highland Laotian Tribal Members, Conditional Entrants, Battered Aliens, and Victims of Severe Trafficking

---

[5] *See* USDA – FNS, *Supplemental Nutrition Assistance Program (SNAP) - Elimination of the Eight-Month Time Limit for Iraqi and Afghan Special Immigrants* (Jan. 29, 2010), https://perma.cc/FPD9-KEEK.

[6] USDA – FNS, *Supplemental Nutrition Assistance Program (SNAP) - Question and Answer #1 for the Implementation of Regulatory Changes to Standard Utility Allowances (SUAs)* 6–7 (Dec. 20, 2024), https://perma.cc/8264-HLUZ.

[7] USDA – FNS, *Supplemental Nutrition Assistance Program (SNAP) – SNAP Provisions of the Fiscal Responsibilities Act of 2023 – Questions and Answers* 9 (July 7, 2023), https://perma.cc/8YMA-D3SK.

[8] USDA – FNS, *Supplemental Nutrition Assistance Program Section 4005 of the Agriculture Improvement Act of 2018 – Informational Memorandum* (Mar. 6, 2019), https://perma.cc/WD64-53AC, (where statute required states to "implement immediately," FNS determined it would not count errors until FY 2020, roughly 6 months after the date of memo).

[9] Plaintiffs' First Amended Complaint and this motion adopt the names and definitions for the categories of "Alien Groups" in Attachments 1 and 2 to the Non-Citizen Guidance, unless otherwise noted.

Page 7 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

and Certain Family Members) as "Not eligible unless an LPR." *Id.* at 25 (GOV000024). The Non-Citizen Guidance thus indicates that the second group could become eligible for SNAP upon adjusting status to become an LPR whereas the first group could never become eligible for SNAP, even if they adjust status to become an LPR. But in reality, both groups are the same, and can become eligible upon adjusting to LPR status.

Second, the Non-Citizen Guidance arbitrarily narrowed the categories of non-citizens who are exempt from a five-year waiting period that PRWORA imposes on some, but not all, LPRs before they can receive SNAP benefits. The Non-Citizen Guidance *did* provide that some immigrant groups who become "LPRs may still be eligible for SNAP without a waiting period" such as those "under 18 years old," Amerasians, and Hmong or Highland Laotian Tribal Members. *Id.* at 23–24 (GOV000022–23). However, the Non-Citizen Guidance erroneously excludes Refugees, Individuals Granted Asylum, Deportation Withheld, Certain Afghan and Ukrainian Parolees, Iraqi and Afghan Special Immigrants (SIV), and Victims of Severe Trafficking ("Humanitarian Immigrant Groups") from its list of LPRs that can become eligible for SNAP without a five-year waiting period.

These errors caused significant confusion among Plaintiff States' benefit agencies, who were unsure how to resolve the apparent conflict between the language of the OBBB itself and the Guidance. *See, e.g.*, NY-DeMarco Decl. ¶¶ 24-26, ECF No. 5; NJ-Adelman Decl. ¶¶ 21-22, ECF No. 18; CT-Hadler Decl. ¶ 23, ECF No. 8; DE-Hall Decl. ¶ 22, ECF No. 9; MA-Cole Decl. ¶ 28, ECF No. 15; MN-Perry Decl. ¶¶ 19-20, ECF No. 17; IL-Reagan Decl. ¶ 22, ECF No. 12.

The Non-Citizen Guidance was issued on Friday, October 31, 2025, 119 days after the OBBB was signed into law. As to the exclusionary period, the Guidance states that "FNS will . . . hold States harmless for Quality Control (QC) purposes for 120 days from the required implementation date in accordance with 7 CFR 275.12(d)(2)(vii)." Guidance at 3, AR at 21 (GOV000020), ECF No. 77. The Guidance goes on to say, "[a] 120-day variance exclusion is permitted for the misapplication of changes in Section 10108 of the OBBB to new and ongoing SNAP households until the exclusionary period end date on November 1, 2025." *Id.* at 22

Page 8 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

(GOV000021). In other words, the Guidance started the 120-day exclusionary period on July 4, 2025, the date that OBBB became law, and ended it November 1, 2025, one day after issuing the Guidance (a Saturday).

## IV.    USDA's Other Guidance Memoranda

### A.    USDA's August 29, 2025 SUA Guidance

On August 29, 2025, USDA issued a guidance memorandum to SNAP State Agencies (the "SUA Guidance"), to provide them "with additional information on implementing Section 10103 of the OBBB, which changes the treatment of certain energy assistance payments for SNAP." AR at 15 (GOV000014), ECF No. 77. In a section entitled, "Quality Control and Technical Assistance," the agency announced that although "[a] 120-day variance exclusion is permitted," the period had already begun to run and would end on November 1, 2025. *Id.* at 18 (GOV000017). As with the Non-Citizen Guidance, the SUA Guidance starts the 120-day exclusionary period on July 4, 2025, when the OBBB was enacted, and ends it on November 1, 2025. The time between the SUA Guidance being issued and the end of the exclusionary period was 64 days.

### B.    USDA's October 3, 2025 ABAWD Guidance

On October 3, 2025, USDA issued a guidance memorandum to SNAP State Agencies (the "ABAWD Guidance"), to provide them with "additional information on implementing Section 10102(a) of the OBBB, which changes exceptions from the Able-Bodied Adults Without Dependents (AWAWD) time limit." AR at 9 (GOV000008), ECF No. 77. In a section entitled, "Quality Control and Technical Assistance," the agency announced that although "[a] 120-day variance exclusion is permitted," the period had already begun to run and would end on November 1, 2025. *Id.* at 13 (GOV000012). As with the Non-Citizen Guidance and SUA Guidance, the ABAWD Guidance starts the 120-day exclusionary period on July 4, 2025, when the OBBB was enacted, and ends it on November 1, 2025. The time between the ABAWD Guidance being issued and the end of the exclusionary period was 29 days.

Page 9 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

### C.    USDA's November 14, 2025 Exclusionary Period Memo

On November 14, 2025, USDA issued a policy memo (the "Exclusionary Period Memo") answering "follow-up questions submitted by State agencies on the variance exclusion period for implementation" of Sections 10102 and 10103 of the OBBB (i.e., the SUA and ABAWD changes made by the OBBB). AR at 7 (GOV000006), ECF No. 77. The Exclusionary Period Memo reiterated that the "required implementation date" for both Sections 10102 (ABAWD) and 10103 (SUA) of the OBBB was "the enactment of OBBB, July 4, 2025" and therefore the exclusionary period had already ended on November 1, 2025, two weeks earlier. *Id.* at 8 (GOV000007).

## V.    The Administrative Record

On March 16, 2026, Defendants filed a certified administrative record. ECF No. 77. Ronald Ward, Acting Associate Administrator for SNAP at USDA-FNS certified that the documents being filed were the "true, correct, and complete copy of the non-privileged documents pertaining to USDA's implementation [of] the One Big Beautiful Bill Act, P.L. 119-21, SNAP provisions relating to exceptions for able-bodied adults without dependents, treatment of energy assistance payments, and alien eligibility provisions." *Id*. at 1. The administrative record contained only: (a) copies of the Guidance documents that are the subject of this case and (b) printouts of a handful of statutes and regulations that pertain to this case. There was no material in the administrative record other than the subject guidance documents and copies of statutes and regulations.

## VI.    The Impact of the Guidance Documents on the Plaintiff States

State Agencies are tasked with administering SNAP benefits and are responsible for the issuance, control, and accountability of SNAP benefits and EBT cards; ensuring program integrity; and supervising local transitional assistance offices' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2.

Guidance regarding statutory changes "has always been the first line of communication from USDA" and is a "necessary" precondition for Plaintiff States to be able to properly understand and implement of statutory changes. NJ-Adelman Decl. ¶ 29, ECF No. 18. Guidance

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

from USDA is necessary to address key practical questions regarding implementation of the OBBB's changes that were unanswered by the bill itself. This includes, for example, "whether they would be applied at recertification/application or some other cadence" and substantive issues such as, for the non-citizen eligibility changes, "how to determine eligibility for cases where an individual's immigration status was adjusted (such as from refugee to legal permanent resident)." CT-Hadler Decl. ¶ 20, ECF No. 8; *see also* CO-McClelland Decl. ¶ 17, ECF No. 7 ("OBBB program changes presented minimal information and interpretive ambiguities that required clarification."); MI-Frisch Decl. ¶ 18, ECF No. 16; CO-McClelland Suppl. Decl. ¶ 30 ("key issues" in the ABAWD changes such as "implementation dates and timelines" required guidance). For Section 10103's changes to the SUA, States required substantive guidance on USDA's interpretation "regarding which energy assistance programs qualified and how to treat various payment scenarios." NC-Hogan Suppl. Decl. ¶ 28. Connecticut could not fully implement Section 10102's ABAWD changes without USDA guidance regarding "identified conflicts in policy, such as those involving the intersection of SNAP general work requirements and ABAWD work requirements; policy refinement such as the final definition of who is considered 'An Indian', 'Urban Indian', or 'California Indian'; and policy application, such as whether rules for veterans also applied to disabled veterans." CT-Hadler Suppl. Decl. ¶ 32.

Accordingly, starting the week after the OBBB was passed, States repeatedly requested that USDA issue implementation guidance regarding the OBBB changes. *See, e.g.*, MI-Frisch Suppl. Decl. ¶ 31 (Michigan requested guidance regarding the ABAWD changes over eight times starting July 8, 2025); NY-DeMarco Decl. ¶ 20, ECF No. 5; RI-Merolla-Brito Decl. ¶ 18, ECF No. 21; MI-Frisch Decl. ¶ 18, ECF No. 16; IL-Reagan Decl. ¶¶ 16-17, ECF No. 12; MD-Burnett Decl. ¶¶ 25, 33-34; OR-Hoffman Suppl. Decl. ¶ 20; NY-Tomasky Decl. ¶ 17. USDA repeatedly acknowledged that States would need implementation guidance and told States it was forthcoming. *See, e.g.*, NY-DeMarco Decl. ¶ 20, ECF No. 5; RI-Merolla-Brito Decl. ¶ 14, ECF No. 21; MD-Lopez Decl. ¶¶ 22-25, ECF No. 14; MI-Frisch Suppl. Decl. ¶ 31; MD-Burnett Decl. ¶ 34; NY-Tomasky Decl. ¶ 17. For example, on July 9, 2025, Massachusetts emailed USDA to ask whether

Page 11 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

it should await guidance before implementing any OBBB changes; USDA told Massachusetts to wait and said that USDA "is working on guidance that will address implementation." MA-Cole Decl. ¶ 14, ECF No. 15; *see also id.* ¶¶ 16-17. USDA also informed Oregon that they would provide guidance on the OBBB's changes on or before September 1, 2025, and "recommended that [Oregon] not implement any of the statutory changes without USDA guidance." OR-Hoffman Suppl. Decl. ¶ 20. And on September 4, USDA told all States that it would issue further guidance on the OBBB's non-citizen eligibility and ABAWD work requirement exceptions provisions by September 30th. AR at 3 (GOV000002), ECF No. 77. In the meantime, State Agencies began preparing their systems and staff to be able to implement OBBB's changes to SNAP as soon as USDA promulgated guidance directing them how to implement those changes. *See*, *e.g.*, NY-DeMarco Decl. ¶ 23, ECF No. 5; OR-Hoffman Decl. ¶ 17, ECF No. 6; NJ-Adelman Decl. ¶ 18, ECF No. 18; CO-McClelland Decl. ¶ 17, ECF No. 7; DE-Hall Decl. ¶ 20, ECF No. 9; MI-Frisch Decl. ¶ 18, ECF No. 16; MN-Perry Decl. ¶ 18, ECF No. 17; NM-Armijo ¶ 24, ECF No. 19; NC-Hogan Decl. ¶ 18, ECF No. 20; MD-Burnett Decl. ¶¶ 23, 36; NC-Hogan Suppl. Decl. ¶ 28; MI-Frisch Suppl. Decl. ¶ 24; CO-McClelland Suppl. Decl. ¶ 30; CT-Hadler Suppl. Decl. ¶ 32; ME-Yaffe Suppl. Decl. ¶ 22; OR-Hoffman Suppl. Decl. ¶¶ 21, 26, 31; NY-Tomasky Decl. ¶ 18.

Implementing changes to SNAP, such as the changes made by the OBBB, is a massive undertaking for Plaintiff States, requiring "significant efforts that are both resource- and time-intensive." NJ-Adelman Decl. ¶ 28, ECF No. 18; NC-Hogan Decl. ¶ 23, ECF No. 20; MN-Perry Decl. ¶ 22, ECF No. 17; ME-Yaffe ¶ 21, ECF No. 13; NM-Armijo ¶ 28, ECF No. 19; OR-Hoffman Suppl. Decl. ¶¶ 19, 27, 37. Among other things, States must:

- revise their intake and certification procedures and materials for new and renewing applicants for SNAP benefits, *see*, *e.g.*, NY-DeMarco Decl. ¶ 27, ECF No. 5; DC-Campbell Decl. ¶ 13, ECF No. 10; OR-Hoffman Decl. ¶ 25, ECF No. 6; MD-Burnett Decl. ¶¶ 22, 35, 37; NC-Hogan Suppl. Decl. ¶¶ 27, 37; CT-Hadler Suppl. Decl. ¶¶ 26, 31; MI-Frisch Suppl. Decl. ¶ 23; CO-McClelland Suppl. Decl. ¶ 29; NY-Tomasky Decl. ¶ 18.

- contact potentially affected households, *see*, *e.g.*, OR-Hoffman Decl. ¶¶ 18, 20-21, ECF No. 6; MD-Burnett Decl. ¶ 39; OR-Hoffman Suppl. Decl. ¶ 26(b).

Page 12 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

- re-program their computer systems, *see, e.g.*, OR-Hoffman Decl. ¶ 25, ECF No. 6; CO-McClelland Suppl. Decl. ¶¶ 23, 24, 29; MD-Burnett Decl. ¶¶ 22, 35; NC-Hogan Suppl. Decl. ¶¶ 27, 30, 37; CT-Hadler Suppl. Decl. ¶ 26; OR-Hoffman Suppl. Decl. ¶¶ 26(c), 31(a), 37; NY-Tomasky Decl. ¶ 18.

- re-train their staff, taking hundreds of hours of staff time, *see, e.g.*, NY-DeMarco Decl. ¶ 27, ECF No. 5; NJ-Adelman Decl. ¶ 28, ECF No. 18; ME-Yaffe ¶ 21, ECF No. 13 (more than 800 hours); MD-Burnett Decl. ¶¶ 22, 26, 35; CT-Hadler Suppl. Decl. ¶ 26; MI-Frisch Suppl. Decl. ¶ 23; CO-McClelland Suppl. Decl. ¶¶ 24, 29; NC-Hogan Suppl. Decl. ¶ 30; ME-Yaffe Suppl. Decl. ¶ 24; OR-Hoffman Suppl. Decl. ¶¶ 26(f), 31(c), 37; NY-Tomasky Decl. ¶ 18.

- do outreach to the public to ensure advocates and others are apprised of changes, *see, e.g.*, OR-Hoffman Decl. ¶ 25, ECF No. 6; MD-Burnett Decl. ¶¶ 22, 37; MI-Frisch Suppl. Decl. ¶ 33; NC-Hogan Suppl. Decl. ¶ 39; OR-Hoffman Suppl. Decl. ¶ 37; NY-Tomasky Decl. ¶ 18.

- update their State regulations and formal and information guidance to conform with the federal changes, *see, e.g.*, ME-Yaffe Decl. ¶ 17, ECF No. 13; RI-Merolla-Brito Decl. ¶ 20, ECF No. 21; CO-McClelland Decl. ¶ 21, ECF No. 7; MD-Burnett Decl. ¶¶ 26, 38; NC-Hogan Suppl. Decl. ¶ 40; CO-McClelland Suppl. Decl. ¶ 34; OR-Hoffman Suppl. Decl. ¶¶ 26(e), 37; NY-Tomasky Decl. ¶ 18.

- defend additional administrative hearings for households affected by the changes, *see, e.g.*, NY-DeMarco Decl. ¶ 27, ECF No. 5; OR-Hoffman Decl. ¶ 25, ECF No. 6; NJ-Adelman Decl. ¶ 36, ECF No. 18; CO-McClelland Decl. ¶ 21, ECF No. 7.

The ABAWD changes alone presented "one of the most complex sets of SNAP eligibility changes in the program's history." NC-Hogan Suppl. Decl. ¶ 36. "Cases subject to ABAWD requirements generally take twice as much administrative effort to process compared to non-ABAWD cases, due to the need to regularly verify work hours, earnings, and/or other qualifying work activities." MD-Burnett Decl. ¶ 37. The SUA changes, too, implicated a particularly challenging part of the SNAP regulations for agency staff and were complicated by the fact that households that are no longer automatically eligible for the SUA need to be screened for other utility allowances and present documents to establish eligibility that were not previously required. *See, e.g.*, CT-Hadler Suppl. Decl. ¶ 26; MD-Burnett Decl. ¶ 22; OR-Hoffman Suppl. Decl. ¶ 28.

## VII.    Harm to Plaintiff States

The massive financial penalties imposed on States by the OBBB have made any increase in a State's error rate, no matter how small, potentially catastrophic for Plaintiff States. USDA's

Page 13 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

decision to truncate the error exclusionary period, coupled with its issuance of legally erroneous guidance, has already harmed the States and will continue to do so if the decision is not vacated.

The penalties could be "financially ruinous" for Plaintiff States. OR-Hoffman Decl. ¶ 26, ECF No. 6. In Oregon, the penalties could top $250 million per year, *Id.* at ¶ 27, and other Plaintiff States' potential penalties are similar. *See, e.g.*, NJ-Adelman Decl. ¶¶ 30, 32, ECF No. 18 ($300 million); NC-Hogan Suppl. Decl. ¶ 14 ($420 million); MA-Cole Decl. ¶ 29, ECF No. 15 ($400 million); WA-Reyes Decl. ¶ 33, ECF No. 22 ($200 million). In larger states like New York, the potential penalties top $1 billion per year. *See* NY-DeMarco Decl. ¶ 29, ECF No. 5. The magnitude of these penalties may "effectively end the provision of SNAP" in some States. NC-Hogan Decl. ¶ 25, ECF No. 20. The vast majority of States are likely to face these penalties, as the average State payment error rate is approximately 11% and only a handful of States have a payment error rate under 6%.[10]

Even one error can have tremendous effects on State finances, because the OBBB prescribes different penalties for different bands of error rates. States with an error rate between 8% and 10% have *double* the penalty of States between 6% and 8%. 7 U.S.C. § 2013(a)(2)(B)(i). Thus, a small 0.02% increase in New York's error rate from 7.99% to 8.01% could cost the state an additional $367.5 million. NY-DeMarco Decl. ¶ 29, ECF No. 5. That's exactly what Washington estimates the Non-Citizen Guidance would cause: a 0.41% error rate increase, doubling its penalty from $100 million to $200 million. WA-Reyes Decl. ¶ 33, ECF No. 22.[11]

---

[10] USDA, *Supplemental Nutrition Assistance Program: Payment Error Rates Fiscal Year 2024*, https://perma.cc/728C-N3S4.

[11] Defendants previously argued that because non-citizens account for only 4.4% of total SNAP participants, their eligibility is unlikely to affect error rates. *See* ECF No. 57 at 23–24. This is erroneous, for two reasons. First, each State uses approximately 1,200 cases per year to calculate their error rates—totaling over 25,000 cases for all Plaintiff States, a sample that is likely to include over 1,000 noncitizens. *See* NJ-Adelman Decl. ¶ 31, ECF No. 18 (explaining mechanics of the sampling). Second, as noted above, even very minor changes in a State's error rate can cause massive changes in its penalty amount. Finally, now that this case involves three separate statutory changes—rather than only Section 10108 of the OBBB—the risk to States is that much greater.

Page 14 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

Historically, States have many more errors as they figure out how to implement new guidance. This makes sense, because changes to SNAP take many steps to implement, as described above. The purpose of the exclusionary period is to hold States harmless for 120 days after they implement new changes, precisely for these reasons. But here, States did not have the full 120-day period to implement the Guidance Documents without incurring payment errors. Rather, they had 64 days for the SUA Guidance; 29 days for the ABAWD Guidance; and just one day for the (legally inaccurate) Non-Citizen Guidance. *See supra* Background Section IV. Moreover, when USDA had issued implementing guidance in the past, it had set the required implementation date weeks or months *after* the issuance of its guidance, to allow States time to take all of the steps to prepare for implementation before the 120-day exclusionary period began. Here, USDA deprived States of any pre-implementation period whatsoever and cutting the exclusionary period short.[12]

There is a significant chance that Plaintiff States' error rates will increase due to these truncated exclusionary periods. *See* NY-DeMarco Decl. ¶ 28, ECF No. 5; NJ-Adelman Decl. ¶ 35, ECF No. 18 (States face "significant and crippling financial penalties, without even having had the benefit of USDA-FNS's own interpretation of OBBB before being required to implement it."); MA-Cole Decl. ¶ 32, ECF No. 15; MI-Frisch Decl. ¶ 22, ECF No. 16 ("[L]eaving States with a single weekend day to iron out any issues [with the Non-Citizen Guidance] . . . virtually guarantees an inflated error rate."); OR-Hoffman Suppl. Decl. ¶ 28 ("one of the top three error categories across the nation is the shelter and utility deduction. Inserting a complex new [SUA] policy in this already error prone category . . . will almost assuredly keep payment errors in this category high.");

---

[12] Because USDA has interpreted the exclusionary period to begin with the effective date of the OBBB (July 4, 2025), it had taken the position with at least one State that errors between July 4 and the date that the State agency officially implemented the program change—the date of the "written statewide notification to its eligibility workers," 7 C.F.R. § 275.12(d)(2)(vii)(E)—are not covered by the exclusionary period and are therefore counted against the State. NC-Hogan Suppl. Decl. ¶ 32. In effect, this means that States would have had to implement their own statewide guidance immediately upon the OBBB being signed into law, without the benefit of USDA's interpretation of the law and before they have had any time to implement program changes, in order to take advantage of the full exclusionary period. USDA took this position even though it was also telling States to wait to issue their implementation memos until USDA had issued *its* implementation memo.  MA-Cole Decl. ¶ 14, ECF No. 15

Page 15 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

MD-Burnett Decl. ¶¶ 27, 29; CT-Hadler Suppl. Decl. ¶ 28 (errors related to the accurate application of the SUA has been a leading contributor to Connecticut's payment error rate each year, and they expect it to increase); ME-Yaffe Suppl. Decl. ¶ 23; MI-Frisch Suppl. Decl. ¶¶ 25-27, 33; CO-McClelland Suppl. Decl. ¶ 17 (necessary changes require three to nine months to complete). Because of the compressed time frame for implementing the OBBB changes, States were forced to rush complicated system changes and then institute labor-intensive manual work-arounds that would have normally been avoided, compounding the chance for human errors. *See, e.g.*, NC-Hogan Suppl. Decl. ¶¶ 30, 38, 39; CT-Hadler Suppl. Decl. ¶¶ 27, 33; MI-Frisch Suppl. Decl. ¶ 25-27; ME-Yaffe Suppl. Decl. ¶ 24. They also experienced increased inquiries from local department staff and the public, and needed to defend administrative hearings for impacted households. *See, e.g.*, MI-Frisch Suppl. Decl. ¶ 25-27; CT-Hadler Suppl. Decl. ¶ 27; NC-Hogan Suppl. Decl. ¶ 39; MD-Burnett Decl. ¶ 47 (Maryland experienced a 25% increase in call volume from individuals affected by the non-citizen eligibility changes because of federal guidance inconsistencies). In addition to increasing the cost and burden on the agency, "delayed public communications may independently increase payment error rates, as participant confusion about program rules is a known contributor to payment errors." NC-Hogan Suppl. Decl. ¶ 39.

The problems created by issuing guidance at the last minute were exacerbated by the fact that November 1, 2025, is also the date that Defendants stopped funding SNAP altogether due to the lapse in appropriations, which wreaked havoc on the States and prompted a separate lawsuit. *See* Complaint and Motion for Temporary Restraining Order, *Massachusetts v. USDA*, No. 1:25-cv-13165 (D. Mass., Oct. 28, 2025), ECF Nos. 1, 3; NC-Hogan Suppl. Decl. ¶ 27.

## VIII.   Procedural History

On November 26, 2025, Plaintiffs filed this lawsuit and motion for a preliminary injunction. ECF Nos. 1, 4. On December 10, 2025, USDA released a document called "Supplemental Nutrition Assistance Program (SNAP) Provisions of the One Big Beautiful Bill—

Page 16 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

Alien SNAP Eligibility—Question and Answer #1" ("the Q&A").[13] AR at 30–34 (GOV000029-33), ECF No. 77. In the Q&A, Defendants adopted Plaintiffs' view of the non-citizen eligibility provisions for SNAP, as amended by the OBBB. First, the Q&A conceded that all non-citizens who adjust to LPR status can become eligible for SNAP if they meet other statutory requirements. *See id.* at 32–33 (GOV000031–32). Second, the Q&A conceded that the Humanitarian Immigrant Groups are not "Subject to 5-year Waiting Period After Adjusted Status to LPR." *Id.*

On December 11, 2025, Defendants filed their opposition to the preliminary injunction motion; and Plaintiffs replied on December 12, 2025. ECF Nos. 57, 60. Because USDA had promulgated the new Q&A conceding the eligibility issues in the Non-Citizen Guidance, Plaintiffs narrowed their preliminary injunction motion to only their claims relating to the exclusionary period of the Non-Citizen Guidance. Pls.' Reply at 1, ECF No. 60. On December 15, 2025, the Court granted a preliminary injunction on those claims and ordered the exclusionary period of the Non-Citizen Guidance to be extended until April 9, 2026.[14] ECF No. 64. On January 30, 2026, Plaintiffs filed an amended complaint adding the SUA Guidance, ABAWD Guidance, and Exclusionary Period Memo to their claims regarding the exclusionary period. ECF No. 68.

## ARGUMENT

The Court should grant Plaintiffs summary judgment on all claims. "When reviewing the merits under the Administrative Procedure Act (APA), 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Or. Nat. Desert Ass'n v. Bushue*, 644 F. Supp. 3d 813, 822

---

[13] USDA released a prior version of the Q&A on the preceding day, December 9, 2025 (the "Original Q&A"). Hartmann Decl. ¶¶ 2-3, ECF No. 61. The December 10 revised version is also labeled as having been issued on December 9, 2025, but was in fact issued on December 10. According to USDA, the revision on December 10 was "due to a typo," but in reality there was a substantive change between the December 9 and December 10 versions relating to one of the Humanitarian Immigration Groups. *Compare* ECF No. 61-1 *with* ECF No. 61-2. In any event, all Parties rely on the December 10 version.

[14] Defendants have filed an appeal of the Court's preliminary injunction order, which remains pending. *See New York v. Rollins*, No. 26-911 (9th Cir. 2026).

Page 17 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

(D. Or. 2022) (quoting *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985)). Section 706 of the APA directs that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. Courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." *Id.* § 706(2)(A). As demonstrated below, the challenged Guidance Documents are arbitrary and capricious and contrary to law, and so the Court should grant Plaintiffs summary judgment; vacate the Guidance Documents' exclusionary periods; and issue a declaratory judgment.[15]

## I.    The Court Has Jurisdiction Over This Action

The Court has jurisdiction over this action. Specifically, Plaintiff States have standing and their claims are ripe, because the Guidance Documents have "definite and concrete" effects on Plaintiff States, starting immediately. *Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 943–44 (9th Cir. 2021). As detailed *supra* Background Section IV, each of the Guidance Documents indicates that the end of the "exclusionary period"—that is, the date the Plaintiff States

---

[15] In a case challenging agency action, "[a] court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019). However, there are several exceptions to this rule, including for the purpose of establishing Plaintiffs' standing, *see Northwest Envtl. Defense Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1528 (9th Cir. 1997), and in cases when the administrative record fails to provide "genuine justifications for important decisions . . . that can be scrutinized by the courts and the interested public." *Dep't of Commerce,* 588 U.S. at 785. For example, consideration of extra-record evidence is appropriate when "necessary to determine 'whether the agency has considered all relevant factors and has explained its decision.'" *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) (quoting *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)). Here, Defendants have failed to provide any justification whatsoever for their interpretation of the exclusionary period and departure from past practice. *See supra* Background Section V. Therefore, Plaintiffs have submitted declarations from State Agency officials that (1) demonstrate that Plaintiff States suffered injury-in-fact, establishing jurisdiction, *Dep't of Commerce, 588 U.S. at 781*, and (2) explain States' reliance interests in order "to develop a background against which [the Court] can evaluate the integrity of the agency's analysis" and to "help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious." *San Luis & Delta-Mendota Water Auth.*, 776 F.3d at 992–93.

Page 18 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

will no longer be held harmless for payment errors made in implementing the Guidance Documents—was November 1, 2025. As the Court has found as to the Non-Citizen Guidance, Plaintiff States face significant, irreparable harm stemming from the exclusionary periods that can be redressed only by Court intervention. Prelim. Inj. Hr'g Tr. 132:8-133:8. The declarations submitted by Plaintiff States illustrate the practical effect of the Guidance Documents' truncated exclusionary periods on State Agencies' ability to comply with the law and the resulting increase to their payment error rates, with severe consequences under the OBBB's new State Quality Control Incentive. *See supra* n. 1 and Background Section VII.

Further, to the extent Defendants may argue that Counts I and II, Plaintiffs' claims regarding the eligibility issues in the Non-Citizen Guidance, are moot due to the publication of the Q&A, the Court should reject that contention, grant Plaintiffs' motion for summary judgment on those claims, and issue a declaratory judgment—which is the only relief Plaintiffs seek on these claims. A "party asserting mootness bears the burden of establishing that there is no effective relief that the court can provide" due to some development after the complaint was filed. *Forest Guardians v. Johans*, 450 F.3d 455, 461 (9th Cir. 2006). This is a "heavy" burden, as "a case is not moot where any effective relief may be granted." *Id*. (citation omitted). This case is not moot, as Defendants have not withdrawn the Non-Citizen Guidance and the Court can still provide effective relief: a declaratory judgment clarifying non-citizen eligibility for SNAP following the OBBB, an issue affecting all of Plaintiff States' benefits agencies and millions of people in Plaintiff States.

Nor can Defendants moot Plaintiffs' claims by voluntarily choosing to issue further guidance that contradicts their prior, unlawful Non-Citizen Guidance rather than face this litigation. "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (citation modified). Were it otherwise, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating the cycle until he achieves all of his unlawful ends." *Already LLC v. Nike*, 568 U.S. 85, 91 (2013). Only if the party asserting mootness

Page 19 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

meets its "heavy burden" to prove that "subsequent events ma[k]e it absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur" will a case be moot. *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Here, USDA could revert to its prior, unlawful interpretation of the OBBB's changes to the FNA's non-citizen eligibility provisions as soon as this lawsuit concludes. Accordingly, Defendants' voluntary adoption of the Q&A did not moot any of Plaintiffs' claims.

## II.    The Guidance Documents Are Contrary to Law and Arbitrary and Capricious

Defendants' actions—issuing legally erroneous guidance about the SNAP eligibility requirements for non-citizens and unilaterally truncating the exclusionary rule for errors stemming from agency actions—violate the APA, in that they are both "not in accordance with law" and "arbitrary [and] capricious." 5 U.S.C. § 706(2)(A).

### A.    The Guidance Documents Are Final Agency Action Subject to Review Under the APA.

All four Guidance Documents are "final agency action" subject to review under the APA. Tr. 128:20-129:17. Each Guidance Document: (1) "mark[ed] the consummation" of agency decision-making, and (2) determined "rights or obligations . . . from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation modified). Finality is "interpreted in a pragmatic and flexible manner," "focus[ing] on the practical and legal effects of the agency action." *Saliba v. U.S. Sec. & Exch. Comm'n*, 47 F.4th 961, 967 (9th Cir. 2022) (quoting *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006)). Consistent with the Supreme Court's holdings, in the Ninth Circuit there are "several avenues for meeting" the requirement that the agency action "is one by which rights *or* obligations have been determined, *or* from which legal consequences will flow.'" *Or. Nat. Desert Ass'n*, 465 F.3d at 986  (emphasis in original; citations omitted). "The final agency action requirement is meant to prevent premature intrusion by courts into the agency's deliberations, not to insist that parties keep knocking at the agency's door when the agency has already made its position clear." *Prutehi Litekyan: Save Ritidian v. U.S.*

Page 20 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

*Dep't of Airforce*, 128 F.4th 1089, 1109 (9th Cir. 2025) (citation modified), *cert. granted*, *Dept. of Air Force v. Prutehi Guahan*, No. 25-579, 2026 WL 642829 (U.S. Mar. 9, 2026).

As the Court has previously found, the Non-Citizen Guidance is final agency action. There can be no doubt that USDA "expected" "immediate compliance with" the Non-Citizen Guidance's eligibility provisions. *Or. Nat. Desert Ass'n* at 987 (quoting *Ukiah Valley Med. Ctr. v. F.T.C.*, 911 F.2d 261, 264 (9th Cir. 1990)). It says as much: "State agencies must immediately apply the new eligibility criteria to new applicants." Non-Citizen Guidance 4, AR at 21 (GOV000020), ECF No. 77. The Guidance indicates that thousands of non-citizens who were eligible for SNAP on October 30, 2025, were suddenly ineligible the next day based only on the Guidance itself; that effect could not be more "direct and immediate." *Or. Nat. Desert Ass'n* at 987. As the Court explained in its oral ruling, the Non-Citizen Guidance "provides that state agencies must immediately apply the new eligibility criteria" and thus was final agency action. Tr. 129:2-3.

So too for each Guidance Document's exclusionary period. Each Guidance Document "mark[ed] the consummation" of USDA's decision-making because, by its own terms, it set an exclusionary period with a specific end date, concluding USDA's decision-making as to what that date would be. *See Bennett*, 520 U.S. at 178. Nothing suggests that any of the exclusionary periods are "merely tentative or interlocutory." *Id*. Rather, they represent a "definitive statement of the agency's position," a hallmark of finality. *Prutehi Litekyan*, 128 F.4th at 1108.

As to the second prong, each Guidance Document's exclusionary period determines "rights or obligations . . . from which legal consequences will flow." *Bennett*, 520 U.S. at 178. "Far from being purely advisory," the Guidance Documents "lay[] the groundwork for" USDA's future determination of States' error rates, with billions of dollars at stake. *Prutehi Litekyan*, 128 F.4th at 1112 (citation modified); *Doe 1 v. Mayorkas*, 530 F. Supp. 3d 893, 912 (N.D. Cal. 2021) (agency policies "that attach legal consequences to future proceedings satisfy the finality analysis"); *see also Or. Nat. Desert Ass'n*, 465 F.3d at 987; *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 780 (9th Cir. 2000). As to Plaintiff States, there is no question that "compliance" was "expected." *Prutehi Litekyan*, 128 F.4th at 1108. Indeed, that is the *whole point* of the exclusionary

Page 21 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

period: to tell States the day on which full compliance was expected. The Guidance Documents themselves are clear on this point; they were sent to "All SNAP State Agencies" and announced the "exclusionary period end date" for each of the relevant provisions. AR at 13, 18, 22 (GOV000012, 17, 21), ECF No. 77; *see Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1023 (D.C. Cir. 2000) (finding action final where agency had "given the States their 'marching orders' and . . . expect[ed] the States to fall in line"); *see also* Tr. 129:4-6 ("[T]he US Department of Agriculture contemplated [the Non-Citizen Guidance] to be the guidance that states were required to comply with.").

Defendants' primary argument in opposing finality at the preliminary injunction stage was that the Non-Citizen Guidance was an interpretive rule and that interpretative rules are not final agency action. But as Plaintiffs pointed out, and the Court recognized, the Supreme Court has recently "affirm[ed] that interpretive rules can be final." *Cal. Cmtys. Against Toxics v. E.P.A.*, 934 F.3d 627, 635 (D.C. Cir. 2019) (citing *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015)); *see also* Tr. 128:20-24. Thus, "the test for finality is independent of the analysis for whether an agency action is a legislative rule rather than an interpretive rule." *Id.*; *see also U.S. Army Corps. of Engineers v. Hawkes Co., Inc.*, 578 U.S. 590, 599-600 (2016).

### B. The Non-Citizen Guidance Regarding Non-Citizen Eligibility Violates the APA (Counts I and II)

#### 1. The Non-Citizen Guidance Is Contrary to Law

*All Non-Citizens Who Adjust Status to LPR Status Are Eligible for SNAP Benefits:* The Non-Citizen Guidance unlawfully designates certain groups of non-citizens as categorically "Not eligible"[16] for SNAP while designating other groups as "Not eligible unless an LPR."[17] But under

---

[16] Refugees, Individuals Granted Asylum, Parolees, Certain Afghan Parolees, Certain Ukrainian Refugees, and Deportation Withheld. Guidance at 7–8, AR at 25–28 (GOV000024–27), ECF No. 77.

[17] Certain American Indians Born Abroad, Hmong or Highland Laotian Tribal Members, Conditional Entrants, Battered Aliens, and Victims of Severe Trafficking and Certain Family Members. Guidance at 7, AR at 25 (GOV000024), ECF No. 77.

Page 22 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

the FNA, both are situated exactly the same: after the passage of the OBBB, members of both groups are ineligible for SNAP but become eligible for SNAP once they have adjusted to LPR status. By creating a false dichotomy, the Non-Citizen Guidance erroneously indicates that some groups can never become eligible for SNAP benefits. This is contrary to the SNAP statute. Specifically, under the FNA as amended by the OBBB, LPRs are eligible to participate in SNAP, regardless of what status they held prior to adjusting to LPRs. 7 U.S.C. § 2015(f)(2)(B). As USDA regulations provide, "Each category of eligible alien status stands alone for purposes of determining eligibility. Subsequent adjustment to a more limited status does not override eligibility based on an earlier less rigorous status." 7 CFR § 273.4(a)(6)(iv); Non-Citizen Guidance at 5, AR at 48 (GOV000047), ECF No. 77. All these groups can be eligible for SNAP under PRWORA as well, which was unchanged by the OBBB. 8 U.S.C. §§ 1612(a)(2)(A),(G), (K), (L)); 8 U.S.C. §§ 1641(a), (b); 7 CFR § 273.4(a)(6)(i)-(ii). In other words, whatever status an LPR held before attaining that status is irrelevant to SNAP eligibility. Defendants appear to have conceded this point by promulgating the Q&A that corrects this error. Q&A 3-4, AR at 31–32 (GOV000030–31), ECF No. 77; Opp'n 16, ECF No. 57 (USDA "agrees" with Plaintiffs' view that "[r]egardless of the status they once held, any non-citizen who adjusts to LPR status can become eligible for SNAP if they meet other statutory requirements").

*Humanitarian Immigrant Groups Are Not Subject to PRWORA's Five-Year Waiting Period:* The Non-Citizen Guidance omits Humanitarian Immigrant Groups (as defined *supra* Background Section III) from its list of groups of LPRs that can be eligible for SNAP immediately upon adjusting to LPR status because their prior status made them exempt from PRWORA's five-year waiting period. This is contrary to law because it contradicts the statutory requirements.

Specifically, PRWORA provides that "qualified aliens" may only be eligible for SNAP if they satisfy an "exception" under the statute. 8 U.S.C. §§ 1612(a)(1), (a)(2). One exception provides that LPRs may become eligible for SNAP after having resided in the U.S. as a qualified alien for at least five years (thus giving rise to the five-year waiting period), *id.* § 1612(a)(2)(L), but the statute provides several other exceptions that do not include any waiting period, including

Page 23 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

admission as a Refugee, Individuals Granted Asylum, and Deportation Withheld. *Id.* §§ 1612(a)(2)(A)-(K), (N). Since Humanitarian Immigrant Groups are all exempted without a waiting period under PRWORA,[18] they are eligible for SNAP benefits as soon as they adjust to LPR status. 8 U.S.C. § 1612(a)(2)(A)(i)-(iii).[19] USDA's regulations are likewise clear that Humanitarian Immigrant Groups are exempted from the waiting period. Regulations divide "qualified aliens" into two groups: those who "must be in a qualified status for 5 years before being eligible to receive food stamps," 7 C.F.R. § 273.4(a)(6)(iii), and those who are "not subject to the requirement to be in qualified status for 5 years," including Humanitarian Immigrant Groups. *Id.* § 273.4(a)(6)(ii).

The Non-Citizen Guidance recognizes that several groups are exempt from PRWORA's five-year waiting period—but not Humanitarian Immigrant Groups. See Non-Citizen Guidance 5-7, AR at 23–26 (GOV000022-25), ECF No. 77 (listing categories as "Eligible immediately" or "without a waiting period" after becoming LPRs). There is no basis to omit Humanitarian Immigrant Groups from this category of exempted groups; they are equally exempt from PRWORA's five-year waiting period once adjusting to LPR status. Here, too, Defendants have conceded that the Non-Citizen Guidance is erroneous. AR at 31–32 (GOV000030–31), ECF No. 77; Opp'n 17–18, ECF No. 57 ("all parties agree" that the Humanitarian Immigrant Groups, "if

---

[18] Refugees, Individuals Granted Asylum, and Deportation Withheld categories are exempted under 8 U.S.C. § 1612(a)(2)(A)(i)-(iii). Certain Afghan and Ukrainian Parolees, Iraqi and Afghan SIV, and Victims of Severe Trafficking are granted the same eligibility for SNAP as Refugees by statute, and are therefore also subject to the exemption granted to Refugees. *See, e.g.,* The Extending Government Funding and Delivering Emergency Assistance Act, Pub. L. 117-43 § 2502(b)(1), 135 Stat. 344, 377 (Sept. 30, 2021); Additional Ukraine Supplemental Appropriations Act, 2022, Pub. L. 117-128 § 401(b)(1), 136 Stat. 1211, 1218 (May 21, 2022); The Department of Defense Appropriations Act, 2010, Pub. L. 111-118, § 8120(a)-(b), 123 Stat. 3409, 3457 (Dec. 19, 2009); 22 U.S.C. § 7105(b)(1)(A).

[19] PRWORA exempts Humanitarian Immigrant Groups from the prohibition on receiving SNAP benefits "until 7 years after the date" that they are admitted as a refugee, granted asylum, or their deportation is withheld, 8 U.S.C. §§ 1612(a)(2)(A)(i)–(iii), the very same exception applicable to Cuban and Haitian Entrants and Amerasians. Id. §§ 1612(a)(2)(A)(iv), (v). Inexplicably, the Guidance states Amerasians and Cuban and Haitian Entrants are not subject to the five-year waiting period but does not do the same for Humanitarian Immigrant Groups. See Non-Citizen Guidance 6-7, AR at 33–34 (GOV000032–33), ECF No. 77.

Page 24 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

adjusted to LPR status . . . would be immediately eligible for SNAP benefits based on their original status within one or more of the preceding exempt groups under PRWORA").

### 2.    The Non-Citizen Guidance Is Arbitrary and Capricious (Count II)

The Non-Citizen Guidance is arbitrary and capricious for two reasons with respect to the non-citizen eligibility provisions.

First, USDA failed to explain its underlying reasons for treating LPRs differently based on how they obtained that status, a significant departure from past practice. To survive arbitrary-and-capricious review, agency actions must be "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). While a court may not "substitute its own policy judgment for that of the agency," *id.*, it must ensure that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation modified). An agency changing position must "at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).

Here, the Guidance does not reasonably explain the decision to cancel financial food assistance for some lawful residents based on their status prior to becoming such residents. The lack of explanation is especially stark because, previously, USDA treated these groups the same, and nothing in the OBBB justifies the creation of two separate categories in the Guidance—"Not eligible" and "Not eligible unless an LPR." *See Nw. Env't. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 687 (9th Cir. 2007) (an agency changing position "must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored" (quotation omitted)). Nor does the Guidance explain why USDA is departing from its long-standing instructions that PRWORA exempts the Humanitarian Immigrant Groups from the five-year waiting period. USDA had never before questioned the Humanitarian Immigrant Groups' exemption from PRWORA's waiting period, even after adjusting to LPR status. USDA's past

Page 25 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

"Guidance on Non-Citizen Eligibility," first published in 2011, was crystal clear: "[t]hose non-citizens are exempt from the five-year residency requirement and are eligible indefinitely," even "after adjustment of status to LPR. Their exemption from the five-year waiting period is not affected by their adjustment to LPR status."[20] Until recently, the USDA's website also explained that Humanitarian Immigrant Groups were exempt from PRWORA's waiting period.[21]

Nothing in the Administrative Record sheds light on this decision. To the contrary, the administrative record confirms that the agency failed to conduct any analysis, publicly or internally. The grounds that the agency invokes and the explanation it provides must be "clear enough that its 'path may reasonably be discerned.'" *Encino Motorcars*, 579 U.S. at 221. The administrative record, which "must consist of 'all documents and materials directly or indirectly considered by the agency decision-makers,'" lacks any materials besides the Guidance Memos and a handful of regulations and statutes. *New York v. McMahon*, No. 25-10601-MJJ, 2026 WL 622484, at *2 (D. Mass. Feb. 11, 2026). Thus, the agency has conceded that its consideration was narrow and did not include consideration of even a single fact, any analysis of alternatives, or any awareness of the agency's change in position. And "when an agency fails 'to provide even that minimal level of analysis,' . . . 'its action is arbitrary and capricious.'" *New York v. Trump*, No. 25-1236, 2026 WL 734941, at *11 (1st Cir. Mar. 16, 2026).

Second, USDA did not consider Plaintiff States' serious reliance interests and harms that would flow from their action. The APA requires agencies to "pay[] attention to the advantages *and* the disadvantages" of their decisions. *Michigan v. E.P.A.*, 576 U.S. 743, 753 (2015) (emphasis in original). When an agency changes an existing policy, "its reasoned analysis must consider the alternatives that are within the ambit of the existing policy" and any "serious reliance interests"

---

[20] USDA, *Supplemental Nutrition Assistance Program Guidance on Non-Citizen Eligibility* 3, 12 (June 2011), https://perma.cc/6NXW-2G66.

[21] USDA, *SNAP Eligibility for Non-Citizens*, accessed July 18, 2025, https://web.archive.org/web/20250718231851/https://www.fns.usda.gov/snap/recipient/eligibility/non-citizen.

Page 26 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

engendered by the status quo. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (citation modified). Plaintiff States, which depend on SNAP funding to feed their residents and which had repeatedly requested implementing guidance as to the OBBB's non-citizen eligibility provision, faced significant harm from the erroneous guidance, and the Administrative Record shows that USDA did not consider this harm. That failure independently renders the Guidance arbitrary and capricious.

### C.   The Guidance Documents' Exclusionary Periods Violate the APA

### 1.   The Exclusionary Period Is Contrary to Law (Count III)

Defendants' interpretation of the exclusionary period in the SUA Guidance, the ABAWD Guidance, the Non-Citizen Guidance, and the Exclusionary Period Memo is irreconcilable with the text of the statute and with the agency's own regulations. The Guidance Documents concede that USDA is required to provide a 120-day exclusionary period. What they get wrong is when the exclusionary period starts—the "required implementation date" of the guidance. The Guidance Documents state a required implementation date that precedes the dates on which these implementing guidance memos were issued—but both statute and regulation require (sensibly) that the exclusionary period starts *after* the agency action in question.

As discussed above, the Guidance Documents were issued 56 days (SUA), 91 days (ABAWD), and 119 days (non-citizen eligibility) after the enactment of the OBBB. The Guidance Documents describe themselves as either "implementation memorand[a]" or otherwise specifically state that they are providing "information on implementing" OBBB's changes. AR at 9, 15, 19, (GOV000008, 14, 18), ECF No. 77. They assert that Sections 10102 (ABAWD), 10103 (SUA), and 10108 (non-citizen eligibility) of the OBBB were "effective upon enactment."[22] AR at 12, 16, 21 (GOV000011, 15, 20), ECF No. 77. But the Guidance Documents state that the

---

[22] To be clear: Plaintiff States do not dispute that the OBBB became effective on July 4, 2025, and that OBBB's changes to SUA calculations, ABAWD work requirements, and non-citizen eligibility were in effect from that date. Rather, they object to the Defendants' decision to start counting payment errors stemming from the changes in federal law prior to 120 days after the issuance of legally correct implementing guidance.

Page 27 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

exclusionary period ended on November 1, 2025—120 days after the enactment of the OBBB rather than from the issuance of the implementing guidance. AR at 13, 18, 22 (GOV000012, 17, 21). In other words, they take the position that the exclusionary period must start on the effective date of the statutory changes, even where the agency has not yet issued implementing guidance. This interpretation would penalize States for any errors occurring far sooner than 120 days after the agency issued memoranda necessary to implement the statutory changes.[23]

The text of the exclusionary period statute and regulations both provide for an exclusionary period in which certain errors do not count towards a State's payment error rate, and which begins on the "required implementation date" of a change in federal statute or regulation and ends 120 days later. Specifically, the FNA excludes from the USDA's quality control review: (1) "[a]ny errors resulting in the application of new regulations . . . during the first 120 days from the required implementation date for such regulations," and (2) "[e]rrors resulting from . . . actions based on policy information approved or disseminated, in writing, by the Secretary or the Secretary's designee." 7 U.S.C. § 2025(c)(3). USDA's regulations in turn provide that the agency must exclude any "variance resulting from application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law that occurs during the first 120 days from the required implementation date." 7 C.F.R. § 275.12(d)(2)(vii). Variance is defined to include "the incorrect application of policy." 7 C.F.R. § 271.2.

Neither statute nor regulation define "required implementation date," but the text of both makes plain that term "required implementation date" cannot come before the agency policy is articulated. In the FNA, it is the agency action, *not* a preceding statutory change, that sets off the exclusionary period. Similarly, in the text of the regulation, the term "required implementation

---

[23] Moreover, USDA has taken the logically incoherent position with at least one state, North Carolina, that not only does the exclusionary period end on November 1, but the exclusionary period cannot begin until after the State implemented the OBBB changes with a statewide notice, meaning that States would have had to implement changes immediately—without any notice or any guidance—in order to take full advantage of the hold-harmless period. *See* NC-Hogan Suppl. Decl. ¶ 32.

Page 28 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

date" refers back to the term "implementing memorandum of a mandatory or optional change in Federal law" or regulation. No implementation date is "required" (or even possible) before there is an "implementing memorandum" or regulation that implements, but is not the same as, the relevant "change in Federal law." *Id.* And, to be clear, the SUA Guidance, the ABAWD Guidance, and the Non-Citizen Guidance all describe themselves as "implementing" OBBB's changes. AR at 9, 15, 19, (GOV000008, 14, 18), ECF No. 77.

This reading is consistent with the broader regulatory scheme. The regulations are exceedingly detailed, and at every turn support the same conclusion: the exclusionary period is designed to give States a 120-day window to implement changes without being penalized, with no windfall to States who do not use that period to implement the change. *See* 7 C.F.R. § 275.12(d)(2)(vii)(C), (providing no exclusionary period for states that fail to implement during that period at all); § 275.12(d)(2)(vii)(D) (exclusionary period ends at the close of 120 days, regardless of when in that period the state actually begins to implement). Nor would it be possible for agencies to count errors prior to the issuance of an implementation memo, as they are charged with counting "the incorrect application of policy," and the implementation memo *is* the policy. 7 C.F.R. § 271.2 (defining "variance"); § 275.12(d) (variance is unit of error analysis).

This reading also makes intuitive sense. The statutes governing SNAP eligibility are complicated and some of them are not incorporated into the United States Code. *See, e.g.*, eligibility for Iraqi and Afghani SIV holders, which is governed by the Department of Defense Appropriations Act, 2010, Pub. L. 111-118, § 8120(a)-(b), 123 Stat. 3409, 3457 (Dec. 19, 2009). Statutory changes often do not include necessary details about how States are to implement changes to the program, and the USDA will typically provide detailed instructions to ensure "uniform standards of eligibility." *See* 7 U.S.C. § 2014(b); *see also id.* § 2020(e)(5) (requiring that State Agency standards be uniform). Additionally, USDA is charged with promulgating regulations to implement the SNAP statutes, and States are required to follow these regulations. *See id.* § 2013(c). When the law changes, USDA must direct States how to comply with the changes, which is especially important where States may have to disregard regulations that remain on the books.

Page 29 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

This is true here, where USDA's regulations still reflect the state of the law pre-OBBB. *Compare* 7 U.S.C. § 2015(f) *with* 7 C.F.R. § 273.4. Only after USDA issues its guidance or regulations explaining changes to the law do States begin the complex process of implementing program changes. And they can do so because the exclusionary period serves its purpose: to not penalize States for errors at the start of their implementation efforts in order to allow them a period of time after conforming their systems to changes in the law. This sequence—implementation guidance or regulation followed by actual implementation—serves the FNA's objective of uniformity and avoids the untenable situation in which some States implement an eligibility provision in a manner that allows certain groups of people to qualify for benefits, while other States reach a different interpretation.

USDA's contrary position lacks any limiting principle. If USDA could start the exclusionary period on the date the statute was enacted regardless of whether any implementing guidance had been issued, there is nothing to stop it from waiting months or even years after that period expired to issue implementing guidance and then finding that a State had erred in not following policy that had not yet been communicated. This contravenes the general principle that "'[r]etroactivity is not favored in the law,'" and the "interpretive corollary that 'congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.'" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 264 (1994) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). Here, the statute and regulations should be read to mean what they always have meant: the required implementation date that starts the exclusionary period is set no earlier than the agency policy is communicated.

### 2. The Guidance Documents' Exclusionary Periods Are Arbitrary and Capricious (Count IV)

Each Guidance Document announced that USDA had *already* started the exclusionary period months before, even though it had not told Plaintiffs (or anyone else) that it had done so and had not yet promulgated guidance that States needed to implement the OBBB. Back-dating

Page 30 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

the implementation date of guidance to a date before that guidance was issued is fundamentally arbitrary and capricious, and Defendants have not offered any reasonable justification for it.

An agency decision is unlawfully arbitrary and capricious if, *inter alia*, the agency failed to "articulate a satisfactory explanation for its action," or it is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43. Here, the Guidance Documents are arbitrary and capricious because they provide no reasoning— let alone a "satisfactory explanation"—for USDA's decision to make the required implementation date fall *before* the issuance of implementation memoranda for each OBBB provision. *See Montana Wildlife Federation v. Haaland*, 127 F.4th 1, 40–41 (9th Cir. 2025). This Court need not "defer to a void," where the agency has failed to explain itself. *Or. Nat. Desert Ass'n v. Bureau of Land Management*, 625 F.3d 1092, 1121 (9th Cir. 2010).

Defendants fail to provide any explanation for the exclusionary periods set forth in the Non-Citizen Guidance, SUA Guidance, and ABAWD Guidance, instead summarily asserting in each document that the exclusionary period must start on the effective date of the OBBB, July 4, 2025. The Exclusionary Period Memo likewise provides no actual explanation, and instead repeats circular statements ("certification errors resulting from the application of a new change in Federal law that occurs during the first 120 days from the required implementation date is [*sic*] excluded from the Quality Control (QC) error analysis"). None of these documents provides any explanation of how the agency reached its conclusion that the FNA and agency regulations require the conclusion that the "required implementation date" and the effective date of the OBBB are one and the same. Indeed, they fail to even acknowledge that "the required implementation date" is not synonymous with the statute's effective date. This is, on its own, a basis for finding the Guidance Documents arbitrary and capricious. *State Farm*, 463 U.S. at 43; *see also Dep't of Commerce v. New York*, 588 U.S. 752, 785 (2019) ("Reasoned decisionmaking under the Administrative Procedure Act calls for an explanation for agency action. What was provided here was more of a distraction."); *Nat'l Parks Conservation Ass'n v. E.P.A.*, 788 F.3d 1134, 1142-43 (9th Cir. 2015) (decision "unsupported by any explained reasoning" was arbitrary and capricious). And in any

Page 31 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

event, the administrative record makes plain that the agency could not have proffered a reasonable explanation for this change—it was adopted without consideration of any facts, including agency practices, State reliance interests, and the significant practical considerations that make implementation of changes to complex benefits programs difficult.

The purpose of the exclusionary period is to hold States harmless in the payment error rate for a short period after they implement new changes, when States see an increase in errors as they undertake the many steps needed to ensure compliance. *See supra* Background Section II. That is why the start of the exclusionary period is the "required *implementation* date"—that is, the date by which States must *implement* the required changes. Here, where many aspects of implementation (including whether to implement across an agency's entire caseload, or to implement at certification and re-certification) were left ambiguous by the statute, States needed guidance before they could implement. And when it became increasingly clear that they might not get that guidance, some States started to undertake implementation, creating a patchwork of outcomes from jurisdiction to jurisdiction—the very outcome the FNA directs the agency to avoid. *See, e.g.*, 7 U.S.C. § 2014(b) (requiring "uniform national standards of eligibility" for SNAP). Moreover, Defendants did not disclose to States that the exclusionary period's clock had begun to run until about half—or, as to the Non-Citizen Guidance, virtually all—the time had expired. There is no "satisfactory explanation," *State Farm*, 463 U.S. at 43, for waiting to disclose this information.

The Non-Citizen Guidance is illustrative. For the first 118 days after the OBBB was enacted, USDA did not issue any guidance *at all* regarding implementation of the OBBB's changes in non-citizen eligibility. To the contrary, in early September it had instructed "[a]ll SNAP State Agencies" that, as to this provision, "[f]urther guidance is forthcoming." AR at 3 (GOV000002), ECF No. 77. During that period, State Agencies repeatedly reached out to USDA for guidance about how to implement the OBBB's changes to non-citizen eligibility, but either received no response or were told that guidance was forthcoming. HI-Morishige Decl. ¶ 21, ECF No. 11; MA-Cole Decl. ¶¶ 14-17, ECF No. 15; MD-Lopez Decl. ¶¶ 22-24, ECF No. 14; MI-Frisch Decl. ¶ 18, ECF No. 16; NY-DeMarco Decl. ¶ 20, ECF No. 5; RI-Merolla-Brito Decl. ¶ 18, ECF No. 21; WA-

Page 32 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

Reyes Decl. ¶¶ 12-14, ECF No. 22. Indeed, USDA affirmatively instructed Massachusetts' benefits agency to wait to implement the OBBB changes until USDA provided guidance. MA-Cole Decl. ¶ 14, ECF No. 15. Then suddenly, on the 119th day after the OBBB was passed, Defendants first issued the Non-Citizen Guidance directing States how to implement the OBBB's changes to non-citizen eligibility. AR at 3–6 (GOV000002-5), ECF No. 77. At the same time, the Non-Citizen Guidance asserted that the exclusionary period had begun on the day the OBBB was enacted, July 4, 2025—119 days earlier. *Id.* at 2. States, of course, had no way of knowing that they had already lost 119 of the 120 days they had to implement without incurring payment errors and, indeed, had been told the opposite. This is arbitrary and capricious. *See, e.g., Casey v. Berryhill*, 853 F.3d 322, 329 (7th Cir. 2017) (Finding arbitrary and capricious a "U-turn by an agency that had the effect of a bureaucratic bait-and-switch").

The Guidance Documents are arbitrary and capricious for a second, independent reason: they fail to acknowledge that the agency is departing from its ordinary practice of permitting variances without penalty for 120 days based on the date set after the issuance of the relevant guidance and provided no justification or reason for this departure. Where an agency changes its position, it must "provide a reasoned explanation for the change [and] display awareness that [it has a] changing position." *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 568 (2025) (citation modified). In addition, when an agency rescinds a "longstanding" position, it must consider any "serious reliance interests" it may have engendered, "determine whether they [are] significant, and weigh [them] against competing policy concerns." *Regents*, 591 U.S. at 30, 33 (citation modified); *see also FDA*, 604 U.S. at 569–70. An agency may not depart from its prior position *sub silentio. Fox Television Stations, Inc.*, 556 U.S. at 515.

Here, USDA's decision to calculate the 120-day variance period starting on a date before the Guidance Documents were issued was a significant departure from past practice in which USDA (reasonably) required States to comply with guidance only after that guidance existed. *See, e.g.*, CT-Hadler Suppl. Decl. ¶¶ 16-20; MD-Burnett Decl. ¶¶ 15-17; MI-Frisch Suppl. Decl. ¶ 16; OR-Hoffman Suppl. Decl. ¶¶ 17-19; NY-Tomasky Decl. ¶¶ 23-25. Longstanding USDA practice

Page 33 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

is to implement changes in the law via implementing memos that set the "required implementation date." Thus, in previous agency implementing guidance, the "required implementation date" was a date set after—often, weeks or months after— the issuance of the implementing guidance, which itself came after the change in the law. *See supra* Background Section II (describing many examples of past USDA guidance). But Defendants did not explain (or even acknowledge) what led them to change their practice for the OBBB's changes.

Finally, the Guidance Documents are arbitrary and capricious for a third reason: there is no indication in the AR that Defendants considered the States' reliance interests. Specifically, Plaintiff States relied upon USDA's longstanding practice of issuing implementation guidance prior to the start of the exclusionary period, and they were waiting for guidance from USDA before they implemented the OBBB's changes. Defendants have argued that States should have started implementing on July 4, ECF No. 27 at 27, but USDA did not disclose that it intended to depart from its longstanding practice of issuing guidance before the start of the exclusionary period and in fact told Plaintiff States that guidance was forthcoming, AR at 3 (GOV000002), ECF No. 77, and told at least two States that they should wait to implement. MA-Cole ¶ 14, ECF No. 15; OR-Hoffman Suppl. Decl. ¶ 20. Defendants created this reliance interest and then ignored it. This, too, violates the APA. *See Regents*, 591 U.S. at 30.

## III.    Vacatur and Declaratory Relief Are Appropriate Remedies.

Plaintiffs seek vacatur of the Guidance Documents' exclusionary periods. "[T]he APA requires th[e] Court to set aside unlawful or inadequately reasoned agency action. To set aside agency action is to annul or vacate it. Thus, vacatur is the presumptive remedy for unlawful agency action." *New York v. United States Dep't of Energy*, No. 6:25-CV-01458-MTK, 2025 WL 3140578, at *16 (D. Or. Nov. 10, 2025) (citation modified); *accord Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826–27 (2024) (Kavanaugh, J., concurring) ("The Federal Government and the federal courts have long understood § 706(2) to authorize vacatur of unlawful agency rules."); *Mass. v. Nat'l Institutes of Health*, 770 F. Supp. 3d 277, 329 (D. Mass. 2025) ("The normal remedy for a successful APA challenge is vacatur of the rule and its applicability to

Page 34 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

all who would have been subject to it.") (collecting cases). Where, as here, "only part of an agency rule or order" is challenged, vacatur of the challenged portion is appropriate, as it is "severable from [the] remainder." *New York*, 2025 WL 3140578, at *16 (quotation omitted). Accordingly, the Court should vacate the exclusionary period in each of the four Guidance Documents. The Court should also declare that the Guidance Documents' exclusionary periods are unlawful, which would "serve a useful purpose in clarifying and settling" the legality of the exclusionary periods and "will terminate and afford relief from the uncertainty, insecurity, and controversy" caused by it. *See Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984) (citation modified).

Plaintiffs also seek a declaratory judgment confirming, as articulated in USDA's Q&A, that: (1) Lawful Permanent Residents are eligible under the FNA for SNAP benefits, regardless of what status they held prior to becoming LPRs; and (2) that the PRWORA five-year waiting period does not apply to LPRs who are or were members of a Humanitarian Immigrant Group. This declaration would likewise "serve a useful purpose in clarifying and settling" non-citizens' eligibility for SNAP, which affects all of Plaintiffs States' benefits agencies and millions of Plaintiff States' residents. *Id*. The erroneous Non-Citizen Guidance caused tremendous "uncertainty [and] insecurity" as to non-citizen eligibility for SNAP after the OBBB. *Id.* A declaratory judgment would settle the rights of the Parties and forestall any future effort to circumvent the statutory mandates.

## CONCLUSION

For the foregoing reasons, Plaintiff States respectfully request that the Court vacate the Guidance Documents' exclusionary period; declare those exclusionary periods unlawful; declare that LPRs are eligible under the FNA for SNAP benefits, regardless of what status they held prior to becoming LPRs; and declare that the PRWORA five-year ban does not apply to LPRs who are or were members of a Humanitarian Immigrant Group.

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

Dated: April 3, 2026

Respectfully submitted,

**LETITIA JAMES**
Attorney General for the State of New York

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: *s/ Molly Thomas-Jensen*
Molly Thomas-Jensen
Jessica Ranucci
*Special Counsel*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Gina Bull
*Assistant Attorney General*
28 Liberty St.
New York, NY 10005
(212) 416-8679
molly.thomas-jensen@ag.ny.gov
jessica.ranucci@ag.ny.gov
rabia.muqaddam@ag.ny.gov
gina.bull@ag.ny.gov

*Counsel for the State of New York*

By: *s/ Leanne Hartmann*
Leanne Hartmann #257503
Brian Simmonds Marshall #196129
Kirsten Naito # 114684
*Senior Assistant Attorneys General*
Sara Del Rubin #232414
Derek Olson #225504
*Assistant Attorneys General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
Kirsten.M.Naito@doj.oregon.gov
Sara.DelRubin@doj.oregon.gov
Derek.Olson@doj.oregon.gov

*Counsel for the State of Oregon*

Page 36 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

**ROB BONTA**
Attorney General for the State of California

By: *s/ Robin L. Goldfaden*
Robin L. Goldfaden
*Supervising Deputy Attorney General*
Michael L. Newman
Neli N. Palma
*Senior Assistant Attorneys General*
Marissa Malouff
Kathleen Boergers
*Supervising Deputy Attorneys General*
California Attorney General's Office
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3543
Robin.Goldfaden@doj.ca.gov

*Counsel for the State of California*

**WILLIAM TONG**
Attorney General of Connecticut

By: *s/ Patricia E. McCooey*
Patricia E. McCooey
*Assistant Attorney General*
165 Capitol Ave
Hartford, CT 06106
(860) 808-5210
Patricia.McCooey@ct.gov

*Counsel for Plaintiff State of Connecticut*

**PHILIP J. WEISER**
Attorney General of Colorado

By: *s/ Tanja E. Wheeler*
Tanja E. Wheeler
*Associate Chief Deputy Attorney General*
David Moskowitz
*Deputy Solicitor General*
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6000
Tanja.wheeler@coag.gov
David.moskowitz@coag.gov

*Counsel for Plaintiff State of Colorado*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: *s/ Vanessa L. Kassab*
Ian R. Liston
*Director of Impact Litigation*
Vanessa L. Kassab
*Deputy Attorney General*
Rose E. Gibson
*Assistant Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Counsel for Plaintiff State of Delaware*

Page 37 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: *s/ Mitchell P. Reich*
Mitchell P. Reich
*Senior Counsel to the Attorney General*
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 279-1261
mitchell.reich@dc.gov

*Counsel for the District of Columbia*


**KWAME RAOUL**
Attorney General of Illinois

By: *s/ Katharine Roller*
Katharine Roller
*Complex Litigation Counsel*
Alice L. Riechers
*Assistant Attorney General*
115 S. LaSalle St.,
Chicago, Illinois 60603
(773) 519-1842
Katharine.Roller@ilag.gov

*Counsel for Plaintiff State of Illinois*


**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: *s/ Kalikoʻonālani D. Fernandes*
David D. Day
*Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes
*Solicitor General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*


**AARON M. FREY**
Attorney General for the State of Maine

By: *s/ Brendan Kreckel*
Brendan Kreckel
By: */s/ Kristin Trabucchi*
Kristin Trabucchi
*Assistant Attorneys General*
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel.: 207-626-8800
Fax: 207-287-3145
Brendan.kreckel@maine.gov
kristin.k.trabucchi@maine.gov

*Counsel for the State of Maine*


Page 38 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

**ANTHONY G. BROWN**
Attorney General of Maryland

By: *s/ Yasmin Dagne*
Yasmin Dagne
*Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-223-1580
ydagne@oag.state.md.us

*Counsel for Plaintiff State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: *s/ Michelle Pascucci*
Katherine Dirks
*Chief State Trial Counsel*
Michelle Pascucci
*State Trial Counsel*
Jak Kundl
*Assistant Attorney General*
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
(617) 963-2255
Michelle.Pascucci@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**DANA NESSEL**
Attorney General of Michigan

By: *s/ Daniel Ping*
Daniel Ping
Neil Giovanatti
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
PingD@michigan.gov
GiovanattiN@michigan.gov

*Counsel for the State of Michigan*

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: *s/ Joseph R. Richie*
Joseph R. Richie
*Special Counsel*
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-0921
joseph.richie@ag.state.mn.us

*Counsel for the State of Minnesota*

Page 39 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

**AARON D. FORD**
Attorney General of Nevada

By: s/ K. Brunetti Ireland
K. Brunetti Ireland
*Chief of Special Litigation*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov

*Counsel for the State of Nevada*


**RAÙL TORREZ**
Attorney General of the State of New Mexico

By: s/ Lauren Perry
Lauren Perry
*Assistant Attorney General*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
505-270-4332
lperry@nmdoj.gov

*Counsel for the State of New Mexico*


**PETER F. NERONHA**
Attorney General of Rhode Island

By: s/ Marissa D. Pizaña
Marissa D. Pizaña
*Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
(401) 274-4400
MPizana@riag.ri.gov

*Counsel for the State of Rhode Island*


**JENNIFER DAVENPORT**
Attorney General of New Jersey

By: s/ Kashif T. Chand
Kashif T. Chand
*Assistant Attorney General*
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov

*Counsel for Plaintiff State of New Jersey*


**JEFF JACKSON**
Attorney General of North Carolina

By: s/ Daniel P. Mosteller
Daniel P. Mosteller
*Associate Deputy Attorney General*
Laura Howard
*Chief Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
dmosteller@ncdoj.gov

*Counsel for the State of North Carolina*


**CHARITY R. CLARK**
Attorney General of Vermont

By: s/ Ryan P. Kane
Ryan P. Kane
*Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.kane@vermont.gov

*Counsel for Plaintiff State of Vermont*

Page 40 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT

**JAY JONES**
Attorney General of the Commonwealth of Virginia

By: *s/ Tillman J. Breckenridge*
Tillman J. Breckenridge
*Solicitor General*
Mikaela A. Phillips
*Assistant Solicitor General*
Office of the Attorney General
202 N. 9th Street
Richmond, Virginia 23219
Tel: (804) 786-7704
solicitorgeneral@oag.state.va.us
mphillips@oag.state.va.us

*Counsel for Plaintiff the Commonwealth of Virginia*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

By: *s/ Karla Z. Keckhaver*
Karla Z. Keckhaver
*Assistant Attorney General*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-6365
karla.keckhaver@wisdoj.gov

*Counsel for Plaintiff State of Wisconsin*

**NICHOLAS W. BROWN**
Attorney General of Washington

By: *s/ William McGinty*
William McGinty
Niya Tawachi
*Assistant Attorneys General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
william.mcginty@atg.wa.gov
niya.tawachi@atg.wa.gov

*Counsel for Plaintiff State of Washington*

Page 41 – PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT