LETITIA JAMES
Attorney General for the State of New York
Molly Thomas-Jensen
Jessica Ranucci
*Special Counsel*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Gina Bull
*Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8679
Email: molly.thomas-jensen@ag.ny.gov
      jessica.ranucci@ag.ny.gov
      rabia.muqaddam@ag.ny.gov
      gina.bull@ag.ny.gov


*Attorneys for the State of New York*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| STATE OF NEW YORK, et al., | Case No.  6:25-cv-02186-MTK |
| Plaintiffs, | DECLARATION OF SHERRY TOMASKY |
| v. | |
| BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al., | |
| Defendants. | |

Page 1 -    DECLARATION OF SHERRY TOMASKY

I, Sherry Tomasky, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am a resident of the State of New York and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

## I.      PERSONAL BACKGROUND AND QUALIFICATIONS

2.      I am currently employed by the New York State Office of Temporary and Disability Assistance (OTDA) as Director of Food and Nutrition Policy in the Division of Employment and Income Support Programs (EISP).

3.      OTDA's mission is to help vulnerable New Yorkers meet their essential needs and advance economically by providing, in part, nutritional assistance benefits.

4.      I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

## II.      SNAP IN NEW YORK STATE

5.      SNAP, one of the programs overseen by OTDA, involves the issuance of monthly electronic benefits that can be used to purchase food at authorized retailers.

6.      SNAP is a key part of New York State's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. As of November 2025, an average of 2.96 million people received SNAP benefits in New York State each month, including approximately 455,000 families and 920,000 children. Households in New York State receive on average $370 per month in SNAP benefits to help meet their basic subsistence and nutritional needs. During the federal fiscal year between October 1, 2024 and September 30, 2025, OTDA issued approximately $650 million per month in SNAP benefits in New York State.

7.      OTDA is responsible for supervising the 58 social services districts (districts) that are responsible for administration of the SNAP program in New York State pursuant to Social Services Law §95. Pursuant to federal law, OTDA oversees the administration of SNAP on

Page 2 -   DECLARATION OF SHERRY TOMASKY

behalf of the United States Department of Agriculture (USDA) and is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transaction (EBT) cards; ensuring program integrity; and supervising district offices' day-to-day administration of SNAP, including processing applications for SNAP benefits, ensuring accuracy in case processing, and certifying eligible applicant households. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4; 7 C.F.R. § 274.2. USDA funds the entirety of SNAP benefits in New York State, though New York State and the federal government split administrative costs. 7 U.S.C. § 2025(a).

### III.    PUBLIC LAW 119-21 (THE ONE BIG BEAUTIFUL BILL ACT OF 2025)

8.    On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

9.    OBBB made many changes to the administration of the SNAP program. It also changed the structure of how SNAP benefits and administration will be paid for in the future between states and the federal government, shifting more of the expense of the program onto states.

10.    Section 10103 of OBBB, titled, "Availability of Standard Utility Allowances Based on Receipt of Energy Assistance," made changes to the standard utility allowance (SUA) determination, limiting which households would qualify for the Heating Cooling Standard Utility Allowance (HCSUA) based on receipt of energy assistance payments. Previously, households who received payments through qualifying energy assistance programs received the HCSUA as a deduction from their household income. The OBBB changed that allowance to only apply to households in receipt of energy assistance payments and that contain an elderly or disabled member.

Page 3 -    DECLARATION OF SHERRY TOMASKY

11.     Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates.

12.     Section 10108 of OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

## IV.     IMPLEMENTATION OF STATUTORY CHANGES

13.     OTDA typically relies on USDA guidance to implement statutory changes to SNAP to ensure compliance with USDA's interpretation of the law. In recognition that States need time to fully implement new changes to their SNAP programs correctly, the SNAP statute and regulations provide a 120-day "exclusionary period", also referred to as a "hold harmless" period, from the implementation date of the policy, during which State payment errors that occur as a result of misapplication of the new policy are waived.

14.     Historically, OTDA experiences more errors as we figure out how to implement new federal policy, for which federal guidance is relied upon to ensure accurate interpretation of statute. In the past, USDA generally issued its implementing guidance **prior** to the implementation date of the policy, which starts the exclusionary period, providing States **at least** 120 days **after** receiving such guidance to enact program changes, in line with the SNAP statute and regulations. This exclusionary period provides OTDA the opportunity to complete the many steps necessary to implement federal policy change.  The state needs the full 120 days afforded to make needed changes, without being held liable for payment errors. Typically, the USDA implementing guidance has also been provided prior to the effective date of any statutory changes.

Page 4 -    DECLARATION OF SHERRY TOMASKY

15.    Considering the new set of penalties tied to payment error rates defined in Section 10105 of the OBBB, this 120-day exclusionary period is even more critical to New York State.

16.    However, the guidance documents (together, the "Guidance Documents") that USDA ultimately issued in August, September and October 2025, regarding Sections 10103, 10105, and 10108 of the OBBB, informed States that the exclusionary period for implementing these program changes had started running on July 4, 2025—the day that OBBB was enacted—even though the Guidance Documents were issued by USDA long after that date. The OBBB did not include effective or implementation dates in section 10103.  Therefore, I understand that USDA made two determinations in the absence of a statutorily defined effective date: first, that the provision was effective upon enactment; and second, that the statute's effective date was the same as the required implementation date for the purposes of the hold harmless period.

## V.    SUA GUIDANCE AND IMPLEMENTATION

17.    In an attempt to prepare for implementation of the SUA changes, and in the absence of any federal guidance to that point, on July 23, 2025, my office engaged in a telephone conversation with Matthew Henschel, Director of SNAP for the Northeast Regional Office (NERO) at USDA Food & Nutrition Service (FNS), to inquire about the status of Implementation Guidance following the SNAP statutory changes in the OBBB.  Mr. Henschel indicated during such conversation that the SUA Implementing Guidance was in progress and was awaiting clearance at USDA.

18.    While awaiting federal guidance, OTDA began to plan for the implementation of the OBBB's changes to SUA calculations in July 2025, even with limitations in how much OTDA could complete. The steps involved in implementing federal policy change include: drafting and issuing policy guidance to the 58 districts administering SNAP in New York State; updating forms and eligibility notices; reprogramming systems as needed (with competing demand for the limited information technology resources); working with OTDA's contracted

Page 5 -    DECLARATION OF SHERRY TOMASKY

training provider to update, reissue and deliver worker training across the 58 districts; and revising all public communications pertaining to SUA, such as information contained on OTDA's website and client educational materials.

19.    On August 29, 2025, USDA issued guidance about Section 10103 of the OBBB, defining eligibility for full HCSUA when determining SNAP benefit amounts (the "SUA Guidance"). In a section entitled, "Quality Control and Technical Assistance," USDA announced that although "[a] 120-day variance exclusion is permitted," the period had already begun to run and would end 64 days after the guidance issuance date, on November 1, 2025.

20.    A week later, on September 4, 2025, USDA issued an Information Memo outlining the "SNAP Provisions of the One Big Beautiful Bill Act of 2025." The Information Memo did not directly address the 120-day exclusionary period, except to say that "FNS will, as appropriate, hold states harmless for Quality Control (QC) purposes for 120 days from the implementation date." As to Section 10103 (SUA), the memo says, "This provision is effective upon enactment." This memo did not address either the effective date or the implementation date for non-citizen eligibility.

21.    OTDA effectuated the SUA Guidance Documents by issuing state guidance to districts on September 15, 2025, only 16 days after the federal guidance came down. This left New York with only 46 days remaining in the exclusionary period before USDA will count any so-called "errors" stemming from applying the policies laid out in the Guidance Documents as part of New York State's error rate, increasing the risk that New York State may have to pay financially ruinous penalties.

22.    On November 14, 2025, USDA issued a policy memo (the "Exclusionary Period Memo") answering "follow-up questions submitted by State agencies on the variance exclusion period for implementation" of Sections 10102 and 10103 of the OBBB. The Exclusionary Period Memo reiterated that the "required implementation date" for both Sections 10102 and 10103 of the OBBB was "the enactment of OBBB, July 4, 2025" and therefore the exclusionary period

Page 6 -    DECLARATION OF SHERRY TOMASKY

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

had already ended 14 days prior.  Again, the statute was silent about the implementation dates for these provisions.

### VI.    PREVIOUS INTERPRETATION OF EXCLUSIONARY RULE

23.    This timeline runs counter to many previous federal SNAP policy changes. OTDA generally relies on USDA's issuance of guidance **prior** to implementation of complicated program changes to abide by USDA's understanding of the law and limit the occurrence of payment errors.

24.    For example, previously, when the 2014 Farm Bill, Public Law 113-79, was signed into law on February 7, 2014, SUA changes in Section 4006 of such bill were effective 30 days from enactment, on March 10, 2014 with the 120-day exclusionary period running from March 10, 2014 through July 8, 2014.  USDA issued an Implementation Memorandum on March 5, 2014, prior to the beginning of the exclusionary period, which enabled OTDA to formalize an understanding of USDA's interpretation of the statutory changes before the 120-day exclusionary period began, which subsequently supported a transition period on the new policy that prevents a surge of payment error rates attributable to such changes.

25.    Similarly, when the Fiscal Responsibility Act of 2023, Public Law 118-5, was signed into law on June 3, 2023, various changes to work requirement exemptions in Title II of such bill were effective on September 1, 2023, with the 120-day exclusionary period running from September 1, 2023 through December 30, 2023.  USDA issued an Implementation Memorandum on June 9, 2023, prior to the beginning of the exclusionary period, which again enabled OTDA to formalize an understanding of USDA's interpretation of the changes and limit payment error rates.

26.    As described above, by the time USDA issued the SUA Guidance, OTDA has already invested significant time and resources into planning and implementing the changes to SNAP eligibility made by the OBBB. But the delay in USDA's issuance of the SUA Guidance

Page 7 -    DECLARATION OF SHERRY TOMASKY

shortened the time OTDA had to fully implement the changes and work to mitigate errors that inevitably result with program changes.

27.    Beginning the hold harmless period on July 4, 2025, combined with the delay in USDA's issuance of the SUA Guidance, elevates the risk that New York State could face significant financial penalties due to misapplication of the OBBB changes. USDA claims the authority to count those errors starting November 1, 2025, drastically shortening the period for full compliance, further increasing the chance that the state will be subject to these penalties.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on March 26, 2026.

Sherry Tomasky
Digitally signed
by Sherry
Tomasky
Date: 2026.03.26
13:03:15 -04'00'

SHERRY TOMASKY

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047