LETITIA JAMES
Attorney General for the State of New York
Molly Thomas-Jensen
Jessica Ranucci
*Special Counsel*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Gina Bull
*Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8679
Email: molly.thomas-jensen@ag.ny.gov
      jessica.ranucci@ag.ny.gov
      rabia.muqaddam@ag.ny.gov
      gina.bull@ag.ny.gov

*Attorneys for the State of New York*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| STATE OF NEW YORK, et al., | Case No.  6:25-cv-02186-MTK |
| Plaintiffs, | SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN |
| v. | |
| BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al., | |
| Defendants. | |

Page 1 -    SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

I, Jessica Amaya Hoffman, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.    I am a resident of the State of Oregon and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

## I.    PERSONAL BACKGROUND AND QUALIFICATIONS

2.    I am currently employed by the Oregon Department of Human Services (ODHS) as the Supplemental Nutrition Assistance Program (SNAP) Director.

3.    This supplements my declaration of November 24, 2025 (ECF No. 6), in support of Plaintiff States' Motion for Preliminary Injunction, filed at ECF No. 4.

4.    I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

## II.    PUBLIC LAW 119-21 (THE ONE BIG BEAUTIFUL BILL ACT OF 2025)

5.    On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

6.    OBBB made many changes to the administration of the SNAP program. It also changed the structure of how SNAP benefits and administration will be paid for in the future between states and the federal government, shifting more of the expense of the program onto states.

7.    Specifically, Section 10108 of OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

8.    Section 10103 of OBBB, titled, "Availability of Standard Utility Allowances Based on Receipt of Energy Assistance," limited which households would qualify for an income deduction based on receipt of energy assistance payments. Previously, households who received payments through qualifying energy assistance programs also received a deduction from their

Page 2 -    SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

household income, the heating and cooling standard utility allowance. The OBBB changed that allowance to only apply to households that contain an elderly or disabled member.

9.  Section 10102 of OBBB, titled "Modification to SNAP Work Requirements for Able-Bodied Adults," changes who can be exempted from the rule that able-bodied adults without dependents (ABAWDs) may not receive SNAP benefits for more than three months in a three-year period without also meeting ABAWD work requirements, including working, volunteering, or participating in a job skills program a set number of hours per week. The law narrowed the categories of people who are exempt from the ABAWD work requirements, including removing exemptions for homeless individuals, veterans, individuals aged 24 or younger who were in foster care when they turned 18, individuals aged 55 to 64, and households with children only age 14 to 17. The law also created new exceptions to the ABAWD work requirements for certain Native Americans. Section 10102 also narrowed the criteria under which States can apply for and be granted a waiver from the ABAWD time limits.

10.  Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates.

11.  ODHS typically relies on USDA guidance to implement statutory changes to SNAP to ensure we are complying with the agency's interpretation of the law. In recognition that States need time to fully implement new changes to their SNAP programs correctly, the SNAP statute and regulations provide a 120-day period during which State payment errors are waived for the purpose of calculating their payment error rate, called the "exclusionary period."

12.  In the past, USDA began the exclusionary period *after* it issued its implementing guidance to the States, providing States at least 120 days after receiving implementation guidance to enact program changes, in line with the SNAP statute and regulations.

13.  However, the guidance documents (together, the "Guidance Documents") that USDA issued regarding Sections 10102, 10103, and 10105 of the OBBB informed States that the exclusionary period for implementing these program changes had started running on July 4,

Page 3 -    SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

2025—the day that OBBB was enacted—even though the Guidance Documents came long after that date.

14.    In other cases, ODHS is still awaiting guidance. For example, ODHS has not received guidance regarding Section 10101(a), which amended subsection (u) of 7 U.S.C. 2012 to provide a new cap on the amount of benefits for families of nine persons or more.

15.    On August 29, 2025, USDA issued guidance about Section 10103 of the OBBB, which changed how the standard utility allowance is calculated in determining SNAP benefit amounts, stating that the exclusionary period ended November 1. On October 3, 2025, USDA issued guidance about Section 10102(a) of the OBBB, which changed the exceptions from work requirements for able-bodied adults without dependents, or ABAWDs, stating that the exclusionary period ended November 1. And on October 31, 2025, USDA issued guidance on non-citizen eligibility, informing States the exclusionary period would end the very next day, November 1, 2025 (a Saturday).

16.    Historically, ODHS experiences more errors as we figure out how to implement new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the Guidance Documents as part of Oregon's error rate, increasing the risk that Oregon may have to pay financially ruinous penalties.

17.    In the 21 years I have worked at ODHS, it has been USDA's practice to begin the exclusionary period after the issuance of agency guidance, which ODHS relies on to implement often complicated program changes in accordance with USDA's understanding of the law.

18.    Past examples of USDA FNS Quality Control exclusionary periods following guidance from USDA include:

      a.    *The Consolidated Appropriations Act of 2005 (P.L. 108-447).* This Act signed on December 8, 2004, excluded military combat zone deployment income from SNAP calculations, retroactive to October 1, 2004. USDA FNS sent an implementation memorandum on January 14, 2025. The 120-day Quality

Page 4 -    SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

Control exclusionary period began 60 days after the memo was issued on March 15, 2005, and ended July 13, 2005.

b.    *Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (P.L. 108-173).* Through this Act, Medicare beneficiaries gained access to new prescription drug plans effective January 1, 2006. The Program Development Division issued initial guidance August 26, 2005, with further clarification on January 6, 2006. According to the guidance issued on January 24, 2006, the 120-day exclusionary period ran from January 1, 2006 to April 30, 2006.

c.    *Food, Conservation, and Energy Act of 2008 (P.L. 110-246).* This Act was signed into law on June 18, 2008, and made many changes to the Food Stamp Program (including renaming it SNAP). USDA FNS issued an implementing memorandum on July 3, 2008, related to certain changes in the Act, and then subsequently issued guidance on the exclusionary period on August 4, 2008, as follows:

i.    Military payment exclusion (Section 4101): Provided no new exclusionary period because the change in the law reflected current policy, and an exclusionary period was previously provided from March 15 to July 13, 2005.

ii.    Increased food purchasing power (Section 4102): Provided an exclusionary period and required implementation date starting October 1, 2008 to January 28, 2009.

iii.    Childcare expense deductions (Section 4103): Provided an exclusionary period and required implementation date starting October 1, 2008 to January 28, 2009, with some additional instructions depending on which method states used to implement the change.

Page 5 -    SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

d.    *Iraqi and Afghani Special Immigrant Visa (SIV) Eligibility (P.L. 110-181 and P.L. 110-161).* The Consolidated Appropriations Act of 2008, P.L. 110-181, which became law on January 28, 2008, effectively extended program eligibility to affected Iraqi SIVs. Guidance was issued March 20, 2008, which also provided direction to states regarding Afghani SIVs for the Consolidated Appropriations Act of 2008, P.L. 110-161, which became law on December 26, 2007. The 120-day exclusionary period for both Iraqi and Afghani SIVs began 30 days from the guidance date.

e.    *Worker, Homeownership, and Business Assistance Act of 2009 (P.L. 111-92).* Signed into law on November 6, 2009, this law increased the unemployment compensation exclusion. USDA FNS issued guidance November 19, 2009. The 120-day exclusionary period began 30 days from that date and ran through April 17, 2010.

f.    *Food, Conservation and Energy Act of 2008 - USDA Final Rule (May 2017).* Following this 2008 Act, USDA adopted a final rule in May 2017 and subsequently issued guidance in the form of Q&A documents dated May 3, 2017, for the final rule.  The guidance set forth the Quality Control exclusionary periods as follows:

i.    Dependent Care Cap Removal: The elimination of the cap for dependent care expenses was effective on October 1, 2008, per the Act.  USDA's final rule for this change was effective May 8, 2017, and the 120-day exclusionary period began May 8, 2017.

ii.    Electronic Application Copies: To allow time for states to update application processes, the final rule requiring states to offer households electronic copies of their applications had a delayed effective

Page 6 -    SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

date of March 9, 2018, and the 120-day exclusionary period began March 9, 2018.

19. Based on past USDA practices, ODHS expects USDA to provide implementation guidance on or before the start date for any change in USDA SNAP policy. ODHS also expects USDA to begin the 120-day quality control hold harmless period no sooner than the start date of that change. This allows for follow-up questions, system program changes, and supports accurate implementation. ODHS relies on the hold harmless period to learn the new policy, get clarified guidance, redesign the ONE eligibility system to enact the new policy, create training for staff, update any notices or forms, update websites, update policy manuals and administrative rules, complete Tribal consultation, inform community partners, and complete the mass notification process if necessary. To date, not even the USDA SNAP Work Requirements website has been updated to align with Section 10102 (https://www.fns.usda.gov/snap/work-requirements).

20. Following the passage of OBBB, ODHS asked our contacts at the Western Regional Office of USDA FNS for guidance in implementing the changes related to OBBB. FNS staff verbally assured us that FNS would provide guidance on or before September 1, 2025, and recommended that ODHS not implement any of the statutory changes without USDA guidance.

### III.    USDA GUIDANCE TO OBBB CHANGES TO SNAP PROGRAM

**A.    USDA's August 29 Guidance Memorandum Pertaining to Standard Utility Allowances**

21. In July 2025, following the passage of the OBBB, ODHS began to plan the required steps to implement the OBBB SUA changes, including by identifying the various forms, websites, administrative rules, trainings, system changes, etc. to update for OBBB SUA change implementation.

22. Then, on August 29, 2025, USDA issued a guidance memorandum to SNAP State agencies (the "SUA Guidance"), to provide them "with additional information on implementing Section 10103 of the OBBB, which changes the treatment of certain energy assistance payments for SNAP." USDA sent ODHS the SUA guidance via electronic mail from Food and Nutrition

Page 7 -    SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

Service Western Regional Office. ODHS received no further communication from USDA regarding SUA.

23.    In a section entitled, "Quality Control and Technical Assistance," the agency announced that although "[a] 120-day variance exclusion is permitted," the period had already begun to run and would end 64 days after the guidance issuance date, on November 1, 2025.

24.    A week later, on September 4, 2025, USDA issued an Information Memo outlining the "SNAP Provisions of the One Big Beautiful Bill Act of 2025." The Information Memo did not directly address the 120-day exclusionary period, except to say that "FNS will, as appropriate, hold states harmless for Quality Control purposes for 120 days from the implementation date." As to Section 10103 (SUA), the memo says, "This provision is effective upon enactment."

25.    When the August 29, 2025, and September 4, 2025, USDA Memos were received, it created chaos due to the hold-harmless language. ODHS became aware that they would not be provided the usual time to understand new laws and plan implementation which being held harmless from Quality Control payment errors. ODHS also realized that, in order to access a small remainder of the hold-harmless period, they would have to move forward with OBBB changes without sufficient USDA implementation guidance.

26.    In early September 2025, given the financial penalties to ODHS under Section 10105 of OBBB, ODHS decided to move forward with implementation without full USDA implementation guidance. ODHS would be cited Quality Control errors both if ODHS didn't implement OBBB and if ODHS didn't implement OBBB correctly, but moving forward at least allowed ODHS access to the last month of the hold-harmless period. Implementation included:

a.    Beginning in July 2025 through contract amendment, ODHS was required to amend its Heat and Eat contract with Oregon Housing and Community Services, due to the downstream impact of the energy assistance payment change

Page 8 -    SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

on households that had previously used Low Income Home Energy Assistance Progoram (LIHEAP) receipt to access the Heating and Cooling SUA (HCSUA).

b.      From August 2025 to October 2025, ODHS identified and acted on impacted households by gathering extensive and through data validation to allow ODHS to identify and generate impacted case lists of households that would lose access to the HCSUA as a result of the change. A new notice had to be created and mailed to the impacted households.

c.      From August 2025 to November 2025, ODHS made computer system and calculator changes, which required hours of meetings with policy, operational, and systems staff to redesign the worker portal, applicant portal, and system logic. ODHS's updates to SNAP allotment calculators reflect OBBB SUA changes.

d.      From August 2025 to February 2026, ODHS researched the Oregon Revised Statutes and held multiple consultation meetings with Oregon Community Housing Services (OCHS) and the Public Utility Commission (PUC) to identify funding sources that may fall under OBBB provisions and support accurate implementation and provision understanding.

e.      From August 2025 to the present, ODHS has been amending policy and guidance materials, which has included temporary and permanent updates to rules, policy manual sections, trainings, eligibility guides, and other internal governance and guidance materials.

f.      From September 2025 to the present, ODHS has implemented staff trainings, updated eligibility guides (EGs), and released new transmittals. As understanding of new OBBB SUA provisions was in its infancy and research was ongoing, ODHS has needed to update materials multiple times to provide staff

Page 9 -    SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

increased confidence in their understanding of these new policies and to educate staff on the increased risk of Quality Control payment errors.

27.    In sum, to comply with OBBB's eligibility changes regarding SUA for both current participants and new applicants, ODHS had to make significant changes and do significant research. This included research of state energy assistance laws and meetings with energy assistance organizations to identify impacted programs; changes to administrative rules, policy manuals, and other guidance or training materials; changes to the ONE integrated eligibility system, including system logic, notices, and screens; and updating external facing communications like notices, websites, and press releases. ODHS also had to provide information and training to eligibility staff, post eligibility staff, and community partners about the new policy. Due to the nuances in this OBBB provision, ODHS has had to change its policies and guidance more than once.

28.    Yet even with those changes, the SUA Guidance elevates the risk that Oregon will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. As noted above, Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The SUA Guidance stated that the exclusionary period—that is, the period of time during which errors do not count towards a state's error rate— ended on November 1, 2025. Historically, there are more errors as ODHS figures out how to implement new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the SUA Guidance as part of ODHS's error rate, increasing the risk that Oregon may have to pay financially ruinous penalties. And USDA claims to have the authority to count those errors starting November 2, 2025, drastically shortening the period for full compliance, further increasing the chance they will be subject to these penalties. For example, one of the top three error categories across the nation is the shelter and utility deduction. Inserting a complex new policy in this already error prone category that relies on applicants and agencies knowing if an

Page 10 -  SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

energy assistance program is established under federal law will almost assuredly keep payment errors in this category high.

**B.      USDA's October 3 Guidance Related to Able-Bodied Adults Without Disabilities**

29.      Beginning in July 2025, following the passage of the OBBB, ODHS began to take the required steps to implement the OBBB's changes to ABAWD eligibility as applied to SNAP, including by identifying the various forms, websites, administrative rules, trainings, system changes, etc. to update for OBBB implementation. ODHS analyzed the text of OBBB, and had planned to wait for USDA implementation guidance that ODHS has historically relied upon when implementing changes like OBBB.

30.      When the August 29, 2025 and September 4, 2025 USDA Memos were received, USDA placed ODHS in an impossible position: either implement ABAWD OBBB provisions without USDA guidance, risking Quality Control errors, in order to access a small remainder of the hold-harmless period, or continue waiting for ABAWD OBBB implementation guidance and risk losing the whole hold-harmless period and be cited with Quality Control errors.

31.      In early September 2025, given the financial penalties to ODHS under Section 10105 of OBBB, ODHS decided to move forward with implementation without full USDA implementation guidance. ODHS would be cited Quality Control errors both if ODHS didn't implement OBBB and if ODHS didn't implement OBBB correctly, but moving forward at least allowed ODHS access to the last month of the hold-harmless period. ODHS's implementation included:

> a.      From August 2025 to March 2026, ODHS implemented computer system changes, which required hours of meetings with policy, operational, and systems staff to redesign the worker portal, applicant portal, applicable forms, system logic including counting month logic, and notices. Additional hours were required to design manual processes for staff to follow effective October 1, 2025, since the ONE eligibility system could not be updated until November 1, 2025.

Page 11 -  SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

Manual processes for staff are especially error prone, increasing ODHS's risk of Quality Control payment errors.

b.      From September 2025 to ODHS's contract amendment, ODHS had to amend its ABAWD program contract implemented by the Oregon Employment Department. The new contract was effective October 1, 2025.

c.      From September 2025 to present, ODHS had to implement staff training, including updated eligibility guides (EGs), and release new transmittals. Due to the continual changes in ABAWD counting months, ABAWD waivers, and late Discretionary Exemption letter; these materials have been updated multiple times, preventing staff an opportunity to feel confident about these new policies and increasing the risk of Quality Control payment errors.

32.     Then, on October 3, 2025, USDA FNS issued a guidance memorandum to SNAP State Agencies (the "ABAWD Guidance"), to provide them "with additional information on implementing Section 10102(a) of the OBBB, which changes exceptions from the Able-Bodied Adults Without Dependents (ABAWD) time limit."

33.     In a section entitled, "Quality Control and Technical Assistance," the agency announced that although "[a] 120-day variance exclusion is permitted," the period had already begun to run and would end 29 days after the guidance issuance date, on November 1, 2025.

34.     Also on October 3, 2025, USDA FNS issued a second guidance memorandum to SNAP State Agencies (the "ABAWD Waiver Guidance"), to provide them "with additional information on implementing Section 10102(b) of the OBBB, which changes criteria for waivers of the Able-Bodied Adults Without Dependents (ABAWD) time limit with special provisions for Alaska and Hawaii."

35.     USDA sent ODHS the ABAWD Guidance and the ABAWD Waiver Guidance via electronic mail from Food and Nutrition Service Western Regional Office the same day that they were issued—October 3, 2025.

Page 12 -  SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

36.     ODHS also received additional guidance from USDA. On November 13, 2025, USDA FNS sent a memorandum instructing agencies to not issue a countable month for November 2025 due to the federal government shutdown. On December 22, 2025, USDA issued federal fiscal year 2026 discretionary month counts, which as previously been issued to agencies before the start of the federal fiscal year. On February 26, 2026, USDA FNS provided notification to ODHS that Oregon's previous ABAWD waiver, which had been terminated early by the October 3, 2025, USDA Memo, was reinstated.

37.     To comply with OBBB's eligibility changes regarding ABAWD for both current participants and new applicants, ODHS had to make significant changes. This included changes to administrative rules, policy manuals, and other guidance or training materials; changes to the ONE integrated eligibility system, including system logic, notices, and screens; contract changes; and updating external facing communications like notices, websites, and press releases for mass notification. ODHS also had to provide information and training to eligibility staff, post eligibility staff, and community partners to ensure they understood the new policy and offer required Tribal Nation consultation as ABAWD OBBB provisions specifically changed eligibility for Tribal Members. ODHS's implementation of those changes included:

    a.     On October 1, 2025, ODHS implemented ABAWD OBBB provisions.

    b.     On October 3, 2025, implementation became chaotic upon the receipt of the USDA ABAWD Guidance Memos, especially the early ABAWD waiver termination memo, which forced ODHS into scrambling to plan an early statewide ABAWD implementation, requiring new updates to policies, system, guidance, and written materials.

    c.     On November 13, 2025, implementation was again disrupted upon receipt of a USDA ABAWD Memo that November was to be excluded from

Page 13 -  SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

counting months due to the federal shutdown. This again forced ODHS into scrambling to update policies, system, guidance, and written materials.

    d.    On December 22, 2025, implementation was again disrupted upon very late receipt of ODHS's count of discretionary exemption months for federal fiscal year 2026. Traditionally state discretionary exemption counts are received before the start of the fiscal year (before October 1) to allow states advance planning time. After ODHS planned how the discretionary exemptions would be used, new updates to policies, system, guidance, and written materials were required.

    e.    On February 26, 2026, implementation was again disrupted upon receipt of messaging from FNS that ODHS's ABAWD waiver was restored through December 2025. This again forced ODHS to rapidly update policies, system, guidance, and written materials.

38.    The ABAWD Guidance elevates the risk that Oregon will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. As noted above, Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The Guidance stated that the exclusionary period ended on November 1, 2025. Historically, ODHS experiences more errors as we figure out how to implement new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the ABAWD Guidance as part of Oregon's error rate, increasing the risk that Oregon may have to pay financially ruinous penalties. And USDA claims the authority to be able to count those errors starting November 2, 2025, drastically shortening the period for full compliance, further increasing the chance of these penalties. Oregon has qualified for area-based waivers under the previous federal provisions for years. It will take time for ODHS staff residing in previously waived areas to accurately understand ABAWD exemptions, how to screen for them, and how to properly document them. In addition, Oregon qualified for ABAWD waivers for 30 of its 36 counties in

Page 14 -  SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

2025. After OBBB, no counties are waived. This places additional administrative burden on staff to accurately screen hundreds of thousands of adults for new ABAWD exemptions. Expansion of who must be screened along with changes to the ABAWD exemptions make this policy change especially error prone.

**C.    USDA's November 14 Guidance Related to Exclusionary Period Memo**

39.    On November 14, 2025, USDA issued a policy memo (the "Exclusionary Period Memo") answering "follow-up questions submitted by State agencies on the variance exclusion period for implementation" of Sections 10102 and 10103 of the OBBB. The Exclusionary Period Memo reiterated that the "required implementation date" for both Sections 10102 and 10103 of the OBBB was "the enactment of OBBB, July 4, 2025" and therefore the exclusionary period had already ended 14 days prior.

**D.    Additional Harm to Oregon**

40.    ODHS is in an integrated ONE eligibility system, which requires advanced programming and testing for accurate change implementation. ODHS was required to build OBBB policy ONE system logic ahead of receiving clear USDA policy and implementation guidance in an attempt to avoid financially ruinous penalties due to not implementing OBBB before the hold harmless period ended. Some new OBBB policies are still unclear or without sufficient guidance, leaving ODHS SNAP policy analysts unsure on how to accurately guide staff and leaving ODHS continually vulnerable to costly Quality Control payment errors. In addition, the chaos and rush caused by the irregular hold harmless period compromised ODHS's ability to provide its regular seasonal reminders to staff regarding SNAP student policies. Eligibility staff were inundated with new ONE system questions, which also has the collateral impact of destabilizing the general knowledge for staff in non-SNAP programs. Lack of clear federal guidance on multiple OBBB policy topics has also delayed ODHS policy guidance and/or required rapid changes to federally adjusted policy interpretation for SNAP community partners and advocates. The series of rapid changes has eroded trust and confidence

Page 15 -  SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

in the department from the community as ODHS has tried to meet our obligation of sharing information with the public.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

EXECUTED on March 23, 2026.

JESSICA AMAYA HOFFMAN

Page 16 -  SUPPLEMENTAL DECLARATION OF JESSICA AMAYA HOFFMAN

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047