LETITIA JAMES
Attorney General for the State of New York
Molly Thomas-Jensen
Jessica Ranucci
*Special Counsel*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Gina Bull
*Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8679
Email: molly.thomas-jensen@ag.ny.gov
          jessica.ranucci@ag.ny.gov
          rabia.muqaddam@ag.ny.gov
          gina.bull@ag.ny.gov

*Attorneys for the State of New York*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al.,<br><br>          Defendants. | Case No.  6:25-cv-02186-MTK<br><br>SUPPLEMENTAL DECLARATION OF<br><br>ABBY MCCLELLAND |

Page 1 -  SUPPLEMENTAL DECLARATION OF ABBY MCCLELLAND

I, Abby McClelland, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.    I am a resident of the State of Colorado and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

## I.    PERSONAL BACKGROUND AND QUALIFICATIONS

2.    I am currently employed by the Colorado Department of Human Service (CDHS) as the Director of the Food and Energy Assistance Division.

3.    This supplements my declaration of November 23, 2025 in support of Plaintiff States Motion for Preliminary Injunction, filed at ECF 7.

4.    I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

## II.    PUBLIC LAW 119-21 (THE ONE BIG BEAUTIFUL BILL ACT OF 2025)

5.    On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

6.    OBBB made many changes to the administration of the SNAP program. It also changed the structure of how SNAP benefits and administration will be paid for in the future between states and the federal government, shifting more of the expense of the program onto states.

7.    Specifically, Section 10108 of OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

8.    Section 10103 of OBBB, titled, "Availability of Standard Utility Allowances Based on Receipt of Energy Assistance," limited which households would qualify for an income deduction based on receipt of energy assistance payments. Previously, households who received payments through qualifying energy assistance programs also received a deduction from their

Page 2 - SUPPLEMENTAL DECLARATION OF ABBY MCCLELLAND

household income, the heating and cooling standard utility allowance. The OBBB changed that allowance to only apply to households that contain an elderly or disabled member.

9.      Section 10102 of OBBB, titled "Modification to SNAP Work Requirements for Able-Bodied Adults," changes who can be excepted from the rule that Able-Bodied Adults Without Dependents (ABAWDs) may not receive SNAP benefits for more than three months in a three-year period without also meeting ABAWD work requirements, including working, volunteering, or participating in a job skills program a set number of hours per week. The law narrowed the categories of people who are exempt from the ABAWD work requirements, including removing exemptions for homeless individuals, veterans, individuals aged 24 or younger and in foster care, individuals aged 54 to 59, and households with children age 14 to 17. The law also created new exceptions to the ABAWD work requirements for certain Native Americans. Section 10102 also narrowed the criteria under which States can apply for and be granted a waiver from the ABAWD time limits.

10.      Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates.

11.      CDHS typically relies on USDA guidance to implement statutory changes to SNAP to ensure we are complying with the agency's interpretation of the law. In recognition that States need time to fully implement new changes to their SNAP programs correctly, the SNAP statute and regulations provide a 120-day period during which State payment errors are waived for the purpose of calculating their payment error rate, called the "exclusionary period."

12.      In the past, the agency began the exclusionary period *after* USDA issued its implementing guidance to the States, providing States at least 120 days after receiving guidance to enact program changes, in line with the SNAP statute and regulations.

13.      However, the guidance documents (together, the "Guidance Documents") that USDA issued regarding Sections 10102, 10103, and 10105 of the OBBB informed States that the exclusionary period for implementing these program changes had started running on July 4,

Page 3 - SUPPLEMENTAL DECLARATION OF ABBY MCCLELLAND

2025—the day that OBBB was enacted—even though the Guidance Documents came long after that date.

14.    On August 29, 2025, USDA issued guidance about Section 10103 of the OBBB, which changed how the standard utility allowance is calculated in determining SNAP benefit amounts, stating that the exclusionary period ended November 1. On October 3, 2025, USDA issued guidance about Section 10102(a) of the OBBB, which changed the exceptions from work requirements for able-bodied adults without dependents, or ABAWDs, stating that the exclusionary period ended November 1. And on October 31, 2025, USDA issued guidance on non-citizen eligibility, informing States the exclusionary period would end the very next day, November 1, 2025 (a Saturday).

15.    Historically, CDHS experiences more errors as we figure out how to implement a new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the Guidance Documents as part of Colorado's error rate, increasing the risk that Colorado may have to pay financially ruinous penalties.

16.    In the two years I have worked at CDHS, it has always been USDA's practice to begin the exclusionary period after the issuance of agency guidance, which CDHS relies on to implement often complicated program changes in accordance with USDA's understanding of the law.

17.    From USDA's past practice, CDHS had an expectation that it would get a reasonable opportunity to implement changes without the threat of sanction or repercussion from USDA. Indeed, necessary changes to implement new agency guidance, such as rulemaking and computer updates, require between three and nine months to complete.

### III.    USDA GUIDANCE TO OBBB CHANGES TO SNAP PROGRAM

**A.    USDA's August 29 Guidance Memorandum Pertaining to Standard Utility Allowances**

18.    On August 29, 2025, USDA issued a guidance memorandum to SNAP State agencies (the "SUA Guidance"), to provide them "with additional information on implementing

Page 4 — SUPPLEMENTAL DECLARATION OF ABBY MCCLELLAND

Section 10103 of the OBBB, which changes the treatment of certain energy assistance payments for SNAP."

19.    In a section entitled, "Quality Control and Technical Assistance," the agency announced that although "[a] 120-day variance exclusion is permitted," the period had already begun to run and would end 64 days after the guidance issuance date, on November 1, 2025.

20.    A week later, on September 4, 2025, USDA issued an Information Memo outlining the "SNAP Provisions of the One Big Beautiful Bill Act of 2025." The Information Memo did not directly address the 120-day exclusionary period, except to say that "FNS will, as appropriate, hold states harmless for Quality Control (QC) purposes for 120 days from the implementation date." As to Section 10103 (SUA), the memo says, "This provision is effective upon enactment."

21.    On September 4, 2025, USDA sent CDHS the SUA Guidance via electronic mail.

22.    To implement this component of OBBB eligibility changes regarding SUA, CDHS required updates to the Colorado integrated benefits management system, training for eligibility workers, and communications to counties, advocates, and participants.

23.    In September 2025, following the passage of the OBBB, CDHS began to take steps to implement the OBBB's changes to SUA calculations as applied to SNAP. This involved meeting with our technology vendor to describe and scope the necessary changes to the benefits management system, developing training materials, and developing communications. It also involved extensive data work to identify the number and county affiliation of participants who would be affected by this eligibility change. This planning was difficult without full guidance from USDA to fully determine the individuals and households impacted by this change.

24.    As described above, CDHS has already invested significant time and resources into implementing the changes to SNAP eligibility made by the OBBB. The SUA Guidance increased the costs required to implement the changes required by OBBB by shortening the time

Page 5 - SUPPLEMENTAL DECLARATION OF ABBY MCCLELLAND

states had to fully implement the changes and eliminate errors that inevitably result with program changes. Specifically, the steps CDHS had to take included the following:

a) re-programming computer systems and developing new technology training for staff

b) re-training staff

c) re-reviewing applicants and current participants

d) fielding more customer service inquiries.

25. The SUA Guidance elevates the risk that Colorado will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. As noted above, Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The SUA Guidance stated that the exclusionary period—that is, the period of time during which errors do not count towards a state's error rate— ended on November 1, 2025. Historically, there are more errors as CDHS figures out how to implement new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the SUA Guidance as part of CDHS' error rate, increasing the risk that Colorado may have to pay financially ruinous penalties. And USDA claims the authority to count those errors starting November 1, 2025, drastically shortening the period for full compliance, further increasing the chance they will be subject to these penalties.

**B.    USDA's October 3 Guidance Related to Able-Bodied Adults Without Disabilities**

26. On October 3, 2025, USDA-FNS issued a guidance memorandum to SNAP State Agencies (the "ABAWD Guidance"), to provide them "with additional information on implementing Section 10102(a) of the OBBB, which changes exceptions from the Able-Bodied Adults Without Dependents (ABAWD) time limit."

27. In a section entitled, "Quality Control and Technical Assistance," the agency announced that although "[a] 120-day variance exclusion is permitted," the period had already begun to run and would end 29 days after the guidance issuance date, on November 1, 2025.

Page 6 - SUPPLEMENTAL DECLARATION OF ABBY MCCLELLAND

28.     On October 3, 2025, USDA sent CDHS the ABAWD Guidance via electronic mail.

29.     Implementing the ABAWD provisions require significant changes to CDHS's previous practices and processes, including changes to the state benefits administration system, development of policy documents, trainings for eligibility workers and supervisors, and communications to counties, participants, and advocates.

30.     In August, following the passage of the OBBB, CDHS began to take steps to implement the OBBB's changes to ABAWD eligibility as applied to SNAP. This included meeting with the vendor who makes updates in Colorado's benefit management system about the scope and breadth of potential changes. It also involved meeting with advocate groups to understand the impacts on participants to anticipate the communications and support needed to ensure that participants were informed about the changes in OBBB and how to comply. These steps were difficult without formal guidance from USDA to clarify issues such as implementation dates and timelines, whether implementation would be a mass change or come in as participants applied or recertified, and other key issues. Many of these steps could not be finalized without clear guidance from USDA.

31.     As described above, CDHS has already invested significant time and resources into implementing the changes to SNAP eligibility made by the OBBB. The ABAWD Guidance increased the costs required to implement the changes required by OBBB by shortening the time states had to fully implement the changes. Specifically:

  e)  re-programming computer systems and associated training of staff, with a vendor cost of at least $30,000;

  f)  re-training staff;

  g)  re-reviewing applicants and current participants for exemption status, requiring increased workload for eligibility workers and the potential for county overtime costs to accommodate;

Page 7 - SUPPLEMENTAL DECLARATION OF ABBY MCCLELLAND

h) more customer service inquiries from participants, requiring overtime costs for hotline staff.

32. The ABAWD Guidance elevates the risk that Colorado will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. As noted above, Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The Guidance stated that the exclusionary period ended on November 1, 2025. Historically, CDHS experiences more errors as we figure out how to implement new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the ABAWD Guidance as part of Colorado's error rate, increasing the risk that Colorado may have to pay financially ruinous penalties. And USDA claims the authority to be able to count those errors starting November 1, 2025, drastically shortening the period for full compliance, further increasing the chance of these penalties.

### C.    USDA's November 14 Guidance Related to Exclusionary Period Memo

33. On November 14, 2025, USDA issued a policy memo (the "Exclusionary Period Memo") answering "follow-up questions submitted by State agencies on the variance exclusion period for implementation" of Sections 10102 and 10103 of the OBBB. The Exclusionary Period Memo reiterated that the "required implementation date" for both Sections 10102 and 10103 of the OBBB was "the enactment of OBBB, July 4, 2025" and therefore the exclusionary period had already ended 14 days prior.

### D.    Additional Harm to Colorado

34. Full implementation of these changes in the OBBB require changes to Colorado regulation. Colorado's administrative regulations can only be altered by an administrative process including multiple rounds of review, a public comment period, and approval by the State Board of Human Services. This process usually takes six to nine months from introduction of a proposed rule change to final Board approval and rule adoption. This time period means that Colorado has needed to implement OBBB changes in practice before being able to complete

Page 8  -  SUPPLEMENTAL DECLARATION OF ABBY MCCLELLAND

regulation updates and changes, creating a confusing situation where legal guidance is not uniform.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

EXECUTED on March 20, 2026.

Abby McClelland

Page 9 - SUPPLEMENTAL DECLARATION OF ABBY MCCLELLAND

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047