LETITIA JAMES
Attorney General for the State of New York
Molly Thomas-Jensen
Jessica Ranucci
*Special Counsel*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Gina Bull
*Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8679
Email: molly.thomas-jensen@ag.ny.gov
     jessica.ranucci@ag.ny.gov
     rabia.muqaddam@ag.ny.gov
     gina.bull@ag.ny.gov


*Attorneys for the State of New York*


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


| | |
|---|---|
| STATE OF NEW YORK, et al., | Case No. 6:25-cv-02186-MTK |
| Plaintiffs, | SUPPLEMENTAL DECLARATION |
| v. | OF PETER HADLER |
| BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al., | |
| Defendants. | |

I, Peter Hadler, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.     I am a resident of the State of Connecticut and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

Page 1 - SUPPLEMENTAL DECLARATION OF PETER HADLER

## I.    PERSONAL BACKGROUND AND QUALIFICATIONS

2.    I am currently employed by the Connecticut Department of Social Services "DSS" or "Department" as the Deputy Commissioner.

3.    This supplements my declaration of November 24, 2025, in support of Plaintiff States' Motion for Preliminary Injunction filed at ECF No. 8.

4.    I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

## II.    PUBLIC LAW 119-21 (THE ONE BIG BEAUTIFUL BILL ACT OF 2025)

5.    On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

6.    OBBB made many changes to the administration of the SNAP program. It also changed the structure of how SNAP benefits and administration will be paid for in the future between states and the federal government, shifting more of the expense of the program onto states.

7.    Specifically, Section 10108 of OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

8.    Section 10103 of OBBB, titled, "Availability of Standard Utility Allowances Based on Receipt of Energy Assistance," limited which households would qualify for an income deduction based on receipt of energy assistance payments. Previously, households who received payments through qualifying energy assistance programs also received a deduction from their household income – the heating and cooling standard utility allowance. The OBBB changed that allowance to only apply to households that contain an elderly or disabled member.

Page 2 -  SUPPLEMENTAL  DECLARATION OF PETER HADLER

9.      Section 10102 of OBBB, titled "Modification to SNAP Work Requirements for Able-Bodied Adults," changes who can be excepted from the rule that Able-Bodied Adults Without Dependents (ABAWDs) may not receive SNAP benefits for more than three months in a three-year period without also meeting ABAWD work requirements, including working, volunteering, or participating in a job skills program for a set number of hours per week. The law narrowed the categories of people who are exempt from the ABAWD work requirements, including removing exemptions for homeless individuals, veterans, individuals aged 24 or younger and in foster care, individuals aged 54 to 59, and households with children age 14 to 17. The law also created new exceptions to the ABAWD work requirements for certain Native Americans. Section 10102 also narrowed the criteria under which States can apply for and be granted a waiver from the ABAWD time limits.

10.     Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates.

11.     DSS typically relies on USDA guidance to implement statutory changes to SNAP to ensure we are complying with the agency's interpretation of the law. In recognition that States need time to fully implement new changes to their SNAP programs correctly, the SNAP statute and regulations provide a 120-day period during which State payment errors are waived for the purpose of calculating their payment error rate, called the "exclusionary period."

12.     In the past, the agency began the exclusionary period *after* USDA issued its implementing guidance to the States, providing States at least 120 days after receiving guidance to enact program changes, in line with the SNAP statute and regulations.

13.     However, the guidance documents (together, the "Guidance Documents") that USDA issued regarding Sections 10102, 10103, and 10105 of the OBBB informed States that the exclusionary period for implementing these program changes had started running on July 4,

Page 3 -  SUPPLEMENTAL DECLARATION OF PETER HADLER

2025—the day that OBBB was enacted—even though the Guidance Documents came long after that date.

14.    On August 29, 2025, USDA issued guidance about Section 10103 of the OBBB, which changed how the standard utility allowance is calculated in determining SNAP benefit amounts, stating that the exclusionary period ended November 1. On October 3, 2025, USDA issued guidance about Section 10102(a) of the OBBB, which changed the exceptions from work requirements for able-bodied adults without dependents, or ABAWDs, stating that the exclusionary period ended November 1. And on October 31, 2025, USDA issued guidance on non-citizen eligibility, informing States the exclusionary period would end the very next day, November 1, 2025 (a Saturday).

15.    Historically, DSS experiences more errors as we figure out how to implement new guidance from USDA. Thus, USDA may attempt to count any so-called "errors" stemming from the Guidance Documents as part of Connecticut's error rate, increasing the risk that Connecticut may have to pay financially ruinous penalties.

16.    In the fourteen years I have worked at DSS, it has always been USDA's practice to begin the exclusionary period after the issuance of agency guidance, which DSS relies on to implement often complicated program changes in accordance with USDA's understanding of the law. Indeed, it is my understanding that USDA's practice has been in place since before I began working at DSS.

17.    One example of when the USDA adjusted the exclusionary period from the date of guidance was after President George W. Bush signed The Consolidated Appropriations Act, 2005, Public Law 108-447. This law contained a provision which excluded from SNAP eligibility determinations any additional pay received by military personnel as a result of deployment to a combat zone. In a January 2005 memo from USDA-FNS Acting Deputy Administrator Jessica Shahin, the USDA noted that the subject provision included no specific

Page 4 -  SUPPLEMENTAL DECLARATION OF PETER HADLER

implementation timeframe and was retroactive to October 1, 2004. Nonetheless, FNS also explicitly stated in the memo that "A 120-day Quality Control variance exclusion applies to this memorandum. The 120-day period would begin sixty days from the date of this memorandum, March 15, 2005 and ends 120 days later, July 13, 2005."[1]  Not only did FNS provide the standard full 120-day exclusionary period, but it also set the start period to commence 60 days after the initial guidance was provided.

18.    As another example, on November 6, 2009, President Obama signed the Worker, Homeownership, and Business Assistance Act of 2009 requiring States to exclude the $25 per week increased unemployment compensation payments authorized under the Act from all calculation of resources and income in the SNAP program.  On November 19, 2009, the USDA issued implementation guidance to States. Subsequently, on December 4, 2009, the USDA issued a SNAP 120-Day Quality Control (QC) Variance Exclusion memo noting that "the variance exclusion period is effective 30 days from the date of the guidance memorandum and continues for 120 days from that date, April 17, 2010."[2]

19.    Additionally, the Department of Defense Appropriations Act of 2010, P. L 111-118, enacted on December 19, 2009, contained a provision allowing Iraqi and Afghan Special Immigrants (SIVs) eligibility for federal public benefits, including SNAP, to the same extent and for the same time period as refugees. On January 29, 2010, FNS issued an implementation memo to States and noted that the 120-day variance exclusion was structured to be effective 30 days from the date of the guidance memorandum and run 120 days from that date. FNS separately noted that cases involving Iraqi and Afghan SIV holders would not have associated variances identified for QC error purposes "beginning December 19, 2009 [the effective date of the law]

---

[1] https://www.fns.usda.gov/snap/pl-108-447-memo (last viewed 3/17/2026)

[2] https://web.archive.org/web/20251117111025/https://fns-prod.azureedge.us/sites/default/files/snap/120-Day%20QC%20Variance%20Exclusion.pdf

Page 5 -  SUPPLEMENTAL DECLARATION OF PETER HADLER

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

through 30 days from the date of the guidance memo."[3] Accordingly, FNS is acknowledged that the statute was in effect from enactment but still anchored the formal 120-day exclusion buffer to the guidance date.

20.    Through these and other examples, FNS has repeatedly recognized the purpose of – and properly actualized – the rule of anchoring the 120-day QC exclusion window to the date of FNS guidance rather than the date of statutory enactment. If anything, FNS has recognized the importance of providing *at least* 120 days for States to implement these complex changes. Because of this history, as well as the need for clarifications around challenging and nuanced new policies, DSS reasonably expected that the 120-day period between enactment and guidance was a protected zone for implementation. Furthermore, DSS reasonably expected that "self-executing" language in statutes did not accelerate this window because States have long expected the regularly issued and critical FNS guidance concerning implementation nuances that often significantly impact process and system changes (guidance which was of course issued in this very instance as well), and because FNS has consistently treated its own guidance as the operative implementation trigger.

## III.    USDA GUIDANCE TO OBBB CHANGES TO SNAP PROGRAM

### A.    USDA's August 29 Guidance Memorandum Pertaining to Standard Utility Allowances

21.    On August 29, 2025, USDA issued a guidance memorandum to SNAP State agencies (the "SUA Guidance"), to provide them "with additional information on implementing Section 10103 of the OBBB, which changes the treatment of certain energy assistance payments for SNAP."

---

[3] https://www.fns.usda.gov/snap/eligibility/citizen-time-limit-elimination-iraqi-afghani-special-immigrants

Page 6 -  SUPPLEMENTAL DECLARATION OF PETER HADLER

22.     In a section entitled, "Quality Control and Technical Assistance," the agency announced that although "[a] 120-day variance exclusion is permitted," the period had already begun to run and would end 64 days after the guidance issuance date, on November 1, 2025.

23.     A week later, on September 4, 2025, USDA issued an Information Memo outlining the "SNAP Provisions of the One Big Beautiful Bill Act of 2025." The Information Memo did not directly address the 120-day exclusionary period, except to say that "FNS will, as appropriate, hold states harmless for Quality Control (QC) purposes for 120 days from the implementation date." As to Section 10103 (SUA), the memo says, "This provision is effective upon enactment."

24.     On August 29, 2025, USDA sent DSS the SUA implementation guidance via electronic mail (Email). Within this guidance, the USDA noted that "A 120-day variance exclusion is permitted for the misapplication of changes in Section 10103 of the OBBB to new and ongoing SNAP households until the exclusionary period end date on November 1, 2025."

25.     On September 4, 2025, the USDA sent an additional memo titled "Supplemental Nutrition Assistance Program Provisions of the One Big Beautiful Bill Act of 2025 – Information Memorandum." This memo described all of the SNAP provisions, effective dates for most provisions, and noted that FNS will, as appropriate, hold states harmless for QC purposes for 120 days from the implementation date.

26.     To properly implement the new statutory provision and subsequent guidance, DSS needed to make significant changes to its eligibility system to ensure the Standard Utility Allowance (SUA) is included in a household's SNAP benefit calculation based on the receipt of an energy assistance payment only if the household contains an elderly or disabled household member. These system changes include changes to screens, notices, eligibility rules, and accounting and benefit issuance modules. Additionally, the DSS eligibility system had to be updated to reinstate the use of the Limited Utility Allowance (LUA) and Telephone Utility

Page 7 -  SUPPLEMENTAL DECLARATION OF PETER HADLER

Allowance (TUA) in benefit calculations for households when appropriate, because prior to this change those allowances were not typically applied given the qualification of households for the SUA. Additionally, DSS had to provide its staff with new training, hold information sessions with staff and community partners, revise documents, forms, and websites, and devise manual workarounds in eligibility systems to ensure accurate eligibility determinations until permanent system modifications could be completed.

27.     In October, following the passage of the OBBB, DSS began to take steps to implement the OBBB's changes to SUA calculations as applied to SNAP.  DSS invested significant time and resources into planning and implementing the changes to SNAP eligibility made by the OBBB. The SUA Guidance increased the costs associated with implementation of the changes required by OBBB by shortening the time states had to fully implement the changes and eliminate errors that inevitably result with program changes. Specifically, DSS had to:

i.      Temporarily institute time-consuming manual workarounds because there was insufficient time to implement the necessary complex system adjustments, which in turn leads to higher operating costs such as overtime and lost opportunity costs to work on other important aspects of program administration;

ii.     Reprogram multiple components of its eligibility system;

iii.    Revise intake procedures;

iv.     Re-train staff;

v.      Re-review eligibility for applicants and current participants;

vi.     Prepare for more administrative hearings; and

vii.    Handle more customer service inquiries.

28.     The SUA Guidance elevates the risk that Connecticut will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. As noted above,

Page 8 -  SUPPLEMENTAL DECLARATION OF PETER HADLER

Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The SUA Guidance stated that the exclusionary period, that is, the period of time during which errors do not count towards a state's error rate, ended on November 1, 2025. Historically, there are more errors immediately after new policies are announced as States figure out how to implement new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the SUA Guidance as part of Connecticut's error rate, increasing the risk that Connecticut may have to pay financially ruinous penalties. And USDA claims the authority to count those errors starting November 1, 2025, drastically shortening the period for full compliance, further increasing the chance they will be subject to these penalties. Of note, shelter calculation errors, particularly those regarding the accurate application of the SUA, have been a leading contributor to Connecticut's SNAP payment error rate each year. DSS expects that the combination of delayed FNS guidance coupled with an inadequate exclusionary period will result in an increase in SNAP payment errors, particularly in the initial months after the guidance was finalized.

**B.      USDA's October 3 Guidance Related to Able-Bodied Adults Without Disabilities**

29.      On October 3, 2025, USDA-FNS issued a guidance memorandum to SNAP State Agencies (the "ABAWD Guidance"), to provide them "with additional information on implementing Section 10102(a) of the OBBB, which changes exceptions from the Able-Bodied Adults Without Dependents (ABAWD) time limit."

30.      In a section entitled, "Quality Control and Technical Assistance," the agency announced that although "[a] 120-day variance exclusion is permitted," the period had already begun to run and would end 29 days after the guidance issuance date, on November 1, 2025.

31.      On October 3, 2025, USDA sent DSS the ABAWD Guidance via Email. In order to comply with the new ABAWD requirements, DSS needed to make significant changes to its eligibility system including updates to screens, dropdown menus, eligibility rules, and

Page 9 -  SUPPLEMENTAL DECLARATION OF PETER HADLER

exemptions. Each of the various exemption changes required distinct changes to various system components, including: lowering the applicable age for the exception for individuals while a child in the home; requiring that individuals aged 60 through 64 (up to their 65th birthday) be subject to ABAWD work requirements while remaining exempt from the SNAP general work requirements; removing programmed exemptions for veterans, individuals experiencing homelessness, and individuals under age 24 who aged out of foster care at 18. New fields had to be developed to capture individuals who qualify as "An Indian," "Urban Indian," or "California Indian." Additionally, as with the SUA, DSS had to develop and deliver new training materials, develop and host information sessions with staff and community partners, and update documents, forms, and websites. DSS also had to develop and implement manual process workarounds to ensure program eligibility could be determined properly until system modification could be effectuated.

32.     Starting in July, immediately following the passage of the OBBB, DSS began to take steps to implement the OBBB's changes to ABAWD eligibility as applied to SNAP. Initial steps included preliminary identification and assessment of those individuals potentially affected by the changes, drafting of informational websites and development of eligibility pre-screeners, and the drafting of procurement documents such as a Request For Quotations and Statements of Work for a vendor to support design sessions, system changes, user testing, and implementation. However, DSS could not fully commence design and implementation of these changes because it was waiting for guidance from FNS around identified conflicts in policy, such as the those involving the intersection of SNAP general work requirements and ABAWD work requirements; policy refinement such as the final definition of who is considered "An Indian", "Urban Indian", or "California Indian"; and policy application, such as whether rules for veterans also applied to disabled veterans.

Page 10 -  SUPPLEMENTAL DECLARATION OF PETER HADLER

33.     As described above, DSS has already invested significant time and resources into planning and implementing the changes to SNAP eligibility made by the OBBB. The ABAWD Guidance increased the costs required to implement the changes required by OBBB by shortening the time states had to fully implement the changes. Specifically, DSS had to:

i.     Temporarily institute time-consuming manual workarounds because there was insufficient time to implement the necessary complex system adjustments, which in turn leads to higher operating costs such as overtime and lost opportunity costs to work on other important aspects of program administration;

ii.     Reprogram multiple components of its eligibility system;

iii.     Revise intake procedures;

iv.     Re-train staff;

v.     Re-review eligibility for applicants and current participants;

vi.     Prepare for more administrative hearings; and

vii.     Handle more customer service inquiries.

34.     The ABAWD Guidance elevates the risk that Connecticut will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. As noted above, Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The Guidance stated that the exclusionary period ended on November 1, 2025. Historically, DSS experiences more errors as we figure out how to implement new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the ABAWD Guidance as part of Connecticut's SNAP payment error rate, increasing the risk that Connecticut may have to pay financially ruinous penalties. And USDA claims the authority to be able to count those errors starting November 1, 2025, drastically shortening the period for full compliance, further increasing the chance of these penalties. Indeed, Connecticut has only just recently – in March

Page 11 -  SUPPLEMENTAL DECLARATION OF PETER HADLER

2026 – been able to fully implement some of the system changes necessary to consistently apply the new ABAWD rules. Due to the level of complexity of ABAWD rules, and the operational consistency required to achieve low SNAP error rates that can often only be achieved by the uniformity that is dependent on systemic solutions, DSS expects that the majority of ABAWD-related payment errors will come in the first 120 days after final guidance was received and system changes were made – i.e., prior to March 2026.

35.    On November 14, 2025, USDA issued a policy memo (the "Exclusionary Period Memo") answering "follow-up questions submitted by State agencies on the variance exclusion period for implementation" of Sections 10102 and 10103 of the OBBB. The Exclusionary Period Memo reiterated that the "required implementation date" for both Sections 10102 and 10103 of the OBBB was "the enactment of OBBB, July 4, 2025" and therefore the exclusionary period had already ended 14 days prior.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

EXECUTED on March 20, 2026.

Peter Hadler

Digitally signed by Peter Hadler
DN: cn=Peter Hadler, o=DSS, ou=Deputy
Commissioner, email=peter.hadler@ct.gov, c=US
Date: 2026.03.20 18:01:33 -04'00'

PETER HADLER
Deputy Commissioner
Connecticut Department of Social Services

Page 12 -  SUPPLEMENTAL DECLARATION OF PETER HADLER

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047