LETITIA JAMES
Attorney General for the State of New York
Molly Thomas-Jensen
Jessica Ranucci
*Special Counsel*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Gina Bull
*Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8679
Email: molly.thomas-jensen@ag.ny.gov
         jessica.ranucci@ag.ny.gov
         rabia.muqaddam@ag.ny.gov
         gina.bull@ag.ny.gov

*Attorneys for the State of New York*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| STATE OF NEW YORK, et al., | Case No.  6:25-cv-02186-MTK |
| Plaintiffs, | SUPPLEMENTAL DECLARATION OF ERIN FRISCH |
| v. | |
| BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al., | |
| Defendants. | |

Page 1 -    SUPPLEMENTAL DECLARATION OF ERIN FRISCH

I, Erin Frisch, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am a resident of the State of Michigan and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

## I.      PERSONAL BACKGROUND AND QUALIFICATIONS

2.      I am currently employed by the Michigan Department of Health and Human Services ("MDHHS") as the Senior Deputy Director of the Economic Stability Administration (ESA).

3.      This supplements my declaration dated November 24, 2025, filed in support of Plaintiff States' Motion for Preliminary Injunction and filed at ECF No. 16.

4.      I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

## II.      PUBLIC LAW 119-21 (THE ONE BIG BEAUTIFUL BILL ACT OF 2025)

5.      On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 (OBBB).

6.      OBBB made many changes to the administration of the SNAP program. It also changed the structure of how SNAP benefits and administration will be paid for in the future between states and the federal government, shifting more of the expense of the program onto states.

7.      Specifically, Section 10108 of OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f).

8.      Section 10103 of OBBB, titled, "Availability of Standard Utility Allowances Based on Receipt of Energy Assistance," limited which households would qualify for an income deduction based on receipt of energy assistance payments. Previously, households who received payments through qualifying energy assistance programs also received a deduction from their

Page 2 -    SUPPLEMENTAL DECLARATION OF ERIN FRISCH

household income, the heating and cooling standard utility allowance. The OBBB changed that allowance to only apply to households that contain an elderly or disabled member.

9. Section 10102 of OBBB, titled "Modification to SNAP Work Requirements for Able-Bodied Adults," changes who can be excepted from the rule that Able-Bodied Adults Without Dependents (ABAWDs) may not receive SNAP benefits for more than three months in a three-year period without also meeting ABAWD work requirements, including working, volunteering, or participating in a job skills program a set number of hours per week. The law narrowed the categories of people who are exempt from the ABAWD work requirements, including removing exemptions for homeless individuals, veterans, individuals aged 24 or younger and in foster care, individuals aged 54 to 59, and households with children aged 14 to 17. The law also created new exceptions to the ABAWD work requirements for certain Native Americans. Section 10102 also narrowed the criteria under which States can apply for and be granted a waiver from the ABAWD time limits.

10. Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates.

11. MDHHS typically relies on USDA guidance to implement statutory changes to SNAP to ensure we are complying with the agency's interpretation of the law. In recognition that States need time to fully implement new changes to their SNAP programs correctly, the SNAP statute and regulations provide a 120-day period during which State payment errors are waived for the purpose of calculating their payment error rate, called the "exclusionary period."

12. In the past, the agency began the exclusionary period *after* USDA issued its implementing guidance to the States, providing States at least 120 days after receiving guidance to enact program changes, in line with the SNAP statute and regulations.

13. However, the guidance documents (together, the "Guidance Documents") that USDA issued regarding Sections 10102, 10103, and 10105 of the OBBB informed States that the exclusionary period for implementing these program changes had started running on July 4,

Page 3 -   SUPPLEMENTAL DECLARATION OF ERIN FRISCH

2025—the day that OBBB was enacted—even though the Guidance Documents came long after that date.

14.    On August 29, 2025, USDA issued guidance about Section 10103 of the OBBB, which changed how the standard utility allowance is calculated in determining SNAP benefit amounts, stating that the exclusionary period ended November 1. On October 3, 2025, USDA issued guidance about Section 10102(a) of the OBBB, which changed the exceptions from work requirements for able-bodied adults without dependents, or ABAWDs, stating that the exclusionary period ended November 1. And on October 31, 2025, USDA issued guidance on non-citizen eligibility, informing States the exclusionary period would end the very next day, November 1, 2025 (a Saturday).

15.    Historically, MDHHS experiences more errors as we figure out how to implement a new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the Guidance Documents as part of Michigan's error rate, increasing the risk that Michigan may have to pay financially ruinous penalties.

16.    In the 16 years I have worked at MDHHS, it has always been USDA's practice to begin the exclusionary period after the issuance of agency guidance or after the effective date of the change, which ever came later, which MDHHS relies on to implement often complicated program changes in accordance with USDA's understanding of the law.

17.    When implementing the requirements of the Fiscal Responsibility Act (FRA) of 2023, approved on June 3, 2023,  FNS issued a letter to all states on July 27, 2023 titled "Supplemental Nutrition Assistance Program (SNAP) – SNAP Provisions of the Fiscal Responsibility Act of 2023 – Questions and Answers" in which guidance was provided to states, including instructions on how the "hold-harmless period" would apply for states for 120 days from the required implementation date or the date or from the date of actual implementation, including how additional time could be requested.   Additionally, when implementing the final rule published by FNS on November 18, 2024, FNS issued a letter to all states on December 20,

Page 4 -    SUPPLEMENTAL DECLARATION OF ERIN FRISCH

2024 titled "Supplemental Nutrition Assistance Program (SNAP) - Question and Answer #1 for the Implementation of Regulatory Changes to Standard Utility Allowances (SUAs)" which included instructions on how the "hold-harmless period" would apply for states 120 days from the required implementation date or from the date of actual implementation.

18.    MDHHS relies on the timely guidance provided by FNS prior to implementation to ensure proper adherence to FNS' interpretation and intention of rules and regulations. Policy and procedure changes require extensive administrative, technological, and procedural changes and expenses. MDHHS requires the written guidance and feedback from FNS in order to act appropriately to avoid additional or duplicated costs.

### III.    USDA GUIDANCE TO OBBB CHANGES TO SNAP PROGRAM

**A.    USDA's August 29 Guidance Memorandum Pertaining to Standard Utility Allowances**

19.    On August 29, 2025, USDA issued a guidance memorandum to SNAP State agencies (the "SUA Guidance"), to provide them "with additional information on implementing Section 10103 of the OBBB, which changes the treatment of certain energy assistance payments for SNAP."

20.    In a section entitled, "Quality Control and Technical Assistance," the agency announced that although "[a] 120-day variance exclusion is permitted," the period had already begun to run and would end 64 days after the guidance issuance date, on November 1, 2025.

21.    A week later, on September 4, 2025, USDA issued an Information Memo outlining the "SNAP Provisions of the One Big Beautiful Bill Act of 2025." The Information Memo did not directly address the 120-day exclusionary period, except to say that "FNS will, as appropriate, hold states harmless for Quality Control (QC) purposes for 120 days from the implementation date." As to Section 10103 (SUA), the memo says, "This provision is effective upon enactment."

22.    On August 29, 2025, USDA sent MDHHS the SUA Guidance via email.

Page 5 -    SUPPLEMENTAL DECLARATION OF ERIN FRISCH

23.     MDHHS worked to ensure compliance with the new SUA requirements by updating the integrated eligibility determination system with new rules and requirements, updating training documents for local office eligibility staff, updating policy manuals and processes, and communicating said changes to local office eligibility and management staff.

24.     In August 2025, following the passage of the OBBB, MDHHS began to take steps to implement the OBBB's changes to SUA calculations as applied to SNAP. While awaiting official guidance from FNS, MDHHS gathered information on current system data to analyze how many individuals may be affected.  MDHHS began prepping policy changes and eligibility system updates.  Once guidance was received on August 29th, MDHHs began implementation of the changes, using the clarifications provided in the FNS guidance letter.

25.     As described above, MDHHS has already invested significant time and resources into both planning and implementing the changes to SNAP eligibility made by the OBBB. The SUA Guidance increased the costs required to implement the changes required by OBBB by shortening the time states had to fully implement the changes and eliminate errors that inevitably result with program changes. Specifically:

a)     Policy, system, and procedure updates were required to be completed outside of our standard operating practices and in an expedited manner. This included the following updates:

b)     Eligibility system updates were completed in an expedited manner, causing potential delays to SNAP and other program needs.

c)     Training documents were required to be updated and issued in an expedited timeline, creating backlog for other SNAP required updates and payment accuracy initiatives.

26.     MDHHS was unable to give advanced notice to households, beyond the standard timely notice requirements, causing additional phone calls and questions from recipients.  With

Page 6 -     SUPPLEMENTAL DECLARATION OF ERIN FRISCH

additional time and clearer guidance, MDHHS could have provided additional information to recipients to reduce confusion and local office impact.

27.    The SUA Guidance elevates the risk that Michigan will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. As noted above, Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The SUA Guidance stated that the exclusionary period—that is, the period of time during which errors do not count towards a state's error rate— ended on November 1, 2025. Historically, there are more errors as MDHHS figures out how to implement new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the SUA Guidance as part of Michigan's error rate, increasing the risk that Michigan may have to pay financially ruinous penalties. And USDA claims the authority to count those errors starting November 1, 2025, drastically shortening the period for full compliance, further increasing the chance they will be subject to these penalties.

**B.    USDA's October 3 Guidance Related to Able-Bodied Adults Without Disabilities**

28.    On October 3, 2025, USDA-FNS issued a guidance memorandum to SNAP State Agencies (the "ABAWD Guidance"), to provide them "with additional information on implementing Section 10102(a) of the OBBB, which changes exceptions from the Able-Bodied Adults Without Dependents (ABAWD) time limit."

29.    In a section entitled, "Quality Control and Technical Assistance," the agency announced that although "[a] 120-day variance exclusion is permitted," the period had already begun to run and would end 29 days after the guidance issuance date, on November 1, 2025.

30.    On October 3, 2025, USDA sent MDHHS the ABAWD Guidance via email.

31.    Prior to receiving the October 3, 2025 letter, MDHHS requested additional guidance from FNS over eight times, starting on July 8, 2025, with no additional guidance provided.  MDHHS was repeatedly told that guidance would be forthcoming, despite MDHHS's admonishments that the required change would be both costly and time-consuming.

Page 7 -    SUPPLEMENTAL DECLARATION OF ERIN FRISCH

32.    In August 2025, following the passage of the OBBB, MDHHS began to plan for the implementation of the OBBB's changes to ABAWD eligibility. These changes included policy language updated, extensive eligibility system updates, updates to training documents and sessions, public-facing letters, and decision notices.  Due to the nature of the new, stricter requirements, MDHHS dedicated time and resources to ensure that the public was made aware of the changes by working with the media, outreach partners, and other community partners.

33.    As described above, MDHHS has already invested significant time and resources into planning and implementing the changes to SNAP eligibility made by the OBBB. The ABAWD Guidance increased the costs required to implement the changes required by OBBB by shortening the time states had to fully implement the changes.  Additionally, the abrupt premature ending of MDHHS' prior ABAWD waiver approval significantly increased the administrative burden on the department by adding a significant expansion to the numbe3r of affected individuals across the state.  This expansion increased the number of staff requiring training as well as the number of recipients required to participate in the new ABAWD requirements.  Specifically:

a)    The delay in guidance placed a major constraint on our eligibility system updates, including insufficient development time, insufficient development testing time, and insufficient end-user testing time.  These constraints created a need for additional work requests and updates to fix system issues after implementation, creating a backlog of work and testing time for both ABAWD requirements and other SNAP requirements.

b)    Delayed guidance affected recipient communication, limiting the time MDHHS had to properly notify and educate individuals who are now subject to ABAWD requirements.

c)    MDHHS did not have sufficient time to adequately train and prepare local office staff and work participation community partners to ensure a smooth transition to

Page 8 -    SUPPLEMENTAL DECLARATION OF ERIN FRISCH

the new work requirement rules.  This created confusion, additional administrative work, and potential payment errors.

d)      Due to the delayed guidance and shortened implementation period, MDHHS was unable to provide sufficient public notice of the change in work requirements and the individuals who are now required to participate.  This led to increased local office traffic, recipient confusion, media inquiries, and increased confusion for community partners.

34.      The ABAWD Guidance elevates the risk that Michigan will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. As noted above, Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. The Guidance stated that the exclusionary period ended on November 1, 2025. Historically MDHHS experiences more errors as we figure out how to implement new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the ABAWD Guidance as part of Michigan's error rate, increasing the risk that Michigan may have to pay financially ruinous penalties. And USDA claims the authority to be able to count those errors starting November 1, 2025, drastically shortening the period for full compliance, further increasing the chance of these penalties.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

EXECUTED on March __18__, 2026.

_____
Erin P. Frisch

Page 9 -    SUPPLEMENTAL DECLARATION OF ERIN FRISCH

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047