LETITIA JAMES
Attorney General for the State of New York
Molly Thomas-Jensen
Jessica Ranucci
*Special Counsel*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Gina Bull
*Assistant Attorney General*
Office of the New York State Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8679
Email: molly.thomas-jensen@ag.ny.gov
  jessica.ranucci@ag.ny.gov
  rabia.muqaddam@ag.ny.gov
  gina.bull@ag.ny.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture, et al.,<br><br>   Defendants. | Case No.  6:25-cv-02186-MTK<br><br>SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, Deputy Director for Nutrition,<br>North Carolina Department Of Health and Human Services |

   I, Brian P. Hogan, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

   1.  I am a resident of the State of North Carolina and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

Page 1 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

## I.    PERSONAL BACKGROUND AND QUALIFICATIONS

2.    I am currently employed by the North Carolina Department of Health and Human Services ("NCDHHS"), Division of Child and Family Well-Being ("DCFW"), as Deputy Director for Nutrition.

3.    I hold a Juris Doctor degree from the University of North Carolina School of Law (2006) and am licensed to practice law in North Carolina and California. Prior to joining NCDHHS in September 2025, I practiced law with a focus on poverty law, administrative law, and public benefits, including food assistance programs. In my current role as Deputy Director for Nutrition, I am responsible for oversight of federal nutrition assistance programs administered by the State of North Carolina, including the Supplemental Nutrition Assistance Program ("SNAP"), the Special Supplemental Nutrition Program for Women, Infants, and Children ("WIC"), the Child and Adult Care Food Program ("CACFP"), the Summer Electronic Benefits Transfer program ("Summer EBT" or "SUN Bucks"), and the Disaster Supplemental Nutrition Assistance Program ("D-SNAP"). Together, these programs constitute an approximately $2.8 billion annual benefit portfolio serving North Carolinians across all 100 counties. I oversee program policy, federal compliance, quality control, county guidance, program integrity, and stakeholder relations for these programs.

4.    I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

## II.    SNAP IN NORTH CAROLINA

5.    SNAP, one of the programs administered by NCDHHS, involves the issuance of monthly electronic benefits that can be used to purchase food at authorized retail stores.

6.    SNAP is a key part of North Carolina's efforts to address hunger by supplementing the food budget of low-income families so they can purchase healthy food. During federal fiscal year 2025 (October 2024 through September 2025), an average of approximately 716,737 households and 1,439,835 individuals received SNAP benefits in North

Page 2 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

Carolina each month. NCDHHS issued an average of approximately $256.5 million per month in SNAP benefits during that period, with an average benefit of approximately $358 per household. Thus far in federal fiscal year 2026 (October 2025 through February 2026), an average of approximately 653,159 households and 1,306,443 individuals have received SNAP benefits each month, including approximately 546,539 children. The decline in participation from FFY2025 to FFY2026 has been steady over the year, with a notable decrease beginning in November 2025, during the federal government shutdown.

7.    NCDHHS administers the SNAP program in North Carolina pursuant to N.C.G.S. Section 108A-51 et seq. and 10A NCAC Chapter 71. Pursuant to federal law, NCDHHS administers SNAP on behalf of the United States Department of Agriculture ("USDA") and is responsible for the issuance, control, and accountability of SNAP benefits and Electronic Benefit Transaction ("EBT") cards; ensuring program integrity; and supervising county departments of social services' day-to-day administration of SNAP, including processing applications for SNAP benefits and certifying eligible applicant households. 7 U.S.C. Section 2020(a)(1); 7 C.F.R. Section 271.4; 7 C.F.R. Section 274.2. North Carolina operates a state-supervised, county-administered model in which 100 county departments of social services ("county DSS offices") make individual eligibility determinations, process applications, and serve clients under statewide policy set by NCDHHS. USDA funds the entirety of SNAP benefits in North Carolina, though North Carolina and the federal government split administrative costs. 7 U.S.C. Section 2025(a).

8.    Consistent with federal law, NCDHHS administers SNAP benefits to non-citizens who are eligible for SNAP by statute.

### III.    PUBLIC LAW 119-21 (THE ONE BIG BEAUTIFUL BILL ACT OF 2025)

9.    On July 4, 2025, President Donald J. Trump signed into law Public Law 119-21, the One Big Beautiful Bill Act of 2025 ("OBBB").

Page 3 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

10. OBBB made many changes to the administration of the SNAP program. It also changed the structure of how SNAP benefits and administration will be paid for in the future between states and the federal government, shifting more of the expense of the program onto states.

11. Specifically, Section 10108 of OBBB, titled "Alien SNAP Eligibility," made changes to the eligibility of certain categories of non-citizens for SNAP benefits, amending section 6(f) of the Food and Nutrition Act of 2008, 7 U.S.C. 2015(f). NCDHHS estimates that approximately 29,000 SNAP participants will be impacted by these eligibility changes.

12. Section 10103 of OBBB, titled "Availability of Standard Utility Allowances Based on Receipt of Energy Assistance," limited which households would qualify for an income deduction based on receipt of energy assistance payments. Previously, households who received payments through qualifying energy assistance programs also received a deduction from their household income, the heating and cooling standard utility allowance. The OBBB changed that allowance to only apply to households that contain an elderly or disabled member.

13. Section 10102 of OBBB, titled "Modification to SNAP Work Requirements for Able-Bodied Adults," changes who can be excepted from the rule that Able-Bodied Adults Without Dependents ("ABAWDs") may not receive SNAP benefits for more than three months in a three-year period without also meeting ABAWD work requirements, including working, volunteering, or participating in a job skills program a set number of hours per week. The law narrowed the categories of people who are exempt from the ABAWD work requirements, including removing exemptions for homeless individuals, veterans, individuals aged 24 or younger and in foster care, individuals aged 55 to 65 and households with children age 14 to 17. The law also created new exceptions to the ABAWD work requirements for certain Native Americans. NCDHHS estimates that approximately 106,000 SNAP participants will be impacted by these eligibility changes.

Page 4 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

14.     Section 10105 of the OBBB created a new set of penalties for States tied to their payment error rates. Under Section 10105, beginning in federal fiscal year (FFY) 2028, states with payment error rates exceeding certain thresholds will be required to share in the cost of SNAP benefits at rates of 5%, 10%, or 15% of total benefit expenditures, depending on their error rates in either FFY 2025 or FFY 2026. For North Carolina, with approximately $2.8 billion in annual SNAP benefits, a 15% cost-share would represent approximately $420 million annually.

15.     NCDHHS typically relies on USDA guidance to implement statutory and regulatory changes to SNAP to ensure we are complying with the agency's interpretation of the law. In recognition that States need time to fully implement new changes to their SNAP programs correctly, the SNAP statute and regulations provide a 120-day period during which State payment errors are waived for the purpose of calculating their payment error rate, called the "exclusionary period, "hold harmless period," or "variance exclusion." 7 U.S.C. § 2025(c)(3)(A); 7 C.F.R. § 275.12(d)(2)(vii).

16.     Under 7 C.F.R. § 275.12(d)(2)(vii) the variance exclusion applies to "any variance resulting from application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law that occurs during the first 120 days from the required implementation date." The regulation further defines "implementation" as occurring "on the effective date of State agency's written statewide notification to its eligibility workers." 7 C.F.R. § 275.12(d)(2)(vii)(E). The regulatory text thus ties the exclusion to a USDA promulgated regulatory change or implementing memoranda and statewide notification to workers, not to the date of statutory enactment.

17.     However, the guidance documents (together, the "Guidance Documents") that USDA issued regarding Sections 10102, 10103, and 10105 of the OBBB informed States that the exclusionary period for implementing these program changes had started running on July 4,

Page 5 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

2025, the day that OBBB was enacted, even though the Guidance Documents came long after that date.

18.     On August 29, 2025, USDA issued guidance about Section 10103 of the OBBB, which changed how the standard utility allowance is calculated in determining SNAP benefit amounts, stating that the exclusionary period ended November 1. On October 3, 2025, USDA issued guidance about Section 10102(a) of the OBBB, which changed the exceptions from work requirements for able-bodied adults without dependents, or ABAWDs, stating that the exclusionary period ended November 1. And on October 31, 2025, USDA issued guidance on non-citizen eligibility, informing States the exclusionary period would end the very next day, November 1, 2025 (a Saturday).

19.     Historically, NCDHHS experiences more errors as we figure out how to implement new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the Guidance Documents as part of North Carolina's error rate, increasing the risk that North Carolina may have to pay financially ruinous penalties.

## IV.     USDA'S HISTORICAL PRACTICE REGARDING THE EXCLUSIONARY PERIOD

20.     Based on my experience as an attorney focused on public benefits law and my review of NCDHHS records and USDA communications since joining NCDHHS in September 2025, I understood that historically USDA issued written guidance and technical assistance to states before or contemporaneous with the date from which the 120-day clock began, not from the date of statutory enactment, and certainly not less than 29-days, let alone less than 24-hours, prior to the end of the hold harmless period. This understanding is consistent with the regulatory text at 7 C.F.R. § 275.12(d)(2)(vii), which ties the exclusion to "application of a new Program regulation or implementing memorandum," and with the regulation's definition of "implementation" as the date of a state agency's written statewide notification to eligibility

Page 6 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

workers. A state risks serious error if it notifies its workers on how to implement a change before it has received guidance from USDA on what that change requires.

21.     USDA's own communications confirm this practice. For example, in 2008, Congress enacted two statutes changing food stamp eligibility for Iraqi and Afghani special immigrants: the Consolidated Appropriations Act of 2008 (P.L. 110-161, signed December 26, 2007) and the National Defense Authorization Act for Fiscal Year 2008 (P.L. 110-181, signed January 28, 2008). USDA FNS did not issue its implementing guidance until March 20, 2008, nearly three months after the first statute's enactment. That guidance stated: "A 120-day variance exclusion period is in effect for implementation of the revised guidance.... The variance exclusion period is effective 30 days from the date of this guidance memo and continues for 120-days from that date." USDA tied the exclusion to the guidance date, not to the dates of enactment.

22.     Upon joining NCDHHS, I became aware that NCDHHS, consistent with its understanding of the regulatory framework and USDA's historical practices, expected that USDA would issue implementing guidance for each OBBB provision and that the 120-day variance exclusion would begin from the required implementation dates associated with that guidance. Because USDA did not issue its SUA guidance until August 29, 2025 (56 days after enactment), its ABAWD guidance until October 3, 2025 (91 days after enactment), and its non-citizen eligibility guidance until October 31, 2025 (119 days after enactment), NCDHHS reasonably expected to have at least 120 days from each respective guidance date to achieve full compliance with each provision before errors would count against the State's payment error rate. USDA's position that the exclusionary period for all provisions began on July 4, 2025, the date of enactment, departs from this historical practice without explanation.

Page 7 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

## V.    USDA GUIDANCE TO OBBB CHANGES TO SNAP PROGRAM

**A.    USDA's August 29 Guidance Memorandum Pertaining to Standard Utility Allowances**

23.    On August 29, 2025, USDA issued a guidance memorandum to SNAP State agencies (the "SUA Guidance"), to provide them "with additional information on implementing Section 10103 of the OBBB, which changes the treatment of certain energy assistance payments for SNAP."

24.    In a section entitled, "Quality Control and Technical Assistance," the agency announced that although "[a] 120-day variance exclusion is permitted," the period had already begun to run and would end 64 days after the guidance issuance date, on November 1, 2025.

25.    A week later, on September 4, 2025, USDA issued an Information Memo outlining the "SNAP Provisions of the One Big Beautiful Bill Act of 2025." The Information Memo did not directly address the 120-day exclusionary period, except to say that "FNS will, as appropriate, hold states harmless for Quality Control (QC) purposes for 120 days from the implementation date." As to Section 10103 (SUA), the memo says, "This provision is effective upon enactment."

26.    State agencies, including NCDHHS, subsequently asked follow-up questions to USDA regarding the variance exclusion period for Section 10103. As described below, USDA issued a policy memo on November 14, 2025, responding to those questions and reiterating its position that the exclusionary period began on July 4, 2025.

27.    The OBBB's changes to the standard utility allowance required NCDHHS to modify its eligibility determination system, NC Families Accessing Services through Technology ("NC FAST"), to apply the heating and cooling standard utility allowance ("HCSUA") only to households containing an elderly or disabled member who receive qualifying energy assistance payments, rather than conferring the HCSUA to all households receiving such payments. Implementing a change of this significance required system programming changes, testing in lower environments, notice updates, county worker retraining,

Page 8 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

participant education, and post-implementation monitoring and defect correction. These efforts did not occur in isolation. NCDHHS was simultaneously planning, scoping, and implementing the other significant eligibility changes enacted under the OBBB, all of which competed for the same limited policy, training, and IT resources while NCDHHS continued to carry out the day-to-day program operations required to administer SNAP across 100 counties. These demands were further compounded by the federal government shutdown in October and November 2025, during which USDA first suspended, then partially reinstated at reduced levels, and then fully reinstated SNAP issuances over several weeks of conflicting guidance and operational uncertainty. Throughout this period, NCDHHS was also responding to increasing data requests from USDA related to OBBB implementation.

28. NCDHHS began planning for the implementation of the OBBB's changes to SUA calculations in July 2025 immediately following the enactment of OBBB. However, NCDHHS required guidance from USDA to implement the changes correctly, because the statutory language required interpretation regarding which energy assistance programs qualified and how to treat various payment scenarios. NCDHHS issued Change Notice FNS-CN-03-2025, effective December 1, 2025, implementing the SUA changes statewide. This was approximately three months after USDA issued its SUA Guidance on August 29, 2025, and approximately five months after OBBB enactment.

29. Even now, as of March 20, 2026, NCDHHS is waiting for USDA to respond to the Department's technical assistance request regarding whether North Carolina's charitable Crisis Intervention Programs qualify as third-party energy assistance payments under the OBBB, and whether North Carolina will be required to make adjustments to its implementation of Section 10103.  On December 12, 2025, USDA SERO contacted NCDHHS SNAP leadership requesting additional information on the state's implementation of Section 10103.  NCDHHS responded to USDA SERO's request on December 22, 2025 and January 9, 2026, with a detailed memorandum explaining the Department's interpretation of Section 10103 within the context of

Page 9 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

the Food and Nutrition Act, and asking for assistance to ensure our interpretation of OBBB is consistent with USDA's interpretation.

30. As described above, NCDHHS has already invested significant time and resources into implementing the changes to SNAP eligibility made by the OBBB. The SUA Guidance increased the costs required to implement the changes required by OBBB by shortening the time states had to fully implement the changes and eliminate errors that inevitably result with program changes. Specifically:

a) NCDHHS had to develop, test, and deploy NC FAST system programming changes to modify SUA calculation logic, while also ensuring that the implementation logic would not impact households receiving SUA under the energy assistance linkage until they could be properly assessed at their next recertification;

b) NCDHHS had to retrain county eligibility workers across all 100 county DSS offices on the new SUA rules, including developing training materials, conducting webinars, and providing one-on-one technical assistance;

c) NCDHHS anticipates an increase in administrative hearings as participants whose benefits decrease due to the SUA change exercise their right to appeal; and

d) NCDHHS experienced increased customer service inquiries from participants and county workers seeking clarification on the new rules.

31. The SUA Guidance elevates the risk that North Carolina will face massive financial penalties due to inadvertent noncompliance with the OBBB. As noted above, Section 10105 of the OBBB created a new penalty framework for States tied to their payment error rates, with cost-sharing rates of up to 15% of total benefit expenditures, which for North Carolina could mean penalties of up to approximately $420 million annually. The SUA Guidance stated that the exclusionary period ended on November 1, 2025. Historically, NCDHHS experiences more errors during the initial implementation of new guidance. USDA may therefore count

Page 10 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

errors stemming from the SUA changes as part of North Carolina's payment error rate, increasing the risk that North Carolina will face financially ruinous penalties. USDA claims the authority to count those errors starting November 1, 2025, even though NCDHHS did not implement the SUA changes statewide until December 1, 2025, meaning that the entire first month of implementation occurred after the claimed end of the exclusionary period.

32.     USDA's position is even more restrictive than the November 1, 2025 end date suggests. USDA Quality Control staff informed NCDHHS Quality Control staff that the variance exclusion would not apply from July 4, 2025, until the date that North Carolina issued its own implementation memorandum to county eligibility workers. NCDHHS issued that memorandum on September 19, 2025. See NCDHHS, Dear County Directors of Social Services Memorandum, EFS-FNSEP-14-2025, "Food and Nutrition Services (FNS) Provisions of the H.R. 1 Reconciliation Bill Implementation Information and Guidance" (September 19, 2025). Under USDA's interpretation, the variance exclusion period for SUA ran only from September 19 through November 1, 2025, a total of 43 days, rather than the 120 days contemplated by the regulation. This interpretation would have required NCDHHS to issue an implementation memorandum to its county eligibility workers before NCDHHS had even received USDA's own implementing guidance for the SUA changes on August 29, 2025.

**B.     USDA's October 3 Guidance Related to Able-Bodied Adults Without Dependents**

33.     On October 3, 2025, USDA-FNS issued a guidance memorandum to SNAP State Agencies (the "ABAWD Guidance"), to provide them "with additional information on implementing Section 10102(a) of the OBBB, which changes exceptions from the Able-Bodied Adults Without Dependents (ABAWD) time limit."

34.     In a section entitled, "Quality Control and Technical Assistance," the agency effectively announced that although "[a] 120-day variance exclusion is permitted," the period had already begun to run and would end 29 days after the guidance issuance date, on November 1, 2025.

Page 11 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

35.     On or about October 3, 2025, NCDHHS received the ABAWD Guidance via email from SERO and through the FNS website.

36.     NCDHHS received 29 days of notice before the claimed end of the exclusionary period. To put this in context, under USDA's historical practices, NCDHHS would have received 120 days from the date of the ABAWD Guidance to implement the changes with QC protection. Instead, USDA's position left NCDHHS with less than one month to implement one of the most complex sets of SNAP eligibility changes in the program's history.

37.     The OBBB's changes to ABAWD work requirements required extensive modifications to NC FAST, including: expanding the ABAWD age range from 18-54 to 18-64; modifying the dependent child exemption from households with children under 18 to under 14; removing exemptions for homeless individuals, veterans, and foster care youth (while reinstating a chronic homelessness exemption under discretionary authority under the regulations); adding new American Indian exemption categories with associated screening and verification; and updating notices, forms, and worker screening protocols. These changes affected eligibility determinations for all non-exempt adults receiving SNAP benefits.

38.     Following the passage of the OBBB, NCDHHS began taking steps to implement the OBBB's changes to ABAWD eligibility. NCDHHS issued DCDL EFS-FNSEP-20-2025, effective November 3, 2025, addressing Phase 1 ABAWD implementation, including the American Indian exemption (effective November 1, 2025) and remaining ABAWD changes (effective December 1, 2025). NCDHHS subsequently issued Change Notice FNS-CN-02-2025, effective December 1, 2025, implementing the full ABAWD policy changes in the FNS Manual. Full NC FAST system automation of the ABAWD changes went live on December 1, 2025. Since December 1, 2025 (system go-live), county workers and NC FAST have needed to implement and correct many ABAWD eligibility issues through manual processes and workarounds, increasing the likelihood of errors, due to system defects in programming that

Page 12 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

could not be adequately addressed during the extremely compressed timeline that NCDHHS's NC FAST policy and programming staff were required to implement these changes.

39.   As described above, NCDHHS has already invested significant time and resources into implementing the changes to SNAP eligibility made by the OBBB. The ABAWD Guidance increased the costs required to implement the changes required by OBBB by shortening the time states had to fully implement the changes. Specifically:

a)  NCDHHS had to develop, test, and deploy NC FAST system programming changes to modify ABAWD screening, exemption tracking, and time-limit calculations, affecting eligibility determinations for all non-exempt adults;

b)  NCDHHS had to revise intake and recertification procedures, including new screening questions for American Indian exemptions and expanded age-range tracking;

c)  NCDHHS had to retrain county eligibility workers across all 100 county DSS offices on the new ABAWD rules, the narrowed exemptions, and the screening requirements per 7 CFR 273.24(k) and (l);

d)  NCDHHS had to ensure that at recertification all individuals previously coded with exemptions that were removed by OBBB (homeless, veterans, foster care youth) are properly reassessed for exceptions, but without mid-certification terminations that can be caused by system automations;

e)  NCDHHS anticipates an increase in administrative hearings as individuals who lose ABAWD exemptions or whose time-limited benefits end exercise their right to appeal; and

f)  NCDHHS experienced increased customer service inquiries from participants, county workers, and community organizations seeking clarification on the new ABAWD rules. NCDHHS developed public-facing resources including detailed ABAWD FAQ pages, printable flyers in English and Spanish, and social media

Page 13 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

materials to communicate the changes. However, the compressed implementation timelines coincided with the longest federal government shutdown in United States history, which required reallocation of NCDHHS resources to address the immediate operational crisis of suspended and reduced SNAP issuances. As a result, NCDHHS was unable to prioritize stakeholder communications regarding the ABAWD changes, causing delays in the publication of public-facing information for participants, county workers, and community partners. In addition to the ongoing burden of manual workarounds for system defects during implementation, delayed public communications may independently increase payment error rates, as participant confusion about program rules is a known contributor to payment errors.

g) The ABAWD Guidance elevates the risk that North Carolina will face massive financial penalties due to inadvertent noncompliance with OBBB and/or the Guidance. The Guidance stated that the exclusionary period ended on November 1, 2025, giving NCDHHS only 29 days to implement from guidance issuance. Historically, NCDHHS experiences more errors as we figure out how to implement new guidance. Thus, USDA may attempt to count any so-called "errors" stemming from the ABAWD Guidance as part of North Carolina's error rate, increasing the risk that North Carolina may have to pay financially ruinous penalties of up to $420 million annually under Section 10105. And USDA claims the authority to count those errors starting November 1, 2025, even though the system changes required to fully automate the ABAWD modifications in NC FAST did not go live until December 1, 2025, less than 2 months after the guidance was issued. The compressed timeline was particularly harmful because county workers and NC FAST have been required to implement complex ABAWD changes through a series of manual workarounds for approximately

Page 14 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

three months for certain cases, a period during which errors are substantially more likely than under automated system support, which could have been better achieved through ordinary programming and testing implementation timelines.

### C.    USDA's November 14 Guidance Related to Exclusionary Period Memo

40.    On November 14, 2025, USDA issued a policy memo (the "Exclusionary Period Memo") answering "follow-up questions submitted by State agencies on the variance exclusion period for implementation" of Sections 10102 and 10103 of the OBBB. The Exclusionary Period Memo reiterated that the "required implementation date" for both Sections 10102 and 10103 of the OBBB was "the enactment of OBBB, July 4, 2025" and therefore the exclusionary period had already ended 14 days prior.

### D.    Additional Harm to North Carolina

41.    In addition to the specific harms described above, the compressed and retroactive exclusionary periods have created cascading operational challenges for NCDHHS and North Carolina's 100 county DSS offices:

a)    North Carolina operates a state-supervised, county-administered model in which NCDHHS sets statewide policy but 100 county DSS offices make individual eligibility determinations. This means that every policy change must be communicated to, trained on, and implemented by 100 separate local agencies with varying staff sizes, technical capacity, and caseloads. Implementation timelines that may be aggressive for a single state agency are exponentially more challenging in a county-administered system.

b)    NC FAST, the statewide eligibility system, required a coordinated release to implement the OBBB changes. System releases require development, testing, user acceptance testing, and deployment, a process that typically takes months. North Carolina's release date for OBBB provisions reflected the minimum responsible

Page 15 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

timeline for system changes of this magnitude, and even then, the timeline has come with significant costs for North Carolina.

c) The simultaneous implementation of multiple complex OBBB provisions (SUA, ABAWD, non-citizen eligibility, which were implemented in North Carolina on February 1, 2026, and the new penalty framework) compounded the implementation burden on county staff and state-level policy and IT resources.

d) NCDHHS received some operational relief from the December 15, 2025 preliminary injunction in this case, which extended the hold-harmless period for non-citizen eligibility changes (Section 10108) through April 9, 2026. That relief allowed NCDHHS to implement the non-citizen eligibility changes on February 1, 2026, rather than a January 1, 2026 effective date. Without the injunction, NCDHHS would have been forced to release another set of imperfectly tested programming changes into the live eligibility system earlier than was technically feasible, further compounding the potential harm to both North Carolina's payment error rate and its SNAP participants. Even with the February 1, 2026 effective date, NCDHHS has continued to identify and correct programming logic for edge cases and other unforeseen eligibility issues related to the Section 10108 changes. The extended hold-harmless period has allowed NCDHHS to respond to, modify, and implement corrections to these defects, including additional worker training and county communications, while errors discovered during this remediation period are excluded from the State's payment error rate. This is

Page 16 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS

precisely the protection the 120-day variance exclusion is designed to provide, and it illustrates the harm that results when that protection is denied.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on March 20, 2026, in Raleigh, North Carolina.


*/s/ Brian P. Hogan*_____
BRIAN P. HOGAN
Deputy Director for Nutrition
Division of Child and Family Well-Being
NC Department of Health and Human Services

Page 17 - SUPPLEMENTAL DECLARATION OF BRIAN P. HOGAN, NCDHHS