BRETT A. SHUMATE
Assistant Attorney General, Civil Division
ERIC J. HAMILTON
Deputy Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director, Federal Programs Branch
MICHAEL VELCHIK
Senior Counsel to the Assistant Attorney General
TYLER J. BECKER
Counsel to the Assistant Attorney General
MICHAEL BRUNS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: 202-514-4011
Email: michael.bruns@usdoj.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, *et al.,*<br><br>    *Plaintiffs,*<br>    v.<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture; and U.S. DEPARTMENT OF AGRICULTURE, *et al.,*<br><br>    *Defendants* | Case No. 6:25-cv-02186-MTK<br><br>**CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

**CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

MOTION..................................................................................................................... 1

MEMORANDUM OF LAW .......................................................................................... 1

BACKGROUND ........................................................................................................... 3

I.      Statutory Background ........................................................................................ 3

      A.      Food and Nutrition Act of 2008 (FNA) and the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA)............................................. 3

      B.      One Big Beautiful Bill Act (OBBB) Changes to Section 7 U.S.C. § 2015(f) ........ 4

      C.      PRWORA's Waiting Period ................................................................................. 4

      D.      OBBB Changes to 7 U.S.C. § 2014: the Standard Utility Allowance .................... 7

      E.      OBBB Changes to 7 U.S.C. § 2015(o): Work Requirements for Able Bodied Adults ................................................................................................................. 8

      F.      OBBB's Cost-Sharing Provisions........................................................................ 8

II.     Factual Background ........................................................................................ 10

      A.      USDA's August 29, 2025 Standard Utility Allowance (SUA) Guidance ............ 10

      B.      USDA's October 31, 2025 Non-Citizen Guidance............................................... 10

         1.      USDA's Q&As Guidance ........................................................................ 11

      C.      USDA's October 3, 2025 ABAWD Guidance ..................................................... 13

      D.      USDA's November 14, 2025 Exclusionary Period Memo ................................... 13

III.    Procedural Background..................................................................................... 14

LEGAL STANDARDS ................................................................................................ 14

ARGUMENT .............................................................................................................. 15

I.      Challenges to the Non-Citizen Guidance is Moot ............................................ 15

II.     The Guidances are not Final Agency Action Because They did not Determine Rights, Obligations, or Legal Consequences................................................................... 18

III.    The Challenged Guidances are Not Contrary to Law ....................................................... 22

    A.    The Non-Citizen Guidance is Not Contrary to Law because It Does Not Purport to Change SNAP Eligibility ...................................................................................... 22

    B.    The Exclusionary Period Running from Passage of the OBBB is not Unlawful Because the SNAP Eligibility Changes were "Implemented" on Passage of the OBBB ..................................................................................................................... 24

IV.    The Challenged Guidances are Not Arbitrary and Capricious ......................................... 29

    A.    Plaintiffs' declarations cannot be used to determine the correctness or wisdom of the agency's actions ..................................................................................... 29

    B.    The Non-Citizen Guidance is Not Arbitrary and Capricious Because it Does not Purport to have the Effect Plaintiffs Allege ........................................................... 31

    C.    Exclusionary Period ............................................................................................... 32

V.    Neither Vacatur or a Declaratory Judgment is Appropriate ............................................ 34

CONCLUSION .................................................................................................................. 35

## TABLE OF AUTHORITIES

**CASES**

*Am. Cargo Transp., Inc. v. United States*,
625 F.3d 1176 (9th Cir. 2010) ...................................................................................... 15

*Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*,
738 F.3d 387 (D.C. Cir. 2013) ................................................................................. 18, 19

*Asarco, Inc. v. U.S. E.P.A.*,
616 F.2d 1153 (9th Cir. 1980) ...................................................................................... 30

*Bennett v. Spear*,
520 U.S. 154 (1997) ...................................................................................................... 18

*Borg-Warner Protective Servs. Corp. v. Equal Emp. Opportunity Comm'n*,
245 F.3d 831 (D.C. Cir. 2001) ...................................................................................... 18

*Bottinelli v. Salazar*,
929 F.3d 1196 (9th Cir. 2019) ...................................................................................... 24

*Cal. Cmtys. Against Toxics v. E.P.A.*,
934 F.3d 627 (D.C. Cir. 2019) ...................................................................................... 19

*Camp v. Pitts,*
411 U.S. 138 (1973) ...................................................................................................... 29

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ...................................................................................................... 29

*Children's Health Def. v. FCC*,
25 F.4th 1045 (D.C. Cir. 2022)………...………………………………………………29

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
452 F.3d 798 (D.C. Cir. 2006) ...................................................................................... 19

*Ctr. For Biological Diversity v. Lohn*,
511 F.3d 960 (9th Cir. 2007) ........................................................................................ 34

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ...................................................................................................... 29

*Eaton v. Blewett*,
No. 2:20-CV-1641-SI, 2026 WL 810014 (D. Or. Mar. 24, 2026) ................................ 16

*F.C.C. v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009)..................................................................................................... 34

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
543 F.3d 586 (9th Cir. 2008) ...................................................................................... 18

*Flores-Chavez v. Ashcroft*,
362 F.3d 1150 (9th Cir. 2004) .................................................................................... 24

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)..................................................................................................... 15

*Gator.com Corp. v. L.L. Bean, Inc.*,
398 F.3d 1125 (9th Cir. 2005) .................................................................................... 15

*Gozlon-Peretz v. United States*,
498 U.S. 395 (1991).......................................................................................... 21, 25, 27

*Headwaters, Inc. v. Bureau of Land Mgmt.*,
893 F.2d 1012 (9th Cir.1989) ..................................................................................... 34

*Kisor v. Wilkie*,
588 U.S. 558 (2019)..................................................................................................... 25

*Lands Council v. Powell*,
395 F.3d 1019 (9th Cir. 2005) .................................................................................... 30

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)..................................................................................................... 24

*Madsen v. Women's Health Ctr., Inc.*,
512 U.S. 753 (1994)..................................................................................................... 34

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)....................................................................................................... 29

*Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,
18 F.3d 1468 (9th Cir. 1994) ...................................................................................... 15

*Occidental Eng'g Co. v. Immigr. Naturalization Serv.*,
753 F.2d 766 (9th Cir. 1985) ...................................................................................... 15

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
465 F.3d 977 (9th Cir. 2006) ...................................................................................... 18

*Rosebrock v. Mathis*,
    745 F.3d 963 (9th Cir. 2014) ................................................................... 16, 17

*San Luis & Delta-Mendota Water Auth. v. Locke*,
    776 F.3d 971 (9th Cir. 2014) ............................................................ 29, 30, 31

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
    747 F.3d 581 (9th Cir. 2014) ............................................................... 30

*Shalala v. Guernsey Mem'l Hosp.*,
    514 U.S. 87 (1995).................................................................................. 18

*Super Tire Eng'g Co. v. McCorkle*,
    416 U.S. 115 (1974)................................................................................ 34

*Sw. Ctr. for Biological Diversity*,
    100 F.3d 1443 (9th Cir 1996) ................................................................. 30

*Syncor Intern. Corp. v. Shalala*,
    127 F.3d 90 (D.C. Cir. 1997)................................................................... 19

*United States v. Kirby*,
    74 U.S. 482 (1868).................................................................................. 27

*United States v. Murphy*,
    809 F.2d 1427 (9th Cir. 1987) ................................................................ 25

*United States v. Neal*,
    776 F.3d 645 (9th Cir. 2015) .................................................................. 24

*United States v. Strong*,
    489 F.3d 1055 (9th Cir. 2007) ................................................................ 15

## STATUTES

5 U.S.C. §§ 701-706 ...................................................................................... 14

5 U.S.C. § 705................................................................................................ 14

5 U.S.C. § 706................................................................................... 15, 29, 34

7 U.S.C. § 2011.............................................................................................. 3

7 U.S.C. § 2013.............................................................................................. 8

7 U.S.C. § 2014...................................................................................... 7, 8, 20

7 U.S.C. § 2015(f) (2024) ............................................................................................................ 3

7 U.S.C. § 2015 .............................................................................................................. 4, 8, 21, 22

7 U.S.C. § 2025 ................................................................................................................ 1, 8, 9, 24

8 U.S.C. § 1182 .......................................................................................................................... 4

8 U.S.C. § 1611 .......................................................................................................................... 4

8 U.S.C. § 1612 ............................................................................................................... 4, 5, 6, 22

8 U.S.C. § 1613 .................................................................................................................... 4, 5, 6

8 U.S.C. § 1641 ............................................................................................................... 4, 5, 22

22 U.S.C. § 7105 ........................................................................................................................ 7

Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"),
   Pub. L. No. 104-193, 110 Stat. 2105 (codified as amended at 8 U.S.C. §§ 1601–1646) ........... 3

Food and Nutrition Act of 2008 ("FNA"),
   Pub. L. No. 110-234, 122 Stat. 923 (codified as amended at 7 U.S.C. §§ 2011 et seq.) ............ 3

The Department of Defense Appropriations Act, 2010,
   Pub. L. No. 111-118, 123 Stat. 3409 (2009) ......................................................................... 7

The Extending Government Funding and Delivering Emergency Assistance Act,
   Pub. L. No. 117-43, 135 Stat. 344 (2021) .............................................................................. 6

Additional Ukraine Supplemental Appropriations Act, 2022,
   Pub. L. No. 117-128, 136 Stat. 1211 ..................................................................................... 6

The One Big Beautiful Bill Act ("OBBB"),
   Pub. L. No. 119-21, 139 Stat. 72 (2025) ......................................................................... passim

**REGULATIONS**

7 C.F.R. § 273.4 ...................................................................................................................... 22

7 C.F.R. § 275.12 ............................................................................................................... passim

7 C.F.R. § 275.23 ............................................................................................................. 9, 10, 11

Amdt. No. 260,
   49 Fed. Reg. 6306 (Feb. 17, 1984) ....................................................................................... 9

-Page vi- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Food Stamp Program: Noncitizen Eligibility, and Certification Provisions of Pub. L. 104-193, as Amended by Public Laws 104-208, 105-33 and 105-185, 65 Fed. Reg. 70,134 (Nov. 21, 2000).........................................................................................9

**OTHER AUTHORITIES**

*Implement*, https://www.merriam-webster.com/dictionary/implement (accessed April 22, 2026).............25

*Implement*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1985) .......................................25

USDA – FNS, *Supplemental Nutrition Assistance Program (SNAP) - Question and Answer #1 for the Implementation of Regulatory Changes to Standard Utility Allowances (SUAs)* (Dec. 20, 2024), https://perma.cc/8264-HLUZ.............................................................................................33

USDA, *SNAP – 120-Day Quality Control (QC) Variance Exclusion for Section 8 of the Worker, Homeownership, and Business Assistance Act of 2009* (Dec. 4, 2009), https://web.archive.org/web/20251117111025/https://fnsprod.azureedge.us/sites/default/files/snap/120-Day%20QC%20Variance%20Exclusion.pdf/ ............................................................32

USDA, Supplemental Nutrition Assistance Program Quality Control Review Handbook (Oct. 2024), (FNS Handbook). https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-qc-handbook310-fy25-102924.pdf ................................................................................................................. 9, 26

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to LR 7-1(a), counsel for Plaintiffs and Defendants conferred by videoconference on Tuesday, March 31, 2026, and Thursday, April 2, 2026. The parties discussed the arguments set forth in the instant motion, as well as the support offered therefore, but were unable to resolve them.

## MOTION

Defendants move under Rule 56(a) and Local Rule 56 for entry of summary judgment in their favor. This motion is supported by the following memorandum of law.

## MEMORANDUM OF LAW

Plaintiffs ask this Court to make the effectiveness of a validly passed statute—that by its terms takes effect immediately—contingent on an agency affirmatively and separately deciding to implement that statute. That cannot be the law. Such a holding would aggrandize the Executive Branch at the expense of Congress and allow any agency or administration to arbitrarily suspend the force and effect of any law.

The One Big Beautiful Bill Act ("OBBB"), Pub. L. No. 119-21, 139 Stat. 72 (2025) was enacted on July 4, 2025. With respect to the SNAP eligibility provisions at issue in this case, the parties agree that the OBBB was effective on the day it was enacted. Pursuant to USDA regulations, States are granted an exclusionary period of 120 days after the "implementation date" where errors in determining SNAP benefits as result of implementing changes in Federal law are not included in the States' error rate. This regulation is the only possible source for an exclusionary period: the statutory exclusionary period only applies to the "implementation date" of "new regulations." 7 U.S.C. § 2025(c)(3). The plain reading of "implementation date" would be the date States are required to implement changes. Because, under the OBBB, the SNAP eligibility changes took effect on the day the Act was signed, the "implementation" date is the day it was enacted.

-Page 1- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs would have it another way. They ask this Court to set the exclusionary period as running from the date USDA informed States of the OBBB's changes in the law in the form of the challenged Guidances. The challenged Guidances did nothing other than memorialize those statutory changes. Taken to its logical conclusion, Plaintiffs ask this Court to hold in abeyance any change in SNAP eligibility, even if required by statute, until USDA issues a memorandum—even if that memorandum does nothing but memorialize the changes in the law. That legal position is wrong.

Because the challenged Guidances do not change SNAP eligibility, they did not create any legal consequence for Plaintiffs (or any party). As such, they could not be final agency action. This is ground enough to dismiss Plaintiffs challenge. But even if the Court were to reach the merits, the Court should find the agency's interpretation of its own regulations as not unlawful because it is reasonable, is supported by contemporaneous definitions of "implement," and is entitled to deference. Nor was the agency's determination of the exclusionary period arbitrary and capricious—the determination was the simple mechanical application of the regulations to the OBBB.

While the exclusionary period is a live dispute between the parties, Plaintiffs' previous challenge to whether aliens who have had their status adjusted to Legal Permanent Resident ("LPR") are entitled to SNAP benefits is moot. The original challenged Guidance was not so ambiguous to be unlawful or arbitrary and capricious, and it was always the intent of USDA to afford LPRs SNAP benefits (according to the appropriate waiting period), and USDA has issued a clarifying Q&A document that explicitly adopts Plaintiffs' interpretation of SNAP eligibility for these individuals (which, to be clear, is the same as USDA's interpretation has always been). Accordingly, any challenge to whether LPRs are entitled to SNAP benefits is moot.

-Page 2- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**BACKGROUND**

**I.      Statutory Background**

This case concerns three federal statutes: the Food and Nutrition Act of 2008 ("FNA"),

Pub. L. No. 110-234 , § 4001, 122 Stat. 923 (codified as amended at 7 U.S.C. §§ 2011 et seq.); the

Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), Pub. L.

No. 104-193, 110 Stat. 2105 (codified as amended at 8 U.S.C. §§ 1601–1646); and the One Big

Beautiful Bill Act ("OBBB"), Pub. L. 119-21, 139 Stat. 72 (2025).

**A.      Food and Nutrition Act of 2008 (FNA) and the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA)**

Prior to the enactment of the OBBB, the FNA and PRWORA established the relevant

eligibility criteria for SNAP based on citizenship or alien status:

- Citizens

- LPRs

- an alien who has qualified for conditional entry pursuant to sections 1157 and 1158 of Title 8

- an alien who is lawfully present in the United States as a result of an exercise of discretion by the Attorney General for emergent reasons or reasons deemed strictly in the public interest pursuant to section 1182(d)(5) of Title 8

- an alien within the United States as to whom the Attorney General has withheld deportation pursuant to section 1231(b)(3) of Title 8

7 U.S.C. § 2015(f) (2024).

PRWORA listed additional alien groups eligible for SNAP provided they met all other

SNAP eligibility requirements and completed a 5-year waiting period, unless exempted by

PRWORA. These groups included: those who are paroled into the United States under 8 U.S.C.

§ 1182(d)(5) for a period of at least 1 year, Cuban and Haitian entrants (as defined in section 501(e) of the Refugee Education Assistance Act of 1980), individuals who lawfully reside in the United States in accordance with a Compact of Free Association, certain Hmong and Laotian tribal members, certain Indians born abroad, refugees admitted under section 207 of the Immigration and Nationality Act. *See, e.g.*, 8 U.S.C. §§ 1641(b), 1612(a)(2).

**B.     One Big Beautiful Bill Act (OBBB) Changes to Section 7 U.S.C. § 2015(f)**

On July 4, 2025, Congress passed and President Donald J. Trump signed the OBBB. In relevant part, Section 10108 amended 7 U.S.C. § 2015(f) as follows: SEC. 10108. ALIEN SNAP ELIGIBILITY. Section 6(f) of the Food and Nutrition Act of 2008 (7 U.S.C. 2015(f)) restricted SNAP benefits to:

- Citizens or nationals of the United States

- LPRs, with certain exceptions

- Certain Cuban and Haitian entrants

- Compact of Free Association ("COFA") citzens

139 Stat. 85.

**C.     PRWORA's Waiting Period**

As mentioned above, the five-year waiting period requirement derives from PRWORA (and has not been amended by OBBB). That separate statute broadly restricts the availability of Federal public benefits. *See* 8 U.S.C. § 1611(a). In relevant part, PRWORA generally provides that "[n]otwithstanding any other provision of law … a qualified alien … is not eligible for [the food stamp program]." *Id*. § 1612(a)(1); *see also id.* §§ 1613(a) (Federal means-tested programs) 1641(b) (defining "qualified alien"). But PRWORA also provides that this prohibition "shall not apply to any qualified alien who has resided in the United States with a status within the meaning

-Page 4- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

of the term 'qualified alien' for a period of 5 years or more beginning on the date of the alien's entry into the United States." *Id*. § 1612(a)(2)(L) ("Food stamp exception for certain qualified aliens"); *see id*. § 1613(a) ("any Federal means-tested public benefit"). The practical effect of these provisions is to create a default 5-year waiting period before qualified aliens are eligible for SNAP with certain exceptions for immediate eligibility.

At issue in this case are several exceptions to this default rule. Section 1612(a)(2) excepts the following groups from the default five-year waiting period:

- LPRs who have worked 40 qualifying quarters, 8 U.S.C. § 1612(a)(2)(B);

- Certain individuals with connections to the U.S. military (veterans, those on active duty, their spouses and unmarried dependent children), *id*. § 1612(a)(2)(C);

- Individuals 65 years or older as of August 22, 1996, *id*. § 1612(a)(2)(I);

- Individuals under 18 years of age, *id*. § 1612(a)(2)(J);

- Certain Hmong and Highland Laotians, *id*. § 1612(a)(2)(K)

Section 1612 also provides a time-limited exception permitting immediate eligibility for refugees and asylees. *Id*. § 1612(a)(2)(A). This subsection excepts the following individuals for a period of 7 years from the date:

(i) an alien is admitted to the United States as a refugee under section 207 of the Immigration and Nationality Act;

(ii) an alien is granted asylum under section 208 of such Act;

(iii) an alien's deportation is withheld under section 243(h) of such Act (as in effect immediately before the effective date of section 307 of division C of Public Law 104-208) or section 241(b)(3) of such Act (as amended by section 305(a) of division C of Public Law 104-208);

(iv) an alien is granted status as a Cuban and Haitian entrant (as defined in section 501(e) of the Refugee Education Assistance Act of 1980); or

(v) an alien is admitted to the United States as an Amerasian immigrant pursuant to section 584 of the Foreign Operations, Export Financing, and Related Programs

Appropriations Act, 1988 (as contained in section 101(e) of Public Law 100-202 and amended by the 9th proviso under Migration and Refugee Assistance in title II of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1989, Public Law 100-461, as amended).

8 U.S.C. § 1612(a)(2)(A). LPRs who are otherwise eligible for SNAP and fall into one or more of the above categories are immediately eligible for SNAP benefits and are not subject to the 5-year waiting period.

Additionally, section 1613 reiterates several groups already excepted under previous sections and adds additional groups to the exception from the 5-year waiting period including refugees (8 U.S.C. § 1613(b)(1)(A)); individuals granted asylum (*id*. § 1613(b)(1)(B)); individuals with deportation withheld (*id*. § 1613(b)(1)(C)); Cuban and Haitian entrants (*id*. § 1613(b)(1)(D)); certain Amerasians (*id*. § 1613(b)(1)(E)); individuals with certain military connections (*id*. § 1613(b)(2)); COFA citizens (*id*. § 1613(b)(3); individuals under 18 years of age (*id*. § 1613(c)(2)(L)); certain American Indians born abroad (*id*. § 1613(d)(1)); and certain Hmong and Highland Laotians (*id.* § 1613(d)(2)).

Finally, Congress has elsewhere enacted legislation that has added specific groups of individuals to the category of "refugee[s]," *id.* § 1612(a)(2)(A)(i), exempt from the 5-year waiting period. These include certain Afghans, Iraqis, and Ukrainians as well as victims of a severe form of human trafficking. *See* The Extending Government Funding and Delivering Emergency Assistance Act, Pub. L. No. 117-43, § 2502(a)-(b), 135 Stat. 344, 377 (2021) ("Notwithstanding any other provision of law, [certain Afghans] shall be eligible for . . . [SNAP, among other benefits, as] available to refugees"); Additional Ukraine Supplemental Appropriations Act, 2022, Pub. L. No. 117-128, § 401(a)-(b)(1), 136 Stat. 1211, 1218 ("Notwithstanding any other provision of law, [certain Ukrainians] shall be eligible for … [SNAP, among other benefits, as] available to refugees"); The Department of Defense Appropriations Act, 2010, Pub. L. No. 111-118, § 8120(a)-

(b), 123 Stat. 3409, 3457 (2009) (amending Section 1244(g) of the Refugee Crisis in Iraq Act of 2007 to make certain Iraqis eligible for SNAP, among other benefits, "to the same extent, and for the same periods of time, as such refugees"); 22 U.S.C. § 7105(b)(1)(A) ("Notwithstanding title IV of [PRWORA] an alien who is a victim of a severe form of trafficking in persons," among others, "shall be eligible for benefits and services" such as SNAP "to the same extent as an alien who is admitted to the United States as a refugee"). These groups are thus also effectively exempt from PRWORA's 5-year waiting period.

To summarize: in the case of LPRs, PRWORA generally limits the availability of SNAP benefits to those who have been in the country for at least five years. But Congress has excepted a number of groups from the 5-year waiting requirement, as described above. OBBB did not amend the timing provisions of PRWORA or the other statutes cross-referencing these exceptions.

**D.      OBBB Changes to 7 U.S.C. § 2014: the Standard Utility Allowance**

The FNA allows for certain households to be entitled to deductions for shelter costs when calculating a household's expenses. This may include a standardized amount to account for heating and cooling costs, called the standard utility allowance ("SUA"). 7 U.S.C. § 2014(e)(6)(C).  Prior to OBBB, the FNA allowed for any household which received more than $20 per year in assistance through the Low-Income Energy Assistance Program ("LIHEAP") or other similar energy assistance program to qualify for the heating and cooling SUA. Section 10103 of OBBB amended 7 U.S.C. § 2014(e)(6)(C)(iv)(I) so that only households with an elderly or disabled member automatically qualify for this SUA based on the receipt of a qualifying LIHEAP or other energy assistance payment. OBBB also altered the how of third-party energy assistance payments were treated for income purposes based on whether the household included an elderly or disabled member. *Id*. § 2014(k)(4).

### E.    OBBB Changes to 7 U.S.C. § 2015(o): Work Requirements for Able Bodied Adults

The FNA contains two sets of work requirements for SNAP households, the general work requirements and additional requirements for certain able-bodied adults. *Id*. § 2014(d), (o). These able-bodied adults, often referred to as able-bodied adults without dependents ("ABAWD") or time limited participants, who do not satisfy the additional work requirements are not eligible to participate in SNAP for more than three months in a 36-month period. *Id*. § 2014(o)(2). OBBB section 10102, among other changes, revised the exceptions to these work requirements, thus expanding the categories of individuals subject to the time limits. Specifically, OBBB made individuals aged 56-65 subject to the time limit and removed exceptions for parents with a dependent child aged 14-18, veterans, homeless individuals, and individuals aging out of foster care. It also added exceptions for certain Indian, Urban Indians, and California Indians. *Id*. § 2014(o)(2)(A)-(G).

### F.    OBBB's Cost-Sharing Provisions

Section 10105 of the OBBB also created a new cost-sharing provision in the FNA which, starting in FY 2028, will require certain States to share in the cost of funding SNAP benefits if those States' historical payment error rates exceed certain thresholds. *See* 7 U.S.C. § 2013(a)(2). This provision allocates a portion of the cost of SNAP benefits to participating States based in part on the State's "payment error rate" as determined by the SNAP quality-control system, which uses a sampling of State data to calculate the error rate. *Id*. § 2013(a)(2); *id*. § 2025(c).

While the consequences of a State's payment error rate have been changed via the OBBB, the concept of the payment error rate is not new—the relevant regulation was promulgated in 1984. *See* Amdt. No. 260, 49 Fed. Reg. 6306 (Feb. 17, 1984). Accordingly, in determining a State's payment error rate, the statute excludes "[a]ny errors resulting in the application of new regulations

-Page 8- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

promulgated under this chapter during the first 120 days from the required implementation date for such regulations." 7 U.S.C. § 2025(c)(3)(A). A USDA regulation excludes "any variance resulting from application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law that occurs during the first 120 days from the required implementation date." 7 C.F.R. § 275.12(d)(2)(vii). Under the regulation, a State agency may only use this variance exclusion for errors after it has implemented the changes; any errors prior to the State's implementing the changes must be counted in the error analysis. *Id*. § 275.12(d)(2)(vii)(B). The Department's longstanding guidance, not challenged here, clarifies how the 120-day exclusion period operates. The applicable Handbook provides:

> **Application of New SNAP Regulations or Laws.** When a 120-day variance exclusion period is granted for implementation of new SNAP regulations or laws, the reviewer will exclude variances resulting from mistakes made based on the implementation of that new SNAP Federal regulation or law during the 120-day exclusionary period.

USDA, Supplemental Nutrition Assistance Program Quality Control Review Handbook at 7–43 (Oct. 2024), https://fns-prod.azureedge.us/sites/default/files/resource-files/snap-qc-handbook310-fy25-102924.pdf (FNS Handbook).

The Handbook also provides that the end of the annual SNAP quality-control review period is 115 days after September 30 (the end of the fiscal year), which is typically January 23. *Id*. at 1–12. That means for FY 2026 error rates, States may have until January 23, 2027 to finalize their quality-control samples before those samples are assessed to determine the appropriate error rate. USDA must determine and announce the national and state error rates by June 30 following the end of the fiscal year. 7 C.F.R. § 275.23(c)

## II.    Factual Background

### A.    USDA's August 29, 2025 Standard Utility Allowance (SUA) Guidance

August 29, 2025, USDA issued a guidance memorandum to SNAP State Agencies (the "SUA Guidance"), to provide them "with additional information on implementing Section 10103 of the OBBB, which changes the treatment of certain energy assistance payments for SNAP." GOV000014. The purpose of the guidance to was to inform States that "Section 10103 of the OBBB now requires that households receiving a qualifying LIHEAP or other payment contain an elderly or disabled member in order to have the HCSUA automatically applied to their case." *Id*. The Guidance noted that "[t]his provision made no other changes related to what is considered a qualifying payment or how they are treated." *Id*.

### B.    USDA's October 31, 2025 Non-Citizen Guidance

On October 31, 2025, USDA issued Guidance titled "Supplemental Nutrition Assistance Program (SNAP) Implementation of the One Big Beautiful Bill Act of 2025 – Alien SNAP Eligibility." ECF No. 1-1. The memorandum "provides State agencies with additional information on implementing Section 10108 of the OBBB, which makes changes to alien eligibility for SNAP." *Id*. at 1. The Guidance does not itself purport to make any changes to SNAP eligibility; it merely explains the statutory changes that Congress had effectuated in the OBBB.

In relevant part, the Guidance explains that "Eligible Alien Groups under the OBBB" are "Non-citizen U.S. nationals," "Cuban and Haitian entrants," "Compacts of Free Association (COFA) citizens," and "Lawful permanent residents (LPR) (also known as Green Card holders)." *Id*. at 2. The Guidance further explains that LPRs are "[e]ligible after a 5-year waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements." *Id*. Furthermore, "LPRs may still be eligible for SNAP without a waiting period if they meet one or more of the following conditions: Are under 18 years old[,] Have 40 qualifying work quarters[,]

-Page 10- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Are blind or disabled[,] Were lawfully residing in the U.S. and 65 or older on August 22, 1996[,] have a U.S. military connection[,] Are admitted to the United States as an Amerasian immigrant[,] Are an American Indian born abroad[, or are] Certain Hmong or Highland Laotian tribal members." *Id*. These eight categories track PRWORA's 8 U.S.C. § 1612. *See supra* Part I.C. In other words, the Guidance clarifies that all LPRs—regardless of their previous status prior to adjustment as LPRs—are eligible for SNAP; they may also be eligible without a 5-year waiting period if they fall within one of PRWORA's categories.

The Guidance accurately stated that "Section 10108 of the OBBB was effective upon enactment, July 4, 2025." ECF No. 1-1 at 3. Because the statute was self-executing, "State agencies must immediately apply the new eligibility criteria to new applicants." *Id*. The Guidance further clarified that the Department would "hold States harmless for Quality Control (QC) purposes for 120 days from the required implementation date in accordance with 7 C.F.R. § 275.12(D)(2)(vii)." *Id*. The Guidance calculated that the "120-day variance exclusion is permitted for the misapplication of changes in Section 10108 of the OBBB to new and ongoing SNAP households until the exclusionary period end date on November 1, 2025," *i.e.,* 120 days after the President signed the OBBB into law. *Id*. at 4. The Guidance encouraged participating States to reach out to the Department with any questions and contemplated "additional guidance in future memos." *Id*.

Following issuance of the Non-Citizen Guidance, Plaintiff States filed this lawsuit based on a misinterpretation of the guidance. In response, USDA issued a clarification. GOV000030-33.

1.    USDA's Q&As Guidance

The USDA issued its clarification on December 9, 2025[1] by publishing additional guidance

---

[1] The Department discovered an inadvertent error in the Q&A Guidance and published a corrected version on December 10, 2025.

titled "Supplemental Nutrition Assistance Program (SNAP) Provisions of the One Big Beautiful

Bill Act of 2025 – Alien SNAP Eligibility – Question and Answer #1. GOV000030-33. As relevant

to this case, these Q&As clarified the following:

- OBBB changes to alien eligibility were effective on enactment of the OBBB and was not contingent on regulations.

- Individuals who have been granted asylum or who are refugees are not eligible for SNAP by virtue of that status; "the only aliens eligible for SNAP are those with the following statuses: lawful permanent resident (LPR), Cuban and Haitian entrant (CHE), or Compacts of Free Association (COFA) citizen." GOV000031

- The OBBB did not make changes to the 5-year waiting period requirement and exceptions.

- The five-year waiting period begins on the date the alien obtains a status as a qualified alien or enters the U.S. in a qualifying status. [2]

- Aliens who adjust to LPR from a group exempt from the five-year waiting period are not required to wait for 5 years after becoming an LPR. [3]

The Q&A also provided a chart summarizing which alien groups are subject to the 5-year

waiting period after adjusting their status to LPR. GOV000032-33

---

[2] The Q&As further provide in footnote: "These groups include lawful permanent residents, asylees, refugees, parolees, individuals granted withholding of deportation or removal, conditional entrants, Cuban or Haitian entrants, battered aliens, and alien victims of a severe form of trafficking, Certain American Indians born abroad and Hmong or Highland Laotian tribal members."

[3] The Q&As further provide in a footnote: "Refugee, individuals granted asylum, deportation withheld, Cuban and Haitian entrant, Amerasian, individual in a SNAP-eligible alien group with a military connection, individual in a SNAP-eligible alien group who is under age 18, American Indian born abroad, and Hmong or Highland Laotian tribal member."

-Page 12- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

C.    **USDA's October 3, 2025 ABAWD Guidance**

On October 3, 2025, USDA issued a guidance memorandum to SNAP State Agencies (the "ABAWD Guidance"), to provide them with "additional information on implementing Section 10102(a) of the OBBB, which changes exceptions from the Able-Bodied Adults Without Dependents (ABAWD) time limit." GOV000008. The ABAWD Guidance repeated, without interpretation, changes made by the OBBB:

- "The OBBB increases the age of those subject to the time limit to age 64. Therefore, individuals aged 18 to 64 are now subject to the time limit, unless they meet another exception." *Id.*

- "The OBBB does not change the upper age limit for the general work requirements at Section 6(d)(3) of the Act." *Id.*

- "The OBBB also does not impact the definition of 'elderly' in Section 3(j) of the Act." *Id.*

- "The OBBB limits the exception for a parent or other household member with responsibility for a dependent child to children under 14 years of age." GOV000009

- "The OBBB removes the temporary exceptions for… Homeless individuals, Veterans; and Individuals aged 24 or younger and in foster care on their 18th birthday (or a higher age if the State offers extended foster care)." *Id.*

- "The OBBB adds new exceptions for Indians, also referred to as Native Americans, Alaska Natives, Indigenous Peoples, and Tribal Members" — and then used statutory definitions for each of these populations. GOV000009-11

The ABAWD Guidance stated "[n]one of the above provisions are subject to early implementation rules at 7 CFR 275.12(d)(2)(vii)(A) since the enactment date of all provisions began on July 4, 2025. The exclusionary period end date for all the above provisions is November 1, 2025." GOV000012.

D.    **USDA's November 14, 2025 Exclusionary Period Memo**

On November 14, 2025, USDA issued a policy memo (the "Exclusionary Period Memo") answering "follow-up questions submitted by State agencies on the variance exclusion period for implementation" of Sections 10102 and 10103 of the OBBB (*i.e.*, the SUA and ABAWD changes

-Page 13- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

made by the OBBB). GOV000006. The memorandum confirmed that the "[t]he required implementation date [for OBBB provisions in Sections 10102 and 10103] is the enactment of OBBB, July 4, 2025" and that "[t]he variance exclusion period ended November 1, 2025, which is 120 days from July 4, 2025." GOV000007.

### III.    Procedural Background

On November 26, 2025, Plaintiffs filed a Complaint for declaratory and injunctive relief. The Complaint alleges that the Guidance violates the Administrative Procedure Act ("APA") as contrary to law (Counts I and III) and arbitrary and capricious (Counts II & IV). Compl. ¶¶ 88–126. Plaintiffs' theory of the case is that "the [Non-Citizen] guidance . . . goes beyond the Act, arbitrarily excluding from SNAP many lawful permanent residents who remain eligible under the statutory scheme established by Congress." *Id*. ¶ 3. On November 26, 2025, Plaintiffs also moved for a preliminary injunction or, in the alternative, a stay under 5 U.S.C. § 705 of the APA. ECF No. 4. On December 15, 2025, the Court granted Plaintiffs' preliminary injunction motion.

On January 30, 2026, Plaintiffs amended their Complaint. Am. Compl., ECF No. 68. The Amended Complaint challenged the exclusionary period of the Exclusionary Period Memo, the ABAWD Guidance, and the SUA Guidance as contrary to law (Count III) and arbitrary and capricious (Count IV). *Id*. at 25-27. Plaintiffs' filed for summary judgment on all claims on April 3, 2026. MSJ, ECF No. 80. Collectively, all the challenged guidances are referred to as the "Guidances." (With respect to the exclusionary period calculation, all are materially identical, and so will be analyzed collectively unless otherwise noted.)

### LEGAL STANDARDS

The Administrative Procedure Act ("APA") provides for judicial review of final agency action. 5 U.S.C. §§ 701-706. The Ninth Circuit endorses the use of Rule 56 summary judgment

motions to resolve such claims. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). Under the APA, a court may set aside agency actions only if such actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court must "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. Immigr. Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985).

## ARGUMENT

### I.      Challenges to the Non-Citizen Guidance is Moot

Plaintiffs' APA challenges to the substantive content of the Non-Citizen Guidance (Claims 1 and 2) are moot because the Q&A resolved any ambiguity whether all LPRs are eligible for SNAP and clarified that those LPRs who adjusted status from Refugees, Individuals Granted Asylum, Deportation Withheld, Certain Afghan and Ukrainian Parolees, Iraqi and Afghan Special Immigrants (SIV), and Victims of Severe Trafficking are not subject to the five-year waiting period, which are the bases for Plaintiffs' challenge. Article III requires that there be "a live case or controversy . . . at all stages of review. Otherwise, the [claim] is moot and must be dismissed." *United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007) (citations omitted). "The Constitution's case-or-controversy limitation on federal judicial authority, [U.S. Const.] [a]rt. III, § 2, underpins both [the Court's] standing and [its] mootness jurisprudence[.]" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

A claim becomes moot if "changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc) (citation omitted). This Court should "presume the government is acting in good faith" when it makes declarations of this type. *Am. Cargo Transp.,*

-Page 15- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

*Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010).

To the extent the Non-Citizen Guidance is so ambiguous that it is unlawful (it is not), the Q&A resolves those ambiguities. First, the Q&A explains that the alien groups previously designated as "Not Eligible" for SNAP Benefits in attachment 1 of the Non-Citizen Guidance—Refugees, Individuals Granted Asylum, Parolees, Deportation Withheld, and Certain Afghan Parolees, Certain Ukrainian Parolees—are eligible for SNAP if adjusted to LPR status by listing them in a table and identifying whether they are subject to a five year waiting period or eligible immediately. GOV000031-32. Plaintiffs agree that the Q&A resolves any error. MSJ at 22-23.

And as to whether some alien groups are eligible for SNAP immediately on adjusting to LPR status, the Q&A table lists Refugees, Individuals Granted Asylum, Deportation Withheld, Certain Afghan and Ukrainian Parolees, Iraqi and Afghan Special Immigrants (SIV), and Victims of Severe Trafficking as eligible immediately. GOV000031-32. Plaintiffs appear to agree that the Q&A resolves this defect as well. MSJ at 17.

Plaintiffs argue that the claims are not moot because the Court could still grant effective relief because USDA has not withdrawn the Non-Citizen Guidance. MSJ at 19. The "effective relief" Plaintiffs request is for an order "clarifying non-citizen eligibility for SNAP following the OBBB." *Id.* But this clarification has already occurred via the Q&A.

Plaintiffs portray the Q&A as a voluntary cessation that would not moot the claims. *Id.* at 19-20. But there is a presumption that the Government acts in good faith. *Rosebrock v. Mathis*, 745 F.3d 963, 974 (9th Cir. 2014); *Eaton v. Blewett*, No. 2:20-CV-1641-SI, 2026 WL 810014, at *2 (D. Or. Mar. 24, 2026) ("The government's change of policy presents a special circumstance in the world of mootness. . . we presume the government is acting in good faith" (emphasis added)). In addition, the five-factor framework that the Ninth Circuit articulated in *Rosebrock v. Mathis*—

-Page 16- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

which identifies circumstances in which voluntary cessation is more likely to moot a claim—also weigh in Defendants' favor. *See Rosebrock*, 745 F.3d at 972;. In *Rosebrock*, the Ninth Circuit stated, in the context of voluntary cessation, that mootness is more likely when: (1) the policy change is evidenced by language that is broad in scope and unequivocal in tone; (2) the policy change fully addresses all of the objectionable measures that the Government took against the plaintiffs in the case; (3) the case in question was the catalyst for the agency's adoption of the new policy; (4) the policy has been in place for a long time when we consider mootness; and (5) since the policy's implementation the agency's officials have not engaged in conduct similar to that challenged by the plaintiff. *Id*.

First, the Q&A broadly applies to all aliens adjusted to LPR status and is unequivocal in its application. Second, the Q&A fully corrects the purported errors alleged by Plaintiffs in the Non-Citizen Guidance, as Plaintiffs themselves acknowledge. MSJ at 17, 23. Third, the Q&A was released shortly after the litigation commenced. Fourth, USDA has always allowed LPR's to be eligible for SNAP—the Q&A is simply a recommitment to a longstanding, preexisting policy. And finally, Plaintiffs point to no conduct by USDA similar to what they challenge in the Non-Citizen Guidance.

Indeed, this is a case where—upon recognizing that Plaintiffs took the view that an agency guidance document was imposing obligations that USDA had not intended (and did not and does not believe were actually being imposed), the agency issued comparable guidance that provided a legal clarification that Plaintiffs acknowledge is adequate. In light of the Q&A guidance—and the legal positions taken in this litigation—there is simply no longer a live dispute, and Plaintiffs' unadorned speculation that a future change in position is possible does not provide a basis for continued Article III jurisdiction over Claims 1 and 2.

-Page 17- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## II.    The Guidances are not Final Agency Action Because They did not Determine Rights, Obligations, or Legal Consequences

In any event, the Guidances that Plaintiffs challenge are not final agency actions under the APA. An agency action is "final" only if it both (1) "mark[s] the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation modified). "In determining whether an agency's action is final, we look to whether the action amounts to a definitive statement of the agency's position or has a direct and immediate effect on the day-to-day operations of the subject party, or if immediate compliance with the terms is expected." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citation modified). This requires "focus on the practical and legal effects of the agency action[,]" not on labels, and finality is "interpreted in a pragmatic and flexible manner." *Id.* (citation modified). "Finality is a jurisdictional requirement to obtaining judicial review under the APA." *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008).

Agencies' "interpretative rules or statements of policy generally do not qualify" as final agency action "because they are not finally determinative of the issues or rights to which they are addressed." *Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 395 (D.C. Cir. 2013) (citation modified). Interpretive rules are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) (citation omitted). A non-binding interpretive rule is not a "final agency action" suitable for review because "standing alone, it is lifeless and can fix no obligation nor impose any liability on the plaintiff." *Borg-Warner Protective Servs. Corp. v. Equal Emp. Opportunity Comm'n*, 245 F.3d 831, 836 (D.C. Cir. 2001). The critical feature of this

interpretive rule is that it does not have independent legal force. *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805-06 (D.C. Cir. 2006). In other words, interpretative rules "generally do not qualify" as final agency actions "because they are not 'finally determinative of the issues or rights to which [they are] addressed.'" *Am. Tort Reform Ass'n,* 738 F.3d at 395 (citation omitted).

Here, the challenged Guidances simply "reflects" change made by the OBBB and does not "modif[y] or add[] to a legal norm based on the agency's own authority." *Syncor Intern. Corp. v. Shalala*, 127 F.3d 90, 94-95 (D.C. Cir. 1997) (emphasis omitted). They therefore do not constitute final agency action because it adds nothing new to Plaintiffs' obligations beyond what OBBB provided.

Plaintiffs argue, and the Court agreed, that claimed interpretative rules can still be final agency action and must be examined like any other, relying on *Cal. Cmtys. Against Toxics v. E.P.A.*, 934 F.3d 627, 635 (D.C. Cir. 2019). MSJ at 22; *see also* Prelim. Inj. Hear. Tr. ("PI Tr.") at 129:9-17, ECF No. 65 (Dec. 15, 2025). The *Perez vs. Mortgage Bankers Association* cases cited by Plaintiffs and relied upon by the Court do not contradict that interpretive rules are typically not final agency action because interpretive rules typically do not have final legal effect. As recognized in Plaintiffs' own citation, *Cal Cmtys.,* the "most important factor" is "whether an action has "an actual legal effect." 934 F.3d at 635. The only changes to SNAP eligibility in this case are from the passage of the OBBB: the various challenged Guidances have no legal effect and accordingly cannot be final agency action.

None of the challenged Guidances have "an actual legal effect."

First, the SUA Guidance stated that "Section 10103 of the OBBB now requires that households receiving a qualifying LIHEAP or other payment contain an elderly or disabled

member in order to have the HCSUA automatically applied to their case." GOV000014. This simply reflects the OBBB 10103 requirement. 139 Stat. 83 ("(a) STANDARD UTILITY ALLOWANCE.—Section 5(e)(6)(C)(iv)(I) of the Food and Nutrition Act of 2008 (7 U.S.C. 2014(e)(6)(C)(iv)(I)) is amended by inserting 'with an elderly or disabled member' after 'households'").

Second, the Non-Citizen Guidance explains that "Eligible Alien Groups under the OBBB" are "Non-citizen U.S. nationals," "Cuban and Haitian entrants," "Compacts of Free Association (COFA) citizens," and "Lawful permanent residents (LPR) (also known as Green Card holders)." ECF No. 1-1 at 2. This reflects the OBBB eligibility change to "an alien lawfully admitted for permanent residence as an immigrant as defined by sections 101(a)(15) and 101(a)(20) of the Immigration and Nationality Act;" "an alien who has been granted the status of Cuban and Haitian entrant;" and "an individual who lawfully resides in the United States in accordance with a Compact of Free Association." 139 Stat. 85.

Third, the ABAWD Guidance tracks the changes in the OBBB with respect to the work requirement exceptions:

| ABAWD Guidance | OBBB |
|---|---|
| "The OBBB increases the age of those subject to the time limit to age 64. Therefore, individuals aged 18 to 64 are now subject to the time limit, unless they meet another exception." GOV000008 | "(A) under 18, or over 65, years of age;" (139 Stat. 81) |
| "The OBBB limits the exception for a parent or other household member with responsibility for a dependent child to children under 14 years of age." GOV000009 | "(C) a parent or other member of a household with responsibility for a dependent child under 14 years of age;" (139 Stat. 81) |
| "The OBBB adds new exceptions for Indians, also referred to as Native Americans, Alaska Natives, Indigenous Peoples, and Tribal Members". GOV000009-11 | "(F) an Indian or an Urban Indian (as such terms are defined in paragraphs (13) and (28) of section 4 of the Indian Health Care Improvement Act)" (139 Stat. 81) |

-Page 20- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

| | ''(G) a California Indian described in section 809(a) of the Indian Health Care Improvement Act'' (139 Stat. 82) |
|---|---|
| "The OBBB removes the temporary exceptions for Homeless individuals, Veterans; and Individuals aged 24 or younger and in foster care on their 18th birthday (or a higher age if the State offers extended foster care)" GOV000009 | Section 6(o) of the Food and Nutrition Act of 2008 (7 U.S.C. 2015(o)) is amended by striking paragraph (3) (139 Stat. 81) |

Finally, the Exclusionary Period Memo simply reflects the effective date of the OBBB provisions and the resulting exclusionary period. GOV000007.

Plaintiffs argue that the Guidance documents have a "definite and concrete" effect because they caused the end of the exclusionary period to be November 1, 2025. MSJ at 18-19, 21-22. But it was not the Guidances that caused the exclusionary period to run to November 1. It was the OBBB. *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991) ("It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment."); *see also infra* at III.B (explaining that the OBBB was effective when enacted). The various Guidances simply reminded the States of their statutory responsibilities: it did not create any new or superseding obligations. Therefore, it was not the Guidances that caused state agencies to "immediately apply the new eligibility criteria." MSJ at 21. Rather, the OBBB created the new criteria as it was effective when passed—and accordingly the exclusionary period ended 120 days after passage of the OBBB by the simple, mechanical application of USDA regulations. Said another way, USDA did not "decide" to end the exclusionary period at a certain day and thus change Plaintiffs legal obligations: Plaintiffs legal obligations were set the day the OBBB passed.

The Court also found that the Non-Citizen Guidance had actual legal effect because "the guidance provides that state agencies must immediately apply the new eligibility criteria" and USDA "contemplated this guidance to be the guidance that states were required to comply with,

not something that suggested future clarification or future rulemaking or future guidance would come into play." PI. Tr. 129:1-12. But as stated above, these Guidances did not create *new* obligations, the obligations began on passage of the OBBB. The Guidances merely memorialized and reminded States of their obligations.

### III.   The Challenged Guidances are Not Contrary to Law

Even if the Court reaches the substance of the Guidances, those documents comport with the APA's requirements.

#### A.   The Non-Citizen Guidance is Not Contrary to Law because It Does Not Purport to Change SNAP Eligibility

*All Non-Citizens Who Adjust Status to LPR Status Are Eligible for SNAP Benefits:* The Non-Citizen Guidance is not contrary to law because it affirmatively states that all LPRs— regardless of their previous status prior to adjustment as LPRs—are eligible for SNAP; they may also be eligible without a 5-year waiting period if they fall within one of the waiting period exclusions under PRWORA. That the Guidance states that, after the OBBB, some groups are "Not Eligible" and others "Not Eligible unless an LPR" does not override the Guidance's explicit statement that all LPRs are "[e]ligible after a 5-year waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements" and that "LPRs may still be eligible for SNAP without a waiting period" if they meet certain conditions. ECF No. 1-1 at 2.

As Plaintiffs say:

> Specifically, under the FNA as amended by the OBBB, LPRs are eligible to participate in SNAP, regardless of what status they held prior to adjusting to LPRs. 7 U.S.C. § 2015(f)(2)(B). As USDA regulations provide, "Each category of eligible alien status stands alone for purposes of determining eligibility. Subsequent adjustment to a more limited status does not override eligibility based on an earlier less rigorous status." 7 CFR § 273.4(a)(6)(iv); Non-Citizen Guidance at 5, AR at 48 (GOV000047), ECF No. 77. All these groups can be eligible for SNAP under PRWORA as well, which was unchanged by the OBBB. 8 U.S.C. §§ 1612(a)(2)(A),(G), (K), (L)); 8 U.S.C. §§ 1641(a), (b); 7 CFR § 273.4(a)(6)(i)-(ii).

-Page 22- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

MSJ at 32. USDA agrees, and this is why the case is moot as to the non-citizen guidance. The text of FNA, as amended by OBBB, and PRWORA provide that LPRs are eligible for SNAP benefits; none of these statutes makes any distinction based on their prior status before their adjustment to LPR status.

Plaintiffs appear to interpret the Guidance as suggesting that Refugees, Individuals Granted Asylum, Parolees, Certain Afghan Parolees, Certain Ukrainian Refugees, and Deportation Withheld groups cannot become eligible for SNAP benefits after adjustment to LPR status. *Id*. at 22-23. But the Guidance clearly states that that "Lawful permanent residents" are "Eligible Alien Groups under the OBBB." ECF No. 1-1 at 2. The Guidance makes no distinction based on an individual's status prior to adjustment to LPR.

Plaintiffs focus on the Guidance's attachment 1, which identifies some groups as "not eligible" and other as "not eligible unless an LPR." MSJ at 22. The Guidance is correct, in that both groups are not eligible for SNAP benefits under the OBBB. ECF  No. 1-1 at 5-8. The Guidance is also correct that LPRs are all eligible for SNAP benefits. *Id*. at 5. Thus, Plaintiffs misinterpret the Guidance to state that some groups would not be eligible for SNAP benefits, even if they later become LPR status.

*Humanitarian Immigrant Groups Are Not Subject to PRWORA's Five-Year Waiting Period:* The Non-Citizen Guidance is not unlawful merely because it omits Refugees, Individuals Granted Asylum, Deportation Withheld, Certain Afghan and Ukrainian Parolees, Iraqi and Afghan Special Immigrants (SIV), and Victims of Severe Trafficking from its list of LPRs that can be eligible for SNAP immediately in the table in attachment 1. This attachment was meant to be an easy reference to flag the most common exceptions to the general rule ("LPRs may still be eligible…"). *Id.* An omission that would not operate to change the legal rights or status of a group could not be said to

-Page 23- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

be unlawful. The parties agree that these groups can be eligible for SNAP immediately when they receive LPR status.

**B.    The Exclusionary Period Running from Passage of the OBBB is not Unlawful Because the SNAP Eligibility Changes were "Implemented" on Passage of the OBBB.**

The exclusionary period applicable to the challenged Guidances starts at the date of the passage of the OBBB, not the date of the guidance documents. There are two sources for an exclusionary period: statutory (7 U.S.C. § 2025(c)(3)(A)) and regulatory (7 C.F.R. § 275.12(d)(2)(vii)). The statutory exclusionary period does not apply, because it only excludes errors resulting from the application of new regulations. 7 U.S.C. § 2025(c)(3)(A) ("Any errors resulting in the application of new regulations promulgated under this chapter during the first 120 days from the required implementation date for such regulations."). The challenged Guidances are not new regulations.

Pursuant to USDA regulations, "any variance resulting from application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law that occurs during the first 120 days from the required implementation date" is excluded. 7 C.F.R. § 275.12(d)(2)(vii).

"Implementation date" is not defined in the regulations. When interpreting a regulations, Court's in the Ninth Circuit apply canons of statutory construction and are "begin with the [regulatory] text." *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1158 (9th Cir. 2004) (applying canons of statutory interpretation to interpret regulations). "[Courts] interpret statutory terms in accordance with their ordinary meaning, unless the statute clearly expresses an intention to the contrary." *Id.* The "analysis can begin and end with [the regulatory] text." *Bottinelli v. Salazar*, 929 F.3d 1196, 1199 (9th Cir. 2019). If the Court decides after

-Page 24- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

employing these interpretative tools that "the meaning of [the] regulation is in doubt," USDA's interpretation of its own regulation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Kisor v. Wilkie*, 588 U.S. 558, 568 (2019) (citation modified).

"Implement" is defined as "to give practical effect to and ensure of actual fulfillment by concrete measures." *Implement*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1985); *accord* https://www.merriam-webster.com/dictionary/implement (accessed April 22, 2026). Based on that definition, the question for the Court is whether the challenged Guidance gave "practical effect" to the relevant OBBB provisions or if the OBBB itself gave "practical effect" to its provisions. Or, said differently, were the Guidances necessary for the OBBB provisions to take effect?  The answer to that is no.

"It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon-Peretz*, 498 U.S. at 404. Sections 10102, 10103, and 10108 of the OBBB are silent as to their effective date. Nor did Congress require any additional implementation steps to effectuate these provisions, either directly or by implication, and Congress knew how to require an agency to implement changes when it drafted the OBBB. 139 Stat. 332 ("The Administrator of the Centers for Medicare & Medicaid Services shall implement this section"). Accordingly, July 4, 2025—the date of enactment—is the day these sections took effect; July 4, 2025 is the "required implementation date." This is in contrast to statutes that clearly call for implementing regulations. *See, e.g. United States v. Murphy*, 809 F.2d 1427, 1430 (9th Cir. 1987) ("The reporting act is not self-executing; it can impose no reporting duties until implementing regulations have been promulgated").

This interpretation is supported by the Department's handbook, which explains that the exclusion only applies when there is a "new… law" and States make a change "resulting from the

-Page 25- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

new… law." FNS Handbook 7–43. There is no antecedent requirement that USDA promulgate an implementation memorandum. This makes sense—laws and regulations change legal requirements. Non-binding memoranda do not. *See supra* at II.

This interpretation is further supported by the use of "implement" elsewhere in the same regulation. States are only entitled to variance exclusions on "any action taken on a case directly related to the implementation of a covered provision during the 120-day exclusionary period." 7 C.F.R. § 275.12(d)(2)(vii). And the State agency "shall not exclude variances which occur prior to the States implementation." *Id.* § 275.12(d)(2)(vii)(C). In addition, "[a] State agency which did not implement until after the exclusion period shall not exclude variances under this provision" *Id.* § 275.12(d)(2)(vii)(D). In each of these examples, "implement" refers when something was put into effect—in these cases, the State applying changes to the SNAP program.

So too do these examples reinforce that the variance exclusion period only applies *when* a State has *implemented* the change; here, States can exclude variances during the variance exclusion period if and only if they have implemented the OBBB changes, and only those variances that occur after implementation. As this Court recognized: "I don't think anybody's asking for a grace period to implement.  It's an exclusionary period of the error rate for the purposes of determining the percentage allotment that would be applied to that error rate."  PI Tr. 119:22-25. Plaintiffs have not provided the date on which any State has implemented the OBBB changes to their SNAP programs. If they have not implemented yet, then they are not entitled to any variance exclusion and could not receive any relief from this Court on summary judgment. The Court's preliminary injunction extended the exclusionary period to April 9, 2026. Any implementation after that date would not be entitled to variance exclusion. And any variances that occurred before implementation would not be entitled to exclusion either. 7 C.F.R. § 275.12(d)(2)(vii)(C).

-Page 26- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This Court found that "implement" and "effective date" are "very specific terms of art" in that implement can "contemplate a date that can be different." PI Tr. 130:8-15. And that absent "explicit intent by Congress," the Court could not "treat them as the same." *Id.*  The Court did not have the benefit of *Gozlon-Peretz* at the PI hearing, which conclusively held the opposite: "It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." 498 U.S. at 404. Thus, absent explicit intent by Congress, effective date and implementation date are one and the same.

Plaintiffs argue that the term "required implementation date" in the regulation refers back to the term "implementing memorandum of a mandatory or optional change in Federal law or regulation." MSJ at 28-29 (quoting 7 C.F.R. § 275.12(d)(2)(vii)). This, they conclude, means that there can be no "required implementation date" unless and until there is in implementing memorandum. *Id.* at 29. This is the nub of the disagreement: does a validly enacted statute require a ministerial action to put it in effect, or is it in effect when enacted? Plaintiffs would give the Executive the power to pocket veto any statute simply by delaying or refusing to implement it. That is absurd. *Cf. United States v. Kirby*, 74 U.S. 482, 486-87 (1868) ("General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence").

Plaintiffs attempt to support their interpretation by relying on the definition of a "variance." MSJ at 29. While Plaintiffs are correct that a "variance" is defined as misapplication of a "policy," they, without support, equate "policy" with a USDA memorandum. That is not true in this case, however, because it was not USDA that set the policy for SNAP through ministerial memorandum memorializing statutory changes, it was Congress in passing the OBBB.

Plaintiffs also argue that the regulations are "designed to give States a 120-day window to implement changes without being penalized, with no windfall to States who do not use that period

-Page 27- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

to implement the change." *Id*. USDA agrees—in this case, the States had a 120-day window from the date of the change in the law to make changes without being penalized.

Plaintiffs additionally argue that their interpretation makes sense because implementation memoranda help with "complicated" statutes and the exclusion period is necessary to allow states to "begin the complex process of implementing program changes." *Id*. at 30. This may be true in certain circumstances, such as when the agency needs to issue binding regulations to explain how to implement changes in statutory text. But it doesn't help Plaintiffs here. The implementation memo does not change the meaning of the law—nor could it. It was the OBBB that changed SNAP requirements. And the regulation, by design, provides States 120 days to implement the necessary, statutory changes.

Finally, Plaintiffs argue that USDA could retroactively change State obligations by issuing new implementation memorandum or guidance and then hold those States accountable because the exclusionary period would run from the date of the statute, not the implementing memorandum. *Id*. at 34. Not so. USDA regulations specifically prohibit Plaintiffs' hypothetical: it excludes any variance "resulting" from an implementing memorandum. 7 C.F.R. § 275.12(d)(2)(vii). In Plaintiffs' hypothetical, the variance would only be a "result" of the implementing memorandum because it imposed new or different obligations. In that case, a 120 exclusionary period would be appropriate. But that is not the case here: the challenged Guidances do not impose new or different obligations on States from the OBBB. *See supra* at II. Said another way, there could be no variance "resulting" from the challenged Guidances. It can come only from the statute.

Plaintiffs' hypothetical also underscores that these types of challenges should be an as-applied, case by case challenge rather than a facial challenge to the exclusionary period of the Guidance. *Children's Health Def. v. FCC*, 25 F.4th 1045, 1052 (D.C. Cir. 2022). USDA needs to

-Page 28- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

determine, for any particular case, the cause of any variance, and, if that variance is the result of regulatory or statutory changes, can then assess whether that variance falls within the variance exclusion period. Plaintiffs need to show that *these* Guidances caused specific variances, and if so, then they could be entitled to exclusion of those variances. Instead, Plaintiffs have not even alleged that they have had any errors during this period due to changes in the OBBB or from these Guidances.

## IV.    The Challenged Guidances are Not Arbitrary and Capricious

The APA permits courts to set aside agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). Under the arbitrary or capricious standard, an agency's decision is presumed valid, and a court reviews only whether that decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Review is "deferential," *Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019), and simply examines whether the agency's decision "was the product of reasoned decisionmaking," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983). Moreover, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id*. at 43.

### A.    Plaintiffs' declarations cannot be used to determine the correctness or wisdom of the agency's actions

In general, a court reviewing agency action under the APA must limit its review to the administrative record. *See Camp v. Pitts,* 411 U.S. 138, 142 (1973). The Ninth Circuit "ha[s] applied this rule many times, in many different contexts." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014). A reviewing court may consider extra-record evidence where admission of that evidence (1) is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) is necessary to determine whether "'the

agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'" *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Sw. Ctr. for Biological Diversity,* 100 F.3d 1443, 1450 (9th Cir. 1996)). "These exceptions are to be narrowly construed, and the party seeking to admit extra-record evidence initially bears the burden of demonstrating that a relevant exception applies." *San Luis & Delta-Mendota Water Auth.*, 776 F.3d at 992–93.

Tucked into a footnote, Plaintiffs purport to submit their declarations to "explain States' reliance interests in order 'to develop a background against which [the Court] can evaluate the integrity of the agency's analysis' and to 'help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious.'" MSJ at 18 n.15 (quoting *San Luis & Delta-Mendota Water Auth.*, 776 F.3d at 992–93). Plaintiffs make no attempt to satisfy their burden to justify the submission of these documents. Nor could they.

The exception invoked by Plaintiffs is most often applied where "highly technical matters are involved" so that the court can identify "all relevant factors," and even then those inquiries are often overturned. *Asarco, Inc. v. U.S. E.P.A.*, 616 F.2d 1153, 1160 (9th Cir. 1980) (holding the court "went too far in its consideration of evidence outside the administrative record" when it took evidence of smelting operations); *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 603-04 (9th Cir. 2014) (holding the "district court similarly overstepped its bounds" in allowing expert testimony on "technical and scientific aspects" of the case and judging the agency action against the testimony); *Lands Council v. Powell*, 395 F.3d 1019, 1029-30 (9th Cir. 2005) (noting the "risks presented by the supplemental evidence are serious" when offered to show the agency "did not address a substantial environmental risk posed by the Project" and declining to consider

-Page 30- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

the evidence"). Here, Plaintiffs are not seeking to explain technical concepts.

In no event, however, can Plaintiffs use this extra-record evidence "to determine the correctness or wisdom of the agency's decision." *San Luis & Delta-Mendota Water Auth.*, 776 F.3d at 993. "Such use is never permitted." *Id.* But Plaintiffs briefing confirms that this is the very use for which they submit the declarations. Plaintiffs use their declarations to establish a "need" for implementation guidance, an alleged past practice, and reliance interests. MSJ at 31-34. They then use each of these to affirmatively argue that the exclusionary period is arbitrary and capricious. This use "is never permitted*." San Luis & Delta-Mendota Water Auth.*, 776 F.3d at 993. Accordingly, Defendants ask the Court to either strike the declarations or not consider them.

### B.     The Non-Citizen Guidance is Not Arbitrary and Capricious Because it Does not Purport to have the Effect Plaintiffs Allege

Plaintiffs argue that the Non-Citizen Guidance's changes to SNAP eligibility are arbitrary and capricious for two reasons (Count II). First, they allege "the Guidance does not reasonably explain the decision to cancel financial food assistance for some lawful residents based on their status prior to becoming such residents." MSJ at 25-26. But as explained above, the premise fails: USDA's Non-Citizen Guidance does not treat LPRs differently based on how they obtained that status. Similarly, USDA did not need to explain why "USDA is departing from its longstanding instructions that PRWORA exempts the Humanitarian Immigrant Groups from the five-year waiting period," *id.*, because the Non-Citizen Guidance does not do that.

Second, Plaintiffs allege the Non-Citizen Guidance "did not consider Plaintiff States' serious reliance interests and harms that would flow from their action" in receiving "erroneous guidance." *Id*. at 26-27. Again, the premise fails: the Guidance was not erroneous, and USDA has no obligation to consider "harms that would flow from" actions they did not take. As a result, the Guidance's treatment of eligibility requirements cannot be arbitrary and capricious.

### C.    Exclusionary Period

The exclusionary period for the OBBB's eligibility changes is the result of the mechanical application of USDA regulation to the enactment of the OBBB provisions. Pursuant to USDA regulations, "any variance resulting from application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law that occurs during the first 120 days from the required implementation date" is excluded. 7 C.F.R. § 275.12(d)(2)(vii). By its own terms, the OBBB was implemented on enactment because it was effective on enactment. USDA had no discretion with respect to the exclusionary period and thus could not have acted arbitrarily or capriciously.

Plaintiffs argue that the Guidances' exclusionary period is arbitrary and capricious (Count IV), on two grounds. MSJ at 30-34. First, Plaintiffs argue that "the Guidance Documents are arbitrary and capricious because they provide no reasoning—let alone a "satisfactory explanation"—for USDA's decision to make the required implementation date fall *before* the issuance of implementation memoranda for each OBBB provision." *Id.* As explained above, contrary to Plaintiffs' theory of the case, the Guidance did not alter or create new eligibility criteria. Those changes all stem from enactment of the OBBB on July 4. The OBBB was self-implementing with respect to these eligibility changes and the various Guidances did not "implement" anything, and thus the Guidances did not cause the exclusionary period to run starting on the passage of the OBBB—the OBBB did.

Plaintiffs next argue that the Guidances "fail to acknowledge that the agency is departing from its ordinary practice of permitting variances without penalty for 120 days based on the date set after the issuance of the relevant guidance and provided no justification or reason for this

-Page 32- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

departure." *Id*. at 33-34. For this "ordinary practice," Plaintiffs cite six putative examples,[4] but there are others that come out the other way—it depends on the nature of the provision and the basis of the enactment date. And Plaintiffs' reading of history is incorrect. For example, following the enactment of PWRORA itself, USDA explained that the statute's eligibility requirements were effective upon enactment. Food Stamp Program: Noncitizen Eligibility, and Certification Provisions of Pub. L. 104-193, as Amended by Public Laws 104-208, 105-33 and 105-185, 65 Fed. Reg. 70,134, 70,139 (Nov. 21, 2000).

Plaintiffs' other various citations are either distinguishable or insufficient to establish an "ordinary practice." Plaintiffs cite guidance implementing a 2024 Final Rule that used the 120-day variance. MSJ at 7, *citing* USDA – FNS, *Supplemental Nutrition Assistance Program (SNAP) - Question and Answer #1 for the Implementation of Regulatory Changes to Standard Utility Allowances (SUAs)* 6–7 (Dec. 20, 2024), https://perma.cc/8264-HLUZ. But that guidance simply spelled out the start and end dates of variance exclusion periods associated with new provisions in the Rule based on dates clearly specified in the Rule. The variance exclusion periods did not run from the date of the implementation memo or the guidance, and presented a very different situation than the one here with the self-executing statutory OBBB changes that simply removed certain alien groups from SNAP eligibility.

Concededly, Plaintiffs do cite four examples where USDA used a 120-day variance period starting from guidance implementing a statute that (like the OBBB) changed certain requirements for SNAP. MSJ at 7. But four examples do not indicate an "ordinary practice." Nor can it forever

---

[4] One of Plaintiffs examples set the variance exclusion period off of a separate, earlier guidance. USDA, *SNAP – 120-Day Quality Control (QC) Variance Exclusion for Section 8 of the Worker, Homeownership, and Business Assistance Act of 2009* (Dec. 4, 2009), https://web.archive.org/web/20251117111025/https://fnsprod.azureedge.us/sites/default/files/snap/120-Day%20QC%20Variance%20Exclusion.pdf/.

constrain future agency actions. *See, e.g., F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 538 (2009) (explaining flexibility afforded to agencies under APA).

**V.        Neither Vacatur or a Declaratory Judgment is Appropriate**

The Court should not grant vacatur because a vacatur, by definition, sets aside an agency action. 5 regulations promulgated under this chapter during the first 120 days. § 706(2). Because the agency did not "act," there is no action to set aside. But if the Court disagrees, it should vacate only with respect to the Plaintiff States.

Any relief granted "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). The universal vacatur Plaintiffs seek flouts these well-established principles and should be significantly narrowed, if awarded at all.

Similarly, Plaintiffs are not entitled to a declaratory judgment on the Non-Citizen Guidance. Declaratory judgment is not available where no "live" controversy remains between the parties because the challenged activity has "evaporated or disappeared." *Headwaters, Inc. v. Bureau of Land Mgmt.,* 893 F.2d 1012, 1015 (9th Cir.1989) (stating that "[a] case or controversy exists justifying declaratory relief only when 'the challenged government activity ... is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties'" (quoting *Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 122 (1974)). "In short, declaring the [Non-Citizen Guidance] unlawful would serve no purpose in this case" because USDA has clarified LPR eligibility, "the [Plaintiffs'] ultimate objective." *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007).

Finally, should the Court vacate the exclusionary period, it should set the exclusionary period as beginning on the day USDA sent its Guidance (August 29, 2025 for SUA Guidance;

-Page 34- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

October 31, 2025 for Non-Citizen Guidance; October 3, 2025 for ABAWD Guidance) and ending 120 days after the relevant starting period. The Court should also clarify that USDA may count any variances that occurred before the States implemented the relevant changes pursuant to 7 C.F.R. § 275.12(d)(2)(vii). If States chose to not implement during the variance exclusion period, they should not get a benefit.

## CONCLUSION

Plaintiffs' motion for summary judgment should be denied, and Defendants motion for summary judgment granted.

Dated: May 8, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney
General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

MICHAEL VELCHIK
Senior Counsel to the Assistant Attorney
General

TYLER J. BECKER
Counsel to the Assistant Attorney General

_s/ Michael Bruns_

MICHAEL BRUNS (DC Bar No. 1613394)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005

-Page 35- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Phone: 202-514-4011
Fax: 202-616-8460
Email: michael.bruns@usdoj.gov
*Attorneys for Defendants*

-Page 36- CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT