LETITIA JAMES
Attorney General for the State of New York
Molly Thomas-Jensen
Jessica Ranucci
*Special Counsel*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Gina Bull
*Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8679
Email: molly.thomas-jensen@ag.ny.gov
        jessica.ranucci@ag.ny.gov
        rabia.muqaddam@ag.ny.gov
        gina.bull@ag.ny.gov

*Attorneys for the State of New York*

[Additional counsel to appear on signature page]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION**

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture; and U.S. DEPARTMENT OF AGRICULTURE, et al.,<br><br>Defendants. | Case No. 6:25-cv-02186-MTK<br><br>**PLAINTIFF STATES' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

Page i – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ..........................................................................................................................2

    I.    Plaintiffs' Challenge of the Non-Citizen Guidance Is Not Moot ....................... 2

    II.    The Guidance Documents Are Final Agency Action .......................................... 3

    III.    The Non-Citizen Guidance Is Contrary to Law .................................................. 5

    IV.    The Non-Citizen Guidance Is Arbitrary and Capricious ..................................... 6

    V.    The Guidance Documents' Exclusionary Period Is Contrary to Law ................ 8

        A.    Defendants Conflate "Implementation Date" with "Effective Date" ........................ 8

        B.    Following Rules of Regulatory Interpretation, "Required Implementation Date" Must Mean a Date Defined in the Implementing Memorandum, Not the Statute's Effective Date .................................................................................... 9

            1.    The regulatory text, history, and past practice unambiguously show that the "required implementation date" refers to a date set forth in the "implementing memorandum," not the effective date of a change in law. .................................10

            2.    Even if the regulation at issue is ambiguous, Defendants' interpretation is not "reasonable." ......................................................................................14

            3.    Deference is additionally inappropriate because Defendants' interpretation unfairly upends States' serious reliance interests. ...............................................15

        C.    Defendants' Attempt to Cut the Exclusionary Period Even Shorter Should Be Denied for Failing to Provide States Adequate Notice as the Regulations Intended ........... 16

    VI.    The Guidance Documents' Exclusionary Period Is Arbitrary and Capricious ................. 18

Page i – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

     A.    The Court May Rely on Extra-Record Evidence ..................................................... 18

     B.    Defendants' Calculation of Exclusionary Periods for Changes to SNAP Was Unreasoned and in Contravention of Past Agency Practice .................................... 19

VII.  Vacatur and Declaratory Relief Are Appropriate Remedies in This Case ........................ 21

CONCLUSION..................................................................................................................................22

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amazon.com, Inc. v. Comm'r,*
    934 F.3d 976 (9th Cir. 2019) ........................................................................10, 14

*Asarco, Inc. v. U.S. EPA,*
    616 F.2d 1153 (9th Cir. 1980) .............................................................................19

*Ass'n of Am. Universities v. Dep't of Def.,*
    806 F. Supp. 3d 79 (D. Mass. (2025) ..................................................................21

*Bell v. City of Boise,*
    709 F.3d 890 (9th Cir. 2013) ................................................................................3

*Bowen v. Georgetown Univ. Hosp.,*
    488 U.S. 204 (1988) .............................................................................................15

*California v. Trump,*
    963 F.3d 926 (9th Cir. 2020). .............................................................................12

*Cal. Cmtys. Against Toxics v. E.P.A.,*
    934 F.3d 627 (D.C. Cir. 2019).............................................................................4

*Camp v. Pitts,*
    411 U.S. 138, (1973) ............................................................................................18

*Ctr. For Biological Diversity v. Lohn,*
    511 F.3d 960 (9th Cir. 2007) ..............................................................................21

*Christopher v. SmithKline Beecham Corp.,*
    567 U.S. 142 (2012)..................................................................................10, 15, 17

*Dep't of Commerce v. New York,*
    588 U.S. 752 (2019)..............................................................................................18

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020)..............................................................................................7, 20

*Encino Motorcars, LLC v. Navarro,*
    579 U.S. 211 (2016)..............................................................................................19

Page iii – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

*FDA v. Wages & White Lion Invs., L.L.C.*,
    604 U.S. 542, 568 (2025)................................................................................20

*Forest Serv. Emples. For Envtl. Ethics v. U.S. Forest Serv.*,
    796 Fed. Appx. 390 (9th Cir. 2020) ...............................................................18

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)..........................................................................................2

*Kisor v. Wilkie*,
    588 U.S. 558 (2019)................................................................................. *passim*

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)........................................................................................15

*Lands Council v. Powell*,
    395 F.3d 1019 (9th Cir. 2005) .......................................................................18

*Midwater Trawlers Coop v. DOC*,
    393 F.3d 994 (9th Cir. 2004).........................................................................18

*Nat'l TPS All. v. Noem,*
    166 F.4th 739 (9th Cir. 2026).........................................................................12

*New York v. Trump,*
    No. 25-1236, 2026 WL 734941 (1st Cir. Mar. 16, 2026)...............................7

*New York v. United States Dep't of Energy*,
    No. 6:25-CV-01458-MTK, 2025 WL 3140578 (D. Or. Nov. 10, 2025) .................21

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.,*
    465 F.3d 977 (9th Cir. 2006).......................................................................4, 5

*Perez v. Mortg. Bankers Ass'n,*
    575 U.S. 92 (2015)............................................................................................4

*Rosebrock v. Mathis*,
    745 F.3d 963 (9th Cir. 2014).......................................................................2, 3

*San Luis & Delta-Mendota Waer Auth.*,
    776 F.3d 971 (9th Cir. 2014).........................................................................19

*U.S. v. Neal,*
    776 F.3d 645 (9th Cir. 2015).........................................................................12

Page iv – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

*United States v. Texas*,
   599 U.S. 670 (2023) ................................................................................................21

*West Virginia v. Env'l Prot. Agency*,
   597 U.S. 697 (2022)..................................................................................................3

**STATUTES**

5 U.S.C.
   § 553...................................................................................................................13, 16

7 U.S.C.
   § 2013(c) ...........................................................................................................13, 16
   § 2025(c)(3) ............................................................................................................12
   § 2025(c)(3)(A).........................................................................................................8

**REGULATIONS**

7 C.F.R.
   § 271.2.....................................................................................................................11
   § 271.4.....................................................................................................................16
   § 272.1(g)......................................................................................................12, 13, 16
   § 272.2(a)(2) ...........................................................................................................17
   § 272.3(b)................................................................................................................16
   § 273.4(a)(6)(ii).........................................................................................................6
   § 273.4(a)(6)(iii) ........................................................................................................6
   § 275.12(d)(2)(vii) .........................................................................................8, 9, 10, 16
   § 275.12(d)(2)(vii)(C).............................................................................................14
   § 275.12(d)(2)(vii)(E)....................................................................................10, 14, 16

Food Stamp Program: Quality Control Provisions of the Mickey Leland Childhood Hunger Relief
   Act, 62 Fed. Reg. 29652 (June 2, 1997) ...............................................................13

Food and Nutrition Service: Anticipating Income and Reporting Changes,
   68 Fed. Reg. 22567 (Apr. 29, 2003) ......................................................................12

SNAP: Quality Control Provisions of Title IV of Public Law 107-171,
   75 Fed. Reg. 33422 (June 11, 2010) ......................................................................13

SNAP: Employment and Training Program Monitoring, Oversight and Reporting Measures,
   89 Fed. Reg. 90547 (Nov. 18, 2024).....................................................................12

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

# PRELIMINARY STATEMENT

This is not a case about when a "validly passed statute . . . takes effect." Defs.' Cross-Mot. 1, ECF No. 92. As Defendants note, "the parties *agree* that the OBBB was effective on the day it was enacted." *Id.* (emphasis added).

Rather, the primary issue in this case is whether the exclusionary periods defined in Defendants' Guidance Documents,[1] which impact how states' SNAP payment error rates are calculated, are contrary to the applicable statutory and regulatory regime and arbitrary and capricious. Defendants' arguments fall short at every turn. They assert that the Guidance Documents are not final agency action because their legal effect stems from the One Big Beautiful Bill Act (OBBB), but that argument has been foreclosed by the Ninth Circuit and, in any event, the Guidance Documents have practical effects on Plaintiff States that are sufficient for finality. On the merits, Defendants rehash arguments regarding the exclusionary period that the Court already properly rejected at the preliminary injunction stage, wrongly asserting that "required implementation date" can only mean "effective date" and that the agency is entitled to deference for a novel construction of the SNAP error rate regulations. Defendants' argument does not withstand scrutiny in view of the statutory and regulatory text, history, and purpose, which all support Plaintiffs' reading that the exclusionary period is defined in U.S. Department of Agriculture (USDA) implementing guidance and therefore cannot begin before that guidance is issued.

As to the Non-Citizen Guidance, Defendants argue that the Guidance was unambiguously "correct," Defs.' Cross-Mot. 23, but at the same time assert that Plaintiffs' claims are "moot because the [subsequently issued] Q&A resolved any ambiguity" as to SNAP non-citizen eligibility (while denying such ambiguity exists), Defs.' Cross-Mot. 15. These arguments should

---

[1] "Guidance Documents" collectively refers to the "ABAWD Guidance, Administrative Record (AR) at 9 (GOV000008–13), ECF No. 77; the "SUA Guidance," *id.* at 15 (GOV000014–17); the "Non-Citizen Guidance," *id.* at 19 (GOV000018-28); and the "Exclusionary Period Memo", *id.* at 7 (GOV000006–7).

be rejected. The Guidance was erroneous, and Defendants' belated efforts to correct it on the eve of their preliminary injunction opposition do not render Plaintiffs' claims moot. Defendants' correction of their faulty Guidance did not erase the original errors of the Guidance—errors that Defendants maintain were not errors at all—and the belated correction did nothing to cure Defendants' disregard for when the exclusionary period could lawfully run.

Plaintiffs respectfully request that the Court grant their motion for summary judgment and deny Defendants' cross-motion.

## ARGUMENT

### I.    Plaintiffs' Challenge of the Non-Citizen Guidance Is Not Moot

This case is justiciable. Defendants do not dispute that Plaintiffs have standing to bring this action or that Plaintiffs' claims regarding the Guidance Documents' exclusionary periods are live. Instead, they argue that the Plaintiff States' challenge to the substance of the Non-Citizen Guidance is moot "because the Q&A resolved any ambiguity" and "clarified" the Non-Citizen Guidance. Defs.' Cross-Mot. 15. But in the same brief, they insist that the Plaintiff States "misinterpret[ed]" this Guidance, that the Non-Citizen "Guidance is correct," and that any new exclusionary period should start from October 31 (not December 10). Defs.' Cross-Mot. 23, 34-–35. There is a live dispute about whether the Non-Citizen Guidance was legally correct and about whether USDA may start the exclusionary period before it had correctly explained its interpretation of the OBBB to the States. The Court can still provide effective relief to the Plaintiff States in the form of a declaratory judgment that clarifies non-citizen eligibility for SNAP following the OBBB.

It is Defendants' burden to establish mootness. *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014). Where, as here, a party asserts mootness premised on their "voluntary cessation" of the challenged conduct, the standard is "stringent": "A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). And where the purported voluntary cessation is not accomplished via a change to the statute or

regulation, the "ease with which" the Defendants could "alter or abandon" the Q&A document counsels against finding this case moot. *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013).

Here, Defendants did not reissue a corrected Non-Citizen Guidance or even acknowledge that the Q&A document was issued to correct errors in the Non-Citizen Guidance, and yet they seek to avail themselves of "a presumption that the Government acts in good faith." Defs.' Cross-Mot. 16. But even if they were entitled to such a presumption, Defendants "still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again." *Rosebrock*, 745 F.3d at 971. Defendants continue to argue that the challenged conduct was legal, which strongly implies a likelihood that they will revert to their old conduct, absent a court order. *See West Virginia v. Env'l Prot. Agency*, 597 U.S. 697, 720 (2022) (finding case not moot where government did not disclaim "reimpos[ing] emissions limits predicated on generation shifting" and where it "'vigorously defend[ed]' the legality of such an approach."). Indeed, Plaintiff States sought to resolve the errors in the Non-Citizen Guidance before filing suit, but Defendants waited until after they were sued, and even then, only issued a grudging correction on the day they opposed the preliminary judgment motion in this case. There is every reason to believe that, absent a declaratory judgment, Defendants will seek to reimpose their erroneous interpretation of the OBBB's provisions governing non-citizen eligibility for SNAP. This case is not moot.

## II.    The Guidance Documents Are Final Agency Action

Defendants do not dispute that the Guidance Documents have met the first prong of the finality test: they mark the consummation of the agency's decisionmaking process. *See* Pls.' Mot. 21, ECF No. 80; Defs.' Cross-Mot. 18. As to the second prong, Defendants put forward two arguments: that the Guidance Documents are non-final interpretive rules, Defs.' Cross-Mot. 18–19, and that the Documents lack an "actual legal effect" because the obligations contained within stem from the OBBB itself. *Id.* 19–22. Defendants' interpretive rule argument is a non-starter. As Plaintiffs pointed out and Defendants now appear to concede, the Supreme Court has clarified that

Page 3 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

interpretive rules can be final agency action. *See* Pls.' Mot. 22 (quoting *Cal. Cmtys. Against Toxics v. E.P.A.*, 934 F.3d 627, 635 (D.C. Cir. 2019) (explaining *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015)); *see also* Prelim. Inj. Hr'g Tr. 128:20-24; Defs.' Cross-Mot. 19.

Defendants maintain that the Guidance Documents are nonetheless non-final because they "add[] nothing new to Plaintiffs' obligations beyond what OBBB provided." Defs.' Cross-Mot. 19; *see id.* 21 ("[I]t was not the Guidances that caused the exclusionary period to run to November 1. It was the OBBB."). But even if this were so (and it is not, because the Guidance Documents clarified issues not addressed by OBBB, such as whether to implement at certification or across an agency caseload), the Ninth Circuit has squarely rejected this argument, finding a district court erred in holding that "an agency action is not a final agency action unless it alters the legal regime to which the action agency is subject"—precisely the argument Defendants put forth here. *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 986 (9th Cir. 2006); *cf.* Defs.' Cross-Mot. 19 (arguing that Guidance Documents are non-final because they did not modify or add to a legal norm). Rather, the second finality prong "can be met through different kinds of agency actions, not only one that alters an agency's legal regime." *Or. Nat. Desert Ass'n*, 465 F.3d at 987.

Defendants' argument is particularly unavailing in this case, where Plaintiffs assert claims that the Guidance Documents are contrary to law. Defendants seek to avoid judicial review of the Guidance Documents' exclusionary period by asserting that the statutory scheme compels a November 1 end date. But one of the claims Plaintiffs seek to have adjudicated is that the Guidance Documents' exclusionary period is contrary to the statutory and regulatory scheme (as the Court found, with respect to the Non-Citizen Guidance, at the preliminary injunction stage). *See infra* Section V. Denying Plaintiffs an opportunity to raise that claim on the ground that a statute compels the Guidance Documents' exclusionary period would beg the answer to the very question that Plaintiffs pose. The same goes for the Non-Citizen Guidance: it would be utterly nonsensical for the Court to find that Plaintiffs' claim that the Non-Citizen Guidance violates the OBBB, *see infra* Section III, is barred from judicial review because the Guidance is compelled by the OBBB, *see*

Page 4 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defs.' Cross-Mot. 20. And the substance of the SUA Guidance and ABAWD Guidance, *id*. at 19–21, are not challenged in this case so whether or not they "track[] the changes in the OBBB," *id*. at 20, is not relevant to finality.

As Defendants acknowledge, an agency action is final when it "amounts to a definitive statement of the agency's position *or* has a direct and immediate effect on the day-to-day operations of the subject party, *or* if immediate compliance with the terms is expected." *Id.* at 18 (quoting *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d at 982 (emphasis added). As Plaintiffs' opening brief explained, and Defendants do not meaningfully contest, the Guidance Documents are all three. *See* Pls.' Mot. 21–22.

### III.     The Non-Citizen Guidance Is Contrary to Law

The Guidance distinguishes between groups that are "Not eligible unless an LPR" and "Not eligible." Guidance at 5–8. That distinction has no basis in the law, and sowed confusion among the state agencies tasked with implementing the Guidance. As set out in Plaintiff States' Motion for Summary Judgment, ECF No. 80 at 22–24, non-citizens who adjust their status to LPR are eligible for SNAP Benefits; the Non-Citizen Guidance suggesting otherwise is simply wrong.

Defendants' issuance of the Q&A documents on December 9 and 10 is evidence that the Non-Citizen Guidance was erroneous; Defendants' attempt to recast the confusion as the fault of Plaintiff States is disingenuous. *See* Defs.' Cross-Mot. 23. Moreover, the original December 9 Q&A doubled down on one of the Guidance's original legal errors, only to be corrected the following day, further confirming that the Guidance was erroneous. *See* Pls.' Mot. n. 13.

Similarly, the Non-Citizen Guidance's omission of Humanitarian Immigrant Groups[2] from its list of groups that are exempt from PRWORA's five-year waiting period contradicted the

---

[2] As in Plaintiffs' Motion for Summary Judgment, Plaintiffs adopt the names and definitions for the categories of "Alien Groups" in Attachments 1 and 2 to the Non-Citizen Guidance. "Humanitarian Immigrant Groups" refers to Refugees, Individuals Granted Asylum, Deportation Withheld, Certain Afghan and Ukrainian Parolees, Iraqi and Afghan Special Immigrants (SIV), and Victims of Severe Trafficking.

Page 5 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

statutory eligibility requirements. The five-year waiting period imposed on some non-citizens before they can apply for SNAP benefits comes from PRWORA, not the FNA. As Defendants concede, Defs.' Cross-Mot. 4, PRWORA and its exceptions were unchanged by the OBBB. Even though Humanitarian Immigrant Groups are no longer eligible for SNAP *before* they adjust to LPR status, they still retain their exemption from PRWORA's five-year waiting period *after* they adjust to LPR status. The Non-Citizen Guidance recognized that several groups are still exempt from PRWORA's five-year waiting period but then excluded others. *See* Guidance at 5–7, AR at 23–25 (GOV000022), ECF No. 77 (listing categories as "Eligible immediately" or "without a waiting period" after becoming LPRs).

There was no basis to omit Humanitarian Immigrant Groups from this category of exempted groups. USDA's regulations are clear that the Humanitarian Immigrant Groups are exempted from the five-year waiting period. Regulations divide "qualified aliens" into two groups: those who "must be in a qualified status for 5 years before being eligible to receive food stamps," 7 C.F.R.§ 273.4(a)(6)(iii), and those who are "not subject to the requirement to be in qualified status for 5 years," including Refugees, Individuals Granted Asylum, and Deportation Withheld, as well as other categories that the Non-Citizen Guidance retains as exempt from the waiting period. 7 C.F.R. § 273.4(a)(6)(ii). Again, Defendants try to recast the confusion that they created by belatedly issuing incorrect guidance as a misunderstanding by the Plaintiff States. Defs.' Cross-Mot. 23–24. However, that position is belied by the fact that they then had to correct the Guidance through the Q&As—not once, but twice. Hartmann Decl. Ex. A, ECF No 61-1 (the first Q&A); AR at 30–34 (GOV000029–33) (the revised Q&A).

**IV.    The Non-Citizen Guidance Is Arbitrary and Capricious**

As set out above and in Plaintiffs' Motion at 22–24, the Non-Citizen Guidance distinguishes between non-citizen groups who are "Not eligible" for SNAP and non-citizen groups who are "Not eligible unless an LPR," and suggests that the Humanitarian Immigrant Groups are subject to PRWORA's five-year waiting period when they are not. Defendants do not make any

Page 6 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

argument against Plaintiffs States' claim that the artificial distinctions Defendants created are arbitrary and capricious. Instead, Defendants argue that 23 state SNAP agencies—experts in disbursing funds to their states' recipients—all misread the Non-Citizen Guidance that Defendants themselves had to correct. Therefore, Defendants argue, the Non-Citizen Guidance was not erroneous and could not be arbitrary and capricious. Defs.' Cross-Mot. 31. By doubling down and claiming that Defendants have been misunderstood, Defendants attempt to sidestep their obligations in explaining the grounds for issuing the Non-Citizen Guidance. But that logic is flawed. As set out herein, the Non-Citizen Guidance was both final agency action and legally incorrect. By not providing grounds on which it based its (flawed) Guidance, USDA failed to provide any analysis explaining its action, all but conceding that its action was arbitrary and capricious. *See* Pls.' Mot. 26; *see also New York v. Trump*, No. 25-1236, 2026 WL 734941, at *11 (1st Cir. Mar. 16, 2026). Similarly, Defendants attempt in their Opposition to suggest that the confusion *they created* when they issued the erroneous guidance and subsequently corrected it (twice) was negligible, but State agencies moving to implement the Guidance *did* change their approach between the issuance of the first Guidance document and the Q&As, because the two documents said different things about how to determine SNAP eligibility for non-citizens in light of the changes from the OBBB. *See* VT-Tousignant Decl. ¶¶ 18, 21, ECF No. 63.

Defendants similarly do not dispute that they certified that they considered *no* facts in developing this Guidance, instead insisting that the Guidance took no action so there were no facts to consider. For the reasons set out in Plaintiff States' Motion at 26–27 and *infra* Section II, the Non-Citizen Guidance did, in fact, constitute an action by the agency under the APA. Defendants changed their policy and directed state agencies to implement those changes. As a result, Defendants were required to consider, through "reasoned analysis," "the alternatives that are within the ambit of the existing policy" and any "serious reliance interests" of parties relying on the status quo. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020)

Page 7 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

(citation modified). Defendants did none of that, rendering the Non-Citizen Guidance arbitrary and capricious.

## V.    The Guidance Documents' Exclusionary Period Is Contrary to Law

The Guidance Documents' exclusionary period is contrary to law because it fails to provide States the full 120-day period, required by the FNA and USDA regulation, to be held harmless for misapplications of USDA policy. *See* 7 U.S.C. § 2025(c)(3)(A); 7 C.F.R. § 275.12(d)(2)(vii). Defendants' argument that the statutory and regulatory text compels the USDA to use the OBBB's effective date as the "required implementation date" is fundamentally detached from the reality, function, and intent of the SNAP regulations. Rules of regulatory interpretation, history, and legal precedent all support Plaintiffs' position that the exclusionary period cannot begin until *after* the Guidance Documents were issued.

### A.    Defendants Conflate "Implementation Date" with "Effective Date"

Defendants' argument confuses the "effective date" of the statute with the "required implementation date" of a USDA implementing memorandum. These terms are not the same: one is defined by Congress, the other by USDA regulation. Although the OBBB's changes to the SNAP program had immediate effect on who is eligible for the program and how States must therefore determine participants' eligibility, it had no impact on what errors are counted within the SNAP program's quality control review procedures.

Defendants cite *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991), for the rule that a statute goes into effect on the date of its enactment absent any language to the contrary. But all parties agree that the OBBB went into effect on the date of enactment, July 4, 2025. Despite Defendants' assertion that "the Court did not have the benefit of *Gozlon-Peretz* at the PI hearing," Defs.' Cross-Mot. 27, the Court clearly understood that the OBBB went into effect immediately, carefully considered Defendants' "argument that the effective date of the exclusionary period would track the effective date of HR1, which was July 4th," and concluded that "7 USC 2025 and 7 CFR 275 contemplate a [required implementation] date that can be different . . . from an effective

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

date of a statute." Prelim. Inj. Hr'g Tr. 130:3–4, 11–15. The issue here is not when the OBBB went into effect, but at what point States are required to have formally implemented changes such that the federal government can hold them to account for making mistakes in applying the changes. Nothing in *Gozlon-Peretz* addresses the required implementation date for a USDA guidance document, no matter how much hand-waiving Defendants muster.

**B.      Following Rules of Regulatory Interpretation, "Required Implementation Date" Must Mean a Date Defined in the Implementing Memorandum, Not the Statute's Effective Date**

Defendants also incorrectly characterize the deference afforded to agencies in interpreting their own regulations under *Kisor v. Wilkie*. In *Kisor*, the Supreme Court grappled with whether to overturn *Auer* deference—the *Chevron*-like deference afforded to agencies' reading of ambiguous regulations—and narrowly decided to uphold the principle of *Auer* deference with emphasis on the "prerequisites for, and limitations on" it. *See Kisor v. Wilkie*, 588 U.S. 558, 591 (2019) (Roberts, J., concurring). Defendants assert that USDA's interpretation of 7 C.F.R. § 275.12(d)(2)(vii) in the instant dispute is owed "controlling weight unless it is plainly erroneous or inconsistent with the regulation." Defs.' Cross-Mot. 25 (quoting Part II-A of *Kisor*, 588 U.S. at 568). However, they fail to acknowledge that this quotation from *Kisor* comes from a part of Justice Kagan's opinion that was not joined by a majority of justices. *See Kisor*, 588 U.S. at 563. In fact, the majority in *Kisor* held that courts specifically may *not* defer to an agency's interpretation when it "creates unfair surprise or upsets reliance interests," as is precisely the case here. *Id.* at 584.

The *Kisor* Court presented a three-step process for resolving a dispute over regulatory text. First, the court must determine whether a regulation is "genuinely ambiguous" using all traditional tools of statutory interpretation, including the "text, structure, history, and purpose of a regulation." *Id.* at 575-76. Second, if the regulation is indeed ambiguous, the court must determine whether the agency's interpretation is "reasonable." *Id.* at 576. Finally, the court must make an "independent inquiry" to determine whether deference is appropriate given the "character and context of the agency interpretation," including whether it reflects "'fair and considered judgment.'" *Id.* at 579

Page 9 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

(quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)). At this stage, the hallmark scenario in which courts may not afford deference is when an agency advances a "new interpretation" that conflicts with its prior position and disrupts the expectations of regulated parties. *Id*.

Each step of the *Kisor* analysis weighs against Defendants' interpretation of "required implementation date."

    1.    **The regulatory text, history, and past practice unambiguously show that the "required implementation date" refers to a date set forth in the "implementing memorandum," not the effective date of a change in law.**

First, courts examine the regulation at issue using "the same rules as statutes, applying traditional rules of construction." *Amazon.com, Inc. v. Comm'r*, 934 F.3d 976, 984 (9thCir. 2019) (citation modified). Courts must also analyze regulatory text "in the context of the entire" regulatory scheme. *Id.* at 986. The regulation at issue here, 7 C.F.R. § 275.12(d)(2)(vii), states that "any variance resulting from application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law that occurs during the first 120 days from the required implementation date" "shall be excluded from the determination of a household's eligibility and basis of issuance for the sample month." The word "implement" appears twice: the "implementing memorandum" and "the required implementation date." In this case, it is undisputed that the Guidance Documents are the "implementing memorand[a]"—they define themselves as such—and USDA is the subject implementing the change in law, the OBBB. AR at 9, 15, 19, (GOV000008, 14, 18), ECF No. 77. In contrast to "implementing memorandum," in the phrase "required implementation date," the subject doing the implementing is the State agency. A sub-section of the regulation goes on to say, "For purposes of this provision, implementation occurs on the effective date of the State agency's written statewide notification to its eligibility workers." 7 C.F.R. § 275.12(d)(2)(vii)(E). The "required implementation date" therefore means the date by which the State agency is required to issue its statewide notification

Page 10 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

to its workers of the new SNAP program rule. This definition is consistent with the phrase "implementing memorandum" because both the USDA's and the States' implementation of a change in law is carried out by a memorandum formally summarizing it for the agencies and staff they oversee. The only dispute is whether "required implementation date" refers to a date specified in an "implementing memorandum" or the effective date of the "change in federal law."

Defendants cite a dictionary definition of the word "implement" as "to give practical effect to and ensure actual fulfillment by concrete measures." Defs.' Cross-Mot. 25. Based on this definition, they suggest that "the question for the Court is whether the challenged Guidance gave 'practical effect' to the relevant OBBB provisions, or if the OBBB itself gave 'practical effect' to its provisions" and conclude that the OBBB implemented itself. But as discussed above, there are two uses of "implement" in the regulation. Of course the Guidance Documents can implement the OBBB (the "implementing memorandum"); as for the "required implementation date," the dictionary definition tells us nothing about when the agency and States must take "concrete measures" to "give *practical* effect to and ensure actual fulfillment" of the law's requirements by translating the law for staff into their manuals and program procedures. Defendants also cite other uses of the word "implement" in the same regulation which they say refers here to "the State applying changes to the SNAP program." *Id.* at 26. That is true but tellingly, Defendants suddenly shifted their own definition of "implement," contradicting their argument that only "the OBBB itself gave 'practical effect' to its provisions," without need for application by USDA or the States. *Id.* at 25. The real difference is that the law took effect immediately, changing participants' rights to SNAP benefits and States' obligations in administering them, while the implementing guidance sets forth a timeline for formal adoption and explains how the law modifies existing SNAP regulations. It is the latter that governs States' quality control compliance in practice. *See, e.g.*, 7 C.F.R. § 271.2 (defining "variance" to mean "the incorrect application of policy" not law).

According to Defendants, the "required implementation date" must be the same as the "effective date" of a change in law. But as in statutory interpretation, we must assume a regulation's

Page 11 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

choice of words is deliberate. *See California v. Trump*, 963 F.3d 926, 946 (9th Cir. 2020). "Effective date" and "implementation date" are both used commonly and distinctly within USDA regulations. For regulatory changes, "[t]he implementation schedule for any amendment to the regulations shall be specified in the amendment." 7 C.F.R. § 272.1(g). Accordingly, in each regulation published by the USDA pertaining to the SNAP program, a section entitled "Dates" typically lists upfront both the "effective date" and a subsequent "implementation date," often falling many months apart. *See, e.g.*, 89 Fed. Reg. 90,547 (Nov. 18, 2024) (listing an effective date of January 17, 2025 and an implementation date of October 1, 2025); 68 Fed. Reg. 22,567 (Apr. 29, 2003) (listing an effective date of May 29, 2003 and implementation date of November 1, 2003). And as explained in Plaintiffs' Motion for Summary Judgment, in several historical instances when a statute became effective immediately, USDA's implementing guidance still set different implementation dates in the future. Pls.' Mot. 6. If it was the agency's intent to require States to implement on the effective date of a statute or regulation, the regulation would surely have used that phrase instead of "required implementation date."

Defendants' argument also fails a fundamental canon of statutory (and regulatory) interpretation: that courts must "mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same [regulation] inconsistent, meaningless, or superfluous." *Nat'l TPS All. v. Noem*, 166 F.4th 739, 765 (9th Cir. 2026) (citing *U.S. v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015)). If "required implementation date" referred to the effective date of the "change in Federal law" rather than a date set forth in the "implementing memorandum," the phrase "implementing memorandum" would be entirely superfluous and the regulation would do better to omit it, instead reading simply, "any variance resulting from application of a new Program regulation or mandatory or optional change in Federal law."

Finally, the regulatory history and intent also support a finding that "required implementation date" refers unambiguously to a date set forth in the implementing memorandum. The purpose of this regulation is to implement 7 U.S.C. § 2025(c)(3), which requires that errors

Page 12 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

be excluded from a State's payment error rate for 120 days following the "required implementation date" of regulations, thereby providing time for States to train their staff and integrate the new rules into their systems without being penalized for errors. Under both the SNAP statutory scheme and the APA, program changes are generally effectuated through regulation, which includes ample notice to regulated parties prior to implementation. *See* 7 U.S.C. § 2013(c); 5 U.S.C. § 553; 7 C.F.R. § 272.1(g) (requiring an implementation schedule be specified in amendments to regulations). And as Defendants acknowledge, statutory changes frequently call for implementing regulations with a future effective date. Defs.' Cross-Mot. 25. It therefore makes sense that the USDA would provide for an exclusionary period following the "implementing memorandum" when the agency does not follow this typical practice in issuing regulations to explain program changes. In fact, an earlier version of the regulation included a parenthetical after "implementing memorandum," explaining "if one is sent to advise State agencies of a change in Federal law, in lieu of regulations." 62 Fed. Reg. 29,652 at 659 (June 2, 1997).

Furthermore, when the USDA most recently amended the regulation in 2010, it explained that the "extent of the variance exclusion has been expanded to reflect a change in viewpoint of the intent of this hold harmless period" and clarified its application to statutory changes in that context:

> The legislative provision authorizing the variance exclusion is specific in applying it to regulatory implementation. The Department's extension of that to implementation of legislative provisions is driven by the fact that many legislative provisions are effective immediately, prior to any regulation being published.

75 Fed. Reg. 33,422 at 434 (June 11, 2010). The agency therefore explicitly contemplated statutes that become effective immediately when drafting the regulation to hinge on an "implementing memorandum." The fact that some of the examples that Plaintiffs provided where implementing guidance set a required implementation date that fell after the effective date of the statute were issued in 2009 and 2010 underscores this reading of the regulation's intent. Pls.' Mot. 6. An agency's view on its own regulation holds more weight when it is expressed closer in time to when

Page 13 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

the regulation was written. *See Kisor*, 588 U.S. at 570 (Kagan, J.), 620 (Gorsuch, J., concurring) (noting that agency "personnel . . . [and] priorities may shift dramatically from one presidential administration to another").

In sum, analysis using well-established canons of regulatory construction eliminates any ambiguity that "required implementation date" is intended to be distinct from the "effective date" of a change in law.

### 2.     Even if the regulation at issue is ambiguous, Defendants' interpretation is not "reasonable."

For the reasons stated above, there is "only one reasonable construction" of the regulation—that it must be a date specified in the implementing memorandum and therefore *after* the implementing memorandum is issued—so the Court can and should stop at step one. *See Kisor,* 588 U.S. at 575; *Amazon.com, Inc.*, 934 F.3d at 992. But even if the Court finds it is ambiguous, Defendants' interpretation is not reasonable because it allows the implementation guidance to be issued *after* the "required implementation date." To be sure, in most cases, it is preferable to make the "required implementation date" sync with the date that a change in law becomes effective; it is for that reason that statutes often set forth an effective date in the future or require implementing regulations to be issued on a slower timeline. Defendants' interpretation would have the absurd result of requiring States to have issued "written statewide notification[s]" to their eligibility workers covering multiple complex program changes in the OBBB immediately—on a federal holiday no less—and without federal guidance to take advantage of the full hold harmless period. *See* 7 C.F.R. §§ 275.12(d)(2)(vii)(E), (d)(2)(vii)(C) (prohibiting exclusion of variances prior to formal implementation); Defs.' Cross-Mot. 26. That the USDA itself took months to issue its own implementing guidance demonstrates the impossibility of such a feat. Plaintiffs further needed USDA's guidance to understand the granular ways in which the OBBB changes should be implemented in compliance with program rules. *See* Pls.' Mot. 10–11. Defendants' interpretation would clearly defeat the overall purpose of "fairness and informed decisionmaking at the core of the APA" and the SNAP regulatory scheme. *Kisor*, 588 U.S. at 584. And since States were not

Page 14 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

even notified of this unreasonable deadline until long after it had already passed, it would also contradict the principle that "administrative rules will not be construed to have retroactive effect unless their language requires this result.'" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 264 (1994) (quoting *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988)).

> **3.      Deference is additionally inappropriate because Defendants' interpretation unfairly upends States' serious reliance interests.**

If there remains any doubt that Defendants' interpretation is unreasonable, the *Kisor* test requires the court to make an "independent inquiry" that considers the "upending of reliance." *Kisor*, 588 U.S at 576–79. Where an agency's position conflicts with its prior position and the agency's interpretation "does not reflect the agency's fair and considered judgment," deference "would seriously undermine the principle that agencies should provide regulated parties 'fair warning of the conduct a regulation prohibits or requires' . . . [and] result in precisely the kind of 'unfair surprise' against which our cases have long warned." *Christopher*, 567 U.S. at 155–56 (citation modified). That is undoubtedly the case here.

Before the OBBB, the USDA had never set a "required implementation date" that fell before the actual implementing guidance. Pls.' Mot. 5–7. Defendants have not provided a single example of deviation from this ordinary practice. On the other hand, the record established by Plaintiffs demonstrates that the "required implementation date" set forth retroactively in the Guidance Documents upended States' expectations and created chaos as agencies attempted to implement the changes on an impossible timeline. *Id*. The unfair surprise was particularly potent in the case of the Non-Citizen Guidance since the initial guidance was also substantively incorrect. *Id*. at 7–9. Defendants' interpretation of "required implementation date" must therefore be independently denied deference for its failure to provide "fair warning" to States with sufficient time to implement program changes. *Kisor*, 558 U.S. at 579.

Page 15 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**C.**   **Defendants' Attempt to Cut the Exclusionary Period Even Shorter Should Be Denied for Failing to Provide States Adequate Notice as the Regulations Intended**

Looking for an end-run around this Court's ruling, Defendants additionally argue that even if the exclusionary period does not begin until after the Guidance Documents were issued, States should be held accountable for any variances related to the OBBB changes *before* the implementing guidance was issued and until the States formally implemented the change by issuing a statewide notice. Defs.' Cross-Mot. 26, 34–35. Defendants' position is completely divorced from the purpose and practical reality of the regulatory regime and must be rejected for the same reasons as their "required implementation date" is unlawful—it defeats the purpose of the regulation and denies States a full 120-day exclusionary period.

Embedded within the mandated 120-day exclusionary period is a requirement of notice. As explained above, the term "required implementation date" in 7 C.F.R. § 275.12(d)(2)(vii) carries specific obligations for State agencies. An agency must issue its "written statewide notification to its eligibility workers" explaining the new rules and procedures necessitated by the program change, *id.* § 275.12(d)(2)(vii)(E), which includes significant and often complex pre-implementation planning and system changes. *See, e.g. id.* § 271.4 (requiring States to develop training, certify applicant households, issue benefits, and other responsibilities), § 272.3(b) (requiring State agencies to develop operating guidelines and forms). Recognizing the complexity of this process, the FNA, APA, and accompanying regulations generally require that USDA effectuate program changes by regulation with significant notice and clear timelines for compliance. *See* 7 U.S.C. § 2013(c); 5 U.S.C. § 553; 7 C.F.R. § 272.1(g) (requiring an implementation schedule be specified in amendments to regulations). And as described *supra* Section V(B)(1)*,* the regulatory history demonstrates that the USDA intended for statutory changes that are implemented via memorandum rather than regulation to provide the same 120-day exclusionary period, as well as an inferred pre-implementation period allowing States time to prepare.

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

States rely on this notice period, as well as the implementing guidance itself, to ensure they are complying with the law as USDA has interpreted it—and will enforce it through the quality control process—as well as how the statutory changes affect conflicting regulations. *See* Pls.' Mot. 10-13. This is particularly important where, as here, the statutory change is not yet reflected in USDA's regulations and the USDA-approved State Plan of Operation, among other operating guidelines. *See* 7 C.F.R. § 272.2(a)(2) (requiring States to administer the program in compliance with the FNA, regulations, and the FNS-approved State Plan of Operation). State agency staff who are responsible for determining applicants' eligibility and for reviewing the agency's compliance rely on these guidelines to know what the law requires. *See, e.g.*, *id.* § 271.4.

In light of the interwoven obligations and procedures behind the exclusionary period, it would again "seriously undermine the principle that agencies should provide regulated parties fair warning of the conduct a regulation prohibits or requires" to count errors against a State agency without giving it adequate guidance and time to implement. *Christopher*, 567 U.S. at 156. This is especially true where the exclusionary period has not yet even been defined. To illustrate: adopting Defendants' argument would mean that States would be held accountable for errors starting from July 4, 2025 for implementing the ABAWD Guidance, which was issued on October 3, 2025, until they issued their own statewide guidance. But since USDA did not implement the OBBB changes and explain to States how to reconcile changes to the law with existing regulations until October 3, there could be no "variance" for failing to apply OBBB's new ABAWD rules between July 4 and October 3 because federal policy still reflected the pre-OBBB state of the law. It would also be unjust to deprive States of the hold harmless period from a new required implementation date—heretofore defined as July 4, 2025—until the date that they issued their statewide notice because they were then not aware of that deadline and also did not have adequate time to prepare for it. In other words, if the State must formally implement the changes to take advantage of the exclusionary period, they need advanced knowledge of that deadline.

Page 17 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## VI.   The Guidance Documents' Exclusionary Period Is Arbitrary and Capricious

### A.   The Court May Rely on Extra-Record Evidence

Defendants object to Plaintiffs' submission of declarations in support of their argument that the Guidance Documents' exclusionary period is arbitrary and capricious.[3] Defs.' Cross-Mot. 30. In APA actions, agencies are required to "offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public" and it is for that reason that courts ordinarily limit review to the administrative record. *Dep't of Commerce v. New York*, 588 U.S. 752, 785 (2019). But if agencies fail in this duty such that the administrative record is "sparse enough to 'frustrate effective judicial review,'" courts may admit supplemental information relevant to their review. *Forest Serv. Emples. For Envtl. Ethics v. U.S. Forest Serv.*, 796 Fed. Appx. 390, 392 (9th Cir. 2020) (quoting *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973)), *see also Midwater Trawlers Coop v. DOC*, 393 F.3d 994, 1007 (9th Cir. 2004). Plaintiffs and Defendants agree on the circumstances in which a court may admit extra-record evidence:

> (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) "if the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith."

*Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). However, Defendants' argument is premised on an assumption that Plaintiffs submitted declarations under the third exception, when in fact Plaintiffs submitted declarations for the first purpose: to aid the court in understanding the context in which the USDA's action was arbitrary and capricious.

Here, Defendants' administrative record is so sparse that it contains no information except the Guidance Documents themselves and a few regulations and statutes. ECF No. 77. Viewing the administrative record on its own, the Court may have no way of knowing that the USDA's decision to impose a retroactive exclusionary period had departed from its past practice and that States rely

---

[3] Defendants have not objected to the Court's consideration of this evidence for purpose of establishing Plaintiffs' standing.

on USDA guidance and a full 120-day exclusionary period to administer the SNAP program effectively—factors that Plaintiffs argue USDA needed to consider when making its decision. *See* Pls.' Mot. 30–34. Plaintiffs therefore submitted declarations from State agency officials to provide a background against which the Court can assess "whether the process employed by the agency to reach its decision took into consideration all the relevant factors." *Asarco, Inc. v. U.S. EPA,* 616 F.2d 1153, 1161 (9th Cir. 1980); *San Luis & Delta-Mendota Water Auth.*, 776 F.3d 971, 992-93 (9th Cir. 2014).

**B.     Defendants' Calculation of Exclusionary Periods for Changes to SNAP Was Unreasoned and in Contravention of Past Agency Practice**

Defendants raise two arguments to dispute that the Guidance exclusionary period is arbitrary and capricious: (1) the implementation memoranda "did not 'implement' anything," and therefore no explanation from USDA regarding the exclusionary period was required; and (2) the numerous examples cited by Plaintiff States demonstrating that USDA was departing from its previous practice either are distinguishable, or if not distinguishable, should not bind future agency action. Defs.' Cross-Mot. 32–34. On both points, Defendants' arguments miss the mark.

First, Defendants do not dispute that they considered no facts and provided no explanation for arriving at their conclusion that the required implementation date and the effective date of the OBBB are one and the same. *Id*. at 32. That conclusion is legally erroneous for the reasons outlined *supra,* Section V, but it is also arbitrary and capricious because USDA has given "no reasons at all" for its determination that the exclusionary period began retroactively from the date of the enactment of the OBBB, and it cannot be left to the court to "speculate on reasons that might have supported [the] agency's decision." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224, (2016). Because USDA has failed to provide "even that minimal level of analysis," the Guidance Documents' exclusionary period is arbitrary and capricious and cannot carry the force of law. *Id. at 221*.

Second, Plaintiff States provided numerous examples demonstrating that it was USDA's prior practice not to announce a retroactive start date for the exclusionary period. Pls.' Mot. 5–6.

Page 19 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants do not provide any affirmative counterpoints to Plaintiff States' position. They instead attempt to distinguish a couple of the examples cited, pointing to differences such as whether the exclusionary period started on the date of the guidance or implementation memo or some other future date. Defs.' Cross-Mot. 33. This ignores the point of Plaintiff States' argument—it has not been USDA's previous practice to announce a *retroactive* start date for the exclusionary period. Nor does the fact that in one of Plaintiffs' examples a rule had previously set forth the required implementation date in the future support Defendants' argument.

Moreover, Defendants concede that Plaintiff States have pointed to several examples that are indistinguishable. They weakly assert that these cannot establish an ordinary practice without citing any law for such a position. *Id*. at 32. Defendants also complain that their previous actions should not "[f]orever constrain future agency actions." *Id*. at 33–34. Defendants' protestations are beside the point. The change-in-position doctrine asks two questions: (1) whether the agency changed existing policy, which occurs when an agency acts inconsistently with an earlier position; and (2) whether the agency displayed awareness that it was changing position and offered good reasons for the new policy. *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 568 (2025). Plaintiff States have provided uncontroverted evidence that the answer to the first question is yes, and Defendants concede that the answer to the second is an emphatic no.

Finally, because Defendants do not dispute that they considered no facts in their decision to treat the required implementation date the same as the effective date, they necessarily did not consider the States' reliance interests. Plaintiff States relied both on USDA's longstanding practice of issuing implementation guidance prior to the start of the exclusionary period and USDA's *own instruction* to wait to implement. Pls.' Mot. 34. An agency must be cognizant that their actions "may have engendered serious reliance interests," and to "ignore such matters" is arbitrary and capricious. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (internal quotation marks omitted). That is precisely what Defendants did in this circumstance, thereby violating the APA.

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

## VII.     Vacatur and Declaratory Relief Are Appropriate Remedies in This Case

As Plaintiffs' motion explained, the Court should vacate the exclusionary period in each of the four Guidance Documents as vacatur is the presumptive remedy for unlawful agency action. *See* Pls.' Mot. 34–35. Defendants assert that "[t]he Court should not grant vacatur because a vacatur, by definition, sets aside an agency action." Defs.' Cross-Mot. 34. But this case straightforwardly challenges agency actions—the four Guidance Documents—as Defendants could not reasonably dispute. *See New York v. United States Dep't of Energy*, No. 6:25-CV-01458-MTK, 2025 WL 3140578, at *16 (D. Or. Nov. 10, 2025) ("[T]he 'agency action' is the irreducible *thing* over which this Court has authority under section 706 of the APA." (quotation omitted)). Accordingly, vacatur is the appropriate remedy here.

Defendants also claim that any remedy "should vacate only with respect to the Plaintiff States." Defs.' Cross-Mot. 34. But "[p]roviding party-specific relief under the APA would be 'fairly radical and inconsistent with' longstanding practice." *Ass'n of Am. Universities v. Dep't of Def.*, 806 F. Supp. 3d 79, 123 (D. Mass. 2025) (quoting Transcript of Oral Argument at 35, *United States v. Texas*, 599 U.S. 670 (2023) (No. 22-58) (Roberts, C.J.)). Defendants' argument "fundamentally misunderstands vacatur as a remedy." *New York*, 2025 WL 3140578, at *16 (quoting *Ass'n of Am. Universities*, 806 F. Supp. 3d at 121). Unlike an injunction, which acts upon a party and governs that party's conduct, vacatur generally acts upon the agency action itself. Thus, when "the Court has found that particular agency action is contrary to law," it "vacates [the action] in full pursuant to the APA." *New York*, 2025 WL 3140578 at *17.

Defendants' argument that "Plaintiffs are not entitled to a declaratory judgment on the Non-Citizen Guidance," Defs.' Cross-Mot. 34, is wholly based on their mootness argument, and should be rejected for the same reasons. *See supra* Section I. Contrary to Defendants' assertions, "declaratory relief would . . . provide meaningful relief" to Plaintiffs, for the reasons explained above. *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007).

Finally, as explained *supra* Section V(C), the Court should also reject Defendants' request that if the Court vacates the exclusionary period, it should set it to start on the date the USDA sent its guidance and "clarify that USDA may count any variances that occurred before the States implemented relevant changes pursuant to 7 C.F.R. § 275.12(d)(2)(vii)." Defs.' Cross-Mot. 35. Such a ruling would deprive States of fair notice of the deadline to formally implement changes to take advantage of the exclusionary period. Instead, the Court should declare that the USDA must afford States a full 120-day exclusionary period to implement changes *following* issuance of an implementing memorandum, and that they cannot subtract from that exclusionary period based on a State's actual implementation date if the agency did not provide States sufficient time to prepare to implement.

## CONCLUSION

For the foregoing reasons, Plaintiff States respectfully request that the Court grant their motion for summary judgment; deny the Defendants' cross-motion; vacate the Guidance Documents' exclusionary period; declare those exclusionary periods unlawful; declare that the exclusionary period must provide adequate notice to States to implement; declare that LPRs are eligible under the FNA for SNAP benefits, regardless of what status they held prior to becoming LPRs; and declare that the PRWORA five-year ban does not apply to LPRs who are or were members of a Humanitarian Immigrant Group.

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

Dated: May 29, 2026                    Respectfully submitted,

**LETITIA JAMES**                      **DAN RAYFIELD**
Attorney General for the State of New York    Attorney General for the State of Oregon

By: *s/ Molly Thomas-Jensen*           By: *s/ Leanne Hartmann*
Molly Thomas-Jensen                    Leanne Hartmann #257503
Jessica Ranucci                        Brian Simmonds Marshall #196129
*Special Counsel*                      Kirsten Naito # 114684
Rabia Muqaddam                         *Senior Assistant Attorneys General*
*Chief Counsel for Federal Initiatives*    Sara Del Rubin #232414
Gina Bull                              Derek Olson #225504
*Assistant Attorney General*           *Assistant Attorneys General*
28 Liberty St.                         Oregon Department of Justice
New York, NY 10005                     100 SW Market Street
(212) 416-8679                         Portland, OR 97201
molly.thomas-jensen@ag.ny.gov          Telephone: (971) 673-1880
jessica.ranucci@ag.ny.gov              Fax: (971) 673-5000
rabia.muqaddam@ag.ny.gov               Leanne.Hartmann@doj.oregon.gov
gina.bull@ag.ny.gov                    Brian.S.Marshall@doj.oregon.gov
                                       Kirsten.M.Naito@doj.oregon.gov
                                       Sara.DelRubin@doj.oregon.gov
*Counsel for the State of New York*    Derek.Olson@doj.oregon.gov

                                       *Counsel for the State of Oregon*

Page 23 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**ROB BONTA**
Attorney General for the State of California

By: *s/ Robin L. Goldfaden*
Robin L. Goldfaden
*Supervising Deputy Attorney General*
Michael L. Newman
Neli N. Palma
*Senior Assistant Attorneys General*
Marissa Malouff
Kathleen Boergers
*Supervising Deputy Attorneys General*
California Attorney General's Office
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3543
Robin.Goldfaden@doj.ca.gov

*Counsel for the State of California*


**PHILIP J. WEISER**
Attorney General of Colorado

By: *s/ Tanja E. Wheeler*
Tanja E. Wheeler
*Associate Chief Deputy Attorney General*
David Moskowitz
*Deputy Solicitor General*
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6000
Tanja.wheeler@coag.gov
David.moskowitz@coag.gov

*Counsel for Plaintiff State of Colorado*


**WILLIAM TONG**
Attorney General of Connecticut

By: *s/ Patricia E. McCooey*
Patricia E. McCooey
*Assistant Attorney General*
165 Capitol Ave
Hartford, CT 06106
(860) 808-5210
Patricia.McCooey@ct.gov

*Counsel for Plaintiff State of Connecticut*


**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: *s/ Vanessa L. Kassab*
Ian R. Liston
*Director of Impact Litigation*
Vanessa L. Kassab
*Deputy Attorney General*
Rose E. Gibson
*Assistant Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Counsel for Plaintiff State of Delaware*

Page 24 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: *s/ Mitchell P. Reich*
Mitchell P. Reich
*Senior Counsel to the Attorney General*
Office of the Attorney General for the District of
Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 279-1261
mitchell.reich@dc.gov

*Counsel for the District of Columbia*


**KWAME RAOUL**
Attorney General of Illinois

By: *s/ Katharine Roller*
Katharine Roller
*Complex Litigation Counsel*
Alice L. Riechers
*Assistant Attorney General*
115 S. LaSalle St.,
Chicago, Illinois 60603
(773) 519-1842
Katharine.Roller@ilag.gov

*Counsel for Plaintiff State of Illinois*


**ANNE E. LOPEZ**
Attorney General for the State of Hawai'i

By: *s/ Kaliko'onālani D. Fernandes*
David D. Day
*Special Assistant to the Attorney General*
Kaliko'onālani D. Fernandes
*Solicitor General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawai'i*


**AARON M. FREY**
Attorney General for the State of Maine

By: *s/ Brendan Kreckel*
Brendan Kreckel
By: */s/ Kristin Trabucchi*
Kristin Trabucchi
*Assistant Attorneys General*
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel.: 207-626-8800
Fax: 207-287-3145
Brendan.kreckel@maine.gov
kristin.k.trabucchi@maine.gov

*Counsel for the State of Maine*

Page 25 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**ANTHONY G. BROWN**
Attorney General of Maryland


By: *s/ Yasmin Dagne*
Yasmin Dagne
*Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-223-1580
ydagne@oag.state.md.us


*Counsel for Plaintiff State of Maryland*


**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts


By: *s/ Michelle Pascucci*
Katherine Dirks
*Chief State Trial Counsel*
Michelle Pascucci
*State Trial Counsel*
Jak Kundl
*Assistant Attorney General*
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
(617) 963-2255
Michelle.Pascucci@mass.gov


*Counsel for the Commonwealth of Massachusetts*


**DANA NESSEL**
Attorney General of Michigan


By: *s/ Daniel Ping*
Daniel Ping
Neil Giovanatti
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
PingD@michigan.gov
GiovanattiN@michigan.gov


*Counsel for the State of Michigan*


**KEITH ELLISON**
Attorney General for the State of Minnesota


By: *s/ Joseph R. Richie*
Joseph R. Richie
*Special Counsel*
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-0921
joseph.richie@ag.state.mn.us


*Counsel for the State of Minnesota*

Page 26 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**AARON D. FORD**
Attorney General of Nevada

By: s/ K. Brunetti Ireland
K. Brunetti Ireland
*Chief of Special Litigation*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov

*Counsel for the State of Nevada*


**JENNIFER DAVENPORT**
Attorney General of New Jersey

By: s/ Kashif T. Chand
Kashif T. Chand
*Assistant Attorney General*
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov

*Counsel for Plaintiff State of New Jersey*


**RAÙL TORREZ**
Attorney General of the State of New Mexico

By: s/ Lauren Perry
Lauren Perry
*Assistant Attorney General*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
505-270-4332
lperry@nmdoj.gov

*Counsel for the State of New Mexico*


**JEFF JACKSON**
Attorney General of North Carolina

By: s/ Daniel P. Mosteller
Daniel P. Mosteller
*Associate Deputy Attorney General*
Laura Howard
*Chief Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
dmosteller@ncdoj.gov

*Counsel for the State of North Carolina*


**PETER F. NERONHA**
Attorney General of Rhode Island

By: s/ Marissa D. Pizaña
Marissa D. Pizaña
*Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
(401) 274-4400
MPizana@riag.ri.gov

*Counsel for the State of Rhode Island*


**CHARITY R. CLARK**
Attorney General of Vermont

By: s/ Ryan P. Kane
Ryan P. Kane
*Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.kane@vermont.gov

*Counsel for Plaintiff State of Vermont*

Page 27 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**JAY JONES**
Attorney General of the Commonwealth of
Virginia

By: *s/ Tillman J. Breckenridge*
Tillman J. Breckenridge
*Solicitor General*
Mikaela A. Phillips
*Assistant Solicitor General*
Office of the Attorney General
202 N. 9th Street
Richmond, Virginia 23219
Tel: (804) 786-7704
solicitorgeneral@oag.state.va.us
mphillips@oag.state.va.us

*Counsel for Plaintiff the Commonwealth of
Virginia*


**JOSHUA L. KAUL**
Attorney General of Wisconsin


By: *s/ Karla Z. Keckhaver*
Karla Z. Keckhaver
*Assistant Attorney General*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-6365
karla.keckhaver@wisdoj.gov

*Counsel for Plaintiff State of Wisconsin*


**NICHOLAS W. BROWN**
Attorney General of Washington

By: *s/ William McGinty*
William McGinty
Niya Tawachi
*Assistant Attorneys General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
william.mcginty@atg.wa.gov
niya.tawachi@atg.wa.gov


*Counsel for Plaintiff State of Washington*

Page 28 – PLAINTIFF STATES' OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047