BRETT A. SHUMATE
Assistant Attorney General, Civil Division
ERIC J. HAMILTON
Deputy Assistant Attorney General
TYLER J. BECKER
Counsel to the Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director, Federal Programs Branch
MICHAEL BRUNS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: 202-514-4011
Email: michael.bruns@usdoj.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>            *Plaintiffs,*<br>    v.<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture; and U.S. DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>            *Defendants* | Case No. 6:25-cv-02186-MTK<br><br>**REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT** |

REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

MEMORANDUM OF LAW ........................................................................................... 1

Argument ............................................................................................................................ 3

I.      Challenges to the Non-Citizen Guidance is Moot ................................................... 3

II.     The Guidances are not Final Agency Action Because They did not Determine
        Rights, Obligations, or Legal Consequences ........................................................ 4

III.    The Challenged Guidances are Not Contrary to Law .......................................... 6

        A.      The Non-Citizen Guidance is Not Contrary to Law because It Does Not
                Purport to Change SNAP Eligibility............................................................ 6

        B.      The Exclusionary Period Running from Passage of the OBBB is not
                Unlawful Because the SNAP Eligibility Changes were "Implemented" on
                Passage of the OBBB............................................................................... 8

IV.     The Challenged Guidances are Not Arbitrary and Capricious ......................... 17

        A.      Plaintiffs' declarations cannot be used to determine the correctness or
                wisdom of the agency's actions ............................................................ 17

        B.      The Non-Citizen Guidance is Not Arbitrary and Capricious Because it
                Does not Purport to have the Effect Plaintiffs Allege.......................... 19

        C.      Exclusionary Period.................................................................................. 19

V.      Neither Vacatur nor a Declaratory Judgment is Appropriate ......................... 21

Conclusion ........................................................................................................................ 22

**TABLE OF AUTHORITIES**

## <u>Cases</u>

*Asarco, Inc. v. U.S. EPA*,
   616 F.2d 1153 (9th Cir. 1980) ...................................................................................... 18

*Bennett v. Spear*,
   520 U.S. 154 (1997)...................................................................................................... 4

*Bottinelli v. Salazar*,
   929 F.3d 1196 (9th Cir. 2019) ...................................................................................... 10

*Camp v. Pitts*,
   411 U.S. 138 (1973)...................................................................................................... 17

*Encino Motorcars, LLC v. Navarro* ,
   579 U.S. 211 (2016)...................................................................................................... 20

*FDA v. Wages & White Lion Invs., LLC*,
   604 U.S. 542 (2025)................................................................................................... 2, 20

*FCC v. Fox Television Stations*, *Inc.*,
   556 U.S. 502 (2025)...................................................................................................... 20

*Gator.com Corp. v. L.L. Bean, Inc.*,
   398 F.3d 1125 (9th Cir. 2005) ...................................................................................... 3

*Gozlon-Peretz v. United States*
   498 U.S. 395 (1991)................................................................................................... 9, 10

*Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.*,
   893 F.2d 1012 (9th Cir. 1989) ...................................................................................... 21

*Kisor v. Wilkie*,
   588 U.S. 558 (2019)................................................................................................. 10, 14

*Lands Council v. Powell*,
   395 F.3d 1019 (9th Cir. 2005) ...................................................................................... 18

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994)...................................................................................................... 21

*Midwater Trawlers Cooperative v. Department of Commerce*,
   393 F.3d 994 (9th Cir. 2004) ........................................................................................ 18

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
   465 F.3d 977 (9th Cir. 2006) ........................................................................................ 5

*San Luis & Delta-Mendota Water Auth. v. Locke*,
    776 F.3d 971 (9th Cir. 2014) ...................................................................... 17, 18

*Singh v. Clinton*,
    618 F.3d 1085 (9th Cir. 2010) .......................................................................... 19

*Motor Vehicle Mfrs. Ass'n. of U.S. Inc. v. State Farm Mut. Automobile Ins. Co.*,
    463 U.S. 29 (1983)............................................................................................ 20

*Super Tire Eng'g Co. v. McCorkle*,
    416 U.S. 115 (1974)........................................................................................... 22

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
    100 F.3d 1443 (9th Cir. 1996) .......................................................................... 18

*United States v. Neal*,
    776 F.3d 645 (9th Cir. 2015) ............................................................................ 10

## Statutes

7 U.S.C. § 2025(c)(3)(A) ........................................................................... 8, 9, 13

One Big Beautiful Bill Act,
    Pub. L. No. 119-21, 139 Stat. 72, 332 (2025)........................................................ 11

## Regulations

7 C.F.R. § 275.12 ........................................................................... 1, 13, 16, 19

Food Stamp Program: Quality Control Provisions of the Mickey Leland Childhood Hunger Relief Act,
    62 Fed. Reg. 29,652 (June 2, 1997) ...................................................................... 13

Supplemental Nutrition Assistance Program: Quality Control Provisions of Title IV of Public Law 107-171,
    75 Fed. Reg. 33,422-01 (June 11, 2010).................................................................. 13

Employment and Training Program Monitoring, Oversight and Reporting Measures
    89 Fed. Reg. 90,547 (November 18, 2024) .......................................................... 11

## Other Authorities

*Implement*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1985) ............................... 8, 9, 10

*Implement*, Merriam-Webster,
https://www.merriam-webster.com/dictionary/implement .................................................. 8, 9, 10

-Page iii- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

**MEMORANDUM OF LAW**

This case can be decided by determining when a statute, here the One Big Beautiful Bill ("OBBB"), requires compliance. When a statute is effective, and calls for no implementing regulations or agency actions, those subject to the statute must comply forthwith. Here, the OBBB made changes to Supplemental Nutrition Assistance Program ("SNAP") eligibility, and was silent as to any implementing regulation or action by the Department of Agriculture ("USDA"); States are thus required to implement those statutory changes in their administration of SNAP. Plaintiffs ask this Court to excuse them from complying with a statute enacted by Congress, which was immediately effective, and imposed eligibility changes, on the basis of a claimed need for agency guidance of matters that are entirely clear from the statute itself. No such relief is warranted, and the Court should grant summary judgment to the government.

USDA regulations require the variance exclusion period to begin on the "required implementation date." 7 C.F.R. § 275.12(d)(2)(vii). The parties agree that the OBBB was immediately effective when passed and did not call for any implementing regulations. Pl. States' Opp'n to Defs.' Cross Mot. for Summary J., at 1, ECF No. 95 ("MSJ Opp."). The "required implementation date" is the date the OBBB passed. Yet, Plaintiffs persist that the OBBB could have no effect on them unless and until the USDA issued an implementing memorandum setting forth guidance. Per Plaintiffs, if USDA never issued a memorandum, then it would be as if the OBBB never passed, and they would not be responsible for any errors until USDA issued implementing guidance.

Plaintiffs argue that it is unfair to hold them accountable for responding to a change in the law. But USDA is more than fair. When there is *any* change in SNAP eligibility that requires State implementation, a USDA regulation provides the State with a 120-day variance exclusion period

-Page 1- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

where errors are not assessed against them. Accordingly, Plaintiffs had 120 days from passage of the OBBB to implement changes and be held free from error.

Because the regulations provide a 120-day variance period for changes in SNAP eligibility, Plaintiffs' theory—that they should receive an exclusionary period starting at the date of the Guidances—might hold water if those Guidances had any legal effect. But they don't have legal effect. They simply memorialize the OBBB's statutory changes. Plaintiffs do not seriously contest that the Guidances merely parrot the OBBB. So not only do these Guidances not trigger a new exclusionary period: they are also not final agency actions.

On the merits, Plaintiffs continue to place weight on a "past agency practice" of setting an implementation date after passage of a statute. This alleged "practice" is evidenced by six examples, some of which can be distinguished, spread over the course of twenty years. Typically, when Courts find a past agency practice, there is a formal statement of the agency's position or a continuous enforcement practice. *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 568 (2025). It is unreasonable to rely on six agency actions, taken years apart, as USDA's formal position on implementation.

Finally, the Court should flatly reject Plaintiffs' attempts to preclude implementation of the OBBB until new USDA Guidance is issued. Everyone has understood that Plaintiffs were not "asking for a grace period to implement." Transcript of Proceedings at 119:22-25, *New York v. Rollings* ("PI Tr.") . But by requesting an order to exclude any variances until new USDA Guidance is issued, Plaintiffs grant themselves an almost yearlong grace period from when the OBBB was passed, or at least a six-month grace period from when the USDA Q&A was issued. This result is unwarranted.

-Page 2- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

**ARGUMENT**

**I.     <u>Challenges to the Non-Citizen Guidance is Moot</u>**

Plaintiffs' APA challenges to the substantive content of the Non-Citizen Guidance (Claims 1 and 2) are moot because the Q&A clarified ambiguities, to the extent they existed, about Lawful Permanent Resident ("LPR") eligibility for SNAP benefits. A claim becomes moot if "changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *Gator.com Corp. v. L.L. Bean, Inc*., 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc) (citation omitted). And the parties have agreed that LPRs, regardless of their prior status, are eligible for SNAP benefits. USDA's consistent position was confirmed by the Q&A—and only a misinterpretation of the Non-Citizen Guidance without the Q&A would lead to a conclusion that some LPRs are not eligible for SNAP benefits.

Plaintiffs argue that the substantive content of the Non-Citizen Guidance is not moot because the Court could "provide effective relief to the Plaintiff States in the form of a declaratory judgment that clarifies non-citizen eligibility for SNAP following the OBBB." MSJ Opp. at 2. The agency has already clarified non-citizen eligibility for SNAP via the Q&A. Plaintiffs agree that the Q&A resolves any error. ECF 80 at 22-23. There is nothing left for the Court to do.

Plaintiffs also argue that there is a live controversy because Defendants defended the Non-Citizen Guidance as lawful and ask the Court to set any exclusionary period from the date the Non-Citizen Guidance issued (October 31, 2026). MSJ Opp. at 2. The Non-Citizen Guidance is lawful, because only a misinterpretation could lead to the conclusion that a subset of LPRs is not eligible for SNAP. *See infra* Section III.A. This is the reason that USDA did not issue "corrected" Non-Citizen Guidance or state that the Q&A was meant to correct the Non-Citizen Guidance (MSJ Opp. at 2); the Non-Citizen Guidance was always correct. And while the Non-Citizen Guidance was always correct, there can be *no* misinterpretation after the Q&A issued, which further renders the

-Page 3- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

claims moot. Accordingly, the only issue for the Court to decide is whether Claims 1 and 2 were always moot, or were mooted by the Q&A.

Finally, Plaintiffs argue that USDA is likely to "revert to [its] old conduct." *Id.* at 3. The Court should disregard that argument—Plaintiffs provide no evidence that the Government will adopt an interpretation of USDA eligibility that it never took, and Plaintiffs do not address or rebut any of the *Rosebrock* factors in the Government's brief. *See* ECF 92 at 17. Put simply, there is no "old conduct" to revert to, as USDA never excluded certain LPRs from SNAP eligibility.

Accordingly, the Court should find Claim 1 and Claim 2 moot.

## II.     The Guidances are not Final Agency Action Because They did not Determine Rights, Obligations, or Legal Consequences

The Guidances are not final agency actions because they do not determine "rights or obligations" or cause "legal consequences" to "flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). In their MSJ, Defendants argued that the Guidances were not final agency action because "[n]one of the challenged Guidances have an actual legal effect." ECF 92 at 19 (quotations omitted). Defendants then carefully compared the legal effects of the OBBB with the language in each Guidance to demonstrate that the various Guidances simply restated the language of the OBBB. *Id.* at 19-22.

In response, Plaintiffs misconstrue Defendants' arguments and fail to articulate why each Guidance led to an "actual legal effect." MSJ Opp. at 3-4 (citation omitted).

First, Plaintiffs portray Defendants' arguments as restricting final agency action to those actions that "add[] nothing new to Plaintiffs' obligations beyond what OBBB provided." *Id.* at 4 (citation omitted). Plaintiffs then make the move to equate that statement with the assertion that a final agency must "alter[] the legal regime." *Id.* (citing Ninth Circuit's holdings rejected limiting final agency action to only those that alter a legal regime). Plaintiffs argue Defendants should have

applied *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 986 (9th Cir. 2006), which examines whether there is a legal effect—an effect on the day-to-day operations or an expectation of immediate compliance. *Id.*

But Defendants never argued that there is only a final agency action where the action alters the legal regime. *See* ECF 92 at 18-19. Rather, Defendants *did* cite and apply *Oregon Natural Desert Association*: "In determining whether an agency's action is final, we look to whether the action amounts to a definitive statement of the agency's position or has a direct and immediate effect on the day-to-day operations of the subject party, or if immediate compliance with the terms is expected." *Id.* at 18 (quoting *Or. Nat. Desert Ass'n*, 465 F.3d at 982.). And as explained in Defendants' brief, none of the Guidances had a direct and immediate effect or demanded immediate compliance with their terms, because the Guidances merely restated the previous effects of the OBBB. *Id.* at 19-21.

Second, Plaintiffs never grapple with Defendants' analysis of the various Guidances and their comparison to OBBB obligations. Defendants compared the text of the OBBB with the statements in the Guidances and showed that the Guidances merely restated the obligations set by the OBBB. *Id.* Plaintiffs do not address this argument and thus waived it.

Instead, Plaintiffs state, without support, that the Guidance Documents "clarified issues not addressed by OBBB, such as whether to implement at certification or across an agency caseload." MSJ Opp. at 4. Plaintiffs never allege that these "clarified issues" would have a "direct and immediate effect on the day-to-day operations of the subject party." *Or. Nat. Desert Ass'n*, 465 F.3d at 982 (citations omitted). Nor could they. At best, these so called "issues" are merely ministerial requirements to submit variance data. And these issues are not those challenged in this litigation. Plaintiffs do not show finality with respect to SNAP eligibility or exclusionary periods.

-Page 5- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

Finally, Plaintiffs argue that the Court *must* treat the Guidances as final agency action because it is the only way the Court can reach the "the very question[s] Plaintiffs pose[:]" whether the exclusionary period arises as a result of the statute or as a result of the Guidance and whether the Non-Citizen Guidance violates the OBBB or is compelled by the OBBB. MSJ Opp. at 4-5. Plaintiffs have it backwards. These disputes are the heart of whether the challenged Guidances are final agency actions, not whether the Guidances were contrary to law or arbitrary and capricious. Because if the OBBB *does* compel the exclusionary period to start on its enactment, and the OBBB similarly compels the substance of the Non-Citizen Guidance, then by definition the Guidances could not be final agency actions because they did not have a legal effect of changing the exclusionary period or SNAP eligibility. The only source of the legal effect would be the OBBB itself. Plaintiffs' quarrel is with Congress, not USDA.

### III.    The Challenged Guidances are Not Contrary to Law

Even if the Court reaches the substance of the Guidances, those documents comport with all statutory requirements. The Non-Citizen Guidance matches the OBBB's statutory requirements for SNAP eligibility. The exclusionary period starting at the passage of the OBBB is mandated by law because USDA regulations require the start of the exclusionary period at the "implementation date," and "implementation" means when something is given practical effect.  Since the OBBB was self-effectuating, the statute imposed its own practical effect.

#### A.    The Non-Citizen Guidance is Not Contrary to Law because It Does Not Purport to Change SNAP Eligibility

The Non-Citizen Guidance did not change SNAP eligibility from what is provided by the OBBB, so it cannot be contrary to law. First, it affirmatively states that LPRs are "[e]ligible after a 5-year waiting period, as long as they meet all other SNAP financial and non-financial eligibility requirements." Ex. A at 2, ECF No. 1-1. This statement is not modified to exclude certain groups

-Page 6- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

within the larger LPR subset. There is no basis to interpret that statement to arbitrarily exclude certain groups. Second, the Guidance did not change the legal entitlements to SNAP of Humanitarian Immigrant Groups[1] simply by omitting them from a list of groups exempt from the PRWORA's five-year waiting period. This attachment was meant to be an easy reference to flag the most common exceptions to the general rule ("LPRs may still be eligible . . ."). *Id.* An omission that does not change the legal rights or status of a group could not be said to be unlawful.

Plaintiffs argue that the subsequent issuance of Q&A documents shows that the Non-Citizen Guidance was erroneous. MSJ Opp. at 5. Again, there is a difference between a correction and a clarification, and the Q&A documents were a clarification. The Non-Citizen Guidance was not erroneous, but upon learning that the Plaintiff States found the Non-Citizen Guidance ambiguous, USDA clarified the Non-Citizen Guidance to resolve those perceived ambiguities. However, Plaintiff States should not have misread the Guidance given its explicit statement that LPRs are eligible for SNAP benefits. ECF No. 1-1 at 1. Similarly, the omission of Humanitarian Immigrant Groups in the reference chart should not have induced any confusion because the reference chart did not purport to be comprehensive.

Plaintiffs also argue that the original December 9 Q&A "doubled down" on the alleged legal error of excluding a subsection of Humanitarian Immigrant Groups from being exempt from PRWORA's 5-year waiting period. MSJ Opp. at 5-6. As Defendants explained, this was a typo—instead of "no," the December 9 Q&A stated "yes" that Victims of Severe Trafficking were subject to PRWORA's 5 year period. In no way could a typo be "doubling down" on a position, especially because, unprompted, USDA issued a correction the very next day.

---

[1] "Humanitarian Immigrant Groups" refers to Refugees, Individuals Granted Asylum, Deportation Withheld, Certain Afghan and Ukrainian Parolees, Iraqi and Afghan Special Immigrants (SIV), and Victims of Severe Trafficking

-Page 7- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

Throughout the entire litigation, the parties have agreed on the SNAP eligibility rules. This further underscores the scope and import of the USDA Non-Citizen Guidance.

**B.      The Exclusionary Period Running from Passage of the OBBB is not Unlawful Because the SNAP Eligibility Changes were "Implemented" on Passage of the OBBB.**

The exclusionary period for the changes to SNAP eligibility starts at the date the changes to SNAP eligibility began: the enactment of the OBBB. To hold otherwise would condition the effects of a validly passed Federal law on ministerial actions taken by an Executive agency. This accords with USDA regulations,[2] which use the word "implementation date:" the plain meaning of the word "implement" is "to give practical effect to and ensure of actual fulfillment by concrete measures." *Implement*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1985); *accord* https://www.merriam-webster.com/dictionary/implement (accessed June 11,  2026). As explained in Defendants MSJ, this interpretation accords with the USDA handbook and with the use of "implement" in other regulations. ECF 92 at 24-29.

1.      <u>Absent Clear Congressional Intent, Implementation Date is the Effective Date</u>

Plaintiffs first argue that effective date and implementation date cannot be the same thing. MSJ Opp. at 8. In doing so, they cite this Court's opinion that "implementation date" and "effective dates" are terms of art. *Id.*

But in this preliminary ruling, the Court did not have, nor did it address, the two pieces of the puzzle Defendants lay out in their MSJ. First, the plain meaning of "implement" is "to give

---

[2] Plaintiffs do not address Defendants' arguments that the statutory exclusionary period of 7 U.S.C. § 2025(c)(3)(A) does not apply because it only excludes errors resulting from the application of new regulations. *Id.* ("Any errors resulting in the application of new regulations promulgated under this chapter during the first 120 days from the required implementation date for such regulations."). Accordingly, Plaintiffs concede that the statute does not apply.

practical effect." *Implement*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1985). And what gave effect to the OBBB? *Gozlon-Peretz v. United States* provides the answer: "absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment."  498 U.S. 395, 404 (1991) (citation omitted). So, because the OBBB gave itself effect, that was the day of implementation

Plaintiffs admit that the OBBB was self-effectuating. MSJ Opp. at 1. Yet Plaintiffs persist that it's an open question of "at what point States are required to have formally implemented changes" from the OBBB "such that the federal government can hold them to account for making mistakes in applying the changes." *Id.* at 9. In doing so, Plaintiffs demand that Federal laws require something more to be effective. But that cannot be the law, otherwise the Executive could choose to effectuate laws by fiat.

2.     The Court should interpret "Implementation Date" to be the date there is a legal effect.

The plain meaning of implementation date, the use of implementation in the FNS Handbook,[3] and the use of "implement" in other contexts mandates interpreting "implementation date" as the time there is a legal effect. *See* ECF 92 at 24-29. And as applied to this case, the legal effect occurred on the passage of the OBBB, and thus the exclusionary period starts at that implementation date. *Id.*

These tools of construction render the meaning of "implementation date" unambiguous. And because the meaning of "implementation date" is unambiguous, the court need not defer to USDA's interpretation. But as stated in Defendants' brief, if the meaning of the regulation remains ambiguous, the Court should defer to USDA's interpretation, under the doctrine known as *Auer*

---

[3] On June 1, 2026, the Food and Nutrition Service (FNS) because Food and Nutrition Administration (FNA).

deference. *Kisor v. Wilkie*, 588 U.S. 558, 563 (2019). And contrary to Plaintiffs' implications, *Auer* deference remains alive and well. *Id.* ("The only question presented here is whether we should overrule those decisions, discarding the deference they give to agencies. We answer that question no. *Auer* deference retains an important role in construing agency regulations.")

i.   <u>Implementation Date Unambiguously Means Effective Date</u>

As explained in Defendants MSJ, the canons of regulatory construction unambiguously resolve the meaning of "implementation date" to mean when something is effective, in this case, the OBBB's effective date. ECF 92 at 24-29.

First, the plain meaning of "implementation" supports USDA's interpretation. Plaintiffs do not rebut, or even address, that "[courts] interpret [regulatory] terms in accordance with their ordinary meaning, unless the statute clearly expresses an intention to the contrary." *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015) (citation omitted). The "analysis can begin and end with [the regulatory] text." *Bottinelli v. Salazar*, 929 F.3d 1196, 1199 (9th Cir. 2019). And here, "implement" is defined as "to give practical effect to and ensure of actual fulfillment by concrete measures." *Implement*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1985); *accord* https://www.merriam-webster.com/dictionary/implement (last accessed June 11, 2026). Because the OBBB was self-effectuating, *Gozlon-Peretz*, 498 U.S. at 404, the day of enactment of the OBBB was the implementation date for the regulations.

Plaintiffs' proposed interpretation is critically flawed because they do not provide a contrary definition of implement, let alone address the plain meaning. Instead, while they adopt USDA's definition of "implement" (MSJ Opp. at 10-11), Plaintiffs argue that the OBBB's effective date does not tell them when a State is "required" to implement. *Id.* In their view, despite Congress's unambiguous language in the OBBB, only USDA can tell when implementation is "required" through an implementing memorandum. *Id.*

-Page 10- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

But this places USDA above Congress and makes statutory requirements contingent on agency action. If Congress had intended for OBBB changes to require further implementation by USDA, it could have said so, as it did for other changes within the OBBB. *See* One Big Beautiful Bill Act, Pub. L. No. 119-21, 139 Stat. 72, 332 (2025) ("The Administrator of the Centers for Medicare & Medicaid Services shall implement this section"). To support their view, Plaintiffs cite a different USDA rule involving a different statute where USDA action was required and mandated by Congress to effectuate the law. MSJ Opp. at 12 (citing Supplemental Nutrition Assistance Program (SNAP): Employment and Training Program Monitoring, Oversight and Reporting Measures 89 Fed. Reg. 90,547 (November 18, 2024)); *id.* at 90,550 ("The Department was statutorily required to issue an interim final rule implementing the provisions of section 4022 (c) of the Act within 18 months of enactment"). The OBBB, by contrast, is silent on any need for USDA implementation. The Court should not read additional requirements into OBBB implementation. Put simply, Plaintiffs were required to implement on the day the OBBB passed. And with the benefit of a 120-day variance exclusion period to follow the OBBB's passage, Plaintiffs have a more reasonable period to comply.

Next, Plaintiffs contend that USDA's use of "effective date" and "implementation date" within its regulations counsel distinguishing between effective dates and implementation dates. MSJ Opp. at 12. But Plaintiffs' examples are in the context of Final Rules that were promulgated by USDA. Because USDA was promulgating its own regulations and requirements, USDA was free to distinguish between an effective date and an implementation date. But in the OBBB, Congress did not. As such, the effective date and required implementation date were the same.

Plaintiffs invoke the canon of construction that every provision of a regulation should be given meaning, and that USDA's interpretation would render "implementing memorandum"

-Page 11- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

meaningless if the required implementing date was keyed off a statutory change. *Id.* But to the contrary, USDA's interpretation does give effect to every word of the regulation. Because in some cases, a statute may cause a legal change, and in that case, the required implementation date is the day the law becomes effective. And in other cases, USDA may act within its regulatory authority and issue guidance that contains legal effects: in this case, such guidance would be an implementing memorandum, and the date of the guidance (or date set in the guidance) would be the implementing date. Thus, in that scenario, the phrase "implementing memorandum" retains meaning.

Plaintiffs then rely on the regulatory history and an alleged "intent" of the regulation to support requiring an implementing memorandum for variance exclusion to begin. *Id.* at 12-14. Neither help. First, Plaintiffs point out that SNAP changes frequently occur via regulatory changes, and that in these cases, USDA at times permits a separate implementation date from the effective date. *Id*. at 13. That may be true, but in contrast to Plaintiffs' examples, the SNAP changes at issue here did not arise in the regulatory context, but rather in the statutory context. And the implementing statute, the OBBB, did not call for any implementing regulations. So, Congress meant for these changes to SNAP to be implemented on the date the OBBB became effective, making the date of the OBBB enactment the "required implementation date."

Second, Plaintiffs point to language in a previous version of the regulation, that an implementing memorandum may be sent to advise States of a change in Federal law. *Id.* Plaintiffs omit critical language from this past regulation: "any variance **resulting from application** of a new Program regulation or implementing memorandum (if one is sent to advise State agencies of a change in Federal law, in lieu of regulations during the first 120 days from the required implementation date." 62 Fed. Reg. 29,652, 29,659 (June 2, 1997) (emphasis added). This past

-Page 12- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

regulation would only apply (back then) if there was a change from *application* of the implementing memorandum. And here, the implementing memorandum did nothing. *See supra* at II. Rather, the change came from application of the change in statute.

But even if Plaintiffs had the right of it with respect to this past regulation, it wouldn't matter because this is not the regulation that is being applied today. The parenthetical on which Plaintiffs rely was removed in the present version of 7 C.F.R. § 275.12(d)(2)(vii). And the fact that it was removed shows that USDA does not presently intend for the required implementation date to trigger off a ministerial, informative memorandum rather than the effective date of the statute.

Finally, Plaintiffs point to the explanatory statement in the last amendment to 7 C.F.R. § 275.12, MSJ Opp. at 13-14. "The legislative provision authorizing the variance exclusion is specific in applying it to regulatory implementation. The Department's extension of that to implementation of legislative provisions is driven by the fact that many legislative provisions are effective immediately, prior to any regulation being published." 75 Fed. Reg. 33,422, 33,434 (June 11, 2010). But this explanation supports USDA's interpretation. As set out in USDA's MSJ, 7 U.S.C. § 2025(c)(3)(A) only applies to regulatory changes. And so, by regulation, USDA "extend[ed]" exclusion variance periods to the "implementation of legislative provisions" because "many legislative provisions are effective immediately." *Id.* Thus, USDA recognized that States would be required to implement statutory changes that were effective immediately without the benefit of a variance exclusion period, and the agency extended the availability of a variance exclusion period to legislative changes to give States time to implement correctly.

### ii.   Defendant's interpretation is reasonable

Because there is only one reasonable construction of the regulation, the Court need not decide whether USDA's interpretation is reasonable under *Kisor*. *See Kisor*, 588 U.S. at 575. But

-Page 13- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

if the Court concludes that the regulation is ambiguous after applying tools of regulatory construction. *See id.* Under USDA's interpretation, whenever a State's SNAP program is legally affected by either a congressional law, regulation, or a USDA memorandum, the State is entitled to a 120-day exclusionary period starting when the State is legally affected. And where there is no legal effect, there is no exclusionary period. That interpretation is both practically administrable and fair—States have 120 days to implement and correct any errors in implementation, and States and the USDA have a bright line date for when this exclusion period starts. Indeed, Plaintiffs agree that it is "preferable to make the 'required implementation date' sync with the date that a change in law becomes effective," MSJ Opp. at 14, and acknowledge that where this isn't the case "statutes often set forth an effective date in the future or require implementing regulations to be issued on a slower timeline." *Id.* Notably, the OBBB did not put forward an effective date in the future or require implementing regulations, supporting the conclusion that Congress intended the required implementation date to be the OBBB date of enactment.

Plaintiffs put forward four reasons that USDA's interpretation is unreasonable: 1) that States would have to implement changes immediately after a law's passage without the benefit of USDA guidance; 2) that USDA took months to issue the Guidances after the OBBB passed; 3) that the rule is retroactive; and 4) because the interpretation upends State reliance interests. MSJ Opp. at 14-15.[4] None of these reasons, separately or together, make USDA's interpretation unreasonable.

First, it should be uncontroversial that when Congress passes a law and does not make compliance contingent on any future event, States need to comply with that law. But Plaintiffs

---

[4] Plaintiffs do not contest that the other facts of *Auer* deference are met here: that the interpretation is one made by the agency and that the interpretation reflects USDA's substantive experience. *Kisor*. 588 U.S. at 575. USDA made the interpretation in its Guidances to agencies, and it falls within its substantive experience because it is the agency that promulgated, interprets, and applies the regulation.

-Page 14- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

appear to argue that they are somehow entitled to USDA guidance, or that USDA guidance is needed to comply with the law: Plaintiffs point to no source for the right to USDA guidance or how the challenged Guidances obviated any confusion around the OBBB. *See* MSJ Opp. at 14. Indeed, Plaintiffs have never alleged that they are currently unable to implement OBBB SNAP changes after the issuance of the Guidances. It is strange that the Guidances could have resolved any confusion, however: as explained in USDA's MSJ, the Guidances merely reiterate and repeat the language of the OBBB. *See* ECF 92 at 19-22. If Plaintiffs were correct, they could allege confusion anytime there was a change in SNAP eligibility and not implement until things were, in Plaintiffs view, appropriately clarified.

Second, the fact that USDA did not issue the challenged Guidances until months after the OBBB has no bearing on whether it was "impossible" to implement the OBBB provisions. MSJ Opp. at 14. Plaintiffs cannot point to any complex or novel interpretations or resolutions of difficult SNAP eligibility issues within the challenged Guidances, so there is no basis to conclude that the timing of the Guidances had anything to do with the difficulty of implementing the OBBB.

Third, contrary to Plaintiffs' assertions, neither the regulation nor the OBBB are retroactive. The OBBB was effective on its passage, and that is the date the States were required to implement. The regulation provides 120 days from that required implementation date for variance exclusion. None of these legal effects occurred "retroactively" from passage of a law, regulation, or from an agency action.

Finally, Plaintiffs' alleged reliance interest is unsupported. They cite USDA's "ordinary practice" of setting a required implementation date on or after an implementing memorandum. MSJ Opp. at 15. This ordinary practice is anything but. As an initial matter, Plaintiffs cannot point to a law, regulation, or official position ever taken by USDA that an implementing memorandum

-Page 15- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

is required to effectuate a self-effectuating law. And as stated in USDA's MSJ, the fact that Plaintiffs can only point to six examples, some of which can be distinguished, over twenty years does not establish an "ordinary practice." ECF 92 at 32-34.

### iii. Plaintiffs Are Not Entitled to a Variance Beyond What Is Provided by the Regulation

The variance exclusionary period should begin the date the OBBB passed. But while reservering all rights, and as USDA requested in its MSJ, should the Court vacate the exclusionary period, it should set the exclusionary period as beginning on the day USDA sent its Guidance (*see* SUA Guidance (Aug. 29, 2025) GOV000014–17; Non-Citizen Guidance (Oct. 31, 2025) GOV000018–28 [or at the very least December 10, 2025 for the Q&A]; ABAWD Guidance (Oct.. 3, 2025), GOV000008–13) and ending 120 days after the relevant starting period.

If the variance exclusion periods are so set, USDA also requests the Court also clarify that USDA may count any variances that occurred before the States implemented the relevant changes pursuant to 7 C.F.R. § 275.12(d)(2)(vii). This request is supported by the regulation: States are only entitled to variance exclusions on "any action taken on a case directly related to [the] implementation of a covered provision during the 120-day exclusionary period." 7 C.F.R. § 275.12(d)(2)(vii). And the State agency "shall not exclude variances which occur prior to the States implementation." *Id.* § 275.12(d)(2)(vii)(B). And the State's implementation "occurs on the effective date of State agency's written statewide notification to its eligibility workers." *Id.* § 275.12(d)(2)(vii)(E). Said simply: States can exclude variances during the variance exclusion period if and only if they have implemented the OBBB changes, and only those variances that occur after implementation. As this Court recognized: "I don't think anybody's asking for a grace period to implement.  It's an exclusionary period of the error rate for the purposes of determining the percentage allotment that would be applied to that error rate."  PI Tr. 119:22-25.

-Page 16- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

Plaintiffs contend it would be unfair to hold them responsible for variances that occurred prior to notice. To be clear, should the Court side with Plaintiffs in its interpretation of the exclusionary period, USDA is only asking for the Court to clarify that USDA may count any variance that occurs *after* the relevant Guidance was issued and *before* the implementation of that Guidance. That is more than fair: Plaintiffs do not challenge the substance of the SUA Guidance or ABAWD Guidance, nor does they challenge the substance of the December 10, 2025 Q&A. Accordingly, Plaintiffs have been on notice of their obligations at least as of the date of each of these Guidances. It is fair to hold them to implementing the substance of those Guidances. And Plaintiffs should not have variances excluded should they have chosen not to implement those Guidances.

## IV.    The Challenged Guidances are Not Arbitrary and Capricious

Nor are the challenged Guidances arbitrary and capricious. As an initial matter, Plaintiffs maintain that the Court should consider their declarations in determining whether the Guidances are arbitrary and capricious because they are submitting them to provide context. MSJ Opp. at 18-19. But as USDA explained in its MSJ, and left unaddressed by Plaintiffs, "context" is typically provided for highly technical matters, and even then, the use of declarations for that purpose are rarely upheld. ECF 92 at 29-31. But whether or not the declarations are considered, the Guidances are not arbitrary and capricious.

### A.    Plaintiffs' declarations cannot be used to determine the correctness or wisdom of the agency's actions

In general, a court reviewing agency action under the APA must limit its review to the administrative record. *See Camp v. Pitts,* 411 U.S. 138, 142 (1973). The Ninth Circuit "ha[s] applied this rule many times, in many different contexts." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014). A reviewing court may consider extra-record evidence

-Page 17- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

where admission of that evidence (1) is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) is necessary to determine whether "'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'" *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.,* 100 F.3d 1443, 1450 (9th Cir. 1996)). "These exceptions are to be narrowly construed, and the party seeking to admit extra-record evidence initially bears the burden of demonstrating that a relevant exception applies." *San Luis & Delta-Mendota Water Auth.*, 776 F.3d at 992–93.

Plaintiffs mistakenly argue that USDA, in its MSJ, only addressed the third exception: to explain technical terms. MSJ Opp. at 18-19. Not so. As stated in USDAs MSJ, the "all relevant factors" exception Plaintiffs invoke is "most often applied where 'highly technical matters are involved' so that the court can identify 'all relevant factors,' and even then those inquiries are often overturned." ECF 92 at 30 (quoting *Asarco, Inc. v. U.S. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980)). Indeed, in Plaintiffs' reply, in support of their exception they cite *Midwater Trawlers Cooperative v. Department of Commerce*, 393 F.3d 994, 1008 (9th Cir. 2004), which dealt with technical subject matter regarding "the failings of the biomass method, particularly its inability to account for the migratory patterns of Pacific whiting, its lack of biological theory for its application, and the likelihood that its use would result in undercounting Pacific whiting present in the Makah Tribe's usual and accustomed fishing areas." *Id.* Because is no background context the Court requires, the declarations should not be used.

Accordingly, the Court should strike the declarations or decline to consider them.

-Page 18- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

**B.      The Non-Citizen Guidance is Not Arbitrary and Capricious Because it Does not Purport to have the Effect Plaintiffs Allege**

As stated in Defendants MSJ, the Non-Citizen Guidance did not have any legal effect, therefore, USDA did not need to explain its reasoning for any "legal effects" because those do not exist. ECF 92 at 31-32. The Non-Citizen Guidance did not change eligibility for LPRs, nor did it adjust the waiting period for any LPRs.

Plaintiffs argue that the Non-Citizen Guidance has a legal effect because one state interpreted the Non-Citizen Guidance to change SNAP eligibility for certain groups and then acted on that (mis)understanding. MSJ Opp. at 7. That one State may have misinterpreted and then misapplied the Non-Citizen Guidance does not create a legal effect where none exists.

**C.      Exclusionary Period**

The exclusionary period for the OBBB's eligibility changes is the result of the mechanical application of USDA regulation to the enactment of the OBBB provisions. Pursuant to USDA regulations, "any variance resulting from application of a new Program regulation or implementing memorandum of a mandatory or optional change in Federal law that occurs during the first 120 days from the required implementation date" is excluded. 7 C.F.R. § 275.12(d)(2)(vii). By its own terms, the OBBB was implemented on enactment because it was effective on enactment. USDA had no discretion with respect to the exclusionary period and thus could not have acted arbitrarily or capriciously.

An agency "has no discretion to make a decision that is contrary to law." *Singh v. Clinton*, 618 F.3d 1085, 1091 (9th Cir. 2010) (citation modified). The regulation is explicit: the variance exclusion period must begin on the date of the required implementation date. *See* 7 C.F.R. § 275.12(d)(2)(vii). And the OBBB was self-effectuating. Thus, there was no discretion for USDA to set the exclusionary period as any date other than the date of the OBBB. The agency sufficiently

-Page 19- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

explained this finding by including the regulation and the OBBB in the administrative record

Plaintiffs contend that USDA acted arbitrarily and capriciously because it considered no facts. MSJ Opp. at 19. But there were no facts to consider in performing a purely legal analysis. Similarly, USDA could not provide "reasons" for determining the exclusionary period, because it is obligated, by its own regulations, to determine the exclusionary period so in a mechanical way. To the extent any reasons were required, USDA reviewed the OBBB and the regulatory text. *See* GOV000208-221; GOV000079.

In addition, Plaintiffs allege that USDA acted arbitrarily and capriciously because it departed from past practice. *See* MSJ Opp. at 17. Plaintiffs consolidate their purported evidence of past practice under the legal theory of the "change in position" doctrine. *Id*. The change in position doctrine asks (1) "whether an agency changed existing policy" and 2) whether "the agency 'display[ed] awareness that it *is* changing position' and offer[ed] 'good reasons for the new policy'?" *Wages & White Lion Invs.*, 604 U.S. at 569–570 (citation omitted).

While Plaintiffs state that the change in position doctrine applies "when an agency acts inconsistently with an earlier position," the Supreme Court has cautioned that it only applies to very specific prior actions by an agency. *Id.* (citation modified). For example, the Supreme Court noted that it "traditionally applied the change-in-position doctrine when an agency shifts from a position expressed in a more formal setting[,]" such as a formal binding document. *Id.* at 569 n.5. As other examples, the Supreme Court stated:

> For example, we have held that an agency changed its position when it rescinded a prior regulation, see *State Farm*, 463 U.S., at 41–42, 103 S.Ct. 2856, "expand[ed] the scope of its enforcement activity," *Fox Television*, 556 U.S., at 517, 129 S.Ct. 1800, and "abandon[ed a] decades-old practice" applied in enforcement actions, *Encino Motorcars*, 579 U.S., at 218, 136 S.Ct. 2117.

*Id.* at 570.

Moreover, Plaintiffs' proof of past practice is deficient.  They point to six examples (over

-Page 20- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

20 years) of USDA setting an implementation date after a statutory change. MSJ Opp. at 19-20. These examples do not amount to "rescinding a prior regulation" or "expanding an enforcement activity," and it is certainly not a "decades old practice" applied in enforcement actions. Plaintiffs bear the burden to establish that USDA acted arbitrarily and capriciously, and they cite no caselaw where such a pattern amounts to a formal agency position. Accordingly, the change in position doctrine does not apply.

Finally, Plaintiffs argue that USDA acted arbitrarily and capriciously because it did not consider reliance interests. MSJ Opp. at 20. Plaintiffs should not have had a reliance on a mere six examples.

**V.      <u>Neither Vacatur nor a Declaratory Judgment is Appropriate</u>**

As stated in USDA's MSJ, vacatur should not be granted because there is no final agency action to vacate. *See* ECF 92 at 24. Plaintiffs oppose because they contend these are final agency actions. *See* MSJ Opp. at 21. Plaintiffs are wrong, for the reasons above. *Supra* at II.

USDA also requested that vacatur should be limited to the parties, because any relief granted "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs[.]" ECF 92 at 34 (quoting *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994)). Opposing this request, Plaintiffs cite a series of out of circuit district court decisions, MSJ Opp. at 21, and do not meaningfully contend with the Supreme Court's admonition, cited by USDA, that relief should not be any more burdensome than needed. ECF 92 at 94 (citing *Madsen*, 512 U.S. at 765).

Plaintiffs are not entitled to a declaratory judgment on the Non-Citizen Guidance because their claims are moot. *Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.,* 893 F.2d 1012, 1015 (9th Cir. 1989) (stating that "[a] case or controversy exists justifying declaratory relief only when 'the challenged government activity . . . is not contingent, has not evaporated or disappeared,

-Page 21- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties'" (quoting *Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 122 (1974)). USDA agrees with Plaintiffs that the availability of declaratory relief rises and falls with mootness. MSJ Opp. at 21.

Finally, Plaintiffs request the Court to require USDA to send *new* Guidances before any exclusionary period starts, even though the substance of the ABAWD and SUA Guidance are not challenged, nor is the substance of the December 10, 2025 Q&A for the Non-Citizen Guidance. MSJ Opp. at 22. This all but confirms that Plaintiffs have *not* been implementing any of the changes required by the OBBB, even after implementing Guidance was sent. The Court understood that it didn't "think anybody's asking for a grace period to implement." PI Tr. 119:22-23. Yet Plaintiffs appear to be using this litigation to create such a grace period. The Court should not reward the Plaintiffs for their dilatory behavior in implementing and instead set the exclusionary period for each Guidance as the date the Guidance was sent if the Court disagrees that the variance exclusion period began on the effective date of the OBBB.

## CONCLUSION

Plaintiffs' motion for summary judgment should be denied, and Defendants motion for summary judgment granted.

Dated: June 12, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney
General
Civil Division

-Page 22- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

TYLER J. BECKER
Counsel to the Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

*s/ Michael Bruns*

MICHAEL BRUNS (DC Bar No. 1613394)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: 202-514-4011
Fax: 202-616-8460
Email: michael.bruns@usdoj.gov
*Attorneys for Defendants*

-Page 23- REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY
JUDGMENT